# Case No. 24-6058; 25-2028

---

# In the United States Court of Appeals
# For the Ninth Circuit

---

**Ashley M. Gjovik**, *an individual*,

*Plaintiff-Appellant*

v.

**Apple Inc.**, *a corporation,*

*Defendant-Appellee.*

On Appeal from the United States District Court

for the Northern District of California

No. 3:23-CV-04597

The Honorable Judge Edward M. Chen

---

# Appellant's Omnibus Opposition
# to Appellee's Motion to Stay & Replies to
# Appellee's Opposition to Procedural Motions

---

**Ashley M. Gjovik, JD**
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# TABLE OF CONTENTS

I. Introduction ............................................................... 3

II. Relevant Background ................................................ 4

III. Argument ................................................................. 5

    A. Appellee's Motion is Procedurally Redundant and Improper ............. 5

    B. Appellee's Excessive and Duplicative Filings Burden the Court and Violate Ninth Circuit Rules ..................................................... 6

    C. Appellee's Positions Are Inconsistent Across Proceedings and Collapse Under Scrutiny ....................................................... 7

    D. Appellee's Arguments Violate Foundational Principles of Logic and Reasoning ........................................................... 10

    E. Appellee's Conduct Violates Legal Principles of Estoppel, Judicial Integrity, and Fairness ........................................................ 14

    F. Legal Standard and Policy Considerations Strongly Disfavor a Stay .....16

    G. Appellee's Litigation Strategy Constitutes Procedural Harassment and Weaponization of Imbalance .................................................19

IV. Conclusion .......................................................................22

# Plaintiff-Appellant's Omnibus Opposition to Appellee's Motion to Stay/Dismiss & Replies to Appellee's Opposition Filings

## I. Introduction

1.   Appellant respectfully submits this Omnibus Opposition to address Appellee's multiple filings, including its Motion to Dismiss or Stay (Dkt. 5), as well as related oppositions filed by Appellee. While this consolidated response exceeds the typical 20-page limit for a single motion, it remains well within the combined permissible limits for responding to multiple filings, and is submitted in the interest of judicial efficiency and clarity.

2.   Appellant respectfully opposes Appellee Apple Inc.'s motion to stay briefing or dismiss this appeal (Dkt. 5). Appellee's motion is procedurally improper, redundant of matters already pending before this Court, and premised on inconsistent positions advanced simultaneously across multiple proceedings.

3.   Notably, Appellant has already filed a Motion for Clarification regarding the briefing schedule (Dkt. 4), seeking the Court's direction in light of the protective notice of appeal and pending district court proceedings. Appellee, instead of timely responding, elected to burden the Court with a duplicative motion raising substantially the same issues, while also resisting Appellant's motion to consolidate related appeals (Dkt. 6) and flooding this Court with over a thousand pages of unnecessary attachments — conduct directly contrary to this Court's rules and orders discouraging excessive and duplicative filings (See Ninth Circuit Rule 30-1; Circuit Rule 30-2; General Order VI.6.3(d)).

4.   Appellant respectfully submits that judicial economy, procedural fairness, and the integrity of appellate review favor denial of Appellee's motion (Dkt. 5), maintenance of the existing briefing schedule (Dkt. 3), and the resolution of jurisdictional questions alongside the merits. Appellee's filings do not justify

disruption of the Court's established schedule or dismissal of this properly noticed appeal.

## II. Relevant Background

5.  On March 15, 2025, Appellant filed a protective Notice of Appeal (Dkt. 1), preserving appellate rights while a Rule 54(b) motion remained pending in the district court (N.D. Cal. Dkt. 189). The Court subsequently issued a briefing schedule (Dkt. 3), setting Appellant's opening brief deadline for May 6, 2025, and Appellee's answering brief deadline for June 5, 2025.

6.  In light of the protective nature of the appeal, Appellant promptly filed a Motion for Clarification (Dkt. 4), respectfully seeking the Court's guidance on whether to proceed with briefing or await resolution of the district court's Rule 54(b) motion. Rather than responding to Appellant's motion directly, Appellee chose to file its own Motion to Stay Briefing or Dismiss Appeal (Dkt. 5), raising substantially identical issues to those already before the Court.

7.  Appellee further opposed Appellant's Motion to Consolidate Appeals (Dkt. 6), seeking to resist judicial efficiency and to maintain fragmentation of related matters already pending before this Court. Only after filing its own motion did Appellee belatedly respond to Appellant's Motion for Clarification (Dkt. 7).

8.  Simultaneously, in the district court, Appellee opposed Appellant's Motion for Rule 54(b) Certification (N.D. Cal. Dkt. 198). However, Appellee has not responded to Appellant's pending Motion to Strike (N.D. Cal. Dkt. 192) or Motion for a More Definite Statement (N.D. Cal. Dkt. 193), leaving those foundational matters neglected. Appellee's parallel efforts to obstruct both appellate review and district court proceedings demonstrate a coordinated strategy to delay final adjudication and burden judicial resources.

