CASE NO. 25-2028

---

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

---

ASHLEY M. GJØVIK, *an individual*,

*Plaintiff-Appellant*

v.

APPLE INC., *a corporation*,

*Defendant-Appellee.*

On Appeal from the United States District Court

for the Northern District of California

No. 3:23-CV-04597

The Honorable Judge Edward M. Chen

---

APPELLANT'S OPENING BRIEF

---

**Ashley M. Gjøvik, JD**
*In Propria Persona*
2108 N. St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

| | |
|---|---|
| **TABLE OF AUTHORITIES** | **V** |
| **INTRODUCTION** | **8** |
| **JURISDICTIONAL STATEMENT** | **2** |
| **AUTHORITIES** | **3** |
| **ISSUES PRESENTED** | **3** |
| **STATEMENT OF THE CASE** | **4** |
| **SUMMARY OF THE ARGUMENT** | **5** |
| **STANDARD OF REVIEW** | **7** |
| **ARGUMENT** | **8** |

**I.  THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING REQUESTS FOR INJUNCTIVE RELIEF.**  **9**

A.  CALIFORNIA BUSINESS & PROFESSIONAL CODE § 17200 (UCL) INJUNCTIVE RELIEF.  9

B.  *MARSY'S LAW* & CVRA RIGHTS INJUNCTIVE RELIEF.  11

C.  GJOVIK'S REQUEST FOR JURISDICTION TRANSFER OF THE CERCLA RETALIATION CLAIM.  13

D.  GJOVIK'S REQUEST FOR PRO SE DEFERENCE.  15

E.  THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING THE MOTION TO DISQUALIFY.  16

**II.  THE DISTRICT COURT ABUSED ITS DISCRETION IN DISMISSING CLAIMS WITH PREJUDICE AND/OR WITHOUT LEAVE TO AMEND.**  **17**

F.  THE DISTRICT COURT ABUSED ITS DISCRETION IN DISMISSING CLAIMS BASED ON LACK OF DETAIL WHERE THE REQUIRED DETAIL WAS IN THE SECOND AMENDED COMPLAINT.  17

G.  THE DISTRICT COURT ABUSED ITS DISCRETION IN ALLOWING REPEATED 12G AND 12H VIOLATIONS TO FACILITATE DISCRETIONARY AND ERRONEOUS DISMISSALS.  17

H.  THE DISTRICT COURT ABUSED ITS DISCRETION BY GRANTING RULE 12B6 DISMISSALS OF TOXIC TORT CLAIMS BASED ON IRRELVANT EVIDENCE AND FRAMED AS SANCTIONS.  17

I.  THE DISTRICT COURT ERRORED WHEN REFUSING TO GRANT LEAVE TO SUPPLEMENT CLAIMS WITH ADDITIONAL VIOLATIONS  18

J.  THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING LEAVE TO AMEND APPELLANT'S RICO 1962(A), (C), AND (D) CLAIMS.  20

K.  THE DISTRICT COURT ERRORED IN REFUSING LEAVE TO AMEND AND SUPPLEMENT WITH EXTORTION AND SEXTORTION STATUTES  22

L.  THE DISTRICT COURT ABUSED ITS DISCRETION WHEN DENYING LEAVE TO AMEND THE BANE ACT CLAIMS, GIVEN GJOVIK'S RELIANCE ON THE COURT'S GUIDANCE AND ABILITY TO CURE  24

M.   THE DISTRICT COURT ABUSED ITS DISCRETION WHEN DENYING LEAVE TO AMEND THE BANE ACT CLAIMS, GIVEN GJOVIK'S RELIANCE ON THE COURT'S GUIDANCE AND ABILITY TO CURE ............ 26

**III.   THE DISTRICT COURT ERRORED IN DISMISSING CLAIMS WITH PREJUDICE.** ............ 27

N.   THE DISTRICT COURT ERRORED IN DISMISSING ENVIRONMENTAL PERSONAL INJURY CLAIMS DUE TO STATUTE OF LIMITATIONS BASED ON AN INCORRECT LEGAL STANDARD. ............ 28

O.   THE DISTRICT COURT ERRORED IN DISMISSING ENVIRONMENTAL PERSONAL INJURY CLAIMS WITHOUT CONSIDERING THE CLAIMS AS PUBLIC INTEREST. ............ 30

P.   THE DISTRICT COURT ERRORED & ABUSED ITS DISCRETION BY DISMISSING THE 17200 CLAIM BASED ON AN IMPROPER LEGAL THEORY AND MISCHARACTERIZATION OF GJOVIK'S CLAIMS. ............ 32

Q.   THE DISTRICT COURT ERRORED IN DISMISSING CLAIMS BASED ON AN INCORRECT THEORY OF LIABILITY, AND REFUSING TO CONSIDER THEORIES OF CONSPIRACY, ACCOMPLICE LIABILITY, AND RICO ENTERPRISE. ............ 32

R.   THE DISTRICT COURT ERRORED BY DISMISSING THE RICO 1962(A) AND (D) BASED ON (A) CLAIM UNDER AN INCORRECT LEGAL THEORY AND MISCHARACTERIZATION OF GJOVIK'S CLAIMS. ............ 33

S.   THE DISTRICT COURT ERRED IN DISMISSING APPELLANT'S RICO 1962(C) AND (D) CLAIMS DUE TO LACK OF ENTERPRISE. ............ 36

T.   THE DISTRICT COURT ERRED IN DISMISSING APPELLANT'S RICO 1962(C) AND (D) CLAIMS DUE TO LACK OF CONTINUITY. ............ 39

U.   THE DISTRICT COURT ERRORED IN DISMISSING RICO CLAIMS DUE TO PREDICATE ACTS CONTAINING EMPLOYMENT RETALIATION. ............ 40

V.   THE DISTRICT COURT ERRORED BY DISMISSING THE ULTRAHAZARDOUS ACTIVITIES CLAIM BASED ON AN INCORRECT LEGAL THEORY AND MISCHARACTERIZATION OF GJOVIK'S CLAIMS. ............ 42

W.   THE DISTRICT COURT ERRORED IN DISMISSING ENVIRONMENTAL PERSONAL INJURY CLAIMS WITHOUT CONSIDERATION OF CRIME VICTIM'S RESTITUTION RIGHTS. ............ 44

X.   THE DISTRICT COURT ERRORED IN DISMISSING IIED/NIED CLAIMS BASED ON AN INCORRECT LEGAL STANDARD AND MISCHARACTERIZATION OF GJOVIK'S CLAIMS. ............ 45

**IV.   THE COURT OF APPEALS SHOULD CONSIDER EXERCISING PENDENT JURISDICTION TO CORRECT ERRORS IN ALL CLAIMS.** ............ 47

Y.   THE DISTRICT COURT ERRORED BY DISMISSING ANY RETALIATION CLAIMS DUE TO EXISTING PLAUSIBILITY. ............ 47

Z.   THE DISTRICT COURT ERRORED WHEN DISMISSING 6399.7 BASED ON AN INCORRECT LEGAL STANDARD. ............ 48

AA.   THE DISTRICT COURT ERRORED IN DENYING DODD-FRANK, SOX, AND CERCLA WHISTLEBLOWER CLAIMS UNDER AN INCORRECT LEGAL THEORY AND BASED ON CHARACTERIZATION OF GJOVIK'S COMPLAINTS.                                                                                          49

**CONCLUSION & RELIEF REQUESTED** **50**

**STATEMENT OF RELATED CASES (FORM 17)** **52**

**CERTIFICATE OF COMPLIANCE (FORM 8)** **53**

**CERTIFICATE OF SERVICE** ERROR! BOOKMARK NOT DEFINED.

# TABLE OF AUTHORITIES

## US SUPREME COURT CASES

*Boyle v. United States,* 556 U.S. 938 (2009) ---------------------------------------------- 40

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63 (2006)------------------------51

*Carson v. Am. Brands, Inc.*, 450 U.S. 79, 83–84 (1981) ------------------------------------ 9

*Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949) ----------------------- 9

*Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7–8 (1980) ----------------------------- 3

*Erickson v. Pardus,* 551 U.S. 89 (2007) ------------------------------------------------------16

*Foman v. Davis*, 371 U.S. 178, 182 (1962)------------------------------------------------passim

*Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477, 491 (2010) --15

*H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989) ------------------------- 20

*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 320 (2011).------------------------------10

*Leedom v. Kyne*, 358 U.S. 184, 190 (1958) ------------------------------------------------15

*Luthringer v. Moore*, 31 Cal. 2d 489 (1948) -------------------------------------------- 45

*Medical Marijuana, Inc. v. Horn*, 604 U.S. ____ (2025) -----------------------------------37

*Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009)------------------------------ 8

*Mohawk Industries, Inc. v. Carpenter,* 558 U.S. 100 (2009)------------------------------14

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983) ------------------------ 3

*NLRB v. Gissel Packing Co.*, 395 U.S. 575, 620 (1969) ------------------------------------ 50

*Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) ---------------------------------------- 38

*Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) -------------------------------------- 50

*Thompson v. INS,* 375 U.S. 384 (1964) ---------------------------------------------------- 9

*Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994) ------------------------------------15

## US COURT OF APPEALS CASES

*Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) ------------------------8, 9

*Doe v. United States*, 821 F.2d 694 (D.C. Cir. 1987)----------------------------------------12

*Earth Island Inst. v. Nash*, 92 F.4th 1104, 1114 (9th Cir. 2024) ---------------------------------------8, 9

*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003)----------------- 7, 21, 49

*Gant v. County of Los Angeles*, 772 Fed. Appx. 564, 565 (9th Cir. 2019) -------------------------- 26

*Gant*, 772 Fed. Appx. at 565. ------------------------------------------------------------------------ 27

*Hicks v. PGA Tour, Inc.*, 897 F.3d 1109 (9th Cir. 2018) --------------------------------------------- 38

*In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986 (9th Cir. 2008) ------------------------------ 46

*Karim–Panahi v. L.A. Police Dep't,* 839 F.2d 621, 623 (9th Cir. 1988) ------------------------------16

*Kenna v. U.S. Dist. Court for the C.D. Cal.*, 435 F.3d 1011, 1013 (9th Cir. 2006) ----------------- 47

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998–99 (9th Cir. 2018) ------------------------19

*Kneevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 984 (9th Cir. 2000) ----------------------- 22

*Lezama-Garcia v. Holder*, 666 F.3d 518, 525 (9th Cir. 2011) ------------------------------------- 50, 51

*Lopez v. Smith,* 203 F.3d 1122, 1129–30 (9th Cir. 2000) ---------------------------------------------16

*Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) -------------------------------------------------19

*Mohawk Indus. v. Carpenter*, 558 U.S. 100, 106 (2009) ---------------------------------------------- 9

*Okonowsky v. Garland*, No. 23-55404 (2024) ------------------------------------------------------- 42

*Olsen v. H&R Block*, 682 F.2d 831 (9th Cir. 1982) ------------------------------------------------- 30

*Olsen v. H&R Block*, 682 F.2d 831, 833 (9th Cir. 1982) -------------------------------------------- 30

*Padgett v. Wright*, 587 F.3d 983, 985 (9th Cir. 2009) ---------------------------------------- 3, 8, 9

*Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010) ---------------------------------------------12

*Perry v. Schwarzenegger*, 591 F.3d 1147, 1155 (9th Cir. 2009) -------------------------------------- 9

*Reed v. NLRB*, 927 F.2d 1249, 1254 (D.C. Cir. 1991) ----------------------------------------------- 50

*Reese v. Cnty. of Sacramento,* 888 F.3d 1030 (2018). ----------------------------------------------- 27

*Reese v. County of Sacramento,* 888 F.3d 1030, 1043 (9th Cir. 2018) -------------------------------- 26

*United States v. Gordon*, 393 F.3d 1044, 1052 (9th Cir. 2004) -------------------------------------- 47

*United States v. Hinkson*, 585 F.3d 1247, 1261–62 (9th Cir. 2009) (en banc) ------------------------ 8

*United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc) --------------------------- 9

*United States v. Luis,* 765 F.3d 1061, 1066 (9th Cir. 2014) ------------------------------------------ 47

*United States v. Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981) ----------------------------------- 7

*United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ----------------------------------------19

*Wolfe v. Barnhart,* 446 F.3d 1096 (9th Cir. 2006) ---------------------------------------------------17

US DISTRICT COURT CASES

*Epic Games v. Apple Inc.,* Case No. 4:20-cv-05640-YGR (N.D. Cal. Apr. 30, 2025) ------------ 43

## U.S. CONSTITUTION

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ----------------------------------------------------------- 7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) -------------------------------------------- 7

*U.S. Bank v. Vill. at Lakeridge*, 138 S. Ct. 960, 967 (2018). ------------------------------------ 7

## STATE CASES

*Agarwal v. Johnson*, 25 Cal. 3d 932, 946 (1979). ------------------------------------------------ 48

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503 (1994) ------------------------39

*Austin B. v. Escondido Union School Dist.,* 149 Cal. App. 4th 860, 880 (2007). ----------------- 28

*Bundren v. Superior Court*, 145 Cal. App. 3d 784, 791 (1983) ------------------------------------ 48

*Christensen v. Superior Court,* 54 Cal. 3d 868, 903 (1991) --------------------------------------21, 48

*Cornell v. City and County of San Francisco*, 17 Cal. App. 5th 766, 801 (2017) --------------------- 26

*Cornell v. City and County of San Francisco*, 17 Cal. App. 5th at 804 --------------------------------- 26

