CASE No. 25-2028

---

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

---

ASHLEY M. GJØVIK, *an individual*,

*Plaintiff-Appellant*

v.

APPLE INC., *a corporation*,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Northern District of California
No. 3:23-CV-04597
The Honorable Judge Edward M. Chen

---

APPELLANT'S EXCERPTS OF RECORD
VOLUME I (BASIS OF APPEAL)

---

**Ashley M. Gjøvik, JD**
*In Propria Persona*
2108 N. St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

i

CAND-ECF

# Written Opinions Report

## U.S. District Court -- California Northern District
### Filed Report Period: 9/7/2023 – 5/9/2025

| Date Filed: | Case Number & Name: | Doc. # | Select all / clear | Description: | Notes: |
|---|---|---|---|---|---|
| 01/30/2024 | 3:23-cv-04597-EMC Gjovik v. Apple Inc. | 46 | ☐ | **ORDER by Judge Edward M. Chen denying 35, 37 Plaintiff's Motion for Judicial Notice as moot and sua sponte dismissing Plaintiff's Second Amended Complaint with leave to amend. 41, 42 Defendant's Motion to Dismiss and Motion to Strike the Second Amended Complaint are denied as moot. (emclc2, COURT STAFF) (Filed on 1/30/2024)** <br><br> Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) | *Office:* San Francisco <br> *Case Flags:* ADRMOP,APPEAL,E-ProSe,ProSe,REFDIS,REFSET-AGT <br> *NOS:* Racketeer/Corrupt Organization <br> *Cause:* 18:1962 Racketeering (RICO) Act |
| 05/20/2024 | 3:23-cv-04597-EMC Gjovik v. Apple Inc. | 73 | ☐ | **ORDER by Judge Edward M. Chen granting in part and denying in part 48 Defendant's Motion to Dismiss; denying 49 Defendant's Motion to Strike; and granting 64 Plaintiff's Motion to Strike. (emclc2, COURT STAFF) (Filed on 5/20/2024)** <br><br> Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) | *Office:* San Francisco <br> *Case Flags:* ADRMOP,APPEAL,E-ProSe,ProSe,REFDIS,REFSET-AGT <br> *NOS:* Racketeer/Corrupt Organization <br> *Cause:* 18:1962 Racketeering (RICO) Act |
| 08/22/2024 | 3:23-cv-04597-EMC Gjovik v. Apple Inc. | 98 | ☐ | **ORDER denying 93 Plaintiff's Motion for Leave to File Sur-Reply. Signed by Judge Edward M. Chen on 8/22/2024. (emclc2, COURT STAFF) (Filed on 8/22/2024)** <br><br> Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) | *Office:* San Francisco <br> *Case Flags:* ADRMOP,APPEAL,E-ProSe,ProSe,REFDIS,REFSET-AGT <br> *NOS:* Racketeer/Corrupt Organization <br> *Cause:* 18:1962 Racketeering (RICO) Act |
| 10/01/2024 | 3:23-cv-04597-EMC Gjovik v. Apple Inc. | 112 | ☐ | **ORDER by Judge Edward M. Chen granting in part and denying in part 78 Defendant's Motion to Dismiss; denying 79 Defendant's Motion to Strike;** | *Office:* San Francisco <br> *Case Flags:* ADRMOP,APPEAL,E- |

ER VI 3

| Date | Case | # | | Docket Text | Case Info |
|---|---|---|---|---|---|
| | | | | and granting **101** **Plaintiff's Motion to Strike.** (emcle2, COURT STAFF) (Filed on 10/1/2024) | ProSe,ProSe,REFDIS,REFSET-AGT<br>*NOS:* Racketeer/Corrupt Organization<br>*Cause:* 18:1962 Racketeering (RICO) Act |
| 10/25/2024 | 3:23-cv-04597-EMC **Gjovik v. Apple Inc.** | 122 | ☐ | **ORDER by Judge Edward M. Chen re 116 Plaintiff's Motion for Clarification and Correction. (emcle2, COURT STAFF) (Filed on 10/25/2024)**<br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) | *Office:* San Francisco<br>*Case Flags:* ADRMOP,APPEAL,E-ProSe,ProSe,REFDIS,REFSET-AGT<br>*NOS:* Racketeer/Corrupt Organization<br>*Cause:* 18:1962 Racketeering (RICO) Act |
| | 3:23-cv-04597-EMC **Gjovik v. Apple Inc.** | 123 | ☐ | **ORDER by Judge Edward M. Chen denying 115 Plaintiff's Motion for Extension. (emcle2, COURT STAFF) (Filed on 10/25/2024)**<br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) | *Office:* San Francisco<br>*Case Flags:* ADRMOP,APPEAL,E-ProSe,ProSe,REFDIS,REFSET-AGT<br>*NOS:* Racketeer/Corrupt Organization<br>*Cause:* 18:1962 Racketeering (RICO) Act |
| 11/19/2024 | 3:23-cv-04597-EMC **Gjovik v. Apple Inc.** | 137 | ☐ | **ORDER by Judge Edward M. Chen denying 131 Defendant's Motion to Dismiss; and finding as moot 132 Defendant's Motion to Shorten Time. (emcle2, COURT STAFF) (Filed on 11/19/2024)**<br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) | *Office:* San Francisco<br>*Case Flags:* ADRMOP,APPEAL,E-ProSe,ProSe,REFDIS,REFSET-AGT<br>*NOS:* Racketeer/Corrupt Organization<br>*Cause:* 18:1962 Racketeering (RICO) Act |

ER VI 4

5/9/25, 11:07 AM

CAND-ECF

3/4

| | | | |
|---|---|---|---|
| 11/20/2024 | 3:23-cv-04597-EMC<br>Gjovik v. Apple Inc. | 140 | ☐ | **ORDER by Judge Edward M. Chen denying 139 Plaintiff's Motion for Leave to File a Motion for Reconsideration. (emclc2, COURT STAFF) (Filed on 11/20/2024)**<br><br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) | *Office:* San Francisco<br>*Case Flags:* ADRMOP,APPEAL,E-ProSe,ProSe,REFDIS,REFSET-AGT<br>*NOS:* Racketeer/Corrupt Organization<br>*Cause:* 18:1962 Racketeering (RICO) Act |
| 12/04/2024 | 3:23-cv-04597-EMC<br>Gjovik v. Apple Inc. | 144 | ☐ | **ORDER by Judge Edward M. Chen denying 117 Plaintiff's Motion to Stay. (emclc2, COURT STAFF) (Filed on 12/4/2024)**<br><br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) | *Office:* San Francisco<br>*Case Flags:* ADRMOP,APPEAL,E-ProSe,ProSe,REFDIS,REFSET-AGT<br>*NOS:* Racketeer/Corrupt Organization<br>*Cause:* 18:1962 Racketeering (RICO) Act |
| 02/05/2025 | 3:23-cv-04597-EMC<br>Gjovik v. Apple Inc. | 160 | ☐ | **ORDER by Judge Edward M. Chen granting 158 Defendant's Administrative Motion to Stay; and denying 159 Plaintiff's Administrative Motion to Stay. (emclc2, COURT STAFF) (Filed on 2/5/2025)**<br><br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) | *Office:* San Francisco<br>*Case Flags:* ADRMOP,APPEAL,E-ProSe,ProSe,REFDIS,REFSET-AGT<br>*NOS:* Racketeer/Corrupt Organization<br>*Cause:* 18:1962 Racketeering (RICO) Act |
| 02/24/2025 | 3:23-cv-04597-EMC<br>Gjovik v. Apple Inc. | 175 | ☐ | **ORDER by Judge Edward M. Chen denying 156 Plaintiff's Motion to Disqualify Counsel. (emclc2, COURT STAFF) (Filed on 2/24/2025)**<br><br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) | *Office:* San Francisco<br>*Case Flags:* ADRMOP,APPEAL,E-ProSe,ProSe,REFDIS,REFSET-AGT<br>*NOS:* Racketeer/Corrupt Organization<br>*Cause:* 18:1962 Racketeering (RICO) Act |
| 02/27/2025 | 3:23-cv-04597-EMC<br>Gjovik v. Apple Inc. | 179 | ☐ | **ORDER by Judge Edward M. Chen granting in part and denying in part 145 Defendant's Motion to** | *Office:* San Francisco<br>*Case Flags:* |

ER VI 5

5/9/25, 11:07 AM

CAND-ECF

| | | | |
|---|---|---|---|
| | | **Dismiss; and denying 155 Plaintiff's Motion to Amend. (emclc2, COURT STAFF) (Filed on 2/27/2025)** | ADRMOP,APPEAL,E-ProSe,ProSe,REFDIS,REFSET-AGT *NOS:* Racketeer/Corrupt Organization *Cause:* 18:1962 Racketeering (RICO) Act |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) | |
| 04/15/2025 | 204 | **ORDER by Judge Edward M. Chen denying 189 Plaintiff's Motion for Entry of Partial Final Judgment. (emclc2, COURT STAFF) (Filed on 4/15/2025)** | *Office:* San Francisco *Case Flags:* ADRMOP,APPEAL,E-ProSe,ProSe,REFDIS,REFSET-AGT *NOS:* Racketeer/Corrupt Organization *Cause:* 18:1962 Racketeering (RICO) Act |
| 3:23-cv-04597-EMC **Gjovik v. Apple Inc.** | ☐ | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) | |

**Total number of opinions reported:** 13

View Selected

or

Download Selected

## Selection Criteria for Report

| Case Number | 3:23-cv-4597 |
|---|---|
| Office | All |
| Case Type | All |
| Case Flags | All |
| Nature of Suit | All |
| Cause | All |
| Filed Date | 9/7/2023 – 5/9/2025 |
| Sort by | Date Filed |

**ER VI 6**

1

2

3

4                          UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6

7    ASHLEY M GJOVIK,                          Case No.  23-cv-04597-EMC

8                    Plaintiff,

9           v.                                 **ORDER DENYING PLAINTIFF'S**
                                               **MOTION FOR PARTIAL FINAL**
10   APPLE INC.,                               **JUDGMENT**

11                   Defendant.                Docket No. 189

12

13

14          Pending before the Court is Ms. Gjovik's motion for partial final judgment pursuant to

15   Federal Rule of Civil Procedure 54(b).  Having considered the papers submitted, the Court finds

16   the matter suitable for resolution without oral argument.  The hearing on the motion is therefore

17   **VACATED**.  Ms. Gjovik's motion for relief is **DENIED**.

18          Rule 54(b) provides as follows:

19              When an action presents more than one claim for relief . . . or when
                multiple parties are involved, the court may direct entry of a final
20              judgment as to one or more, but fewer than all, claims or parties
                only if the court expressly determines that there is no just reason for
21              delay.  Otherwise, any order or other decision, however designated,
                that adjudicates fewer than all the claims or the rights and liabilities
22              of fewer than all the parties does not end the action as to any of the
                claims or parties and may be revised at any time before the entry of
23              a judgment adjudicating all the claims and all the parties' rights and
                liabilities.
24

25   Fed. R. Civ. P. 54(b).

26          The Supreme Court has instructed that,

27              in deciding whether there are no just reasons to delay . . . , a district
                court must take into account judicial administrative interests as well
28              as the equities involved.  Consideration of the former is necessary to

*United States District Court*
*Northern District of California*

1     ensure that application of the Rule effectively "preserves the history
      federal policy *against piecemeal appeals.*"

2    *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980) (emphasis added).  Thus, "if the

3    unadjudicated claims are closely related to those [already] decided, the district court should

4    generally refuse to enter a judgment under Rule 54(b)" but, if "the claims are sufficiently distinct

5    so that duplicative appellate review will be avoided, the court of appeals will generally find that

6    entry of a Rule 54(b) judgment was not an abuse of discretion."  Moore's Fed. Prac. – Civ. §

7    54.23[1][b]; *see also Curtiss-Wright*, 466 U.S. at 10 (indicating that a court should consider the

8    "interrelationship of the claims so as to prevent piecemeal appeals in cases which should be

9    reviewed only as single units").

10          In the instant case, Ms. Gjovik asks that the Court enter a partial final judgment on all

11   claims that the Court has dismissed with prejudice and/or all claims for which the Court has

12   denied her leave to amend.  *See* Docket Nos. 112, 179 (orders filed on 10/1/2024 and 2/27/2025).

13   Included among these claims are claims related to alleged environmentally unsafe conditions,

14   either at an Apple office or at Ms. Gjovik's former residence (close to an Apple factory).[1]  Ms.

15   Gjovik's main contentions in her motion are as follows:

16          (1) allowing an early appeal on these already-decided claims does not raise the

17               prospect of duplicative appellate review because the claims are factually and

18               legally distinct from her retaliation claims that survived Apple's 12(b)(6)

19               challenges, *see* Mot. at 7 (contending that Apple has also characterized the claims

20               as distinct from the retaliation claims);

21          (2) the claims should be adjudicated by the Ninth Circuit now since they affect the

22               public interest (*e.g.*, because they concern environmental safety), *see* Mot. at 17;

23               and

24          (3) Ms. Gjovik has a strong interest in having the claims adjudicated by the Ninth

25               Circuit now because, otherwise, she would not be able to tell the full narrative of

26               what transpired between her and Apple at trial.  *See* Mot. at 10 (arguing that "[a]n

27   _____

28   [1] Other claims include: violation of RICO; violation of SOX; violation of the Dodd-Frank Act;
     violation of the Bane Civil Rights Act; and violation of the Ralph Civil Rights Act.

United States District Court
Northern District of California

1          appellate ruling restoring these claims would allow the jury to consider, in one

2          proceeding, whether Apple engaged in dangerous and unlawful conduct, concealed

3          its wrongdoing, and then retaliated against an employee who came close to

4          uncovering it"); Mot. at 16 (arguing that "[t]he surviving retaliation claims cannot

5          fill the evidentiary or narrative gap left by the dismissed tort and statutory claims"

6          as "[t]he jury will not hear the details of Plaintiff's toxic exposures, emotional

7          trauma, or Apple's concealment unless those claims are reinstated [by the Ninth

8          Circuit]").

9        The Court has considered Ms. Gjovik's main contentions as well as the other contentions

10 in her papers. It concludes that entry of a partial final judgment under Rule 54(b) is not

11 appropriate for a number of reasons, including the following.

12        First, as Apple correctly points out, several of the already-decided claims do involve

13 allegations of retaliation, and thus they are not distinct from the retaliation claims that the Court is

14 allowing to proceed. *See, e.g.*, Opp'n at 10-12.

15        Second, entry of a partial final judgment does not require that factual and legal issues

16 between adjudicated and unadjudicated claims be identical; similarity is sufficient. *See Morrison-*

17 *Knudsen Co. v. Archer*, 655 F.2d 962, 965 (9th Cir. 1981) (asking whether "the appellate court

18 will be required to address legal or factual issues that are *similar* to those contained in the claims

19 still pending before the trial court[;] [a] similarity of legal or factual issues will weigh heavily

20 against entry of judgment under [Rule 54(b)]") (emphasis added). Here, there are at the very least

21 similar factual issues. For example, for the retaliation claim brought under California Labor Code

22 § 1102.5(b), Ms. Gjovik maintains that Apple retaliated against her because she complained about,

23 *inter alia*, environmental safety violations. Although Ms. Gjovik will not have to prove that

24 Apple actually violated an environmental safety law for this retaliation claim, she will still have to

25 show that she reasonably believed there was such a violation. *See Killgore v. SpecPro Pro. Servs.,*

26 *LLC*, 51 F.4th 973, 988 (9th Cir. 2022). Typically, a reasonable belief has a factual basis of some

27 kind. Thus, there will be similar factual issues raised in both the claims already adjudicated and

28 the unadjudicated § 1102.5 retaliation claim.

United States District Court
Northern District of California

3

1    Third, allowing an appeal of the adjudicated claims now does give rise to the threat of

2    duplicative appeals.  Ms. Gjovik suggests that duplicative appeals could be avoided if the Ninth

3    Circuit were to rule in her favor before the trial on her retaliation claims.  But this assumes that the

4    Ninth Circuit would rule in her favor *and* that it would do so prior to the trial on the retaliation

5    claims.  Neither assumption is a guarantee – especially the latter since Ms. Gjovik has not asked

6    for a stay of proceedings on the retaliation claims pending appeal (which the Court would not be

7    inclined to grant if sought).  And if she were to seek such a stay, that would, if anything,

8    underscore that there is factual overlap among her various claims since that would be the likely

9    basis for any stay request.

10    Fourth, that the claims at issue include claims related to environmental safety does not, in

11    and of itself, weigh in favor of "expedited" appellate review through Rule 54(b).  Certainly, Ms.

12    Gjovik has not cited any authority to support this proposition.

13    Accordingly, the Court hereby denies Ms. Gjovik's Rule 54(b) motion.  The Court shall

14    not enter a partial final judgment on claims that have been dismissed or otherwise not permitted to

15    proceed.  The Court also denies Ms. Gjovik's alternative request for leave to amend.

16

17    This order disposes of Docket No. 189.

18

19    **IT IS SO ORDERED**.

20

21    Dated: April 15, 2025

22

23    _____

24    EDWARD M. CHEN
      United States District Judge

25

26

27

28

United States District Court
Northern District of California

4

ER VI 11

1

2

3

4                          UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6

7    ASHLEY M GJOVIK,                        Case No.  3:23-cv-04597-EMC   (KAW)

8                   Plaintiff,               **ORDER DENYING PLAINTIFF'S
                                             MOTION FOR LEAVE TO FILE A**
9         v.                                 **MOTION FOR RECONSIDERATION**

10   APPLE INC.,                             [Discovery Letter #5]

11                  Defendant.               Re: Dkt. No. 171

12

13         On February 11, 2025, Plaintiff filed four discovery letter briefs. (Dkt. Nos. 162-165.)  On

14   February 20, 2025, the Court terminated the filings on the grounds that the Court does not

15   entertain unilateral discovery letters. (Dkt. No. 170.)  Plaintiff was advised that "the parties are

16   required to meet and confer and file joint discovery letters to address pending discovery disputes

17   in accordance with the Court's Standing Order." *Id.* at 1 (citing Judge Westmore's General

18   Standing Order ¶¶ 13- 14).

19         On February 20, 2025, Plaintiff filed a motion for reconsideration of the Court's order

20   terminating the discovery letters.[1] (Pl.'s Mot., Dkt. No. 171.)  Specifically, Plaintiff requested

21   "reconsideration of her request for a Judge-supervised meet and confer telephone conference, as

22   prescribed by the Honorable Judge Chen last year, due to the open and ongoing discovery disputes

23   between the parties." *Id.* at 3.[2]

24         On February 27, 2025, Defendant filed an opposition and explained that Plaintiff filed her

25   _____

26   [1] Plaintiff did not follow the proper procedure. Before filing a motion for reconsideration, a party
     is required to obtain leave of court. *See* Civil L.R. 7-9(a). Thus, the Court will construe this as a
27   motion for leave to file a motion for reconsideration.
     [2] The Court notes that Plaintiff attached more than 60 pages of exhibits even though the Court's
28   standing order limits discovery letter exhibits to 12 pages. (Judge Westmore's Standing Order ¶
     14(b)(ii).)

1   request for reconsideration without asking Apple to meet and confer in accordance with the

2   Court's Standing Order. (Opp'n, Dkt. No. 178 at 1.)  Defendant further represented that it remains

3   willing to meet and confer in accordance with the Court's standing order. *Id.*

4          Accordingly, Plaintiff's motion for leave to file a motion for reconsideration regarding her

5   request for a judge-supervised meet and confer telephone conference is DENIED.  At this

6   juncture, the Court finds no basis to depart from the procedures set forth in the standing order,

7   which requires that the parties meet and confer in person or via video conference. (Judge

8   Westmore's General Standing Order ¶ 13.)  If Plaintiff is concerned about the possibility of

9   Defendant making "unlawful threats and coercive statements" during the meet and confer or the

10  potential that the discussions will be misrepresented, the parties can meet via video conference and

11  record the meet and confer session. (*See* Dkt. No. 171 at 2.)  The parties are advised to limit their

12  discussions to the relevant discovery device(s) at issue.  This meet and confer process is not the

13  appropriate venue to air general grievances.

14         Finally, the parties are directed to meet and confer regarding the Northern District's model

15  stipulated protective order (available at https://cand.uscourts.gov/forms/model-protective-orders/).

16  If the parties are unable to agree, the Court is inclined to adopt the model order for standard

17  litigation.

18         IT IS SO ORDERED.

19  Dated: March 11, 2025

20                                                          KANDIS A. WESTMORE
21                                                          United States Magistrate Judge

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHLEY M GJOVIK, | Case No. 23-cv-04597-EMC |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS; AND DENYING PLAINTIFF'S MOTION TO AMEND** |
| APPLE INC., | |
| Defendant. | |
| | Docket Nos. 145 and 155 |

Plaintiff Ashley Gjovik, proceeding pro se,[1] is a former employee of Defendant Apple, Inc. She started to work for Apple in February 2015 and was ultimately terminated in September 2021. About two years after she was fired, she initiated this lawsuit. In the operative fifth amended complaint ("5AC"), Ms. Gjovik asserts seven different claims against Apple, all predicated on state law. For the most part, the claims fall into two basic categories: (1) Apple engaged in environmentally unsafe conduct that harmed Ms. Gjovik and (2) Apple retaliated against Ms. Gjovik – including by terminating her from employment – because she complained about certain company conduct, including but not limited to environmentally unsafe conduct.

Now pending before the Court is Apple's motion to dismiss portions of the 5AC. Having considered the parties' briefs and accompanying submissions, as well as the oral argument presented at the hearing on February 21, 2025,[2] the Court hereby **GRANTS** in part and **DENIES**

---

[1] Ms. Gjovik appears to have a J.D. from Santa Clara University.

[2] After the hearing was held, a declaration was submitted by a third party, Cher Scarlett. *See* Docket No. 186 (Scarlett Decl.). The Court does not consider the declaration because pending before it is a 12(b)(6) motion.

United States District Court
Northern District of California

in part the motion to dismiss.

## I.        FACTUAL & PROCEDURAL BACKGROUND

The 5AC is largely consistent with the prior pleadings.  That is, as before, the main

categories of misconduct by Apple as alleged in the 5AC are as follows:

> (1) During her employment with Apple, Ms. Gjovik lived in an apartment near an Apple factory (known as the ARIA factory) and became ill because the factory released toxic substances into the environment.
>
> (2) Ms. Gjovik's office at Apple (known as Stewart 1) was located on a contaminated site subject to EPA regulation, *i.e.*, a Superfund site, and she became ill because of Apple's actions/omissions related to the site.
>
> (3) Apple made employees, including Ms. Gjovik, participate in studies related to Apple products that were invasive to their privacy.
>
> (4) Apple retaliated against Ms. Gjovik for making complaints about harassment and environmental safety.  Ms. Gjovik's complaints included internal complaints, complaints to governmental agencies, complaints to the press, and complaints made in social media. The retaliation by Apple included but was not limited to the termination of Ms. Gjovik from employment.

Docket No. 73 (Order at 2).

Based on, *inter alia*, these factual allegations, Ms. Gjovik asserts the following causes of

action in the 5AC:

> (1)        Wrongful termination in violation of public policy.
>
> (2)        Violation of the California Whistleblower Act.  *See, e.g.*, Cal. Lab. Code §
>
> 1102.5(b) (providing that an employer "shall not retaliate against an employee
>
> for disclosing information . . . to [*inter alia*] a government or law enforcement
>
> agency [or] to a person with authority over the employee . . . if the employee
>
> has reasonable cause to believe that the information discloses a violation of a
>
> state or federal statute, or a violation of or noncompliance with a local, state, or
>
> federal rule or regulation").
>
> (3)        Violation of California Labor Code § 6310.  *See, e.g.*, *id.* § 6310(a) (providing
>
> that "[n]o person shall discharge or in any manner discriminate against any

United States District Court
Northern District of California

2

employee because the employee has [*e.g.*] [m]ade any oral or written complaint
to the [Division of Occupational Safety and Health] [or] other governmental
agencies having statutory responsibility for or assisting the division with
reference to employee safety or health").

(4)    Violation of California Labor Code § 98.6. *See id.* § 98.6(a) (providing that
"[a] person shall not discharge an employee or in any manner discriminate,
retaliate, or take any adverse action against any employee . . . because the
employee . . . engaged in any conduct delineated in this chapter . . . or because
the employee . . . has filed a bona fide complaint or claim . . . under or relating
to their rights that are under the jurisdiction of the Labor Commissioner . . . or
because of the exercise by the employee . . . on behalf of themselves or others
of any rights afforded them").

(5)    Creation and maintenance of a private nuisance at the ARIA factory.

(6)    Intentional infliction of emotional distress – fear of cancer.

(7)    Intentional infliction of emotional distress – "traditional."

Apple has challenged Counts 5-7 above (*i.e.*, the non-retaliation claims) in their entirety.  It
also has moved to dismiss part of two retaliation claims – *i.e.*, the § 1102.5 claim (Count 2) and
the § 98.6 claim (Count 4).  Apple has not moved to dismiss in whole or in part the other two
retaliation claims (Counts 1 and 3, respectively, termination in violation of public policy and
violation of § 6310).

## II.    DISCUSSION

A.    Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain
statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A
complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil
Procedure 12(b)(6).  *See* Fed. R. Civ. P. 12(b)(6).  To overcome a Rule 12(b)(6) motion to dismiss
after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic
Corp. v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must .

3

United States District Court
Northern District of California

1     . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d

2     1123, 1135 (9th Cir. 2014). The court "accept[s] factual allegations in the complaint as true and

3     construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St.*

4     *Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But "allegations in a

5     complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient

6     allegations of underlying facts to give fair notice and to enable the opposing party to defend itself

7     effectively." *Levitt*, 765 F.3d at 1135 (internal quotation marks omitted). "A claim has facial

8     plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

9     inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The

10     plausibility standard is not akin to a probability requirement, but it asks for more than a sheer

11     possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).

12     B.     <u>Untimely and Oversized Opposition</u>

13         As an initial matter, the Court takes note that Ms. Gjovik initially filed an opposition at

14     Docket No. 149 that was 26 pages in length (*i.e.*, only one page over the 25-page limit). However,

15     approximately seven hours later, she filed a corrected version of the brief at Docket No. 150; that

16     corrected opposition is 36 pages in length. She claims that this brief is her "Final 2.0" brief

17     "[r]evised with legal citations & missing sections." Docket No. 150 (Opp'n). The corrected

18     opposition was not timely filed (about seven hours late).

19         Because Ms. Gjovik filed an untimely and oversized opposition, the Court could well

20     strike her brief – notwithstanding her pro se status. *See, e.g.*, *Swanson v. U.S. Forest Serv.*, 87

21     F.3d 339, 343, 345 (9th Cir. 1996) (holding that district court did not abuse its discretion in

22     striking portions of a brief that violated page limits). Taking this course of action would not be

23     unwarranted given that Ms. Gjovik has, in the past, on more than one occasion failed to comply

24     with deadlines and/or page limits.

25         Although the Court could fairly take that course of action, it shall not at this time; instead,

26     it shall, in the interest of justice, consider the corrected opposition and address Apple's motion to

27     dismiss on the merits. Ms. Gjovik is forewarned, however, that, in the future, she must comply

28     with all deadlines, page limits, and/or other rules or orders, just as any litigant before this Court

1  must.  The Court has already given Ms. Gjovik substantial leeway in the past and will no longer

2  excuse her compliance with the rules.

3  C.    Environmental Safety Claims

4        Ms. Gjovik has two environmental safety claims: (1) private nuisance (Count 5) and (2)

5  intentional infliction of emotional distress ("IIED") based on "fear of cancer" (Count 6).  Both

6  claims are based on an Apple semiconductor fabrication factory (located at 3250 Scott Blvd.)

7  allegedly releasing toxic chemicals into the environment which affected Ms. Gjovik because she

8  lived in an apartment nearby (located at 3255 Scott Blvd.).  The factory is also known as the

9  ARIA factory.

10       In its most recent order, the Court held that the environmental safety claims were time

11  barred based on the face of the then-operative pleading, but it gave Ms. Gjovik leave to amend to

12  try to plead around the statute-of-limitations bar (specifically, through the delayed discovery rule).

13  The Court also held that, with respect to the IIED claim, Ms. Gjovik failed to state a claim for

14  relief; however, it gave her leave to amend.  *See* Docket No. 112 (Order at 31) (indicating that Ms.

15  Gjovik would have to "allege that Apple directed its conduct at her specifically or with knowledge

16  of her presence specifically, and that its conduct was calculated to cause her severe emotional

17  distress").

18       1.    Statute of Limitations

19       In its motion to dismiss, Apple renews its argument that the environmental safety claims

20  are time barred.  Although the statute of limitations is an affirmative defense, it can be raised in a

21  12(b)(6) motion if it is apparent from the face of the complaint.  *See Rivera v. Peri & Sons Farms,*

22  *Inc.*, 735 F.3d 892, 902 (9th Cir. 2013).

23       As alleged in the 5AC, Ms. Gjovik sustained injury as a result of the ARIA factory while

24  she lived in the nearby apartment from February 2020 through October 2020.  *See* 5AC ¶ 12.  Ms.

25  Gjovik, however, did not file this lawsuit until September 2023, *i.e.*, some three years later.  This

26  is, on its face, problematic given that Ms. Gjovik's claims for nuisance and IIED have a two-year

27  statute of limitations.  *See* Cal. Code Civ. Proc. § 340.8(a) ("In any civil action for injury or illness

28  based upon exposure to a hazardous material or toxic substance, the time for commencement of

United States District Court
Northern District of California

5

1    the action shall be no later than either two years from the date of injury, or two years after the

2    plaintiff becomes aware of, or reasonably should have become aware of, (1) an injury, (2) the

3    physical cause of the injury, and (3) sufficient facts to put a reasonable person on inquiry notice

4    that the injury was caused or contributed to by the wrongful act of another, whichever occurs

5    later.").

6         Ms. Gjovik argues, however, that she is not time barred under § 340.8 because she did not

7    become aware of, and reasonably should not have become aware of, the cause of her injury – *i.e.*,

8    the ARIA factory – until February 2023. *See* 5AC ¶ 269 (asserting that the statute of limitations

9    "should be tolled until February 2023, the date when Plaintiff first discovered the nature of

10   Apple's hazardous activities at 3250 Scott"). As alleged in the 5AC, February 2023 was when

11   Ms. Gjovik discovered that the Apple factory had "permits for semiconductor fabrication

12   equipment" for the ARIA factory. 5AC ¶ 259. Ms. Gjovik obtained these documents "after filing

13   multiple Public Records Act requests about various Apple buildings." 5AC ¶ 259; *see also* RJN,

14   Ex. 2 (tweet from Ms. Gjovik, dated 2/21/2023) (stating that "I just received Public Records

15   results on the 3250 building permits & its [sic] a doozy[;] Apple registered the building in 2015

16   for haz waste storage & generation").

17        Ms. Gjovik does not dispute that, well before February 2023, she knew Apple had a

18   factory close to her apartment. In fact, she admits that she knew the factory "was registered as a

19   hazardous waste generator," 5AC ¶ 262, and that she voiced concern about the factory to Apple's

20   Environmental Health & Safety and Legal Departments in 2020 and 2021. *See* 5AC ¶ 265.[3]

21   However, Ms. Gjovik maintains that, until she knew *specifically* that semiconductor fabrication

22   was occurring at the factory, she did not know and should not have reasonably known that her

23   injuries were caused by the factory as opposed to a different cause. *See, e.g.*, 5AC ¶¶ 259, 261

24   (alleging that "knowledge of the semiconductor operations at the facility" was critical to Ms.

25   Gjovik "connect[ing] Apple's hazardous manufacturing activities at 3250 Scott to her 2020

26

27   _____
     [3] *See also* 5AC ¶ 25 (indicating that, in or about December 2020, "Plaintiff . . . notified Apple
     EH&S and environmental legal about what occurred to her near 3250 Scott"); 5AC ¶ 36 (alleging
28   that, in or about September 2020, "[t]he plaintiff notified several Apple executives of her findings
     and activities" with respect to air monitor testing in her apartment next to the Apple factory).

United States District Court
Northern District of California

6

illness"); 5AC ¶ 268 (alleging that, "[u]pon learning of the semiconductor fabrication at 3250

Scott, Plaintiff immediately identified the facility's toxic emissions as the plausible cause of her

severe health problems").  According to Ms. Gjovik, the fact that she knew the factory was a

hazardous waste generator is not important because (1) Apple did not warn her that the factory

posed a danger after she raised concerns about it to EH&S and Legal, *see* 5AC ¶ 265; (2)

"[r]ecords on the EPA's Toxics Release Inventory (TRI) and other federal and state databases

showed no significant toxic chemical releases from 3250 Scott," 5AC ¶ 261; and (3) "[t]he

region's history of industrial activity and the current presence of research and development

facilities that generate hazardous waste did not raise any alarms."  5AC ¶ 262.  Ms. Gjovik also

claims that Apple engaged in action that concealed semiconductor fabrication was occurring at the

factory.  *See, e.g.*, 5AC ¶ 263 (alleging that Apple pressured government agencies such as "the fire

department and EPA to avoid documenting or discussing its activities"); 5AC ¶ 267 (alleging that

Apple used "misleading permits and improper classifications that obscured the facility's true

nature").  Finally, she emphasizes that government agencies "investigated the area and found no

records that would indicate a direct link to her health issues," 5AC ¶ 263 – *i.e.*, if the government

found no problem, she could not have reasonably been expected to find one either.

In response, Apple argues that Ms. Gjovik's attempt to rely on the delayed discovery rule

fails because, at bottom, the information she discovered in February 2023 – in particular, the

permits for the ARIA factory showing that it engaged in semiconductor fabrication – was publicly

available at the time she was injured in 2020, and Ms. Gjovik has failed to show why she could

not have found that publicly available information until February 2023.

     2.   <u>Delayed Discovery Rule</u>

Before delving into the merits of the parties' dispute, the Court first addresses Ms.

Gjovik's contention that the Court is applying the wrong discovery rule.  According to Ms.

Gjovik, although she has asserted two state law claims, federal law on delayed discovery applies.

Ms. Gjovik further argues that, under federal law on delayed discovery, the appropriate standard is

not what *she* knew or should have known but rather what a *reasonable person* in her position

knew or should have known (*i.e.*, an objective inquiry, not a subjective one).

United States District Court
Northern District of California

7

Ms. Gjovik is correct that federal law on delayed discovery applies.  In *O'Connor v. Boeing North America*, 311 F.3d 1139 (9th Cir. 2002), the plaintiffs sued two companies alleging that substances released from their facilities caused the plaintiffs to suffer illnesses.  The plaintiffs brought tort claims under California law.  California law had a limitations period of one year.  The issue was whether the delayed discovery rule allowed the plaintiffs to get around the time bar.

The Ninth Circuit held that a CERCLA provision, 42 U.S.C. § 9658, applied to the claims even though the plaintiffs were asserting only state law claims "without an accompanying CERCLA action."  *Id.* at 1149.  Section 9658 provided:

> In the case of any action brought *under State law for personal injury* . . . which [is] caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant, released into the environment from a facility, if the applicable limitations period for such action (as specified in the State statute of limitations or under common law) provides a commencement date which is earlier than the federally required commencement date, such period shall commence at the federally required commencement date in lieu of the date specified in such State statute.

*Id.* at 1146 (quoting § 9658(a)(1); emphasis added).  Thus, in the case under consideration, "§ 9658 preempts California's commencement date if that date is earlier than the federally required commencement date."[4]  *Id.*; *see also id.* at 1143-44 (noting that § 9658 "retains the state statute of limitations[] and establishes a federal standard that governs when delayed discovery of a plaintiff's claims will toll the statute of limitations[;] [t]his federal standard trumps a less generous state rule that would start the limitations period earlier").

The Ninth Circuit went on to evaluate whether the accrual date was different under state and federal law.  "Under both federal and California law, the discovery rule provides that a limitations period does not commence until a plaintiff discovers, or reasonably could have discovered his claim," *i.e.*, "through investigation of sources open to her."  *Id.* at 1147.  But under California law, "a plaintiff discovers a claim when the plaintiff 'suspects or should suspect that her injury was caused by wrongdoing.'"  *Id.*  In contrast, federal law "requires more than suspicion

---

[4] In its reply brief, Apple argues that *O'Connor* is not applicable because Ms. Gjovik's "claim is for nuisance and is not brought under CERCLA."  Reply at 4 n.4.  However, that argument does not square with what the Ninth Circuit held in *O'Connor*.

8

alone"; discovery turns on when the plaintiff "knows or reasonably should have known of that cause." *Id.* at 1148. Because federal law on delayed discovery was more generous to the plaintiff, the Ninth Circuit held that federal law, and not state law, applied.

Based on *O'Connor*, Ms. Gjovik is correct that the Court should not have relied on state law for delayed discovery in its prior order. *See, e.g.*, Docket No. 112 (Order at 27) (noting that, under California's delayed discovery rule, "'a cause of action accrues . . . when the plaintiff has reason to suspect an injury and some wrongful cause, unless the plaintiff pleads and proves that a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action[;] [i]n that case, the statute of limitations . . . will be tolled until such time as a reasonable investigation would have revealed its factual basis'"). To be clear, though, neither party raised § 9658 at the time of the prior hearing.

Ms. Gjovik also argues that, under federal law on delayed discovery, the issue is "not whether Plaintiff herself should have discovered the source of the emissions but rather whether a reasonable person in Plaintiff's position would have been able to identify the source." Opp'n at13; *see also* Opp'n at 13 ("Plaintiff's claims in this case are not simply based on subjective awareness; rather, they are grounded in the objective standard of a reasonable person."). Here, Ms. Gjovik is not entirely correct. As noted above, the delayed discovery rule under federal law turns on when the plaintiff "knows or reasonably should have known" the existence and cause of her injury, *O'Connor*, 311 F.3d at 1148 (emphasis added). In *O'Connor*, the Ninth Circuit stated that

> [a] two-part analysis determines whether Plaintiffs reasonably should have known of their claim. . . . First, we consider whether a reasonable person in Plaintiffs' situation would have been expected to inquire about the cause of his or her injury. Second, if the plaintiff was on inquiry notice, "we must next determine whether [an inquiry] would have disclosed the nature and cause of plaintiff's injury so as to put him on notice of his claim." The plaintiff will be charged with knowledge of facts that he would have discovered through inquiry.

*O'Connor*, 311 F.3d at 1150. While the first inquiry evaluates whether a reasonable person in a plaintiff's situation would have been expected to inquire about the cause of his or her injury, the second inquiry does not use the same benchmark. "The second prong of the test for application of

9

United States District Court
Northern District of California

1    the discovery rule is whether a reasonable inquiry would have put [a] Plaintiff[] on notice of their

2    claim." *Id.* at 1155.

3        3.    "Reasonably Should Have Known"

4        Because Ms. Gjovik has claimed that she did not *actually know* the cause of her injuries

5    until February 2023, the critical question in the instant case is when she *reasonably should have*

6    *known* of that cause.  As noted above, *O'Connor* establishes a two-part analysis.

7        In the instant case, Ms. Gjovik does not make any argument that, at the first prong, a

8    reasonable person in her situation would not have been expected to inquire about the cause of her

9    injuries.  This is likely because Ms. Gjovik *did*, at or about the time she was suffering her injuries,

10   start to make inquiries about the cause thereof.  *Cf. Wood v. Santa Barbara Chamber of*

11   *Commerce, Inc.*, 705 F.2d 1515, 1521 (9th Cir. 1983) (noting that plaintiff suspected copyright

12   infringement and this suspicion "placed upon [him] a duty to investigate further into possible

13   infringements of his copyright"); *see also Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 971

14   F.3d 1042, 1048 n.5 (9th Cir. 2020) (stating that *O'Connor* did not discuss *Wood*, which "provides

15   that suspicion of infringement triggers a duty to investigate").  Thus, the question here is whether,

16   at the second prong, "a reasonable inquiry would have put [Ms. Gjovik] on notice of [her] claim."

17   *Id.* at 1155; *see also id.* at 1155-56 (noting that this step "focuses on whether, if the Plaintiffs had

18   inquired about the cause of their illnesses, the result of that inquiry would have provided Plaintiffs

19   with knowledge of the connection between the injury and its cause").  This inquiry *does* bear

20   similarity to the California delayed discovery rule.  *See* Docket No. 112 (Order at 27) (noting that,

21   under California's delayed discovery rule, a plaintiff must "'plead[] and prove[] that a reasonable

22   investigation at that time would not have revealed a factual basis for that particular cause of

23   action[;] [i]n that case, the statute of limitations . . . will be tolled until such time as a reasonable

24   investigation would have revealed its factual basis'").

25       4.    Permits and Other Publicly Available Documents

26       As to whether a reasonable inquiry would have put Ms. Gjovik on notice of her claims, the

27   Court must bear in mind what Ms. Gjovik has already alleged in her 5AC.  According to Ms.

28   Gjovik, what actually put her on notice was the discovery (in February 2023) of permits for the

1    Apple factory which showed it was engaged in semiconductor fabrication.  Thus, Apple makes a

2    fair contention that, if a reasonable inquiry would have led Ms. Gjovik to the permits *before*

3    February 2023, then her claim she could not have reasonably known about the semiconductor

4    fabrication until February 2023 is not tenable.

5        Apple has asked the Court to take judicial notice of the fact that the permits for the ARIA

6    factory are publicly available on the website for the City of Santa Clara (https://aca-

7    prod.accela.com/santaclara/Default.aspx (last visited 1/28/2025)).



11

12   *See* RJN, Ex. 4B (ECF Page 23) (website results search, showing permits from December 2017

13   that refer to semiconductor fabrication).  Notably, these are the same permits that Ms. Gjovik

14   tweeted about in February 2023 when she announced her discovery of the cause of her injuries.

15   *See* RJN, Ex. 1 (ECF Pages 2-3) (tweet, dated 2/21/2023).  Apple has also asked the Court to take

16   judicial notice of "historical pages that show the publicly available City of Santa Clara permit

17   website as it existed *back in 2020*."  RJN at 6 (noting that "Exhibits 5A-5B show what the City of

18   Santa Clara's permit center website looked like back in 2020, while Exhibits 4A-4G show what

19   the City's permit center website looks like presently"; the historical "'Smart Permit Search' link

20   [was] preserved by the Internet Archive WayBack Machine on November 11, 2020").

21       In addition to the permits, Apple points out that Ms. Gjovik mentions in the 5AC a "2019

22   gas leak report" that "confirmed [her] belief that Apple's activities at the facility caused her

23   illness."  5AC ¶ 260.  That gas leak report "mentioned phosphine – an indicator of Apple's toxic

24   emissions at 3250 Scott."  5AC ¶ 260.  The gas leak report appears to have come from Santa Clara

25   City Fire Department records for the factory.  *See* 5AC ¶ 23 (alleging that the records included

26   "chemical spill reports" from 2019-2022 and reflected "eight confirmed leaks/spills: leaks of

27   phosphine and silane on June 1 2019; a phosphine leak on October 21 2019; a tetraethyl

28   orthosilicate leak on July 17 2020; a significant phosphine leak on April 30 2021; a 5% fluorine

United States District Court
Northern District of California

11

ER VI 26

1    gas leak on April 18 2022, a hexafluorobutadiene leak on May 29 2022, and leaks of two unnamed

2    toxic gases on September 20 2022 and December 21 2022").  Apple asks the Court to take judicial

3    notice that the gas leak report is publicly available through the Santa Clara Fire Department

4    website.  *See* RJN, Ex. 3 (incident report, dated 6/2019) (ECF Page 15) ("E99 and H99 responded

5    to a gas leak . . . . ERT was on scene . . . . The alarm was for .5 parts per billion that was going

6    through their scrubbers.  The chemicals were Silane and Phosephine [sic].").  The face of the

7    document also indicates that the report was publicly accessible as of 2020; the document reflects

8    an "**upload date**" of February 18, 2020.  *See* RJN, Ex. 3 (ECF Page 11).

9         Finally, Apple notes that, in the 5AC, Ms. Gjovik refers to allegedly "difficult-to-find

10   agency filings" – specifically, that Apple made with the Bay Area Air Quality Management Board.

11   According to Ms. Gjovik, the filings reflect that, "in at least 2019-2021, 3250 Scott exhausted

12   reportable amounts of mercury, arsenic, carbon monoxide, and formaldehyde into the ambient air

13   around the factory."  5AC ¶ 25.  Apple asks the Court to take judicial notice of the fact that this

14   information was publicly available on the Bay Area Air Quality Management District

15   ("BAAQMD" ) website – specifically, "the BAAQMD 2018 emissions data was publicly available

16   online [back] in August 2021, and shows that 3250 Scott emitted the same substances Plaintiff

17   alleges she saw in the 2019-2021 permits that allegedly put her on notice of potential exposure."

18   Mot. at 13; *see also* RJN, Ex. 6A (BAAMQ website) (ECF Page 46) (reflecting that "Toxic Air

19   Containment Inventory for 2018 – Sorted by County, by City, and by Facility Name" was **posted**

20   on 8/24/2021); RJN, Ex. B (Toxic Air Containment Inventory for 2018) (ECF Pages 52, 170)

21   (reflecting that 3250 Scott produced certain levels of "Diesel Engine Exhaust Particulate Matter"

22   which includes, *e.g.*, formaldehyde, arsenic, and mercury).

23        In her opposition brief, Ms. Gjovik states she opposes Apple's request for judicial notice,

24   but she did not provide any argument as to why.  Nor did she file a brief in opposition to the

25   request for judicial notice concurrently with her opposition to the motion to dismiss.  Instead, Ms.

26   Gjovik did not file an opposition to the request for judicial notice until some ten days after the

27   brief was due.  *See* Docket No. 154-2 (opposition to RJN).  While the Court, in the interest of

28   justice, is considering Ms. Gjovik's substantive opposition to the motion to dismiss in spite of its

12

1    untimeliness, it will not consider Ms. Gjovik's untimely opposition to the request for judicial

2    notice.  There is absolutely no reason why this opposition could not have been filed at the time she

3    filed her opposition to the motion to dismiss.  Certainly, there is no justification for filing the

4    opposition ten days late.

5         The Court, therefore, deems Ms. Gjovik's failure to timely oppose the request for judicial

6    notice a waiver of any argument challenging the request for judicial notice.  In any event, the

7    Court independently finds that it may take judicial notice of the documents submitted by Apple

8    (*i.e.*, the Santa Clara building permits, a Santa Clara Fire Department gas leak report, and a

9    BAAMQD publication) pursuant to Federal Rule of Evidence 201(b).[5]  *See, e.g.*, *Organic*

10   *Cannabis Found., LLC v. Comm'r*, 962 F.3d 1082, 1096 (9th Cir. 2020) (taking judicial notice that

11   the U.S. Postal Service has reserved a certain zip code for P.O. Boxes in Santa Rosa because

12   "judicial notice may be taken of official information that is posted on a government website and

13   that is not subject to reasonable dispute") (internal quotation marks omitted); *United States SBA v.*

14   *Bensal*, 853 F.3d 992, 1003 & n.3 (9th Cir. 2017) (indicating that a court may take judicial notice

15   of information "'made publicly available by government entities'"; here, that information was

16   from a government website that "[t]he SBA requires personal guarantees from individuals who

17   own at least 20% of or hold significant management positions in any business seeking a direct

18   loan or guarantee"); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010)

19   ("tak[ing] into consideration the list of approved 403(b) vendors displayed publicly on the

20   respective web sites of the South Kitsap and El Dorado School Districts" because "it was made

21   publicly available by government entities (the school districts), and neither party disputes the

22   authenticity of the web sites or the accuracy of the information displayed therein"); *United States*

23   *v. Basher*, 629 F.3d 1161, 1165 n.2 (9th Cir. 2011) (taking judicial notice of information in the

24   Bureau of Prisons Inmate Locator Service because "[w]e take judicial notice of this information

25   that is available to the public").

26

27   [5] *See* Fed. R. Evid. 201(b) (providing that a court may take judicial notice of a "fact that is not
     subject to reasonable dispute because it . . . can be accurately and readily determined from sources
28   whose accuracy cannot reasonably be questioned").  Apple also argues that the Court could
     consider the documents based on the incorporation-by-reference doctrine.

United States District Court
Northern District of California

13

United States District Court
Northern District of California

1       Under the above authorities, the Court may *also* take judicial notice of the dates the

2  documents were publicly available.  As noted above, the face of the gas leak report indicates that

3  the report was publicly accessible as of 2020: the document reflects an "upload date" of February

4  18, 2020.  *See* RJN, Ex. 3 (ECF Page 11).  Similarly, the BAAMQ website reflects that the "Toxic

5  Air Containment Inventory for 2018 – Sorted by County, by City, and by Facility Name" was

6  posted on August 24, 2021.  *See* RJN, Ex. 6A (BAAMQ website) (ECF Page 46).

7       The closest call concerns the date that the building permits were available; this is because

8  Apple is relying on the Internet Archive's WayBack Machine to show what the Santa Clara permit

9  center website looked like back in 2020.  "'The Wayback Machine is an online digital archive of

10  web pages.  It is run by the Internet Archive, a nonprofit library in San Francisco, California.'"

11  *Valve Corp. v. Ironburg Inventions Ltd.*, 8 F.4th 1364, 1374 (Fed. Cir. 2021).  District courts in

12  this circuit have routinely taken judicial notice of content from the Wayback Machine.  *See*

13  *Parziale v. HP, Inc.*, No. 5:19-cv-05363-EJD, 2020 U.S. Dist. LEXIS 179738, at *8 (N.D. Cal.

14  Sept. 29, 2020) (stating that "'[d]istrict courts in this circuit have routinely taken judicial notice of

15  content from the Internet Archive's Wayback Machine pursuant to this rule'"; at issue in the case

16  was a "historical snapshot of the online store page for [a product], as archived on the Wayback

17  Machine").  This Court has done so on a prior occasion and was affirmed.  *See Steinberg v.*

18  *Icelandic Provisions, Inc.*, No. 21-CV-05568-EMC, 2022 U.S. Dist. LEXIS 13478, at *4 n.1 (N.D.

19  Cal. Jan. 25, 2022), (granting judicial notice of fact from website as it existed on a given date,

20  preserved by the WayBack Machine), *aff'd*, No. 22-15287, 2023 U.S. App. LEXIS 14431 (9th Cir.

21  June 9, 2023).

22       The Ninth Circuit does not appear to have explicitly weighed in on the issue of whether

23  content from the Wayback Machine may be judicially noticed.  However, the Federal Circuit has

24  held that judicial notice is appropriate, at least for purposes of establishing when a web reference

25  was first made available to the public.  *See Valve Corp. v. Ironburg Inventions Ltd.*, 8 F.4th 1364,

26  1374 (Fed. Cir. 2021) (noting that patent "[e]xaminers use The Wayback [M]achine as a source of

27  information to determine when a Web reference was first made available to the public") (internal

28  quotation marks omitted).  The Federal Circuit stated as follows:

1
2
3
4
5
6
7
8

> District courts have taken judicial notice of the contents of webpages available through the Wayback Machine "as facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Erickson v. Neb. Mach. Co.*, No. 15-CV-01147-JD, 2015 U.S. Dist. LEXIS 87417, 2015 WL 4089849, at *1 n.1 (N.D. Cal. July 6, 2015) (comparing "copies of current versions" of websites with versions available on the Wayback Machine to determine "that the websites were substantively identical during the relevant timeframe"); *see also Pohl v. MH Sub I, LLC*, 332 F.R.D. 713, 716 (N.D. Fla. 2019) (collecting cases); *UL LLC v. Space Chariot Inc.*, 250 F. Supp. 3d 596, 603-04 & n.2 (C.D. Cal. 2017) (determining when websites began advertising a certification mark and collecting cases). We agree.

9   *Id.* at 1374-75.

10        On the other hand, the Fifth Circuit reached a different conclusion in *Weinhoffer v. David*

11   *Shoring, Inc.*, 23 F.4th 579 (5th Cir. 2022). There, the court noted that, "[b]eyond the context of

12   judicial notice, our sister circuits have allowed district courts to rely on archived webpages where

13   someone with personal knowledge of the reliability of the archive service has been authenticated

14   pursuant to Rule 901." *Id.* at 584 (citing Second, Seventh, and Third Circuit decision). It then

15   stated:

16
17
18

> This reliance on personal knowledge indicates that exhibits derived from these sources are not inherently or self-evidently reliable in the same way as documents designated as self-authenticating by Rule 902.

19

> . . . .

20
21
22

> Our sister circuits' decisions that the Wayback Machine is not self-authenticating are persuasive in the context of judicial notice. In sum, the district court erred in taking judicial notice of the terms because a private internet archive falls short of being a source whose accuracy cannot reasonably be questioned as required by Rule 201.

23   *Id.*

24        The Fifth Circuit, however, acknowledged that the Federal Circuit had reached a different

25   result in *Valve*. But it distinguished *Valve* on the following basis:

26
27
28

> At issue [in *Valve*] was whether an exhibit was authenticated as identical to the document viewed by the patent examiner and whether the exhibit could be prior art. . . . [T]he Federal Circuit held that judicial notice of the Wayback Machine could be used to establish that an otherwise authenticated exhibit was publicly

United States District Court
Northern District of California

15

United States District Court
Northern District of California

1            accessible on the webpage's archive date as determined by a patent

2            examiner who was "trained and required to determine publication
dates."  Here [in *Weinhoffer*], the Wayback Machine content
containing the auction terms has not been otherwise authenticated.

3   *Id.*

4         Even if the Court were to follow the more restrictive view of the Fifth Circuit, the instant

5 case is more analogous to *Valve* which the Fifth Circuit essentially deemed distinguishable.  In the

6 case at bar, the building permits themselves are judicially noticeable and thus they are

7 "authenticated"; the limited issue is whether the Court may take judicial notice of information

8 obtained from the Wayback Machine to show that the permits were available to the public on a

9 particular date.  That was essentially the issue in *Valve*, and the Federal Circuit held (and the Fifth

10 Circuit did not disagree) that judicial notice was proper for that purpose.[6]

11         Accordingly, the Court takes judicial notice of not only the documents at issue but also the

12 date the documents were publicly available.[7]

13         Because the Court takes judicial notice of the information requested by Apple, Ms.

14 Gjovik's position that she could not have reasonably known that ARIA was a semiconductor

15 fabrication factory until February 2023 lacks merit.  Given that Ms. Gjovik started investigating

16 causes of her injuries in at least September 2020, *see, e.g.*, 5AC ¶¶ 35-36 (alleging that, "[i]n

17 September 2020, Plaintiff hired an industrial hygienist to evaluate the indoor air at her apartment"

18 and that, the same month, she "set up more air monitors to observe the levels of volatile organic

19 compounds in her apartment"), it is implausible that she could not have found the documents at

20 issue – which were publicly available in 2020 and/or 2021 – until some two to three years later.

21 This is especially true since Ms. Gjovik has actually alleged in the 5AC that she knew the ARIA

22 factory "was registered as a hazardous waste generator."  5AC ¶ 262.  Reasonable further inquiry

23 would have led to the discovery of the nature of the ARIA manufacturing activities.

24

25     [6] The Court also notes that, given Santa Clara's permit center website was operational back in

26 2020, there is nothing to indicate that the building permits for the ARIA factory were not available
at that time, including for the year 2017 which reflected semiconductor fabrication.

27     [7] Even if Wayback Machine information is not judicially noticeable, that affects only the building

28 permits.  The dates that the gas leak report and BAAMQ document were available is reflected on
the face of the report and/or BAAMQ website.

16

1          Ms. Gjovik's remaining arguments in her opposition brief are not compelling.  For

2    example:

3              (1) Ms. Gjovik asserts that Apple concealed information which made discovery of the

4                   semiconductor fabrication at the factory difficult.  The problem with this argument

5                   is that, as noted above, the building permits – which she claims were the basis of

6                   her discovery of the semiconductor fabrication – were all publicly available before

7                   February 2023.

8              (2) According to Ms. Gjovik, it is reasonable that she did not discover the

9                   semiconductor fabrication until February 2023 because government agencies who

10                  were also investigating were never able to pinpoint the cause of her injuries.  *See*

11                  SAC ¶ 263 ("Government agencies, including the EPA, had also investigated the

12                  area and found no records that would indicate a direct link to her health issues.

13                  They, too, could not identify a clear cause, which further obscured Plaintiff's ability

14                  to connect the dots before discovering Apple's involvement in February 2023.").

15                  The problem for Ms. Gjovik is that, once again, the building permits reflecting that

16                  there was semiconductor fabrication at the factory were publicly available.  In

17                  addition, the allegations made in ¶ 263 are vague.  While government agencies may

18                  have, as alleged, investigated Apple after Ms. Gjovik complained, that is not an

19                  allegation that the agencies were investigating what the cause of Ms. Gjovik's

20                  medical issues were.  There are also no allegations that government agencies found,

21                  *e.g.*, illegal toxic air emissions and tried to locate the source of the emissions but

22                  were not able to do so.  The agencies simply may have found no such emissions.

23                  Furthermore, as Apple points out in its reply brief, Ms. Gjovik "does not allege in

24                  her 5AC that any government agency has *ever* concluded that the 'source of the

25                  emissions' was 3250 Scott (despite having equal access to the same publicly

26                  available documents that Plaintiff relies upon to support her nuisance claim)."

27                  Reply at 4 (emphasis in original).

28              (3) Finally, Ms. Gjovik seems to suggest that she has a different theory to get around

17

United States District Court
Northern District of California

United States District Court
Northern District of California

1   any limitations bar – *i.e.*, a continuing violations theory. *See* Opp'n at 17-18

2   (arguing that, because "both parties agree that Plaintiff's Tamney claims [wrongful

3   termination in violation of public policy] are based on Defendant's unlawful

4   retaliation . . . , Plaintiff's claims also satisfy the requirements for tolling due to

5   continuing violations"). But this argument does not make sense. The issue here is

6   whether the environmentally unsafe claims are time barred, not any retaliation

7   claim. And to the extent Ms. Gjovik is trying to argue continuing violations for her

8   nuisance and IIED claims, she fails to take into account that she moved out of the

9   apartment at issue in October 2020. Thus, even if the ARIA factory continued to

10  emit pollutants thereafter, she would not have standing to challenge such

11  subsequent conduct. The Court's prior order already recognized these points. *See*

12  Docket No. 112 (Order at 29 n.11) ("To the extent Ms. Gjovik asserts that there is

13  no time-bar problem because the ARIA factory is a continuing nuisance, that

14  argument lacks merit. Ms. Gjovik moved out of her apartment near the ARIA

15  factory in October 2020."),

16      5.    Summary

17  For the foregoing reasons, the Court holds that, based on judicially noticeable and other

18  facts, Ms. Gjovik's claims for nuisance and IIED (fear of cancer) are time barred.[8] The Court

19  dismisses with prejudice because it previously gave Ms. Gjovik an opportunity to address the time

20  bar but she failed to do so on amendment.

21  D.    IIED Claim – "Traditional"

22  In Count 7, Ms. Gjovik has a separate claim for IIED based on post-termination conduct by

23  Apple. According to Ms. Gjovik, Apple engaged in various kinds of misconduct, including but

24  not limited to the following:

25      •   Mailing Ms. Gjovik her personal belongings but intentionally damaging the

26          belongings and covering them in glass shards. *See* 5AC ¶ 296.

27  _____

28  [8] Because the Court is dismissing the IIED claim based on the time bar, it need not address
    Apple's additional arguments challenging the claim.

18

1    • Bugging and surveilling her. *See, e.g.*, 5AC ¶¶ 296, 298, 300 (alleging that, when

2    Apple mailed her personal belongings, it put a "hidden listening device" into a

3    statute; also alleging that Apple installed "some sort of electronic equipment" in

4    her fake fig tree and hacked her network).

5    • Breaking into her residence on multiple occasions (both when she lived in

6    California and when she lived in Massachusetts). *See* 5AC ¶¶ 299, 302-05.

7    • Harassing her online, including through social media – *e.g.*, "falsely accusing [her]

8    of dishonesty and criminal conduct," making "disparaging remarks" about her,

9    calling her names, and even "suggest[ing] that [she] should be executed." 5AC ¶¶

10   308, 310, 312, 316, 320.

11       Apple moves to dismiss the claim, primarily for two reasons: (1) some of the conduct

12   alleged by Ms. Gjovik is, as a matter of law, not outrageous, and (2) some of the conduct is not

13   sufficiently tied to Apple and, even if it were (*e.g.*, misconduct was committed by an Apple

14   employee), there is not a basis to hold Apple accountable (*e.g.*, no respondeat superior liability).

15       1.    <u>Outrageousness</u>

16       Apple's arguments have merit. For example, simply claiming that Ms. Gjovik was

17   dishonest is not outrageous as a matter of law. *See* Docket No. 112 (Order at 35) (stating that

18   "[b]eing called, *e.g.*, a liar is, as a matter of law, not outrageous conduct sufficient to support a

19   claim for IIED"). Similarly, the kind of insulting comments identified by Ms. Gjovik in much of

20   the 5AC is not outrageous. *See* 5AC ¶ 316 (alleging that "Apple's agents have publicly [and]

21   repeatedly called Plaintiff a liar, predator, bitch, cunt, toxic, attention-seeking, [etc.]"); *King v.*

22   *Facebook, Inc.*, 572 F. Supp. 3d 776, 786 (N.D. Cal. 2021) (noting that "[l]iability for IIED does

23   not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other

24   trivialities").

25       In one paragraph, Ms. Gjovik alleges that "an Apple Global Security Crisis Manager,

26   Vicki, call[ed] Plaintiff on October 2, 2024, to harass Plaintiff about Plaintiff's struggle to litigate

27   against Apple's army of attorneys," 5AC ¶ 342, but without more specific allegations about what

28   the manager said or did that was allegedly harassing, the alleged conduct cannot be said to be

<center>19</center>

1    outrageous.

2         In several paragraphs, Ms. Gjovik asserts that Apple's attorneys representing Apple in the

3    NLRB proceedings she initiated against the company are "implicated in the harassment," *see* 5AC

4    ¶¶ 347-48, but the alleged conduct is either not outrageous, *see, e.g.*, 5AC ¶ 347 (alleging that the

5    attorneys' asked for production of "the defamatory paper trail created by Appleseed"), or not fairly

6    attributable to the attorneys. *See* 5AC ¶ 348 (alleging that the attorneys "used fake social media

7    accounts to attack [Ms. Gjovik]" but providing no factual basis for that conclusory claim).

8         With respect to Ms. Gjovik's allegation that her personal belongings were damaged and

9    covered in glass shards when Apple mailed them to her, the conduct cannot be deemed outrageous

10   when there are no factual allegations to support the claim that the conduct was intentional.  The

11   mere fact that the belongings were damaged and covered in glass shards is not enough by itself to

12   give rise to a reasonable inference of intentional (as opposed to negligent) conduct by Apple.

13        2.    Liability on the Part of Apple

14        Even if some alleged misconduct is or plausibly could be characterized as outrageous in

15   nature, it is not sufficiently connected to Apple as a factual matter or there is not a sufficient legal

16   basis to hold Apple liable.

17        For example, as a factual matter, the claims that Apple was responsible for the

18   bugging/surveillance and breaking into her home are entirely speculative.  In the 5AC, Ms. Gjovik

19   asserts that "[t]here is no one else except Apple that Plaintiff could plausibly attribute responsibly

20   for the things that occurred to her since 2020.  No one else would have the motive or resources to

21   do these things, and the harassment was perfectly timed with her conflict with Apple."  5AC ¶

22   295.  But again, this is nothing more than speculation.

23        In some instances, Ms. Gjovik has alleged that misconduct was engaged in by an Apple

24   employee – *e.g.*, the online harassment.  But here, Ms. Gjovik has failed to explain how Apple can

25   be held legally liable for such conduct.  For example, Ms. Gjovik seems to suggest that Apple

26   actively directed the online harassment, *see* Opp'n at 21, 23, but no concrete facts are alleged to

27   support such.  There are no specific allegations that the alleged conduct was done at Apple's

28   behest.

United States District Court
Northern District of California

20

United States District Court
Northern District of California

1    To the extent Ms. Gjovik relies on respondeat superior as a basis for Apple's liability, the

2    Court has previously explained that such liability "'should apply only to the type of injuries that as

3    a practical matter are sure to occur in the conduct of the employer's enterprise.  The employment,

4    in other words, must be such as predictably to create the risk employees will commit intentional

5    torts of the type for which liability is sought.'"  Docket No. 112 (Order at 37).  In the 5AC, Ms.

6    Gjovik suggests that the employees' misconduct "was an outgrowth of Apple's corporate culture,

7    which emphasized silencing internal dissent at all costs."  5AC ¶ 350.  However, Ms. Gjovik has

8    failed to cite any authority indicating that corporate culture could satisfy the requirement that the

9    challenged conduct be "engendered *by the employment*."  Docket No. 112 (Order at 37) (emphasis

10   added); *see also Lisa M. v. Henry Mayo Newhall Mem. Hosp.*, 12 Cal. 4th 291, 297-99 (1995)

11   (stating that an employer will not be held liable for an "intentional tort that did not have a causal

12   nexus to the employee's work"; *e.g.*, "California courts have . . . asked whether the tort was, in a

13   general way, foreseeable from the employee's duties" or whether "the risk of tortious injury [was]

14   inherent in the working environment or typical of or broadly incidental to the enterprise [the

15   employer] has undertaken") (internal quotation marks omitted); *Alma W. v. Oakland Unified Sch.*

16   *Dist.*, 123 Cal. App. 3d 133, 142-43 (1981) (stating that "[t]he test is not whether it is foreseeable

17   that one or more employees might at some time act in such a way as to give rise to civil liability,

18   but rather, whether the employee's act is foreseeable *in light of the duties* the employee is hired to

19   perform") (emphasis in original).  The 5AC does not contain specific allegations establishing the

20   requisite causal nexus.

21   Ms. Gjovik also suggests that Apple could be held liable because it benefitted from the

22   misconduct (*i.e.*, its corporate goals were furthered), *see* Opp'n at 23, and/or because it failed to

23   intervene despite knowledge of employee misconduct.  *See* 5AC ¶¶ 346, 349, Opp'n at 26.

24   However, she fails to explain how this could satisfy the level of intent required for an intentional

25   tort such as IIED.  *See generally Christensen*, 54 Cal. 3d at 903 (stating that one element of an

26   IIED claim is extreme and outrageous conduct by the defendant with the intention of causing, or

27   reckless disregard of the probability of causing, emotional distress).  Nor does it establish the

28   required nexus for respondeat superior.

21

1      Finally, to the extent Ms. Gjovik tries to hold Apple liable for the acts of "Joanna

2  Appleseed" (*i.e.*, Cher Scarlett), *see* Opp'n at 28-29, a former colleague who once supported but

3  no longer supports Mr. Gjovik, the Court noted in a previous order that Ms. Gjovik was relying on

4  conduct taken after Ms. Scarlett was no longer an Apple employee. *See* Docket No. 73 (Order at

5  44). "That being the case, Ms. Gjovik [could not] argue respondeat superior as a basis to hold

6  Apple liable. And the [then-operative pleading did] not contain any concrete allegations

7  indicating that, post-employment, Ms. Scarlett was part of some kind of conspiracy with Apple."

8  Docket No. 73 (Order at 44). The 5AC does not address these problems. For example, nowhere

9  in the 5AC does Ms. Gjovik clearly point to any alleged misconduct by Ms. Scarlett while she was

10  still an employee of Apple, nor has Ms. Gjovik alleged any concrete facts suggesting that, when

11  Ms. Scarlett left Apple, it was some kind of ruse.

12      The Court, therefore, dismisses the IIED claim based on post-termination conduct, and

13  with prejudice.

14  E.      Retaliation Claims

15      In the motion to dismiss, Apple also challenges in part two of the retaliation claims –

16  specifically, the § 1102.5 claim (Count 2) and the § 98.6 claim (Count 4),

17      1.      Section 1102.5 Claim

18      Section 1102.5 is part of the California Whistleblower Act. It provides, in essence, that an

19  employer shall not retaliate against an employee for disclosing information to the government, or

20  to a person with authority over the employee, if the employee has reasonable cause to believe that

21  the information discloses a violation of the law. *See* Cal. Lab. Code § 1102.5.

22      In its prior motion to dismiss, Apple argued that, to the extent Ms. Gjovik sought civil

23  penalties for a violation of § 1102.5, there was a time bar. For civil penalties, there is a one-year

24  statute of limitations. Since Ms. Gjovik was fired in September 2021, she had to bring suit by

25  September 2022; however, she did not file suit until September 2023. The Court agreed with

26  Apple that, as a facial matter, there was a time bar. But it noted that there might be a basis for

27  equitable tolling under *Elkins v. Derby*, 12 Cal. 3d 410 (1974).

28      The California Supreme Court has held that, "whenever the

22

1

2

3

4

5

6

7

> exhaustion of administrative remedies is a prerequisite to the
> initiation of a civil action, the running of the limitations period is
> tolled during the time consumed by the administrative proceeding."
> *Elkins v. Derby*, 12 Cal. 3d 410, 414 (1974). It has also held that,
> "regardless of whether the exhaustion of one remedy is a
> prerequisite to the pursuit of another, if the defendant is not
> prejudiced thereby, the running of the limitations period is tolled
> '[w]hen an injured person has several legal remedies and,
> reasonably and in good faith, pursues one.'" *Id.*; *see also id.* at 418
> (noting that "this and other courts as well as legislatures have
> liberally applied tolling rules or their functional equivalents to
> situations in which the plaintiff has satisfied the notification purpose
> of a limitations statute").

8    Docket No. 112 (Order at 12-13).

9    The Court therefore dismissed the claim for civil penalties for a violation of § 1102.5 but

10   gave Ms. Gjovik leave to amend to plead *Elkins* tolling – *i.e.*, tolling for the period in which she

11   was pursuing legal remedies in a different forum (*e.g.*, with an administrative agency). *See also*

12   Docket No. 112 (Order at 13) (noting that, for *Elkins* tolling, a plaintiff has to prove "three

13   elements: timely notice, and lack of prejudice, to the defendant, and reasonable and good faith

14   conduct on the part of the plaintiff") (internal quotation marks omitted).

15   In the pending motion to dismiss, Apple argues that Ms. Gjovik has failed to plead *Elkins*

16   tolling and thus the claim for civil penalties should be dismissed, this time with prejudice. In

17   evaluating this argument, the Court must first consider whether the 5AC contains allegations that

18   Ms. Gjovik pursued legal remedies in a different forum to address the alleged retaliation against

19   her (*i.e.*, for disclosing violations of the law). There are such allegations. For example, Ms.

20   Gjovik alleges that she filed complaints with (1) EPA, California EPA, and the U.S. Department

21   of Labor, *see* 5AC ¶ 230; (2) the NLRB, *see* 5AC ¶ 230; (3) the California Department of Labor

22   and the U.S. Department of Labor, *see* 5AC ¶¶ 230-31; and (4) the U.S. Department of Justice, the

23   U.S. EEOC, and California DFEH. *See* 5AC ¶ 233. Although not entirely clear, the complaints

24   seemed to have included complaints that she was being retaliated against for disclosing violations

25   of the law.

26   Although Ms. Gjovik has made reference to various agencies with whom she was pursuing

27   legal remedies, she expressly asserts equitable tolling based on a filing(s) made with one agency

28   only, *i.e.*, the California Department of Labor/Department of Industrial Relations:

United States District Court
Northern District of California

23

1
2
3
4
5

> For California Labor Code §§ 98.6 and 1102.5, any issues with
> statute of limitations related to the claims or remedies (i.e.,
> penalties/fines) are equitably tolled by Plaintiff's timely complaints
> sitting in the California Department of Labor queue for years before
> Plaintiff kicked the claims out into this lawsuit. This lawsuit
> replaced the California Department of Labor DIR case *Ashley
> Gjovik v Apple Inc*, RCI-CM-842830. Plaintiff filed the first claim
> on August 29 2021, before Apple terminat[ed] her employment.

6  5AC ¶ 205; *see also* Opp'n at 29 ("Plaintiff filed a complaint with the California Department of

7  Industrial Relations (DIR) in August 2021, which tolled the statute of limitations for [the §

8  1102.5] claim. The DIR complaint sufficiently put Defendant on notice of Plaintiff's retaliation

9  claims, which involved reporting workplace safety violations and environmental hazards.").

10 Given that Ms. Gjovik is limiting herself to the DIR complaint(s), the Court need not consider

11 other complaints she made to different agencies for purposes of *Elkins* tolling.

12       Ms. Gjovik's allegation above about the DIR complaint(s) is, admittedly, a bit vague.

13 Although she explicitly refers to one specific complaint (RCI-CM-842830) – made before Apple

14 terminated her employment – she also indicates that she made more than one complaint (*e.g.*,

15 mentioning "timely complaint*s*" and "the *first* claim"). Given that Ms. Gjovik is pro se, the Court

16 does not limit her to solely the one specific complaint identified above. This is especially true

17 since, in a prior filing made with the Court, located at Docket No. 35-5, Ms. Gjovik provides not

18 just the DIR complaint made *before* she was fired but also the DIR complaint made *after* she was

19 fired. The latter complaint has the case number RCI-CM-846638 and was filed on September 29,

20 2021. The Court will consider both DIR complaints.

21       Consideration of both of these DIR complaints is important because one of Apple's

22 arguments is that the first DIR complaint, taken alone, did not give Apple "timely notice" as

23 required by *Elkins*. "The timely notice requirement essentially means that the first claim [where

24 legal remedies were being pursued] must have been filed within the statutory period.

25 Furthermore[,] the filing of the first claim **must alert** the defendant in the second claim [*i.e.*, the

26 lawsuit under consideration] of the need to begin investigating the facts which form the basis for

27 the second claim." *Hopkins v. Kedzierski*, 225 Cal. App. 4th 736, 747 (2014) (internal quotation

28 marks omitted; emphasis added). According to Apple,

United States District Court
Northern District of California

United States District Court
Northern District of California

1              the August 2021 DIR Complaint did not put Apple on notice to
2              investigate the facts that form her Section 1102.5 claim.  The August
              2021 DIR Complaint contains a general allegation that Plaintiff was
3              retaliated against for "rais[ing] concerns about work place safety"
              (see Dkt. 35-5 at 5-7) but does not reference retaliation for
4              complaining about the myriad alleged violations of the law on which
              Plaintiff's Section 1102.5 claim relies.

5  Mot. at 16.

6       As noted above, the Court considers whether the timely notice requirement was made

7  based on both DIR complaints, and not just the first.  Below is information about the two

8  complaints.

9          •   In the first DIR complaint (RCI-CM-824830), filed in August 2021, Ms. Gjovik

10            described the factual basis for her retaliation complaint as follows: "I raised

11            concerns about work place safety and was told to stop speaking about my concerns.

12            Then I was threatened, harassed, intimidated, suspended, & constructively

13            terminated."  Docket No. 35-5 (ECF Page 6).

14          •   In the second DIR complaint (RCI-CM-846638), filed in September 2021, Ms.

15            Gjovik described the retaliation as follows:

16              3/17: Raised concerns abt safety at my Superfund office;
               3/22: Told to stop sharing concerns;
17              3/29: Reported intimidation to [Employee Relations] & then ER
               retaliated;
18              Apr.: Constructive termination (HWE) by Sr Dir;
               Apr.-Jun: Still raising concerns abt safety & also abt sexism &
19              retaliation;
               July: ER launches 2nd investigation I actually req;
20              8/3: Taking pics of safety issues;
               8/4: ER suspends me & pressures me to stop organizing with other
21              employees;
               9/9: Terminated
22              9/10: NLRB affidavit abt Apple.

23  Docket No. 35-5 (ECF Page 9).

24       As indicated by the above, the second DIR complaint is more *specific* and more *expansive*

25  than the first, suggesting retaliation for raising concerns about environmental safety specifically

26  (given the reference to "Superfund") *and* sex discrimination and for engaging in employee

27  organization.  Given the two DIR complaints, the Court– with certain exceptions – rejects Apple's

28  contention that the subject matter of the DIR complaint is not fairly coextensive with the subject

<div align="center">25</div>

matter of the § 1102.5 claim asserted in this lawsuit.  The § 1102.5 claim, as pled in the 5AC, covers:

- Retaliation related to environmental safety.
  - 42 U.S.C. §§ 9610, 7622.  *See* 5AC ¶ 230 & n.45.  Section 9610 is an anti-retaliation provision in CERCLA: "No person shall fire or in any other way discriminate against, or cause to be fired or discriminated against, any employee . . . by reason of the fact that such employee or representative has provided information to a State or to the Federal Government, filed, instituted, or caused to be filed or instituted any proceeding under this Act, or has testified or is about to testify in any proceeding resulting from the administration or enforcement of the provisions of this Act."  42 U.S.C. § 9610(a).  Section 7622 is an anti-retaliation provision in the Clean Air Act: "No employer may discharge any employee or otherwise discriminate against any employee with respect to his compensation, terms, conditions, or privileges of employment because the employee . . . – (1) commenced, caused to be commenced, or is about to commence or cause to be commenced a proceeding under this Act or a proceeding for the administration or enforcement of any requirement imposed under this Act or under any applicable implementation plan . . . ."  42 U.S.C. § 7622(a).
  - 29 U.S.C. § 660.  Section 660 includes an anti-retaliation provision as part of OSHA: "No personal shall discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act or has testified or is about to testify in any such proceeding or because of the exercise by such employee on behalf of himself or others of any rights afforded by this Act."  29 U.S.C. § 660(c)(1).
  - 8 Cal. Code Reg. § 5194.  *See* 5AC ¶ 230.  This section requires, *inter alia*, "all employers to provide information to their employees about the

hazardous chemicals to which they may be exposed, by means of a hazard

communication program, labels and other forms of warning, safety data

sheets, and information and training." 8 Cal. Code Reg. § 5194(b)(1). With

respect to information and training, the regulation states: "Employers shall

provide employees with effective information and training on hazardous

chemicals in their work area at the time of their initial assignment, and

whenever a new chemical hazard is introduced into their work area." 8 Cal.

Code Reg. § 5194(h)(1). This includes informing employees of the right

"[a]gainst discharge or other discrimination due to the employee's exercise

of the rights afforded pursuant to the provisions of the Hazardous

Substances Information and Training Act." *Id.* § 5194(h)(2)(G)(3).

- Retaliation related to employee organization.

  o NLRA § 8(a)(1). *See* 5AC ¶ 230. Title 29 U.S.C. § 158(a)(1) provides that

  "[i]t shall be an unfair labor practice for an employer – (1) to interfere with,

  restrain, or coerce employees in the exercise of the rights guaranteed in

  section 7." 29 U.S.C. § 158(a)(1). Section 157 in turn provides:

  "Employees shall have the right to self-organization, to form, join, or assist

  labor organizations, to bargain collectively through representatives of their

  own choosing, and to engage in other concerted activities for the purpose of

  collective bargaining or other mutual aid or protection . . . ." *Id.* § 157.

- Retaliation related to sex discrimination.

  o 42 U.S.C. § 2000e and California Government Code § 12920. *See* 5AC ¶

  233. Related employment discrimination statutes contain anti-retaliation

  provisions. *See* 42 U.S.C. § 2000e-2(a)(1) ("It shall be an unlawful

  employment practice for an employer – (1) to fail or refuse to hire or to

  discharge any individual, or otherwise to discriminate against any

  individual with respect to his compensation, terms, conditions, or privileges

  of employment, because of such individual's . . . sex . . . ."); Cal. Gov. Code

United States District Court
Northern District of California

§ 12940(h) ("It is an unlawful employment practice . . . (h) For any

employer . . . to discharge, expel, or otherwise discriminate against any

person because the person has opposed any practices forbidden under this

part or because the person has filed a complaint, testified, or assisted in any

proceeding under this part.").

To be sure, in the DIR complaints, Ms. Gjovik did not mention the above laws specifically.

But the "timely notice" requirement in *Elkins* focuses on whether the *factual* basis of the first

claim and second claim are reasonably coextensive. *See Hopkins*, 225 Cal. App. 4th at 747

(stating that "the filing of the first claim must alert the defendant in the second claim of the need to

begin *investigating the facts* which form the basis for the second claim") (emphasis added).[9]  The

DIR complaints give sufficient notice of alleged retaliation based workplace environmental safety

and discrimination concerns expressed by Ms. Gjovik.

Notice on other matters is more problematic:

(1) Section 1102.5 provides that an employer cannot retaliate because an employee

discloses to the government or to a person with authority over the employee what

the employee reasonably believes to be a law violation.  Although the DIR

complaints suggested that she was retaliated against for presenting concerns about

environmental safety and sex discrimination, she claimed  she was retaliated

against for *engaging* in employee organization – not for *disclosing information*

about a law violation related to employee organization.

(2) Ms. Gjovik's § 1102.5 claim includes an allegation that complained to Apple

---

[9] In this regard, an analogy to Title VII can be made.  *See Sydnor v. Fairfax Cty., Va.*, 681 F.3d 591, 594 (4th Cir. 2012) ("[A]n 'administrative charge of discrimination does not strictly limit a Title VII suit which may follow.'  Instead, so long as 'a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation,' she 'may advance such claims in her subsequent civil suit.'"); *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 636 (9th Cir. 2002) ("Although allegations of discrimination not included in a plaintiff's EEOC charge generally may not be considered by a federal court, subject matter jurisdiction extends over all allegations of discrimination that either 'fell within the scope of the EEOC's actual investigation or an EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'").

United States District Court
Northern District of California

1     management about violations of the California Constitution's right to privacy. *See*

2     5AC ¶ 232 (also alleging that she "shared concerns with a report for an advocacy

3     article in August 2021 . . . and made complaints on social media in August-

4     September 2021"). However, neither DIR complaint seems to mention anything

5     about privacy rights, let alone retaliation for complaining about a violation of

6     privacy rights.

7        Taking into account all of the above, the Court concludes that, in part, there is not a time

8 bar for civil penalties under § 1102.5 (at least for purposes of 12(b)(6)). However, there is a time

9 bar to the extent civil penalties are sought for retaliation based on complaints made about violation

10 of privacy rights. That was a subject matter not pursued with the DIR. In addition, even though

11 the DIR complaints did reference retaliation for *engaging* in employee organization, § 1102.5 only

12 bars retaliation for *disclosing information* about law violations. Section 1102.5 concerns

13 disclosures only. In short, the § 1102.5 claim for civil penalties as pled is not time barred for

14 alleged retaliation based on disclosing information about law violations related to workplace

15 environmental safety and sex discrimination, but is barred for alleged retaliation for organizing

16 Apple employees and violation of her privacy rights.

17        2.     <u>Section 98.6 Claim</u>

18        California Labor Code § 98.6 provides that

19           [a] person shall not discharge an employee or in any manner
20           discriminate, retaliate, or take any adverse action against any
           employee . . . because the employee . . . engaged in any conduct
21           delineated in this chapter . . . or because the employee . . . has filed a
           bona fide complaint or claim . . . under or relating to their rights that
22           are under the jurisdiction of the Labor Commissioner . . . or because
           of the exercise by the employee . . . on behalf of themselves or
23           others of any rights afforded them.

Cal. Lab. Code § 98.6(a).

24

25        In the 5AC, Ms. Gjovik alleges that Apple violated § 98.6 by retaliating against her for

26 filing her DIR complaint in August 2021. *See* 5AC ¶ 239. She also alleges that Apple violated §

27 986 because it retaliated against her for exercising her rights as provided for in California Labor

28 Code §§ 232, 232.5, and § 96(k). *See* 5AC ¶¶ 243-55.

<div align="center">29</div>

1      •  Under § 232(c), "[n]o employer may . . . (c) Discharge, formally discipline, or

2        otherwise discriminate against an employee who discloses the amount of his or her

3        wages."  Cal. Lab. Code § 232(c).

4      •  Under § 232.5(c), "[n]o employer may . . . (c) Discharge, formally discipline, or

5        otherwise discriminate against an employee who discloses information about the

6        employer's working conditions."  *Id.* § 232.5(c).

7      •  Under § 96(k), "[t]he Labor Commissioner . . . shall, upon the filing of a claim therefor

8        by an employee . . . with the Labor Commissioner, take assignments of . . . (k) Claims

9        for loss of wages as the result of demotion, suspension, or discharge from employment

10       for lawful conduct occurring during nonworking hours away from the employer's

11       premises."  *Id.* § 96(k).  The 5AC indicates that the "lawful conduct occurring during

12       nonworking hours away from the employer's premises" included Ms. Gjovik

13       "complaining on social media and to the press" about (1) "unlawful and unethical

14       surveillance and invasions of privacy by Apple", (2) "the environmental crimes she

15       witnessed" and suffered in her apartment and office, and (3) Apple's intimidation and

16       threats based on her advocacy for crime victim's rights (with Ms. Gjovik also being a

17       victim of Apple's crimes).  5AC ¶¶ 252-54.

18         a.   <u>Civil Penalties</u>

19     For the § 98.6 claim, Apple launches two arguments.  The first argument is that, similar to

20 above, any claim for civil penalties is subject to a one-year statute of limitations and thus there is a

21 time bar.  Apple asserts that *Elkins* tolling does not apply because the subject matter of the DIR

22 complaint in August 2021 does not match the subject matter of the § 98.6 claim.

23     Apple's argument has partial merit.  First, neither DIR complaint (*i.e.*, the one in August

24 2021 or the one in September 2021) contends that Ms. Gjovik was retaliated against for making

25 the August 2021 complaint.  Indeed, it would have been impossible for Ms. Gjovik to contend in

26 the August 2021 DIR complaint that she was retaliated against for making that complaint.

27     Second, neither DIR complaint mentions "unlawful and unethical surveillance and

28 invasions of privacy by Apple" or intimidation and threats based on her advocacy for crime

<div align="center">30</div>

1   victim's rights.  5AC ¶¶ 252, 254.

2      However, the DIR complaints do mention retaliation because Ms. Gjovik engaged in

3   employee organization (which Apple plausibly would have known was related to wages) and had

4   made complaints about environmental safety.

5      Therefore, the Court grants in part and denies in part the motion to dismiss the claim for

6   civil penalties for a violation of § 98.6.  In short, the § 98.6 claim for civil penalties as pled is not

7   time barred for alleged retaliation related to employee organization and complaints about

8   environmental safety but is barred for alleged retaliation related to the August 2021 complaint,

9   privacy violations, and advocacy for crime victim's rights.

10         b.   Section 232 and 232.5 Violations – Apple's Knowledge of Ms. Gjovik's

11            Conduct

12      Apple's second challenge to the § 98.6 claim focuses on Ms. Gjovik's assertion that Apple

13   retaliated against because she was exercising her rights under §§ 232 and 232.5 (*e.g.*, engaging

14   with other employees about wages paid by Apple).  *See* 5AC ¶¶ 243-44 (alleging that, in July and

15   August 2021, Ms. Gjovik participated in a pay survey among coworkers on Slack (where she

16   suggested that a question should be included about gender) and that, in August 2021, she "openly

17   discussed her wages on social media and encouraged her coworkers to do the same").  In its prior

18   order, the Court noted that, for this part of the § 98.6 claim to be viable, there had to be allegations

19   that Apple knew Ms. Gjovik was engaging in this activity.  Without such knowledge, it could not

20   retaliate against her for engaging in the activity.  *See* Docket No. 112 (Order at 22) ("The §§ 232

21   and 232.5 claims – to the extent based on disclosure of wages – shall be dismissed but with leave

22   to amend (i.e., so that Ms. Gjovik can allege knowledge on the part of Apple of the wage

23   disclosure).").

24      In the motion to dismiss, Apple argues that Ms. Gjovik has still failed to allege knowledge

25   on the part of the company of either her participation in pay surveys on Slack or her discussion of

26   wages on social media.  *See* Mot. at 18 (arguing that Ms. Gjovik "does not allege that Apple (and

27   certainly not anyone at Apple who would have been in a position to control the terms or conditions

28   of her employment) knew about those alleged social media posts").  Ms. Gjovik's opposition brief

United States District Court
Northern District of California

1   is not particularly helpful in evaluating Apple's argument.  The 5AC, however, does contain some

2   allegations that suggest knowledge on the part of Apple.  For example:

3   • The timing of events suggest Apple knew about Ms. Gjovik's activity.  In August

4   2021, "the day after she shared a post on Slack referencing Apple's policies on

5   employees' right to speak freely about wages, hours, and working conditions,"

6   Apple placed her on leave.  5AC ¶ 245.

7   • Apple knew about the survey because it shut the survey down.  *See* 5AC ¶ 246.

8   Presumably, Ms. Gjovik is suggesting that, if Apple knew about the survey, it can

9   reasonably be inferred it knew who participated in and/or was involved with the

10   survey.

11   • Apple's shutting down the survey garnered press attention.  Presumably, Ms.

12   Gjovik is suggesting that, given the publicity over the survey and its shutdown,

13   Apple was likely to know who participated in and/or was involved with the survey.

14   For purposes of 12(b)(6), Ms. Gjovik has alleged enough to support knowledge –

15   particularly based on the first and second bullet points above.

16   F.   Outside Scope of the Amendment

17   As discussed above, the Court has granted in part Apple's motion to dismiss.  Specifically,

18   it has:

19   (1) dismissed the environmental safety claims (private nuisance and IIED based on fear

20   of cancer) based on the statute of limitations;

21   (2) dismissed the IIED claim based on post-termination conduct because the alleged

22   misconduct is not outrageous as a matter of law and/or because there is no

23   sufficient factual connection to Apple or a legal basis to hold Apple liable; and

24   (3) dismissed in part the claims for civil penalties for violations of § 1102.5 and § 98.6

25   based on the statute of limitations.

26   The only issue remaining is whether Ms. Gjovik has – as claimed by Apple – made amendments

27   outside the scope permitted by the Court.

28   To the extent Apple argues Ms. Gjovik has made amendments outside the scope related to

United States District Court
Northern District of California

United States District Court
Northern District of California

1    her environmental safety claims or her IIED claim based on post-termination conduct, that

2    argument is moot.  Those claims are dismissed for the reasons stated above.

3           Apple, however, still contends that Ms. Gjovik made amendments outside the scope

4    permitted for the § 1102.5 and § 98.6 claims.  Here, the only amendment that is problematic is the

5    following: for the § 98.6 claim related to wage disclosures, Ms. Gjovik alleges in ¶ 246 that she

6    "shared information and commented on Twitter about an earlier U.S. Department of Justice

7    lawsuit against Apple for illegal wage-fixing practices."  5AC ¶ 246.  That factual allegation is

8    stricken as wage fixing is a subject matter not implicated in any previous complaint.

9           The other amendments complained about by Apple, however, present a closer call – *e.g.*,

10   new allegations about alleged adverse actions.  *See* Mot. at 6.  Although the Court recognizes

11   Apple's concern – *i.e.*, that discovery is dictated by the parameters of the complaint – it is hard to

12   say that these factual allegations are *necessarily* improper in this case because, even if not made in

13   a prior complaint, they are still related to allegations that Ms. Gjovik *did* make in her prior

14   complaints.  The Court will not dismiss those allegations and shall rely on the good faith of the

15   parties and/or the rulings of the discovery judge to determine the permissible scope of discovery.

16   G.    Motion to Amend (Docket No. 155)

17          Now that the Court has resolved the motion to dismiss, it turns to Ms. Gjovik's motion to

18   amend.  The Court previously stayed briefing and a hearing on the motion to amend so that it

19   could address first the motion to dismiss.

20          The Court has reviewed the motion to amend.  Ms. Gjovik seeks to:

21          •   Add claims that the Court previously dismissed with leave to amend but Ms.

22              Gjovik did not amend.  This includes: the RICO claim, the Bane Act claim, the

23              Ralph Act claim, and the claim for nuisance per se.

24          •   Replead claims that the Court previously dismissed with prejudice because she

25              purportedly has new support.  This includes: the claim for ultrahazardous activity

26              and the part of the § 1102.5 claim related to privacy.

27          •   Add new facts about the Gobbler application (related to privacy).  She indicates

28              this will strengthen one of her IIED claims because Apple has engaged in "revenge

1     porn."

2     • "Revise" her vicarious liability theory.

3   At the hearing, the Court stated that it was not inclined to allow any further amendment because

4   Ms. Gjovik is already on her 5AC and the pleadings in this case need to be settled so that the

5   litigation can proceed.  Nothing in Ms. Gjovik's motion to amend alters the Court's initial views.

6   Ms. Gjovik has had ample multiple opportunities to plead her claims.  No further amendment shall

7   be allowed absent Court order.  Accordingly, the Court hereby **DENIES** the motion for leave to

8   amend.

9                              **III.**      **CONCLUSION**

10          For the foregoing reasons, the motion to dismiss is granted in part and denied in part.

11   Based on the Court's rulings, Ms. Gjovik's case is essentially a retaliation case (Counts 1, 2, 3,

12   and 4).  Apple did not challenge Counts 1 and 3.  Counts 2 and 4 have been limited with respect to

13   civil penalties – *i.e.*, the claims for civil penalties are partially time barred.

14          This order disposes of Docket Nos. 145 and 155.

15

16          **IT IS SO ORDERED**.

17

18   Dated: February 27, 2025

19

20   _____

21   EDWARD M. CHEN
     United States District Judge

22

23

24

25

26

27

28

United States District Court
Northern District of California

1

2

3

4                   UNITED STATES DISTRICT COURT

5                   NORTHERN DISTRICT OF CALIFORNIA

6

7    ASHLEY M GJOVIK,                          Case No.  23-cv-04597-EMC

8                    Plaintiff,
                                               **ORDER DENYING PLAINTIFF'S**
9        v.                                    **MOTION TO DISQUALIFY**

10   APPLE INC.,
                                               Docket Nos. 156
11                   Defendant.

12

13

14          Currently pending before the Court is Ms. Gjovik's motion to disqualify defense counsel,

15   the Orrick law firm.  Having considered the papers submitted, the Court finds the matter suitable

16   for disposition on the papers.  The hearing on the motion is therefore **VACATED**.  Ms. Gjovik's

17   motion to disqualify is **DENIED**.

18                          **I.          DISCUSSION**

19   A.      Legal Standard

20              "The right to disqualify counsel is a discretionary exercise of the
                trial court's inherent powers."  Under the Civil Local Rules of the
21              Northern District of California, all attorneys who practice in the
                Northern District must comply with the standards of professional
22              conduct required of members of the State Bar of California.  Thus,
                motions to disqualify counsel are decided under state law. . . . Under
23              California law, the issue of disqualification "ultimately involves a
                conflict between the clients' right to counsel of their choice and the
24              need to maintain ethical standards of professional responsibility."

25   *Del Campo v. Mealing*, C 01-21151 JW, 2011 U.S. Dist. LEXIS 158019, at *6-8 (N.D. Cal. Sept.

26   29, 2011).  In considering a motion to disqualify, a court must bear in mind "'the preservation of

27   public trust in the scrupulous administration of justice and the integrity of the bar.'"  *Id.* at *8.  On

28   the other hand, a court must also take into account that motions to disqualify are often tactically

United States District Court
Northern District of California

1    motivated; thus, in and of themselves, they can be a threat to the integrity of the judicial process

2    they purport to protect. *See Visa U.S.A., Inc. v. First Data Corp.*, 241 F. Supp. 2d 1100, 1103-

3    1104 (N.D. Cal. 2003). For this reason, motions to disqualify are often considered a drastic

4    measure, are disfavored, and are subject to close scrutiny. *See id.*

5    B.    <u>Basis for Disqualification</u>

6        In her motion, Ms. Gjovik identifies multiple grounds on which to disqualify Orrick. They

7    include the following: (1) Orrick has repeatedly harassed her online; (2) Orrick is a fact witness

8    because its harassment was part of Apple's retaliation against her; (3) Orrick is also a fact witness

9    because Apple knowingly misrepresented to Ms. Gjovik that there were no other complaints

10    lodged against one of her supervisors but Orrick knew this was not true based on its representation

11    of Apple in a different lawsuit; (3) Orrick has either conspired with or coerced Cher Scarlett,

12    another former Apple employee, to harass Ms. Gjovik (*e.g.*, when Ms. Scarlett filed a restraining

13    order suit against Ms. Gjovik); (4) Orrick advised Apple on her termination and further has

14    concealed that Ms. Scarlett played a role in the retaliation against and/or termination of Ms.

15    Gjovik; (5) Orrick has engaged in additional conduct that has obstructed discovery (*e.g.*, through

16    blanket assertions of privilege); (6) Orrick lacks competence in environmental and privacy law

17    and is improperly trying to dismiss her environmental and privacy claims; and (7) there was a data

18    breach at Orrick that may have compromised Ms. Gjovik's private information.

19        None of the grounds, whether considered individually or collectively, warrants

20    disqualification. For example, it is sheer speculation on the part of Ms. Gjovik that Orrick has

21    been part of the online harassment and/or that Orrick has conspired with or coerced Ms. Scarlett.

22    *See, e.g.*, Mot. at 5-7 (arguing that Orrick must have been part of the online harassment because

23    online attacks increased after Orrick first made an appearance in her whistleblower retaliation case

24    with the U.S. Department of Labor and after Orrick suffered legal setbacks in other employment

25    cases where they represented Apple); Mot. at 6, 11 (suggesting that Orrick and Ms. Scarlett were

26    colluding because Orrick obtained a copy of Ms. Scarlett's restraining order against Ms. Gjovik

27    "on the same day [it] filed Apple's position statement with the Department of Labor" and because

28    Orrick used an email from Ms. Scarlett to justify Ms. Gjovik's termination).

United States District Court
Northern District of California

1    To the extent Ms. Gjovik argues that Orrick has engaged in discovery misconduct (*e.g.*,

2    concealing the role of Ms. Scarlett and making blanket assertions of privilege), that is a matter that

3    should first be raised in the first instance with the magistrate judge presiding over discovery

4    matters.  There has been no finding by the magistrate judge assigned to handle discovery in this

5    case that Orrick has engaged in abusive conduct in the handling of discovery.[1]

6    Ms. Gjovik's contention that Orrick is a fact witness lacks merit.  As noted above, her

7    assertion that Orrick has been part of the harassment against her is entirely unfounded.  As for

8    Apple's allegedly false statement that no complaints had ever been made against one of her

9    supervisors, that is something that Ms. Gjovik should be able to prove, if untrue, through an Apple

10   employee, not its counsel.  Furthermore, as Orrick points out, the fact that it purportedly learned

11   information through its representation of Apple does not make it a fact witness.

12   Finally, Ms. Gjovik's arguments of Orrick incompetence and a data breach at the firm as a

13   basis for disqualification have no support.

## II.    CONCLUSION

15   For the foregoing reasons, the motion to disqualify is denied.

16   This order disposes of Docket No. 156.

18   **IT IS SO ORDERED**.

20   Dated: February 24, 2025

23   _____
     EDWARD M. CHEN
     United States District Judge

---

[1] At the time Ms. Gjovik filed her motion to disqualify, she had not filed any motion for relief with the magistrate judge.  Ms. Gjovik did not file any motions with the magistrate judge until some ten days later.

3

ER VI 53

**OFFICE OF THE CLERK**
**UNITED STATES DISTRICT COURT**
**Northern District of California**

### CIVIL MINUTES

**Date:**  February 21, 2025          **Time:**  9:16-9:52          **Judge:** EDWARD M. CHEN
                                       36 minutes

**Case No.**: 3:23-cv-04597-EMC          **Case Name:** Gjovik v. Apple Inc.

**Pro Se Plaintiff:** Ashley Gjovik
**Attorney for Defendant:** Melinda Riechert

**Deputy Clerk:** Vicky Ayala                    **Court Reporter:** Beth Krupa

### PROCEEDINGS

Motion to Dismiss Portions of Plaintiff's 5th Amended Complaint. – Held.
Further Case Management Conference – Not held.

### SUMMARY

Parties stated appearances (Plaintiff appeared via Zoom) Oral argument presented.  Matter taken under submission.

1

2

3

4                          UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6

7     ASHLEY M GJOVIK,                          Case No. 3:23-cv-04597-EMC   (KAW)

8                      Plaintiff,               **ORDER TERMINATING PLAINTIFF'S**
                                                **UNILATERAL DISCOVERY LETTERS**
9            v.
                                                Re: Dkt. Nos. 162-165
10    APPLE INC.,

11                     Defendant.

12

13          On February 11, 2025, Plaintiff filed four discovery letter briefs. (Dkt. Nos. 162-165.)  The

14    undersigned, however, does not entertain unilateral discovery letters.  Instead, the parties are

15    required to meet and confer and file joint discovery letters to address pending discovery disputes

16    in accordance with the Court's Standing Order. (Judge Westmore's General Standing Order ¶¶ 13-

17    14, *http://cand.uscourts.gov/kaworders*.)

18          Accordingly, Plaintiff's four unilateral discovery letters are TERMINATED, and the

19    parties are ordered to meet and confer to resolve all pending disputes without court intervention.

20    If those efforts fail to fully resolve all issues of contention, the parties shall jointly write and file a

21    letter outlining any remaining disputes consistent with the Court's Standing Order.

22          This resolves Dkt. Nos. 162, 163, 164, and 165.

23          IT IS SO ORDERED.

24    Dated: February 19, 2025

25                                              _____
                                                KANDIS A. WESTMORE
26                                              United States Magistrate Judge

27

28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHLEY M GJOVIK, | Case No. 23-cv-04597-EMC |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANT'S ADMINISTRATIVE MOTION TO STAY; AND DENYING PLAINTIFF'S ADMINISTRATIVE MOTION TO STAY** |
| APPLE INC., | |
| Defendant. | |
| | Docket Nos. 158-59 |

Currently pending before the Court are two administrative motions, one filed by Apple and one filed by Ms. Gjovik. In its motion, Apple asks the Court to stay briefing and the hearing on Ms. Gjovik's recently filed motion to amend until after the Court resolves Apple's motion to dismiss (which is fully briefed and set to be heard on February 21, 2025).[1] In her motion, Ms. Gjovik asks the Court to stay the hearing on Apple's motion to dismiss until after the Court resolves her recently filed motion to amend, as well as her recently filed motion to disqualify defense counsel.[2]

Having considered the papers submitted, the Court hereby **GRANTS** Apple's motion and **DENIES** Ms. Gjovik's. There is no principled reason to defer the hearing on Apple's motion to dismiss and to entertain Ms. Gjovik's motion to amend first. Indeed, it makes sense to defer hearing on the motion to amend because how the Court rules on the motion to dismiss may inform

---

[1] Apple originally noticed the motion for a hearing on February 13 but the Court sua sponte rescheduled the hearing for February 21.

[2] To be clear, in its motion for relief, Apple does not ask for a stay for the motion to disqualify, only for the motion to amend.

United States District Court
Northern District of California

1   the motion to amend.  Ms. Gjovik is not prejudiced by this sequencing.  To the extent there may

2   be some overlap in issues between the motion to dismiss and the motion to amend, Ms. Gjovik

3   could (and should) have flagged those issues in her opposition to the motion to dismiss which she

4   filed on January 21 and 22, 2025, *i.e.*, only 9-10 days before she filed her motion to amend.

5          As for Ms. Gjovik's request that her motion to disqualify be heard before the motion to

6   dismiss, there is no need to do so.  In her motion to disqualify, Ms. Gjovik contends, *inter alia*,

7   that defense counsel is a fact witness and that defense counsel has conducted itself inappropriately

8   in discovery.  These have no impact on the motion to dismiss which focuses on the allegations

9   made in the operative fifth amended complaint ("5AC").

10         Accordingly, the Court grants Apple's motion to stay but denies Ms. Gjovik's.  The motion

11  to dismiss shall proceed for a hearing on February 21, 2025.  The briefing schedule and hearing

12  date for the motion to amend is temporarily **VACATED**.  The briefing schedule and hearing date

13  for the motion to disqualify remains as is.

14         This order disposes of Docket Nos. 158 and 159.

15

16         **IT IS SO ORDERED**.

17

18  Dated: February 5, 2025

19

20                                              _____

21                                              EDWARD M. CHEN
                                                United States District Judge

22

23

24

25

26

27

28

United States District Court
Northern District of California

2

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ASHLEY M GJOVIK, | Case No.  23-cv-04597-EMC |
| Plaintiff, |  |
| v. | **ORDER DENYING PLAINTIFF'S MOTION TO STAY** |
| APPLE INC., |  |
| Defendant. | Docket No. 117 |

Currently pending before the Court is Plaintiff's motion to stay proceedings pending her appeal of an interlocutory order issued by this Court.  The motion to stay is **DENIED**.  The Ninth Circuit has dismissed Plaintiff's appeal for lack of jurisdiction.  *See* Docket No. 124 (Order at 1) (stating that the "order challenged in the appeal is not final or appealable").  Although Plaintiff has moved for reconsideration of the Ninth Circuit's dismissal order, to date, she has not received any relief.

**IT IS SO ORDERED**.

Dated: December 4, 2024

_____
EDWARD M. CHEN
United States District Judge

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHLEY M GJOVIK, | Case No.  23-cv-04597-EMC |
| Plaintiff, | |
| v. | **ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION** |
| APPLE INC., | |
| Defendant. | Docket No. 139 |

Previously, the Court denied Apple's motion for involuntary dismissal; however, it also sanctioned Ms. Gjovik by striking her fifth amended complaint ("5AC") for failure to comply with Court orders.  The Court gave Ms. Gjovik leave to file a new 5AC so long as it complied with the Court's orders.  Now pending before the Court is Ms. Gjovik's motion for leave to file a motion to reconsider.

The motion for leave is **DENIED**.  Ms. Gjovik has failed to establish that she should be given leave pursuant to Civil Local Rule 7-9(b).

Furthermore, even if the Court were to permit Ms. Gjovik to file her proposed motion to reconsider, it is not persuasive on the merits.  For example, Ms. Gjovik argues that her formatting changes were not made in bad faith because Civil Local Rule 3-4(c) applies only to manual filings, not electronic filings.  At best, Ms. Gjovik's argument has merit with respect to her failure to use numbered lines.[1]  *See* Civ. L.R. 3-4(c)(1) ("Papers presented for manual filing must be on 8½ inch by 11 inch white paper with numbered lines . . . .").  However, the requirement of no more than 28

---

[1] To be clear, the Court did not take issue with Ms. Gjovik's failure to use numbered lines *per se*. The problem was that Ms. Gjovik *narrowed margins* by dropping the use of numbered lines.

United States District Court
Northern District of California

1   lines per page is not so restricted.  *See* Civ. L.R. 3-4(c)(2) ("Text must appear on one side only and

2   must be double-spaced with no more than 28 lines per page . . . .").  Furthermore, under Ms.

3   Gjovik's position, page limits would be meaningless because formatting requirements in the Civil

4   Local Rules could be entirely ignored for electronic filings.  *Cf. Wilson v. Citizens Ins. Co. of Am.*,

5   No. 1:13-CV-470, 2014 U.S. Dist. LEXIS 148277, at *2-3 (M.D.N.C. Oct. 17, 2014) (taking note

6   of Local Rule imposing formatting requirements – *e.g.*, spacing, font size, number of lines of text;

7   "[t]he purposes of these requirements are obvious: to allow the Court to read the brief without

8   undue eye strain or format distractions and to insure that litigants do not avoid page limits through

9   creative but inappropriate font variation or spacing").

10        The Court also notes that Ms. Gjovik's repeated complaints about a page limit on her

11   pleading fall flat.  It is not uncommon for courts to impose page limits, even for pleadings.  *See,*

12   *e.g.*, *Sullivan v. Graham*, No. 23-3153, 2024 U.S. App. LEXIS 11968, at *9 (10th Cir. May 17,

13   2024) (in case where pro se plaintiff claimed, *e.g.*, conspiracy and fraud involving forty

14   defendants, rejecting plaintiff's challenge to imposition of 50-page limit on his amended

15   complaint); *Lewis v. Fla. Dep't of Corr.*, 739 Fed. Appx. 585, 585-86 (11th Cir. 2018) (rejecting

16   plaintiff's contention that Local Rule limiting pro se civil rights complaints to 25 pages was

17   unconstitutional as applied in his case); *Lamon v. Ellis*, 584 Fed. Appx. 514, 515 (9th Cir. 2014)

18   (in pro se § 1983 case, holding that "district court's page limitation was consistent with Federal

19   Rule of Civil Procedure 8(a)(2)"); *Bittaker v. Rushen*, No. 92-15375, 1992 U.S. App. LEXIS

20   28517, at *2-4 (9th Cir. Oct. 29, 1992) (in pro se case, affirming involuntary dismissal because

21   plaintiff's pleading exceeded the 40-page limit imposed by the district court and failed to comply

22   with Rule 8); *Martinez v. Parks*, No. 1:21-cv-1496-ADA-CDB (PC), 2023 U.S. Dist. LEXIS

23   88558, at *1 (E.D. Cal. May 19, 2023) (in pro se § 1983 case, reaffirming decision to limit

24   plaintiff to a 25-page complaint); *see also* E.D. Tex. L.R. CV-3 (imposing 30-page limit on habeas

25   petitions in non-death penalty cases and 100-page limit in death penalty cases); *cf. Blakely v.*

26   *Wells*, 209 Fed. Appx. 18, 20 (2d Cir. 2006) (holding that lower court "acted within the bounds of

27   permissible discretion in dismissing the second amended complaint for noncompliance with Rule

28   8(a); "[t]he pleading, which spanned 57 pages and contained 597 numbered paragraphs, was far

United States District Court
Northern District of California

2

United States District Court
Northern District of California

1    from short or plain"). As the Court has stated before, nothing about this case suggests that Ms.

2    Gjovik should not be able to file a pleading in compliance with Rule 8 even if limited to 75 pages.

3        Finally, the Court acknowledges that Ms. Gjovik has refiled a 5AC which, as a facial

4    matter, is 75 pages. *See* Docket No. 138 (5AC). Ms. Gjovik indicates that this complaint is

5    largely the same as the stricken 5AC; "most changes were merely abbreviations and slight

6    rewording." Docket No. 139-1 (Prop. Mot. at 2). The Court has not fully examined the new 5AC

7    but notes that abbreviations include using: "Pl." instead of "Gjovik"; "&" instead of "and"; "env."

8    instead of "environmental"; "gov." instead of "government"; "discrim." instead of

9    "discrimination"; and "admin." instead of "administrative." Although the Court is not prejudging

10   the matter, it advises Ms. Gjovik that it will not look favorably on the use of abbreviations if so

11   extensive as to constitute an attempt to effect an end-run around page limitations. *See, e.g.*,

12   *Doubleday Acquisitions LLC v. Ab*, No. 1:21-cv-03749-SCJ, 2022 U.S. Dist. LEXIS 238573, at

13   *15 (N.D. Ga. July 1, 2022) (ordering that "the parties shall use the default double spacing of

14   Word or another word processing program and shall not use exact spacing *or other technical*

15   *workarounds to avoid the letter and spirit* of this District's formatting requirements and page

16   limitations") (emphasis added). Thus, the Court reiterates for Ms. Gjovik's benefit that she has

17   until November 26, 2024, to file a 5AC that complies with the Court's orders.

18       This order disposes of Docket No. 139.

19

20       **IT IS SO ORDERED**.

21

22   Dated: November 20, 2024

23

24   _____

25   EDWARD M. CHEN
     United States District Judge

26

27

28

3

1

2

3

4                          UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6

7    ASHLEY M GJOVIK,                          Case No.  23-cv-04597-EMC

8                    Plaintiff,
                                               **ORDER DENYING DEFENDANT'S**
9            v.                                **MOTION TO DISMISS; AND FINDING**
                                               **DEFENDANT'S MOTION TO**
10   APPLE INC.,                               **SHORTEN TIME MOOT**

11                   Defendant.
                                               Docket Nos. 131-32
12

13

14          Currently pending before the Court is Apple's motion for an involuntary dismissal

15   pursuant to Federal Rule of Civil Procedure 41(b).  Rule 41(b) provides that, "[if] the plaintiff fails

16   to prosecute or to complete with these rules or a court order, a defendant may move to dismiss the

17   action or any claim against it."  Fed. R. Civ. P. 41(b) (also providing that a dismissal under

18   "subdivision (b) . . . operates as an adjudication on the merits" "[u]nless the dismissal order states

19   otherwise").  Apple argues that involuntary dismissal is appropriate because Ms. Gjovik has failed

20   to comply with this Court's orders – specifically, (1) she failed to timely file her fifth amended

21   complaint ("5AC") and (2) the length of the 5AC exceeds 75 pages, which is the limit that the

22   Court placed on the amended pleading.  *See* Docket No. 112 (Order at 41); Docket No. 123 (Order

23   at 3).

24          The Court agrees with Apple that Ms. Gjovik has failed to comply with its orders.  First,

25   the 5AC was due on November 5, 2024.  *See* Docket No. 123 (Order at 1-2).  Ms. Gjovik had five

26   weeks to file the pleading.  Initially, the Court gave her four weeks to amend but, subsequently,

27   gave her an extension of one additional week.

28          During those five weeks, Ms. Gjovik made several filings with this Court as well as with

United States District Court
Northern District of California

United States District Court
Northern District of California

1    the Ninth Circuit. *See, e.g.*, Docket Nos. 115, 117 (motions filed with this Court); Docket Nos.

2    114, 125 (filings made with the Ninth Circuit). However, she did not file her 5AC on November

3    5; nor did she ask this Court for an extension of time beyond November 5.

4        Instead, on November 6, 2024, at about 10:00 a.m., Ms. Gjovik filed a notice, in which she

5    (1) "apologize[d] for the delay" in filing the 5AC; (2) attributed the delay to PTSD and anxiety

6    symptoms[1]; and (3) "committed to filing the 5AC by midnight." Docket No. 127 (notice).

7    Although Ms. Gjovik did not file the 5AC by midnight as promised, she did file the pleading at

8    about 7:30 a.m. *See* Docket No. 128 (5AC). Thus, altogether, the 5AC was untimely filed by

9    more than a day.

10       Second, the 5AC is not limited to 75 pages in length as previously ordered by the Court.

11    To be sure, as a facial matter, the pleading appears to be only 74 pages. However, as Apple points

12    out, Ms. Gjovik manipulated the formatting on the pleading to achieve this result – *i.e.*, she

13    circumvented the page limit by including 31 lines of text per page (instead of 28 as required by

14    Civil Local Rule 3-4(c)(2)) and narrowing page margins (*i.e.*, by omitting numbered lines, which

15    is the practice in this District and which is consistent with Civil Local Rule 3-4(c)(1)). Apple

16    estimates that, without manipulation, the 5AC would be approximately 80 pages of text. *See* Mot.

17    at 4.

18       In her papers, Ms. Gjovik does not dispute that her 5AC has more lines of text per page

19    than permitted; nor does she dispute that the margins were narrowed (including through the

20    sacrifice of the use of numbered lines). She argues, however, that any formatting changes were

21    not done in bad faith to evade page limits. *See* Opp'n at 4. The Court rejects this argument and

22    finds that the formatting changes were intentionally made and in bad faith. Ms. Gjovik claims that

23    she began to make new formatting changes beginning in July 2024 – *i.e.*, well before the Court

24    allowed her to file a 5AC. *See* Opp'n at 4 (claiming to be "following the Typography for Lawyers

25

26

27

28

---

[1] *See* Docket No. 127 (notice) (referring to (a) "PTSD and anxiety symptoms, which have worsened significantly while having to remove critical parts of my lawsuit [which] represent events in my life which previously caused my severe emotion[al] distress when they occurred originally" and (b) "PTSD symptoms due [to] the requirement of publicly detailing my IIED claims while being harassed by the Defendant and certain non-parties about those events").

2

1    guidebook and typeface"). But even if Ms. Gjovik made some formatting changes starting in July

2    2024, *see* Opp'n at 5-6 (providing examples), those changes did *not* include 31 lines of text per

3    page. Furthermore, in instances in which she did not use numbered lines, the margins did not

4    appear to be narrowed as they have been with the 5AC.[2]

5          The question for the Court, however, is whether Ms. Gjovik's violations of its orders

6    warrant a dismissal. To be clear, Apple asks only for an involuntary dismissal of claims that the

7    Court allowed Ms. Gjovik to amend in her 5AC. *See* Mot. at 4 (arguing that "[t]he Court should

8    dismiss the 5AC with prejudice, leaving only the claims not dismissed in the 4AC"). The Court

9    holds that this relief is not appropriate.

10         The fact that Ms. Gjovik filed her complaint late is of less consequence, particularly as Ms.

11   Gjovik notified the Court on November 6, 2024, that she intended to file the 5AC and then did so

12   the following day.[3] *See Applied Underwriters, Inc. v. Lichtenegger*, 913 F.3d 884, 890 (9th Cir.

13   2019) (stating that, "'[w]hen a district court dismisses an action because the plaintiff has not filed

14   an amended complaint after being given leave to do so and has *not* notified the court of his

15   intention not to file an amended complaint, we may deem the dismissal to be for failure to comply

16   with a court order based on Federal Rule of Civil Procedure 41(b)'") (emphasis added). The more

17   problematic conduct by Ms. Gjovik was her failure to comply with the Court's limit on page

18   length for her amended pleading.

19         In assessing whether to dismiss under Rule 41(b), a court typically considers the following

20   five factors: "'(1) the public's interest in expeditious resolution of litigation; (2) the court's need to

21   manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring

22   disposition of cases on their merits; and (5) the availability of less drastic alternatives.'" *Id.* (also

23

24   ───────────────
     [2] Ms. Gjovik criticizes Apple for engaging in improper formatting conduct in other cases. Those
     other cases are irrelevant. Ms. Gjovik has not pointed to any improper formatting conduct by
25   Apple in *this* case.

26   [3] To be clear, the Court does not condone the untimely filing, especially as it had already given her
     a one-week extension to file the 5AC. *See* Docket No. 123 (Order at 2). Ms. Gjovik risks being
27   sanctioned if she continues to make late filings. While a filing that is not unduly late may not be
     so prejudicial to the opposing party as to warrant severe sanctions, a pattern or practice of late
28   filings is a different matter. Apple suggests that Ms. Gjovik has already engaged in such a pattern
     or practice. *See* Reply at 1. However, Ms. Gjovik is now on notice that there are consequences.

United States District Court
Northern District of California

1  referred to as the *Yourish* factors).  Although some of these factors may weigh in Apple's favor,

2  the Court concludes that, overall, the dismissal sought by Apple is too extreme a sanction – at least

3  at this juncture of the proceedings.  That being said, a sanction of some kind is warranted.

4  Specifically, the Court sanctions Ms. Gjovik by striking the 5AC at Docket No. 128 from the

5  record.  The Court shall permit Ms. Gjovik to file a new 5AC by **November 26, 2024**; that

6  pleading must comply with the Court's prior orders regarding the scope of the permitted

7  amendment and is still subject to the 75-page limit.  **If Ms. Gjovik does not timely file the 5AC**

8  **and/or files a pleading that subverts the 75-page limit imposed by the Court, she risks the**

9  **imposition of a more severe sanction – including the severest sanction of dismissal.**  After Ms.

10  Gjovik files the new 5AC, Apple shall then until **January 7, 2024**, to file its response to the

11  amended pleading.

12         Accordingly, for the reasons stated above, the Court **DENIES** Apple's motion for

13  involuntary dismissal.  However, this ruling does not preclude Apple from moving for such relief

14  in the future, if and when appropriate.  In light of the Court's ruling herein, Apple's motion for

15  shortened time is moot.

16         This order disposes of Docket Nos. 131 and 132.

17

18         **IT IS SO ORDERED**.

19

20  Dated: November 19, 2024

21

22                                                    _____

23                                                    EDWARD M. CHEN
                                                      United States District Judge

24

25

26

27

28

4

1
2
3
4                       UNITED STATES DISTRICT COURT
5                     NORTHERN DISTRICT OF CALIFORNIA
6
7    ASHLEY M GJOVIK,                        Case No.  23-cv-04597-EMC
8               Plaintiff,
9         v.                                **ORDER DENYING PLAINTIFF'S
                                            MOTION FOR EXTENSION**
10   APPLE INC.,
11               Defendant.                 Docket No. 115
12
13

14         Now pending before the Court is Plaintiff's motion for an extension of time.  Plaintiff asks

15   that she be given more time to file an amended complaint.  The current deadline for that filing is

16   October 29, 2024.  *See* Docket No. 112 (Order at 41).  She argues that an extension is appropriate

17   because she has appealed the Court's most recent 12(b)(6) order, *see* Docket No. 113 (notice of

18   appeal), and the Ninth Circuit is likely to rule in her favor.  She also notes that she has filed a

19   motion to stay proceedings altogether in this Court pending her appeal before the Ninth Circuit.

20         Having considered the parties' briefs as well as all other evidence of record, the Court

21   hereby **DENIES** Plaintiff's motion.  The motion is denied because, even though Plaintiff has an

22   appeal pending before the Ninth Circuit, it is unlikely that the Ninth Circuit has jurisdiction over

23   the appeal.  "The courts of appeals . . . shall have jurisdiction of appeals from all *final decisions* of

24   the district courts of the United States . . . ."  28 U.S.C. § 1291 (emphasis added).  "[A] final

25   decision 'ends the litigation on the merits and leaves nothing for the court to do but execute the

26   judgment."  *Hall v. Hall*, 584 U.S. 59, 64 (2018) (adding that "[t]he archetypal final decision is

27   'one[ ] that trigger[s] the entry of judgment'"); *see also* Moore's Fed. Prac. – Civ. § 202.02

28   (noting that courts have construed the term "final decisions" to mean final judgments); *United*

United States District Court
Northern District of California

*States v. Allahyari*, 99 F.4th 486, 491 (9th Cir. 2024) (stating that finality must be given a practical

construction and "a judgment will be deemed final 'if it fully adjudicates the issues and clearly

evinces the district court's intention that it be that court's final act in the matter'").  Here, the

Court's 12(b)(6) order did not end the case in its entirety as there are still claims remaining in the

case that have not been dismissed as well as claims that the Court has allowed Plaintiff to amend.

*Cf.* Fed. R. Civ. P. 54(b) ("[A]ny order or other decision . . . that adjudicates fewer than all the

claims or the rights and liabilities of fewer than all the parties does not end the action as to any of

the claims or parties and may be revised at any time before the entry of a judgment adjudicating all

the claims and all the parties' rights and liabilities.").

Furthermore, although 28 U.S.C. § 1292 allows for appeals of interlocutory orders in some

instances, such appeals are very limited in nature.  *See, e.g.*, *Carson v. Am. Brands*, 450 U.S. 79,

84 (1981) (stating that, "[f]or an interlocutory order to be immediately appealable under § 1292

(a)(1), however, a litigant must show more than that the order has the practical effect of refusing

an injunction[;] [b]ecause § 1292 (a)(1) was intended to carve out only a limited exception to the

final-judgment rule, we have construed the statute narrowly to ensure that appeal as of right under

§ 1292 (a)(1) will be available only in circumstances where an appeal will further the statutory

purpose of '[permitting] litigants to effectually challenge interlocutory orders of serious, perhaps

irreparable, consequence'").

Because it is unlikely that Plaintiff's appeal is proper, an extension of time for Plaintiff to

file an amended complaint is delay that is unwarranted.  However, to ensure that there is no

prejudice to Plaintiff (*e.g.*, if she were waiting for this Court's decision), the Court shall give

Plaintiff one additional week to file her amended pleading, and, correspondingly, Defendant shall

have one additional week to file a response to the amendment.  More time is not warranted given

that the Court already gave Plaintiff four weeks to amend and Plaintiff could have moved for relief

earlier.  In this regard, the Court notes that Plaintiff filed her notice of appeal the same day that the

Court issued its order.  At or about that time, Plaintiff could have asked for an extension of time.

Instead, she waited for another three weeks – and when her amendment was due only a week later

– to seek relief.

2

<div style="writing-mode: vertical-lr">United States District Court
Northern District of California</div>

1    Plaintiff has, in the alternative, asked for leave to file a 200-page amended complaint.  The

2    Court has limited Plaintiff to 75 pages.  Plaintiff asserts that a pleading of 200 pages is necessary

3    for two reasons: "to 1) retain the claims dismissed with prejudice for the sake of preserving error

4    for later appeal, and to 2) ensure adequate pleading of claims that were given leave to amend."

5    Mot. at 2.  This alternative request for relief is also denied.  As Defendant points out, she does not

6    need to replead dismissed claims in order to preserve them for appeal.  *See Lacey v. Maricopa*

7    *Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc) ("For claims dismissed with prejudice and

8    without leave to amend, we will not require that they be repled in a subsequent amended

9    complaint to preserve them for appeal."); *Najarian Holdings LLC v. Corevest Am. Fin. Lender*

10   *LLC*, No. 20-cv-00799-PJH, 2020 U.S. Dist. LEXIS 188667, at *24 (N.D. Cal. Oct. 9, 2020)

11   ("The Ninth Circuit does not require plaintiffs to replead claims that were dismissed with

12   prejudice in an amended complaint in order to preserve them for appeal."). Moreover, as this

13   Court has previously noted, this is not the kind of case that warrants a pleading of that length.

14   Although there is a long history between Plaintiff and Defendant, the gist of her claims is that

15   Defendant has engaged in conduct detrimental to environmental safety and that Defendant

16   retaliated against her when she complained about this conduct as well as other conduct by the

17   company.  Federal Rule of Civil Procedure 8 simply requires:

18   / / /

19   / / /

20   / / /

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

3

<div style="writing-mode: vertical">United States District Court
Northern District of California</div>

1     (1)  a short and plain statement of the grounds for the court's

2        jurisdiction, unless the court already has jurisdiction and the
        claim needs no new jurisdictional support;

3     (2)  a short and plain statement of the claim showing that the
        pleader is entitled to relief; and

4

5     (3)  a demand for the relief sought, which may include relief in
        the alternative or different types of relief.

6 Fed. R. Civ. P. 8(a).

7    This order disposes of Docket No. 115.

8

9    **IT IS SO ORDERED**.

10

11 Dated: October 25, 2024

12

13

14              EDWARD M. CHEN
              United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

1

2

3

4 UNITED STATES DISTRICT COURT

5 NORTHERN DISTRICT OF CALIFORNIA

6

7 ASHLEY M GJOVIK,

8             Plaintiff,

9     v.

10 APPLE INC.,

11             Defendant.

12

13

Case No.  23-cv-04597-EMC

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S
MOTION TO DISMISS; DENYING
DEFENDANT'S MOTION TO STRIKE;
AND GRANTING PLAINTIFF'S
MOTION TO STRIKE**

Docket Nos. 78-79, 101

United States District Court
Northern District of California

14    Plaintiff Ashley Gjovik, proceeding pro se,[1] is a former employee of Defendant Apple, Inc.

15 She started to work for Apple in February 2015 and was ultimately terminated on September 9,

16 2021.  On September 7, 2023, about two years after she was fired, she initiated this lawsuit.  In the

17 operative fourth amended complaint ("4AC"), Ms. Gjovik asserts thirteen different claims against

18 Apple, all predicated on state law.  For the most part, the claims fall into two basic categories: (1)

19 Apple engaged in environmentally unsafe conduct that harmed Ms. Gjovik and (2) Apple

20 retaliated against Ms. Gjovik – including by terminating her from employment – because she

21 complained about certain company conduct, including but not limited to environmentally unsafe

22 conduct.

23    Now pending before the Court are three motions: (1) a motion to dismiss filed by Apple,

24 targeted at eleven of the thirteen claims (either in whole or in part); (2) a motion to strike filed by

25 Apple; and (3) a motion to strike filed by Ms. Gjovik.  Having considered the parties' briefs and

26 accompanying submissions, the Court hereby **GRANTS** in part and **DENIES** in part Apple's

27

---

28 [1] Ms. Gjovik appears to have a J.D. from Santa Clara University.

motion to dismiss, **DENIES** Apple's motion strike, and **GRANTS** Ms. Gjovik's motion to strike.

## I.      FACTUAL & PROCEDURAL BACKGROUND

The factual allegations in the 4AC largely replicate the factual allegations in the prior third amended complaint ("TAC"). As the Court stated in its prior order, the main categories of alleged misconduct by Apple are as follows:

> (1) During her employment with Apple, Ms. Gjovik lived in an apartment near an Apple factory (known as the ARIA factory) and became ill because the factory released toxic substances into the environment.
>
> (2) Ms. Gjovik's office at Apple (known as Stewart 1) was located on a contaminated site subject to EPA regulation, *i.e.*, a Superfund site, and she became ill because of Apple's actions/omissions related to the site.
>
> (3) Apple made employees, including Ms. Gjovik, participate in studies related to Apple products that were invasive to their privacy.
>
> (4) Apple retaliated against Ms. Gjovik for making complaints about harassment and environmental safety. Ms. Gjovik's complaints included internal complaints, complaints to governmental agencies, complaints to the press, and complaints made in social media. The retaliation by Apple included but was not limited to the termination of Ms. Gjovik from employment.

Docket No. 73 (Order at 2).

Based on, *inter alia*, the above allegations, Ms. Gjovik asserts the following causes of action in the 4AC:

(1)      Wrongful termination in violation of public policy.

(2)      Violation of the California Whistleblower Act. *See, e.g.*, Cal. Lab. Code § 1102.5(b) (providing that an employer "shall not retaliate against an employee for disclosing information . . . to [*inter alia*] a government or law enforcement agency [or] to a person with authority over the employee . . . if the employee has reasonable cause to believe that the information discloses a violation of a state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation").

(3)      Violation of California Labor Code § 6310. *See, e.g.*, *id.* § 6310(a) (providing

2

that "[n]o person shall discharge or in any manner discriminate against any employee because the employee has [*e.g.*] [m]ade any oral or written complaint to the [Division of Occupational Safety and Health] [or] other governmental agencies having statutory responsibility for or assisting the division with reference to employee safety or health").

(4)   Violation of California Labor Code § 6399.7.  *See id.* § 6399.7 (providing, *inter alia*, that "[n]o person shall discharge or in any manner discriminate against, any employee because such employee has filed any complaint . . . under or related to the provisions of this chapter [*i.e.*, the Hazardous Substances Information and Training Act]").

(5)   Violation of California Labor Code § 98.6.  *See id.* § 98.6(a) (providing that "[a] person shall not discharge an employee or in any manner discriminate, retaliate, or take any adverse action against any employee . . . because the employee . . . engaged in any conduct delineated in this chapter . . . or because the employee . . . has filed a bona fide complaint or claim . . . under or relating to their rights that are under the jurisdiction of the Labor Commissioner . . . or because of the exercise by the employee . . . on behalf of themselves or others of any rights afforded them").

(6)   Violation of California Labor Code §§ 232, 232.5, 1101, and 1102.  *See id.* § 232 (providing, *inter alia*, that an employer may not "[r]equire, as a condition of employment, that an employee refrain from disclosing the amount of his or her wages"); *id.* § 232.5 (providing, *inter alia*, that an employer may not "[r]equire, as a condition of employment, that an employee refrain from disclosing information about the employer's working conditions"); *id.* § 1101 (providing, *inter alia*, that an employer shall not "make, adopt, or enforce any rule, regulation or policy . . . [c]ontrolling or directing, or tending to control or direct the political activities or affiliations of employees"); *id.* § 1102 (providing that "[n]o employer shall coerce or influence . . . his employees

United States District Court
Northern District of California

through or by means of threat of discharge or loss of employment to adopt or
follow or refrain from adopting or following any particular course or line of
political action or political activity").

(7)     Violation of California Labor Code § 96(k).  *See id.* § 96(k) (providing that the
Labor Commissioner "shall, upon the filing of a claim therefor by an employee,
. . . take assignments of . . . [c]laims for loss of wages as the result of demotion,
suspension, or discharge from employment for lawful conduct occurring during
nonworking hours away from the employer's premises").

(8)     Breach of the implied covenant of good faith and fair dealing.

(9)     Violation of California Business & Professions Code § 17200.

(10)   Intentional infliction of emotional distress – "traditional."

(11)   Creation and maintenance of a private nuisance at the ARIA factory.

(12)   Strict liability for ultrahazardous activities at the ARIA factory.

(13)   Intentional infliction of emotional distress – fear of cancer.

Apple has challenged all of the above claims, either in whole or in part, except for the first
and third causes of action.

## II.     DISCUSSION

A.    Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain
statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A
complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil
Procedure 12(b)(6).  *See* Fed. R. Civ. P. 12(b)(6).  To overcome a Rule 12(b)(6) motion to dismiss
after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic
Corp. v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must .
. . suggest that the claim has at least a plausible chance of success.'"  *Levitt v. Yelp! Inc.*, 765 F.3d
1123, 1135 (9th Cir. 2014).  The court "accept[s] factual allegations in the complaint as true and

4

1   construe[s] the pleadings in the light most favorable to the nonmoving party."[2] *Manzarek v. St.*

2   *Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  But "allegations in a

3   complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient

4   allegations of underlying facts to give fair notice and to enable the opposing party to defend itself

5   effectively."  *Levitt*, 765 F.3d at 1135 (internal quotation marks omitted).  "A claim has facial

6   plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

7   inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "The

8   plausibility standard is not akin to a probability requirement, but it asks for more than a sheer

9   possibility that a defendant has acted unlawfully."  *Id.* (internal quotation marks omitted).

10  B.    Rule 12(g)(2)

11        Before the Court considers the specific arguments made by Apple in its motion, and Ms.

12  Gjovik's responses thereto, it notes that there is a procedural matter that affects several, although

13  not all, claims.  Specifically, in the pending motion to dismiss, which targets the 4AC, Apple

14  makes arguments that it *could* have made in its prior motion to dismiss the TAC but did not.

───────────────────

[2] On a motion to dismiss, a court generally limits its review to the four corners of the complaint. *See Van Buskirk v. Cnn*, 284 F.3d 977, 980 (9th Cir. 2002) ("Ordinarily, a court may look only at the face of the complaint to decide a motion to dismiss."); *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) ("[W]hen the legal sufficiency of a complaint's allegations is tested by a motion under Rule 12(b)(6), 'review is limited to the complaint.'").  Accordingly, the Court does not consider the declaration filed by Cher Scarlett at Docket No. 99 (and grants Ms. Gjovik's motion to strike the same).  For the same reasons, the Court does not consider the bulk of the Gjovik Declaration, including Exhibits D-F thereto.

Exhibits A-C attached to the Gjovik Declaration are documents that Ms. Gjovik created for the asserted purpose of helping the Court understand the history of her claims.  They are more in the nature of attorney argument and theoretically could be considered.  The Court, however, largely finds the exhibits unhelpful.  Moreover, the exhibits arguably reflect an attempt on the part of Ms. Gjovik to get around the page limits on briefing.

Finally, a court may take judicial notice of documents, if appropriate, on a 12(b)(6) motion.  *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) (noting that a court may "consider materials outside a complaint" at the 12(b)(6) phase if it can, e.g., take judicial notice of materials).  Ms. Gjovik has filed a request for judicial notice ("RJN") implicating fifteen documents.  They include a report issued by the EPA on the ARIA factory (Exhibit B); an article on hazardous production gases (Exhibit C); and chemical safety cards for gases (Exhibit E).  It is questionable whether all of the documents can be judicially noticed (*e.g.*, the articles).  However, the bigger problem for Ms. Gjovik is that she has failed to explain how the RJN is relevant to the arguments made in her opposition brief.  To be clear, the opposition does contain references to the RJN but those references are not followed by any concrete explanation of how the documents at issue are relevant.  Thus, at the end of the day, the RJN is largely unhelpful, too.

1     Notably, this includes challenges to claims pled in the 4AC that Apple did not challenge when

2     pled in the prior TAC (*e.g.*, the claim that the ARIA factory constituted a private nuisance and the

3     claim that Apple violated certain protections provided by California Labor Code §§ 232 and

4     232.5).

5        Ms. Gjovik argues that any of these arguments that could have been made, but were not,

6     should be entirely disregarded.  In support, she cites Federal Rule of Civil Procedure 12(g)(2).

7     That rule provides as follows: "Except as provided in Rule 12(h)(2) or (3), a party that makes a

8     motion under this rule must not make another motion under this rule raising a defense or objection

9     that was available to the party but omitted from its earlier motion."  Fed. R. Civ. P. 12(g)(2).  The

10     exception identified in Rule 12(h)(2) provides: "[f]ailure to state a claim upon which relief can be

11     granted . . . may be raised: (A) in any pleading allowed or ordered under Rule 7(a); (B) by a

12     motion under Rule 12(c); or at trial."  Fed. R. Civ. P. 12(h)(2).

13     As a facial matter, Rule 12(g)(2) does lend support to Ms. Gjovik's position.  However, in

14     *In re Apple iPhone Antitrust Litigation*, 846 F.3d 313 (9th Cir. 2017), the Ninth Circuit explained

15     that the rule is not as unforgiving as it might appear at first blush:

16        We read Rule 12(g)(2) in light of the general policy of the Federal
17        Rules of Civil Procedure, expressed in Rule 1.  That rule directs that
        the Federal Rules "be construed, administered, and employed by the
18        court and the parties to secure the just, speedy, and inexpensive
        determination of every action and proceeding."  *Denying late-filed*
19        *Rule 12(b)(6) motions and relegating defendants to the three*
        *procedural avenues specified in Rule 12(h)(2) can produce*
20        *unnecessary and costly delays, contrary to the direction of Rule 1.*

21     *Id.* (emphasis added).  Accordingly, "'[a]lthough Rule 12(g) technically prohibits successive

22     motions to dismiss that raise arguments that could have been made in a prior motion . . . courts

23     faced with a successive motion often exercise their discretion to consider the new arguments in the

24     interests of judicial economy.'"  *Id.* at 319.

25        Here, the Court shall, in the exercise of its discretion, consider Apple's new arguments.  If

26     the Court were to reject consideration of the arguments through the 12(b)(6) vehicle, Apple would

27     no doubt raise the same arguments through a 12(c) motion.  As a matter of judicial economy, it

28     makes more sense to address the arguments sooner rather than later.  Furthermore, there is no

1    indication that Apple's new arguments are being made for purposes of delay or some other

2    "strategically abusive purpose." *Id.* at 319-20. Rather, Apple is trying to streamline this case

3    which, quite frankly, Ms. Gjovik has made unwieldy. Furthermore, Apple's arguments are made

4    in good faith as reflected by the fact that the Court finds merit to Apple's motion to dismiss.

5    C.    Ms. Gjovik's Claims

6          Ms. Gjovik's 4AC continues to be a sprawling pleading with many claims. She has also

7    made her pleading messier by choosing to restructure some of her claims – in particular, her

8    retaliation claims. For example, in the TAC, she asserted a claim for violation of California Labor

9    Code § 98.6 which was predicated on protections provided in §§ 96(k), 232, and 232.5. *See* TAC,

10   Count 9. However, in the 4AC, she now splits that claim up into three claims: a violation of §

11   98.6; a violation of §§ 232 and 232.5 (as well as §§ 1101 and 1102); and a violation of § 96(k).

12   *See* 4AC (Counts 5-7).

13         As a result of the above, Apple's motion to dismiss can be difficult to follow. The Court

14   has attempted to provide some clarity by grouping Ms. Gjovik's claims for analysis. The first

15   group (addressed in Part II.D) consists of her **retaliation** claims. The second group (addressed in

16   Part II.E) consists of her claims asserting injury as a result of **environmentally unsafe conditions**.

17   These two groups seem to contain the most important claims being made by Ms. Gjovik. Finally,

18   the last group (addressed in Part II.F) consists of her **remaining** claims.

19   D.    Retaliation Claims

20         The retaliation claims are in Counts 1-7. In the motion to dismiss, Apple challenges all of

21   the claims, either in whole or part, except for Count 1 (termination in violation of public policy)

22   and Count 3 (violation of California Labor Code § 6310).

23         1.    Count 2 – Claim for Violation of § 1102.5

24         In Count 2, Ms. Gjovik asserts a violation of the California Whistleblower Act. *See* Cal.

25   Lab. Code § 1102.5. Section 1102.5 provides in relevant part that an employer

26                shall not retaliate against an employee for disclosing information . . .
                  to [*inter alia*] a government or law enforcement agency [or] to a
27                person with authority over the employee . . . if the employee has
                  reasonable cause to believe that the information discloses a violation
28                of a state or federal statute, or a violation of or noncompliance with

7

a local, state, or federal rule or regulation.

*Id.* § 1102.5(b).

In the prior TAC, Ms. Gjovik included a § 1102.5 claim.  In its order addressing the TAC, the Court noted that, for the § 1102.5 claim, Ms. Gjovik made two main allegations – specifically, that Apple retaliated after she complained to various government agencies about (1) the Gobbler application and (2) environmental and safety violations.  On (1), the Court held that Ms. Gjovik sufficiently alleged that the Gobbler application violated the right to privacy protected by the California Constitution; however, she failed to allege *to whom* she made complaints about the Gobbler application.  On (2), Apple argued that Ms. Gjovik failed to specify which environmental or safety statutes/regulations were allegedly violated.  The Court did not decide whether the failure to cite specific provisions deprived Apple of the right to fair notice about the scope of Ms. Gjovik's claims.  This was because, "[a]t the hearing, Ms. Gjovik indicated that she had a list of provisions at hand, and, as the Court is already giving Ms. Gjovik leave to amend other claims, she may supplement this claim by including the specific provisions in the amended pleading."  Docket No. 73 (Order at 35-36).

In the 4AC, Ms. Gjovik now alleges that Apple retaliated against her after she made complaints to, *inter alia*:

> (1) Apple management, the EPA, California EPA, and the California Air Resource Board about violations of CERCLA, RCRA, and/or the Clean Air Act;
>
> (2) the Santa Clara County DA's Office, the EPA, and Apple about fraud related to environmental crimes;
>
> (3) the NLRB, DOL, California DOL, and Cal OSHA about violations of the NLRA, the California Labor Code, and OSHA;
>
> (4) Apple management about violations of the right to privacy under the California Constitution;
>
> (5) the DOJ, EEOC, and California DFEH about violations of anti-discrimination laws (on the basis of sex and disability); and
>
> (6) her supervisors (including Mr. West and Mr. Powers) and the FBI about smuggling

8

1    and violations of sanctions.

2    *See* 4AC ¶ 168.[3]

3          Apple now moves to dismiss in part the § 1102.5 claim.

4                a.    <u>Beyond the Scope of Amendment</u>

5          Apple argues first that part of the claim should be dismissed because Ms. Gjovik made an

6    amendment to the claim beyond the scope permitted by the Court.  Specifically, in the 4AC, Ms.

7    Gjovik alleges that she was retaliated against because she made complaints to her supervisors and

8    the FBI about smuggling and sanctions violations.  *See* 4AC ¶ 168.  Apple asserts that this factual

9    predicate was never part of the § 1102.5 claim in the TAC and the Court never permitted Ms.

10   Gjovik to add new factual predicates to the § 1102.5 claim.

11         Apple's argument has merit.  To be clear, the prior TAC did mention smuggling and

12   sanctions violations.  *See, e.g.*, TAC ¶ 84 (alleging that, in September 2021, Ms. Gjovik "told the

13   FBI about Apple's involvement in concealing possible sanctions violations and smuggling[;] in

14   the crime field, she wrote: '*Possible violations of sanctions against Syria, possible cover-up of*

15   *that knowledge, retaliation for reporting concerns about said violation and coverup*'") (emphasis

16   in original).  However, Ms. Gjovik's allegations about smuggling and sanctions violations were

17   made in support of the SOX claim (which the Court ended up dismissing with prejudice), not in

18   support of the § 1102.5 claim.  *See* TAC ¶¶ 167-68 (SOX claim).

19         Ms. Gjovik cannot avoid this problem simply because her § 1102.5 claim, as pled in the

20   TAC, contained the allegation that "Plaintiff re-alleges and incorporates by reference each and

21   every allegation set forth above, as though fully set forth in this Claim for Relief."  TAC ¶ 204 (§

22   1102.5 claim).  She shall not be rewarded for this generic allegation, particularly in light of her

23   long and difficult-to-follow complaint.  Furthermore, the § 1102.5 claim, as pled in the TAC,

24   clearly had a different focus.  She asserted retaliation for three reasons only: "Reporting Unlawful

25   Labor/Employment Conduct," "Reporting Environmental & Safety Violations," and "Refusal to

26   Participate in Unlawful Conduct."  *See* TAC ¶¶ 208-12.  She did not identify smuggling and

27

28   _____

     [3] The list in ¶ 168 is longer; the above provides some examples only.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    sanctions violations.

2          To the extent Ms. Gjovik suggests she should be now allowed to amend to include the

3    factual predicate, the Court does not agree.  Ms. Gjovik has filed five pleadings at this point.  The

4    Court shall not allow her to continue to modify her positions.

5                    b.        Failure to Address Deficiencies Identified in Court Order

6          Apple argues next that more of the § 1102.5 claim should be dismissed because, when the

7    Court considers the amendment that it *did* permit to the claim, Ms. Gjovik failed to address – in

8    large part – the deficiencies identified by the Court in the TAC.  According to Apple:

9                    (1) Ms. Gjovik still fails to specify to whom she made complaints about the Gobbler

10                       application; she mentions "Apple management" only.

11                    (2) In multiple instances, Ms. Gjovik does not specify which statutes/regulations were

12                       allegedly violated.  While Ms. Gjovik does reference some specific

13                       statutes/regulations in the 4AC, she also continues to cite to *entire* statutory

14                       frameworks – *e.g.*, for CERCLA, RCRA, and the Clean Air Act.

15          Apple's arguments again have merit.  As to (1), Ms. Gjovik contends that Apple is trying

16    to get her to "publicly name who at the company she raised the Gobbler issue to prior to taking it

17    public, despite having said it would fire anyone involved in making Gobbler public – thus

18    demanding Gjovik immediately snitch on her coworker, knowing Apple's lawyers may then fire

19    that person."  Opp'n at 11.  This argument does not make sense.  In the 4AC, Ms. Gjovik asserts

20    that she complained to "Apple management," not a coworker.  In any event, regardless of the

21    status of the person to whom she complained, Ms. Gjovik does not have the right to unilaterally

22    decline to disclose the identity of the person.  The issue here is one of fair notice to Apple so that

23    it can defend itself, and Ms. Gjovik did not even ask for any protective measures such as

24    disclosure to outside counsel only.  Finally, it is notable that Ms. Gjovik did not raise any concern

25    about snitching in the prior 12(b)(6) round.  Accordingly, the Court dismisses from the § 1102.5

26    claim the factual predicate that Ms. Gjovik was retaliated against because she made complaints

27    about privacy rights being violated as a result of the Gobbler application.

28          As for (2), Ms. Gjovik asserts that she has a valid claim so long as she reasonably believed,

United States District Court
Northern District of California

1    at the time of her complaint, that there was a violation of the law; she did not have to know at the

2    time what laws exactly were being violated.  *See, e.g.*, Opp'n at 10 (arguing that a layperson

3    "probably will not know exactly what laws are being violated down to the statute").  The problem

4    for Ms. Gjovik is that Apple is not arguing such.  Rather, Apple is making a different point: as a

5    matter of fair notice, Ms. Gjovik now, *as part of litigation*, has to identify specific

6    statutes/regulations so that Apple can properly defend itself.  *See Ling La v. San Mateo County*

7    *Transit Dist.*, No. 14-cv-01768-WHO, 2014 U.S. Dist. LEXIS 131316, at *18 (N.D. Cal. Sept. 16,

8    2014) (holding that "[plaintiff's] allegation that she disclosed conduct in violation of the Davis-

9    Bacon Act, related federal statutes, and related regulations is . . . insufficient" because "[t]he point

10   of notice pleading is to 'give the defendant fair notice of what the claim is and the grounds upon

11   which it rests,'" and plaintiff's "citation *to a whole statutory framework* does not serve this

12   purpose, in particular where [plaintiff] does not use her opposition brief to clarify the specific

13   statutes and regulations that were violated") (emphasis added).

14          Apple's position has merit, at least to the extent that all that Ms. Gjovik does is cite an

15   entire statutory framework, without reference to any kind of benchmark (*e.g.*, CERCLA, RCRA,

16   and the Clean Air Act).  *See* 4AC ¶ 168.  In her papers, Ms. Gjovik contends that, at least in some

17   instances, she cannot provide any more specific information on statutes or regulations because

18          CERCLA oversight is implemented through tailored settlements,
19          contracts, and restrictive covenants – not regulations.  Plaintiff
             challenged land use covenants, records of decision, and other
20          contractual  matters related to the CERLA site [and] Apple is aware
             of what those claims are from the emails Plaintiff sent them, the US
21          EPA investigation into her claims and finding Apple at fault in [a]
             number of ways, including documented on formal reports.

22   Opp'n at 6.  But assuming that is the benchmark, then it is not clear why Ms. Gjovik did not

23   identify that benchmark in the 4AC, and with some specificity (*e.g.*, which tailored settlements,

24   contracts, and restrictive covenants).  Again, the issue here is one of fair notice to Apple.

25   Furthermore, it is not sufficient for Ms. Gjovik to refer to documents outside the complaint for

26   additional details because those documents do not define the scope of the complaint.

27          To the extent Ms. Gjovik suggests that she was waiting for a report from the EPA to put in

28   more specifics, *see* Opp'n at 10 (asserting that she was "waiting to receive the results of the US

11

1    EPA Enforcement inspection report before making a conclusive statement"; adding that "[t]he

2    report was released last month and found "several . . . violations" of "statutes that provide both

3    civil and criminal enforcement"), that makes no sense.  Ms. Gjovik should have been able to

4    provide more specifics regardless of what the EPA found.  It is also notable that Ms. Gjovik did

5    not assert this excuse (*i.e.*, that she had to wait for the EPA report) during the prior 12(b)(6)

6    hearing.

7         Accordingly, the Court dismisses any part of the § 1102.5 claim where all that Ms. Gjovik

8    does is cite wholesale to a statutory framework.  That includes general reference to CERCLA,

9    RCRA, and the Clean Air Act without any degree of further specificity.  Ms. Gjovik still has a §

10   1102.5 claim (albeit more limited) to the extent she does cite some statutes/regulations in her

11   pleading.  *See* 4AC ¶ 168.

12        Because Ms. Gjovik has failed to cure deficiencies previously identified by the Court, the

13   Court's dismissal here is with prejudice.

14                  c.      Time Bar on Civil Penalties

15        Finally, Apple argues that, for the part of the § 1102.5 claim it does not challenge on the

16   grounds noted above, Ms. Gjovik still cannot seek any civil penalties as relief because they are

17   time barred.[4]  *See* 4AC, Prayer for Relief ¶ viii (asking for a civil penalty of $10,000 per employee

18   for each violation of California Labor Code § 98.6 and § 1102.5).[5]  In support of this position,

19   _____

20   [4] A contention that a claim is time barred is an affirmative defense, and ordinarily a plaintiff need
     not plead on the subject of an anticipated affirmative defense.  But when an affirmative defense is
21   apparent on the face of a complaint, a defendant may raise that defense in a motion to dismiss.
     *See Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013).

22   [5]

23              Two categories of remedies exist for violations of . . . § 1102.5.  The
                first is a civil penalty.  *Id.* § 1102.5(f) ("In addition to other
24              penalties, an employer that is a corporation or limited liability
                company is liable for a civil penalty not exceeding ten thousand
25              dollars ($10,000) for each violation of this section.").  The second is
                a claim for damages.  *Id.* § 1105 ("Nothing in this chapter shall
26              prevent the injured employee from recovering damages from his
                employer for injury suffered through a violation of this chapter.");
27              *see also Gardenhire v. Hous. Auth.*, 85 Cal. App. 4th 236, 241
                (2000) (recognizing a right of action for damages for violations of §
28              1102.5); Cal. Sen. Judiciary Comm., Analysis of S.B. 777 (Apr. 8,
                2003) (recognizing that § 1102.5 provides for recovery of

United States District Court
Northern District of California

12

1    Apple cites California Code of Civil Procedure § 340(a).  Section 340(a) provides for a *one*-year

2    limitations period for "[a]n action upon a statute for a penalty or forfeiture, if the action is given to

3    an individual, or to an individual and the state, except if the statute imposing it prescribes a

4    different limitation."  Cal. Code Civ. Proc. § 340(a).  In the case at bar, the last act of retaliation

5    alleged by Ms. Gjovik was her termination.  That occurred in September 2021.  However, Ms.

6    Gjovik did not initiate this lawsuit until *two* years later, in September 2023.[6]

7        As a facial matter, Apple's position has merit.  *See Minor v. FedEx Office & Print Servs.*,

8    182 F. Supp. 3d 966, 988 (N.D. Cal. 2016) (determining that a § 1102.5 claim "must be brought

9    within three years" unless "the suit seeks the civil penalty provided in § 1102.5(f)," in which case

10   "the claim is subject to a one-year limitations period").  However, Ms. Gjovik suggests that there

11   should be some kind of tolling because she was "waiting on California Dept. of Labor to start

12   investigating her claims up until the point she removed her agency claims to this lawsuit" but

13   "[t]he agency failed to act in a timely fashion."  Opp'n at 11.

14       The California Supreme Court has held that, "whenever the exhaustion of administrative

15   remedies is a prerequisite to the initiation of a civil action, the running of the limitations period is

16   tolled during the time consumed by the administrative proceeding."  *Elkins v. Derby*, 12 Cal. 3d

17   410, 414 (1974).  It has also held that, "regardless of whether the exhaustion of one remedy is a

18   prerequisite to the pursuit of another, if the defendant is not prejudiced thereby, the running of the

19   limitations period is tolled '[w]hen an injured person has several legal remedies and, reasonably

20   and in good faith, pursues one.'"  *Id.*; *see also id.* at 418 (noting that "this and other courts as well

21   as legislatures have liberally applied tolling rules or their functional equivalents to situations in

22

23   _____

             compensatory damages).

24
     *Newton v. Bank of Am.*, CV 16-09581-AB (RAOx), 2018 U.S. Dist. LEXIS 228955, at *6-7 (C.D.
25   Cal. Jan. 18, 2018).

26   [6] Ms. Gjovik does assert that Apple harassed her post-termination.  *See* 4AC ¶ 138 ("From at least
     July 2021 through current day – Apple employees stalked, harassed, and tormented Gjovik . . . .").
27   However, Ms. Gjovik cannot base her § 1102.5 claim on post-termination conduct because she
     was no longer an employee and the statute provides protection only where there is an employer-
28   employee relationship.  *See* Cal. Lab. Code § 1102.5(b) ("An employer, or any person acting on
     behalf of the employer, shall not retaliate against an employee . . . .").

United States District Court
Northern District of California

which the plaintiff has satisfied the notification purpose of a limitations statute").

> In the wake of *Elkins*, the California Supreme Court has stated that in order to prove the applicability of the equitable tolling doctrine, a party must establish "three elements: 'timely notice, and lack of prejudice, to the defendant, and reasonable and good faith conduct on the part of the plaintiff.'" """The timely notice requirement essentially means that the first claim must have been filed within the statutory period. Furthermore[,] the filing of the first claim must alert the defendant in the second claim of the need to begin investigating the facts which form the basis for the second claim. Generally this means that the defendant in the first claim is the same one being sued in the second." "The second prerequisite essentially translates to a requirement that the facts of the two claims be identical or at least so similar that the defendant's investigation of the first claim will put him in a position to fairly defend the second." "The third prerequisite of good faith and reasonable conduct on the part of the plaintiff is less clearly defined in the cases. But in *Addison v. State of California* [(1978)] 21 Cal. 3d 313[,] the Supreme Court did stress that the plaintiff filed his second claim a short time after tolling ended.""""

*Hopkins v. Kedzierski*, 225 Cal. App. 4th 736, 747 (2014).

In the instant case, it is possible that there could be a basis for tolling. However, as the 4AC currently stands, there is not a basis to support such. For instance, Ms. Gjovik has not made allegations establishing that the *Elkins* rule is applicable here; nor has she made allegations supporting the three elements listed above.

The Court therefore grants the motion to dismiss the claim for a civil penalty as time barred. The only question remaining is whether the Court should give Ms. Gjovik leave to amend. Here, the Court does give leave because the time bar is a new argument raised by Apple that it could have asserted in the prior motion to dismiss but did not. Therefore, Ms. Gjovik has not yet had a chance to correct this deficiency, *i.e.*, by pleading some kind of tolling. It is not clear at this juncture that it would be futile for Ms. Gjovik to argue tolling. Any amendment permitted herein is limited to allegations supporting a tolling argument.

d.      Summary

Apple's motion to dismiss with respect to the § 1102.5 claim is granted. The following factual predicates are eliminated from the claim (with prejudice): (1) that Ms. Gjovik complained about smuggling and sanctions violations; (2) that Ms. Gjovik complained about privacy

14

1    violations related to Gobbler; and (3) that Ms. Gjovik made complaints about violations of

2    CERCLA, RCRA, the Clean Air Act, and any other whole statutory framework.[7]  The Court's

3    ruling here leaves Ms. Gjovik with a substantive § 1102.5 claim based on complaints made about:

4    (1) "[v]iolations of the anti-retaliation provisions of environmental laws," specifically, 42 U.S.C.

5    §§ 9610 and 7622 and 15 U.S.C. 2622; (2) violation of § 8(a)(1) of the NLRA; (3) violation of

6    California General Industry Safety Order 5194; (4) violation of 29 U.S.C. § 660; (5) violation of

7    the California Constitution's right to privacy (but not related to Gobbler); and (6) violation of 42

8    U.S.C. § 2000e and California Government Code § 12920.  To the extent Ms. Gjovik seeks a civil

9    penalty on this remaining portion of the § 1102.5 claim, there is a time bar, but Ms. Gjovik has

10   leave to amend to plead tolling.

11           2.       Count 4 – Claim for Violation of the HSITA

12           In Count 4, Ms. Gjovik asserts a violation of California Labor Code § 6399.7.  Apple has

13   moved to dismiss Count 4 in its entirety.

14           Section 6399.7 provides, *inter alia*, that "[n]o person shall discharge or in any manner

15   discriminate against, any employee because such employee has filed any complaint . . . under or

16   related to the provisions of this chapter," *i.e.*, the Hazardous Substances Information and Training

17   Act ("HSITA").  Cal. Lab. Code § 6399.7.

18           Section 6362 of the HSITA covers the application of the statute.  It provides as follows:

19           The rights and duties set forth in this chapter apply to all employers
20           who use hazardous substances in this state, to any person who sells a
             hazardous substance to any employer in this state, and to
21           manufacturers who produce or sell hazardous substances in this
             state. *The provisions of this chapter apply to hazardous substances*
22           *which are present in the workplace as a result of workplace*
             *operations in such a manner that employees may be exposed under*
23           *normal conditions of work or in a reasonably foreseeable*
             *emergency resulting from workplace operations.*

24   *Id.* § 6362 (emphasis added).

25           The HSITA also contains the following provisions:

26

27   ───────────────────

     [7] For instance, in the 4AC, Ms. Gjovik alleges that she made complaints about "[f]raud related to
28   environmental claims" and then cites a huge swath of statutes: 42 U.S.C. §§ 7401-7676; 42 U.S.C.
     §§ 9601-75; 42 U.S.C. §§ 11001-50; and 15 U.S.C. §§ 2601-92.  *See* 4AC ¶ 168.

                                                    15

United States District Court
Northern District of California

United States District Court
Northern District of California

- "Employers shall furnish employees who may be exposed to a hazardous substance with information on the contents of the MSDS for the hazardous substances or equivalent information, either in written form or through training programs, which may be generic to the extent appropriate and related to the job." *Id.* § 6398(b).

- "Provision shall be made for employees to be informed of their rights under this chapter and under the standard to be adopted." *Id.* § 6398(c).

In the 4AC, Ms. Gjovik alleges that she

> repeatedly complained to Apple about employee's Right to Know about chemical exposure, about Apple's duty to disclose to workers if they were disclosed and if so to what and how much, and to explain the health impacts of those chemical exposures. Apple EH&S [*i.e.*, Environmental Health & Safety] told Gjovik that Apple legal decided that Apple employees "*have no Right to Know*." Gjovik then complained about this to the US EPA and other agencies and told Apple she was complaining about them.

4AC ¶ 176 (emphasis in original).

### a. Beyond the Scope of Amendment

As an initial matter, Apple argues that the HSITA claim should be dismissed because Ms. Gjovik did not assert such a claim in the prior TAC and she was never given leave to include a HSITA claim in the 4AC.

Although Apple's argument is not entirely lacking in merit, the Court rejects it. In the prior TAC, Ms. Gjovik asserted in Count 10 a claim for violation of California Labor Code § 6310. *See* Cal. Lab. Code § 6310(a) (providing that "[n]o person shall discharge or in any manner discriminate against any employee because the employee has [*e.g.*] [m]ade any oral or written complaint to the [Division of Occupational Safety and Health] [or] other governmental agencies having statutory responsibility for or assisting the division with reference to employee safety or health"). Count 10 included a reference to the HSITA (*i.e.*, § 6399.7). Paragraph 221 of the TAC stated:

> Apple discriminated against and discharged Gjovik because Gjovik complained about safety and health conditions or practices at the workplace to Apple managers and her coworkers. Apple discriminated against and discharged Gjovik because Gjovik reported work-related injuries and illnesses and requested information about work-related injury and illness reports or records.

16

1          Apple knew about Gjovik's complaints through conversations,
         emails, meeting notes, internal complaints, external complaints,
2          public interviews, and social media posts. Gjovik complained about
         possible violations of and issues related to:

3          . . . .

4          f.      Right-to-Know Protection [Cal. Labor Code § 6399.7].

5 TAC ¶ 221 (bracketed reference to § 6399.7 in the original).

6      It appears that, with the 4AC, Ms. Gjovik tried to restructure the pleading by "breaking

7 out" the HSITA claim as a separate claim. But notably, she still seems to consider the HSITA

8 claim as tied her § 6310 claim because she has titled the HSITA claim as "Violation of Cal. Lab.

9 C. § 6399.7 *via § 6310.*" 4AC at 52 (emphasis added). She has also alleged in the 4AC that "'[a]

10 violation of the provisions of this section *shall be a violation of the provisions of Section 6310.*'"

11 4AC ¶ 176 (quoting Cal. Lab. Code § 6399.7; emphasis added).

12      Given these circumstances, the Court rejects Apple's contention that Ms. Gjovik made an

13 amendment beyond the scope of the original TAC. Ms. Gjovik is not bringing a new standalone

14 claim based on § 6399.7; rather, she is still asserting a § 6310 claim that is predicated (in part) on

15 § 6399.7. (The Court acknowledges that Ms. Gjovik also has a separate § 6310 claim in the 4AC

16 which is pled as Count 3.)

17          b.     Hazardous Substances Present in the Workplace as a Result of Workplace

18               Operations

19      Apple argues next that, even if the Court were to consider the merits of the HSITA claim,

20 it fails for two reasons: (1) Ms. Gjovik has failed to make allegations about exposure to any

21 "hazardous substances," as that term is defined in the statute; and (2) Ms. Gjovik has failed to

22 allege that there was exposure "as a result of workplace operations." Cal. Lab. Code § 6362.

23      The Court addresses the issue in (2) first. As noted above, the HSITA provides in relevant

24 part as follows:

25          The provisions of this chapter apply to hazardous substances which
         are present in the workplace *as a result of workplace operations* in
26          such a manner that employees may be exposed under normal
         conditions of work or in a reasonably foreseeable emergency
27          resulting from workplace operations.

28 Cal. Lab. Code § 6362 (emphasis added). Here, Apple notes that the workplace is implicitly

United States District Court
Northern District of California

17

1   Stewart 1 where Ms. Gjovik's office was located. (In other words, the claim does not implicate

2   the ARIA factory since Ms. Gjovik did not work there.) Apple then argues that Ms. Gjovik has

3   failed to allege that there were hazardous substances in Stewart 1 "as a result of workplace

4   operations." This is because the vapors were allegedly present in Stewart 1 based on prior

5   contamination by prior tenants or owners, and not based on current workplace operations by

6   Apple. *See* Mot. at 21.

7        Apple's position relies on a reading of § 6362 which is arguably in some tension with the

8   purpose of HSITA. *See* Cal. Lab. Code § 6361(b) ("The Legislature . . . intends by this chapter to

9   ensure the transmission of necessary information to employees regarding the properties and

10   potential hazards of hazardous substances in the workplace."). On the other hand, the California

11   legislature could have specified that the statute applies to hazardous substances present in the

12   workplace *without* the qualifier "as a result of workplace operations," but did not. The fact that

13   the legislature chose to use the qualifier should not be discounted. In any event, the Court need

14   not resolve the matter definitively because, in her opposition brief, Ms. Gjovik failed to address

15   Apple's argument. The Court therefore deems any opposition waived. Although Ms. Gjovik is a

16   pro se litigant, she appears to have a J.D. and is thus aware of the consequences of a failure to

17   oppose. As a practical matter, the Court notes that its ruling here has a limited impact on Ms.

18   Gjovik's case; it simply prevents Ms. Gjovik from including the factual predicate that she

19   complained about employees' "right to know." This ruling does not entirely bar her from

20   asserting retaliation for reporting environmental hazards to governmental authorities.

21        Given the Court's ruling, it need not address Apple's argument in (1) above (*i.e.*, that Ms.

22   Gjovik failed to make allegations about exposure to any "hazardous substances," as that term is

23   defined in the HSITA).[8]

24        c.   <u>Summary</u>

25        Ms. Gjovik has alleged a violation of HSITA but only as a predicate to a violation of §

26

27

28

---

[8] At the hearing, Ms. Gjovik made several references to her sur-reply in support of her opposition to the motion to dismiss the HSITA claim. The Court has stricken the sur-reply, *see* Docket No. 98 (order), and therefore Ms. Gjovik cannot rely on it.

United States District Court
Northern District of California

18

1    6310. That particular § 6310 claim is dismissed with prejudice based on Ms. Gjovik's failure to

2    oppose a substantive argument made by Apple (*i.e.*, on exposure "resulting from workplace

3    operations").

4            3.    Count 5 – Claim for Violation of § 98.6

5            In Count 5, Ms. Gjovik alleges a violation of California Labor Code § 98.6. Section 98.6

6    provides in relevant part that

7            [a] person shall not discharge an employee or in any manner
              discriminate, retaliate, or take any adverse action against any
8            employee . . . because the employee . . . engaged in any conduct
              delineated in this chapter . . . or because the employee . . . has filed a
9            bona fide complaint or claim . . . under or relating to their rights that
              are under the jurisdiction of the Labor Commissioner . . . or because
10           of the exercise by the employee . . . on behalf of themselves or
              others of any rights afforded them.
11

12   Cal. Lab. Code § 98.6(a).

13           In its motion to dismiss, Apple makes a limited challenge to this claim. It argues only that,

14   to the extent Ms. Gjovik is seeking a civil penalty, *see id.* § 98.6(b)(3) (providing that, "[i]n

15   addition to other remedies available, an employer who violates this section is liable for a civil

16   penalty not exceeding ten thousand dollars ($10,000) per employee for each violation of this

17   section, to be awarded to the employee or employees who suffered the violation"); 4AC, Prayer

18   for Relief ¶ viii (asking for a civil penalty of $10,000 per employee for each violation of

19   California Labor Code § 98.6 and § 1102.5), the claim is time barred.

20           The analysis above in Part II.D.1.c is applicable here. That is, Apple is correct that, under

21   California Code of Civil Procedure § 340(a), there is a one-year limitations period for "[a]n action

22   upon a statute for a penalty or forfeiture, if the action is given to an individual, or to an individual

23   and the state, except if the statute imposing it prescribes a different limitation." Cal. Code Civ.

24   Proc. § 340(a). Because Ms. Gjovik was terminated in September 2021, she should have filed by

25   September 2022 if she wanted to include a civil penalty as relief. She did not do so. If Ms.

26   Gjovik is asking for equitable tolling, she currently has not pled enough to support such tolling.

27   The Court gives Ms. Gjovik leave to amend to make allegations on tolling.

28

United States District Court
Northern District of California

19

4. Count 6 – Claim for Violation of §§ 232, 232.5, 1101, and 1102

In Count 6, Ms. Gjovik asserts a claim for violation of various California Labor Code statutes:

- Section 232, which provides, *inter alia*, that an employer may not "[r]equire, as a condition of employment, that an employee refrain from disclosing the amount of his or her wages." Cal. Lab. Code § 232.

- Section 232.5, which provides, *inter alia*, that an employer may not "[r]equire, as a condition of employment, that an employee refrain from disclosing information about the employer's working conditions." *Id.* § 232.5.

- Section 1101, which provides, *inter alia*, that an employer shall not "make, adopt, or enforce any rule, regulation or policy . . . [c]ontrolling or directing, or tending to control or direct the political activities or affiliations of employees." *Id.* § 1101.

- Section 1102, which provides that "[n]o employer shall coerce or influence . . . his employees through or by means of threat of discharge or loss of employment to adopt or follow or refrain from adopting or following any particular course or line of political action or political activity." *Id.* § 1102.

Apple moves to dismiss Count 6 in part, as discussed below.

a. Beyond the Scope of Amendment

In the 4AC, Ms. Gjovik argues that Apple violated §§ 232.5, 1101, and 1102 because it retaliated against her for disclosing information about working conditions at Apple. Apple moves to dismiss the claims to the extent they are based on a specific factual predicate – *i.e.*, that it retaliated against her for making "statements to her [co-]workers about Palestinian and Muslim human rights, and [expressing] concerns about a recent article that was published alleging Apple is using Uyghur forced labor in its supply chain." 4AC ¶ 183. Apple argues that this factual predicate was never part of the prior TAC, and the Court did not give Ms. Gjovik leave to add new factual predicates to her claims.

Apple's argument has merit. And notably, in her opposition, Ms. Gjovik does not have any real response, simply arguing that she "may not have mentioned" such in "prior versions of

United States District Court
Northern District of California

United States District Court
Northern District of California

1   her complaint – but her prior complaints were also dedicated to several large complex claims she

2   ha[s] since dropped.  Further, Apple is fully aware of the Palestine activism, as Gjovik fought with

3   her managers and HR Business Partner over the matter in July 2021."  Opp'n at 14.

4          To the extent Ms. Gjovik asks for leave to amend to include this factual predicate, the

5   request is denied.  Ms. Gjovik has filed five pleadings to date.  She did not include the factual

6   predicate in her original complaint or any of her amended complaints until the 4AC.  Even if

7   Apple was aware of the Palestine activism, it was not given notice in the pleadings that she has a

8   legal claim against Apple based on that activism.  Ms. Gjovik shall not be permitted to continue to

9   modify her litigation positions on this issue.

10         Because the Court is not permitting an amendment here, it does not address Apple's

11  additional arguments that there are deficiencies with the §§ 232.5, 1101, and 1102 claims to the

12  extent they are based on the allegations related to Palestine, Muslim human rights, and Uyghur

13  forced labor.  The Court notes, however, that its ruling above does impact the §§ 1101 and 1102

14  claims as they seem to be based exclusively on allegations related to Palestine, Muslim human

15  rights, and Uyghur forced labor.  In other words, based on the Court's ruling above, Count 6 is

16  now only a claim for violation of §§ 232 and 232.5.

17                  b.      Claims Based on §232 and 232.5

18         Apple argues that the §§ 232 and 232.5 claims must be dismissed to the extent they are

19  based on allegations about disclosure of wages because Ms. Gjovik did not allege that "Apple

20  *knew* about the alleged social media posts disclosing her wages that she contends prompted

21  retaliation."  Mot. at 23 (emphasis added); *see also* 4AC ¶ 181 ("[Ms. Gjovik] shared her wages

22  on social media and discussed pay with her coworkers on social media in August 2021.").

23         In response, Ms. Gjovik suggests that she "posted on Twitter about wages at the same time

24  Defendant was admittedly surveilling her Twitter posts."  Opp'n at 14.  But she does not point to

25  any allegation that Apple admitted to surveilling or reading her Twitter posts.  In her 4AC, she

26  does suggest that Apple must have been surveilling her Twitter posts but again there are no

27  specific facts to support this allegation.

28         The Court therefore dismisses the claims to the extent the claims are based on allegations

1    about disclosure of wages. The only issue remaining is amendment. *See* Opp'n at 14 ("These

2    claims were not pled in detail in the 4AC because of the page limits and because they were not

3    challenged in a way that Plaintiff would expect they would be challenged now."). The Court gives

4    Ms. Gjovik leave to amend to correct this deficiency since Apple presented a new argument that it

5    never did before.

6              c.    <u>Summary</u>

7          The §§ 232.5, 1101, and 1102 claims shall not be based on the factual predicate related to

8    statements or expressions of concern about Palestine, Muslim human rights, and Uyghur forced

9    labor. Because the §§ 1101 and 1102 claims are based on that factual predicate alone, they are

10   dismissed in their entirety, and with prejudice. The §§ 232 and 232.5 claims – to the extent based

11   on disclosure of wages – shall be dismissed but with leave to amend (*i.e.*, so that Ms. Gjovik can

12   allege knowledge on the part of Apple of the wage disclosure).

13        5.    <u>Count 7 – Claim for Violation of § 96(k)</u>

14         In Count 7, Ms. Gjovik asserts a claim for violation of California Labor Code § 96(k). *See*

15   Cal. Lab. Code § 96(k) (providing that the Labor Commissioner "shall, upon the filing of a claim

16   therefor by an employee, . . . take assignments of . . . [c]laims for loss of wages as the result of

17   demotion, suspension, or discharge from employment for lawful conduct occurring during

18   nonworking hours away from the employer's premises").

19         In the prior TAC, Ms. Gjovik included an alleged § 96(k) violation but it was part of her

20   cause of action for violation of § 98.6. She has now in the 4AC pled a separate claim for violation

21   of § 96(k) but she has also asserted that this claim is "via § 98.7." Section 98.7 states: "The

22   complainant may, after notification of the Labor Commissioner's determination to dismiss a

23   complaint, bring an action in an appropriate court, which shall have jurisdiction to determine

24   whether a violation occurred, and if so, to restrain the violation and order all appropriate relief to

25   remedy the violation." Cal. Lab. Code § 98.7(d)(1).

26         Apple argues that the § 96(k) claim should be dismissed because there is no such thing as a

27   private right of action for violation of § 96(k) – *i.e.*, the claim cannot be brought as a "standalone."

28   Mot. at 24. Apple is correct that there is no such thing as a standalone § 96(k) claim. *See*

United States District Court
Northern District of California

22

1   *Fleeman v. County of Kern*, No. 1:20-cv-00321-NONE-JLT, 2021 U.S. Dist. LEXIS 64294, at \*16

2   (E.D. Cal. Mar. 31, 2021) (noting that "both state and district courts alike have determined § 96(k)

3   provides only a procedure for the Labor Commissioner and does not provide for a private right of

4   action"); *Grinzi v. San Diego Hospice Corp.*, 120 Cal. App. 4th 72, 84 (2004) (stating that

5   "section 96, subdivision (k), 'does not set forth an independent public policy that provides

6   employees with any substantive rights, but rather, merely establishes a procedure by which the

7   Labor Commissioner may assert, on behalf of employees, recognized constitutional rights'"). In

8   spite of these authorities, Ms. Gjovik still takes the position that there *may* be a private right of

9   action under § 96(k), but she offers no real support for the position other than public policy.

10   That being said, in her complaint, Ms. Gjovik has suggested that the § 96(k) claim is really

11   being brought pursuant to § 98.7, which as noted above provides as follows: "The complainant

12   may, after notification of the Labor Commissioner's determination to dismiss a complaint, bring

13   an action in an appropriate court, which shall have jurisdiction to determine whether a violation

14   occurred, and if so, to restrain the violation and order all appropriate relief to remedy the

15   violation." Cal. Lab. Code § 98.7(d)(1). Furthermore, in her opposition, she has returned to §

16   98.6 as a predicate for the § 96(k) violation (as asserted in the TAC). *See* Opp'n at 17 (arguing

17   that "[t]here is probably a private action for 96(k) via 98.6"). The latter argument has merit. *See*

18   *Grinzi*, 120 Cal. 4th at 85 ("Section 98.6, subdivision (a) prohibits, in relevant part,

19   termination because 'the employee . . . engaged in any conduct delineated in this chapter,

20   including the conduct described in subdivision (k) of Section 96. . . .'").

21   In light of the above, the Court does not view the § 96(k) claim as a true stand-alone claim.

22   Rather, it construes the claim as a *§ 98.6 claim* predicated on § 96(k) (*i.e.*, consistent with what

23   Ms. Gjovik pled in the TAC).

24   E.   <u>Claims Related to Environmentally Unsafe Conditions</u>

25   The next group of claims brought by Ms. Gjovik are claims that relate to environmentally

26   unsafe conditions, specifically, at the ARIA factory (located close to an apartment where Ms.

27   Gjovik lived for a time).

28   •   In Count 11, Ms. Gjovik alleges that the ARIA factory is a private nuisance.

United States District Court
Northern District of California

23

1      • In Count 12, Ms. Gjovik alleges that there is strict liability because ultrahazardous

2          activities are conducted at the ARIA factory.

3      • Finally, in Count 13, Ms. Gjovik alleges that Apple intentionally inflicted

4          emotional distress on her by "deliberately vent[in]g deadly substances on [her] and

5          then deliberately ma[king] false statements to conceal [its] actions."  4AC ¶ 241.

6          Ms. Gjovik maintains that the severe emotional distress she has suffered includes

7          "the fear of developing cancer."  4AC ¶ 243.

8      1.      Time Bar

9          Apple argues that all of the claims – which are tied to environmentally unsafe conditions at

10    the ARIA factory – are time barred.  Apple maintains that each of the claims has a two-year

11    limitations period pursuant to California Code of Civil Procedure § 340.8.  That statute provides:

> In any civil action for injury or illness based upon exposure to a
> hazardous material or toxic substance, the time for commencement
> of the action shall be no later than either two years from the date of
> injury, or two years after the plaintiff becomes aware of, or
> reasonably should have become aware of, (1) an injury, (2) the
> physical cause of the injury, and (3) sufficient facts to put a
> reasonable person on inquiry notice that the injury was caused or
> contributed to by the wrongful act of another, whichever occurs
> later.

17    Cal. Code Civ. Proc. § 340.8(a).  Section 340.8 essentially "incorporates the discovery rule into

18    the statute of limitations for toxic torts."[9]  *Rosas v. BASF Corp.*, 236 Cal. App. 4th 1378, 1390

19    (2015).  Apple then argues that, based on the allegations in the 4AC, Ms. Gjovik was aware of

20    each of the elements above, or reasonably should have become aware of such, by March 2021 *at

21    the latest*.  Apple recites as follows:

22      • "Plaintiff alleges that she became severely ill in February 2020."  Mot. at 13; *see

23

_____

24    [9] Ms. Gjovik suggests that § 340.8 is not the controlling statute on the limitations period but rather
§ 338(b) and/or § 335.1.  *See* Opp'n at 21; *see also* Cal. Code Civ. Proc. § 338(b) (providing for a
25    three-year limitations period for "[a]n action for trespass upon or injury to real property"); *id.* §
335.1 (providing for a two-year limitations period for "[a]n action for assault, battery, or injury to,
26    or for the death of, an individual caused by the wrongful act or neglect of another").  Ms. Gjovik's
reliance on § 338(b) is not on point as she is not claiming injury to real property (as opposed to
27    personal property). *See, e.g.*, 4AC, Prayer for Relief ¶ vi (referring to "cost to replace clothing and
other chattel property that were destroyed by Apple's tortfeasing").  As for her citation to § 335.1,
28    it has the same two-year limitations period as § 340.8.

24

United States District Court
Northern District of California

1     *also* 4AC ¶ 31 (alleging that Ms. Gjovik moved into her apartment on Scott

2     Boulevard in February 2020 and "quickly became severely ill").

3   •  "She further alleges that she discovered 'elevated levels' of chemicals in her

4     apartment in September 2020 and that certain of the chemicals she believes were in

5     her apartment are carcinogenic." Mot. at 13; *see also* 4AC ¶¶ 34-35 (alleging that

6     Ms. Gjovik "discovered elevated levels of volatile organic compounds in her

7     indoor air" in September 2020 and that she thereafter "sought out multiple

8     occupational and environmental exposure doctors, who told [her] that all of her

9     symptoms were consistent with solvent and other chemical exposures"; adding that,

10    "[a]fter Gjovik discovered her medical issues at the apartment were due to a

11    chemical emergency, [she] quickly filed complaints" with the City of Santa Clara,

12    the California EPA and other state agencies, and the EPA); 4AC ¶ 40 (alleging that

13    Ms. Gjovik, hired an industrial hygienist to test the indoor air in her apartment in

14    September 2020; results showed, *e.g.*, the presence of Toluene); 4AC ¶ 242

15    (alleging that Apple exposed Ms. Gjovik to carcinogens such as "TCE, Toluene,

16    Arsine, and Vinyl Chloride).

17   •  "She further asserts that she concluded in September 2020 that 'her medical issues

18    at the apartment were due to a chemical emergency.'" Mot. at 13; *see also* 4AC ¶¶

19    34-35 (alleging that Ms. Gjovik "discovered elevated levels of volatile organic

20    compounds in her indoor air" in September 2020 and that she thereafter "sought out

21    multiple occupational and environmental exposure doctors, who told [her] that all

22    of her symptoms were consistent with solvent and other chemical exposures";

23    adding that, "[a]fter Gjovik discovered her medical issues at the apartment were

24    due to a chemical emergency, [she] quickly filed complaints" with the City of

25    Santa Clara, the California EPA and other state agencies, and the EPA); 4AC ¶ 41

26    (alleging that, in September 2020, Ms. Gjovik "set up additional air monitors to

27    observe the levels of VOCs in her apartment" – "though she was not aware of the

28    factory exhaust at the time").

United States District Court
Northern District of California

- "She even alleges that she wrote and published an article on March 26, 2021 'about her chemical exposure with the air around ARIA' entitled 'I thought I was dying: My apartment was built on toxic waste' – clearly indicating that she suspected as of that date that her alleged injuries had a tortious cause." Mot. at 13; *see also* 4AC ¶ 57 (referring to article published in the SF Bay View newspaper and adding that, after the article was published, "[m]ore victims and witnesses promptly came forward," some being Apple employees).

- "She moved out of [her] apartment in October 2020." Mot. at 13; *see also* 4AC ¶ 8 (alleging that Ms. Gjovik "held a leasehold . . . in February 2020 through October 2020").

According to Apple, if Ms. Gjovik knew or should have been aware that **(1)** she was ill (an injury) **(2)** due to chemical exposure (the physical cause) **(3)** caused or contributed to by another (someone's toxic waste) – and all by March 2021 at the latest when she published her article – then she should have filed suit by March 2023, but she did not file suit until September 2023. Apple adds that the fact that Ms. Gjovik allegedly did not know the *identity* of the wrongdoer until 2023 is irrelevant because the California Supreme Court has held as follows:

> While ignorance of the existence of an injury or cause of action may delay the running of the statute of limitations until the date of discovery, the general rule in California has been that ignorance of the identity of the defendant is not essential to a claim and therefore will not toll the statute. As we have observed, "the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her." Aggrieved parties generally need not know the exact manner in which their injuries were "effected, nor the identities of all parties who may have played a role therein."

*Bernson v. Browning-Ferris Indus.*, 7 Cal. 4th 926, 932 (1994); *see also Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005) (stating that "[t]he discovery rule . . . allows accrual of the cause of action even if the plaintiff does not have reason to suspect the defendant's identity . . . because the identity of the defendant is not an element of a cause of action"; adding that, once a plaintiff is aware of a cause of action, "he normally has sufficient opportunity, within the applicable limitations period, to discover the identity") (internal quotation marks omitted).

26

1    In evaluating Apple's argument, the Court must take into account that § 340.8 effectively

2    "incorporates the discovery rule into the statute of limitations for toxic torts." *Rosas*, 236 Cal.

3    App. 4th at 1390.

> 4    [U]nder the delayed discovery rule, a cause of action accrues and the
> 5    statute of limitations begins to run when the plaintiff has reason to
>      suspect an injury and some wrongful cause, **unless** the plaintiff
> 6    pleads and proves that a reasonable investigation at that time would
>      not have revealed a factual basis for that particular cause of action.
> 7    In that case, the statute of limitations for that cause of action will be
>      tolled until such time as a reasonable investigation would have
>      revealed its factual basis.
> 8

9    *Fox*, 35 Cal. 4th at 803 (emphasis added).

10    Based on the allegations in the complaint, the Court agrees with Apple that the statute of

11    limitations began to run at the latest by March 2021: at that time, she knew she was injured and

12    she suspected that her injury was the result of someone else's wrongdoing – as reflected in her

13    article published at the time.[10] *See Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110 (1988) (stating

14    that, "[u]nder the discovery rule, the statute of limitations begins to run when the plaintiff suspects

15    or should suspect that her injury was caused by wrongdoing, that someone has done something

16    wrong to her"; "[s]o long as a suspicion exists, it is clear that the plaintiff must go find the facts"

17    and "cannot wait for the facts to find her").

18    However, as indicated above, if Ms. Gjovik can

> 19    plead[] and prove[] that a reasonable investigation at that time
> 20    would not have revealed a factual basis for that particular cause of
>      action . . . . , the statute of limitations for that cause of action will be
> 21    tolled until such time as a reasonable investigation would have
>      revealed its factual basis.

22    *Fox*, 35 Cal. 4th at 803 (emphasis added); *cf. id.* at 808 (stating that "a potential plaintiff who

23    suspects that an injury has been wrongfully caused must conduct a reasonable investigation of all

24    potential causes of that injury").

25    In the case at bar, Ms. Gjovik would have a factual basis for her environmental claims

26

27    _____

28    [10] At the time that she wrote her article in March 2021, it seems Ms. Gjovik believed that her
     apartment was built on a toxic site.  See https://sfbayview.com/2021/03/i-thought-i-was-dying-my-
     apartment-was-built-on-toxic-waste/ (last visited 9/30/2024).

United States District Court
Northern District of California

1    against Apple once she knew or suspected that the ARIA factory was the source of the chemical

2    exposure.  Apple correctly argues that a plaintiff need not know of a defendant's identity in order

3    for the statute of limitations to begin to run.  However, Ms. Gjovik still had to know or suspect

4    that the cause of her injury was chemical exposure emanating from the factory close to her

5    apartment – as opposed to her apartment being located on a toxic site, as she believed at the time

6    she wrote her article in March 2021.  *Cf. Fox*, 35 Cal. 4th at 813 (noting that, "if a plaintiff's

7    reasonable and diligent investigation discloses only one kind of wrongdoing when the injury was

8    actually caused by tortious conduct of a wholly different sort, the discovery rule postpones accrual

9    of the statute of limitations on the newly discovered claim").

10        The Court also acknowledges that a plaintiff does not have to know of "the specific causal

11   mechanism by which he or she has been injured" in order for the statute of limitations to run –

12   *e.g.*, "the precise manner in which a wrongdoer was negligent."  *Knowles v. Superior Ct.*, 118 Cal.

13   App. 4th 1290, 1298 (2004).  But there is a difference between a specific causal mechanism and

14   the (purported) cause itself.  Even if Ms. Gjovik did not have to know the precise manner in which

15   the factory (allegedly) leaked chemicals into the environment, she still had to know or suspect that

16   it was the factory responsible for the incidental chemical exposure at her home, a site apart from

17   the factory.  *Cf. Rosas*, 236 Cal. App. 4th at 1391-92 (noting that, in a prior case, where plaintiff

18   suffered injuries caused by mold exposure, delayed discovery rule was rejected; "[t]here was

19   undisputed evidence that the plaintiff experienced severe bouts of asthma and was hospitalized in

20   the summer of 1984, and on or before October 1984, plaintiff had her condominium unit tested for

21   mold contamination, *retained a microbiologist to pinpoint the source of the mold*, and her husband

22   sent a letter to the defendant stating that the flooding caused mold which caused the plaintiff to

23   suffer extreme allergic reactions a year earlier") (emphasis added).

24        In the 4AC, Ms. Gjovik has alleged that she did not know about the semiconductor

25   fabrication activities at ARIA until February 2023.  *See* 4AC ¶ 149.  The problem is that she has

26   not pled any "facts to show (1) the . . . manner of discovery *and* (2) the inability to have made

27   earlier discovery despite reasonable diligence."  *Fox*, 35 Cal. 4th at 808.  Ms. Gjovik attempted to

28   correct this deficiency with her sur-reply, but a sur-reply is not a pleading and, in any event, it was

1   stricken.  *See* Docket No. 98 (order).

2       That the Court struck the sur-reply does not preclude the Court from giving Ms. Gjovik the

3   opportunity to amend to correct the deficiency in her pleading.  Apple contends that amendment

4   should not be permitted because it would be a futile exercise.  Specifically, Apple asserts that

5   certain allegations Ms. Gjovik made in her prior second amended complaint ("SAC") are judicial

6   admissions demonstrating that amendment would be futile.  *Cf. In re Bang Energy Drink Mktg.*

7   *Litig.*, No. 18-cv-05758-JST, 2021 U.S. Dist. LEXIS 146977, at *10 (N.D. Cal. June 30, 2021)

8   (indicating that "factual allegations in a prior complaint are 'judicial admissions,' and 'when the

9   party fails to provide a credible explanation for its "error," the [c]ourt may disregard the

10   contradictory pleading").

11       The Court has reviewed the portions of the SAC identified by Apple.  The allegations in

12   the SAC do reflect that Ms. Gjovik knew about the ARIA factory in September 2020 and that, at

13   that time, she seems to have considered it as a possible source of the chemical exposure –

14   specifically, because "'[i]t was registered with the EPA for Toxic Releases (TRI).'"  SAC ¶ 185.

15   However, Ms. Gjovik goes on to allege that "[t]he prior TRI registration was for a different

16   company and Apple did not submit their first filing until mid-2021."  SAC ¶ 185.  The allegations

17   in the SAC, therefore, do not establish futility of amendment.  Accordingly, the Court shall allow

18   Ms. Gjovik to amend to address the time-bar problem.[11]

19       2.   <u>Count 12 – Claim for Ultrahazardous Activities</u>

20       Apple contends that, even if there is no time bar, Count 12 at the very least should still be

21   dismissed because Ms. Gjovik has failed to sufficiently plead ultrahazardous activities (thus giving

22   rise to strict liability).

23       In its prior order on the TAC, the Court held that Ms. Gjovik's claim that there were

24   ultrahazardous activities at ARIA survived only to the extent she had "made allegations that there

25   are chemicals used for which there is no safe level of exposure, thus implying they are absolutely

26

27                      

[11] To the extent Ms. Gjovik asserts that there is no time-bar problem because the ARIA factory is a continuing nuisance, that argument lacks merit.  Ms. Gjovik moved out of her apartment near the ARIA factory in October 2020.

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1  prohibited under any circumstance." Docket No. 73 (Order at 29). In the pending motion to

2  dismiss, Apple argues that, "for the first time," Ms. Gjovik identifies the "specific statutes on

3  which she relies for the assertion that certain chemicals are 'absolutely prohibited' – yet under the

4  plain language of those statutes, the chemicals at issue are not 'absolutely prohibited.'" Mot. at

5  17-18. *See, e.g.*, 17 Cal. Code Regs. § 93000 (providing that "[e]ach substance identified in this

6  section has been determined by the State Board to be a toxic air contaminant as defined in Health

7  and Safety Code section 39655" but finding that, for each substance, "there is not sufficient

8  available scientific evidence to support the identification of a threshold exposure level").

9      In her opposition, Ms. Gjovik argues that the chemicals at issue could establish that Apple

10  engaged in ultrahazardous activities because they are poisonous and there are multiple

11  considerations in whether an activity is ultrahazardous – *e.g.*, "[a]n activity might be reasonably

12  safe if performed in an isolated area, yet involve an unreasonable risk of harm if conducted in a

13  highly populated area." Opp'n at 25. The problem for Ms. Gjovik is that she previously claimed

14  ultrahazardous activity because Apple used chemicals for which there is *no* safe level of exposure.

15  She is now backtracking from that position. The Court holds Ms. Gjovik to her prior position.

16  Because Ms. Gjovik now essentially concedes that the chemicals at issue are not absolutely

17  prohibited, the Court dismisses the claim for ultrahazardous activities, and with prejudice.

18      3.      Count 13 – Claim for IIED

19      Count 13 is the claim for intentional infliction of emotional distress ("IIED").

> The elements of the tort of intentional infliction of emotional
> distress are: "'(1) extreme and outrageous conduct by the defendant
> with the intention of causing, or reckless disregard of the probability
> of causing, emotional distress; (2) the plaintiff's suffering severe or
> extreme emotional distress; and (3) actual and proximate causation
> of the emotional distress by the defendant's outrageous conduct. . . .'
> Conduct to be outrageous must be so extreme as to exceed all
> bounds of that usually tolerated in a civilized community." The
> defendant must have engaged in "conduct intended to inflict injury
> or engaged in with the realization that injury will result."

26  *Christensen v. Superior Court*, 54 Cal. 3d 868, 903 (1991).

27      For Count 13, Apple argues that, even if there is no time bar, the claim is deficient because

28  Ms. Gjovik has failed to allege that Apple's conduct was "directed at [her] or undertaken with

<div align="center">30</div>

1    knowledge of [her] presence and [exposure to the chemicals]." Mot. at 14 (internal quotation

2    marks omitted). In *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1002 (1993), the

3    California Supreme Court stated that, to establish an IIED claim, the conduct must be not only

4    intentional and outrageous but also "directed at the plaintiff, or occur[ring] in the presence of a

5    plaintiff of whom the defendant is aware[;] [t]he requirement that the defendant's conduct be

6    directed primarily at the plaintiff is a factor which distinguishes intentional infliction of emotional

7    distress from the negligent infliction of such injury." *Id.* at 1002 (internal quotation marks

8    omitted).

9        *Potter* supports Apple's position. Notably, *Potter* took into account a possible "finding

10   that [the defendant] had to have realized that its misconduct was almost certain to cause severe

11   emotional distress to any person who might foreseeably consume the water and subsequently

12   discover the facts." *Id.* at 1003. Nevertheless, the Court held this was not good enough to support

13   a claim for IIED:

14           because knowledge *of these particular plaintiffs* is lacking.

15           This conclusion is consistent with the result reached in *Christensen*,
             *supra*, 54 Cal.3d 868, itself. There we held that, even though it was
16           alleged that defendants' conduct in mishandling the remains of
             deceased persons was intentional and outrageous and was
17           substantially certain to cause extreme emotional distress to relatives
             and close friends of the deceased, the plaintiffs' cause of action for
18           intentional infliction of emotional distress was not sufficiently
             supported where there was no allegation that the defendants'
19           misconduct was directed primarily at plaintiffs, or that it was
             calculated to cause them severe emotional distress, or that it was
20           done with knowledge of their presence and with a substantial
             certainty that they would suffer severe emotional injury.

21

22   *Id.* (emphasis in original).

23       Accordingly, the Court dismisses the IIED claim. The Court shall give Ms. Gjovik leave

24   to amend here because Apple has made a new argument in challenging the claim. That being said,

25   the Court notes that it is extremely skeptical that Ms. Gjovik could, in good faith and in

26   compliance with her Rule 11 obligations, allege that Apple directed its conduct at her specifically

27   or with knowledge of her presence specifically, and that its conduct was calculated to cause her

28   severe emotional distress.

31

1      4.     Summary

2          Count 12 is dismissed with prejudice. Counts 11 and 13 are dismissed but with leave to

3   amend. For Count 11, there is the time-bar problem. For Count 13, there is both the time-bar

4   problem and a merits problem. Any amendment will have to overcome these problems.

5   F.     Remaining Claims

6          1.     Count 9 – Claim Related to Privacy Violation

7          Count 9 is Ms. Gjovik's claim for violation of § 17200.

8          In its prior order, the Court noted that the claim (as pled in the TAC) seemed

9              to be based on three factual predicates: (1) Apple's coercing
                employees to provide personal data for Apple's commercial use,
10             such as with the Gobbler application, *see* TAC ¶ 255 (alleging that
                no consent was obtained or compensation provided); (2) Apple's
11             coercing employees to be a part of invasive studies, *see* TAC ¶ 258;
                and (3) Apple's establishment of a health care clinic, called AC
12             Wellness, which it then used improperly. *See* TAC ¶ 259. (To be
                frank, the Court does not understand the allegations made with
13             respect to (3).)

14   Docket No. 73 (Order at 45).

15         Apple argued that Ms. Gjovik lacked statutory standing to proceed with the claim because

16  she failed to allege that she lost money to Apple which Apple should disgorge. *See* Cal. Bus. &

17  Prof. Code § 17203 (providing that a "court may make such orders or judgments . . . as may be

18  necessary to restore to any person in interest any money or property, real or personal, which may

19  have been acquired by means of such unfair competition"); *see also Shersher v. Superior Court*,

20  154 Cal. App. 4th 1491, 1497-98 (2007) (noting that the California Supreme Court has "held that

21  the only remedy expressly authorized by section 17203 was restitution to individuals who had an

22  ownership interest in money paid to the defendants; there was nothing, either in the express

23  language of the statute or in its legislative history, to indicate that the legislature intended to

24  authorize a court to 'order a defendant to disgorge all profits to a plaintiff who does not have an

25  ownership interest in those profits'"). The Court agreed with Apple that disgorgement would not

26  be an available remedy but stated that Apple had failed to explain why Ms. Gjovik lacked standing

27  to pursue injunctive relief. The Court added that it was giving Ms. Gjovik leave to amend to

28  clarify her claim based on AC Wellness. *See* Docket No. 73 (Order at 45-46).

*United States District Court*
*Northern District of California*

32

United States District Court
Northern District of California

1    In the pending motion, Apple moves to dismiss the § 17200 claim as repleaded in the 4AC,

2    even though Ms. Gjovik now seeks only injunctive relief and has dropped allegations related to

3    AC Wellness.  *See, e.g.*, 4AC ¶¶ 205-06 (asking the Court to order Apple "to disgorge unlawful

4    data and the fruit of the poisoned data" and to prohibit Apple "from using personal employee data

5    in for-profit product development"); *see also* Opp'n at 18 (stating that "Plaintiff does not need

6    economic restitution – and instead requests disgorgement (deletion) of data and software – not

7    money").  Apple has made multiple arguments – that Ms. Gjovik has made an amendment beyond

8    the scope permitted; that she lacks statutory standing to proceed with the claim; that she also lacks

9    Article III standing; that the claim is time barred; and that the relief sought is improper.  In her

10   opposition, Ms. Gjovik addresses at most the standing issues.  Because Ms. Gjovik has failed to

11   address the remaining arguments made by Apple, the Court deems any opposition waived, and

12   therefore dismissal of the claim is appropriate.

13   The Court also concludes, based on its independent review, that, at the very least, Apple's

14   arguments on the time bar and improper relief have merit.  Regarding the time bar, there is a four-

15   year limitations period under California Business & Professions Code § 17208.  Apple notes that,

16   in her prior pleading (the SAC), Ms. Gjovik alleged that Apple "coerced her to provide personal

17   data in August 2017, nearly seven years before she introduced this cause of action in March

18   2024."  Mot. at 8; *see also* SAC ¶¶ 136-42 (alleging that, in August 2017, an Apple engineering

19   manager emailed a list of Apple employees, including Ms. Gjovik, about a Gobbler user study and

20   that Ms. Gjovik was coerced to use the Gobbler application to provide biometrics and videos at a

21   supposed social event).  Ms. Gjovik cannot avoid her own allegations even if these allegations

22   were made in a prior pleading.  *See Bang Energy Drink*, 2021 U.S. Dist. LEXIS 146977, at *10

23   (N.D. Cal. June 30, 2021) (indicating that "factual allegations in a prior complaint are 'judicial

24   admissions,' and 'when the party fails to provide a credible explanation for its "error," the [c]ourt

25   may disregard the contradictory pleading'").

26   Ms. Gjovik could have, but did not, contend there is no time bar because there is some

27   kind of continuing accrual, *i.e.*, because Gobbler is still on her personal account.  *See Aryeh v.*

28   *Canon Bus. Solns., Inc.*, 55 Cal. 4th 1185, 1198 (2013) (noting that, under the continuing accrual

33

1   theory, "recurring invasions of the same right can each trigger their own statute of limitations").

2   Any such argument has been waived.

3          As for improper relief, Apple argues that, at best, Ms. Gjovik can only obtain relief for

4   herself and not others, especially as she has not pled a class action.  The Court agrees.  Section

5   17203 provides in relevant part:

6               Any person may pursue representative claims or relief on behalf of
               others only if the claimant meets the standing requirements of
7               Section 17204 *and* complies with Section 382 of the Code of Civil
               Procedure, but these limitations do not apply to claims brought
8               under this chapter by the Attorney General, or any district attorney,
               county counsel, city attorney, or city prosecutor in this state.
9
    Cal. Bus. & Prof. Code § 17203 (emphasis added).  Section 382 in turn provides:
10
11              If the consent of any one who should have been joined as plaintiff
               cannot be obtained, he may be made a defendant, the reason thereof
12              being stated in the complaint; and when the question is one of a
               common or general interest, of many persons, or when the parties
13              are numerous, and it is impracticable to bring them all before the
               court, one or more may sue or defend for the benefit of all.
14
    Cal. Code Civ. Proc. § 382; *see also Woods v. Am. Film Instit.*, 72 Cal. App. 5th 1022, 1028-29

15  (2021) ("A lawsuit may proceed as a class action 'when the question is one of a common or

16  general interest, of many persons, or when the parties are numerous, and it is impracticable to

17  bring them all before the court.'  (Code Civ. Proc., § 382.)").  The California Supreme Court has

18  noted:

19              The voters restricted private enforcement of the UCL in 2004, by
               approving Proposition 64. . . . Proposition 64 . . . required that
20              representative actions by private parties must "compl[y] with
               Section 382 of the Code of Civil Procedure."  Therefore, a private
21              plaintiff must file a class action in order to represent the interests of
               others.
22
    *Zhang v. Superior Court*, 57 Cal. 4th 364, 372 (2013).

23
           Accordingly, the Court dismisses the § 17200 claim because, even if Ms. Gjovik has
24
    standing (both statutory and Article III), she has failed to address the other arguments made by
25
    Apple.  Apple's arguments on the time bar and improper relief also have merit.
26
           2.    Count 10 – Claim Related to Post-Termination Conduct
27
    Count 10 is another claim for IIED.  In Count 10, Ms. Gjovik largely targets post-
28

United States District Court
Northern District of California

34

1 | termination conduct by Apple employees:

> [S]everal named Apple employees posted on social media, under
> their own names, claiming Gjovik's claims were bogus, that Gjovik
> was a liar and bad actor, and that Gjovik deserved the harm Apple
> was causing her. Five named employees took an active role in
> posting defamatory and harassing things about Gjovik, contacting
> Gjovik's friends and associates to speak negatively about Gjovik
> and urge them not to associate with her, and to create negative
> rumors about Gjovik in order to ostracize and alienate her.

4AC ¶ 210.

> Ms. Gjovik also makes more serious claims, asserting that Apple engaged in

> witness intimidation, witness retaliation, burglary, extortion, threats,
> and surveillance. Apple stalked Gjovik in California and New Yok,
> sending people to sit outside her apartment, follow her around, and
> take photos/videos of her inside her home from outside the
> windows. Apple surveilled Gjovik and even bugged her property,
> including, apparently, directly intercepting her home internet.

> . . . . Apple repeatedly broke into Gjovik's home in at least the state
> of California and Commonwealth of Massachusetts, but probably
> also the state of New York.

4AC ¶¶ 215-16. Ms. Gjovik further asserts that Apple "handle[d] [her dog] during one of the

break-ins, leaving a strong odor of cigarettes on his little body," "sent her possessions to her in a

box with broken glass and threatened it could contain a severed head," "repeatedly threatened to

'ruin' and 'destroy' her, and even sent her emails pretending to be government employees

threatening her to stop speaking about Apple's chemical leaks." 4AC ¶¶ 217-28.

In its motion to dismiss, Apple argues that some of the conduct is not actionable as it is not

outrageous – *e.g.*, Ms. Gjovik being called a liar. As for the more serious conduct, Apple argues

that Ms. Gjovik's allegations are too conclusory, not giving enough information about how, *e.g.*,

Apple stalked her or broke into her home, who at Apple engaged in this conduct (or how Ms.

Gjovik knew that it was an Apple employee), and when. The Court agrees with both of Apple's

criticisms. Being called, *e.g.*, a liar is, as a matter of law, not outrageous conduct sufficient to

support a claim for IIED. *See King v. Facebook, Inc.*, 572 F. Supp. 3d 776, 786 (N.D. Cal. 2021)

(noting that "[l]iability for IIED does not extend to mere insults, indignities, threats, annoyances,

petty oppressions, or other trivialities"); *Yurick v. Superior Court*, 209 Cal. App. 3d 1116, 1124-

25, 1129 (1989) (stating that "[defendant's] alleged conduct [which included calling plaintiff a

35

United States District Court
Northern District of California

1    liar], while objectively offensive and in breach of common standards of civility, was not so

2    egregiously outside the realm of civilized conduct as to give rise to actionable infliction of mental

3    distress").  To the extent Ms. Gjovik claims that Apple has engaged in more serious conduct, there

4    must be some specificity about what exactly the wrongdoing was (or Apple cannot fairly defend

5    itself).  Ms. Gjovik must also provide specific, concrete facts establishing a plausible basis for her

6    belief that the wrongdoing she generally describes was in fact conducted by Apple.  *See Iqbal*, 556

7    U.S. at 678 (stating that a complaint is insufficient "if it tenders 'naked assertion[s]' devoid of

8    'further factual enhancement'").  Specificity is particularly important where the claims on their

9    face strain plausibility.  *Cf. Lindblad v. Livermore Chamber of Commerce*, No. 21-cv-06464-

10   WHO, 2021 U.S. Dist. LEXIS 237998, at *1 (N.D. Cal. Dec. 13, 2021) (noting that "[a] court may

11   dismiss a claim as 'clearly baseless,' including allegations that are 'fanciful' or 'fantastic'")

12   (quoting *Denton v. Hernandez*, 504 U.S. 25 (1992)).  Furthermore, if Ms. Gjovik is arguing that

13   Apple should be held liable because the misconduct was carried out by an Apple employee, Apple

14   is not automatically liable for the intentional torts of its employees.  As the Court noted in its prior

15   order, an employer can be held vicariously liable for the torts of its employees only if they were

16   committed within the scope of the employment; an employer will not be held liable if an employee

17   inflicts injury out of personal malice not engendered by the employment.  *See* Docket No. 73

18   (Order at 32-33); *see also Alma W. v. Oakland Unified Sch. Dist.*, 123 Cal. App. 3d 133, 142-43

19   (1981) (stating that "[t]he test is not whether it is foreseeable that one or more employees might at

20   some time act in such a way as to give rise to civil liability, but rather, whether the employee's act

21   is foreseeable in light of the duties the employee is hired to perform") (emphasis in original).

22         The only issue remaining is whether Ms. Gjovik should be given leave to amend.  The

23   Court shall not permit Ms. Gjovik to base an IIED claim simply because she was allegedly called

24   a liar (or other similar conduct).  Such a claim would be futile as that conduct is not, as a matter of

25   law, outrageous.  However, the Court shall allow Ms. Gjovik to amend to the extent she has

26   implicated more serious misconduct (*e.g.*, stalking, breaking into her home, etc.) because Apple's

27   challenge is a new one not previously made before.  *See* Docket No. 73 (Order at 42) (expressing

28   confusion that Ms. Gjovik made allegations about bugging, etc. but, at that time, did not base her

36

United States District Court
Northern District of California

1    IIED claim in her TAC on these allegations).  That being said, the Court reiterates statements

2    made in its prior order: even though an employer can be held vicariously liable for the torts of its

3    employees committed within the scope of the employment (even if willful and without the

4    authorization of the employer), "an employer will not be held liable for an intentional tort that did

5    not have a *causal nexus* to the employee's work.  For instance, [i]f an employee inflicts an injury

6    out of personal malice, not engendered by the employment, the employer is not liable."  Docket

7    No. 73 (Order at 33) (emphasis added; internal quotation marks omitted).  "Respondeat superior

8    liability should apply only to the type of injuries that as a practical matter are sure to occur in the

9    conduct of the employer's enterprise.  The employment, in other words, must be such as

10   predictably to create the risk employees will commit intentional torts of the type for which liability

11   is sought."  Docket No. 73 (Order at 33) (internal quotation marks omitted).  If Ms. Gjovik does

12   amend Count 10, she must allege specific concrete facts to support a basis for respondeat superior

13   liability.  The Court has strong concerns as to whether Ms. Gjovik can, in good faith, allege a basis

14   for respondeat superior liability.

15          3.      Count 8 – Claim for Breach of the Implied Covenant

16          Finally, in Count 8, Ms. Gjovik asserts a claim for breach of the implied covenant of good

17   faith and fair dealing.

18          In its prior order, the Court allowed the claim to proceed to the following extent:

19              Apple does not seem to have taken into account the suggestion in
                the TAC (albeit, not a clear one) that Apple timed her firing her to
20              deprive her of a performance bonus. *See Guz*, 24 Cal. 4th at 353
                n.18 (stating that "the covenant prevents a party from acting in bad
21              faith to frustrate the contract's actual benefits" – *e.g.*, "the covenant
                might be violated if termination of an at-will employee was a mere
22              pretext to cheat the worker out of another contract benefit to which
                the employee was clearly entitled, such as compensation already
23              earned") (emphasis in original).

24   Docket No. 73 (Order at 41).

25          In its motion, Apple's main argument is that the claim should be dismissed because the

26   implied covenant inherent in all contracts simply prevents a contracting party from unfairly

27   frustrating the other party's right to receive the benefits of the contract, and, here, Ms. Gjovik has

28   not identified "any contract obligating Apple to pay out [performance] bonuses [including]

37

1    irrespective of whether an employee was terminated prior to payment." Mot. at 25; *see also* 4AC

2    ¶ 190 (simply alleging that "Apple breached the covenant by intentionally terminating Gjovik [in

3    September 2021] when her annual performance review was due, which would have been

4    accompanied by a performance bonus that she had already earned through her successful

5    performance in 2020-2021").

6        Apple raises a fair argument, and, in her opposition, Ms. Gjovik fails to address it in any

7    way. That being the case, the Court dismisses the claim with prejudice; any opposition has been

8    waived.

9    G.    Motion to Strike

10       Apple has moved to strike certain allegations to the extent the Court dismisses any of the

11   claims which are based on those allegations. As a practical matter, this is not a helpful approach

12   because it is possible that an allegation may be relevant to more than one cause of action. If

13   Apple's concern here is that Ms. Gjovik will seek discovery beyond the scope of the claims that

14   survive the 12(b)(6) challenge, then it can raise that concern before the magistrate judge or this

15   Court, where needed, and when the adjudicator will have more concrete facts before it. The

16   motion to strike therefore is denied, but without prejudice to Apple seeking relief in a different

17   context, where appropriate.

18                                **III.    CONCLUSION**

19       For the foregoing reasons, the Court denies Apple's motion to strike but grants in part and

20   denies in part its motion to dismiss. Specifically:

21   **Retaliation Claims**

22       • Count 2 – claim for violation of § 1102.5. Apple has moved to dismiss part of the

23           claim. The motion is granted. The following factual predicates are eliminated

24           from the claim (with prejudice): (1) that Ms. Gjovik complained about smuggling

25           and sanctions violations; (2) that Ms. Gjovik complained about privacy violations

26           related to Gobbler; and (3) that Ms. Gjovik made complaints about violations of

27           CERCLA, RCRA, and the Clean Air Act or any other whole statutory framework.

28           The following substantive claims remain as pled: complaints about (1) violations

United States District Court
Northern District of California

of the anti-retaliation provisions of environmental laws, specifically, 42 U.S.C. §§ 9610 and 7622 and 15 U.S.C. 2622; (2) violation of § 8(a)(1) of the NLRA; (3) violation of California General Industry Safety Order 5194; (4) violation of 29 U.S.C. § 660; (5) violation of the California Constitution's right to privacy (but not related to Gobbler); and (6) violation of 42 U.S.C. § 2000e and California Government Code § 12920.  To the extent Ms. Gjovik seeks a civil penalty on the remaining portion of the § 1102.5 claim, there is a time bar; however, Ms. Gjovik has leave to amend.  Ms. Gjovik has leave to amend to plead tolling only.

- Count 4 – claim for violation of HSITA.  Apple has moved to dismiss the claim in its entirety.  The motion is granted.  The claim for violation of the HSITA (§ 6399.7) is deemed a claim for violation of § 6310.  This specific § 6310 claim is dismissed with prejudice based on Ms. Gjovik's failure to oppose Apple's argument that she failed to allege exposure resulting from workplace operations.

- Count 5 – claim for violation of § 98.6.  Apple has moved to dismiss the claim in part.  The motion is granted.  The claim for a civil penalty is time barred, but Ms. Gjovik has leave to amend to plead tolling.

- Count 6 – claim for violation of §§ 232, 232.5, 1101, and 1102.  Apple has moved to dismiss the claim in part.  The motion is granted.  The factual predicate related to Palestine, Muslim human rights, or Uyghur forced labor is eliminated from the §§ 232.5, 1101, and 1102 claims (with prejudice).  As a practical matter, this also results in the dismissal with prejudice of the §§ 1101 and 1102 claims.  To the extent the §§ 232 and 232.5 claims are predicated on disclosure of wages, it is dismissed but with leave to amend (*i.e.*, so that Ms. Gjovik can allege knowledge on the part of Apple of the wage disclosure).  This is the only amendment permitted.

- Count 7 – claim for violation of § 96(k).  Apple has moved to dismiss the claim in its entirety.  The motion is denied.  The Court does not view the § 96(k) as a true stand-alone claim but rather construes the claim as a § 98.6 claim predicated on §

39

1    96(k).  This is consistent with the position Ms. Gjovik took in the TAC.

2    **Claims Related to Environmentally Unsafe Conditions**

3    - Count 11 – claim for private nuisance.  Apple has moved to dismiss the claim in its

4    entirety.  The motion is granted.  The claim is time barred but Ms. Gjovik has leave

5    to amend to address the statute-of-limitations problem.

6    - Count 12 – claim for ultrahazardous activities.  Apple has moved to dismiss the

7    claim in its entirety.  The motion is granted.  As above, there is a time bar.

8    Moreover, the Court does not give leave to amend and dismisses the claim with

9    prejudice because Ms. Gjovik previously claimed ultrahazardous activity on the

10   basis that Apple used chemicals for which there is no safe level of exposure, but the

11   chemicals she identified in the 4AC are not absolutely prohibited.

12   - Count 13 – claim for IIED.  Apple has moved to dismiss the claim in its entirety.

13   The motion is granted.  As above, there is a time bar.  Also, on the merits, the claim

14   fails.  Ms. Gjovik has leave to amend to address the statute-of-limitations problem

15   and the merits problem.  As to the merits, the Court is extremely skeptical that Ms.

16   Gjovik can amend in good faith and in compliance with her Rule 11 obligations.

17   **Remaining Claims**

18   - Count 9 – claim related to privacy violation (§ 17200 violation).  Apple has moved

19   to dismiss the claim in its entirety.  The motion is granted.  Even if Ms. Gjovik has

20   standing, she has failed to address the other arguments made by Apple (*e.g.*, time

21   bar and improper relief sought).  Dismissal is with prejudice.

22   - Count 10 – claim related to post-termination conduct (IIED).  Apple has moved to

23   dismiss the claim in its entirety.  The motion is granted.  The claim is dismissed

24   with prejudice to the extent Ms. Gjovik asserts IIED based on being called a liar,

25   bad actor, and the like.  However, Ms. Gjovik has leave to amend to provide

26   nonconclusory allegations on the more serious conduct identified in the 4AC (*e.g.*,

27   stalking, breaking into Ms. Gjovik's home, etc.).  If Ms. Gjovik amends, she must

28   plead nonconclusory allegations on the more serious conduct, *and* she must plead

United States District Court
Northern District of California

40

concrete facts to support a basis for respondeat superior liability. The Court has
serious concerns as to whether Ms. Gjovik can plead in good faith a basis for
respondeat superior liability.

- Count 8 – claim for breach of the implied covenant. Apple has moved to dismiss
  the claim in its entirety. The motion to dismiss is granted and with prejudice. Any
  opposition has been waived.

The Court emphasizes that Ms. Gjovik is not permitted to amend her pleading except as
expressly authorized in this order. If the Court has not explicitly allowed Ms. Gjovik to plead a
new claim, legal theory, or factual predicate, then she cannot plead such in the amended
complaint.

The fifth amended complaint shall be filed by **October 29, 2024**, and shall be limited to
seventy-five (75) pages in length. Apple shall file its response to the amended pleading by
**November 26, 2024**.

Based on the Court's ruling here, the only discovery permitted at this time is "Phase I"
discovery (*i.e.*, discovery needed for the settlement conference) on Counts 1 and 3 (which Apple
did not contest at all in its motion to dismiss) and those parts of the retaliation claims above that
were not challenged or that otherwise survived.

This order disposes of Docket Nos. 78, 79, and 101.

**IT IS SO ORDERED**.

Dated: October 1, 2024

_____
EDWARD M. CHEN
United States District Judge

United States District Court
Northern District of California

**OFFICE OF THE CLERK**
**UNITED STATES DISTRICT COURT**
**Northern District of California**

**CIVIL MINUTES**

**Date:** August 28, 2024     **Time:** 9:40-10:10     **Judge:** EDWARD M. CHEN
                                          30 minutes

**Case No.:** 3:23-cv-04597-EMC     **Case Name:** Gjovik v. Apple Inc.

**Pro Se Plaintiff:** Ashley Gjovik
**Attorney for Defendant:** Melinda Riechert

**Deputy Clerk:** Vicky Ayala                **Court Reporter:** Kelly Shainline

**PROCEEDINGS HELD BY ZOOM WEBINAR**

Motion to Dismiss; Motion to Strike; Initial Case Management Conference – Held.

**SUMMARY**

Parties stated appearances.

Oral argument presented.  Matter submitted; order to issue.  The Court shall not accept any further filings related to the motion to dismiss.

The Court shall refer the case to a settlement conference with a magistrate judge (to be held within 120-150 days).

In addition, the Court shall require the parties to complete initial disclosures.  However, it temporarily stays discovery pending a ruling on Apple's motion to dismiss.  It makes sense to stay discovery temporarily so that the parties will have the benefit of the Court's ruling which will then inform the scope of the litigation.

Once the Court rules on Apple's motion to dismiss, then it shall allow discovery to proceed.  Discovery shall be limited, for the time being, to "Phase I" discovery – i.e., discovery narrowly tailored to that needed in order for the parties to be adequately prepared for the settlement conference.  The Court does not see a need for more than 1-2 depositions per side for purposes of Phase I discovery.  Plaintiff indicated that she cannot afford to take depositions; that is a decision for her to make.  Plaintiff cannot avoid having her deposition taken.

If the case does not settle, then the Court shall open discovery in full.

**REFERRALS:**
Case referred to Magistrate Judge for settlement conference to be completed within 120-150 days.

<div style="text-align:right; writing-mode: vertical">United States District Court<br>Northern District of California</div>

1

2

3

4             UNITED STATES DISTRICT COURT

5            NORTHERN DISTRICT OF CALIFORNIA

6

7 ASHLEY M GJOVIK,               Case No. 23-cv-04597-EMC

8          Plaintiff,

9    v.                  **ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE SUR-REPLY**

10 APPLE INC.,

11          Defendant.        Docket Nos. 93-96

12

13

14      Plaintiff's motion for leave to file a sur-reply is **DENIED**. The brief is not targeted to any

15 alleged new contention in Defendant's reply. Furthermore, the proposed sur-reply is more than

16 seventy pages in length, exceeding the page lengths permitted for motions, oppositions, and reply

17 briefs.

18      The Court therefore **STRIKES** the sur-reply and the documents submitted in support. The

19 declaration is also improper as the motion pending before the Court is a 12(b)(6) motion and not,

20 *e.g.*, a summary judgment motion.

21      Finally, to the extent Plaintiff has asked the Court to consider additional case authorities,

22 *see* Docket No. 96, the Court reserves ruling as to whether it shall do so.

23      **IT IS SO ORDERED**.

24

25 Dated: August 22, 2024

26

27                         _____

28                         EDWARD M. CHEN
                            United States District Judge

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHLEY GJOVIK, | Case No.  23-cv-04597-EMC |
| Plaintiff, | |
| v. | **ORDER OF REFERENCE TO MAGISTRATE JUDGE FOR DISCOVERY** |
| APPLE, INC., | |
| Defendant. | |

Pursuant to Civil Local Rule 72-1, discovery disputes and all further discovery in this case are referred

&#x2612;  for random assignment to a United States Magistrate Judge.

&#x2610;  to United States Magistrate Judge.

The Magistrate Judge to whom the matter is assigned will advise the parties of how that Judge intends to proceed.  The Magistrate Judge may issue a ruling, order more formal briefing, or set a telephone conference or a hearing.  After a Magistrate Judge has been assigned, all further discovery matters shall be filed pursuant to that Judge's procedures.

**IT IS SO ORDERED.**

Dated: July 26, 2024

_____
EDWARD M. CHEN
United States District Judge

**OFFICE OF THE CLERK**
**UNITED STATES DISTRICT COURT**
**Northern District of California**

**CIVIL MINUTES**

**Date:** July 16, 2024      **Time:** 1:29-1:53                    **Judge:** EDWARD M. CHEN
                                            24 minutes

**Case No.**: 3:23-cv-04597-EMC      **Case Name:** Gjovik v. Apple Inc.

**Pro Se Plaintiff:** Ashley Gjovik
**Attorneys for Defendant:** Katie Manton, Melinda Riechert

**Deputy Clerk:** Vicky Ayala                    **Court Reporter:** Kendra Steppler

**PROCEEDINGS HELD BY ZOOM WEBINAR**

Initial Case Management Conference – Held.

**SUMMARY**

Parties stated appearances.

Discovery: Court instructed parties to proceed with the employment claims following General
Order 71. For non-employment, and environmental claims, the parties will meet and confer
regarding initial discovery in a manner that is cost-prohibitive and exchange high-level
documents.  Parties to complete initial disclosures under Rule 26. Court will assign a magistrate
judge for all discovery and will assist the parties with the process, including the scope of the
high-level discovery if there is a dispute. Parties should conclude the high-level discovery within
60 days.

ADR: Defendant stated ADR is premature at this stage.  Court instructed the parties to meet and
confer regarding which form of ADR they prefer, including selection of a mediator.  Parties
should be prepared to discuss ADR at the next status conference.

Court set a hearing on motion to dismiss and a further status conference on **8/22/2024.**

Court also discussed the pendency of this case regarding administrative proceedings, but Court
planned no intervention in the administrative process.

CASE CONTINUED TO:  **8/22/2024, at 1:30 PM for a Further Case Management
Conference and motion hearing via Zoom.**  Joint case management statement due by
8/15/2024.

1

2

3

4                           UNITED STATES DISTRICT COURT

5                          NORTHERN DISTRICT OF CALIFORNIA

6

7    ASHLEY M GJOVIK,                            Case No.  23-cv-04597-EMC

8                    Plaintiff,
                                                 **ORDER GRANTING IN PART AND**
9           v.                                   **DENYING IN PART DEFENDANT'S**
                                                 **MOTION TO DISMISS; DENYING**
10   APPLE INC.,                                 **DEFENDANT'S MOTION TO STRIKE;**
                                                 **AND GRANTING PLAINTIFF'S**
11                   Defendant.                  **MOTION TO STRIKE**

12
                                                 Docket Nos. 48, 49, 64
13

14

15          Plaintiff Ashley Gjovik, proceeding pro se,[1] is a former employee of Defendant Apple, Inc.

16   She started to work for Apple in 2015 and was terminated in September 2021.  About two years

17   after she was fired, she initiated this lawsuit.  Ms. Gjovik has asserted fifteen different claims

18   against Apple, both federal and state.  The gist of her suit is that Apple retaliated against her

19   because she complained about conduct at the company, including but not limited to

20   environmentally unsafe conditions.

21          Now pending before the Court are several motions.  The primary motions are two motions

22   filed by Apple: (1) a motion to dismiss the operative third amended complaint ("TAC") and (2) a

23   related motion to strike.  In addition to Apple's motions, there is a motion that Ms. Gjovik has

24   filed.  Specifically, Ms. Gjovik has moved to strike two declarations that were filed by an ex-

25   Apple employee, Cher S. Scarlett, whom Ms. Gjovik has referred to in the TAC as "Joanna

26   Appleseed."  *See* Docket No. 62 (Scarlett Decl.); Docket No. 66 (Supp. Scarlett Decl.).

27

28   _____
     [1] Ms. Gjovik appears to have a J.D. from Santa Clara University.

1  Having considered the parties' briefs, as well as the oral argument presented at the hearing

2 on May 16, 2024, the Court hereby **GRANTS** in part and **DENIES** in part Apple's motion to

3 dismiss; **DENIES** Apple's motion to strike; and **GRANTS** Ms. Gjovik's motion to strike.

4    **I.**   **FACTUAL & PROCEDURAL BACKGROUND**

5  The operative pleading is the third amended complaint ("TAC"). Although the TAC is

6 difficult to follow at times, the main categories of misconduct as described in the TAC are as

7 follows:

8    (1) During her employment with Apple, Ms. Gjovik lived in an apartment near an

9      Apple factory (known as the ARIA factory) and became ill because the factory

10     released toxic substances into the environment.

11    (2) Ms. Gjovik's office at Apple (known as Stewart 1) was located on a contaminated

12      site subject to EPA regulation, *i.e.*, a Superfund site, and she became ill because of

13     Apple's actions/omissions related to the site.

14    (3) Apple made employees, including Ms. Gjovik, participate in studies related to

15      Apple products that were invasive to their privacy.

16    (4) Apple retaliated against Ms. Gjovik for making complaints about harassment and

17      environmental safety. Ms. Gjovik's complaints included internal complaints,

18      complaints to governmental agencies, complaints to the press, and complaints made

19      in social media. The retaliation by Apple included but was not limited to the

20     termination of Ms. Gjovik from employment.

21  Below, the Court provides more details regarding Apple's alleged misconduct and Ms.

22 Gjovik's termination from employment. To be clear, the discussion below is based on the

23 allegations made in the TAC.

24 A.  Harassment at Work

25  In February 2015, Ms. Gjovik began to work for Apple. She started out as an Engineering

26 Project Manager in Software Engineering and continued to work in that office until January 2017.

27 *See* TAC ¶ 13. During her time in that office, she was harassed, primarily by two male co-

28 workers. *See* TAC ¶ 13. In addition, during her time in the office, she investigated a trend of

1    battery failures in the field.  When she did not comply with her managers' directive to ignore the

2    problem, she was essentially forced out of that office.  *See* TAC ¶ 17.

3         In January 2017, she left Software Engineering and joined Hardware Engineering as a

4    Senior Engineering Project Manager.  *See* TAC ¶ 18.  There, she was harassed by two of her

5    superiors, including on the basis of her sex and disability.  *See* TAC ¶ 18.  As indicated below,

6    Ms. Gjovik became disabled because of Apple's release of toxic substances into the environment.

7    B.    Chemical Exposure from the Apple ARIA Factory

8         In February 2020, while she was still working for Apple, Ms. Gjovik moved into an

9    apartment building located at 3255 Scott Blvd. in Santa Clara.  *See* TAC ¶ 25.  There was an

10   Apple factory located less than 300 feet away at 3250 Scott Blvd.  *See* TAC ¶ 22.  The factory had

11   the code name "ARIA" and was used for semiconductor fabrication.  *See* TAC ¶ 22.  "Apple

12   intentionally vented its fabrication exhaust – . . . consisting of toxic solvent vapors, gases, and

13   fumes – into the ambient outdoor air."  TAC ¶ 22.

14        Because of Apple's release of toxic substances into the air, Ms. Gjovik became "severely

15   ill," *i.e.*, because she was living in the apartment near the Apple ARIA factory.  TAC ¶ 25.  Ms.

16   Gjovik suffered "severe fainting spells, dizziness, chest pain, palpitations, stomach aches,

17   exhaustion fatigue, . . . strange sensations in her muscle and skin," a slow heart rate, volatile blood

18   pression, and arrythmia.  TAC ¶ 25.  At some point, she became so sick that she went on

19   disability.  *See* TAC ¶ 26.

20        From February through September 2020, Ms. Gjovik sought medical treatment, including

21   at a medical clinic sponsored by Apple, known as AC Wellness.  *See* TAC ¶¶ 25-26.  In or about

22   September 2020, she consulted with "multiple occupational and environmental exposure doctors,

23   who told [her] that all of her symptoms were consistent with solvent and other chemical

24   exposures."  TAC ¶ 29.  Ms. Gjovik hired an industrial hygienist to test the indoor air at her

25   apartment, and the results showed a number of chemicals which were "in use by Apple at ARIA."

26   TAC ¶ 30.  (At that time, Ms. Gjovik knew that there was an Apple facility near her apartment, *see*

27   TAC ¶ 32, but it appears she did not know about the semiconductor fabrication at the factory until

28   February 2023.  *See* TAC ¶ 39.)

3

Subsequently, from September 2020 through April 2021, Ms. Gjovik contacted various governmental agencies about the problem, including the EPA and California EPA. *See* TAC ¶¶ 29, 36.

In March 2021, Ms. Gjovik wrote an article, which was published in the SF Bay View newspaper, about her chemical exposure experience with the air around her apartment. This led to other victims coming forward, including other Apple employees. *See* TAC ¶¶ 33-34.

In April 2021, Ms. Gjovik met with several local, state, and federal politicians "about what occurred to her next to ARIA." TAC ¶ 36.

In July and August 2021, Ms. Gjovik continued to meet with local, state, and federal politicians. *See* TAC ¶ 38.

As discussed in more detail, *infra*, in September 2021, Apple terminated Ms. Gjovik.

Not until some two years later, in February 2023, did Ms. Gjovik learn that there was semiconductor fabrication taking place at the Apple ARIA factory. *See* TAC ¶ 39.

In June 2023, Ms. Gjovik filed a complaint about the ARIA factory with the EPA and California EPA. The EPA inspected in August 2023 and January 2024. Ms. Gjovik is still waiting for the results of the investigation. *See* TAC ¶ 40.

C.    Chemical Exposure from the Apple Stewart 1 Office

From about 2017 to the date of her termination (in September 2021), Ms. Gjovik worked at an Apple office located at 825 Stewart Dr. in Sunnyvale. The office was known as "Stewart 1." It was located on a Superfund site (*i.e.*, a contaminated site regulated by the EPA). The contamination was in the groundwater and came about due to a semiconductor fabrication facility that used to be on the site. *See* TAC ¶¶ 41-42. It appears that the Northrop Grumman used to operate on the site. *See* TAC ¶ 43.

Apple became a tenant on the site in 2015. *See* TAC ¶ 45. In late 2015, after it became a tenant, Apple installed a new HVAC system in the building. As a part of the installation, Apple sawed off vent stacks on the main building roof; these stacks had been put in place as part of the ventilation of the area beneath the concrete slab foundation, *i.e.*, to allow hazardous waste vapors to discharge to the atmosphere. After Apple sawed off the vent stacks (from three feet to one

4

1    foot), it then put the HVAC system in close proximity to the stacks, so that the discharge from the

2    stacks could be taken in by the intake of the HVAC system.  *See* TAC ¶¶ 44-46.  Apple did vapor

3    intrusion testing in December 2015, and the results showed an increase in indoor air pollution

4    (compared to a test that Northrop Grumman had conducted back in May 2015).  Nevertheless,

5    Apple had its employees move into the building.  *See* TAC ¶ 47.

6         In March 2021, Apple informed Ms. Gjovik and others that it would be conducting vapor

7    intrusion testing for Stewart 1.  *See* TAC ¶ 49.  Ms. Gjovik expressed concern to her superiors

8    because the office was on the Superfund site, and she shared that fact with her coworkers.  *See*

9    TAC ¶¶ 49, 51.  She also met subsequently (on more than one occasion) with Apple's

10   Environmental Health & Safety ("EH&S") office.  *See* TAC ¶ 52.

11        In April 2021, Ms. Gjovik contacted the EPA about the Superfund site and continued to

12   communicate with the agency through August 2021.  See TAC ¶ 52.

13        In June 2021, Apple's EH&S office and its Employee Relations office notified Ms. Gjovik

14   that the foundation of Stewart 1 was cracked, that the foundation would need to be repaired, and

15   that air testing would be conducted thereafter.  *See* TAC ¶ 53.  Apple refused to contact the EPA;

16   therefore, Ms. Gjovik reported Apple to the EPA herself (and told Apple that she had done so).

17   *See* TAC ¶ 53.

18        By the end of July 2021, Ms. Gjovik made open complaints about Apple's conduct at

19   Stewart 1 to various people: coworkers, the press, and social media.  *See* TAC ¶ 59.

20        In response, Apple retaliated against Ms. Gjovik.  For example:

21        • In or about July 2021, Apple issued "gag orders" to Ms. Gjovik, *e.g.*, to prevent her

22           from communicating about safety concerns to her coworkers.  *See* TAC ¶ 55; *see*

23           *also* TAC ¶ 60 (alleging that an Apple investigator "interrogated" her about

24           communications with coworkers).

25        • In or about July 2021, Apple opened what Mr. Gjovik seems to allege as an

26           investigation into sexism by Ms. Gjovik's superiors.  There was in fact no real

27           investigation; rather Ms. Gjovik's superiors were simply told that she was

28           complaining about their behavior.  *See* TAC ¶ 56.

5

United States District Court
Northern District of California

1        • In or about July 2021, Ms. Gjovik discovered that one of her superiors (Mr. West)

2        "had been reassigning her best projects (things that would help her receive a

3        positive review)" to others. TAC ¶ 58. At or about the same time, another superior

4        (Mr. Powers) "quadrupled her workload with highly unfavorable projects (things

5        that were certain to upset people and fail)." TAC ¶ 58.

6        • In or about July 2021, Apple assigned an investigator (Mr. Okpo) to look into Ms.

7        Gjovik's concerns apparently about retaliation and fraud dating back to 2015 but

8        this was essentially a meaningless gesture; there was no intent that the investigator

9        would act in good faith (*e.g.*, he tried to prevent her from communicating with

10        coworkers, and he did not comply with her request to keep things in writing). *See*

11        TAC ¶¶ 58-60, 62; *see also* TAC ¶¶ 98-100.

12        • Apple persistently told Ms. Gjovik to take a leave. *See* TAC ¶ 59.

13    In late July 2021, the EPA told Apple, as well as Northrop Grumman, that it wanted to

14 inspect Stewart 1. *See* TAC ¶ 61. Thereafter, in August 2021, Apple announced that they would

15 begin to do maintenance at the building – implicitly to cover up the problems at the site. *See* TAC

16 ¶¶ 61, 64. Ms. Gjovik told her coworkers to take pictures of problems at the site – *e.g.*, cracks in

17 the foundation of the building. *See* TC ¶ 64. The next day, Mr. Okpo (the Apple investigator) put

18 Ms. Gjovik on an indefinite administrative leave. *See* TAC ¶ 65.

19    In mid-August 2021, the EPA conducted an inspection of Stewart 1. *See* TAC ¶ 68. The

20 EPA noted, *inter alia*, that cracks had been sealed but it was not clear whether the foundation slab

21 had been penetrated due to equipment bolted to the slab. The EPA also noted that there could be a

22 problem given the proximity of the vent stacks on the roof to the HVAC intake. *See* TAP ¶ 68.

23    As discussed in more detail, *infra*, in September 2021, Apple terminated Ms. Gjovik.

24    In May 2022, the EPA instructed Northrop Grumman to do air testing. *See* TAC ¶ 69.

25    In January 2023, the EPA again instructed that air testing be done. *See* TAC ¶ 70.

26    In August 2023, the EPA commented on vapor intrusion testing that Apple had done in

27 May 2023, "calling Apple's testing report and strategy 'fundamentally incorrect,' having 'no

28 fundamental basis,' and [being] 'not accurate,' 'confusing,' and 'misleading.'" TAC ¶ 70

<div align="center">6</div>

1   (emphasis omitted).

2   D.      Termination in September 2021

3          As noted above, Ms. Gjovik was put on indefinite administrative leave in August 2021.  In

4   or about that period (July-August 2021), Ms. Gjovik made various public complaints about Apple.

5   *See* TAC ¶ 71 *et seq.*  Some complaints were made to coworkers (*e.g.*, through Slack channels), to

6   the press, or to social media; other complaints were filed with governmental agencies such as the

7   EEOC, the California DFEH, the NLRB, the U.S. Department of Labor, the California Department

8   of Labor, and even the SEC and FBI.  The complaints covered a wide range of conduct by Apple –

9   *e.g.*, its response to COVID-19, its response to her complaints about sexism, its response to her

10  complaints about unsafe work conditions, its forcing her on administrative leave, etc.

11         On September 9, 2021, Apple terminated Ms. Gjovik's employment.  *See* TAC ¶ 90.  The

12  day that she was terminated, Ms. Gjovik was contacted by an Apple Workplace Violence and

13  Threat Assessment investigator (Mr. Kagramanov) via email.  The investigator claimed that he

14  was looking into a sensitive IP matter and demanded to speak to her within the hour.  Ms. Gjovik

15  said she was willing to participate but wanted a written record of their conversation.  The

16  investigator replied that Apple was investigating allegations that she had improperly disclosed

17  confidential information belonging to Apple and falsely asserted that she was refusing to

18  participate in the investigation.  The investigator then suspended all of Ms. Gjovik's account

19  access at Apple (including Slack).  *See* TAC ¶ 101-03; *see also* TAC ¶¶ 83, 88.  Ms. Gjovik

20  reiterated to the investigator that she was willing to participate.  However, a few hours later, she

21  was terminated.  *See* TAC ¶ 105.  "The termination letter repeated an ambiguous charge of leaking

22  and said she 'failed to cooperate and to provide accurate and complete information during the

23  Apple investigatory process.'"  TAC ¶ 105.

24         About a week later, Apple's outside counsel emailed Ms. Gjovik a letter, suggesting that

25  Apple had terminated her because (1) she had complained about Apple asking to 3-D scan her ear

26  canals and (2) she had "posted some of the surveillance photos Apple secretly took of her through

27  her phone when it was illegally harvesting her biometrics through its face Gobbler app."  TAC ¶

28  106; *see also* TAC ¶ 80 (alleging that "Apple frequently requested that Gjovik and her coworkers

United States District Court
Northern District of California

7

United States District Court
Northern District of California

1   participate in invasive, oppressive, and humiliating medical studies, anatomical studies (like ear

2   scans), DNA test, biometrics data collection (like the Gobbler app), and other highly personal

3   studies").

4   E.    Post-Termination Harassment

5          Even after Ms. Gjovik was fired from Apple, the company harassed her.  In fact, Apple

6   conducted a campaign of harassment against her from at least July 2021 (*i.e.*, a few months before

7   it terminated her).  The harassment included the following conduct:

8          • Making repetitive, unwanted communications to Ms. Gjovik.  *See* TAC ¶ 107.

9          • Making false accusations against Ms. Gjovik.  *See* TAC ¶ 107.

10         • Mailing to Ms. Gjovik "menacing packages."  TAC ¶ 107.

11         • Physically surveilling Ms. Gjovik, including through the use of private

12            investigators.  *See* TAC ¶¶ 107, 110.

13         • Using fake social media accounts to make, *inter alia*, threatening, defamatory, and

14            insulting statements about Ms. Gjovik.  *See* TAC ¶ 108.

15         • "[B]ugging [Ms. Gjovik's] chattel property" such as the statute on her desk and her

16            fig tree.  TAC ¶ 110 (also alleging that Apple installed cables and cords in her

17            attic).

18         • Breaking into her apartment and adjacent apartments, and even handling her dog

19            during one of the break-ins.  *See* TAC ¶ 110.

20         For similar allegations, see also TAC ¶ 132 (alleging that Apple engaged in criminal

21   witness tampering "with break-ins, stalking, destruction of property, physical and digital

22   harassment, lawsuits, reports to police and FBI (SWATing), and threats of physical violence sent

23   over wires such as threatening to decapitate one of Gjovik's loved ones, or that Gjovik would be

24   found dead of 'suicide' but 'never mind the double-tap'") (emphasis omitted); and TAC ¶ 134

25   (alleging that Apple broke into her apartment, messed with her telephone/cable/electrical lines,

26   stalked her, etc.)

27

28

                                        8

F.      Causes of Action

        Based on, *inter alia*, the above allegations, Ms. Gjovik has asserted the following causes of action:

> (1)    Violation of RICO.
>
> (2)    Violation of the Sarbanes-Oxley Act (whistleblower).
>
> (3)    Violation of the Dodd-Frank Act (whistleblower).
>
> (4)    Private nuisance and nuisance per se.
>
> (5)    Ultrahazardous/abnormally dangerous activities (strict liability).
>
> (6)    Violation of the Bane Civil Rights Act.
>
> (7)    Violation of the Ralph Civil Rights Act.
>
> (8)    Violation of the California Whistleblower Protection Act.
>
> (9)    Retaliation for filing complaints in violation of California Labor Code § 98.6.
>
> (10)   Retaliation for safety activities in violation of California Labor Code § 6310.
>
> (11)   Termination in violation of public policy.
>
> (12)   Breach of implied contract and breach of the implied covenant of good faith and fair dealing.
>
> (13)   Intentional infliction of emotional distress.
>
> (14)   Negligent infliction of emotional distress.
>
> (15)   Violation of California Business & Professions Code § 17200.

        In the pending 12(b)(6) motion, Apple moves to dismiss outright 11 out of the 15 causes of action – specifically, Counts 1-3, 5-8 and 12-15.  Apple also moves for partial dismissal of 2 other counts – specifically, Counts 4 and 9.  The only claims that Apple does not challenge in its 12(b)(6) motion are Count 10 (retaliation for safety activities) and Count 11 (termination in violation of public policy).

## II.      **MOTION TO DISMISS**

A.      Legal Standard

        Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A

9

United States District Court
Northern District of California

1  complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil

2  Procedure 12(b)(6). *See* Fed. R. Civ. P. 12(b)(6). To overcome a Rule 12(b)(6) motion to dismiss

3  after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic*

4  *Corp. v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must .

5  . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d

6  1123, 1135 (9th Cir. 2014). The court "accept[s] factual allegations in the complaint as true and

7  construe[s] the pleadings in the light most favorable to the nonmoving party."[2] *Manzarek v. St.*

8  *Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But "allegations in a

9  complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient

10  allegations of underlying facts to give fair notice and to enable the opposing party to defend itself

11  effectively." *Levitt*, 765 F.3d at 1135 (internal quotation marks omitted). "A claim has facial

12  plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

13  inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The

14  plausibility standard is not akin to a probability requirement, but it asks for more than a sheer

15  possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).

16  B.     Violation of RICO (Count 1)

17         In Count 1, Ms. Gjovik asserts a claim for violation of RICO, but there are technically

18  subclaims to the extent she has asserted violations of 18 U.S.C. §§ 1962(a), (c), and (d). The

19  factual predicate for the RICO claim, including the subclaims, is muddled. The gist of it (as

20  described in the TAC) seems to be that Apple markets itself as a progressive brand – *e.g.*,

21

22  [2] On a motion to dismiss, a court generally limits its review to the four corners of the complaint.
    *See Van Buskirk v. Cnn*, 284 F.3d 977, 980 (9th Cir. 2002) ("Ordinarily, a court may look only at
23  the face of the complaint to decide a motion to dismiss."); *Lee v. City of Los Angeles*, 250 F.3d
    668, 688 (9th Cir. 2001) ("[W]hen the legal sufficiency of a complaint's allegations is tested by a
24  motion under Rule 12(b)(6), 'review is limited to the complaint.'"). Accordingly, the Court does
    not consider the two declarations filed by Ms. Scarlett (and grants Ms. Gjovik's motion to strike
25  the same), nor does it consider the declaration filed by Ms. Gjovik.

26         A court may still take judicial notice of documents, if appropriate, on a 12(b)(6) motion.
    *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) (noting that a court
27  may "consider materials outside a complaint" at the 12(b)(6) phase if it can, *e.g.*, take judicial
    notice of materials). The Court addresses Apple's requests for judicial notice, where necessary,
28  below.

1    environmentally responsible – when in fact it is not. By marketing itself as a progressive brand,

2    Apple benefits financially. In addition, because Apple does not comply with regulations on

3    health, safety, employment, etc., it gets an edge over its competitors: while the competitors spend

4    money to comply with regulations, Apple saves money by not complying. Apple conceals the

5    truth that it is not progressive by retaliating against employees who report issues, using unlawful

6    NDAs, and so forth. *See* TAC ¶¶ 115, 123, 126. The specific racketeering activity in which

7    Apple engages includes bribery, witness tampering, witness retaliation, wire fraud, securities

8    fraud, and possessing and using chemical weapons. *See* TAC ¶¶ 128-65 (describing ten predicate

9    acts).

10           1.    Section 1962(a)

11           As noted above, Ms. Gjovik first asserts a claim for violation of § 1962(a). Section

12    1962(a) provides in relevant part as follows: "It shall be unlawful for any person who has received

13    any income derived, directly or indirectly, from a pattern of racketeering activity . . . to use or

14    invest, directly or indirectly, any part of such income, or the proceeds of such income, in . . . the

15    establishment or operation of, any enterprise . . . ." 18 U.S.C. § 1962(a). "This provision was

16    primarily directed at halting the investment of racketeering proceeds into legitimate businesses,

17    including the practice of money laundering." *Brittingham v. Mobil Corp.*, 943 F.2d 297, 303 (3d

18    Cir. 1991).

19           A plaintiff asserting a § 1962(a) claim must prove the following: (1) the defendant received

20    money from a pattern of racketeering activity; (2) the defendant used or invested that money in an

21    enterprise; and (3) the plaintiff was injured as a result of the use or investment of racketeering

22    income. *See Lightning Lube v. Witco Corp.*, 4 F.3d 1153, 1188 (3d Cir. 1993).

23           Regarding element (3), "an injury resulting from the [use or] investment of racketeering

24    income [is] *distinct* from an injury caused by the predicate acts themselves." *Id.* (emphasis

25    added). The former is required because § 1962(a) "'is directed specifically at the use or

26    investment of racketeering income.'" *Id.*; *see also Wagh v. Metris Direct, Inc.*, 363 F.3d 821, 829

27    (9th Cir. 2003) (stating that a plaintiff must allege that "funds derived from the alleged

28    racketeering activity . . . were used to injure him"); *NRB Indus. v. R.A. Taylor & Assocs.*, No. 97

United States District Court
Northern District of California

11

United States District Court
Northern District of California

1    Civ. 181 (JSR), 1998 U.S. Dist. LEXIS 25, at *4 (S.D.N.Y. Jan. 6, 1998) (stating that "'the

2    essence of a violation of § 1962(a) is *not commission of predicate acts* but investment of

3    racketeering income,'" and therefore, "a plaintiff suing under § 1962(a) must 'allege a "use or

4    investment injury" that is distinct from the injuries resulting from predicate acts'") (emphasis

5    added).  *See, e.g.*, *Compagnie De Reassurance D'Ile De Fr. v. New Eng. Reinsurance Corp.*, 57

6    F.3d 56, 91 (1st Cir. 1995) ("Even assuming that [plaintiffs] had been defrauded through the use

7    of the mails or international wires, that alone is not enough to show that they were harmed

8    additionally by [defendant's] use or investment of the proceeds of that fraud to establish or operate

9    [the enterprise].").

10    Furthermore, "[r]einvestment of proceeds from alleged racketeering activity back into the

11   enterprise to continue its racketeering activity is insufficient to show proximate causation."

12   *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1149 (9th Cir. 2008).  The rationale

13   behind that principle is that a distinction between § 1962(a) and (c) must be maintained.  *See id.* at

14   1150.

15           As the Third Circuit in *Brittingham* explained, "[a] plaintiff must
         allege . . . more than a remote connection between the use or

16       investment of racketeering income and the injury suffered." 943
         F.2d at 304.  The *Brittingham* court concluded that the reinvestment

17       of racketeering proceeds is too remote a connection.  *See id.* at 305.

18           If this remote connection were to suffice, the use-or-
         investment injury requirement would be almost

19       completely eviscerated when the alleged pattern of
         racketeering is committed on behalf of a corporation .

20       . . Over the long term, corporations generally reinvest
         their profits, regardless of the source.  Consequently,

21       almost every racketeering act by a corporation will
         have some connection to the proceeds of a previous

22       act.  Section 1962(c) is the proper avenue to redress
         injuries caused by the racketeering acts themselves.

23       If plaintiffs' reinvestment injury concept were
         accepted, almost every pattern of racketeering

24       activity by a corporation would be actionable under §
         1962(a), and the distinction between § 1962(a) and §

25       1962(c) would become meaningless.

26   *Westways World Travel v. AMR Corp.*, 182 F. Supp. 2d 952, 960 (C.D. Cal. 2001).

27           In the instant case, Apple argues that the § 1962(a) claim should be dismissed because Ms.

28   Gjovik has failed to make allegations that satisfy element (3).  The Court agrees.

12

1      For example, Ms. Gjovik argues that "Defendant . . . reinvested its earnings and saved

2   costs back into its enterprise, in order to be able to continue silencing witnesses, including

3   Plaintiff, and to be able to more effectively silence witnesses in order to engage in more fraud and

4   chemical weapon use." Opp'n at 18.  But, as noted above, "[r]einvestment of proceeds from

5   alleged racketeering activity back into the enterprise to continue its racketeering activity is

6   insufficient to show proximate causation." *Sybersound*, 517 F.3d at 1149.  The same problem

7   arises to the extent Ms. Gjovik suggests that Apple invested its racketeering profits by (1) hiring

8   lawyers "to harass, intimidate, and coerce . . . witnesses" to its misconduct or by (2) investing in

9   progressive nonprofit organizations "in order to capture and control them, conspire with them, and

10  prevent them from protecting and helping witnesses to Defendant's racketeering." Opp'n at 18-

11  19.

12      To the extent Ms. Gjovik asserts Apple invested its racketeering profits by bribing local

13  law enforcement, *see* Opp'n at 18, there is another problem.  The bribery incident described in the

14  TAC has to do with Tom Moyer, Apple's Head of Global Security, "paying bribes to public

15  officials in exchange for concealed carry handgun permits for Apple employees." TAC ¶ 128.

16  Ms. Gjovik fails to explain how this use of racketeering profits injured her; there is no allegation

17  that, *e.g.*, an Apple employee threatened her with a gun obtained through this bribery scheme.

18  And even if that happened, it is clear how Ms. Gjovik's business or property was harmed as a

19  result. *See Glob. Master Int'l Grp., Inc. v. Esmond Nat., Inc.*, 76 F.4th 1266, 1271, 1274 (9th Cir.

20  2023) (stating that "[a] civil RICO plaintiff only has standing if, and can only recover to the extent

21  that, he has been injured in his business or property by the conduct constituting the violation";

22  *e.g.*, "a plaintiff must demonstrate (1) harm to a specific property interest cognizable under state

23  law, and (2) that the injury resulted in concrete financial loss") (internal quotation marks omitted).

24      Finally, the Court takes note that, in her papers, Ms. Gjovik recognizes a RICO injury

25  requires an injury to business or property.  Thus, she contends in her opposition that she was

26  injured because her "chattel property" was damaged or destroyed,[3] because she lost an

27

28  ────────────────────

[3] *See, e.g.*, TAC ¶ 110 (alleging that Apple engaged in "aggressive surveillance (including lurking Private Investigators . . . ), bugging her chattel property (the statute Apple mailed Gjovik from her

13

1   employment performance bonus, and because she became disabled which thereby caused her "to

2   be away from work and to take a reduced course load in law school while she was exposed to . . .

3   chemical weapon releases." Opp'n at 17.  Even if the Court were to credit the above allegations,

4   Mr. Gjovik has failed to explain how any of those injuries is causally connected to Apple's use of

5   racketeering income.  Rather, those injuries are the result of Apple's alleged racketeering activity

6   itself (*e.g.*, witness tampering or retaliation and possession or use of chemical weapons).

7        Accordingly, the Court concludes that Ms. Gjovik has failed to state a plausible § 1962(a)

8   claim.  The alleged relationship between any harm she suffered and the use of racketeering income

9   is too remote as a matter of law.  Because Ms. Gjovik did not, at the hearing, explain how she

10  could overcome the above deficiencies, the Court dismisses the § 1962(a) claim with prejudice.

11  Amendment of the claim would be futile.

12        2.     Section 1962(c)

13        Section 1962(c) provides in relevant part that "[i]t shall be unlawful for any person

14  employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly,

15  in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ."  18

16  U.S.C. § 1962(c).

17        It is well established that, under § 1962(c), the defendant and the enterprise must be

18  distinct from one another; this is based on the language of § 1962(c) itself.  *See Cedric Kushner*

19  *Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001) ("[T]o establish liability under § 1962(c) one

20  must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise'

21  that is not simply the same 'person' referred to by a different name.  The statute's language, read

22  as ordinary English, suggests that principle.").  Thus, Ms. Gjovik must allege an association-in-

23  fact enterprise that consists of more than just Apple.  *See* 18 U.S.C. § 1961(4) (stating that

24

25  ─────────────────
    desk; Gjovik's fig tree, etc.), whatever Apple installed in her attic (photos show cables/cords laid

26  in away [sic] landlord denied was them), breaking into her apartment (at least once in 2021 and
    2022), breaking into adjacent apartments (at least once in 2021)," etc.); TAC ¶ 180 (alleging that

27  the Apple ARIA factor "emits large quantities of vapors, dust, chemicals, and other contaminants
    into the air, which are carried by the natural winds and air currents onto Gjovik's property and

28  collect Gjovik's chattel property and are generally injurious to Gjovik's health, are offensive to the
    senses, and interfered with Gjovik's comfortable enjoyment of life and property").

14

United States District Court
Northern District of California

1    "'enterprise' includes any individual, partnership, corporation, association, or other legal entity,

2    and any union or group of individuals associated in fact although not a legal entity").

3            Ms. Gjovik calls the association-fact-enterprise the "Worldwide Loyalty Enterprise."  She

4    asserts that the enterprise is made up of:

5            (1) Apple and its employees;

6            (2) Apple's outside counsel;

7            (3) trade and nonprofit organizations (*e.g.*, that Apple partners with to promote itself as

8                environmentally responsible);

9            (4) "certain tech reporters";

10           (5) certain "companies and third-party administrators (e.g., Sedgwick, Northop

11               Grumann, Oaktree Capital, etc.")[4];

12           (6) "certain governmental employees and agencies, law enforcement officers and

13               agencies (e.g., Santa Clara County Sheriff's Office, Cupertino Police Department,

14               Santa Clara HazMat, etc.)"[5];

15           (7) certain "doctors and clinics (e.g., A.C. Wellness Center, etc.)"[6]; and

16           (8) certain "environmental consultants (e.g., EKI, ACT Environmental, etc.)."

17

18   ─────────────────────────
     [4] The TAC does not make any other reference to Sedwick or Oaktree Capital.  As noted above,
19   Northrop Grumman appears to have operated a factory on the Superfund site prior to Apple
     becoming a tenant.

20
     [5] Presumably, Ms. Gjovik makes this allegation because Tom Moyer, Apple's Head of Global
21   Security, allegedly bribed "public officials in exchange for concealed carry handgun permits for
     Apple employees."  TAC ¶ 128.

22
     [6] A.C. Wellness appears to be "Apple's for-profit in-house clinic."  TAC ¶ 26.  Ms. Gjovik
23   received treatment from doctors there, but

24               transitioned her medical care to a different clinic and provider after
                 her Apple primary care provider at AC Wellness refused to help her
25               triage her 2020 medical issues (due to exposure to Apple's factory
                 exhaust) and instead suggested Gjovik could be suffering from
26               anxiety and enrolled Gjovik in an Apple internal user study related
                 to blood pressure . . . and participate in weekly life coaching
27               sessions . . . .

28   TAC ¶ 27.

                                            15

1    TAC ¶ 120.  As indicated above, she claims that this enterprise "engaged in systemic criminal

2    conduct in pursuit of enabling Apple's race to the bottom on regulatory compliance and use of

3    intimidation, threats, and false statements about its actual practices to increase profits and maintain

4    a positive reputation."  TAC ¶ 123.

5           As an initial matter, the Court notes that some of the persons/entities above may not be

6    distinct from Apple for purposes of RICO.  Agents of Apple can still be considered part of Apple

7    for RICO purposes.  *See Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1357 (11th Cir. 2016) (stating

8    that "plaintiffs may not plead the existence of a RICO enterprise between a corporate defendant

9    and its agents or employees acting within the scope of their roles for the corporation because a

10   corporation necessarily acts through its agents and employees"; acknowledging that, "[w]hen an

11   individual defendant acts through a corporation, he may have formed an association-in-fact with

12   an entity distinct from himself" but, "[i]n contrast to an individual, a corporation cannot act except

13   through its officers, agents, and employees"); *Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 227-28

14   (7th Cir. 1997) (stating that "we cannot imagine . . . applying RICO to a free-standing corporation

15   such as Chrysler merely because Chrysler does business through agents, as virtually every

16   manufacturer does"; "where a large, reputable manufacturer deals with its dealers and other agents

17   in the ordinary way, so that their role in the manufacturer's illegal acts is entirely incidental,

18   differing not at all from what it would be if these agents were the employees of a totally integrated

19   enterprise, the manufacturer plus its dealers and other agents . . . do not constitute an enterprise

20   within the meaning of the statute"); *Brittingham*, 943 F.2d at 303 (recognizing that the alleged

21   enterprise consisted of not just the defendant companies but also their advertising agencies;

22   however, finding the entities "in reality no different from each other" because "[t]he advertising

23   agencies were defendants' agents, and did no more than conduct the normal affairs of the

24   defendant corporations").

25          The Court also notes that, even if the persons/entities were distinct from Apple, it often is

26   not clear from the TAC how they above were involved in the predicate acts (*i.e.*, racketeering

27   activity).  *See Coronavirus Rptr. v. Apple*, No. 21-cv-05567-EMC, 2021 U.S. Dist. LEXIS

28   249564, at *55 (N.D. Cal. Nov. 30, 2021) (acknowledging plaintiffs' contention that "the alleged

United States District Court
Northern District of California

16

1   enterprise consisted of [not just Apple but also] Apple's 'crony app developers,' 'law firms,' and

2   'PR firms' who allegedly 'divert profits,' 'spread Apple's gospel,' or obfuscate 'Apple's

3   competitive agenda,'" but stating that these allegations were insufficient because "none of these

4   groups are alleged to have participated in an alleged enterprise involving the predicate acts of wire

5   and mail fraud[;] [t]he allegations are also conclusory").

6        Along similar lines, in order for all of the persons/entities above to be deemed part of the

7   association-in-fact enterprise, they must all have shared a common purpose – a purpose of the

8   enterprise.

> [A]n association-in-fact enterprise must have at least three structural
> features: a purpose, relationships among those associated with the
> enterprise, and longevity sufficient to permit these associates to
> pursue the enterprise's purpose. [In short], an association-in-fact
> enterprise is "a group of persons associated together for a common
> purpose of engaging in a course of conduct."

13  *Boyle v. United States*, 556 U.S. 938, 946 (2009).

14       In her TAC, Ms. Gjovik alleges that "Apple engaged in a complex, cold, and calculated

15  conspiracy to enable and conceal their systemic, long-running, intentional violations of basic

16  environmental, health/safety, and labor laws – and censorship, obstruction, and concealment of

17  these acts to profit from a progressive brand." TAC ¶ 126. However, Ms. Gjovik has failed to

18  allege sufficiently that all of the persons above (including, *e.g.*, nonprofit organizations and

19  doctors) shared this purpose; she has not alleged a nonconclusory, factual, and plausible basis for

20  such an assertion as to these non-Apple entities. *See, e.g.*, *Cisneros v. Petland, Inc.*, 972 F.3d

21  1204, 1214 (11th Cir. 2020) (stating that plaintiff's "RICO complaint may only proceed if we can

22  find facts within it that plausibly yield the inference that these defendants and the other

23  participants in the alleged association-in-fact enterprise acted with the common purpose to engage

24  in a scheme to defraud"; even if a defendant "independently commit[s] fraud," a RICO complaint

25  must be dismissed if "the plaintiff fail[s] to plead that the other participants in the alleged

26  enterprise shared a common purpose to do so"); *cf. Reves v. Ernst & Young*, 507 U.S. 170, 185

27  (1993) (indicating that liability under § 1962(c) "depends on showing that the defendants

28  conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs")

17

1    (emphasis in original); *Gomez v. Guthy-Renker, LLC*, No. EDCV 14-01425 JGB (KKx), 2015

2    U.S. Dist. LEXIS 90725, at *26 (C.D. Cal. July 13, 2015) (finding no common purpose "when the

3    alleged association-in-fact is merely a routine contract for services, because the entities are

4    actually pursuing their individual economic interests, rather than any shared purpose").

5          At the hearing, Ms. Gjovik argued that Apple shared a common purpose with at least one

6    environmental consultant, ACT Environmental.  She asserted that Apple falsified certain EPA-

7    related paperwork and that Apple could not have done so by itself but would have had to conspire

8    with ACT Environmental to do so.  As an initial matter, this was not alleged in the TAC.  Even if

9    Ms. Gjovik was referring to the events described in ¶¶ 142 and 143 of the TAC, she fares no

10    better.  She does not explain why Apple could not have accomplished the false filing without the

11    assistance of the environmental consultant and how the environmental consultant knew that Apple

12    was engaging in fraudulent conduct and joined in the purpose of defrauding authorities.

13          Finally, even if the Court were to credit this incident related to ACT Environmental, it is

14    but one incident.  That is insufficient to support a § 1962(c) claim which requires that a plaintiff

15    allege a *pattern* of racketeering activity, which is "'defined as "at least *two* acts of racketeering

16    activity" within ten years of each other.'"  *Attia v. Google LLC*, 983 F.3d 420, 427 (9th Cir. 2020)

17    (emphasis added).  Moreover, to meet the requirement of a pattern of racketeering activity, a

18    plaintiff must show that the racketeering acts making up the pattern (1) are related and (2)

19    "'amount to or pose a threat of continued criminal activity.'"  *Id.*  "'Related' conduct 'embraces

20    criminal acts that have the same or similar purposes, results, participants, victims, or methods of

21    commission, or otherwise are interrelated by distinguishing characteristics and are not isolated

22    events.'"  *Howard v. Am. Online, Inc.*, 208 F.3d 741, 749 (9th Cir. 2000) (noting, however, that

23    "merely having the same participants is insufficient to establish relatedness").  As for the

24    continuity requirement, a plaintiff "must prove either 'a series of related predicates extending over

25    a substantial period of time' [known as closed-ended continuity], or 'past conduct that by its

26    nature projects into the future with a threat of repetition' [known as open-ended continuity]."  *Id.*

27    at 750.  Notably, predicate acts that last for a few weeks or months alone and that do not threaten

28    future criminal conduct are not enough to establish closed-ended continuity.  *See id.* (stating that

United States District Court
Northern District of California

18

1    "[a]ctivity that lasts only a few months is not sufficiently continuous").  At the hearing, Ms.

2    Gjovik did not make any representations that Apple and ACT Environmental had an enterprise

3    that engaged in a *pattern* of racketeering activity – *i.e.*, more than one predicate act, with such acts

4    being related and that supported either closed-ended or open-ended continuity.

5         The Court therefore dismisses the § 1962(c) claim based on the multiple deficiencies

6    above.  Although the Court has serious concern as to whether Ms. Gjovik can plead a plausible §

7    1962(c) claim, it shall, out of an abundance of caution, give Ms. Gjovik leave to amend.

8         3.    Section 1962(d)

9         Section1962(d) provides that "[i]t shall be unlawful for any person to conspire to violate

10   any of the provisions of subsection (a) . . . or (c) of this section."  *Id.* § 1962(d).  As indicated by

11   this language, Ms. Gjovik's § 1962(d) claim is derivative of her § 1962(a) and § 1962(c) claims.

12   Because the Court has dismissed with prejudice the § 1962(a) claim, the related § 1962(d) is

13   dismissed with prejudice as well.  Because the Court has dismissed the § 1962(c) claim, but with

14   leave to amend, the related § 1962(d) is also dismissed but with leave to amend.

15   C.   Violation of the Sarbanes-Oxley Act (Count 2)

16        In Count 2, Ms. Gjovik asserts a claim for violation of the Sarbanes-Oxley Act ("SOX").

> Congress enacted the Sarbanes-Oxley Act in the wake of the Enron
> scandal to "'prevent and punish corporate and criminal fraud,
> protect the victims of such fraud, preserve evidence of such fraud,
> and hold wrongdoers accountable for their actions.'"  "Of particular
> concern to Congress was abundant evidence that Enron had
> succeeded in perpetuating its massive shareholder fraud in large part
> due to a 'corporate code of silence'" that "'discourage[d] employees
> from reporting fraudulent behavior not only to the proper
> authorities, such as the FBI and the SEC, but even internally.'" . . .
>
> Congress' response was 18 U.S.C. § 1514A, which prohibits
> publicly traded companies from retaliating against employees who
> report what they reasonably believe to be instances of [1] criminal
> fraud or [2] securities law violations.  The provision establishes that
> no employer may "discharge, demote, suspend, threaten, harass, or
> in any other manner discriminate against an employee in the terms
> and conditions of employment because of" the employee's protected
> whistleblowing activity.

*Murray v. UBS Sec., LLC*, 144 S. Ct. 445, 449 (2024).

28        For purposes of the instant case, the relevant text from § 1514A is provided below:

United States District Court
Northern District of California

19

No company with a class of securities registered under section 12 of the Securities Exchange Act of 1934 . . . , or that is required to file reports under section 15(d) . . . may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee . . . because of any lawful act done by the employee –

(1)     to provide information . . . regarding any conduct which the employee reasonably believes constitutes a violation of section 1341 [mail fraud], 1343 [wire fraud], 1344 [bank fraud], or 1348 [securities or commodities fraud], any rule or regulation of the [SEC], or any provision of Federal law relating to fraud against shareholders, when the information or assistance is provided to or the investigation is conducted by –

(A)     a Federal regulatory or law enforcement agency; [or]

. . .

(C)     a person with supervisory authority over the employee (or such other person working for the employer who has the authority to investigate, discover, or terminate misconduct).

18 U.S.C. § 1514A.

In its motion, Apple argues that the SOX claim should be dismissed because Ms. Gjovik "fails to allege facts that, even if true, demonstrate she complained about conduct that she reasonably believed violated an enumerated SOX provision." Mot. at 10. Apple is correct.

As a preliminary matter, the Court notes that Ms. Gjovik's opposition spends little time on her SOX claim and fails to address Apple's argument directly. *See* Opp'n at 11 ("Plaintiff responds generally here instead of point by point."). That alone warrants dismissal.

The Court, however, has also independently reviewed the allegations in the TAC and concludes that the claim is deficient. In the TAC, Ms. Gjovik provides a laundry list of matters that she reported, either internally or to a government agency. *See* TAC ¶¶ 167-68. But many of these acts do not have anything to do with the kinds of criminal fraud identified in § 1514A above or with securities law violations. *See, e.g.*, TAC ¶¶ 84, 167-68 (referring to hoarding of COVID-19 vaccines, smuggling, and witness intimidation). While some acts could possibly relate to securities law violations, *see e.g.*, TAC ¶ 167 (referring to false statements about Apple's environmental and labor practices), the acts are described in vague terms, and, in any event, Ms. Gjovik has failed to allege how her subjective belief that there were violations was objectively

20

reasonable: "'[t]o have an objectively reasonable belief there has been shareholder fraud, the complaining employee's theory of fraud must at least approximate the basic elements of a claim of securities fraud,'" including that any misrepresentation or omission be *material*. *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 1001 (9th Cir. 2009); *see also Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 222 (2d Cir. 2014) (noting that "'it may well be that a complainant's complaint concerns such a trivial matter,' in terms of its relationship to shareholder interests, 'that he or she did not engage in protected activity under [§ 1514A].'"). A conclusory allegation that a misrepresentation or omission is material is not sufficient. Statements that amount to puffery (*e.g.*, claims by Apple that it is a progressive company) are not actionable. *See Azar v. Yelp, Inc.*, No. 18-cv-00400-EMC, 2018 U.S. Dist. LEXIS 200769, at *31-32 (N.D. Cal. Nov. 27, 2018) (stating that vague and amorphous statements – *e.g.*, "'we've got a great product experience'" or results were "'strong'" – "'do not give rise to liability for securities fraud, since reasonable investors do not consider such puffery material when making an investment decision'"). The allegedly false statements either amount to puffery[7] or, to the extent they pertain to specific incidents about which Apple lied, they were not demonstrably material to shareholders when viewed in the context of the far more global and consequential business and financial issues facing Apple.

One example in the TAC where Ms. Gjovik provides specificity is illustrative of why her claims fall short. (She called out this same example during the hearing on Apple's motion.) In the TAC, Ms. Gjovik alleges that Ronald Sugar is a member of the Apple Board of Directors. *See* TAC ¶ 91. But prior thereto, he "worked at TRW Microwave Inc." (or Northrop Grumman, which appears to be the successor company) which was responsible for creating the pollution that needed cleanup at Stewart 1. TAC ¶ 170; *see also* TAC ¶ 91. According to Ms. Gjovik, "[i]t's improbable that Ronald Sugar was not personally involved in TRW Microwave use and disposal of industrial hazardous materials at [Stewart 1] or not personally involved in the environmental

---

[7] Even statements that are not puffery are not actionable if they are inherently subjective, *i.e.*, if they cannot be measured by an objective standard. *See In re Philip Morris Int'l Inc.*, 89 F.4th 408, 418-19 (2d Cir. 2023).

ER VI 148

United States District Court
Northern District of California

1    clean-up of spills/dumping of those chemicals at [Stewart 1]." TAC ¶ 171.  Ms. Gjovik suggests

2    that this created some kind of conflict of interest on the part of Mr. Sugar once he was at Apple.

3    *See* TAC ¶ 171.  She also alleges that she reported this conflict of interest internally in or about

4    August 2021 (*i.e.*, shortly before she was terminated in September 2021).  *See* TAC ¶ 98.  In

5    addition, it appears she reported the conflict of interest to the SEC at about the same time.  *See*

6    TAC ¶ 169 (alleging that she "filed an SEC whistleblower tip on August 31, 2021").

7         But Ms. Gjovik was not complaining about criminal fraud (in particular, mail fraud, wire

8    fraud, bank fraud, or securities or commodities fraud) or securities law violations, as opposed to,

9    *e.g.*, safety.  *See Magnuson v. Exelon Corp.*, 658 F. Supp. 3d 652, 662 (C.D. Ill. 2023) ("Plaintiff's

10   words, actions, and the animating beliefs he alleges overwhelmingly demonstrate that a concern

11   for nuclear safety, not fraud, motivated his [Issue Reports] and related disclosures to the [U.S.

12   Nuclear Regulatory Commission].").  In the TAC, Ms. Gjovik tries to get around this by alleging

13   that she was "inquir[ing] if Ronald Sugar was involved in [Apple's] fraud [on the EPA, *e.g.*, trying

14   to conceal problems at Stewart 1] due to his conflicts of interest related to the property."  TAC ¶

15   171.  But simply labeling Apple's conduct "fraud" does not make it the kind of fraud covered by

16   SOX (*i.e.*, mail fraud, wire fraud, bank fraud, securities or commodities fraud).  Ms. Gjovik's

17   conduct here still seems to be motivated by a concern about safety, not fraud.[8]  In any event, this

18   specific alleged conflict of interest in handling the Stewart I office space would not be sufficiently

19

20   _____

     [8] To support its position that Ms. Gjovik was not reporting a concern about the kinds of fraud
21   identified in § 1514A, Apple has asked the Court to take judicial notice of the complaint Ms.
     Gjovik filed with the SEC.  *See* Mot. at 11; RJN No. 1, Ex. A (submission to SEC, dated
22   September 1, 2021).  Apple argues that it is appropriate for the Court to take judicial notice
     because (1) Ms. Gjovik references the complaint she made with the SEC in her TAC, *see* TAC ¶
23   169, and (2) she provided a copy of the complaint as an attachment in her prior motion for judicial
     notice.  *See* Docket No. 35-7, at 3-21.  *See, e.g.*, *Davis v. HSBC Bank*, 691 F.3d 1152, 1160 (9th
24   Cir. 2012) ("Under the 'incorporation by reference' doctrine . . . , 'a court may look beyond the
     pleadings without converting the Rule 12(b)(6) motion into one for summary judgment.'
25   Specifically, courts may take into account 'documents whose contents are alleged in a complaint
     and whose authenticity no party questions, but which are not physically attached to the [plaintiff
26   's] pleading.'").

27        Ms. Gjovik opposes judicial notice but Apple's argument above has merit.  Moreover, Ms.
     Gjovik's opposition – that the TAC does not rely on the document and/or that the document
28   cannot be authenticated – is not compelling.

22

1    material to give rise to a securities fraud claim.

2           Accordingly, the Court dismisses the SOX claim.  Dismissal is with prejudice, both

3    because of Ms. Gjovik's failure to respond directly to Apple's argument in her opposition and her

4    failure to articulate at the hearing new facts that would suggest a violation of the relevant criminal

5    fraud statutes or securities laws.

6    D.      Violation of the Dodd-Frank Act (Count 3)

7           In Count 3, Ms. Gjovik asserts a claim for violation of the Dodd-Frank Act.  The relevant

8    portion of the statute provides as follows:

9                   No employer may discharge, demote, suspend, threaten, harass,
                     directly or indirectly, or in any other manner discriminate against, a
10                   whistleblower in the terms and conditions of employment because of
                     any lawful act done by the whistleblower –
11
                     (i)      in providing information to the Commission in accordance
12                            with this section;

13                   (ii)     in initiating, testifying in, or assisting in any investigation or
                              judicial or administrative action of the Commission based
14                            upon or related to such information; or

15                   (iii)    in making disclosures that are required or protected under the
                              Sarbanes-Oxley Act of 2002 (15 U.S.C. 7201 et seq.), the
16                            Securities Exchange Act of 1934 (15 U.S.C. 78a et seq.),
                              including section 10A(m) of such Act (15 U.S.C. 78f(m)),
17                            section 1513(e) of title 18, United States Code, and any other
                              law, rule, or regulation subject to the jurisdiction of the
18                            Commission.

19   15 U.S.C. § 78u-6(h)(1)(A).  (The caption of Ms. Gjovik's TAC cites (iii) above as the relevant

20   subsection.)

21          The Supreme Court has noted that both SOX and Dodd-Frank

22                   shield whistleblowers from retaliation, but they differ  in important
                     respects.  Most notably, Sarbanes-Oxley applies to all "employees"
23                   who report misconduct to the Securities and Exchange Commission
                     (SEC or Commission), any other federal agency, Congress, or an
24                   internal supervisor.18 U. S. C. §1514A(a)(1).  Dodd-Frank
                     delineates a more circumscribed class; it defines "whistleblower" to
25                   mean a person who provides "*information relating to a violation of
                     the securities laws t*o the Commission."  15 U. S. C. §78u-6(a)(6).
26                   A whistleblower so defined is eligible for an award if original
                     information he or she provides to the SEC leads to a successful
27                   enforcement action.  §78u-6(b)-(g).  And, most relevant here, a
                     whistleblower is protected from retaliation for, *inter alia*, "making
28                   disclosures that are required or protected under" Sarbanes-Oxley,

                                            23

Northern District of California
United States District Court

the Securities Exchange Act of 1934, the criminal anti-retaliation
proscription at 18 U. S. C. §1513(e), or any other law subject to the
SEC's jurisdiction.  15 U. S. C. §78u-6(h)(1)(A)(iii).

*Dig. Realty Trust, Inc. v. Somers*, 583 U.S. 149, 152-153 (2018) (emphasis added).

As indicated in the discussion above, Ms. Gjovik did not directly respond to Apple's challenge to the Dodd-Frank claim; furthermore, she has failed to explain how she provided information relating to a violation of the securities laws.  Accordingly, dismissal of her Dodd-Frank claim, with prejudice, is warranted.

Ms. Gjovik's reliance on *Wadler v. Bio-Rad Labs., Inc.*, 141 F. Supp. 3d 1005 (N.D. Cal. 2015), is unavailing.  She argues that *Wadler* is factually similar to the instant case as it involved an employee who suspected a company of engaging in violations of the Foreign Corrupt Practices Act ("FCPA") and who started an investigation, "only to meet a variety of types of retaliation and obstruction."  Opp'n at 12.  But as Apple points out, the appellate decision in *Wadler* makes clear that a violation of the securities laws was implicated in the case because, as the defendant "correctly conceded in the district court," "one of the FCPA books-and-records provisions . . . is also an SEC regulation within the scope of [SOX]."  *Wadler v. Bio-Rad Labs, Inc.*, 916 F.3d 1176, 1185 (9th Cir. 2019).[9]

E.    Private Nuisance and Nuisance Per Se (Count 4)

In Count 4, Ms. Gjovik asserts a nuisance claim.  Specifically, she maintains two subclaims: (1) private nuisance and (2) private nuisance per se.  Each subclaim is based on Apple's conduct at (a) the ARIA factory (which was located close to Ms. Gjovik's apartment) and (b) Stewart 1 (where Ms. Gjovik's office was located and where the Superfund site was located).[10]

In 1872, the California Legislature codified a number of common law principles regarding the law of nuisance.  For example, the Legislature defined a "nuisance" in Civil Code section 3479 as

_____

[9] The Ninth Circuit ultimately held that *other* FCPA provisions were not rules or regulations of the SEC, and therefore could not support a Sarbanes-Oxley claim.  *See Wadler*, 916 F.3d at 1185.

[10] In the TAC, Ms. Gjovik also refers to an "absolute nuisance."  Ms. Gjovik seems to consider an absolute nuisance as something similar to a nuisance per se or an ultrahazardous activity – *i.e.*, as a basis for strict liability to apply.  *See* TAC ¶ 178.  Because Ms. Gjovik has already asserted both a nuisance per se and an ultrahazardous activity, any claim for absolute nuisance would appear to be duplicative.

24

United States District Court
Northern District of California

1
2
3

> anything that is "injurious to health, . . . or is indecent or offensive
> to the senses, or an obstruction to the free use of property, so as to
> interfere with the comfortable enjoyment of life or property, or
> unlawfully obstructs the free passage or use, in the customary
> manner, of any navigable lake, or river, bay, stream, canal, or basin,
> or any public park, square, street, or highway."

4   *Mendez v. Rancho Valencia Resort Partners, LLC*, 3 Cal. App. 5th 248, 261 (2016).

5       California law draws a distinction between public and private nuisances.

6
7
8
9

> A nuisance is considered a "public nuisance" when it "affects at the
> same time an entire community or neighborhood, or any
> considerable number of persons, although the extent of the
> annoyance or damage inflicted upon individuals may be unequal."
> A "private nuisance" is defined to include any nuisance not covered
> by the definition of a public nuisance and also includes some public
> nuisances.

10  *Id.* at 261-62 (citing Cal. Civ. Code § 3480-81).  Unlike a claim for public nuisance, "'[a] private

11  nuisance cause of action requires the plaintiff to prove an injury specifically referable to the use

12  and enjoyment of his or her land.'"  *Id.* at 262; *see also* CACI 2021 (essential factual elements for

13  a claim of private nuisance).

14
15
16
17
18
19

> [T]he [California] Supreme Court [has] outlined the elements of an
> action for private nuisance [as follows].  First, the plaintiff must
> prove an interference with his use and enjoyment of his property.
> Second, "the invasion of the plaintiff's interest in the use and
> enjoyment of the land [must be] substantial, i.e., that it cause[s] the
> plaintiff to suffer 'substantial actual damage.'"  Third, "'[t]he
> interference with the protected interest must not only be substantial,
> but it must also be unreasonable,' i.e., it must be 'of such a nature,
> duration or amount as to constitute unreasonable interference with
> the use and enjoyment of the land.'"

20  *Id.* at 262-63.  The second and third elements are to be judged by an objective standard.  *See id.* at

21  263.

22      California law also provides that, in certain instances, something may be deemed a

23  nuisance per se.

24
25
26
27

> [W]here the law expressly declares something to be a nuisance, then
> no inquiry beyond its existence need be made and in this sense its
> mere existence is said to be a nuisance per se. . . . [T]o rephrase the
> rule, to be considered a nuisance per se the object, substance,
> activity or circumstance at issue must be expressly declared to be a
> nuisance by its very existence by some applicable law.

28  *Beck Development Co. v. Southern Pac. Transp. Co.*, 44 Cal. App. 4th 1160, 1207 (1996); *see also*

*City of Costa Mesa v. Soffer*, 11 Cal. App. 4th 378, 382 (1992) ("[T]he legislature has the power to declare certain uses of property a nuisance and such use thereupon becomes a nuisance per se. . . . Nuisances per se are so regarded because no proof is required, beyond the actual fact of their existence, to establish the nuisance.") (internal quotation marks omitted); *Rincon Band of Luiseño Mission Indians etc. v. Flynt*, 70 Cal. App. 5th 1059, 1102 (2021) ("Nuisances per se are so regarded because no proof is required, beyond the actual fact of their existence, to establish the nuisance.") (internal quotation marks omitted).

### 1. Private Nuisance

Apple moves to dismiss the claim for private nuisance in part. Specifically, it moves to dismiss the private nuisance claim to the extent it is based on Apple's conduct at Stewart 1 (the Superfund site) as opposed to Apple's conduct at the ARIA factory. *See* Reply at 5 ("Apple has not moved to dismiss the private nuisance claim related to [the ARIA] facility."). Apple is not moving to dismiss the claim as related to the ARIA factory because it concedes Ms. Gjovik has met the requirement that "'[a] private nuisance cause of action requires the plaintiff to prove an injury specifically referable to the use and enjoyment of *his or her* land.'" *Mendez*, 3 Cal. App. 5th at 262 (emphasis added); *see also* CACI 2021 (providing that one of the essential elements of a claim for private nuisance is that "[name of plaintiff] [owned/leased/occupied/controlled] the property"). This is because Ms. Gjovik is asserting that that Apple's conduct at the ARIA factory affected her nearby apartment. In contrast, Stewart 1 is simply where Ms. Gjovik's office is located. *Cf. Barrous v. BP P.L.C.*, No. 10-CV-02944-LHK, 2011 U.S. Dist. LEXIS 113597, at *20-21 (N.D. Cal. Oct. 3, 2011) (in discussing standing to sue for tort claims, stating that "'[a]ny interest sufficient to be dignified as a property right' will support an action based on a private nuisance, including a tenancy for a term," but "'such right does not inure in favor of a licensee, lodger or employee'").

The Court dismisses the private nuisance claim to the extent it is based on Stewart 1. Apple's position has merit, and, notably, Ms. Gjovik does not address Apple's argument in her opposition. The dismissal is with prejudice.

United States District Court
Northern District of California

2.      Private Nuisance Pe Se

As for the claim for nuisance per se, Apple argues for dismissal on the basis that there is no law (including law passed by the state legislature) providing that running a factory (ARIA) or maintaining an office at a Superfund site (Stewart 1) is a nuisance per se. *See Costa*, 11 Cal. App. 4th at 382 (1992) (stating that "the legislature has the power to declare certain uses of property a nuisance and such use thereupon becomes a nuisance per se") (internal quotation marks omitted). Because the Court agrees with Apple's argument above, it need only concern itself with a claim of private nuisance per se as related to the ARIA factory, and not Stewart 1.

Ms. Gjovik's main response is that releasing "hazardous waste into the air and environment" must be a nuisance per se. TAC ¶ 176; *see also* Opp'n at 9 (asserting that "'[e]missions of hazardous substances into the environment have constituted nuisances per se'"; quoting *Espinosa v. Roswell Tower, Inc.*, 121 N.M. 306, 310 (N.M. Ct. App. 1995)). But Ms. Gjovik has failed to cite any *California* authority declaring the release of hazardous substances to be a nuisance. That the release of hazardous substances may be a violation of federal or state laws, *see, e.g.*, TAC ¶¶ 176 (referring to, *e.g.*, the Clean Air Act and California Health & Safety Code § 41700), does not automatically amount to a declaration by the state legislature that the conduct constitutes a nuisance per se. Therefore, the claim for nuisance per se is dismissed but with leave to amend, though the Court is skeptical whether such a claim can be stated.

To be clear, even if Ms. Gjovik were to decide *not* to amend the claim for nuisance per se, she would still have a "regular" claim for private nuisance based on the ARIA factory.

F.      Ultrahazardous/Abnormally Dangerous Activities (Count 5)

In Count 5, Ms. Gjovik makes a claim similar to the nuisance per se claim above – *i.e.*, that Apple should be held strictly liable for conducting ultrahazardous activities at (1) the ARIA factory and (2) Stewart 1.

> The modern rule of strict liability without fault for injuries resulting from an ultrahazardous activity was adopted in [California] by the decision in *Luthringer v. Moore* (1948) 31 Cal.2d 489.  Applying the standard set forth in the Restatement of Torts, the Supreme Court stated: "'One who carries on an ultra-hazardous activity is liable to another whose person, land or chattels the actor should recognize [are] likely to be harmed by the unpreventable miscarriage

27

1  of the activity for harm resulting thereto from that which makes the
2  activity ultra-hazardous, although the utmost care is exercised to
   prevent the harm. . . . An activity is ultra-hazardous if it (a)
3  necessarily involves a risk of serious harm to the person, land and
   chattels of others which cannot be eliminated by the exercise of the
4  utmost care, and (b) is not a matter of common usage. . . An activity
   is a matter of common usage if it is customarily carried on by the
   great mass of mankind or by many people in the community. . . .

5  *Tri-Star Dyeing & Finishing v. Brenntag Pac.*, No. 23STCV00357, 2023 Cal. Super. LEXIS

6  24088, at *7-8 (L.A. Super. Ct. Apr. 19, 2023).

7  Consistent with the above,

8  Section 520, Restatement Second of Torts enumerates the
   [following] factors to be considered in determining whether an
9  activity is "abnormally dangerous" or "ultrahazardous": "(a)
   existence of a high degree of risk of some harm to the person, land
10 or chattels of others; (b) likelihood that the harm that results from it
   will be great; (c) inability to eliminate the risk by the exercise of
11 reasonable care; (d) extent to which the activity is not a matter of
   common usage; (e) inappropriateness of the activity to the place
12 where it is carried on; and (f) extent to which its value to the
   community is outweighed by its dangerous attributes." Whether a
13 particular activity is abnormally dangerous is to be determined by
   the court "upon consideration of all the factors listed in this Section,
14 and the weight given to each that it merits upon the facts in
   evidence." Due to the interplay of the various factors, it is
15 impossible to define abnormally dangerous activities. "The essential
   question is whether the risk created is so unusual, either because of
16 its magnitude or because of the circumstances surrounding it, as to
   justify the imposition of strict liability from the harm that results
17 from it, even though it is carried on with all reasonable care. In
   other words, are its dangers and inappropriateness for the locality so
18 great that, despite any usefulness it may have for the community, it
   should be required as a matter of law to pay for any harm it causes
19 without the need of a finding of negligence." Thus, by its very
   nature, the issue of whether an activity is ultrahazardous cannot be
20 decided on demurrer.

21 *SKF Farms v. Superior Court*, 153 Cal. App. 3d 902, 906 (1984).[11]

22 In the instant case, Ms. Gjovik claims an ultrahazardous activity related to the ARIA

23 factory because, "[f]or decades," semiconductor fabrication "has been known to require

24 pyrophoric gases, which have a 'serious fire hazard,' combustible and flammable chemicals that

25

26 _____

27 [11] Note that "[t]he question of whether a case is a proper one for imposing strict liability is one of
   law for the court. Moreover, [what] facts are necessary to make an activity ultrahazardous . . . is a
28 matter for the judgment of the court." *Garcia v. Estate of Norton*, 183 Cal. App. 3d 413, 419
   (1986) (internal quotation marks omitted; concluding facts at trial provided "ample evidence from
   which the trial court could properly conclude that the subject activity was ultrahazardous").

28

1   must be 'carefully monitored and handled by experienced personnel.'" TAC ¶ 184. She also

2   maintains that the ARIA factory released substances identified as toxic air contaminants under

3   state and federal law for which "there is no safe level of exposure without 'significant adverse

4   health effects.'" TAC ¶ 185.

5       As for Stewart 1, Ms. Gjovik has less to say. Her allegations are conclusory in nature –

6   *e.g.*, "[o]perating a business on a Superfund mega-site with a pathway for vapor intrusion and

7   contaminants of concern, including TCE and Vinyl Chloride, is an ultrahazardous activity." TAC

8   ¶ 186.

9       Ms. Gjovik's claim for ultrahazardous activity survives Apple's 12(b)(6) challenge in part.

10  Regarding the ARIA factory, Ms. Gjovik has made allegations that there are chemicals used for

11  which there is no safe level of exposure, thus implying they are absolutely prohibited under any

12  circumstance. *Cf.* TAC ¶ 37 (alleging that "[m]any of Apple's chemicals at the plant were

13  characterized as 'extremely hazardous' or 'acutely hazardous' materials"). The claim is viable to

14  that extent and only to that extent. However, Ms. Gjovik has also included allegations suggesting

15  that there are some hazards (in particular, fire hazards) that can be managed with care, *see* TAC ¶

16  184 (alleging that the chemicals "must be 'carefully monitored and handled by experienced

17  personnel'"); that suggests the opposite of ultrahazardous. To that extent, the claim is not viable.

18  These chemicals are not absolutely prohibited.

19      As for Ms. Gjovik's claim for ultrahazardous activity based on Stewart 1, it also is not

20  viable. In contrast to above, here, Ms. Gjovik simply makes allegations that there are

21  "contaminants of concern." TAC ¶ 186. An issue with "contaminants of concern" is too vague.

22  At one point in her pleading, Ms. Gjovik suggests that there are contaminants of concern because

23  some of the chemicals are carcinogens. *See* TAC ¶ 42 ("The primary contaminants in the

24  groundwater contamination plume are chlorinated volatile organic compounds, including the

25  carcinogen trichloroethene ('TCE') and its daughter products cis-1,2-dischloroethene and vinyl

26  chloride."). But that fact *in and of itself* is not enough to raise a question of fact as to whether

27  Apple engaged in ultrahazardous activity. Carcinogens often may be used subject to regulations.

28      Furthermore, even if the Court were inclined to rule otherwise on the Stewart 1-based

United States District Court
Northern District of California

29

claim, Apple has fairly argued that the claim should be dismissed for the independent reason:

specifically, it is time barred. There is a two-year statute of limitations for the claim. *See* Cal.

Code Civ. Proc. § 335.1 (providing for a two-year limitations period for "[a]n action for assault,

battery, or injury to, or for the death of, an individual caused by the wrongful act or neglect of

another"); *id.* § 340.8(a) (providing that, "[i]n any civil action for injury or illness based upon

exposure to a hazardous material or toxic substance, the time for commencement of the action

shall be no later than either two years from the date of injury, or two years after the plaintiff

becomes aware of, or reasonably should have become aware of, (1) an injury, (2) the physical

cause of the injury, and (3) sufficient facts to put a reasonable person on inquiry notice that the

injury was caused or contributed to by the wrongful act of another, whichever occurs later").

Given that Ms. Gjovik filed suit on September 7, 2023, any claim that accrued before September

7, 2021, is time barred. Apple points out that, as alleged in the TAC, Ms. Gjovik told Apple in

March 2021 (*i.e.*, well before September 2021) that she was concerned about the safety of the

Superfund site and that she believed "her fainting spell in 2019 in her office was due to vapor

intrusion." TAC ¶ 51; *see also* TAC ¶ 35 (alleging that, in April 2021, Ms. Gjovik saw an

occupational exposure doctor, and the doctor's notes referred to a statement by Ms. Gjovik that

she had "'an unexplained episode of fainting at work in Sept 2019 at her office on a Superfund site

with a long history of vapor intrusion issues'"). This supports a time bar.

     Ms. Gjovik does not have much of a comeback in response. In her papers, she suggests

that there were different kinds of safety issues at Stewart 1 – *e.g.*, some related to the cracked

foundation and some related to the HVAC intake. *See, e.g.*, Opp'n at 9-10 ("Each location/vector,

occurrence, and type of injury may be a different claim. The exposure to the vapor intrusion from

the cracked floor is a different vector and exposure[] then [sic] the chlorinated solvent vapors

piped into the HVAC system . . . ."). But that gives short shrift to the fact that there was a single

contaminated site, from which Ms. Gjovik had a single injury. *See Berson v. Browning-Ferris

Indus.*, 7 Cal. 4th 926, 932 (1994) ("'[T]he statute of limitations begins to run when the plaintiff

suspects or should suspect that her injury was caused by wrongdoing, that someone has done

something wrong to her.' Aggrieved parties generally need not know *the exact manner in which*

United States District Court
Northern District of California

1    *their injuries were 'effected*, nor the identities of all parties who may have played a role therein.'")

2    (emphasis added).

3         The Court therefore allows the claim based on the Aria factory to proceed (in part), but not

4    Stewart 1.  The dismissal of the Stewart 1-related claim is with prejudice because the time bar

5    makes amendment futile.

6    G.    Violation of the Bane Civil Rights Act (Count 6)

7         In Count 6, Ms. Gjovik has asserted a claim for violation of the Bane Civil Rights Act.

8    The statute allows an individual to bring a private right of action if their "exercise or enjoyment of

9    rights secured by the Constitution or laws of the United States, or of rights secured by the

10   Constitution or laws of this state, has been interfered with, or attempted to be interfered with, as

11   described in subdivision (b)."  Cal Civ Code § 52.1(c).  Subdivision (b) refers to interference and

12   attempts to interfere by a "person or persons,[12] whether or not acting under color of law, . . . by

13   threat, intimidation, or coercion."  *Id.* § 52.1(b).

14        In the instant case, Ms. Gjovik identifies the following rights as having been interfered

15   with: (a) the right to provide testimony to agencies (*e.g.*, the NLRB); (b) the right to meet with

16   legislatures and appear as a legislative witness; (c) the right to report criminal acts to law

17   enforcement; (d) the right to privacy as protected by the California Constitution; and (e) the right

18   to free speech and assembly.  She alleges that Apple interfered with these rights via, *e.g.*,

19              threatening messages and social media posts about guns,
20              ruin/destruction, and even her death; sending threatening and
                dangerous packages in the mail; tampering with Gjovik's chattels to
21              the extent of conversion; surveilling and stalking Gjovik; hacking
                Gjovik's electronics and utilities; destroying Gjovik's chattels;
22              trespassing and burglarizing Gjovik's home; and other inherently
                violent misconduct.

23   TAC ¶ 188; *see also* TAC ¶ 189 (referring to a "psychological torture campaign" with

24   "harassment of Gjovik [coming] from all corners of the internet, including forums, social media

25   sites, email, texts, website webform, phone calls, blog posts, news articles, and other mediums").

26

27   [12] The Bane Act does not itself define "person."  However, the California Civil Code of which the
     Bane Act is a part provides that "the word person includes a corporation as well as a natural
28   person."  Cal. Civ. Code § 14.

United States District Court
Northern District of California

31

1      Apple launches a number of challenges to the civil rights claim – *e.g.*, (1) some of the

2   alleged misconduct (*e.g.*, termination of employment, a "harassing" letter from a law firm) cannot

3   support a Bane Act claim, and (2) some of the alleged misconduct was conduct undertaken by an

4   ex-Apple employee (Ms. Scarlett, the individual whom Ms. Gjovik refers to as Ms. Appleseed).

5   The most compelling arguments, however, are that (3) Ms. Gjovik does not identify any specific

6   Apple employee that engaged in misconduct, and (4) Ms. Gjovik has not sufficiently explained

7   how any of the alleged interferences with her rights were done via threat, intimidation, or

8   coercion. *See* Mot. at 19 ("Plaintiff alleges . . . vague and conclusory examples of purported

9   threats, coercion, and intimidation (*see* TAC ¶¶107-10, 188-89) but fails to *tie* them to any

10   purportedly interfered-with right; as such, they cannot ground a Bane Act claim.") (emphasis

11   added). The Court agrees that more clarity is needed on these issues, and therefore grants the

12   motion to dismiss, albeit with leave to amend.

13      Because the Court is giving Ms. Gjovik leave to amend this claim, it notes that the issue of

14   respondeat superior is a complicated matter that she should also address should she choose to

15   amend. Courts have recognized that respondeat superior can make a public entity vicariously

16   liable for a Bane Act violation. *See, e.g.*, *Uganda Knapps v. City of Oakland*, 647 F. Supp. 2d

17   1129, 1168-69 (N.D. Cal. 2009) (noting that, under California Government Code § 815.2(a), a city

18   can be held "vicariously liable under the theory of respondeat superior" if the employee was

19   "acting in the course and scope of employment"). There is no reason to think that respondeat

20   superior would not also apply to private entities such as Apple. *See Presbyterian Camp &*

21   *Conference Centers, Inc. v. Superior Court*, 12 Cal. 5th 493, 503 (2021) ("As a general rule,

22   '[u]nless expressly provided, statutes should not be interpreted to alter the common law, and

23   should be construed to avoid conflict with common law rules.") (internal quotation marks

24   omitted). That being said, respondeat superior does not mean that an employer is automatically

25   liable for all of its employee's acts.

26      Under the general doctrine, "an employer is vicariously liable for the torts of its employees

27   committed within the scope of the employment," and this is true even if the employee commits a

28   willful, malicious, or even criminal tort and the employer has not authorized the employee to

32

United States District Court
Northern District of California

1    commit the tort. *Lisa M. v. Henry Mayo Newhall Memorial Hospital*, 12 Cal. 4th 291, 296 (1995).

2    Furthermore, "California no longer follows the traditional rule that an employee's actions are

3    within the scope of employment only if motivated, in whole or part, by a desire to serve the

4    employer's interests." *Id.* at 297.

5         However, an employer will not be held liable for an "intentional tort that did not have a

6    causal nexus to the employee's work." *Id.* For instance, "'[i]f an employee inflicts an injury out

7    of personal malice, *not engendered by the employment*, the employer is not liable.'" *Id.* at 298

8    (emphasis in original).

9        The nexus required for respondeat superior liability – that the tort be
         engendered by or arise from the work – is to be distinguished from
10       "but for" causation. That the employment brought tortfeasor and
         victim together in time and place is not enough. We have used
11       varied language to describe the nature of the required additional link
         (which, in theory, is the same for intentional and negligent torts): the
12       incident leading to injury must be an "outgrowth" of the
         employment; the risk of tortious injury must be "'inherent in the
13       working environment'" or "'typical of or broadly incidental to the
         enterprise [the employer] has undertaken.'"
14
         Looking at the matter with a slightly different focus, California
15       courts have also asked whether the tort was, in a general way,
         foreseeable from the employee's duties. Respondeat superior
16       liability should apply only to the types of injuries that "'as a practical
         matter are sure to occur in the conduct of the employer's enterprise.'"
17       The employment, in other words, must be such as predictably to
         create the risk employees will commit intentional torts of the type
18       for which liability is sought.

19       In what has proved an influential formulation, the court in *Rodgers
         v. Kemper Constr. Co.*, *supra*, 50 Cal. App. 3d at page 618, held the
20       tortious occurrence must be "a generally foreseeable consequence of
         the activity." In this usage, the court further explained,
21       foreseeability "merely means that in the context of the particular
         enterprise an employee's conduct is not so unusual or startling that it
22       would seem unfair to include the loss resulting from it among other
         costs of the employer's business."
23

24   *Id.* at 298-99; *see also Alma W. v. Oakland Unified Sch. Dist.*, 123 Cal. App. 3d 133, 142-43

25   (1981) (stating that "[t]he test is not whether it is foreseeable that one or more employees might at

26   some time act in such a way as to give rise to civil liability, but rather, whether the employee's act

27   is foreseeable *in light of the duties* the employee is hired to perform") (emphasis in original).

28        Accordingly, if Ms. Gjovik does amend the Bane Act claim, she must allege specific facts

33

1    to support a basis for respondeat superior liability – *i.e.*, that an intentional tort committed by an

2    Apple employee had a causal nexus to the employee's work.

3    H.    Violation of the Ralph Civil Rights Act (Count 7)

4          In Count 7, Ms. Gjovik asserts a claim for violation of the Ralph Civil Rights Act. The

5    relevant provision of the statute states as follows:

> All persons within the jurisdiction of this state have the right to be
> free from any violence, or intimidation by threat of violence,
> committed against their persons or property because of political
> affiliation, or on account of any characteristic listed or defined in
> subdivision (b) or (e) of Section 51, or position in a labor dispute, or
> because another person perceives them to have one or more of those
> characteristics. The identification in this subdivision of particular
> bases of discrimination is illustrative rather than restrictive.

11   Cal Civ Code § 51.7(b)(1). Section 51(b) refers to the following characteristics: "sex, race, color,

12   religion, ancestry, national origin, disability, medical condition, genetic information, marital

13   status, sexual orientation, citizenship, primary language, or immigration status." *Id.* § 51(b).

14   Section 51(e) also refers to the same. *See id.* § 51(e). According to Ms. Gjovik, Apple threatened

15   and committed violent acts against her based on her making labor-related complaints with

16   government agencies (*e.g.*, the NLRB), her sex, her disabilities, her activism, and her membership

17   in a protected class of victims of environmental crime. *See* TAC ¶ 199-203.

18         Apple's main argument in its motion to dismiss is that Ms. Gjovik has failed to state a

19   claim because she "does not provide any facts regarding what Apple supposedly did or said to

20   threaten violence or commit violence against her." Mot. at 19. As above, more clarity is needed,

21   and thus dismissal is warranted, although with leave to amend. As above, should Ms. Gjovik

22   decide to amend this claim, any amendment must address whether there is a basis for respondeat

23   superior liability. *See, e.g.*, *Beliveau v. Caras*, 873 F. Supp. 1393, 1399 (C.D. Cal. 1995)

24   (addressing respondeat superior liability with respect to a claim under the Ralph Civil Rights Act).

25   I.    Violation of the California Whistleblower Act (Count 8)

26         In Count 8, Ms. Gjovik asserts a claim for violation of the California Whistleblower Act.

27   California Labor Code § 1102.5 provides in relevant part as follows:

28              (b)    An employer, or any person acting on behalf of the

United States District Court
Northern District of California

employer, shall not retaliate against an employee for [1]
disclosing information, or because the employer believes that
the employee disclosed or may disclose information, to a
government or law enforcement agency, to a person with
authority over the employee or another employee who has
the authority to investigate, discover, or correct the violation
or noncompliance, or for [2] providing information to, or
testifying before, any public body conducting an
investigation, hearing, or inquiry, if the employee has
reasonable cause to believe that the information discloses a
violation of state or federal statute, or a violation of or
noncompliance with a local, state, or federal rule or
regulation, regardless of whether disclosing the information
is part of the employee's job duties.

(c)     An employer, or any person acting on behalf of the
employer, shall not retaliate against an employee for refusing
to participate in an activity that would result in a violation of
state or federal statute, or a violation of or noncompliance
with a local, state, or federal rule or regulation.

Cal. Lab. Code § 1102.5. To establish a prima facie violation of § 1102.5, a plaintiff "must show

(1) she engaged in protected activity, (2) her employer subjected her to an adverse employment

action, and (3) a causal link between the two." *St. Myers v. Dignity Health*, 44 Cal. App. 5th 301,

314 (2019).

In the TAC, Ms. Gjovik makes two main allegations in support of her § 1102.5 claim:

specifically, that Apple retaliated against her after she complained to various government agencies

(*e.g.*, the NLRB, the U.S. Department of Labor, the California Department of Labor, the California

DFEH, the EEOC, the EPA, the California EPA, etc.) about (1) the Gobbler application[13] and (2)

environmental and safety violations. (Although Ms. Gjovik also refers, in the TAC, to her refusal

to participate in Apple's misconduct, *see* TAC ¶ 211, that allegation is also related to her

complaints about the Gobbler application and the environmental and safety violations.)

As to the Gobbler application, Apple identifies two alleged deficiencies with the § 1102.5

claim: (1) Ms. Gjovik does not sufficiently identify to whom she made her complaint; and (2) Ms.

Gjovik has not sufficiently identified what state or federal laws Apple allegedly violated. The

second argument is not persuasive. Ms. Gjovik has alleged that the Gobbler application violated

---

[13] *See* TAC ¶ 106 (alleging that Apple "was illegally harvesting her biometrics through its face
Gobbler app"); TAC ¶ 242 (alleging that the Gobbler app "was taking photos of her while
undressed and using the bathroom and engaged in sexual activity").

35

1   the right to privacy protected by the California Constitution.  *See* TAC ¶ 209.  That Ms. Gjovik

2   also cites other statutes that may not be on point, *see* TAC ¶ 209 (referring to California Labor

3   Code § 435 (recording employees in a restroom or locker room or room designated for changing)

4   and § 1101-02 (prohibiting certain employer conduct related to political activities or affiliations of

5   employees), is not dispositive since the § 1102.5 claim could be based on the California

6   Constitution.  However, Apple's first argument has some merit: based on the language of the

7   statute and the fair notice requirements of the Federal Rules of Civil Procedure, Ms. Gjovik should

8   provide information about to whom she complained about the Gobbler application.  Although Ms.

9   Gjovik has referred to various government agencies, it is not clear that she actually complained to

10  those agencies about the Gobbler application specifically as opposed to, *e.g.*, environmental and

11  safety issues.

12          As for the environmental and safety violations, Apple's only contention is that, again, Ms.

13  Gjovik has failed to adequately identify what state or federal laws it allegedly violated.  In the

14  TAC, Ms. Gjovik has referred to CERCLA, OSHA, the Resource Conservation and Recovery Act,

15  and the Clean Air Act but she has not cited to any specific provisions within those statutes.  The

16  Court need not decide whether the failure to cite specific provisions from these statutes deprived

17  Apple of fair notice of the scope of Ms. Gjovik's claim.  *See Ling La v. San Mateo County Transit*

18  *Dist.*, No. 14-cv-01768-WHO, 2014 U.S. Dist. LEXIS 131316, at *18 (N.D. Cal. Sept. 16, 2014)

19  ("La's allegation that she disclosed conduct in violation of the Davis-Bacon Act, related federal

20  statutes, and related regulations is also insufficient.  The point of notice pleading is to 'give the

21  defendant fair notice of what the claim is and the grounds upon which it rests.'  La's citation to a

22  whole statutory framework does not serve this purpose, in particular where La does not use her

23  opposition brief to clarify the specific statutes and regulations that were violated.").  At the

24  hearing, Ms. Gjovik indicated that she had a list of provisions at hand, and, as the Court is already

25  giving Ms. Gjovik leave to amend other claims, she may supplement this claim by including the

26  specific provisions in the amended pleading.

27  J.      Retaliation for Filing Complaints in Violation of California Labor Code § 98.6 (Count 9)

28          In Count 9, Ms. Gjovik asserts a claim for violation of California Labor Code § 98.6.  The

36

United States District Court
Northern District of California

United States District Court
Northern District of California

1    statute provides in relevant part as follows:

> A person shall not discharge an employee or in any manner
> discriminate, retaliate, or take any adverse action against any
> employee or applicant for employment because the employee or
> applicant engaged in any conduct delineated in this chapter
> [covering the Division of Labor Standards Enforcement], including
> the conduct described in subdivision (k) of Section 96,[14] and
> Chapter 5 (commencing with Section 1101) of Part 3 of Division
> 2,[15] or because the employee or applicant for employment has filed
> a bona fide complaint or claim or instituted or caused to be instituted
> any proceeding under or relating to their rights that are under the
> jurisdiction of the Labor Commissioner, made a written or oral
> complaint that they are owed unpaid wages, or because the
> employee has initiated any action or notice pursuant to Section
> 2699, or has testified or is about to testify in a proceeding pursuant
> to that section, or because of the exercise by the employee or
> applicant for employment on behalf of themselves or others of any
> rights afforded them.

Cal. Lab. Code § 98.6(a).  As with a § 1102.5 claim, a prima facie case for a § 98.6 violation consists of the following showing: "(1) [the plaintiff] engaged in protected activity, (2) her employer subjected her to an adverse employment action, and (3) a causal link between the two." *St. Myers*, 44 Cal. App. 5th at 314.

In the instant case, Ms. Gjovik's § 98.6 claim is predicated on the protections provided in California Labor Code § 96(k), 232, and 232.5.

- As noted above, § 96(k) refers to "[c]laims for loss of wages as the result of demotion, suspension, or discharge from employment for lawful conduct occurring during nonworking hours away from the employer's premises."  Cal. Lab. Code § 96(k); *see also Grinzi v. San Diego Hospice Corp.*, 120 Cal. App. 4th 72, 85 (2004) (stating that, "[b]y its plain language, . . . 98.6, subdivision (a) limits the rights of employers to discharge at-will employees for section 96, subdivision (k) conduct").

- Section 232 provides that no employer may, *inter alia*, "[d]ischarge, formally discipline, or otherwise discriminate against an employee who discloses the amount

---

[14] California Labor Code § 96(k) refers to "[c]laims for loss of wages as the result of demotion, suspension, or discharge from employment for lawful conduct occurring during nonworking hours away from the employer's premises."  Cal. Lab. Code § 96(k).

[15] Chapter 5 relates to political affiliations.

37

1    of his or her wages." *Id.* § 232(c).

2    • Section 232.5 provides that no employer may, *inter alia*, "[d]ischarge, formally

3       discipline, or otherwise discriminate against an employee who discloses

4       information about the employer's working conditions." *Id.* § 232.5(c).

5        In the pending motion, Apple does not move to dismiss the § 98.6 claim in its entirety.

6    Rather, it takes issue with the claim only to the extent that Ms. Gjovik asserts that she was

7    retaliated against for engaging in "lawful conduct asserting 'recognized constitutional rights.'"

8    TAC ¶ 216 (alleging that "Gjovik engaged in lawful conduct asserting 'recognized constitutional

9    rights' and 'rights under the Labor Code' . . . during nonworking hours – while she was on leave,

10   away from Apple's premises[;] Apple retaliated . . . because of some of this protected conduct").

11   Apple argues that Ms. Gjovik has failed to allege any specific constitutional rights that were

12   violated.  Apple adds that, to the extent the constitutional right claimed is the First Amendment or

13   comparable rights under the California Constitution, Ms. Gjovik cannot claim a violation because

14   those rights provide protection vis-à-vis a state actor only, and not a private one.  *See, e.g.*, *Grinzi*,

15   120 Cal. App. 4th at 85 ("[T]o successfully establish a tortious discharge claim under this

16   provision of section 98.6, Grinzi must allege her discharge occurred because she asserted a

17   recognized constitutional right. . . [But] the First Amendment free speech guarantees at issue are

18   only recognized against *government* interference.  Grinzi does not have a recognized constitutional

19   right protecting her against private acts implicating her employment under the First Amendment . .

20   . .") (emphasis in original); *Yu v. Univ. of La Verne*, 196 Cal. App. 4th 779, 790 (2011) ("A

21   person's free speech rights under the federal and state constitutions are not infringed unless there

22   is state action.").

23        Apple's argument above is meritorious; thus, dismissal is justified to the extent Ms. Gjovik

24   is claiming lawful conduct involving the assertion of constitutional rights.  To be sure, Ms. Gjovik

25   now refers, in her opposition brief, to a number of other rights under the California Constitution:

26   the right to privacy (art. I, § 1), the right to safety (art. I, § 1), the right to be free of discrimination

27   (art. I, §§ 8, 31), the right to be free from water pollution (art. X, § 2), and the right to be protected

28   as a victim of a crime (art. I, § 28), some of which do not require state action in the same way as

United States District Court
Northern District of California

38

1    the federal Constitution does.  *See* Opp'n at 7.  Those allegations, however, are not specified or

2    otherwise fairly noticed in the TAC, and thus the Court does not consider them at this juncture.

3    Ms. Gjovik has leave to amend the claim.

4    K.    Breach of Implied Contract and Breach of the Implied Covenant of Good Faith and Fair

5          Dealing (Count 12)

6          In Count 12, Ms. Gjovik asserts both (1) a claim for breach of implied contract and (2) a

7    claim for breach of the implied covenant of good faith and fair dealing.[16]

8          Regarding breach of implied contract, Ms. Gjovik admits at first that she and Apple

9    entered into an express employment agreement ("signed [and] written") in 2015.  TAC ¶ 234.

10   However, she then suggests that, at some point, the parties entered into an implied contract –

11   specifically, she was "no longer an at-will employee and could only be fired by Apple for cause,

12   as [she] had a reasonable belief, due to Apple's words or conduct, that she would only be

13   discharged for good cause."  TAC ¶ 234; *see also* TAC ¶ 235 (referring to "an implied contract

14   making her no longer an at-will employee").  Implicitly, Apple breached the implied contract

15   because it fired her in bad faith, *i.e.*, without good cause.

16         In addition to the above, Ms. Gjovik also seems to suggest that an implied contract was

17   created because one of her superiors told her that he appreciated her willingness to speak the truth

18   and that, if she continued to do so, "'good things will continue to follow.'  This was a promise to

19   Gjovik that if she reported unethical and unlawful conduct and held leaders to account, she would

20   have continued employment at Apple."  TAC ¶ 235.  Implicitly, Apple breached this implied

21   contract because it fired her in response to her complaints about unethical and unlawful conduct.

22         As for breach of the implied covenant of good faith and fair dealing, Ms. Gjovik alleges

23   that "Apple deliberately undermined [her] ability to fulfill her contractual obligations, frustrating

24   her ability to benefit from the agreement."  TAC ¶ 235.  However, Ms. Gjovik does not seem to

25

26   _____

27   [16] Ms. Gjovik seems to have shaped this claim based on comments made by Judge Seeborg in a
     different case involving Apple.  *See Banko v. Apple*, 20 F. Supp. 3d 749 (N.D. Cal. 2013).  Apple
     has asked the Court to take judicial notice of certain filings in *Banko*, *see* Docket No. 61 (RJN);
28   Ms. Gjovik has filed a conditional nonopposition.  *See* Docket No. 65 (Opp'n at 3) (indicating that
     there is no opposition so long as the Court takes into account additional filings made in *Banko*).

United States District Court
Northern District of California

39

1   include any other concrete factual allegations to flesh out this contention.  The one possible

2   allegation that might support a claim for breach of the implied covenant is that Apple fired Ms.

3   Gjovik "shortly after her annual performance review was due, which would be accompanied by a

4   performance bonus that she had already earned."  TAC ¶ 237.

5        Apple moves to dismiss the claim for breach of contract on the basis that Ms. Gjovik has

6   failed to allege any breach.  In support, it provides a copy of the offer letter that Apple gave to Ms.

7   Gjovik.  Apple asks the Court to take judicial notice of the document.  *See* RJN, Ex. B (offer

8   letter).  The Court does not take judicial notice of the offer letter given that Ms. Gjovik appears to

9   challenge its authenticity.  Admittedly, Ms. Gjovik may not be objecting in good faith here.  For

10   example, she asks who Ashley Henderson is (the name of the person on the offer letter), but

11   presumably that was Ms. Gjovik's prior name.

12        Even if the Court were to take judicial notice of the offer letter, however, that still would

13   not favor Apple.  The offer letter does state that "[y]our employment relationship with Apple will

14   be at will" and that, "[b]y signing this letter you agree that these are the only terms and conditions

15   of your employment and acknowledge that you have not relied upon any other promises or

16   representations, except those made in this letter."  RJN, Ex. B (Offer Letter at 2).  However, Ms.

17   Gjovik alleges in the TAC that, *after* the offer letter, Apple made representations to her that

18   created a new contract – an implied contract that she could only be terminated for cause.

19   Similarly, Ms. Gjovik alleges that, *after* the offer letter, Apple represented that she would have

20   continued employment if she continued to "tell the truth."  *Cf. Guz v. Bechtel Nat'l, Inc.*, 24 Cal.

21   4th 317, 352 (2000) (noting that an "employer's personnel policies and practices may become

22   *implied-in-fact* terms of the contract between employer and employee[;] [i]f that has occurred, the

23   employer's failure to follow such policies when terminating an employee is a breach of the

24   contract itself") (emphasis in original).

25        That being said, there is a more fundamental problem with the claim for breach of implied

26   contract: Ms. Gjovik does not identify what words or conduct Apple engaged in that gave rise to a

27   reasonable belief that she could only be terminated for cause.  Getting good performance reviews,

28   bonuses, and promotions *by themselves* is not enough; otherwise, employers would never engage

40

1    in that conduct for fear of converting at-will employment to employment that can be terminated

2    only for cause.  *See* TAC ¶ 234; *see also Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 680

3    (1988) (stating that, "[i]n the employment context, factors apart from consideration and express

4    terms may be used to ascertain the existence and content of an employment agreement, including

5    'the personnel policies or practices of the employer, the employee's longevity of service, actions or

6    communications by the employer reflecting assurances of continued employment, and the

7    practices of the industry in which the employee is engaged'").  To the extent Ms. Gjovik is relying

8    on the statement from her superior that good things would happen if she continued to tell the truth,

9    that is too vague a statement to constitute a promise.  *Compare Banko*, 20 F. Supp. 3d at 759

10   (holding that plaintiff had adequately alleged that "his employment agreement evolved to where

11   he could only be fired for cause" – *e.g.*, "Banko avers *repeated oral assurances of job security* and

12   consistent promotions, salary increases and bonuses during the term of his employment that

13   contributed to his reasonable expectation of discharge only for good cause") (emphasis added).

14           As for the claim for breach of the implied covenant, Apple argues that it is duplicative of

15   the claim for breach of contract itself.  But here, Apple does not seem to have taken into account

16   the suggestion in the TAC (albeit, not a clear one) that Apple timed her firing her to deprive her of

17   a performance bonus.  *See Guz*, 24 Cal. 4th at 353 n.18 (stating that "the covenant prevents a party

18   from acting in bad faith to frustrate the contract's *actual* benefits" – *e.g.*, "the covenant might be

19   violated if termination of an at-will employee was a mere pretext to cheat the worker out of

20   another contract benefit to which the employee was clearly entitled, such as compensation already

21   earned") (emphasis in original).

22           Accordingly, the Court dismisses the claim for breach of implied contract but allows the

23   claim for breach of the implied covenant to proceed.  The Court shall allow Ms. Gjovik to amend

24   her claim for breach of implied contract but only if she can do so in good faith, consistent with her

25   Rule 11 obligations.

26   L.      Intentional Infliction of Emotional Distress (Count 13)

27           In Count 13, Ms. Gjovik asserts a claim for intentional infliction of emotional distress

28   ("IIED").

United States District Court
Northern District of California

41

> A cause of action for intentional infliction of emotional distress
> exists when there is (1) extreme and outrageous conduct by the
> defendant with the intention of causing, or reckless disregard of the
> probability of causing, emotional distress; (2) the plaintiff's suffering
> severe or extreme emotional distress; and (3) actual and proximate
> causation of the emotional distress by the defendant's outrageous
> conduct. A defendant's conduct is "outrageous" when it is so
> extreme as to exceed all bounds of that usually tolerated in a
> civilized community. And the defendant's conduct must be intended
> to inflict injury or engaged in with the realization that injury will
> result.

*Hughes v. Pair*, 46 Cal. 4th 1035, 1050-51 (2009) (internal quotation marks omitted).[17]

The IIED claim is somewhat confusing. Ms. Gjovik starts out with a prefatory allegation

that Apple

> bugged [her] objects and home, sent her possessions to her in a box
> with broken glass and threatened it could contain a severed head, . . .
> repeatedly threatened to "ruin" and "destroy" her, and even sent her
> emails pretending to be government employees threatening her to
> stop speaking about Apple's chemical leaks.

TAC ¶ 238 (emphasis omitted). However, she then does not seem to predicate her IIED claim on

those allegations but rather spends the bulk of the claim talking about (1) her termination and

other employment-related retaliation, (2) the Gobbler application, (3) Apple's environmental

pollution; and (4) a retaliatory lawsuit which appears to have filed by Ms. Scarlett, not Apple. Her

opposition is consistent with this approach. The Court, accordingly, follows suit.

As a result, much of the IIED claim (although not all) is problematic. For example, on (1),

Apple correctly argues that a termination or retaliation by itself is not enough to establish

outrageous conduct. California courts have held "[m]anaging personnel is not outrageous conduct

beyond the bounds of human decency, [and] [a] simple pleading of personnel management activity

is insufficient to support a claim of intentional infliction of emotional distress, even if improper

motivation is alleged." *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 80 (1996); *see also*

*Light v. Dep't of Parks & Rec.*, 14 Cal. App. 5th 75, 101 (2017) (stating that "[a] retaliatory

motive alone is insufficient to sustain a claim for [IIED]"); *Garcia v. W. Coast Dental Servs.*, No.

---

[17] Ms. Gjovik indicates that her claim is based on not only California but also New York and
Massachusetts law. Because no party has argued that the law at issue matters, the Court focuses
on California law only.

1    22SMCV00228, 2023 Cal. Super. LEXIS 51588, at *16 (L.A. Cty. Super. Ct. Aug. 2, 2023)

2    (noting that, "[i]n the employment context, a pleading of personnel management activity is

3    insufficient to support a claim of IIED, even if improper motivation, such as retaliation, is

4    alleged"). While IIED claims may be asserted where there is, *e.g.*, race- or sex-based

5    discrimination, Ms. Gjovik has not alleged such discrimination in support of the IIED claim. *See*

6    *Light*, 14 Cal. App. 5th at 101 (stating that plaintiff "may pursue a claim for [IIED] in the

7    employment context where the conduct at issue violates FEHA and also satisfies the elements of

8    the claim").

9        Apple also correctly asserts that a common law claim based upon mere termination or

10   retaliation would be barred by workers' compensation exclusivity. This includes allegations of

11   whistleblower retaliation. *See id.* at 99 (noting that, even though it might seem that whistleblower

12   retaliation is not a risk inherent in the employment relationship, California courts have rejected the

13   argument); *see also Miklosy v. Regents of Univ. of Cal.*, 44 Cal. 4th 876, 903 (2008).

14       As for (2) (pertaining to the Gobbler application), there is a statute-of-limitations problem.

15   There is a two-year limitations period for IIED claims. *See* Cal. Code Civ. Proc. § 335.1

16   (providing for a two-year limitations period for "[a]n action for assault, battery, or injury to, or for

17   the death of, an individual caused by the wrongful act or neglect of another"). The TAC indicates

18   that Ms. Gjovik began complaining about the Gobbler application in August 2021, *see* TAC ¶¶ 80-

19   81 – more than two years before she filed her original complaint in September 2023.

20       As for (3) (relating to environmental pollution), there is a *partial* time bar. As discussed

21   above, Ms. Gjovik made complaints about the safety of Stewart 1 back in March 2021 (*i.e.*, more

22   than two years before the original complaint was filed). *See* TAC ¶ 51 (alleging that Ms. Gjovik

23   told Apple in March 2021 (*i.e.*, well before September 2021) that she was concerned about the

24   safety of the Superfund site and that she believed "her fainting spell in 2019 in her office was due

25   to vapor intrusion"). Ms. Gjovik could still have a claim based on the Aria factory; at least, Apple

26   has not made a statute-of-limitations argument.

27       Finally, on (4) (retaliatory suit brought by Ms. Scarlett), it appears that the alleged

28   retaliatory lawsuit took place after Ms. Scarlett was no longer an Apple employee. *See* TAC ¶ 137

1  (alleging that Ms. Scarlett "supposedly quit Apple in late 2021"); TAC ¶ 247 (alleging that the

2  "retaliatory litigation" was "filed in 2022"); *see also* SAC ¶ 879 (alleging that "Appleseed, as an

3  agent of Apple, filed retaliatory litigation against Gjovik in a Washington state court (including

4  evidence and testimony of the bogus FBI complaint, and testimony she also reported Gjovik to

5  law enforcement")).[18]  That being the case, Ms. Gjovik cannot argue respondeat superior as a basis

6  to hold Apple liable.  And the TAC does not contain any concrete allegations indicating that, post-

7  employment, Ms. Scarlett was part of some kind of conspiracy with Apple.

8  Accordingly, the only partial claim for IIED that survives is based on Apple's conduct at

9  the Aria factory (not time barred).  The Court gives Ms. Gjovik leave to amend if she can do so in

10  good faith.

11  M.  Negligent Infliction of Emotional Distress (Count 14)

12  In Count 14, Ms. Gjovik asserts a claim for negligent infliction of emotional distress

13  ("NIED").  Under California law, a claim for NIED is simply a claim for negligence; it is not an

14  independent tort.  *See Christensen v. Superior Ct.*, 54 Cal. 3d 868, 884 (1991).  Thus, a claim for

15  NIED consists of the traditional negligence elements: duty, breach of duty, causation, and

16  damages.  *See Belen v. Ryan Seacrest Prods., LLC*, 65 Cal. App. 5th 1145, 1165 (2021).

17  Here, Ms. Gjovik's NIED claim is predicated on the same facts asserted in support of the

18  IIED claim.  *See* TAC ¶ 252 ("The plaintiff incorporates and restates the 13th Cause of Action for

19  IIED [in the claim for NIED].").  Thus, it is not surprising that Apple has made one of the same

20  challenges to the NIED claim that it made for the IIED claim – *i.e.*, that the claim is preempted by

21  workers' compensation exclusivity.

22  Apple also raises the contention that it cannot be held liable for a NIED claim because it

23  had no duty to Ms. Gjovik.  *See Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 985 (1993)

24  (noting that a "duty may be imposed by law, be assumed by the defendant, or exist by virtue of a

25  special relationship"; adding that, if the duty is assumed by the defendant, then the defendant must

United States District Court
Northern District of California

---

[18] Although Ms. Gjovik suggests that the Court should not consider the SAC because it has been superseded by the TAC, it is fair to consider allegations to the extent they provide context on the TAC.

1    have "assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object").

2    Apple argues, for instance, that it did not assume a duty to Ms. Gjovik in which her emotional

3    condition was an object.  Ms. Gjovik does not clearly respond to this argument in her papers, and

4    thus the Court dismisses the NIED claim in its entirety.  The Court shall give Ms. Gjovik leave to

5    amend; in amending, she must include nonconclusory, factual, and plausible allegations as to duty.

6    She must also bear in mind the Court's ruling above on workers' compensation exclusivity.

7    N.    Violation of California Business & Professions Code § 17200 (Count 15)

8         Finally, in Count 15, Ms. Gjovik asserts a claim for violation of California Business &

9    Professions Code § 17200.  The claim seems to be based on three factual predicates: (1) Apple's

10   coercing employees to provide personal data for Apple's commercial use, such as with the

11   Gobbler application, *see* TAC ¶ 255 (alleging that no consent was obtained or compensation

12   provided); (2) Apple's coercing employees to be a part of invasive studies, *see* TAC ¶ 258; and (3)

13   Apple's establishment of a health care clinic, called AC Wellness, which it then used improperly.

14   *See* TAC ¶ 259.  (To be frank, the Court does not understand the allegations made with respect to

15   (3).)

16        Apple moves to dismiss the § 17200 claim on the basis that Ms. Gjovik lacks standing –

17   *i.e.*, she has failed to allege that she lost money to Apple which Apple should be forced to

18   disgorge.  *See* Cal. Bus. & Prof. Code § 17203 (providing that a "court may make such orders or

19   judgments . . . as may be necessary to restore to any person in interest any money or property, real

20   or personal, which may have been acquired by means of such unfair competition"); *see also*

21   *Shersher v. Superior Court*, 154 Cal. App. 4th 1491, 1497-98 (2007) (noting that the California

22   Supreme Court has "held that the only remedy expressly authorized by section 17203 was

23   restitution to individuals who had an ownership interest in money paid to the defendants; there

24   was nothing, either in the express language of the statute or in its legislative history, to indicate

25   that the legislature intended to authorize a court to 'order a defendant to disgorge all profits to a

26   plaintiff who does not have an ownership interest in those profits'").  As an initial matter, the

27   Court bears in mind that Ms. Gjovik seeks not only disgorgement as a remedy but also injunctive

28   relief.  *See* TAC ¶ 260.  Apple does not explain why she would not have standing to pursue

United States District Court
Northern District of California

45

United States District Court
Northern District of California

1    injunctive relief.  However, Apple otherwise makes a fair point on monetary relief, *i.e.*, that Ms.

2    Gjovik has not clearly alleged how she lost any money or property as a result of Apple's actions.

3         The Court therefore grants in part and deny in part the motion to dismiss: Ms. Gjovik has

4    standing to pursue injunctive relief but not monetary relief (based on the allegations in the TAC).

5    The Court gives Ms. Gjovik leave to amend.  If Ms. Gjovik chooses to amend, she should clarify

6    her claim based on AC Wellness.

7                              **III.    MOTION TO STRIKE**

8         In addition to a 12(b)(6) motion, Apple has filed a motion to strike pursuant to Federal

9    Rules of Civil Procedure 12(f).  Under Rule 12(f), a "court may strike from a pleading an

10   insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R.

11   Civ. P. 12(f).  Apple moves to strike:

12              (1) allegations that do not relate to the 15 claims asserted by Ms. Gjovik in the TAC;

13                  and

14              (2) allegations that relate to the claims that Apple is moving to dismiss (assuming that

15                  the Court dismisses those claims).

16        The motion to strike based on (2) is essentially moot.  As the Court is giving Ms. Gjovik to

17   leave to amend on most claims (although not all), she will file a new pleading that supersedes the

18   TAC.

19        As for (1), Apple has identified about 20 paragraphs that it believes has no relevance to

20   any of the 15 claims Ms. Gjovik has asserted.  Although Apple's position is not without any merit,

21   it is essentially premature.  At this early juncture, it is hard to say that the allegations in those

22   paragraphs are entirely irrelevant.  Apple makes a fair point that the case should be streamlined to

23   focus on the claims that really are potentially viable; however, if Apple is worried about far-

24   reaching discovery, that can be addressed through meet and confers and (if necessary) motion

25   practice.  The Court forewarns both parties that it expects discovery to be conducted in good faith.

26                              **IV.    CONCLUSION**

27        For the foregoing reasons, the Court rules as follows:

28              • Violation of RICO (Count 1).  The § 1962(a) claim is dismissed with prejudice.

46

United States District Court
Northern District of California

1   The § 1962(c) claim is dismissed with leave to amend.  The § 1962(d) claim is

2   dismissed with prejudice to the extent it is based on a § 1962(a) theory.  The §

3   1962(d) claim is dismissed with leave to amend to the extent it is based on a §

4   1962(c) theory.

5   • Violation of SOX (Count 2).  The claim is dismissed with prejudice.

6   • Violation of the Dodd-Frank Act (Count 3).  The claim is dismissed with prejudice.

7   • Private Nuisance and Nuisance Per Se (Count 4).  The claims based on Stewart 1

8   are dismissed with prejudice.  The per se claim based on the Aria factory is also

9   dismissed but with leave to amend.  The "regular" claim based on the Aria factory

10   is not dismissed as Apple did not challenge it.

11   • Ultrahazardous Activities (Count 5).  The claim related to the Aria factory is

12   dismissed but only in part.  The claim related to Stewart 1 is dismissed – and with

13   prejudice because of the time bar.

14   • Violation of the Bane Civil Rights Act (Count 6).  The claim is dismissed with

15   leave to amend.

16   • Violation of the Ralph Civil Rights Act (Count 7).  The claim is dismissed with

17   leave to amend.

18   • Violation of the California Whistleblower Act (Count 8).  The claim is dismissed

19   with leave to amend, and/or Ms. Gjovik may supplement the allegations in support

20   of the claim.

21   • Retaliation for Filing Complaints in Violation of California Labor Code § 98.6

22   (Count 9).  The claim is dismissed with leave to amend.

23   • Breach of implied contract and breach of the implied covenant of good faith and

24   fair dealing (Count 12).  The claim for breach of implied contract is dismissed with

25   leave to amend.  The claim for breach of the implied covenant is allowed to

26   proceed.

27   • Intentional infliction of emotional distress (Count 13).  The claim is dismissed with

28   leave to amend.  The only partial claim for IIED that survives at this juncture is

47

1    based on Apple's conduct at the Aria factory (not time barred).

2    • Negligent infliction of emotional distress (Count 14). The claims is dismissed with

3    leave to amend.

4    • Violation of California Business & Professions Code § 17200 (Count 15). The

5    claim is dismissed with leave to amend. Ms. Gjovik has standing to seek injunctive

6    relief but she has not alleged how she has standing for monetary relief.

7    As for the motion to strike, the Court denies it but without prejudice.

8    Ms. Gjovik shall file an amended complaint (again, within the page limits previously set

9    by the Court) by June 17, 2024. Apple shall then file a response (whether an answer or another

10   motion to dismiss) by July 15, 2024.

11   Although the Court is giving Ms. Gjovik leave to amend on the bulk of the dismissed

12   claims, it suggests that she use some discretion in deciding which claims to amend (as the Court is

13   not requiring her to amend). As the Court indicated at the hearing, some claims can probably be

14   amended such that they would survive a 12(b)(6) challenge (assuming, as likely, that Apple

15   responds to an amended pleading with another motion to dismiss). These claims are largely

16   predicated on the theory that Apple retaliated against Ms. Gjovik for complaining about safety.

17   On the other hand, there are also some claims that the Court views with skepticism. For these

18   claims, the Court is not able to say at this juncture that they are futile; however, their viability

19   appears problematic. It also is not clear that Ms. Gjovik needs them in her suit; Ms. Gjovik

20   conceded as much by stating at the hearing that she does not intend to litigate all of her claims to a

21   jury, should the case reach that stage). There are questions as to what these claims really add to

22   her suit.

23   At the hearing, Ms. Gjovik indicated that she was including these claims to ensure her

24   ability to get broad discovery. But Apple is not contesting (at this point at least) two of her claims

25   (Counts 10 and 11), and these are two of her *primary* claims; thus, Ms. Gjovik's discovery

26   concern seems to be unfounded or at least overstated. Furthermore, it is more than likely that, if

27   Ms. Gjovik were to replead, *e.g.*, her § 1962(c) claim or Bane and Ralph civil rights claims, Apple

28   would respond with another motion to dismiss, which, in the long run, means that resolution on

United States District Court
Northern District of California

48

1    her primary claims would be delayed.  Although Ms. Gjovik is free to litigate her case as she

2    chooses (so long as she does so in good faith and in compliance with her Rule 11 obligations), it is

3    not clear that, as a practical matter, the benefit, if any, is worth the burden (*e.g.*, pleading a § 1962

4    claim is not an easy task given, *e.g.*, the multiple elements needed for a viable claim).

5         The Court sets an initial case management conference ("CMC") for **July 16, 2024, at 1:30**

6    **p.m.**  The parties shall file a joint CMC statement one week in advance.

7         This order disposes of Docket Nos. 48, 49, and 64.

8

9         **IT IS SO ORDERED**.

10

11   Dated: May 20, 2024

12

13   _____

14   EDWARD M. CHEN
     United States District Judge

1

2

3

4                    UNITED STATES DISTRICT COURT

5                  NORTHERN DISTRICT OF CALIFORNIA

6

7    ASHLEY M GJOVIK,                          Case No.  23-cv-04597-EMC

8                 Plaintiff,
                                               **ORDER DENYING PLAINTIFF'S**
9          v.                                  **MOTION FOR JUDICIAL NOTICE;**
                                               **AND DISMISSING PLAINTIFF'S**
10   APPLE INC.,                               **SECOND AMENDED COMPLAINT**

11                 Defendant.
                                               Docket Nos. 35, 37
12

13

14

15        Currently pending before the Court is Plaintiff's motion for judicial notice.  Having

16   considered the parties' papers, the Court finds this matter suitable for resolution without oral

17   argument.  The motion for judicial notice is hereby **DENIED** without prejudice as moot.

18        At the time Plaintiff submitted her request for judicial notice, there was a pending motion

19   to dismiss Plaintiff's first amended complaint ("FAC").  Plaintiff had filed an opposition to the

20   motion but had also filed a second amended complaint ("SAC").  When Plaintiff filed her request

21   for judicial notice, she stated that she was submitting it both (1) in support of her opposition to

22   Defendant's motion to dismiss the FAC and (2) in support of her SAC.

23        Because Plaintiff had filed a SAC, Defendant withdrew its motion to dismiss the FAC.

24   This rendered the reason in (1) above moot.  As for (2), Plaintiff did not need the mechanism of a

25   request for judicial notice to support her SAC.  She could have simply attached the exhibits at

26   issue to her SAC.  Moreover, once Defendant filed a motion to dismiss the SAC (as it now has

27   done), she could have submitted a *new* request for judicial notice in support of her opposition to

28   *that* motion.  Accordingly, the Court denies the motion for judicial notice as moot.

United States District Court
Northern District of California

1    This leads the Court to Plaintiff's operative pleading, the SAC.  This is the third pleading

2  filed by Plaintiff.

3        • Her original complaint was more than 150 pages; contained 440 paragraphs; and

4          asserted ten causes of action.

5        • Her FAC was more than 330 pages; contained 1,121 paragraphs; and asserted

6          twelve causes of action.

7        • The operative SAC is more than 650 pages; contains 1,620 paragraphs; and asserts

8          twelve causes of action.

9    Defendant has filed a motion to dismiss and a motion to strike with respect to the SAC.

10  The Court does not adjudicate those motions because it *sua sponte* **DISMISSES** the SAC for

11  failure to comply with Federal Rule of Civil Procedure 8.  *See In re Merrill Lynch & Co., Inc.*

12  *Research Rpts. Sec. Litig.*, 218 F.R.D. 76, 77-78 (S.D.N.Y. 2003) (dismissing 98-page complaint

13  consisting of 367 paragraphs; noting that, "[w]hen a complaint is not short and plain, or its

14  averments are not concise and direct, 'the district court has the power, on motion or *sua sponte*, to

15  dismiss the complaint'") (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)).

16    Rule 8(a) provides that "[a] pleading that states a claim for relief must contain: . . . (2) a

17  short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ.

18  8(a)(2).  Rule 8(d) provides that "[e]ach allegation must be simple, concise, and direct."  Fed. R.

19  Civ. P. 8(d)(1).  "'Taken together, [these rules] underscore the emphasis placed on clarity and

20  brevity by the federal pleading rules."  *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 702 (3d Cir.

21  1996).  A complaint must "'be presented with clarity sufficient to avoid requiring a district court

22  or opposing party to forever sift through its pages in search' of the nature of the plaintiff's claim."

23  *Glover v. FDIC*, 698 F.3d 139, 147 (3d Cir. 2012) (quoting *Jennings v. Emry*, 910 F.2d 1434,

24  1436 (7th Cir. 1990)); *see also United States ex Rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d

25  374, 378 (7th Cir. 2003) ("Rule 8(a) requires parties to make their pleadings straightforward, so

26  that judges and adverse parties need not try to fish a gold coin from a bucket of mud.  Federal

27  judges have better things to do, and the substantial subsidy of litigation (court costs do not begin

28  to cover the expense of the judiciary) should be targeted on those litigants who take the

2

1    preliminary steps to assemble a comprehensible claim.").

2        Plaintiff's SAC violates Rule 8. It is, as noted above, more than 650 pages and contains

3    1,620 paragraphs. Moreover, if the Court were to deem the exhibits attached to Plaintiff's request

4    for judicial notice as exhibits to the SAC, that would add another 1,500 pages (approximately) to

5    her pleading. "While a complaint's excessive length alone is not determinative for a Rule 8(a)

6    dismissal, its excessive length compounded by a lack of clarity should deem it unacceptable."

7    *Parker v. Learn the Skills Corp.*, No. 03-6936, 2004 U.S. Dist. LEXIS 21499, at *4-5 (E.D. Pa.

8    Oct. 25, 2004). Here, Plaintiff delves into minute detail about her relationship with Defendant

9    starting in 2015 (for some 300 pages). She then goes into each of her twelve claims, sometimes

10   assuming knowledge of the 300 pages of background and other times providing even more detail.

11   The pleading, as a result, is difficult to follow – one cannot see the forest through the trees. *Cf.*

12   *Jacob v. Trump*, No. 21-cv-00261-JD, 2021 U.S. Dist. LEXIS 6894, *2-3 (N.D. Cal. Jan. 13,

13   2021) (stating that "[t]he massive length of the complaint exponentially compounds its lack of

14   clarity and readability"). The Court acknowledges that Defendant was able to craft a response to

15   Plaintiff's SAC in spite of its density; but presumably, that is because has engaged with Plaintiff

16   over many years. The Court is not in the same position and thus does not have the same

17   advantage.

18       Although the Court is dismissing the SAC, it gives Plaintiff an opportunity to file a third

19   amended complaint ("TAC"), one that complies with Rule 8. The Court recognizes that Plaintiff

20   has a long history with Defendant and that some of her claims are complex (*e.g.*, RICO).

21   Nevertheless, this is not the kind of case that warrants a complaint hundreds of pages in length.

22   Moreover, Plaintiff is not expected to try the entirety of her case in the complaint. The Court

23   notes that even her original complaint – which was more than 150 pages and contained 440

24   paragraphs – failed to comply with Rule 8. Accordingly, any amended complaint that Plaintiff

25   files shall be no longer than 75 pages in length. Plaintiff also cannot use exhibits attached to the

26   amended complaint as a means to bypass this page limit. The Court notes that Plaintiff appears to

27   have a J.D. *See* SAC ¶ 12. That being the case, the Court is confident that Plaintiff can draft a

28   complaint that contains the necessary details but that does not go into every nuance and aspect of

United States District Court
Northern District of California

3

Case 3:23-cv-04597-EMC   Document 46   Filed 01/30/24   Page 4 of 4

1  her case.

2        For the reasons stated above, the Court (1) denies Plaintiff's motion for judicial notice and

3  (2) dismisses her SAC but with leave to amend.  Because the Court is dismissing the SAC,

4  Defendant's motion to dismiss and motion to strike, *see* Docket Nos. 41-42 (motions), are denied

5  as moot.

6        Plaintiff has until February 27, 2024, to file her TAC.  Defendant shall then have until

7  March 26, 2024, to file a response, whether an answer or a motion(s).

8        This order disposes of Docket Nos. 35, 37, 41, and 42.

9

10       **IT IS SO ORDERED**.

11

12  Dated: January 30, 2024

13

14  _____

15  EDWARD M. CHEN
    United States District Judge

United States District Court
Northern District of California