9.  In connection with its appellate filings yesterday, Appellee submitted 1,518 pages of largely duplicative attachments (Dkt. 5 – 7), including filings already contained within the existing district court record and Appellant's own

submissions, in violation of Ninth Circuit Rule 30-1 and Circuit Rule 30-2, which prohibit unnecessary and duplicative filings.

10.     Appellee's inconsistent posture is further underscored by its representations in the district court, where Appellee argued that Appellant's dismissed claims are distinct and irrelevant to the remaining litigation and therefore did not warrant substantive response (N.D. Cal. Dkt. 183). Yet in this Court, Appellee attempts to rely on the pendency of those same district court proceedings to argue against appellate jurisdiction. Appellee's selective positioning underscores its efforts to evade appellate review while obstructing district court proceedings.

## III. Argument

### A. Appellee's Motion is Procedurally Redundant and Improper

11.     Appellee's motion (Dkt. 5) is procedurally redundant of matters already pending before this Court and seeks relief that is both unnecessary and premature. Notably, Appellant proactively filed a Motion for Clarification (Dkt. 4), respectfully inviting the Court to provide guidance on the briefing schedule in light of Appellant's protective notice of appeal (Dkt. 1) and the pending district court Rule 54(b) motion (N.D. Cal. Dkt. 189).

12.     Appellee declined to respond directly to Appellant's Motion for Clarification until after filing its own, duplicative Motion to Stay or Dismiss (Dkt. 5). Only after submitting this redundant motion did Appellee submit a belated response to Appellant's Motion for Clarification (Dkt. 7). Appellee's sequence of filings suggests an attempt to circumvent orderly briefing by placing its own motion before the Court without engaging Appellant's pending request for clarification first.

13.     Appellee's motion further seeks to preemptively dismiss or stay the appeal based on issues the Court can and should address in due course, alongside

or following merits briefing. Notably, the Court already issued a briefing schedule (Dkt. 3), and Appellant's Motion for Clarification (Dkt. 4) respectfully placed any scheduling uncertainty squarely before the Court.

14.     Appellee's duplicative motion serves no legitimate procedural purpose. The jurisdictional and scheduling matters Appellee raises are already properly before this Court via Appellant's motion. Granting Appellee's motion would reward duplicative motion practice and risk encouraging procedural gamesmanship, while needlessly disrupting the Court's established briefing schedule.

## B.  APPELLEE'S EXCESSIVE AND DUPLICATIVE FILINGS BURDEN THE COURT AND VIOLATE NINTH CIRCUIT RULES

15.     In connection with its Motion to Stay or Dismiss (Dkt. 5), Appellee submitted over 1,5100 pages of attachments (Dkt. 5 - 7), comprising largely duplicative materials, including filings already part of the district court record and even Appellant's own submissions. Appellee's unnecessary compilation of materials imposes an undue burden on this Court, in direct contravention of Ninth Circuit procedural rules.

16.     This Court's rules expressly prohibit the submission of unnecessary or duplicative filings. Ninth Circuit Rule 30-1 requires parties to avoid including unnecessary portions of the record and to omit duplicative materials. Circuit Rule 30-2 further warns that non-compliance with Rule 30-1 will subject counsel to sanctions. General Order VI.6.3(d) cautions against excessive attachments to procedural motions, recognizing the strain such practices impose on judicial resources.

17.     Appellee's voluminous filing violates these principles. Rather than streamline the issues for this Court's consideration, Appellee has attempted to overwhelm the docket with sheer volume. This tactic serves no legitimate purpose. The underlying procedural and factual history are already well-documented in the

district court record (N.D. Cal. Dkt. 1–198), much of which Appellee redundantly submitted. Moreover, Appellee's excessive attachments do not meaningfully support its motion, which is itself duplicative of Appellant's Motion for Clarification (Dkt. 4).

18.     Appellee's strategy of burdening the Court with excessive filings mirrors its broader pattern of procedural gamesmanship. By overwhelming the record, Appellee seeks to distract from its shifting positions and substantive weaknesses, while imposing unnecessary work on the Court and Appellant alike. This Court should not reward such tactics. Appellee's violations of the Ninth Circuit's rules, combined with its duplicative motion practice and internally inconsistent arguments, further compel denial of Appellee's motion.

## C.   APPELLEE'S POSITIONS ARE INCONSISTENT ACROSS PROCEEDINGS AND COLLAPSE UNDER SCRUTINY

19.     Appellee's motion rests on inconsistent — and at times, mutually exclusive — positions advanced simultaneously in this Court and in the district court. Appellee attempts to characterize the dismissed claims as both irrelevant and critical, both non-final and resolved, depending on which posture serves its immediate objective of avoiding appellate review while evading district court accountability.