Cornell, 17 Cal. App. 5th at 804 ---------------------------------------------------------------------- 27

*County of Los Angeles* (2004) 32 Cal.4th 820, 841-843 ("Venegas I") ----------------------------- 26

*Doe v. Superior Court,* 16 Cal. App. 4th 196 (1993) ---------------------------------------------------14

*Edwards v. Post Transp. Co.*, 228 Cal. App. 3d 980 (1991) -------------------------------------------- 45

*Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009). --------------------------------------------------- 48

*Hughes v. Pair,* 46 Cal.4th 1035 (2009) --------------------------------------------------------------- 43

*Koebke v. Bernardo Heights Country Club,* 36 Cal. 4th 824, 841 (2005) ---------------------------- 28

*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1148 (2003) --------------------------10

*Schuck v. Beck*, No. 37213-8-III (Wash. Ct. App. 2021) ----------------------------------------------- 46

*Venegas v. County of Los Angeles,* 32 Cal. 4th 820, 843 (2004) ------------------------------------- 26

## U.S. AND STATE STATUTES

18 U.S.C. § 1512 ----------------------------------------------------------------------------- 25, 41, 44

18 U.S.C. § 1513 ------------------------------------------------------------------------------------ 42

18 U.S.C. § 1951 ------------------------------------------------------------------------------------ 24

18 U.S.C. § 1951 (The Hobbs Act) -------------------------------------------- 23

18 U.S.C. § 1961(1)--------------------------------------------------- 20, 44

18 U.S.C. § 3771(e) ----------------------------------------------------- 47

28 U.S.C. § 1291------------------------------------------------------ 3, 29

28 U.S.C. § 1292(a)(1)-------------------------------------------------2, 9, 11

28 U.S.C. § 2201 ------------------------------------------------------15

42 U.S.C. § 9613-------------------------------------------------------15

Cal. Civ. Code § 51.7------------------------------------------------- 28

California Fair Employment and Housing Act (FEHA) -------------------------------11

California Government Code § 12945.8-------------------------------------12

California Labor Code §§ 230 and 230.1 ---------------------------------- 11

California Penal Code §§ 518, 518.5------------------------------------- 23

California Penal Code Section 518.5 -------------------------------------- 24

Clean Air Act, 42 U.S.C. § 7413(c) --------------------------------------- 47

Crime Victims' Rights Act (CVRA)-----------------------------------------13

Resource Conservation and Recovery Act (RCRA), 42 U.S.C. § 6928(d)------------------------ 47

### U.S. AND STATE RULES & REGULATIONS

Federal Rule of Civil Procedure 12(b)(6) --------------------------------------- 7

Federal Rule of Civil Procedure 54(b) ------------------------------------------ 2

### TREATISES

Fisher Phillips, "*New Law Reframes Victim-of-Violence Leave in California,*" Sept. 30, 2024 ---12

Restatement (Second) of Torts § 520------------------------------------ 45

# LEGISLATIVE HISTORY

Assembly Bill 2499 (AB 2499) --------------------------------------17

# INTRODUCTION

Ashley Gjøvik (pronounced "JOE-vick") is an employee who, after exposing serious environmental and safety violations within Apple, was subjected to corporate retaliation that escalated into harassment, surveillance, and intimidation. This brief supports her appeal of the district court's dismissal of her RICO, 17200, IIED, and toxic tort claims against Apple. The claims should not have been dismissed at the Rule 12(b)(6) stage, as the complaints properly allege a pattern of racketeering and toxic exposure that not only violate federal and state laws but also harm public interest and societal values concerning transparency, corporate accountability, public health, and environmental protection.

Gjovik's case against Apple presents critical legal questions surrounding corporate accountability and environmental harm. The District Court's dismissal of her RICO and toxic tort claims at the 12(b)(6) stage overlooked substantial factual allegations of systemic corporate misconduct, including fraud, retaliation, and unlawful toxic waste dumping. These briefs support Gjovik's appeal to the Ninth Circuit, urging the Court to reinstate her claims based on a compelling legal framework that aligns with both federal statutes and public policy regarding corporate malfeasance, environmental protection, and the rights of whistleblowers.

This appeal is brought to correct what Gjovik believes are significant legal errors, not to impugn the integrity of the district court or its judge. Judge Edward Chen is a distinguished jurist, deeply respected for his commitment to civil rights and public service. Gjovik recognize the complexity of this case and the challenges posed by the conduct of the defendants, who have at times escalated rather than resolved conflict. Gjovik believes Judge Chen did his best with a difficult record, and nothing in this brief is intended as a personal criticism. Gjovik's concern lies with ensuring that the legal standards are correctly and consistently applied.

Appellant (holding a J.D. and a Certificate in Public International Law from Santa Clara University School of Law, 2022) appears pro se by choice and necessity. The scope and complexity of this litigation — spanning constitutional violations, retaliation, labor law violations, threats, harassment, RICO claims, concurrent

1

agency actions, criminal investigations, and environmental harms — has made self-representation the only practical way to fully present the matters at issue.

Apple has declined to engage in settlement discussions, making litigation necessary. For professional attorneys, litigation against this particular defendant — appears to be economically unviable. Additionally, due to the case's volume and interdisciplinary nature, retaining counsel would likely require significant narrowing or abandonment of key claims that Gjovik is prepared to develop and which raise important matters of public interest. Accordingly, Gjovik proceeds without counsel to ensure that the legal and factual record is preserved and presented as fully as possible and makes every effort to comply with the Court's rules despite extremely limited resources.

## Jurisdictional Statement

This Court has jurisdiction under multiple, independently sufficient grounds: First, pursuant to 28 U.S.C. § 1292(a)(1), this Court has jurisdiction over the district court's interlocutory orders denying injunctive relief. These are immediately appealable as of right. The orders in question denied preliminary or permanent relief to prevent ongoing harm, and their denial has serious, irreparable consequences.

Second, under the collateral order doctrine, this Court has jurisdiction to review certain discretionary dismissals that are conclusive, resolve important questions of law, and are effectively unreviewable on final appeal. The District Court dismissed several claims by applying incorrect legal standards or exercising discretion in ways that defy procedural norms and evade appellate review unless addressed now.

Third, although the district court declined to enter judgment under Federal Rule of Civil Procedure 54(b), the dismissed claims are functionally final. They are separate from those remaining, involve distinct legal theories and factual records, and their dismissal precludes meaningful relief. Accordingly, these dismissals qualify as final decisions under 28 U.S.C. § 1291, or alternatively, warrant appellate review under *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983).

2

Finally, this Court may exercise pendent appellate jurisdiction over related non-final orders where they are *"inextricably intertwined"* with the properly appealable rulings or necessary to ensure meaningful review. Appellant raises systemic legal errors that affect ongoing claims, and review of these errors is necessary to prevent ongoing legal harm and to clarify governing doctrine.

In the interest of ensuring orderly procedure and avoiding duplicative filings, Appellant respectfully submits that the time to appeal the relevant orders should be deemed tolled, or alternatively, subject to equitable principles, during the pendency of the reconsideration motion. Gjovik now brings this appeal following the Court's recent disposition and does so in good faith and with the aim of ensuring the merits may be fully and properly addressed.

Although the district court denied Gjovik's motion for Rule 54(b) certification, that denial does not preclude appellate review. The Ninth Circuit evaluates the appealability of orders independently and may exercise jurisdiction where the district court's decision effectively ends the litigation on separable claims, qualifies under the collateral order doctrine, or denies injunctive relief. See *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7–8 (1980); *Padgett v. Wright*, 587 F.3d 983, 985 (9th Cir. 2009). Here, the claims at issue are factually and legally distinct, the challenged rulings are conclusive, and several grounds for appellate jurisdiction apply regardless of Rule 54(b) certification.

## AUTHORITIES

All relevant statutory, constitutional, and regulatory authorities, including full versions of the excerpted portions here, appear in the Addendum to this brief.

## ISSUES PRESENTED [1]

---

[1] Appellant-Plaintiff was unable to finish her brief on time within page limits if she listed out every issue presented, due to the numerous issues and complexity -- so here lists issues in groups, which are reflective of the argument sections, where issues are then detailed per topic / group. If that is not sufficient, Plaintiff will happily file a supplement with the additional content if allowed.

- The U.S. Court of Appeals should accept jurisdiction of this case. (Section I).
- The District Court abused its discretion in denying requests for Injunctive Relief (Section II).
- The District Court abused its discretion in dismissing # claims with prejudice and/or without leave to amend. (Section III).
- The District Court Errored in Dismissing Claims with Prejudice. (Section IV).
- The Court of Appeals should consider exercising pendent Jurisdiction to correct errors made in non-Final claims. (Section V).

## Statement of the Case

This appeal arises from a high-stakes and multifaceted dispute involving retaliation, environmental harm, and systemic corporate misconduct, including violations under RICO, California civil rights statutes, and common law torts. Following Apple's termination of Ashley Gjovik in September 2021, Apple engaged in an aggressive campaign of intimidation, denylisting, and retaliation aimed at deterring protected activity and litigation. Among these actions, Apple resorted to SWATing, burglary, hacking, witness tampering, threats, and various threats designed to silence Gjovik and prevent her from speaking out.

The District Court dismissed Gjovik's RICO claims under Rule 12(b)(6), initially granting leave to amend the § 1962(c) and (d) claims but later denying any amendment and dismissing these claims with prejudice. The court similarly dismissed civil rights claims under the Ralph and Bane Acts, as well as intentional infliction of emotional distress (IIED), concluding that the alleged conduct was either not legally actionable or that amendment would be futile.

Additionally, Gjovik alleged exposure to unlawful industrial emissions and the concealment of toxic risks associated with semiconductor fabrication byproducts, which were not disclosed by Apple. Claims for nuisance, toxic tort, and negligent infliction of emotional distress (NIED) were dismissed based on statute of limitations grounds, despite the fact that Gjovik filed her suit only months after discovering the

4

source and nature of her exposure in 2023. The court rejected the application of the discovery rule, asserting that Gjovik should have identified the fabrication facility and its emissions sooner, which was not reasonable given the company's concealment of crucial information.

Gjovik now seeks review of the district court's improper dismissal of her claims without leave to amend, its denial of injunctive relief, and its refusal to fully address the scope of post-employment retaliation and systemic misconduct outlined in her pleadings. The Ninth Circuit must consider the gravity of these claims, as Apple's actions—ranging from intimidation and harassment to exposure to harmful substances—should not be shielded by procedural dismissals at the 12(b)(6) stage. These claims raise critical issues of corporate accountability, employee rights, and public health, which warrant proper adjudication and remedy.

## SUMMARY OF THE ARGUMENT

First, the district court's denial of an injunction under California's UCL (Business and Professions Code § 17200) was improper. Gjovik sought an injunction to address Apple's fraudulent practices and retaliatory conduct against her as a whistleblower. The court's refusal to grant injunctive relief prevented Gjovik from addressing ongoing harm, including reputational damage and unlawful business conduct. The denial of such relief undermines the policy goals of the UCL, which seeks to stop unfair business practices, including those based on fraud and public harm.

Second, the district court wrongly denied injunctive relief under the CVRA, which guarantees victims rights. Gjovik, as a victim of corporate misconduct involving toxic waste dumping and witness intimidation, should have been afforded these rights under the CVRA. The denial of an injunction to protect her rights to participate in the criminal justice process constitutes an error, especially when her toxic torts claim involves ongoing harm that requires immediate intervention to prevent further violations of her rights. The court acknowledged she has well pled

uncontested claims for retaliation due to status a victim of crime (230e), yet refused to provide her any of the rights designated for crime victims.

Regarding the final dismissals of Gjovik's claims, the district court's decision to dismiss her RICO claims, particularly those arising from fraudulent business practices, toxic waste disposal, and witness intimidation, should be reversed. The court failed to recognize that the predicate acts under 18 U.S.C. §§ 1962(a), (c), and (d), clearly support a RICO violation. Gjovik's allegations show a pattern of corporate misconduct, and the court's refusal to allow amendment to her RICO claim, despite presenting valid factual support for these allegations, was an abuse of discretion. The district court's dismissal of the Bane Act and Ralph Act claims should also be reversed. These claims involve serious civil rights violations stemming from retaliation and intimidation, which were improperly dismissed under the mistaken belief that they did not meet the legal threshold for these statutory claims. Similarly, the IIED and NIED claims, which stem from the retaliatory and harmful conduct of Apple, should have been allowed to proceed, as they clearly meet the legal standard for outrageous conduct.

Finally, Gjovik's toxic tort claims related to the toxic waste dumping and subsequent health effects should have survived dismissal. The district court misapplied the statute of limitations and discovery rule, ignoring the fact that fraudulent concealment and retaliatory actions delayed her awareness of the full extent of her injuries. These claims involve ongoing harm, and the court improperly prevented her from proceeding to trial based on an incorrect legal theory.

The district court's denial of injunctive relief under the CVRA and UCL, along with the final dismissal of key claims (RICO, Bane Act, Ralph Act, IIED, NIED, and toxic torts), was a legal error and an abuse of discretion. The Ninth Circuit should reverse the district court's decisions and allow Gjovik's claims to proceed, as these issues raise significant public policy concerns and corporate accountability related to environmental harm, whistleblower retaliation, and fraud. The CVRA rights to participate in the criminal process and the UCL protections

6

against fraudulent business practices must be upheld for justice to be served.