20.     In its district court filings, Appellee repeatedly argued that the dismissed claims were immaterial and irrelevant to the ongoing proceedings. For example, in Appellee's *Answer to Appellant's Fifth Amended Complaint* (N.D. Cal. Dkt. 183), Appellee dismissed the factual relevance of the claims underlying this appeal, asserting they did not merit a response. Appellee maintained this posture in its *Initial Disclosures* (Apple General Order 71 Initial Discovery, served Nov. 29, 2024) and *Response to Appellant's Request for Production* (Apple Response to Production, served Nov. 29, 2024), where Appellee refused to produce discovery concerning the dismissed claims, asserting they were irrelevant and non-essential.

21.    Yet, when opposing Appellant's Rule 54(b) motion (N.D. Cal. Dkt. 198), Appellee abruptly pivoted, claiming the dismissed claims were, in fact, closely related to the remaining claims and thus certification was improper. Appellee extended this contradictory argument in its Ninth Circuit Motion to Stay or Dismiss (Ninth Cir. Dkt. 5), asserting that the dismissed claims are so critical and intertwined that appellate review would disrupt the district court proceedings.

22.    Appellee's contradictions are not merely inconsistent — they are structural and dispositive. As detailed in *Table 1* below, Appellee's litigation posture collapses under even basic principles of logic.

## 1. TABLE 1: APPELLEE'S CONTRADICTORY LITIGATION POSITIONS ACROSS PROCEEDINGS

| Step | Date | Position | Context | Contradiction |
|---|---|---|---|---|
| 1 | Nov 29, 2024 | Apple excluded dismissed claims from Initial Disclosures, implying irrelevance. | Apple Initial Disclosures | Claims = non-essential. |
| 2 | Nov 29, 2024 | Apple refused to produce discovery on dismissed claims. | Apple Response to Production (Discovery Responses) | Suppressed discovery on irrelevance basis. |
| 3 | March 13, 2025 | In Answer, claimed dismissed claims were irrelevant and non-justiciable. | N.D. Cal. Dkt. 183 (Answer) | Maintains irrelevance posture. |
| 4 | March 15, 2025 | [Appellant files Rule 54(b) motion + Notice of Appeal.] | N.D. Cal. Dkt. 189; Ninth Cir. Dkt. 1 | n/a |
| 5 | March 27, 2025 | [Ninth Circuit issues briefing schedule.] | Ninth Cir. Dkt. 2 | n/a |
| 7 | March 29, 2025 | Apple opposes Rule 54(b), claims dismissed claims are critical and intertwined with | N.D. Cal. Dkt. 198 (Opposition to Rule 54(b)) | Direct reversal of prior stance. |

| Step | Date | Position | Context | Contradiction |
|------|------|----------|---------|---------------|
| | | ongoing matters. | | |
| 8 | April 5, 2025 | Apple files Motion to Stay/Dismiss, claims dismissed claims are critical and intertwined, making appeal premature. | Ninth Cir. Dkt. 5 (Motion to Stay/Dismiss) | Contradicts prior irrelevance posture and district court discovery position. |
| 9 | April 5, 2025 | Apple argues appeal should be dismissed as premature because dismissed claims are not final. | Ninth Cir. Dkt. 5 (Motion to Stay/Dismiss) | Claims are "not final" here, yet treated as resolved for district court discovery obligations. |

23.     As demonstrated in Table 1, Appellee's litigation posture is not merely inconsistent — it is a structural failure of logic that cannot withstand scrutiny. Appellee cannot reconcile these positions. If the dismissed claims are immaterial and irrelevant, as Appellee has repeatedly contended in the district court, then they cannot simultaneously argue those same claims are too critical for appellate review. Nor can Appellee maintain that the dismissals are not final — both to oppose appellate jurisdiction and to resist Rule 54(b) certification — while simultaneously treating the same dismissals as final to evade discovery obligations and factual accountability in the district court. Such contradictions fatally undermine Appellee's motion. *See Hatfield, supra* (inconsistent discovery positions as obstructive abuse); *Ginossar, supra* (abuse of process encompasses inconsistent litigation tactics).

24.     The procedural contradictions in Appellee's positions are not hypothetical; they have been actively litigated in the district court, where Appellee repeatedly resisted discovery into the very claims it now contends are too critical for appellate review. See, e.g., N.D. Cal. Dkt. 162 (motion to compel discovery), Dkt. 163 (supporting declaration), Dkt. 164 (proposed order), Dkt. 165 (Apple opposition), Dkt. 168 (reply in support of motion to compel), Dkt. 170 (district court minute order noting discovery disputes), Dkt. 171 (transcript of

hearing on discovery disputes), Dkt. 178 (order regarding discovery obligations), Dkt. 180 (further order on discovery compliance), Dkt. 181 (hearing transcript).

25.     These records demonstrate that Appellee consistently maintained the position that the dismissed claims were irrelevant and not subject to discovery obligations, while simultaneously arguing that those same claims are so critical as to defeat appellate jurisdiction. This incongruity underscores not only the tactical nature of Appellee's arguments but the abusive manipulation of procedural posture across forums.