## STANDARD OF REVIEW

Because this appeal arises from orders granting motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), and denying leave to amend, all legal issues are reviewed de novo. The Court accepts the well-pleaded allegations in the complaint as true and determines whether they state a claim upon which relief can be granted. See *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Legal conclusions, constitutional issues, and mixed questions of law and fact are also subject to de novo review. See *U.S. Bank v. Vill. at Lakeridge*, 138 S. Ct. 960, 967 (2018).

A district court's denial of leave to amend is reviewed for abuse of discretion, but this standard is applied with extreme liberality, especially where amendment could cure pleading deficiencies. See *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Dismissal is improper where a complaint plausibly alleges facts that, if true, would entitle the plaintiff to relief, or where amendment would not be futile. See *Foman v. Davis*, 371 U.S. 178, 182 (1962); *United States v. Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981). In this context, "abuse of discretion" is a misnomer. The Ninth Circuit has made clear that denial of leave to amend at the pleading stage must be justified by compelling reasons and is not entitled to significant deference, especially when amendment is sought early, offered in good faith, and presents plausible claims. See *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir. 2003); *Foman v. Davis,* 371 U.S. 178, 182 (1962).

The denial of injunctive relief is reviewed for abuse of discretion, but that standard is applied with rigor. A district court abuses its discretion if it bases its decision on an erroneous legal standard, applies the correct standard improperly, or makes clearly erroneous factual findings. See *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011); *Earth Island Inst. v. Nash*, 92 F.4th 1104, 1114 (9th Cir. 2024). Legal conclusions underlying injunctive rulings are reviewed de novo. See

*United States v. Hinkson*, 585 F.3d 1247, 1261–62 (9th Cir. 2009) (en banc).

Appellate review of collateral orders—those falling within the exception of the final judgment rule—also turns on legal content. Whether an order satisfies the *Cohen* criteria is a question of law, reviewed de novo. See *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009); *Padgett v. Wright*, 587 F.3d 983, 985 (9th Cir. 2009). If the collateral order involves the denial of injunctive relief or the rejection of constitutional protections, the Court must assess both the jurisdictional threshold and the substantive ruling under appropriate standards—typically de novo for legal issues and abuse of discretion for remedy-based decisions.

## ARGUMENT

Gjovik exposed Apple's covert orchestration of massive toxic waste dumping, corruption and cover-ups, and intimidation and retaliation. When this misconduct is viewed from an expanded viewpoint, it's clear Apple's conduct violates the Racketeer Influenced and Corrupt Organizations (RICO) Act and numerous other federal statutes. The Ninth Circuit must consider the gravity of these claims, as the company's actions — including intimidation, harassment, and exposure to harmful substances — should not be shielded by a procedural dismissal at the 12(b)(6) stage.

Appellant respectfully submits that this appeal is timely under either standard appellate timelines or, in the alternative, under established equitable doctrines. A prior notice of appeal was filed within 30 days of the district court's denial of injunctive relief and other relevant rulings. That notice was dismissed by the Court following a motion by Appellees. Appellant then submitted a motion for reconsideration or clarification of jurisdiction, which remained under submission until last week, when the Court concluded those proceedings.

Courts have recognized that under appropriate circumstances, the time to appeal may be tolled or deemed preserved when a litigant has acted in good faith, sought clarification, and awaited guidance before re-filing. See, e.g., *Thompson v. INS*, 375 U.S. 384 (1964). Appellant respectfully asks that the Court view the current

notice of appeal in that light and permit the appeal to proceed to briefing and disposition on the merits.

## I. THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING REQUESTS FOR INJUNCTIVE RELIEF.

This Court has jurisdiction to review the denial of injunctive relief under 28 U.S.C. § 1292(a)(1) and may also review certain interlocutory rulings under the collateral order doctrine. See *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 83–84 (1981); *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). Injunctive rulings are reviewed for abuse of discretion but underlying legal conclusions and the application of incorrect legal standards are reviewed de novo. See *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011); *Earth Island Inst. v. Nash*, 92 F.4th 1104, 1114 (9th Cir. 2024). A district court abuses its discretion when it misstates the law, misapplies the correct standard, or fails to meaningfully engage with the facts alleged. See *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

The collateral order doctrine permits immediate appeal of a narrow class of non-final orders that conclusively resolve important legal issues, are separate from the merits, and would be unreviewable after final judgment. See *Mohawk Indus. v. Carpenter*, 558 U.S. 100, 106 (2009); *Padgett v. Wright*, 587 F.3d 983, 985 (9th Cir. 2009). This doctrine often applies to orders implicating constitutional protections, or irreparable rights. Review is de novo where the collateral order turns on legal interpretation. *See Perry v. Schwarzenegger*, 591 F.3d 1147, 1155 (9th Cir. 2009). Where the district court has applied the wrong legal framework or failed to consider critical legal rights, appellate review is required. Although discretionary in form, the rulings challenged here rest on legal error, and thus merit non-deferential review.

### A. CALIFORNIA BUSINESS & PROFESSIONAL CODE § 17200 (UCL) INJUNCTIVE RELIEF.

California's Unfair Competition Law prohibits unfair, unlawful, or fraudulent business practices, including deceptive advertising and misuse of data. Cal. Bus. &

Prof. Code § 17200. To establish standing under the UCL, plaintiffs must show they have suffered an injury in fact and that they have lost money or property as a result of the defendant's unlawful conduct. *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1148 (2003). Gjovik can demonstrate economic loss by proving that Apple's conduct caused them to either pay more for a product than they otherwise would have, lose a property interest, or engage in a transaction that was unnecessarily costly. *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 320 (2011).

Gjovik alleges that Apple engaged in covert biometric data harvesting under the guise of workplace wellness and product testing. Apple directed its employees, including Gjovik, to participate in internal projects involving the collection of secret videos/photos and sensitive biometric data, such as facial geometry, gait, and vital signs. This data was used to develop internal algorithms, with no meaningful consent provided by employees, and customers were never informed of the data usage. (Note that Ninth Circuit court staff who live and work near Apple employees, may also have had secret photos, videos, and biometrics captured of them previously, secretly from these employees phones, and sent back to Apple to store and use for commercial purposes, with Apple threatening staff the secret photos of you are a trade secret).

When Gjovik raised concerns about the ethics and legality of these practices, she was punished and ultimately terminated. This practice presents an unsettled legal issue at the intersection of employee rights, consumer privacy, and biometric data regulation. There is a critical need for judicial review to clarify the boundaries of acceptable business practices versus exploitative and retaliatory data harvesting.

Gjovik sought preliminary and permanent injunctive relief to prevent Apple from continuing its illegal biometric data practices. However, the district court denied the injunction without meaningful analysis, and subsequently dismissed Gjovik's UCL claim. Apple then weaponized the dismissal to seek protective orders to classify these unlawful practices as "confidential" or "trade secrets," effectively suppressing discovery and discussion of its misconduct.

This Court should review the district court's denial of injunctive relief under

10

28 U.S.C. § 1292(a)(1), particularly in light of the chilling effect of allowing defendants to shield potentially illegal conduct.The core issue is not simply whether the UCL claim was dismissed, but whether the Court will allow Apple to institutionalize secrecy around its unlawful practices, effectively preventing meaningful redress for the public and employees. [See also, Appellant's 5/7 Motion for Injunctive Relief related to the basis of the UCL claim].

### B. *Marsy's Law* & CVRA Rights Injunctive Relief.

Appellant invoked her rights under *Marsy's Law*, the California Constitution, and parallel statutes to be treated as a crime victim during the discovery phase of this litigation. She cited multiple predicate acts, including physical harm, threats, obstruction of justice, and retaliatory surveillance. The District Court summarily denied the request without analysis.  As states increasingly embed constitutional victim rights into both criminal and civil contexts, courts must determine when those rights carry enforceable procedural weight. This appeal provides an opportunity to clarify the constitutional floor of dignity and protection owed to those who suffer criminal harms intertwined with civil retaliation.

Assembly Bill 2499 (AB 2499), signed into law by Gov. Newsom on Sept. 29, 2024, represents a legislative watershed moment for the protection of employees who are victims of violent crime. Effective Jan. 1 2025, AB2499 repeals former California Labor Code §§ 230 and 230.1 and recasts their protections as enforceable civil rights under the California FEHA, codified at California Government Code § 12945.8. This expansion unambiguously confirms the California Legislature's intent to elevate the status of crime victims in the workplace to that of a protected class, granting them full access to the courts and civil enforcement mechanisms to seek redress against retaliation, discrimination, and ongoing victimization.

Collateral order appeals are particularly recognized in discovery disputes that implicate rights not fully remediable after final judgment. In, *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010), the Ninth Circuit permitted an appeal of an order

11

compelling internal campaign communications on First Amendment grounds. The Court held that compelled disclosure of expressive association materials could chill constitutional rights and was unreviewable later In *Doe v. United States*, 821 F.2d 694 (D.C. Cir. 1987), the court allowed interlocutory appeal from a discovery order threatening the movant's privacy rights. Thus, where a litigant claims that a discovery order violates state constitutional rights (e.g., privacy or free association under a state bill of rights) or federal statutory protections and where such violation would not be correctable on appeal from final judgment, the Ninth Circuit has discretion to exercise jurisdiction under the *Cohen* doctrine.

Gjovik respectfully submits that the Ninth Circuit must establish a judicial test for determining the procedural rights of crime victims in civil litigation. This includes ensuring that crime victims' constitutional and statutory rights are upheld during discovery and litigation — especially when abusive tactics, retaliation, and harassment by the Apple threaten to obstruct or silence the victim's participation in the legal process.

The lower court denied Gjovik's right to invoke Marsy's Law (California Constitution, Article I, § 28(b)), AB 2499, and CVRA during discovery proceedings -- which is a clear error. The Ninth Circuit should reverse the district court's ruling and establish clear guidelines for how crime victims' rights are respected in civil discovery. This case presents an issue of first impression, and the Ninth Circuit is in the unique position to set precedent that will ensure victim rights are respected nationwide. The Ninth Circuit must determine whether the individual asserting crime victim rights in civil litigation qualifies as a crime victim. The Crime Victims' Rights Act (CVRA) applies nationwide to federal witnesses, protecting them from intimidation or retaliation in civil matters.

If the district court has denied a crime victim's right to participate fully in civil litigation, the Ninth Circuit should find that such a decision constitutes a collateral order and should be immediately appealable. This denial results in irreparable harm from abusive discovery tactics that retraumatize crime victims, obstruct government

investigations and proceedings, and silence their ability to testify and report further misconduct to law enforcement or regulators. *Mohawk Industries, Inc. v. Carpenter,* 558 U.S. 100 (2009) clarifies that denials of victim rights in civil discovery can be immediately reviewed under the collateral order doctrine.

A stay of district court proceedings should also be granted, as the stakes are high, any damage done during discovery cannot be undone later, and much damage has already been done. [see Motion for Injunction]. Federal courts have an obligation to enforce state legal protections on matters of victim rights under *Erie Railroad Co. v. Tompkins* (1938). As recognized in *Doe v. Superior Court,* 16 Cal. App. 4th 196 (1993), courts must balance discovery with constitutional protections for privacy and dignity, particularly in cases involving mental health records, trauma, or victimization.

### C. Gjovik's Request for Jurisdiction Transfer of the CERCLA Retaliation Claim.

Gjovik brought a retaliation claim under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9613(h), arising from protected disclosures related to violations of the site's Record of Decision, Land Use Covenant, and vapor intrusion safety requirements. CERCLA does not include administrative exhaustion requirements and does not delegate whistleblower adjudication to the Department of Labor or any agency tribunal. Instead, it expressly places jurisdiction over enforcement actions and related retaliation claims in the U.S. District Courts.

Despite this clear statutory directive, the Department of Labor has retained jurisdiction over Gjovik's CERCLA retaliation claim since 2021 through its whistleblower program, erroneously asserting authority that Congress did not grant. Gjovik requested the District Court assert jurisdiction over the claim and prohibit further administrative proceedings, but the court declined or failed to act, effectively permitting the *ultra vires* retention of the matter by the agency. This failure amounts to a constructive denial of equitable relief and opens a jurisdictional vacuum that

13

contradicts both the statutory scheme and fundamental constitutional principles.

Nothing in CERCLA authorizes the Department of Labor to adjudicate retaliation claims. Unlike other environmental statutes (e.g., the Clean Air Act or RCRA), CERCLA lacks provisions granting OSHA or the Secretary of Labor adjudicatory authority over whistleblower complaints. The relevant section, 42 U.S.C. § 9613, clearly situates jurisdiction for CERCLA-based claims in the U.S. District Courts, not in administrative proceedings.

Any attempt by the Department to retain such a claim is an exercise of power not delegated by Congress, rendering the proceeding void ab initio and violative of the separation of powers. See *Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477, 491 (2010) ("The separation of powers does not depend on the views of individual Presidents, nor on whether the encroached-upon branch approves the encroachment."); see also *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994) (allowing pre-enforcement review where agency proceedings pose constitutional or jurisdictional questions not committed to the agency).

Gjovik's request was narrowly tailored: to have the District Court assert jurisdiction over the CERCLA claim, declare it no longer within the agency's authority, and prohibit duplicative administrative action on the matter. The Court was not asked to enjoin the agency generally, nor to interfere in unrelated matters — only to protect the Gjovik's access to a proper forum for her claim.