26.     Further, Appellee's failure thus far to respond to *Appellant's Motion for More Definite Statement* (N.D. Cal. Dkt. 193) and *Motion to Strike* (N.D. Cal. Dkt. 192), while instead filing a *magnum opus* of exhibits in response to a simple procedural motion, underscores Appellee's strategy of manufacturing ambiguity while selectively engaging in litigation only where advantageous. These contradictions are not technical defects but deliberate procedural manipulation. They warrant denial of Appellee's motion and confirm the propriety of allowing this appeal to proceed on the merits. *See Jarvey, supra* (stonewalling discovery requests reflects abuse of process); *Marcus, supra* (conflicting litigation positions as concealment strategy).

## D.   APPELLEE'S ARGUMENTS VIOLATE FOUNDATIONAL PRINCIPLES OF LOGIC AND REASONING

27.     Appellee's motion collapses not only under legal scrutiny but also under basic principles of logic and reasoning universally recognized in formal systems of analysis. Both judicial decision-making and algorithmic reasoning rely on coherent, non-contradictory frameworks. Appellee, however, advances an argument structure that violates these basic logical axioms, rendering its position fatally flawed.

28.     Two of the oldest and most essential principles in logic are the *Law of Non-Contradiction* and the *Law of the Excluded Middle*. As Kalish, Montague, and

Mar explain in *Logic: Techniques of Formal Reasoning*, a statement cannot both be true and not true at the same time and in the same respect.[1] Similarly, the *Law of the Excluded Middle*, as described in Kenneth Rosen's *Discrete Mathematics and Its Applications*, holds that every proposition is either true or false. There is no third option.[2] Appellee violates both.

29. Appellee maintains, in its district court filings and discovery responses, that the dismissed claims are irrelevant and final (see N.D. Cal. Dkt. 183; *Initial Disclosures,* Nov. 29, 2024; *Apple Response to Request for Production,* Nov. 29, 2024). Yet, in opposing Rule 54(b) (N.D. Cal. Dkt. 198) and in this *Motion to Stay or Dismiss* (Ninth Cir. Dkt. 5), Appellee pivots to argue the very same claims are critical, intertwined, and essential to ongoing proceedings. These cannot simultaneously be true. Either the claims are irrelevant, or they are critical — they cannot be both.

30. Appellee improperly attempts to occupy an impossible middle ground, claiming the dismissed claims are neither conclusively final (to evade appeal) nor sufficiently pending (to require district court engagement). In logical reasoning, this is an untenable position, as it fails to commit to determinative logical state. Algorithmically, Appellee's argument resembles an unsolvable decision tree. As described in *Introduction to Algorithms* (Cormen, Leiserson, Rivest & Stein), if all terminal conditions contradict, the algorithm enters an infinite loop and cannot reach resolution.[3]

31. This is precisely the procedural trap Appellee seeks to construct: a loop from which neither Appellant nor the courts can logically exit. Appellee's contradictory premises prevent closure in either forum, manufacturing a false

---

[1] Kalish, D., Montague, R., & Mar, G., *Logic: Techniques of Formal Reasoning*, 2d ed. (2000), p. 35.
[2] Rosen, K. H., Discrete Mathematics and Its Applications, 8th ed. (2019), p. 16.
[3] Cormen, T. H., Leiserson, C. E., Rivest, R. L., & Stein, C., *Introduction to Algorithms*, 3d ed. (2009), p. 18.

dilemma and prejudicing Appellant's right to final adjudication. Such structural defects are not theoretical concerns. Judicial processes, like computational algorithms, require terminal outcomes — a resolution of claims one way or the other. Appellee's arguments collapse under this analysis, as they depend on sustaining a paradox: claims that are at once irrelevant and critical, final, and not final. Recognizing this logical failure, the Court should reject Appellee's unsound argument and allow this appeal to proceed on its merits.

## 2. FIGURE 1: LOGICAL FAILURE ANALYSIS APPLE'S ARGUMENT ARCHITECTURE, AN INFINITE LOOP.

32.    As demonstrated in *Figure 1,* Appellee's argument architecture requires claims to exist in mutually exclusive logical states, rendering their position fatally inconsistent.