This relief is well within the District Court's equitable powers under 28 U.S.C. § 2201 and its inherent authority to protect its jurisdiction. It is also consistent with federal precedent permitting courts to enjoin *ultra vires* agency actions that threaten constitutional rights or exceed statutory authority. See also *Leedom v. Kyne*, 358 U.S. 184, 190 (1958) ("This Court cannot lightly infer that Congress does not intend judicial protection of rights it confers against agency action taken in excess of delegated powers.")

Because the CERCLA retaliation claim was improperly retained by the Department of Labor and the District Court failed to assert jurisdiction or prohibit

agency overreach, this Court should reverse the effective denial of equitable relief, hold that the CERCLA claim is properly before the District Court, and direct the court below to enter an order prohibiting further agency adjudication of the CERCLA matter. Further, if the court feels adventurous, it does seem proper to enjoin U.S. DOL from claiming exclusive jurisdiction over claims of which they have no jurisdiction (i.e., CERCLA whistleblower retaliation). [2]

### D. Gjovik's Request for Pro Se deference.

The Ninth Circuit has long held that pro se litigants are entitled to notice, opportunity to amend, and hearings before dismissal, unless the complaint is legally frivolous — which this was not. *Karim-Panahi v. L.A. Police Dep't,* 839 F.2d 621, 623 (9th Cir. 1988); *Lopez v. Smith,* 203 F.3d 1122, 1129–30 (9th Cir. 2000). Gjovik received no meaningful hearing, was denied scheduling and oversight, and was procedurally cornered into default without formal adjudication. This violates due process.

In the Ninth Circuit, pro se litigants—individuals who represent themselves without the assistance of an attorney—are generally afforded some level of leniency in recognition of the challenges they face in navigating the legal system. This leniency can include deference in procedural matters. Notably, the Ninth Circuit recognizes that a pro se litigant is not held to the same standard as a licensed attorney, especially when it comes to legal procedures, complex motions, or strict adherence to court rules.

Here, the court issued procedural rules and expectations that far exceeded the FRCP and local rules, and the court did not hold Apple's counsel to these rules, and admonished Gjovik about any imperfections in procedure or timing. ("Admonished" is the characterization used by Apple's counsel while gloating about it in a later

---

[2] The District Court's interpretation of the CERCLA is reviewed de novo. See Arconic, Inc. v. APC Inv. Co., 969 F.3d 945, 950 (9th Cir. 2020), cert. denied sub nom. APC Inv. Co. v. Howmet Aerospace Inc., 141 S. Ct. 2838 (2021). Jurisdictional issues are also reviewed de novo. See United States v. Shell Oil Co., 294 F.3d 1045, 1052 (9th Cir. 2002).

hearing and gleefully urging the court to "further admonish" Gjovik).

Plaintiff's responses repeatedly asked the court to provide her the deference of a pro se litigate because she was not an attorney, was overpowered by Apple's resources, had no resources, have ADHD and autism, suffer from severe PTSD, and was suffering extremely severe emotional distress from the events and situation. The court repeatedly said no, even expressly saying PTSD is no excuse to request an extension – in a crime victim retaliation & IIED case. It would be impossible for Gjovik to plead an IIED claim while concurrently having no severe distress.

### E. The District Court Abused its Discretion in Denying the Motion to Disqualify.

Gjovik filed a Motion to Disqualify Apple's counsel due to them being fact witnesses as they were retained and involved in her case well prior to the defendant's termination of Gjovik's employment – something they hid until after it was too late for Plaintiff to raise again – waiting over a year to share their privilege log, which recently revealed this. Only through FOIA did Gjovik also then learn that these same counsel were involved in concocting the farcical pretext for her termination, and they intentionally chose to use naked photos of Gjovik in the formal documentation for the termination. These naked photos were taken by the face "Gobber" application on Gjovik's phone and were distributed by the global security employee Appleseed, who later sued and stalked Gjovik, and even sent several letters to the district court with sworn declaration making false allegations against Gjovik and demanding to have all evidence and allegations about her removed from the case.

The U.S. District Court errored in cancelling the hearing and not questioning Apple's counsel, and instead taking them at their word, despite these facts, allegations, and evidence. Gjovik also complained about years of digital harassment from accounts she believed to be controlled by these attorneys, and cited harassment through the formal litigation process as well. Apple told the court that they were not witnesses, said they never harassed her, and claimed the motion was baseless. The court denied the motion to disqualify in error of law and procedure, and with abuse

16

of discretion. Due to the situation there should have at least been an evidentiary hearing; plaintiff even filed multiple exhibits.

## II. The District Court Abused its Discretion in Dismissing Claims with Prejudice and/or without Leave to Amend.

### F. The District Court Abused its Discretion in Dismissing Claims Based on Lack of Detail where the Required Detail was in the Second Amended Complaint.

The District Court dismissed half of Gjovik's claims for failing to meet Rule 12(b)(6) plausibility standards, despite (1) the factual detail included in the original, comprehensive complaint, and (2) the district court's own acknowledgment that the longer version contained the relevant facts. This dismissal is not only logically inconsistent — it is substantively indefensible in light of the actions taken by two separate federal agencies on the very same factual basis.

### G. The District Court Abused its Discretion in allowing repeated 12g and 12H violations to facilitate discretionary and erroneous dismissals.

The District court errored in allowing Apple filed repeated subsequent 12(b)(6) and 12(f) motions, in knowing violation of 12(g) and 12(h). The court allowed it, refused to allow Gjovik additional supplementation or briefing, and dismissed these claims for almost entirely discretionary and erroneous reasons. Reflecting upon Gjovik's complaint the 12(b)(6) motions were harassment, he said they were not, because he did dismiss things, but it was all erroneous.

### H. The District Court Abused its Discretion by Granting Rule 12B6 Dismissals of toxic tort claims Based on Irrelvant Evidence and Framed as sanctions.

While evidentiary rulings such as judicial notice are generally discretionary, the Court reviews de novo whether a district court improperly considered or excluded materials in resolving a Rule 12(b)(6) motion. See *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998–99 (9th Cir. 2018). A dismissal based on

17

selective or inconsistent application of the incorporation-by-reference doctrine, or reliance on facts outside the pleadings without converting the motion to one for summary judgment, is improper. See *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

Here, the district court dismissed several claims after granting judicial notice to materials offered by Defendant, while declining to consider Gjovik's responsive materials filed days after the opposition deadline—despite timely filing the opposition itself. To the extent the court relied on disputed materials or treated the timing as grounds to disregard substantive content without analysis, the dismissal reflects not only procedural imbalance but a misapplication of the Rule 12(b)(6) standard, which requires accepting the complaint's allegations as true and drawing all inferences in the Gjovik's favor.

## I. The District Court Errored when refusing to Grant Leave to Supplement Claims with Additional Violations

Gjovik also requests to amend the complaint to add claims supported by new evidence that were not previously available, including an additional predicate act under the RICO statute and a new basis for the IIED claim. The new evidence strengthens Gjovik's allegations of corporate misconduct, particularly with respect to Defendant's systematic use of intimidation, retaliation, and unlawful surveillance.

First, the new predicate act under RICO arises from Defendant's use of Gjovik's personal photographs to further their campaign of harassment and retaliation. This act directly ties into the broader pattern of racketeering activity under 18 U.S.C. §§ 1512 and 1513, involving witness intimidation and retaliation against Gjovik for her whistleblowing actions. The unlawful possession and use of Gjovik's private images qualify as a new form of harassment and coercion, which constitutes a violation of RICO. Under 18 U.S.C. § 1961(1), these acts are recognized as valid predicate offenses of racketeering. By incorporating this new predicate act, Gjovik's RICO claims are further substantiated, showing a continuous and

18

coordinated pattern of racketeering activity orchestrated by Defendant.

The Ninth Circuit has consistently held that the key to determining whether a pattern of racketeering exists is whether the acts are related and continuous. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989). Here, the continuous and related acts of harassment, use of personal images, and obstruction clearly demonstrate that Defendant's actions constitute a sustained effort to suppress Gjovik's disclosures and retaliate against her for exposing wrongdoing. This is the type of ongoing and coordinated activity that RICO is designed to address.

Second, the newly discovered evidence provides a new basis for Gjovik's claim of Intentional Infliction of Emotional Distress (IIED). The use of Gjovik's private photographs for purposes of harassment and intimidation further exacerbates the emotional and psychological harm she suffered. This action constitutes extreme and outrageous conduct, which directly contributed to the severe emotional distress that Gjovik experienced, including anxiety, depression, and other psychological symptoms. The Defendant's actions, including retaliation, surveillance, and the use of private photographs to manipulate and harass Gjovik, rise to the level of "outrageous" conduct necessary to sustain an IIED claim under California law. Given the severity of the harm caused by these actions, and the new evidence, Gjovik's IIED claim should be amended to include this additional basis for recovery.

As *Christensen v. Superior Court,* 54 Cal. 3d 868, 903 (1991), makes clear, IIED claims are permissible when a defendant's actions are "outrageous." In order to even proceed with the instant litigation, she has to face that Apple will be using nonconsensual naked photos of her as their primary "defense" in this case. [See Plaintiff's Motion for Injunction].

The Court should allow Gjovik to amend her IIED claim to reflect the full scope of her emotional distress caused by Defendant's misconduct. Allowing Gjovik to amend her complaint to include the new predicate act under RICO and the expanded IIED claim would ensure that all relevant facts are considered and properly adjudicated. The newly discovered evidence demonstrates a pattern of corporate

19

misconduct and harassment that was previously undisclosed, and it provides additional grounds for Gjovik to seek redress for the harm she has suffered. The Court should grant leave to amend to ensure that Gjovik's claims are fully and fairly presented.

### J. The District Court Abused its Discretion in Denying leave to amend Appellant's RICO 1962(a), (c), and (d) Claims.

The District Court abused its discretion by denying leave to amend Appellant's RICO §§ 1962(a), (c), and (d) claims. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend should be freely granted unless there is evidence of undue delay, bad faith, or futility. The Ninth Circuit applies a liberal standard in favor of amendment when new facts are discovered that could cure deficiencies in a Gjovik's original allegations. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

Gjovik has credibly alleged that Apple's environmental misconduct falls within the purview of predicate acts such as wire fraud, obstruction of justice, and retaliation against whistleblowers. Apple's decision to retaliate against Gjovik — including stalking, harassment, and other intimidating tactics — is consistent with behaviors of organized criminal enterprises that seek to silence those who threaten to expose their wrongdoing. RICO's definition of "enterprise" includes any group of individuals associated with conducting illegal activities. Apple, by its internal structure and its intent to cover up violations, qualifies as such an entity.

Additionally, Gjovik's allegations of fraud, particularly regarding the deceptive reporting of waste diversion under Apple's "*zero waste*" program, reflect widespread corporate manipulation. This is evident in the way Apple purportedly diverted hazardous waste in ways that violated environmental laws but boosted executive pay and made the company appear environmentally responsible. Such actions mirror the systemic fraud seen in previous RICO cases involving corporate malfeasance.

The court's decision to deny amendment in this case was not based on merits

20

but was a discretionary judgment that failed to consider new evidence Gjovik uncovered regarding additional unlawful conduct. The fact that Gjovik discovered more evidence of wrongdoing after the original dismissal, which would have supported the RICO claims, should have warranted leave to amend the complaint.

Gjovik's RICO claims, dismissed without prejudice, were sufficiently pled to meet the basic requirements under *Twombly* and *Iqbal*. The District Court's denial of leave to amend was not based on any substantive legal analysis but on an arbitrary preference for an expedited resolution. When a claim is plausible, plaintiffs should be given the opportunity to amend, especially where they have not been afforded a fair chance to fully plead their case. Denying this opportunity to amend was an abuse of discretion that deprived Gjovik of a fair opportunity to substantiate her claims.

The Ninth Circuit has repeatedly stated that dismissals with prejudice and denials of amendment are subject to strict scrutiny, particularly when new facts arise that could potentially strengthen the claims. *See Kneevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 984 (9th Cir. 2000). The District Court, by denying amendment, effectively prevented Appellant from presenting a full record of misconduct. Given the complexity of the alleged wrongdoing and the ongoing nature of the fraudulent activities, the Ninth Circuit should find that the denial of leave to amend was an abuse of discretion, especially since newly discovered evidence could have provided the necessary factual basis to support Appellant's claims under RICO.

In denying leave to amend, the district court expressed a preference for expedited resolution, suggesting Gjovik refrain from amending to allow Apple to answer and move the case forward. However, Rule 12(b)(6) is not a procedural tool to dismiss meritorious claims simply for the sake of efficiency. *Foman v. Davis,* 371 U.S. at 182, dictates that courts must permit amendment unless the claims are entirely unamendable. Gjovik's RICO claims were plausibly pled and could have been strengthened through amendment. The refusal to allow amendment contradicts the fundamental principle that plaintiffs should be given the chance to cure deficiencies in their pleadings unless the claims are beyond saving.

21

For the reasons stated above, the dismissal of Gjovik's RICO §§ 1962(a) and (d) claims with prejudice was improper and should be reversed. The District Court's dismissal of RICO §§ 1962(c) and (d) based on c claims should also be reversed, and Gjovik should be given an opportunity to amend and fully state the enterprise and continuity elements, as leave to amend is routinely granted in the Ninth Circuit. Finally, the district court's refusal to allow any further amendments was an abuse of discretion and inconsistent with well-established rules of civil procedure. Gjovik's claims are plausible and deserve the opportunity to be fully litigated.