FIGURE 1.

```
[FOUNDATIONAL PREMISE] CLAIMS ARE IRRELEVANT.
   +-- Used to block discovery.
   +-- Used to downplay case importance.
[COURT DISMISSES CLAIMS]
   +-- Apple treats claims as resolved for discovery and disclosure purposes.
   +-- Position: "dismissal means no duty to engage further in facts."
[APPELLANT APPEALS DISMISSAL]
   +-- Apple must respond to jurisdiction and merits.
[APPLE LOGICAL FORK]
   +--> Branch A: Claims are Not Final (Intertwined)
   |       +-- Argument: "Dismissal non-final → stay appeal."
   +--> Branch B: Claims are Resolved (Discovery Closed)
           +-- Argument: "Dismissal resolved → no discovery required."
[LOGICAL CONFLICT DETECTED]
   +--> Problem: Cannot claim claims are non-final (appeal) and resolved
        (discovery)
   +--> Problem: Cannot argue dismissed claims are irrelevant (lower court) but
        critical (to justify staying appeal)
   +--> Problem: Either claims are concluded (estoppel applies) or they are not.
[SYSTEM FAILURE]
   +-- Logical loop: Argument requires claims to exist in mutually exclusive states.
   +-- Infinite loop of contradictory conditions: No resolution
[RESULT] SYSTEM ERROR: ARGUMENT ARCHITECTURE COLLAPSES
```

33.    As shown in *Figure 1,* Appellee's argument structure is inherently unstable. Each position undermines the other, preventing any coherent resolution. The Court should recognize this collapse and deny Appellee's motion.

### 3. Appellee's Arguments Resemble Schrödinger's Paradox: Simultaneously Final and Non-Final

34.    Appellee's litigation posture mirrors Schrödinger's famous quantum thought experiment, in which a cat placed in a sealed box is theoretically both alive and dead until observed. In this context, Appellee presents the dismissed claims as existing in a similarly paradoxical state: final and irrelevant for purposes of evading district court discovery obligations, yet not final for purposes of resisting appellate jurisdiction.

35.    When advantageous, Appellee asserts that the dismissed claims are not final and remain intertwined with ongoing district court proceedings, contending that appellate review is premature (Ninth Cir. Dkt. 5). Yet in the district court, Appellee simultaneously treats the same claims as resolved and irrelevant, refusing to provide discovery or substantive responses (N.D. Cal. Dkt. 183; Apple Initial Disclosures, Nov. 29, 2024). Appellee cannot have it both ways. Just as in Schrödinger's paradox, the flaw is not in the box, but in the observer's logical framework. Here, Appellee attempts to sustain an argument that depends upon mutually exclusive states of finality — a logical impossibility under basic principles of procedural coherence and appellate jurisdiction.

36.    Further compounding the paradox, Appellee's prior positions in discovery and in its Answer (N.D. Cal. Dkt. 183; Apple Initial Disclosures, Nov. 29, 2024) treated the dismissed claims as irrelevant and resolved. Yet Appellee's subsequent procedural shift, claiming these same claims are critical and intertwined (N.D. Cal. Dkt. 198; Ninth Cir. Dkt. 5), violates coherent procedural logic. The claims cannot be simultaneously irrelevant, critical, final, and non-final. The Court need not resolve this paradox: it need only recognize that

Appellee's attempt to sustain contradictory procedural states reveals the strategic gamesmanship underpinning its motion. Logic alone compels denial.

37.     Appellee's contradictions extend beyond the courtroom. In statements to Reuters, Appellee previously represented that Appellant's claims had been dismissed, affirmatively conveying that this litigation was over. This was published, casting a false light on the Plaintiff in international news coverage over multiple days. Yet in this Court, Appellee now argues those same claims are so critical and intertwined with ongoing proceedings that appellate review would be premature. Appellee cannot simultaneously tell the public that the case is concluded while asserting before this Court that claims are active and important, and any dismissed claims are too entangled with active claims for resolution. This inconsistency further illustrates the procedural gamesmanship underlying Appellee's motion.

## E. APPELLEE'S CONDUCT VIOLATES LEGAL PRINCIPLES OF ESTOPPEL, JUDICIAL INTEGRITY, AND FAIRNESS

38.     Beyond logical collapse, Appellee's contradictory litigation positions violate established legal doctrines prohibiting inconsistent stances in judicial proceedings. These are not abstract errors: they undermine the integrity of the judicial process and warrant denial of Appellee's motion as a matter of law.

## 4. JUDICIAL ESTOPPEL BARS APPELLEE'S INCONSISTENT POSITIONS

39.     The doctrine of judicial estoppel precludes a party from adopting inconsistent positions in separate phases of the same litigation to gain unfair advantage. As the Ninth Circuit has explained that judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position. *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001); see also *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001).

40.     Appellee's conduct fits squarely within this doctrine. In the district court, Appellee denied the relevance and materiality of the dismissed claims to avoid responding in discovery (N.D. Cal. Dkt. 183; Initial Disclosures, Nov. 29, 2024). Now, in this Court, Appellee asserts the dismissed claims are so critical and intertwined that appellate briefing should be stayed or dismissed entirely (Ninth Cir. Dkt. 5). Such inconsistent positions, taken for tactical advantage, fall squarely within the scope of judicial estoppel.