## K. The District Court Errored in Refusing Leave to Amend and Supplement with Extortion and Sextortion Statutes

Gjovik also seeks to amend her complaint to include claims of extortion and sextortion under Cal. Penal Code §§ 518, 518.5, as well as federal extortion statutes under 18 U.S.C. § 1951 (The Hobbs Act). These statutes are relevant because they criminalize coercive conduct that involves the use of threats to obtain something of value or to compel a person to do something against their will. The newly discovered evidence, particularly involving the unlawful possession and dissemination of Gjovik's private photographs, forms the foundation for these claims. alifornia Penal Code Section 518 defines extortion as the obtaining of property from another through the wrongful use of force, fear, or threats. *Sextortion*, specifically addressed under California Penal Code Section 518.5, involves threats to distribute private, intimate images unless the victim complies with certain demands.

In this case, the sextortion claims raised by Gjovik are deeply connected to the witness intimidation she experienced after exposing Apple's corporate wrongdoing in the Batterygate incident.[3] Gjovik alleges that Defendant's conduct—harassing, intimidating, extorting, and coercing her using her private nude photographs,

---

[3] See for example, iPhone Slowdown Class Action $500 million Settlement (USA – March 2020); "Batterygate" Multistate $113 million Settlement (USA – November 2020); French "Batterygate" €25 million Fine (France – February 7, 2020).

combined with the objectives of Apple's extortion being obstructing her from being a witness to U.S. government against Apple, and the threat of Apple using these images to further manipulate of her—is a scheme fits squarely within the statutory definitions of extortion and sextortion (and racketeering). Defendant's use of Gjovik's private photos in retaliation for whistleblowing, and to prevent more whistleblowing, not only subjected Gjovik to unlawful control but also severely compromised her personal privacy and safety.

Gjovik's allegations show that after she complained about Apple's use of sextortion in connection with her role as a witness to corporate misconduct, Apple escalated its harassment by engaging in further sextortion in retaliation for her whistleblowing. This type of conduct, wherein sextortion is used as both a tool of witness intimidation and retaliation, is precisely the kind of activity that falls within the RICO framework. Under 18 U.S.C. § 1512 (witness tampering) and § 1513 (retaliation against informants), such retaliatory acts are predicate offenses under RICO, as they are intended to interfere with legal processes and intimidate individuals from exposing corporate malfeasance.

The District Court erred in dismissing the motion to amend, as the sextortion and witness intimidation claims are legitimate predicates for RICO violations and should have been allowed to proceed. These claims are grounded in serious legal concerns, including fraud, obstruction of justice, and witness tampering, which directly relate to Gjovik's business losses, emotional distress, and the systemic retaliation she experienced. These claims should have been allowed to proceed because they meet the criteria under RICO and have been supported by numerous cases where retaliation in the form of witness intimidation or sextortion has been sufficient to sustain a pattern of racketeering.

The Ninth Circuit's precedents strongly favor liberally granting motions to amend, especially when claims involve serious allegations like witness retaliation or extortion, which serve to preserve public policy objectives by deterring illegal corporate practices and supporting the rights of whistleblowers. Allowing Gjovik to

23

amend her complaint to incorporate these new causes of action under the extortion and sextortion statutes would provide a more complete picture of Defendant's unlawful conduct. These claims align with the broader pattern of racketeering and retaliation, adding another layer of protection for individuals who are subject to corporate abuse and exploitation.

## L. The District court Abused its Discretion when denying Leave to Amend the Bane Act claims, Given Gjovik's Reliance on the Court's Guidance and Ability to Cure

The Bane Act provides a cause of action where a person's constitutional or statutory rights are interfered with, or attempted to be interfered with, by threats, intimidation, or coercion. To state a claim, a Gjovik must allege a specific right secured by the Constitution or laws of the United States or California; interference or attempted interference with that right; by threats, intimidation, or coercion. See *Venegas v. County of Los Angeles,* 32 Cal. 4th 820, 843 (2004); *Cornell v. City and County of San Francisco,* 17 Cal. App. 5th 766, 801 (2017). The Bane Act does not require that the coercive conduct occur during employment. Post-employment conduct — including witness intimidation, retaliation for whistleblowing, or interference with court access — can constitute actionable threats or coercion under the statute if they chill or suppress the exercise of protected rights.

Courts have recognized Bane Act claims where an employer or agent retaliates against a former employee for testifying or preparing to testify; there is intimidation aimed at preventing reporting of legal violations or participation in legal proceedings; and the coercion targets First Amendment or due process rights, especially in retaliation for litigation activity. See *Reese v. County of Sacramento,* 888 F.3d 1030, 1043 (9th Cir. 2018); *Gant v. County of Los Angeles*, 772 Fed. Appx. 564, 565 (9th Cir. 2019); *Cornell v. City and County of San Francisco*, 17 Cal. App. 5th at 804.

In this case, the complaint alleges a campaign of post-termination retaliation, including witness intimidation and interference with judicial processes, clearly

24

implicating constitutional rights such as petition clause (First Amendment); due process (access to courts); rights as a whistleblower under California law (e.g., Lab. Code § 1102.5). This type of coercive post-employment conduct, especially if targeted and repeated, supports a plausible Bane Act claim under both state and federal interpretations.

To state a Bane Act claim, a plaintiff must allege interference (or attempted interference) with legal or constitutional rights through threats, intimidation, or coercion. See, *County of Los Angeles* (2004) 32 Cal.4th 820, 841-843 ("Venegas I"). Importantly, the coercion need not be violent or physical — it may include psychological pressure or retaliatory actions designed to suppress protected activity. *Reese v. Cnty. of Sacramento,* 888 F.3d 1030 (2018). Here, Gjovik alleged a campaign of post-termination retaliation; threats and intimidation aimed at deterring cooperation from potential witnesses; actions designed to interfere with Gjovik's exercise of rights under the First Amendment, whistleblower protections, and access to courts. Here, one of the named actors even sent sworn declarations to this docket making false allegations against Gjovik and urging that her case be dismissed.

These allegations are not only consistent with the text of the Bane Act but are precisely the type of conduct the law was designed to deter — systemic abuse of power aimed at chilling civil rights. The Ninth Circuit and California courts have held that where coercion targets rights such as speech, litigation, or whistleblowing, and where that coercion is distinct from or in addition to the underlying violation, the Bane Act applies. Cornell, 17 Cal. App. 5th at 804; Gant, 772 Fed. Appx. at 565.

The District Court erred in concluding that Gjovik failed to plead "coercion" because the complaint included detailed factual allegations about reputational threats, professional interference, and targeted obstruction of legal proceedings. Under *Eminence Capital,* denial of leave to amend is improper unless amendment would be futile, unduly prejudicial, or pursued in bad faith. 316 F.3d at 1052. Here, none of those factors applied. Gjovik was explicitly told by the district court not to amend in the first instance in order to "move the case forward." Gjovik reasonably

25

relied on that instruction, and the result was procedural disadvantage.

Gjovik later sought to amend based on additional factual context — including further retaliatory incidents and clarifying language regarding the nature and timing of the threats. The proposed amendment would have addressed any perceived deficiencies under Rule 8 and plausibility standards. By denying leave without allowing the record to be supplemented, the court effectively converted its permissive suggestion into a procedural bar — which contradicts Ninth Circuit precedent favoring amendment, particularly at the pleading stage.

## M. THE DISTRICT COURT ABUSED ITS DISCRETION WHEN DENYING LEAVE TO AMEND THE BANE ACT CLAIMS, GIVEN GJOVIK'S RELIANCE ON THE COURT'S GUIDANCE AND ABILITY TO CURE

The Ralph Civil Rights Act guarantees all individuals the right to be free from violence or threats of violence because of their protected characteristics (e.g., race, gender, religion, sexual orientation, disability), or exercise of constitutional or legal rights To state a claim, a plaintiff must allege the defendant committed violence or threats of violence; the conduct was motivated, at least in part, by a protected characteristic or by the Gjovik's exercise of a protected right;

The plaintiff was harmed; and the defendant's conduct was a substantial factor in causing that harm. See *Koebke v. Bernardo Heights Country Club,* 36 Cal. 4th 824, 841 (2005); *Austin B. v. Escondido Union School Dist.,* 149 Cal. App. 4th 860, 880 (2007). The Ralph Act has been applied to both actual violence and credible threats of violence, including harassment campaigns designed to cause fear, retaliation, or suppression of civil rights. "Violence" includes not only physical attacks but also threats that reasonably place a person in fear of imminent harm.

A SWATing attempt — calling law enforcement to falsely report criminal activity in hopes that a militarized response will be triggered — is a textbook example of a threat of violence. Courts have recognized that such acts can form the basis of civil rights claims when motivated by discriminatory or retaliatory animus. Where

threats are linked to whistleblowing, legal action, or other protected conduct, the Ralph Act is implicated even outside traditional discrimination claims.

The Ralph Civil Rights Act prohibits violence and threats of violence against persons based on protected traits or rights. Cal. Civ. Code § 51.7; *Koebke v. Bernardo Heights etc.,* 36 Cal. 4th 824 (2005). A SWATing attempt is a dangerous and well-documented form of retaliatory violence designed to cause extreme distress, physical harm, or death — and often used to silence, punish, or intimidate individuals who engage in protected conduct. California courts have found that plaintiffs need not wait until actual harm occurs; a credible and targeted threat of violence, particularly where law enforcement is weaponized, falls squarely within the statute. *Austin B. v. Escondido Union School Dist.,* 57 Cal.Rptr.3d 454 149 Cal. App. 4th 860, 880 (2007). Allegations that Apple initiated or encouraged this form of harassment are sufficient to survive a motion to dismiss.

The Ralph Act also protects individuals targeted for asserting legal rights, including whistleblower activity and litigation. Gjovik's allegations tie the threats to a campaign of post-employment retaliation and interference with legal proceedings — a protected category under the statute. The District Court's failure to acknowledge the legal nexus between the threats and Gjovik's civil rights was error.

Even if the court viewed the initial allegations as insufficiently detailed, Gjovik later moved to amend the complaint to describe the SWATing incident, timing, reporting chain, and subsequent chilling effect. Denying leave to amend under these circumstances constitutes abuse of discretion, particularly given the extreme liberality mandated under the Ninth Circuit precedent. *Eminence Capital*, 316 F.3d at 1052. Amendment would have allowed the record to fully reflect the severity and timing of the threats. A SWATing attempt is not speculative — it is a violent, life-endangering act. Refusing to consider these facts at the pleading stage unfairly prejudices Gjovik and invites the misuse of procedure to insulate unlawful retaliation.

## III. **The District Court Errored in Dismissing Claims with Prejudice.**

27

## N. The District court Errored in Dismissing environmental personal injury claims due to statute of limitations based on an incorrect legal standard.

The statute of limitations for toxic tort claims typically begins when the plaintiff knows, or should know, of the injury and its cause. However, the discovery rule tolls the statute of limitations in cases where the plaintiff is unaware of the injury's connection to the toxic exposure due to its latent effects. Gjovik's health issues, allegedly caused by toxic fumes from Apple's semiconductor facility, did not manifest immediately, and her understanding of the exposure required time to develop. The District Court's reliance on publicly available building permits as triggering notice for the statute of limitations is legally flawed because such documents do not alert employees to the specific health risks associated with a facility's operations.

Additionally, Apple's fraudulent concealment and retaliatory tactics delayed Gjovik's awareness of both the toxic exposure and the company's illegal practices. The Ninth Circuit has previously held that when fraudulent concealment or retaliation is involved, the statute of limitations can be tolled until the plaintiff could reasonably discover the harm. *See Doe v. Abbott Labs.*, 576 F.3d 1304 (9th Cir. 2009); *Olsen v. H&R Block*, 682 F.2d 831, 833 (9th Cir. 1982).

Given these circumstances, Ninth Circuit should reverse the district court's dismissal of Gjovik's toxic tort claims, recognizing that the discovery rule and tolling due to fraudulent concealment and retaliation apply. The District Court's reasoning that building permits should have alerted Gjovik to the facility's operations fails to account for the gradual onset of her injuries and the retaliatory actions that obstructed her understanding of the full scope of harm. Public policy strongly favors allowing plaintiffs to pursue claims where fraud and retaliation have delayed their ability to discover the injury, as seen in *Doe* and *Olsen*. The Ninth Circuit is likely to find that the statute of limitations should be tolled in this case, allowing Gjovik to

seek redress for the harm she suffered.

One of the most compelling reasons why Gjovik's claim should not have been dismissed is the argument that Apple's active concealment of its illegal actions—through retaliation and obstruction—should toll the statute of limitations. Fraudulent concealment (or in this case, the covert retaliatory actions to prevent Gjovik from understanding the full scope of the harm) is well-established as a reason for tolling the statute of limitations under California law & US law. See *Olsen v. H&R Block*, 682 F.2d 831 (9th Cir. 1982); *Doe v. Abbott Labs.*, 576 F.3d 1304 (9th Cir. 2009).

In Gjovik's case, Apple did not just fail to disclose its toxic practices; the company actively retaliated against her by harassing, stalking, and intimidating her. These actions were meant to prevent her from understanding the full impact of her toxic exposure and the nature of the environmental hazards at play. This active concealment of the truth is directly tied to the delay in her discovery of the illegal toxic dumping, and under the doctrine of fraudulent concealment, the statute of limitations should not have begun until she could reasonably connect the harm with the company's actions.