41.     The Ninth Circuit applies judicial estoppel where: **(1)** the party's later position is clearly inconsistent with its earlier position; **(2)** the party succeeded in persuading a court to accept the earlier position; and **(3)** the party would derive an unfair advantage or impose an unfair detriment if not estopped. *See Ah Quin v. County of Kauai Department of Transportation*, 733 F.3d 267, 271 (9th Cir. 2013). All three factors are satisfied here.

### 5. COURTS CONDEMN PROCEDURAL GAMESMANSHIP AND FORUM MANIPULATION

42.     Federal courts disfavor litigants who adopt contradictory positions to manipulate procedural outcomes. The Ninth Circuit explained in *Russell v. Rolfs* that a litigant who takes one position, obtains a favorable decision, and then seeks to prevail by taking an inconsistent position in another proceeding risks having the doctrine of judicial estoppel applied to bar the inconsistent position. See *, Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990).

43.     Appellee's tactics here are precisely the kind condemned in *Russell*: Appellee previously persuaded the district court to disregard the dismissed claims as irrelevant, then seeks in this Court to avoid appellate review by newly characterizing the claims as central to ongoing proceedings. Further, the Federal Rules of Civil Procedure require parties to conduct litigation in good faith and with candor toward the tribunal. *See* Fed. R. Civ. P. 11(b). Appellee's pattern of shifting positions falls short of this standard.

### 6. COURTS DISFAVOR LITIGATION CONDUCT THAT BURDENS JUDICIAL EFFICIENCY

44.    Finally, courts have an inherent duty to manage their dockets efficiently and fairly. Appellee's duplicative motion practice and excessive filings (see Dkt. 5-1 through 5-20) violate not only Ninth Circuit procedural rules (see Ninth Cir. Rule 30-1, Rule 30-2, General Order VI.6.3(d)) but also the broader principle that parties should not burden the judiciary with meritless procedural tactics.

45.    The Supreme Court explained in *Chambers v. NASCO, Inc.*, that courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum in their presence, and submission to their lawful mandates. See, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *Anderson v. Dunn*, 19 U.S. (6 Wheat.) 204, 227 (1821)). Appellee's procedural conduct, aimed at creating artificial barriers to appellate review, violates this fundamental principle.

### F.    LEGAL STANDARD AND POLICY CONSIDERATIONS STRONGLY DISFAVOR A STAY

46.    Appellant respectfully emphasizes that she did not seek this Court's intervention on briefing sequencing with any predisposed outcome in mind. Appellant merely requested clarification, explicitly stating her willingness to follow whatever schedule this Court deemed appropriate. *See Ninth Cir. Dkt. 4 (Appellant's Motion for Clarification)*. Appellant remains guided by this deference to the Court's judgment.

47.    In contrast, Appellee has responded to Appellant's neutral request with an aggressive and unilateral demand to halt appellate proceedings entirely. Rather than awaiting this Court's direction, Appellee has rushed to insist that no action favorable to Appellant be taken, advancing its own preferred outcome without regard to procedural balance or judicial discretion.

48.     Even setting aside Appellee's overreach, the legal standard for granting a stay is clear and exacting. Stays are an *extraordinary remedy,* never granted as a matter of right. *Nken v. Holder*, 556 U.S. 418, 427 (2009). Appellee bears the burden of demonstrating both a likelihood of success and irreparable harm absent a stay. *Id.* at 433–34. Appellee has made no such showing.

49.     Appellee does not contend—nor could it—that proceeding with this appeal would cause any irreparable harm. At most, Appellee faces the ordinary inconvenience of defending its position, which courts have consistently held does not constitute irreparable injury. *See Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974). Further, Appellee has already voluntarily expended considerable resources to file multiple unnecessary and abusive motions in this case. No one asked them to do that and in fact, their actions violate court rules.

50.     By contrast, granting Appellee's stay request would inflict disproportionate prejudice on Appellant, placing her in procedural limbo while Appellee benefits from delaying appellate scrutiny. Courts disfavor such tactical use of stays to disadvantage opposing parties. *See Landis v. North American Co.*, 299 U.S. 248, 255 (1936). Judicial efficiency also favors denying a stay. Resolving this appeal expeditiously will clarify jurisdictional issues and promote coherent management of the district court proceedings. *See Clinton v. Jones*, 520 U.S. 681, 706 (1997).

51.     Finally, the public interest and principles of fairness weigh against a stay. As a pro se litigant facing substantial burdens, Appellant would suffer acute prejudice from further delay, while Appellee, a well-resourced corporation, faces no comparable hardship. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). Appellant respectfully submits that the Court's discretion should remain paramount. Appellee's reactive insistence on halting the appeal, in response to Appellant's neutral request for guidance, further underscores the imbalance of this litigation.

52.     Appellant further notes that, under well-established principles of

appellate procedure, this Court retains full authority to manage the relationship between district court and appellate proceedings, including the power to stay district court actions if appropriate. *See Landis v. North American Co.*, 299 U.S. 248, 254–55 (1936).