Gjovik's mental distress and fear of retaliation should also be considered as factors in why she was unable to recognize the full extent of her injury earlier. Retaliatory actions are not just psychologically damaging but also serve to suppress critical information. In the context of toxic tort claims, it is unreasonable to expect a victim to immediately connect health symptoms with illegal chemical exposure, especially when the company intentionally withholds such knowledge or impedes investigation. This further strengthens the argument that the statute of limitations should be tolled in cases of active concealment.

As the Ninth Circuit has recognized in cases involving fraudulent concealment, applying the statute of limitations too harshly, especially in ultrahazardous activities cases, would undermine public policy by shielding corporations from liability for actions that endanger public health. This case involves the highest degree of environmental risk, where the toxic exposure was preventable

29

but was instead intentionally hidden. To deny Gjovik the opportunity to bring these claims based solely on a one-year delay (when her retaliation and concealment occurred over that period) would be an injustice. This would allow Apple to escape liability for endangering her health and the public, effectively giving the corporation a free pass to continue its dangerous behavior.

The statute of limitations should be tolled under the discovery rule due to Apple's fraudulent concealment and retaliatory actions, which prevented Appellant from timely discovering the full scope of the harm. In cases involving fraudulent concealment or retaliation, the Ninth Circuit has held that the statute of limitations does not begin to run until the plaintiff reasonably discovers the injury or the wrongdoing. *See Doe v. Abbott Labs.*, 576 F.3d 1304 (9th Cir. 2009); *Olsen v. H&R Block*, 682 F.2d 831, 833 (9th Cir. 1982).

Appellant's claims were delayed due to Apple's efforts to suppress evidence and silence Appellant through retaliatory tactics. Apple's fraudulent actions not only hindered Appellant's ability to understand the full scope of the injury but also delayed the discovery of additional criminal conduct by Apple, further justifying the tolling of the statute of limitations. The Ninth Circuit has recognized that retaliation and fraudulent concealment prevent plaintiffs from discovering harm and should toll the statute until the plaintiff can reasonably connect the injury to the defendant's illegal conduct.

The court of appeals reviews the district court's conclusion regarding an application of the statute of limitations de novo. *Gov't of Guam v. Guerrero*, 11 F.4th 1052, 1055 (9th Cir. 2021); *Bliss v. CoreCivic, Inc.*, 978 F.3d 1144, 1147 (9th Cir. 2020) (reviewing the district court's decision and rulings on the appropriate statute of limitations de novo). The District Court's dismissal based on statute of limitations is also reviewed de novo. *See Mills v. City of Covina*, 921 F.3d 1161, 1165 (9th Cir. 2019).

### O. THE DISTRICT COURT ERRORED IN DISMISSING ENVIRONMENTAL PERSONAL INJURY CLAIMS WITHOUT CONSIDERING THE CLAIMS AS PUBLIC INTEREST.

Toxic tort claims are critical not just for compensating individual harm but for addressing broader societal risks. Apple's systemic approach to illegal toxic waste disposal is not just a private concern but a public interest issue. The illegal dumping of toxic waste affects both Gjovik and other employees and surrounding communities, exposing them to long-term health risks, and contributing to environmental degradation. By permitting Gjovik's toxic tort claims to move forward, the court can recognize the broader implications of environmental wrongdoing and the need to hold corporations accountable when they jeopardize public health for financial gain.

The harm caused by toxic waste is not limited to individual plaintiffs but affects communities. The impact of Apple's alleged actions is far-reaching, with public health and environmental integrity at risk. Courts have consistently recognized that toxic tort claims serve the public interest by holding corporations accountable for environmental degradation that could affect entire neighborhoods (see *Geier v. American Honda Motor Co.*, 529 U.S. 861 (2000)).

Apple operated a secretive semiconductor fabrication facility near residential housing, schools, and parks in Santa Clara, California. The facility handled highly toxic and volatile chemicals, including silane, phosphine, fluorine gas, and NMP, and documented leaks and emissions affected the surrounding environment. Apple failed to disclose these risks to nearby tenants or government agencies, despite multiple regulatory citations.

California courts have historically applied strict liability to activities posing an unreasonable risk of serious harm that cannot be eliminated even with reasonable care. This appeal presents a novel opportunity for the Court to clarify that modern semiconductor fabrication — when conducted in secret, near residential zones, and in violation of environmental standards — qualifies as an ultrahazardous activity warranting strict liability under California law.

The concept of ultrahazardous activities is highly relevant in Gjovik's case, as it touches directly on Apple's semiconductor fabrication facility and its role in

31

producing and disposing of toxic waste in an irresponsible manner. This claim goes beyond ordinary toxic torts; it implicates the very heart of corporate moral bankruptcy—where companies knowingly engage in highly dangerous activities for financial gain while endangering public health and safety.

### P. The District Court Errored & Abused its discretion by dismissing the 17200 claim based on an improper legal theory and mischaracterization of Gjovik's claims.

As discussed above, the UCL claim was dismissed with abuse of discretion and due to error. The court admitted in dicta that there appeared to be merit, and Gjovik had filed a proposed supplement with a much more extensive pleading, but the court struck the proposed supplement and dismissed her claims with prejudice, due to reasons not related to merit. For one, the court misrepresented her claims as if it was a much smaller version of what she argued and dismissed based on that small scope while ignoring the larger claims. Second, the court dismissed under statute of limitations despite numerous viable tolling theories as well as ongoing conduct. Third, there seemed to be confusion as to whether a financial injury was needed or not for a fully injunctive claim and when Gjovik clarified her intention with the claim was fully for injunctive relief, the court said no.

Then upon proposing a supplement pled for restitution as well, the court struck the sur-rely. The basis of the 17200 claim is representative of the protected activity that Apple claims it fired Gjovik over. Gjovik wanted to argue that her disclosures were protected and important, and she would continue her escalation on the matter in court – yet, despite the merit of her claims, and how critical they are to the retaliation case, the court dismissed the claims regardless of merit – essentially creating a death knell on the topic of face Gobbler, which Apple's counsel is already trying to exploit in discovery.

### Q. The District Court errored in dismissing claims based on an incorrect theory of liability, and refusing to consider theories of conspiracy,

ACCOMPLICE LIABILITY, AND RICO ENTERPRISE.

Gjovik has pled more than a mere workplace grievance. The retaliation she suffered included a coordinated campaign of harassment and intimidation, directed not only by her former employer but by a former internal operative acting through a sham union structure, and closely aligned with the employer's legal goals.

These actions — including a fraudulent ex-parte gag order, repeated false sworn declarations, and continued public retaliation after litigation began — meet California's standard for extreme and outrageous conduct. Courts routinely allow IIED claims to proceed where retaliation is carried out by co-conspirators, aligned third parties, or former employees, particularly in whistleblower contexts. This is precisely such a case.

Retaliation today often does not come from the corporate front desk. It comes from the shadows — a fake union here, a former insider there. Employers increasingly rely on covert actors to harass and discredit whistleblowers while preserving formal deniability. But when those actors file false declarations, enforce gag orders, and publicly retaliate against witnesses — all in alignment with the employer's legal strategy — the law cannot allow that to be a free zone of impunity. Whether by civil conspiracy, RICO enterprise, or ratified agency, the employer becomes accountable for the weapon it helped build and never disavowed.

The criminal law recognizes proxy retaliation as obstruction, intimidation, or enterprise conduct. Civil law must not blind itself to the same pattern simply because it's executed by lawyers or former insiders instead of mobsters. "Only a sophisticated entity with the resources of a major tech employer could orchestrate retaliation through a faux labor organization, complete with court filings, perjured declarations, and coordinated legal support — and still maintain formal deniability. To deny liability here is to teach every powerful employer exactly how to retaliate without consequence: outsource it. That's not justice. That's a roadmap for abuse.

R. The District Court Errored by Dismissing the RICO
1962(a) and (d) based on (a) claim under an incorrect

33

### LEGAL THEORY AND MISCHARACTERIZATION OF GJOVIK'S CLAIMS.

The District Court's dismissal of Gjovik's RICO §§ 1962(a) and (d) claims was based on an incorrect legal theory and a mischaracterization of Gjovik's claims. Specifically, the court dismissed these claims under the assumption that the money laundering scheme was insufficiently pled. However, Gjovik's allegations clearly outlined racketeering activities, including fraudulent schemes and the use of proceeds from those activities to invest in and sustain the enterprise. The standard for RICO §§ 1962(a) and (d) does not require an exhaustive description of the money laundering mechanism at the pleading stage. As established in *Foman v. Davis,* leave to amend should be granted unless it is clear that the claims are entirely without merit. The District Court's refusal to allow amendment, based on an incomplete understanding of the facts, was therefore an abuse of discretion. Gjovik should have been given an opportunity to clarify how the illegal proceeds were used to further the racketeering activity within the enterprise.

Under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962, plaintiffs must demonstrate a pattern of racketeering activity that includes at least two acts of racketeering activity within a 10-year period. Gjovik's claims fall squarely within the ambit of this statute due to the systematic and coordinated corporate misconduct orchestrated by Apple's leadership, who were engaged in illegal actions for the purpose of financial gain—including toxic waste dumping, fraudulent ESG claims, and the illegal retaliation against whistleblowers.

The reinvestment into the witness intimidation campaigns along with personal bonuses, meets the laundering standard, and also the direct injury as it powered Apple's to further harass Gjovik in more innovative ways. Gjovik cited to active, current cases of actual criminal charges against Apple executives (see Moyer – bribery of public official, Levoff – wire & securities fraud, etc.). Gjovik also obtained evidence of U.S. government complaints about potential environmental crimes at the secret semiconductor fab at issue here. Gjovik already has a stack of evidence, and

dismissal under 12(b)(6) was not warranted, especially without even allowing her to submit a "RICO case statement" for complex cases such as this.

Further, the recent SCOTUS *Medical Marijuana* case clarified that RICO claims can proceed even when the alleged economic injuries are intertwined with personal harm. This ruling resolves a critical issue in understanding how personal injuries—such as health impairments—can lead to recoverable business and property losses under RICO. Specifically, it highlights that RICO is not restricted to claims of economic injury disconnected from personal harm but allows for recovery when the economic consequences of such injuries (like employment loss, foregone income, and reputational damage) result from racketeering activity.

This principle is directly applicable here, where the physical harm caused by the toxic exposure, compounded by the retaliation and obstruction, contributed to significant economic and property injuries that flowed directly from the racketeering activities of Apple's corporate actions.

The Supreme Court's decision in *Medical Marijuana, Inc. v. Horn* supports the notion that even where physical and emotional harm are involved, the resulting economic consequences—which are tied to racketeering activities—are actionable under RICO. In *Medical Marijuana, Inc. v. Horn*, 604 U.S. ____ (2025), the United States Supreme Court resolved a longstanding circuit split by holding that civil RICO claims under 18 U.S.C. § 1964(c) are not categorically barred merely because the economic injuries derive from personal harm. The Court ruled that RICO allows recovery for "injury to business or property" even where such injury is causally related to personal harm, so long as the Gjovik's alleged damages are economic and fall within the zone of interest protected by the statute.

This ruling squarely reinforces Gjovik's RICO claims, where business and property losses—including lost employment, foregone income, and reputational harm—resulted directly from predicate acts under §§ 229 (relating to chemical weapons) and §§ 1512, 1513 (witness intimidation and retaliation). The chemical contamination that caused serious illness not only impaired Gjovik's ability to work,

35

but also triggered retaliatory termination after Plaintiff reported the criminal conduct. These injuries are economic in nature and flow directly from an actionable pattern of racketeering activity. The Supreme Court's reasoning supports a broad reading of § 1964(c) where the Gjovik alleges distinct property and employment injuries caused by racketeering acts, and when those injuries are tethered to criminal acts involving violence, toxic gases, and/or coercion.

## S. The District Court Erred in Dismissing Appellant's RICO 1962(c) and (d) Claims due to lack of Enterprise.

The District Court erred in dismissing Appellant's RICO §§ 1962(c) and (d) claims on the grounds of insufficient pleading of the enterprise element. Under RICO, a plaintiff must allege that the defendant conducted or participated in the operation or management of an enterprise through a pattern of racketeering activity. Gjovik has adequately pled the existence of an enterprise—Apple's management structure, which engaged in coordinated illegal activities, including fraudulent environmental claims and retaliation against whistleblowers. The court's failure to recognize the enterprise constituted an error, as RICO was designed to address the misuse of corporate structures for illegal conduct. Gjovik's allegations fit squarely within the statutory framework, as the corporate actions were coordinated, intentional, and aimed at furthering the illegal enterprise. The dismissal based on the failure to establish the enterprise element should be reversed, and Gjovik should be allowed to amend if necessary to further clarify this point.

The District Court's dismissal of Appellant's RICO § 1962(c) and (d) claims without prejudice should be reviewed de novo, as it was based on the application of incorrect legal standards. Under Rule 12(b)(6), the court is required to accept all factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court's reasoning that the RICO claims failed to meet the continuity or enterprise requirements may have been legally flawed. Specifically, the district court may have misapplied the standards

for determining the existence of an enterprise and whether the allegations of ongoing racketeering activity were sufficient to establish continuity. *See Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) (explaining that a plaintiff must show the defendant conducted or participated in the operation or management of the enterprise).