53.    Indeed, this Court may, in its discretion, address finality and jurisdictional issues itself, without awaiting further action by the district court. Appellee's suggestion that the district court should control the timing and scope of appellate proceedings reflects a fundamental misunderstanding of judicial hierarchy. While Appellant previously sought a stay in the district court to allow this Court to exercise its jurisdiction unimpeded, the Ninth Circuit retains full discretion to stay district court proceedings — not the other way around.

54.    Should this Court deem it appropriate to ensure orderly proceedings, Appellant respectfully submits that staying the district court action pending appellate resolution would promote judicial efficiency, avoid conflicting rulings, and resolve the jurisdictional uncertainty that Appellee itself claims to fear. Such a stay would also prevent Appellee from continuing to exploit parallel proceedings to its procedural advantage, while respecting this Court's role as the final arbiter of appellate jurisdiction.

55.    Appellant previously sought a stay of district court proceedings to allow this Court to exercise its appellate jurisdiction without interference. *See* N.D. Cal. Dkt. 117 (Appellant's motion to stay), Dkt. 121 (Appellant's reply in support). Although the district court did not grant that request, Appellant's objective was clear and remains unchanged: to ensure orderly and efficient proceedings under the guidance of this Court. Should this appeal progress, Appellant respectfully submits that this Court may either exercise its inherent authority to stay district court proceedings or, if the Court prefers, Appellant is prepared to submit an appropriate motion for that relief.

### G. APPELLEE'S LITIGATION STRATEGY CONSTITUTES PROCEDURAL HARASSMENT AND WEAPONIZATION OF IMBALANCE

56.     Appellee's conduct in this litigation does not reflect routine advocacy but a deliberate pattern of procedural abuse designed to overwhelm Appellant, exhaust her limited resources, and obstruct her access to appellate review. Appellee has already succeeded in obtaining dismissal of Appellant's prior appeal (Case No. 24-6058) before Appellant was even permitted to submit briefing on the merits. Appellant's motion for reconsideration in that matter remains pending. Rather than allowing the present appeal to proceed in due course, Appellee now seeks to replicate this outcome by filing a duplicative and premature motion to stay or dismiss, again before Appellant has had an opportunity to be heard.

57.     Compounding this procedural aggression, Appellee has also declined to engage meaningfully with Appellant's pending district court motions, including the *Motion for More Definite Statement* (N.D. Cal. Dkt. 193) and the *Motion to Strike* (N.D. Cal. Dkt. 192). Instead of addressing these matters promptly, Appellee has attempted to leapfrog its responsibilities by overwhelming this Court with duplicative and excessive appellate filings, while Appellant awaits resolution of critical district-level motions.

58.     The scale of Appellee's litigation force deployed against Appellant is stark. Appellee is represented by Orrick Herrington & Sutcliffe LLP, a global Am. Law 50 firm, which has deployed a litigation force of at least five attorneys in this case, including:

- *Jessica Perry,* head of Orrick's Global Employment Law and Litigation practice;[4]

- *Melinda Riechert,* former head of Morgan Lewis's Employment

---

[4] Jessica Perry, Orrick Herrington & Sutcliffe LLP, *Global Employment Practice Leader*, https://www.orrick.com/en/People/A/F/0/Jessica-Perry

Litigation group;[5]

- *Jeffrey Todd Quilici,* former clerk to the Supreme Court of the United States (OT 2018).[6]
- Senior associate litigators and complex appellate specialists.[7]

59.    Publicly reported billing rates for such counsel exceed $3,000 per hour for senior partners and approximately $1,700 per hour for senior counsel.[8] Based on industry-standard estimates for the preparation of complex appellate motions and the excessive number of pages submitted in connection with Appellee's filings, Appellee has likely spent in excess of **$200,000** on these motions alone — in stark contrast to Appellant, who has paid $1,210 in filing fees across two appeals, and dedicated hundreds of unpaid hours to legal research and drafting, alone without a firm or team supporting her, all while facing imminent bankruptcy and unable to pay her bills.

60.    Appellee's posture here is not motivated by legitimate jurisdictional uncertainty but by an intent to exhaust Appellant's resources and create procedural roadblocks to substantive appellate review. The clear objective is to repeat the tactic used in Case No. 24-6058: suppress Appellant's arguments before they can be heard on the merits. Further, Appellee's refusal to address Appellant's outstanding Apple Card debt collection inquiries while spending immense sums to block her access to justice further illustrates this imbalance. Appellant is a pro se litigant under severe financial strain, yet Appellee deploys a Supreme Court clerk and senior litigation leaders to preempt briefing.