The Ninth Circuit has held that dismissal with prejudice is improper unless it is "clear that the plaintiff cannot possibly amend the complaint to state a claim." *See Hicks v. PGA Tour, Inc.*, 897 F.3d 1109 (9th Cir. 2018). Since Appellant's RICO claims were dismissed without prejudice, the court should have allowed an opportunity to amend the complaint if any deficiencies existed. The substantive legal errors in the district court's ruling on the initial dismissal should therefore be corrected by the Ninth Circuit. Given that Appellant's claims involve complex corporate misconduct, the Ninth Circuit should find that the allegations, if proven true, could support the legal elements necessary for a RICO claim.

Here, Gjovik alleged that the employer previously employed Appleseed (the leader of the astroturf company union), in a loyalty and secrecy legal unit, benefited from her retaliatory actions, failed to repudiate her misconduct, and used her legal filings and sworn declarations to support its own motions. Simultaneously, Appleseed created a shell organization presented to the public as a labor group, filed a retaliatory gag order in a foreign jurisdiction, made perjured statements in state and federal court, and submitted three sworn declarations in direct support of the employer's dismissal efforts here. This conduct is not independent — it is coordinated, retaliatory, and enterprise-based. Even apart from RICO, California law allows liability where a third party acts in furtherance of a shared purpose with the defendant, or where the defendant ratifies the third party's misconduct by accepting its benefit or failing to repudiate it. See *Perkins v. Blauth,* 163 Cal. 782 (1912); *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503 (1994).

If Appleseed acted in alignment with the employer — filing retaliatory declarations, pursuing gag orders, targeting a whistleblower — then her actions help *form* the enterprise. Dismissing the employer on grounds that the enterprise wasn't

37

distinct, while severing and isolating the third party from the employer, effectively immunizes a coordinated retaliation scheme by dividing liability between formalism and function. RICO was built to close that very gap. Under *Boyle v. United States,* 556 U.S. 938 (2009), a RICO enterprise need not be formally structured or legally distinct from its components. It need only involve an association-in-fact, share a common unlawful purpose, and engage in coordinated activity that furthers that purpose.

In this case, the employer accepted the benefits of Appleseed's lawsuits and filings against Gjovik, never denied Appleseed's alignment with its litigation goals, and admittedly did nothing to stop Appleseed from continuing with these activities. That is sufficient for conspiracy or ratification liability under California law — particularly when the underlying conduct includes perjury, legal process abuse, and intimidation of a government witness.

The facts here bear striking resemblance to *United States v. eBay* (2024), and *United States v. Baugh* (2020), in which executives at eBay used proxies — including security contractors and former insiders — to harass, intimidate, and surveil critics of the company. Some of eBay leaders were ex-police and engaged the Santa Clara Police Department (their prior long-time workplace) to help assist them in their criminal conduct on behalf of eBay. That conduct was charged as conspiracy, obstruction, and cyberstalking — despite being carried out by off-book actors, and even unaware state actors. What distinguished that case was not who signed the orders or gave commands, but: who benefited, who coordinated, who stayed silent. [See Request for Judicial Notice].

In Gjovik's case, the employer created a culture of loyalty and secrecy, deployed an army of employees, ex-employees, and contractors to silence a federal witness and to "*ruin*" Gjovik in retaliation for prior participation with the government. That is enterprise conduct — and to hold otherwise is to open a massive black hole in whistleblower protection law. The enterprise element was sufficiently described as a racketeering organization, and Gjovik clearly alleged that the continuity requirement was met by ongoing illegal activities. The court's denial of

38

leave to amend on the grounds of continuity and enterprise is inconsistent with the liberal amendment policies outlined in Ninth Circuit case law, as the deficiencies could easily have been cured with further factual allegations.

### T. The District Court Erred in Dismissing Appellant's RICO 1962(c) and (d) Claims due to lack of Continuity.

The District Court erred in dismissing Appellant's RICO §§ 1962(c) and (d) claims based on an alleged lack of continuity. RICO's continuity requirement is met when there's a sustained, coordinated pattern of racketeering activity, not just isolated incidents. Gjovik sufficiently alleges that Apple engaged in prolonged misconduct, including fraudulent environmental practices, illegal waste disposal, and whistleblower retaliation. These acts, aimed at deceiving the public and evading oversight, constitute a continuous pattern that satisfies RICO's continuity requirement.

Appellant has shown that Apple's internal enterprise engaged in coordinated obstruction and retaliation against whistleblowers, evading regulation and protecting profits. The predicate acts include witness retaliation (18 U.S.C. § 1513) and obstruction of justice (18 U.S.C. § 1512). Apple retaliated against Gjovik after she warned them of illegal environmental practices, demonstrating a systematic pattern of retaliation that was central to protecting the company's unlawful activities. Recent evidence further supports these claims, including reports confirming environmental violations, obstruction of justice in a separate legal case, and retaliation through illegal NDA agreements and workplace harassment. The latest evidence—ranging from confirmed federal environmental violations at Apple's semiconductor facility, evidence of months of secret executive escalations about Gjovik's disclosures prior to her suspension and termination, and new federal investigations—bolsters the claim of a broader racketeering enterprise.

The allegations of harassment and surveillance are also relevant in light of the Ninth Circuit's decision in *Okonowsky v. Garland*, No. 23-55404 (2024), where

39

employer liability for social media harassment was affirmed. Apple's failure to intervene in harassment, including the use of private images for intimidation, aligns with this precedent and highlights its role in fostering a hostile environment. Similarly, Apple's conduct mirrors patterns seen in corporate misconduct cases like *United States v. eBay Inc,* 1:24-cr-10003-PBS, U.S. District of Massachusetts (2024); where companies were held accountable for obstructing justice, tampering with witnesses, and concealing evidence. Apple's actions in obstructing investigations and retaliating against the Gjovik are consistent with these cases, strengthening the argument for RICO violations.

### U. The District Court Errored in Dismissing RICO Claims due to Predicate Acts Containing Employment Retaliation.

The District Court improperly dismissed Gjovik's RICO claims due to the inclusion of employment retaliation as a predicate act. Retaliation against employees who expose corporate wrongdoing is a well-established predicate act under RICO, specifically witness retaliation (18 U.S.C. § 1513). Gjovik has alleged that after exposing Apple's illegal toxic waste disposal practices, she was subjected to ongoing harassment, retaliation, and intimidation by the company, actions that qualify as predicate acts under RICO.

Employment retaliation is not only a valid predicate act, but it also aligns with the public policy goals of RICO, which aims to curb abuse of power by corporations and individuals engaged in systematic misconduct. The court's dismissal of the RICO claims based on these allegations mischaracterized the law and failed to consider the broader implications of corporate misconduct and the need to protect whistleblowers.

Gjovik alleged ongoing coordination among Defendant's agents and legal representatives to intimidate her through legal process, retaliate against her for filing NLRB and environmental claims, obstruct justice through false allegations and fabricated claims, and shield Defendant's criminal liability through coerced

40

confidentiality and litigation harassment.

Gjovik described credible, detailed harms including coercive legal threats and gag orders, ongoing intimidation during pro se litigation, targeted retaliation in response to whistleblowing, harassment connected to her role as a crime victim and witness. California law recognizes IIED claims where the conduct is outrageous, intentional, and causes severe emotional distress. *Hughes v. Pair,* 46 Cal.4th 1035 (2009). The Court's dismissal disregarded the ongoing nature of retaliatory litigation and threats, which are increasingly recognized as IIED in civil rights and labor retaliation cases.

These allegations are reinforced by independent judicial findings in *Epic Games v. Apple Inc.,* Case No. 4:20-cv-05640-YGR (N.D. Cal. Apr. 30, 2025), where the Court issued an 80-page contempt order holding Apple in civil contempt, finding willful violations of a federal injunction, and explicitly stating that Apple executives lied under oath. Judge Yvonne Gonzalez Rogers referred both Apple and its Vice President of Finance to the Department of Justice for potential criminal prosecution. This referral underscores the plausibility — and chargeability — of Appellant's alleged predicate acts.

This judicially confirmed misconduct directly mirrors the RICO theories asserted here: using corporate legal and compliance structures to suppress lawful disclosures, falsify compliance data, and retaliate against those who challenge the enterprise. Because predicate acts need only be 'chargeable' under the statute — not proven in the civil action — the DOJ referral itself satisfies the threshold for racketeering plausibility. By permitting Gjovik's claims to proceed under RICO, the Ninth Circuit would signal that corporate retaliation and obstruction of justice cannot be tolerated, especially in cases involving high-stake public health and environmental integrity.

The violence and improvised theater of Apple's corporate malfeasance, particularly the burglaries and harassment that occurred while Gjovik was and is attempting to defend herself in the legal process—serve as powerful evidence of a

RICO claim. Apple's actions fit well within the pattern of racketeering activity under RICO, particularly as it relates to obstruction of justice, witness tampering, and corporate violence. The Ninth Circuit should allow these claims to proceed, sending a message that such corporate improvised violence and cover-ups will not be tolerated, and that public policy demands accountability. Dismissing potentially meritorious claims simply out of convenience is not accountability.

Gjovik explicitly warned Apple that its conduct — including toxic dumping, ESG fraud, and surveillance — constituted racketeering. Shortly thereafter, she was terminated. The termination was followed by ongoing retaliation, surveillance, and attempts to suppress her speech and litigation. These actions constitute violations of 18 U.S.C. § 1512 (witness tampering) and § 1513 (retaliation against informants), both of which are enumerated RICO predicate offenses under 18 U.S.C. § 1961(1). The Ninth Circuit has not yet addressed whether retaliation against whistleblowers — particularly where the retaliation itself directly furthers the goals of an illegal enterprise — can serve as a standalone RICO predicate. This case presents a doctrinally clean and factually compelling opportunity to do so.

## V. The District Court Errored by Dismissing the Ultrahazardous Activities claim based on an incorrect legal theory and mischaracterization of Gjovik's claims.

The District Court erred by dismissing Gjovik's ultrahazardous activities claim, based on an incorrect legal theory and a mischaracterization of the allegations. Under the Restatement (Second) of Torts § 520, ultrahazardous activities involve a high degree of risk of harm that cannot be mitigated by the actor's reasonable care. These include activities that release toxic chemicals or pose severe danger to the public, like semiconductor fabrication with hazardous gases.

Apple's semiconductor operations, which allegedly involve the use of lethal chemicals such as arsine, phosphine, and silane, fit squarely within this definition. These activities, especially when conducted near residential areas without adequate

42

containment, present a substantial risk of harm to workers and the surrounding community. California law holds defendants strictly liable for ultrahazardous activities, regardless of whether reasonable precautions were taken. See *Luthringer v. Moore*, 31 Cal. 2d 489 (1948); *Edwards v. Post Transp. Co.*, 228 Cal. App. 3d 980 (1991)). Gjovik has plausibly alleged that Apple's semiconductor operations involve toxic chemicals that pose a substantial risk of serious harm. These chemicals, even with reasonable care, present significant health risks, including cancer, respiratory issues, and organ damage. The environmental harm from these chemicals is often irreversible, fitting the characteristics of ultrahazardous activities, as seen in previous cases involving toxic waste disposal and hazardous manufacturing.

Apple's failure to prevent or mitigate these risks, coupled with its illegal dumping of toxic waste, exemplifies the kind of ultrahazardous conduct that merits strict liability. The company's moral depravity, as evidenced by the alleged fraudulent environmental claims to secure bonuses, underscores the egregiousness of the conduct. Apple's actions align with similar cases involving large corporations, like *ExxonMobil,* which were held strictly liable for environmental harm due to their inherently dangerous operations.

The District Court acknowledged that semiconductor fabrication could qualify as an ultrahazardous activity, but mischaracterized Gjovik's claims as involving a less dangerous activity. This legal error led to the wrongful dismissal of the claim, despite Gjovik's clear allegations of Apple's involvement in toxic semiconductor fabrication. Even if there were ambiguities in Gjovik's allegations, the court should have allowed for amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962), and *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) dictate that courts should grant leave to amend when a claim is legally viable but insufficiently pled. The dismissal should not have occurred based on the court's misunderstanding of the allegations. Gjovik even provided detailed requests for judicial notice with history and policy references, and proposed supplemented content, but the court refused to review the documents, and struck the supplement, and then dismissed the claim.

43

Finally, the Ninth Circuit has not fully addressed the doctrine of ultrahazardous activities since *In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986 (9th Cir. 2008). This case provides an ideal opportunity to clarify and extend the doctrine, as shown in *Schuck v. Beck*, No. 37213-8-III (Wash. Ct. App. 2021), which applied Restatement § 520 factors to define ultrahazardous activities. The case involved the operation of a dangerous chemical facility near residential areas, similar to the situation at hand. The Ninth Circuit should adopt this framework to modernize the application of strict liability in cases involving inherently hazardous industrial practices. In sum, the facts alleged by Gjovik support an ultrahazardous activities claim under California law, and the court's dismissal was an error. Gjovik should be allowed to present evidence supporting this claim, as the conduct involved meets the criteria for strict liability.

## W. The District Court Errored in Dismissing Environmental Personal Injury Claims without Consideration of Crime Victim's Restitution rights.

The dismissal of Gjovik's complaint — which included claims for restitution, harm from toxic exposure, and whistleblower retaliation — effectively stripped her of her statutory rights under the CVRA and relevant environmental protection statutes. This undermines the very purpose of these laws, which are designed not only to punish environmental wrongdoers, but to ensure redress for those harmed by their conduct.