---

[5] Melinda Riechert, former Chair, Morgan Lewis Employment Litigation, now Partner at Orrick, https://www.orrick.com/en/People/2/7/9/Melinda-Riechert
[6] Mr. Jeffrey Quilici, Supreme Court Clerk, October Term 2018, *Above the Law*, https://abovethelaw.com/2018/08/supreme-court-clerk-hiring-watch-the-complete-clerk-roster-for-october-term-2018/
[7] Orrick Team Listings, Ninth Circuit Docket.
[8] *ABA Journal*, "This law firm bills as much as $3,000 an hour," Feb. 26, 2025, https://www.abajournal.com/news/article/this-law-firm-bills-as-much-as-3000-an-hour

61.     The Supreme Court has recognized the courts' inherent authority to sanction conduct that abuses the judicial process. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991). Appellee's actions here fall squarely within this concern, meriting close scrutiny. In effect, Appellee seeks to create an infinite loop of procedural obstruction, forcing Appellant to incur additional filing fees for each attempt to secure appellate review. Appellant has already paid for two appeals at great personal expense; if Appellee succeeds, Appellant may be forced to pay another $605 for a third appeal of the same underlying claims — an unsustainable burden.

62.     This Court should reject Appellee's tactics and allow this appeal to proceed on the merits. Justice demands no less. Federal courts are vested with inherent authority to protect the integrity of judicial proceedings and to sanction conduct that constitutes abuse of process. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991); *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765–66 (1980).

63.     Appellee's tactics here reflect precisely the type of conduct these cases warn against multiplying proceedings to delay resolution, escalate costs, and suppress legitimate appellate review. The filing of duplicative motions, the refusal to engage with district court proceedings, and the deployment of elite counsel to pursue conflicting arguments designed to entangle this Court in an infinite loop of procedural contradictions all constitutes a textbook abuse of the appellate process. Courts have a heightened responsibility to ensure that pro se litigants are not unduly burdened by procedural gamesmanship. *Duran v. Carris*, 238 F.3d 1268, 1272–73 (10th Cir. 2001); *Federal Judicial Center, Pro Se Case Management for Nonprisoner Civil Litigation* (2016).

64.     The imbalance here could not be starker. Appellant, a self-represented litigant facing bankruptcy, has already paid over $1,200 in filing fees alone, while Appellee deploys a Supreme Court clerk and global law firm partners billing thousands of dollars per hour to suppress Appellant's access to appellate

review. As the Fourth Circuit has recognized, courts must guard against litigation deployed primarily to burden or harass the opposing party. *Garey v. James S. Farrin, P.C.*, 35 F.4th 917, 924 (4th Cir. 2022).

65.     The facts here demand such vigilance. Appellant respectfully submits that this Court should not countenance Appellee's procedural gamesmanship and should allow this appeal to proceed to full briefing on the merits.

## IV. Conclusion

66.     Appellee's motion (Dkt. 5) is procedurally redundant, internally inconsistent, and violative of this Court's procedural rules. Appellant has already properly placed any scheduling uncertainty before this Court through the pending Motion for Clarification (Dkt. 4). Appellee's duplicative motion, filed belatedly and accompanied by excessive, burdensome filings (Dkt. 5 - 7), serves only to distract from the merits and impose unnecessary burdens on this Court and Appellant.

67.     Appellee cannot simultaneously argue that the dismissals are not final—both to oppose appellate jurisdiction and resist Rule 54(b) certification—while treating the same dismissals as final to evade discovery obligations and factual accountability in the district court. Such strategic inconsistency subverts both this Court's appellate review and the district court's truth-seeking function, amounting to procedural gamesmanship that courts have consistently condemned. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991) (recognizing inherent authority to sanction abusive litigation tactics that undermine judicial processes).

68.     Appellee, one of the wealthiest corporations in the world, deploying nearly unlimited resources and a premier litigation team—including Supreme Court clerks and national practice leaders—has sought to entangle this straightforward appeal in an infinite procedural loop, rather than address Appellant's claims on the merits. Appellee's litigation expenditures for these motions are likely to exceed $200,000, aimed squarely at exhausting Appellant and

foreclosing appellate review. The courts are vested with inherent authority to prevent such abuse, and fairness demands that Appellant be permitted to proceed to briefing. This Court should decline to reward Appellee's procedural gamesmanship, deny the motion to stay or dismiss, and allow this appeal to move forward so that the merits may finally be heard.

69. Appellee's contradictory litigation positions — well-documented across its discovery responses, initial disclosures, district court filings, and this very motion — confirm a sustained pattern of procedural gamesmanship designed to delay resolution and avoid appellate review of potentially meritorious claims. These tactics undermine judicial efficiency and prejudice Appellant's rights. Appellant respectfully requests that this Court deny Appellee's Motion to Stay Briefing or Dismiss Appeal (Dkt. 5), maintain the existing briefing schedule (Dkt. 3) and allow this appeal to proceed in the ordinary course.

Dated: April 8 2025

**/s/ Ashley M. Gjovik**
*Pro Se Plaintiff*

**Email**: legal@ashleygjovik.com
**Physical Address**: Boston, Massachusetts
**Mailing Address:** 2108 N St. Ste. 4553 Sacramento, CA, 95816
**Phone**: (408) 883-4428