Congress enacted the CVRA to make victims independent participants in the criminal justice process, with enforceable rights to restitution, fairness, and participation." *Kenna v. U.S. Dist. Court for the C.D. Cal.*, 435 F.3d 1011, 1013 (9th Cir. 2006). Moreover, federal courts may not preemptively extinguish restitution claims when those claims arise from active or parallel enforcement actions. See *United States v. Luis,* 765 F.3d 1061, 1066 (9th Cir. 2014) ("Victims of financial and environmental crimes are entitled to restitution as a matter of statute."), and *United*

States v. Gordon, 393 F.3d 1044, 1052 (9th Cir. 2004) (restitution is "mandatory and not discretionary" under the MVRA when victims are identified).

Under the Crime Victims' Rights Act, any person *"directly and proximately harmed as a result of the commission of a federal offense"* qualifies as a crime victim. 18 U.S.C. § 3771(e). Gjovik's disclosures and injuries arise from and relate directly to conduct that violates federal environmental law, including criminal provisions of the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. § 6928(d), and the Clean Air Act, 42 U.S.C. § 7413(c). Where a whistleblower has made disclosures triggering agency enforcement and suffered retaliation or health harms as a result, those harms fall squarely within the CVRA's purview. Its contrary to public policy to dismiss a toxic tort claim for reasons other then merit, when the plaintiff has a concurrent claim by right to restitution following a criminal trial on the same matter.

## X. The District Court errored in Dismissing IIED/NIED claims based on an incorrect legal standard and mischaracterization of Gjovik's claims.

Under California law, to prevail on a claim for IIED, a plaintiff must demonstrate that the defendant's conduct was extreme and outrageous, the defendant acted with intent to cause emotional distress or reckless disregard for the probability of causing distress, that the distress was severe, and that it was caused by the defendant's actions. *See Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009). Courts have found that outrageous conduct includes actions that exceed all bounds of what is usually tolerated in a civilized society, such as patterned harassment, threats of violence, stalking, or intentional infliction of fear. *See Christensen v. Superior Court*, 54 Cal. 3d 868, 903 (1991). Here, Gjovik's allegations meet the threshold for outrageous conduct, as the defendant's actions go far beyond the bounds of typical workplace disputes.

Gjovik alleges that Defendant engaged in retaliatory and harassing conduct, including ongoing surveillance, intimidation, and threats of violence. These actions

45

culminated in attempts to destroy Gjovik's professional reputation and personal distress, including SWATing attempts—a serious and potentially life-threatening act where law enforcement is falsely alerted to a supposed threat, designed to elicit an armed response at the Gjovik's home or workplace. Such actions are extreme and go well beyond the ordinary insults or indignities tolerated in employment contexts. Intentional psychological abuse designed to destabilize Plaintiff, including efforts to impede her civil rights and damage her livelihood, is sufficient to meet the outrageous conduct standard under California law. *See Bundren v. Superior Court*, 145 Cal. App. 3d 784, 791 (1983); *Agarwal v. Johnson*, 25 Cal. 3d 932, 946 (1979).

Gjovik has also sufficiently alleged that Defendant's actions meet the requirements for Negligent Infliction of Emotional Distress. Under California law, NIED requires that the defendant's conduct be negligent and foreseeable, and that it occurred within a special relationship that gives rise to a duty to protect the Gjovik's emotional well-being. Apple's retaliatory actions—including ongoing harassment, interference with legal rights, and threats of violence—were not only foreseeable but intentional. This conduct occurred in the context of the employer-employee relationship, where the employer has a duty to protect the emotional well-being and rights of the employee, including the right to speak out against illegal conduct. Gjovik has alleged that these actions caused severe emotional distress, including panic attacks, anxiety, PTSD symptoms, and other psychological harm.

The District Court erred by dismissing Gjovik's IIED and NIED claims under Rule 12(b)(6). The court focused on mischaracterizing Gjovik's allegations, failing to recognize the severity of the emotional abuse and outrageous nature of the conduct alleged. The court prematurely concluded that Gjovik's claims would fail, disregarding the fact that Gjovik's allegations, if proven true, clearly support a claim for IIED and NIED. The intentional harassment, threats of violence, and coercive tactics described by Gjovik should not have been dismissed at this stage. Instead, the court should have allowed Gjovik the opportunity to amend the complaint, as these claims are highly plausible and well supported by the facts alleged. *See Lopez v. Smith*,

46

203 F.3d 1122, 1130 (9th Cir. 2000) (holding that emotional distress claims should not be dismissed at the early pleading stage).

Furthermore, dismissal without leave to amend was improper. Gjovik had already identified key facts in her complaint, such as documented threats, ongoing harassment, and evidence of psychological harm, which could have been expanded upon with additional factual details. Amendment would have allowed Gjovik to further substantiate these claims, including providing medical evidence, detailing specific symptoms (such as diagnosed anxiety), and clarifying the full extent of Defendant's retaliatory conduct. By denying Gjovik leave to amend, the district court improperly deprived her of the chance to fully develop her claims in line with the liberal amendment standards established under the Federal Rules of Civil Procedure. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

Gjovik's allegations reflect a pattern of sustained emotional abuse, psychological destabilization, and retaliatory tactics that meet the outrageous conduct standard under both California law and the higher threshold set by New York and Massachusetts for IIED claims. In these jurisdictions, intentional emotional harm and harassment are sufficient grounds for claims under IIED, especially when a special relationship exists, such as between employer and employee. *See Crouch v. Trinity Christian Center*, 39 Cal. App. 5th 995, 1007-08 (2019); *Gallela v. Onassis*, 487 F.2d 986 (2d Cir. 1973).

## IV. THE COURT OF APPEALS SHOULD CONSIDER EXERCISING PENDENT JURISDICTION TO CORRECT ERRORS IN ALL CLAIMS.

### Y. THE DISTRICT COURT ERRORED BY DISMISSING ANY RETALIATION CLAIMS DUE TO EXISTING PLAUSIBILITY.

The NLRB's formal complaint confirms that Gjovik was the subject of retaliatory termination and illegal threats in violation of Section 8(a)(1) of the National Labor Relations Act. See *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 620 (1969) (recognizing the agency's independent evaluation of credible labor

47

violations); *Reed v. NLRB*, 927 F.2d 1249, 1254 (D.C. Cir. 1991) (holding that issuance of an NLRB complaint reflects administrative judgment that a claim has factual and legal merit).

Further, the EPA has exercised its enforcement authority in response to Gjovik's protected disclosures. Federal courts have repeatedly recognized that such administrative action supports the plausibility — if not the legal sufficiency — of related claims. See *Lezama-Garcia v. Holder*, 666 F.3d 518, 525 (9th Cir. 2011) (noting that plausibility under *Twombly* should be informed by relevant agency findings); *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (courts may consider agency views for their persuasive authority in related legal proceedings).

Where federal agencies find sufficient evidence to justify enforcement, including environmental enforcement and retaliation claims, courts should not substitute a premature disbelief under Rule 12(b)(6) for the determinations of agencies acting under statutory mandates and evidentiary procedures. Dismissal of Gjovik's claims as implausible — while two arms of the federal government have acted on those same facts — frustrates the structure and purpose of whistleblower protections.

### Z. THE DISTRICT COURT ERRORED WHEN DISMISSING 6399.7 BASED ON AN INCORRECT LEGAL STANDARD.

Gjovik's disclosures to federal authorities have already resulted in multiple EPA inspections, corrective actions for hazardous waste mismanagement, hundreds of environmental violations, and two separate NLRB enforcement complaints, including one finding that Gjovik was unlawfully terminated. The court dismissed with prejudice Gjovik's "Right to Know" retaliation claim, despite it being a basis of her case and claims, and her repeatedly arguing to the court she is a "Right to Know" whistleblower. The court proceeded to dismiss her claim based partially on discretionary reasons and also a misunderstanding of the law – leading the court to extinguish whistleblower protections for the employees of the state of California under HAZWOPER protections (which are federal as well as state). The court

decided there's only "Right to Know" protections from retaliation if the employee is exercising rights about hazardous materials, but not hazardous waste. This expressly contradicts these statutes, legislative history, and precedent.

### AA. The District Court errored in Denying Dodd-Frank, SOX, and CERCLA Whistleblower claims under an incorrect legal theory and based on characterization of Gjovik's complaints.

Gjovik reported internal and intentional fraud, corruption, racketeering, smuggling, and a number of other serious crimes to Apple, and then also to the U.S. Government including the U.S. SEC and U.S. FBI, prior to Apple terminating her, and Apple was aware of her protected disclosures. Plaintiff filed an SEC tip prior to her termination alleging fraud and a scheme around greenwashing and systemic false statements being made to the government and public by Apple related to their environmental practices. After the court made Gjovik follow the 75 page limit, the court would not allow her to reference her prior 660 page complaint, but did let Apple reference it to try to use against her, and also let Apple introduce Gjovik's SEC tip against Apple, which they found themselves and did not get authenticated, and used it to argue she's not a whistleblower, in a 12(b)(6) motion. The court also refused to let Gjovik properly plead her Dodd-Frank retaliation claims which included things like the smuggling complaints, but the court ignored her complaints and did not engage with them.

Gjovik has met with SEC Enforcement at least three times about her disclosures, and some of her disclosures to SEC led to no-action letters and letters from politicians calling for investigations. But the district court dismissed with prejudice, with no leave to amend, and let the basis of that dismissal be her actual pre-termination complaint to SEC, produced by the subject of the confidential complaint. The dismissal of whistleblower claims despite public enforcement actions and retaliation findings was arbitrary, ignored the statute's purpose, and violated liberally construed pro se pleading standards. Gjovik's allegations were

49

presumptively credible and independently supported by agency action.

## CONCLUSION & RELIEF REQUESTED

For the reasons outlined above, Gjovik's RICO, IIED, Bane, Ralph, and toxic tort claims should have survived dismissal. The alleged misconduct—including unlawful toxic waste disposal, retaliatory harassment, and fraudulent environmental disclosures—reflects systemic corporate practices that implicate both public health and broader questions of corporate accountability. These are not private grievances, but issues of substantial public concern that warrant full judicial review. The District Court's dismissal at the pleading stage precluded development of the factual record on matters that affect environmental integrity, worker safety, and the credibility of corporate regulatory compliance. Public health, environmental justice, and the integrity of the legal system depend on this outcome.

The Ninth Circuit now has the opportunity to ensure these serious allegations are tested on the merits. Allowing these claims to proceed would affirm the legal system's role in protecting whistleblowers and addressing environmental harm, especially where hazardous materials and retaliation intersect. Public interest demands more than procedural finality requires a meaningful opportunity to expose and remediate systemic abuse. The Court should reverse the dismissals and permit full adjudication of the claims in alignment with governing law and fundamental principles of accountability. In addition, the Court should please consider Gjovik's request for injunctive relief. The harms alleged are ongoing, irreparable, and implicate both individual rights and broader public safety concerns. The District Court's denial of injunctions was premised on a reactive and legally erroneous analysis that failed to apply the proper standards or consider the factual context. Where constitutional rights, environmental integrity, and the chilling of protected activity are at stake, preliminary relief is essential to preserve the status quo and prevent further harm. The Court should reverse the denial of injunctive relief and either grant or remand for proper consideration under the correct legal framework.

Dated: May 6 2025

**Ashley M. Gjøvik**
/s/ Ashley M. Gjovik
Pro Se Plaintiff-Appellant [4]

---

[4] In preparing this brief, Appellant utilized publicly available generative AI tools, specifically OpenAI's ChatGPT and ScholarGPT, to assist with legal research, citation formatting, and drafting support. All substantive arguments, factual statements, and representations of law reflect Appellant's independent review, verification, and judgment. These tools were used as writing aids, not as substitutes for legal analysis or personal authorship.

# Statement of Related Cases (Form 17)

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

### 9th Cir. Case Number(s): 25-2028

The undersigned attorney or self-represented party states the following:

[ ] I am unaware of any related cases currently pending in this court.

[ ] I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[X] I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

Civil Litigation
Ashley M. Gjovik v. Apple Inc., 23-cv-04597-EMC (N.D. Cal. 2023-)

U.S. Dept. of Labor Adjudication
Ashley Gjovik v Apple Inc, 2024-CER-00001 (OALJ); Ashley Gjovik v Apple Inc, 2024-0060 (ARB).

U.S. NLRB Adjudications
In Re: Ashley Gjovik & Apple Inc., (unlawful NDAs and employment policies), 32-CA-284428, NLRB (2023-).
In Re: Ashley Gjovik & Apple Inc., (suspension, termination, unlawful work rules, & coercive statements), 32-CA-282142, 32-CA-283161 (2024-).
In Re: Ashley Gjovik & Apple Inc., (Tim Cook's illegal email) 32-CA-284441 (2023).

Ashley M. Gjøvik
/s/ Ashley M. Gjovik
Pro Se Plaintiff-Appellant

## CERTIFICATE OF COMPLIANCE (FORM 8)

### 9th Cir. Case Number(s): 25-2028

I am the self-represented party.

This brief contains 50 pages and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

X complies with the word limit of Cir. R. 32-1.

☐is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

☐is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R.29-2(c)(2), or Cir. R. 29-2(c)(3).

☐is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

☐complies with the longer length limit permitted by Cir. R. 32-2(b) because *(selectonly one)*:

☐it is a joint brief submitted by separately represented parties.

☐a party or parties are filing a single brief in response to multiple briefs.

☐a party or parties are filing a single brief in response to a longer joint brief.

☐complies with the length limit designated by court order dated.

☐is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Ashley M. Gjøvik**
**/s/ Ashley M. Gjovik**
**Pro Se Plaintiff-Appellant**

53