CASE NO. 25-2028

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

**ASHLEY M. GJØVIK**, *an individual*,

*Plaintiff-Appellant*

v.

**APPLE INC.**, *a corporation*,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Northern District of California
No. 3:23-CV-04597
The Honorable Judge Edward M. Chen

---

## APPELLANT'S EXCERPTS OF RECORD
## VOLUME III | OBJECTIONS

---

**Ashley M. Gjøvik, JD**
*In Propria Persona*
2108 N. St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

i

**Ashley M. Gjovik, JD**
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# United States District Court

## Northern District of California

| | |
|---|---|
| **Ashley M. Gjovik**, *an individual*, | Case No. 3:23-CV-04597-EMC |
| Plaintiff, | *Discovery Judge:* |
| | The Honorable Judge Westmore |
| vs. | |
| | **Plaintiff's Objections to Defendant's filing at Dkt. 178 re: Discovery Disputes** |
| **Apple Inc.**, a corporation, | |
| Defendant. | |

# OBJECTIONS

1.      Plaintiff, Ashley Gjovik, respectfully submits the following Objections to Defendant's filing at Dkt. No. 178. Defendant Apple Inc. has repeatedly misrepresented its position regarding meet-and-confer efforts, discovery obligations, and judicial oversight. Apple has:

- Refused to meet and confer in good faith while falsely claiming it has always been willing.
- Failed to engage in required discovery discussions while simultaneously accusing Plaintiff of delay.
- Contradicted its own statements regarding discovery deadlines; misrepresenting court deadlines to hold Plaintiff accountable for deadlines the Plaintiff never received; claimed discovery obligations still exist despite a stay, while refusing to engage in discussions about those obligations.
- Attempted to obstruct judicial oversight to avoid accountability, and while refusing to cooperate.
- Set arbitrary conditions on meet-and-confers to limit transparency and to obstruct progress. Set financial barriers to transcription.
- Failed to provide privilege logs and discovery responses, while demanding compliance from Plaintiff; refused to create a discovery plan, in violation of the court's repeated directives.
- Misrepresented facts to the court regarding discovery disputes.

## I.  APPLE FALSELY CLAIMS IT WAS ALWAYS WILLING TO MEET AND CONFER

2.      In Apple's objections, Apple asserts that it has "*always been willing*" to meet and confer with Plaintiff. However, Apple's own email communications refute this claim. Whenever Plaintiff repeatedly reached out for structured discussions – Apple either ignored her, delayed responses, or outright refused.

— 1 —

| Date | Apple's Written Statement |
|---|---|
| *Sept. 7 2023* | *Civil lawsuit filed* |
| July 7, 2024 | *"We remain willing to meet and confer with you in real-time on Monday, July 8 as scheduled regarding issues in the N.D. Cal. matter, but do not agree to your recording that conversation nor to your inviting an individual unaffiliated with the case to attend."* |
| July 10, 2024 | *"We do not see the necessity for a meeting at this stage and prefer to proceed with written communications."* |
| August 3, 2024 | *"We will get back to you regarding a meeting after reviewing internal matters."* |
| August 13, 2024 | *"We think it is unlikely that the magistrate judge will proactively reach out to the parties, but instead will get involved at the parties' request."* |
| September 10, 2024 | *"As discovery has not officially begun, we find your requests premature."* |
| September 25, 2024 | *"We will seek Magistrate Judge Westmore's assistance at the appropriate time."* |
| September 25, 2024 | *"We do not believe those topics are ripe for discussion, as discovery has been stayed."* |
| September 25, 2024 | *"We will not be drafting a joint statement to Judge Westmore at this time."* |
| October 7, 2024 | *"We do not consent to involving the court at this juncture."* |
| Feb. 7, 2025 | *"Once Judge Chen rules on the motion to dismiss and modifies the October 1 Order, we are also happy to confer with you on a discovery plan."* |
| Feb. 27 2025 | *"Apple has always been and remains willing to [meet and confer]. Plaintiff's Motion for Reconsideration therefore should be denied."* |

— 2 —

PLAINTIFF'S OBJECTIONS | CASE NO. 3:23-CV-04597-EMC

3.     Apple claims it has always been willing to meet and confer, but they also expressly refuse to meet. FRCP requires meaningful meet-and-confer discussions, not just unilateral written statements. Apple asserts that Plaintiff did not attempt to meet and confer before filing her motion. However, Plaintiff repeatedly sought Apple's participation. Plaintiff's emails show repeated requests for meet-and-confer discussions, which Apple ignored. The plaintiff explicitly asked for Apple's participation before escalating the matter to the court. Apple cannot claim the Plaintiff failed to meet and confer when they were the ones stalling the process.

4.     Apple refuses to discuss key discovery issues by claiming they are not '*ripe,*' even though discovery obligations continue. They refuse to participate while simultaneously demanding Plaintiff produce documents. This is *Schrödinger's Discovery*—it both exists and doesn't, depending on what benefits Apple.

5.     Apple asserts that court supervision is unnecessary, yet its repeated obstruction tactics necessitate judicial intervention. Apple misrepresents the role of the magistrate judge, implying that oversight is optional and controlled by Apple. Apple threatens to involve Judge Westmore "*at the appropriate time*" but delays when Plaintiff requests oversight. Apple refuses to draft a joint discovery statement, even though court rules and Judge Westmore expects parties to work together before presenting disputes. Apple's refusal blocks a fair process, as joint statements allow the court to efficiently address issues.

6.     Apple suggests that oversight from Judge Westmore is entirely discretionary, implying that the court will only intervene if Apple allows it. The court has an independent role in managing discovery disputes, and Apple's attempt to downplay that role is improper. Apple later claims that Plaintiff does not need court intervention—even though Apple previously acknowledged it would be necessary.

7.      Apple threatens to involve the judge selectively, only when it benefits them. Meanwhile, they oppose judicial supervision when Plaintiff requests it. Defendants do not control when judicial intervention is warranted. Apple opposes court oversight while refusing to meet and confer, effectively blocking any meaningful progress. Emails prove that Apple has engaged in obstruction and bad-faith litigation tactics. Apple only objects to court supervision because they do not want accountability. Given Apple's extensive resources and history of procedural gamesmanship, judicial oversight is essential.

**Legal Precedent:**
- *Haeger v. Goodyear Tire & Rubber Co.*, 813 F.3d 1233 (9th Cir. 2016) – The Ninth Circuit upheld sanctions where a party engaged in bad faith by refusing to cooperate in discovery – including contradictory and obstructive litigation conduct.
- *Transamerica Life Ins. Co. v. Arutyunyan*, 2024 WL 1238402 (9th Cir. 2024) – Court sanctioned parties for failing to comply with meet-and-confer obligations before filing discovery motions.
- Northern District of California Local Rule 37-1(a) – Requires parties to meet and confer in good faith before discovery disputes are raised with the court.
- Northern District of California Local Rule 37-3 – Recognizes judicial intervention when one party refuses to participate in discovery oversight.
- FRCP 11(b)(3) -- False or Misleading Statements to the Court
- FRCP 16(f) – Failure to Participate in Pretrial Conferences in Good Faith
- FRCP 16(f) -- Sanctions for Discovery Abuse
- FRCP 16(f) -- Court's Authority to Supervise Discovery
- FRCP 16(f) --Sanctions for Failing to Participate in Required Case Management Procedures
- FRCP 26(f) -- Meet and Confer Obligation
- FRCP 26(f) -- Fair Meet and Confer Practices
- FRCP 26(f) -- Misleading Statements About Discovery Procedures
- FRCP 26(f) – Confusing and Misleading Discovery Communications
- FRCP 26(f) – Failure to create a discovery plan in good faith.
- FRCP 16(f) -- Misrepresenting the Role of the Magistrate Judge in Case Management

— 4 —

- FRCP 26(g)(1) – Duty to Engage in Discovery in Good Faith
- FRCP 37(a)(3)(B) -- Failure to Participate in Discovery in Good Faith
- FRCP 37(a)(4) – Sanctions for failing to cooperate in discovery.
- FRCP 37(a)(4) -- Sanctions for Discovery Gamesmanship
- FRCP 37(b)(2) -- Sanctions for Failing to Comply with Discovery Orders

## II. CONCLUSION

8.    Apple's documented refusals to meet and confer, contradictory statements, and obstructionist behavior violate the FRCP and legal precedent. Plaintiff respectfully requests that the Court:

- **Grant Plaintiff's motion for reconsideration.**
- **Order Apple to engage in discovery in good faith under judicial supervision.**

Dated: Feb. 28 2025

**/s/ Ashley M. Gjovik**

*Pro Se Plaintiff*

**Email:** legal@ashleygjovik.com

**Physical Address**:
Boston, Massachusetts

**Mailing Address:**
2108 N St. Ste. 4553 Sacramento, CA, 95816

**Phone:** (408) 883-4428

**Ashley M. Gjovik, JD**
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# United States District Court

## Northern District of California

|  |  |
|---|---|
| **Ashley M. Gjovik**, *an individual*, | Case No. 3:23-CV-04597-EMC |
| Plaintiff, | **Plaintiff's Notice of** |
| vs. | **Intention to File a** |
|  | **Motion to Strike &** |
|  | **Objections re: Dkt 176** |
| **Apple Inc.**, a corporation, |  |
| Defendant. |  |

— 1 —

1.    Plaintiff, Ashley Gjovik, respectfully submits the following Notice of her intent to file a Motion to Strike the fourth non-party Declaration filed to this case, added to Dkt No. 176 today at 9:53 AM today.

2.    The Declaration at Dkt. No. 176 makes numerous demonstrably false statements that are material and highly prejudicial to the Plaintiff, and that can rebutted by on-hand evidence, which will be included in the Plaintiff's Declaration supporting the Motion to Strike.

3.    Because a decision on Defendant's Motion to Dismiss is pending, and the Declaration was in support of Defendant's Motion to Dismiss (assumably the *IIED – Outrageous Conduct* claim), the Plaintiff respectfully asks the court to please wait to issue the Decision (if it is to consider the content in this latest non-party Declaration), until the Plaintiff can file the Motion to Strike. The Plaintiff intends to file the Motion to Strike and supporting Declaration by end of day Sunday March 2nd 2025, if not sooner.

Dated: Feb. 27 2025

_____

**/s/ Ashley M. Gjovik**

*Pro Se Plaintiff*

**Email:** legal@ashleygjovik.com
**Physical Address**:
Boston, Massachusetts
**Mailing Address:**
2108 N St. Ste. 4553 Sacramento, CA, 95816
**Phone:** (408) 883-4428

— 2 —

**Ashley M. Gjovik, JD**
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# United States District Court

## Northern District of California

| | |
|---|---|
| **Ashley M. Gjovik**, *an individual*, | CAND No. 3:23-CV-04597-EMC |
| | 9th Cir No.: 24-6058 |
| Plaintiff, | |
| | **Discovery Dispute** |
| vs. | |
| | **Plaintiff's Motion for Reconsideration** |
| **Apple Inc.**, a corporation, | |
| | Fed. R. Civ. P. 26, 37 |
| Defendant. | Civ. L.R. 26, 37 |
| | Prof. Conduct. Sect. 9 |

— 1 —

## Motion for Reconsideration

1. Plaintiff, Ashley Gjovik, respectfully submits the following Motion for Reconsideration to Judge Westmore pertaining to the Order at Docket No. 170.

2. This litigation has been ongoing since July 2021. Plaintiff has repeatedly tried to meet and confer with the Defendant, including the counsel on this civil lawsuit, but every time the Plaintiff tried, the Defendant would not engage in good faith. There are hundreds of pages of transcripts and email records the Plaintiff can provide the court to prove this is true, if the court will allow it.

3. Further, last year, the Defendant (via these counsel) made unlawful threats and coercive statements to the Plaintiff during a meet and confer (captured in multiple NLRB charges against the Defendant, see Exhibit B), and then also attempted to misrepresent the meet and confer conversations as some sort of misconduct by the Plaintiff (also captured in NLRB charges, see Exhibit C), followed by illegal demands to the Plaintiff for the Plaintiff to delete evidence of the meet and confer meeting that proved the allegations against the Plaintiff were false and made with malice (as reported to the FBI and NLRB, see Exhibit D).

4. On July 16 2024, in response to complaints made by the Plaintiff about these issues, The Honorable Judge Chen addressed these open disputes and the Plaintiff's concerns, by ordering the following:

> **THE COURT: I'm going to allow the magistrate judge to determine what is the best process for you all to meet-and-confer, whether you meet and confer in a physical place, maybe with a magistrate judge, or, you know, you can talk to the magistrate judge about the disputes you've had and whether it makes any sense or not, at this point, until further developments.**

*See*, Exhibit A.

5. The document filed by Defendant at Docket No. 168 (a document not authorized by the Standing Order at all) made multiple demonstrably false statements and assertations against the Plaintiff, which appear to have prejudiced the court against the Plaintiff, without an opportunity for the Plaintiff to defend

— 2 —

herself or to be heard.

6.    The Plaintiff respectfully please requests reconsideration of her request for a Judge-supervised meet and confer telephone conference, as prescribed by the Honorable Judge Chen last year, due to the open and ongoing discovery disputes between the parties.

7.    Plaintiff attempted to comply with Judge Westmore's Standing Order in every other way she could, including paying $75.00 in order to have physical copies of her letters delivered to the Courthouse as Chambers Copies. See, Exhibit E. Thank you for reconsidering this matter.

Dated Feb. 20 2025

Respectfully:

/s/ **Ashley M. Gjovik**

*Pro Se Plaintiff*

**Email:** legal@ashleygjovik.com

**Physical Address**:
Boston, Massachusetts

**Mailing Address:**
2108 N St. Ste. 4553 Sacramento, CA, 95816

**Phone**: (408) 883-4428

PLAINTIFF'S MOTION FOR RECONSIDERATION | CASE NO. 3:23-CV-04597-EMC

**Ashley M. Gjovik, JD**
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# United States District Court

## Northern District of California

| | |
|---|---|
| **Ashley M. Gjovik**, *an individual*, | CAND No. 3:23-CV-04597-EMC |
| | 9th Cir No.: 24-6058 |
| Plaintiff, | |
| | **Discovery Dispute** |
| vs. | |
| | **Plaintiff's Declaration & Request for Telephonic Conference** |
| **Apple Inc.**, a corporation, | |
| | |
| Defendant. | Fed. R. Civ. P. 26, 37 |
| | Civ. L.R. 26, 37 |
| | Prof. Conduct. Sect. 9 |

## DISCOVERY DISPUTE #1

# REQUEST FOR COURT-SUPERVISED DISCOVERY CONFERENCE

## I. INTRODUCTION

1.      Pursuant to Federal Rules of Civil Procedure 26 and 37, and in accordance with the Northern District of California's Local Rules and Magistrate Judge Westmore's Standing Order, Plaintiff Ashley Gjovik respectfully moves this Court to schedule a telephonic conference to resolve ongoing discovery disputes. Defendant Apple Inc. has engaged in a pattern of obstructive discovery tactics, including refusals to meet and confer in good faith, failure to produce relevant documents, and improper privilege assertions.

2.      Apple has systematically refused to comply with discovery obligations while simultaneously making overbroad demands of Plaintiff. These tactics are designed not only to obstruct the fact-finding process but also to disadvantage Plaintiff by forcing her to respond to excessive and invasive discovery requests while Apple withholds essential information.

3.      A discovery conference with Judge Westmore is necessary to break this impasse and enforce Apple's compliance with the Federal Rules of Civil Procedure. Plaintiff also requests guidance from Judge Westmore on how, if, and when she would like exhibits filed – as Plaintiff did not file exhibits today as she does not have permission from the court yet to modify the meet and confer requirements.

## II. APPLE'S REFUSAL TO BRING DISPUTES TO JUDGE WESTMORE

1    4.    Plaintiff has made numerous requests that Defendant Apple Inc. bring
2  unresolved discovery disputes before Judge Westmore for resolution. Apple has
3  consistently refused, instead choosing to escalate its obstructionist tactics.

4        — Apple has refused to meet and confer in good faith, despite Plaintiff's
5            repeated written requests.

6        — Apple has refused to acknowledge its discovery obligations while
7            simultaneously demanding full General Order 71 production from
8            Plaintiff.

9        — Apple has used discovery conferences as a pretext to falsely accuse
10           Plaintiff of misconduct while refusing to substantively discuss disputes.

11       — Apple has refused to specify what documents it required before the
12           settlement conference, only to later accuse Plaintiff of withholding
13           discovery materials after the conference had ended.

14   5.    This deliberate refusal to engage in a good-faith resolution process
15  has severely delayed discovery and obstructed Plaintiff's ability to litigate this
16  case effectively.

## III. CONTRADICTORY STATEMENTS ABOUT DISCOVERY SCOPE & COMPLIANCE

19   6.    Apple has taken inconsistent and contradictory positions regarding
20  discovery, demonstrating bad faith and warranting judicial intervention.
21  Furthermore, Plaintiff has filed a Motion to Disqualify Defendant's legal counsel,
22  arguing that Apple's law firm is a fact witness in this case. This includes being a
23  direct fact witness to decisions and acts of harassment and retaliation. Apple's
24  broad privilege assertions suggest an attempt to shield fact-based evidence that
25  should not be privileged, further justifying court intervention.

### A.  Contradictions on Discovery Start Date

26
27
28

7.    Apple initially claimed that discovery had not yet started and requested a stay. Apple then demanded full General Order 71 production from Plaintiff while maintaining that discovery had not begun. Apple now asserts that Plaintiff must comply with discovery requests issued before the settlement conference, despite Apple refusing to produce its own discovery, not needing the documents for the conference, and the settlement conference completing.

### B.    False Accusations Regarding Settlement Conference Discovery

8.    Apple insisted that Plaintiff produce documents for the settlement conference but refused to specify what was required. After the conference, Apple accused Plaintiff of failing to comply with discovery, despite its own failure to identify relevant materials in advance. Apple misrepresented its request for the settlement conference, falsely stating to the judge that Plaintiff had demanded it solely to harass Apple.

### C.    Overbroad and Abusive Discovery Demands

9.    Apple has sought years of Plaintiff's medical records, personal diaries, and confidential documents, while refusing to provide basic employment records. Apple has invoked privilege improperly to withhold factual information related to Plaintiff's termination. Apple has claimed that all of its internal documents are privileged, even where no attorney was involved. These tactics are clear evidence of bad faith and warrant the Court's intervention.

## IV. Requested Relief

10.    Plaintiff respectfully requests the following relief:

— A court-supervised telephonic discovery conference to address and resolve ongoing disputes.

— An order compelling Apple to comply with its discovery obligations, including full Rule 26(a)(1) disclosures.

— 3 —

— Possibly consider sanctions under Rule 37 for Apple's bad-faith litigation conduct.

— A clear ruling on privilege assertions and redactions, including a requirement that Apple produce a detailed privilege log.

11.    An order requiring Apple to negotiate a reasonable discovery plan in good faith, in compliance with Rule 26(f).

## V. Conclusion

12.    Apple's continued refusal to engage in discovery in good faith, its contradictory positions, and its obstructive conduct necessitate court intervention. Plaintiff has made good-faith efforts to resolve these disputes, while Apple has used every opportunity to delay and manipulate the process. A telephonic conference with Judge Westmore is necessary to ensure compliance with the Federal Rules and facilitate a fair discovery process.

13.    Plaintiff lives in Boston, MA and will need to attend via telephone or video chat, please. (See Exhibit A). Plaintiff does not have any conflicts she cannot move over the next month and can make herself available for a conference when is convenient for the court. It is unclear what Apple's schedule is because they will not communicate in a productive way.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on Feb. 11 2025 in Boston, Massachusetts.

— 4 —

Dated: Feb. 11 2025

**/s/ Ashley M. Gjovik**

*Pro Se Plaintiff*

**Email**: legal@ashleygjovik.com

**Physical Address**: Boston, Massachusetts

**Mailing Address**: 2108 N St. Ste. 4553 Sacramento, CA, 95816

**Phone**: (408) 883-4428

**Ashley M. Gjovik, JD**
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# United States District Court

## Northern District of California

| | |
|---|---|
| **Ashley M. Gjovik**, *an individual*, | CAND No. 3:23-CV-04597-EMC |
| | 9th Cir No.: 24-6058 |
| Plaintiff, | |
| | **Discovery Dispute** |
| vs. | **Plaintiff's Letter 1/3** |
| | |
| | **Requests for Production** |
| **Apple Inc.**, a corporation, | |
| | Fed. R. Civ. P. 26, 37 |
| Defendant. | Civ. L.R. 26, 37 |
| | Prof. Conduct. Sect. 9 |

**Meet and Confer Requirement:** Defendant repeatedly refused to meet/confer in good faith & also refused to agree to file a joint letter. Please see concurrently filed Request for a Telephonic Conference (or for the court of fashion an alternative procedure).

# DISCOVERY DISPUTE #1 – PRODUCTION

1. Plaintiff Ashley Gjovik respectfully submits this letter requesting judicial intervention regarding Defendant Apple Inc.'s refusal to comply with its discovery obligations. Apple has engaged in a pattern of stonewalling, obstruction, and contradictory assertions—claiming at times that discovery is both completed and nonexistent, while simultaneously demanding sweeping discovery from Plaintiff. Given Apple's refusal to engage in good-faith discussions and its continued obstruction of discovery, Plaintiff respectfully requests that the Court compel Apple to comply with its obligations under the Federal Rules of Civil Procedure and applicable local rules.

2. Since the referral of discovery disputes to this Court (Dkt. No. 83 at 1), Apple has refused to meet and confer in good faith. Plaintiff requested a joint letter as required by this Court's Standing Order, yet Apple declined, necessitating this unilateral submission alongside a *Request for a Telephonic Conference* to enforce compliance with meet-and-confer requirements.

## I. STATEMENTS OF FACTS

3. Plaintiff Ashley Gjovik submits this filing in ongoing litigation against Defendant Apple Inc., arising from claims of whistleblower retaliation, toxic torts, intentional infliction of emotional distress, and unfair business practices. After raising concerns about toxic chemical exposure, labor violations, and corporate misconduct, Plaintiff faced a series of severe retaliatory actions, including termination, denylisting, surveillance, and reputational harm.

4. Since the filing of this lawsuit, Defendant has yet to file an answer in this case—despite 17 months of civil litigation—and has instead engaged in extensive motion practice, including five successive motions to dismiss under Rule 12(b)(6), while simultaneously resisting discovery obligations. This case is also intertwined with parallel proceedings, including an adjudication before the U.S.

— 1 —

Department of Labor's Office of Administrative Law Judges and a pending appeal before the Ninth Circuit. Additionally, federal agencies such as the NLRB and EPA have substantiated core allegations in this matter, underscoring the necessity of comprehensive discovery.[1]

5.      Since July 2021, Plaintiff has voluntarily provided Defendant with hundreds of documents supporting her claims and has continuously supplied updates and detailed outlines to ensure efficiency in the litigation process. In an effort to keep the case moving forward despite Defendant's resistance, Plaintiff independently sought and obtained relevant records through FOIA requests and other research, uncovering critical evidence that Defendant has refused to produce.

6.      Defendant, however, has failed to reciprocate these efforts, declining to create a discovery plan and asserting contradictory positions— at times claiming that discovery has already been completed, while simultaneously arguing that discovery has not yet begun and will not proceed without a court order. Defendant has further withheld key documents, asserted broad and unsupported privilege claims, and repeatedly delayed compliance. This filing addresses these ongoing discovery deficiencies and seeks appropriate relief to ensure that Defendant meets its obligations under the Federal Rules of Civil Procedure.

## II. ISSUES TO BE DECIDED

### A.  Defendant's Refusal to Produce Core Documents

7.      Apple has refused to produce the majority of documents related to its decision to terminate Plaintiff, its internal communications about her whistleblowing, and records supporting its pretextual justifications. Apple argues these records are "*privileged*" or "*irrelevant*", despite their direct relation to Plaintiff's claims.

---
[1]

— 2 —

8.    Relief Requested: Plaintiff requests that the Court order Apple to produce all non-privileged documents related to Plaintiff's employment termination, internal investigations, and related whistleblowing concerns.

**B.    Apple's Contradictory Positions on General Order 71**

9.    Apple unilaterally applied General Order 71 in December 2023, only informing Plaintiff after its supposed deadline had passed, in an attempt to coerce production of documents without proper review. Apple simultaneously argues *"there is no discovery ongoing in this case"* while demanding Plaintiff produce thousands of pages of employment-related documents under General Order 71.

10.    Relief Requested: Plaintiff seeks clarification from the Court on whether General Order 71 applies independently or should be incorporated into broader discovery timelines.

**C.    Defendant's Refusal to Engage in Discovery Planning**

11.    The Court ordered both parties to develop a discovery plan. Plaintiff has repeatedly requested to do so; Apple has refused.

12.    Relief Requested: Plaintiff requests that the Court order Apple to meaningfully engage in the discovery planning process and cooperate in scheduling depositions and document production.

## III.  APPLE'S PATTERN OF BAD FAITH LITIGATION

13.    Apple has taken irreconcilable positions in this case, designed to obstruct discovery and force Plaintiff into an untenable position:
— *"Discovery has not begun."* (Email from Apple Counsel, November 3, 2023)
— *"Discovery is already complete."* (Apple's Motion to Dismiss, November 14, 2023)
— *"Plaintiff has failed to comply with General Order 71."* (Email from Apple Counsel, February 2024)

— 3 —

1       — *"There is no discovery ongoing in this case."* (Apple's Responses to RFPs,

2       December 2024)

3  These contradictory positions are not merely inconsistent—they are calculated

4  efforts to manipulate discovery obligations and obstruct Plaintiff's ability to

5  litigate her claims.

6      14.    Furthermore, Apple's refusal to produce records concerning

7  Plaintiff's protected activities, Apple's knowledge of those activities, and its

8  pretextual justifications runs afoul of established Ninth Circuit precedent. Courts

9  have consistently compelled production of such documents in retaliation cases.

10  See *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005); *Keyser v.*

11  *Sacramento City Unified Sch. Dist.,* 265 F.3d 741, 751 (9th Cir. 2001); *Reeves v.*

12  *Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 148 (2000).

## IV. CONCLUSION

15      15.    Defendant's actions constitute an intentional and coordinated effort

to obstruct discovery. Apple's refusal to engage in good-faith negotiations, its

contradictory positions, and its outright defiance of Court-ordered discovery

obligations demand judicial intervention.

      16.    Accordingly, Plaintiff respectfully requests that this Court:

— Order Apple to produce non-privileged documents relating to

    Plaintiff's employment termination and whistleblowing activities.

— Clarify the applicability of General Order 71 in relation to broader

    discovery obligations.

— Compel Apple to participate in discovery planning and abide by its

    obligations under Rule 26.

— 4 —

1      17.    Plaintiff remains committed to engaging in discovery in good faith

2   and ensuring that the process proceeds fairly and efficiently. However, absent

3   Court intervention, Apple's obstructive tactics will continue to hinder meaningful

4   progress in this case.

5

6   Dated: February 11, 2025

7

8

9

    Dated: Feb. 11 2025

10

11

12

13   _____

    **/s/ Ashley M. Gjovik**

14   *Pro Se Plaintiff*

15

16   **Email:** legal@ashleygjovik.com

17   **Physical Address:** Boston, Massachusetts

18   **Mailing Address:** 2108 N St. Ste. 4553 Sacramento, CA, 95816

19   **Phone:** (408) 883-4428

20

21

22

23

24

25

26

27

28

**Ashley M. Gjovik, JD**
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# United States District Court

## Northern District of California

| | |
|---|---|
| **Ashley M. Gjovik**, *an individual*, | CAND No. 3:23-CV-04597-EMC |
| | 9th Cir No.: 24-6058 |
| Plaintiff, | |
| | **Discovery Dispute** |
| vs. | **Plaintiff's Letter 2/3** |
| | Disclosures |
| **Apple Inc.**, a corporation, | |
| | Fed. R. Civ. P. 26, 37 |
| Defendant. | Civ. L.R. 26, 37 |
| | Prof. Conduct Section 9 |

Defendant repeatedly refused to meet and confer in good faith and also refused to agree to file a joint letter. Please see the concurrently filed Request for a Telephonic Conference (or for the Court to fashion an alternative procedure).

# DISCOVERY DISPUTE #2 – APPLE'S FAILURE TO PROVIDE REQUIRED DISCLOSURES

## I. STATEMENT OF FACTS

1.     On July 26, 2024, The Honorable Judge Edward Chen referred discovery disputes in *Gjovik v. Apple Inc.* to The Honorable Judge Westmore. (*Order at Dkt. No. 83 at 1*). Plaintiff, Ashley Gjovik, respectfully submits this Letter requesting intervention from Judge Westmore to resolve ongoing discovery disputes regarding Apple's failure to comply with its disclosure obligations under Rule 26(a)(1) and General Order 71.

2.     Since the initiation of this lawsuit in September 2023, Apple has continuously engaged in a pattern of obstructing discovery while simultaneously demanding extensive and intrusive disclosures from Plaintiff. Apple has:

— Refused to provide initial disclosures in compliance with Rule 26(a)(1), failing to identify relevant witnesses, produce essential employment records, or disclose relevant documents related to Plaintiff's termination.

— Claimed that discovery is both "*completed*" and "*has not yet begun*"— contradictory positions that serve only to avoid their obligations.

— Withheld key documents regarding Plaintiff's termination, whistleblowing complaints, and internal investigations, while insisting Plaintiff provide extensive personal records.

— Obstructed deposition scheduling by refusing to confirm witness availability or provide corporate representatives for testimony.

3.     Apple's refusal to provide these disclosures is a clear violation of the Federal Rules of Civil Procedure, the Civil Local Rules, and professional standards of conduct.

## II. ISSUES TO BE DECIDED

— 1 —

4.      Whether Apple should be compelled to comply with its Rule 26(a)(1) initial disclosure obligations.

5.      Whether Apple should be required to supplement its disclosures regarding key witnesses, documents, and decision-makers.

6.      Possibly - Whether Apple's refusal to provide disclosures warrants sanctions under Rule 37.

## III. APPLE'S FAILURE TO DISCLOSE KEY INFORMATION REGARDING PLAINTIFF'S TERMINATION

### A.  Refusal to Identify Decision-Makers

7.      Apple has failed to disclose who initiated the decision to fire Plaintiff, when it was made, and what information was used. Plaintiff has repeatedly requested details about the individuals involved in the internal investigation leading to her termination, yet Apple continues to evade the question. In one email, Apple's legal team stated: *"The decision was made pursuant to company policy,"* yet they refuse to provide names, dates, or internal documentation.

### B.  Withholding of Internal Investigation Records

8.      Apple has refused to produce investigative reports, communications, and notes related to Plaintiff's termination, despite repeated requests. Courts have repeatedly held that investigative records regarding an employee's termination are not privileged and must be disclosed in retaliation cases. See *Hoffman v. Constr. Protective Servs., Inc.,* 541 F.3d 1175 (9th Cir. 2008).= Apple cannot selectively use "*business necessity*" as a justification for termination while simultaneously refusing to disclose documents that allegedly support that justification.

### C.  Contradictions About the Termination Timeline

9.      Apple initially implied that the decision to terminate Plaintiff occurred after her whistleblower complaints. Later, Apple claimed that the

— 2 —

1   termination decision was made before Plaintiff's protected disclosures—without

2   providing any evidence to support this assertion. Apple has refused to produce

3   internal emails, notes, or decision-making records that would clarify this timeline.

4   Courts have ruled that employers must provide full documentation of the decision-

5   making process in retaliation cases (*Rennie v. Garrett*, 896 F.2d 1057 (9th Cir.

6   1990)).

7       **D.   Apple's Use of Private Photos to Justify Termination**

8       10.   Apple has invoked Plaintiff's complaint about Apple capturing

9   nonconsensual nude photos of her, as a defense to her termination, despite lacking

10   any lawful right to these images. This defense constitutes a further act of

11   retaliation and harassment, as Apple weaponized private information to discredit

12   and terrorize the Plaintiff. Apple cannot claim ownership over Plaintiff's body to

13   justify termination. Courts have found that employers cannot use unlawfully

14   obtained personal information as a defense (*Hernandez v. Hillsides, Inc., 47 Cal.4th*

15   *272 (2009)*).

16       **E.   Apple's Key Witness Contradicts Herself & Obstructs Justice**

17       11.   Apple's primary defense witness—who played a direct role in

18   fabricating a false paper trail to justify Plaintiff's termination—has now submitted

19   three sworn declarations to the Court stating that she has never met Plaintiff.

20   These statements directly contradict Apple's litigation position and raise serious

21   credibility issues regarding its defense. This witness's repeated contradictions

22   amount to self-impeachment, as she initially positioned herself as central to

23   Apple's justification for termination but now seeks to distance herself entirely. By

24   doing so, she is obstructing justice and committing perjury to eliminate defenses

25   against her own misconduct from this case. Notably, Apple relies on this same

26   witness as a key figure in its defense while simultaneously claiming she has no

27   involvement, further undermining the integrity of its litigation strategy.

28       12.   Beyond perjury, this witness's role in falsifying evidence is deeply

— 3 —

1   troubling. In collaboration with Apple, she schemed to manufacture a pretext for
2   Plaintiff's termination by filing a complaint against Plaintiff using nonconsensual
3   intimate photographs of Plaintiff. Apple and its witness jointly asserted that
4   Plaintiff had no right to share nonconsensual nude photos of herself—photos taken
5   on her own phone, by Apple—because, Apple said, it allegedly owned the
6   intellectual property rights to nonconsensual images of her naked body. This is
7   not only a grotesque abuse of power but also a blatant violation of Plaintiff's
8   privacy and dignity.

9   13.    To further protect this scheme, the witness then filed a separate
10  lawsuit against Plaintiff, securing a five-year gag order that prohibited Plaintiff
11  from discussing or exposing what had occurred. This strategic litigation trap
12  ensured that if Plaintiff ever learned the full extent of Apple's and the witness's
13  collusion, she could face jail time simply for speaking out. Apple's reliance on
14  fabricated evidence, coordinated perjury, and criminal intimidation tactics
15  demonstrates a pattern of misconduct that warrants judicial intervention.

## IV.  APPLE'S VIOLATIONS OF RULE 26 & LOCAL RULES

### F.   Apple Has Violated Rule 26 by Refusing to Provide Initial Disclosures

19  14.    Rule 26(a)(1)(A) requires that: *"A party must, without awaiting a*
20  *discovery request, provide to the other parties: (i) the name and, if known, the address*
21  *and telephone number of each individual likely to have discoverable information ... (ii)*
22  *a copy—or a description by category and location—of all documents ... that the*
23  *disclosing party may use to support its claims or defenses."*

24  15.    Apple has failed to comply with this requirement by:
25  — Refusing to identify key witnesses.
26  — Failing to disclose relevant internal documents.
27  — Withholding critical termination-related communications.

## V.  REQUESTED RELIEF

— 4 —

16.    To remedy Apple's ongoing discovery violations, Plaintiff respectfully requests the Court to:

    i.    Compel Apple to provide complete Rule 26(a)(1) disclosures, including a list of relevant witnesses, internal communications regarding Plaintiff's termination, and any documents Apple intends to use in its defense.

    ii.    Order Apple to supplement its disclosures regarding key witnesses, decision-makers, and investigative records.

    iii.    Possibly consider sanctioning Apple under Rule 37 for its continued refusal to comply with disclosure requirements and obstructive litigation tactics.

    iv.    Schedule a discovery conference to facilitate resolution of ongoing disputes.

    v.    Order Apple to produce all documents related to Plaintiff's protected activities and Apple's knowledge of those activities.

# VI. Conclusion

17.    Apple's continued refusal to comply with basic discovery obligations requires Court intervention. Apple cannot claim that discovery has not begun while simultaneously demanding extensive disclosures from Plaintiff. Nor can it selectively provide disclosures only when it serves its interests. Plaintiff requests clear judicial guidance and an order compelling Apple to comply with discovery rules.

Dated: Feb. 11 2025

**/s/ Ashley M. Gjovik**

*Pro Se Plaintiff*
**Email**: legal@ashleygjovik.com

**Physical Address**: Boston, Massachusetts
**Mailing Address:** 2108 N St. Ste. 4553 Sacramento, CA, 95816
**Phone**: (408) 883-4428

— 5 —

**Ashley M. Gjovik, JD**
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# United States District Court

## Northern District of California

| | |
|---|---|
| **Ashley M. Gjovik**, *an individual*, | CAND No. 3:23-CV-04597-EMC |
| | 9th Cir No.: 24-6058 |
| Plaintiff, | |
| | **Discovery Dispute** |
| vs. | **Plaintiff's Letter 3/3** |
| | |
| | **Confidentiality,** |
| | **Privilege, & General** |
| **Apple Inc.**, a corporation, | **Planning** |
| | |
| Defendant. | Fed. R. Civ. P. 26, 37 |
| | Civ. L.R. 26, 37 |
| | Prof. Conduct. Sect. 9 |

**Meet and Confer Requirement:** Defendant repeatedly refused to meet and confer in good faith and also refused to agree to file a joint letter. Please see the concurrently filed Request for a Telephonic Conference (or for the Court to fashion an alternative procedure).

# DISCOVERY DISPUTE #3 – APPLE'S ABUSIVE PRIVILEGE & CONFIDENTIALITY ASSERTIONS

## A.  Statement of Facts

1.     On July 26, 2024, The Honorable Judge Edward Chen referred discovery disputes in *Gjovik v. Apple Inc.* to The Honorable Judge Westmore. (*Order at Dkt. No. 83 at 1*). Plaintiff, Ashley Gjovik, respectfully submits this Letter requesting intervention from Judge Westmore to resolve ongoing discovery disputes regarding Apple's abuse of privilege assertions and overbroad confidentiality designations.

2.     This lawsuit fundamentally concerns an employer harassing an employee, invading their privacy, and using those invasions as tools of retaliation—yet Apple is now replicating that exact misconduct within the discovery process. Apple is not merely obstructing discovery; it is actively weaponizing it. Apple has:

— Refused to provide a privilege log for the documents it is withholding.

— Declared nearly all discovery materials as confidential by default, regardless of actual sensitivity.

— Invoked attorney-client privilege to shield basic business records regarding Plaintiff's termination, despite the law prohibiting such broad assertions.

— Refused to negotiate a reasonable protective order, instead demanding excessive restrictions that would prevent Plaintiff from using evidence in regulatory proceedings.

— Used confidentiality designations as a strategic litigation weapon rather than for legitimate concerns.

— 1 —

3.     Apple is not just obstructing discovery—it is actively using the discovery process as another means of harassment by demanding intrusive, deeply personal information from Plaintiff while simultaneously refusing to disclose even the most basic information about its own misconduct. Apple claims it must protect its own privacy—invoking privilege and secrecy to withhold critical evidence—but at the same time, it demands Plaintiff's medical records, personal diaries, and nearly a decade of deeply private information.

4.     This isn't just bad faith litigation—it's a deliberate strategy to weaponize discovery as a tool of retaliation, to wear Plaintiff down, and to sabotage her lawsuit by making her relive and re-experience the very harms that led her to sue in the first place. Apple's conduct is not only an abuse of the judicial process—it is a continuation of the exact unlawful harassment and privacy invasions that this case is meant to address. Apple's conduct is a clear abuse of privilege and confidentiality protections, designed to obstruct discovery rather than to protect legitimate interests.

## I. Issues to be Decided

— Whether Apple must provide a proper privilege log for all withheld documents.

— Whether Apple's overbroad confidentiality designations should be invalidated.

— Whether Apple's refusal to negotiate a fair protective order warrants judicial intervention.

## II. Apple's Abuse of Privilege & Confidentiality

### B.   Failure to Provide a Privilege Log

5.     Apple has withheld numerous documents without providing a privilege log in violation of Rule 26(b)(5). When Plaintiff requested a log, Apple responded: *"At this time, we do not intend to produce a privilege log."* (Email from Apple Counsel, Dec. 18, 2023). Blanket assertions of privilege without a log are improper (See *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1184 (9th Cir. 2006)).

### C.   Apple's Contradictory Privilege Assertions

6.     Apple has claimed that internal discussions involving non-attorney employees are privileged if a lawyer was included in the email chain. Courts have consistently ruled that business discussions do not become privileged merely because an attorney was copied (*United States v. Chevron Corp.*, 1996 WL 444597, at *4 (N.D. Cal. May 30, 1996)). Apple has also claimed attorney-client privilege on emails where no attorney was included, and refused to provide a privilege log despite multiple requests. Apple has withheld factual termination-related documents under privilege, despite the fact that underlying facts are never privileged. See *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981).

### D.   Overbroad Confidentiality Designations

7.     Apple has designated virtually every document exchanged in discovery as "*Confidential*" by default, regardless of whether it actually contains sensitive material. Courts reject such blanket confidentiality designations. See *Glenmede Tr. Co. v. Thompson*, 56 F.3d 476, 484 (3d Cir. 1995) (*protective orders must be narrowly tailored*). Apple's default designations are particularly troubling given its refusal to provide even basic employment records unless Plaintiff agrees to its overbroad restrictions.

### E.   Apple's Improper Protective Order Demands

8.      Apple insists on a protective order that would prevent Plaintiff from using discovery materials in regulatory or legal proceedings. Such provisions improperly restrict a whistleblower's ability to report misconduct and violate public policy. See *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122 (9th Cir. 2003) (*protective orders cannot be used to suppress public interest information*). Apple has refused reasonable compromises, such as allowing redactions instead of blanket confidentiality restrictions.

## III.  LEGAL STANDARDS & CASE LAW

### F.   Privilege Logs Are Mandatory Under FRCP 26(b)(5)

9.      Rule 26(b)(5) requires that: "*When a party withholds information otherwise discoverable by claiming that the information is privileged ... the party must: (i) expressly make the claim; and (ii) describe the nature of the documents ... in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.*" Apple has failed to meet this requirement by refusing to provide any privilege log or sufficiently describe its privilege claims.

### G.   Blanket Confidentiality Designations Are Improper

10.     Courts have held that protective orders must be narrowly tailored and cannot be used to suppress non-confidential information (*Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465 (9th Cir. 1992)).

### H.   Overly Broad Privilege Assertions Violate the Law

11.     *Wellpoint Health Networks, Inc. v. Superior Ct.*, 59 Cal. App. 4th 110 (1997): Companies cannot shield factual business decisions under attorney-client privilege. *United States v. Ruehle*, 583 F.3d 600 (9th Cir. 2009): Facts are not privileged, only legal advice.

## IV.  REQUESTED RELIEF

— 4 —

12.    Plaintiff respectfully requests that the Court:

— Order Apple to produce a privilege log for all withheld documents, in compliance with Rule 26(b)(5).

— Invalidate Apple's overbroad confidentiality designations and require Apple to justify specific designations.

— Reject Apple's current protective order proposal and require Apple to negotiate a reasonable order.

— Sanction Apple under Rule 37 for obstructing discovery through bad faith privilege and confidentiality tactics.

## V. CONCLUSION

13.    Apple's misuse of privilege and confidentiality is not merely an attempt to protect sensitive information—it is an intentional strategy to obstruct discovery and evade accountability. Plaintiff respectfully requests that the Court compel compliance, reject Apple's improper assertions, and impose appropriate sanctions.

Dated: **February 11, 2025**

**/s/ Ashley M. Gjovik**

*Pro Se Plaintiff*

**Email:** legal@ashleygjovik.com

**Physical Address**: Boston, Massachusetts
**Mailing Address:** 2108 N St. Ste. 4553 Sacramento, CA, 95816
**Phone:** (408) 883-4428

— 5 —

1   **Ashley M. Gjovik, JD**
2   *In Propria Persona*
    2108 N St. Ste. 4553
3   Sacramento, CA, 95816
    (408) 883-4428
4   legal@ashleygjovik.com
5

6

7           **UNITED STATES DISTRICT COURT**
8           **NORTHERN DISTRICT OF CALIFORNIA**
9

10                                          CAND No. 3:23-CV-04597-EMC
11                                          9TH CIR No.: 24-6058

12  **ASHLEY M. GJOVIK**, *an individual*,

13                                          **PLAINTIFF'S OPPOSITION TO**
14          Plaintiff,                      **DEFENDANT'S FIFTH MOTION TO**
15                                          **DISMISS. (FINAL)**
16          vs.

17                                          *Fed. R. Civ. P. § 12(b)(6)*
18

19  **APPLE INC.**, a corporation,
20                                          **MOTION HEARING:**
21          Defendant.                      Dept: Courtroom 5 (& Zoom)
                                            Judge: Honorable Edward M. Chen
22                                          Date: February 13, 2025
23                                          Time: 1:30 PM PT

24
25          **ADDENDUM: FINAL 2.0;**
26  **REVISED WITH LEGAL CITATIONS & MISSING SECTIONS**
27

28

# TABLE OF CONTENTS

A.   Summary of the Case ........................................................ 2

B.   Legal Standard ................................................................. 3

C.   The Court Has Already Allowed Defendant to File Multiple Motions to Dismiss, Which Is a Violation of the Federal Rules of Procedure. ................. 5

D.   Defendant's Repeated Motions to Strike Claims and Specific Scenarios Are Improper and Impair Plaintiff's Right to a Fair Trial ............................ 7

E.   The Danger of Further Dismissals: The Court Must Recognize the Implications of Striking Evidence and Factual Allegations ........................... 8

F.   This is an Employee's Civil Rights and Public Safety Lawsuit, And the Court Must Not Allow the Defendant to Escape Accountability Through Procedural Games ................................................................... 9

G.   Plaintiff Represents the Interests of Thousands of People, & Allowing Abusive Litigation Tactics Would Be Against the Public Interest ................. 10

H.   Statute of Limitations Tolling and The Reasonable Person Standard ... 12

I.   The Tamney Termination in Violation of Public Policy Claim Is Inextricably Linked to Plaintiff's Toxic Tort Claims and Rests on Strong Public Policy Considerations ...................................................... 14

J.   Tolling Due to Fraud and Continuing Violations ................................ 17

K.   The Standard for IIED Claims Against Corporations, Employees, and Ex-Employees ..................................................................... 20

L.   The "Intent" for IIED – Fear of Cancer is defined in Firestone.......... 23

M.   The Plaintiff's Allegations of IIED Are Not Only Plausible, But Demonstrably Severe ............................................................. 26

N.   Tolling & Scope of Cal. Labor Code Claims: ..................................... 29

O.   Allegations of "New" Allegations ................................................... 34

P.   Conclusion ...................................................................... 35

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Supreme Court Cases**

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007) ........................................................................... 3

*Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal. 3d 148 (1987) ........................... 20

*Conley v. Gibson,* 355 U.S. 41, 47, 78 S. Ct. 99, 103, 2 L. Ed. 2d 80 (1957) .......... 3

*Glus v. Brooklyn Eastern Dist. Terminal,* 359 U.S. 231, 79 S. Ct. 760, 3 L. Ed. 2d 770 (1959). ...................................................................... 1

*Sause v. Bauer,* 138 S. Ct. 2561 (2018) ............................................... 5

**Trial and Circuit Court Cases**

*Atherton v. District of Columbia Office of Mayor*, 567 F.3d 672 (D.C. Cir. 2009)  10

*Avila v. Willits Envtl. Remediation Trust,* 633 F.3d 828, 841 (9th Cir.2011) ........13

*Baker v. Putnal,* 75 F.3d 190, 34 Fed. R. Serv. 3d 1221 (5th Cir. 1996). ............... 6

*Berger v. McHugh*, 26 F. Supp. 107, 1 Fed. R. Serv. 9, 1 Fed. R. Serv. 72 (M.D. Pa. 1939) ................................................................................ 5

*Brauch v. Birmingham*, 49 F. Supp. 229 (N.D. Iowa 1943) .................................. 1

*Brooks v. Pennsylvania R. Co.,* 91 F. Supp. 101 (S.D. N.Y. 1950). ........................ 5

*Burgert v. Lokelani Bernice Pauahi Bishop Tr.*, 200 F.3d 661, 663 (9th Cir. 2000) . 4

*Cafasso v. Gen. Dynamics C4 Sys.,* 637 F.3d 1047, 1058 (9th Cir. 2011) .............. 3

*Citizens for Better Environment v. Gorsuch,* 718 F.2d 1117, 1127 (9th Cir. 1983).  10

*Coppola v. Smith*, 935 F. Supp. 2d 993, 1030 (E.D. Cal. 2013) ...........................13

*Crosby v. L.A. County*, 124 Cal.App.4th 1151 (2004) ...................................... 27

*Daniel v. Cnty. of Santa Barbara,* 288 F.3d 375, 380 (9th Cir. 2002) .................. 4

*EP Medsystems, Inc. v. EchoCath, Inc*., 235 F.3d 865, 48 Fed. R. Serv. 3d 540 (3d Cir. 2000) ........................................................................... 22

*Frey v. City of Herculaneum,* 44 F.3d 667 (8th Cir. 1995) .................................. 6

*Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 248–49 (9th Cir. 1997) ................... 3

1   *Golden Gate Water Ski Club v. County of Contra Costa* (App. 1 Dist. 2008) 80
2       Cal.Rptr.3d 876, 165 Cal.App.4th 249. ....................................................... 10
3   *Graehling v. Village of Lombard*, Ill., 58 F.3d 295, 11 A.D.D. 378 (7th Cir. 1995) 22
4   *Hebbe v. Pliler,* 627 F.3d 338 (9th Cir. 2010). ..................................................... 5
5   *Hernandez v. Coughlin,* 18 F.3d 133 (2d Cir. 1994) .............................................. 5
6   *Holmes v. New York City Housing Authority,* 398 F.2d 262 (2d Cir. 1968);
7       *Calabrese v. Chiumento,* 3 F.R.D. 435 (D.N.J. 1944)........................................ 1
8   *Jenkins v. Yellowstone Props., Inc.*, 17-CV-7764 (VEC) (S.D.N.Y. Sep. 12, 2019) 21
9   *Karim-Panahi v. Los Angeles Police Dep't,* 839 F.2d 621, 623 (9th Cir. 1988) ........ 4
10  *Kasten v. Saint-Gobain Performance Plastics Corp.,* 570 F.3d 834, 844 (9th Cir.
11      2009)............................................................................................................... 12
12  *Leather v. Eyck,* 180 F.3d 420 (2d Cir. 1999) ...................................................... 5
13  *Love v. United States,* 915 F.2d 1242, 1245 (9th Cir. 1989)................................... 4
14  *Mangini v. Aerojet–Gen. Corp.,* 230 Cal.App.3d 1125, 1150, 281 Cal.Rptr. 827
15      (1991). ........................................................................................................... 12
16  *Martin v. Livingstone Securities Corp.*, 192 F. Supp. 862 (D. Mass. 1961) ............ 5
17  *McGinn v. Exec. Office of Energy & Envtl. Affairs*, Civil Action No. 19-cv-11551-
18      IT (D. Mass. Sep. 30, 2020) ......................................................................... 21
19  *McNair v. Lend Lease Trucks, Inc.,* 95 F.3d 325 (4th Cir. 1996)......................... 22
20  *Murray v. Oceanside Unified School District,* 79 Cal. App. 4th 1338 (2000) ....... 20
21  *Nanouk v. United States*, 974 F.3d 941 (9th Cir. 2020) .................................... 22
22  *Natural Resources Defense Council v. Southwest Marine, Inc.,* 236 F.3d 985, 993
23      (9th Cir. 2000). ...........................................................................................37
24  *Noll v. Carlson,* 809 F.2d 1446, 1448 (9th Cir. 1987)......................................... 4
25  *Northrop v. Hoffman of Simsbury, Inc.*, 134 F.3d 41, 39 Fed. R. Serv. 3d 492 (2d
26      Cir. 1997) ....................................................................................................... 1
27  *People v. Gross* (2015) 238 Cal.App.4th 1313, 1318, 190 Cal.Rptr.3d 472 ............11
28  *People v. Plains All Am. Pipeline, L.P.*, 101 Cal. App. 5th 872, 879 (2024), *review*

1    *denied* (Aug. 14, 2024) ................................................................................. 11

2    *People v. Valdez* (1994) 24 Cal.App.4th 1194, 1203, 30 Cal.Rptr.2d 4. ................ 11

3    *Porter v. Karavas,* 157 F.2d 984 (C.C.A. 10th Cir. 1946) ................................... 5

4    *Robins v. Rarback*, 325 F.2d 929, 7 Fed. R. Serv. 2d 134 (2d Cir. 1963) .............. 5

5    *Roby v. McKesson Corp.*, 47 Cal. 4th 686 (2009) ............................................... 20

6    Rodriguez *v. Bar-S Food Co.,* 539 F. Supp. 710 (D. Colo. 1982) ....................... 23

7    *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.,* 181 F.3d

8        410 (3d Cir. 1999) ...................................................................................... 22

9    *Vaughn v. American Multi Cinema, Inc.*, 09 Civ. 8911 (BSJ) (S.D.N.Y. Sep. 14,

10       2010) ........................................................................................................ 21

11   *Wilderman v. Nelson*, 467 F.2d 1173 (8th Cir. 1972). ......................................... 5

12   **Statutes**

13   Cal. Pen. Code, § 1202.4, subd. (a)(3)(B). ........................................................ 11

14   Civ. Code, § 3490 .......................................................................................... 10

15   **Rules & Regulations**

16   Fed. R. Civ. P. 12(b)(6) .................................................................................... 3

17   Fed. R. Civ. P. 8(a) .......................................................................................... 3

18   Fed. R. Civ. P. 8(d)(1). ...................................................................................... 3

19   Fed. R. Civ. P. 8(e) ........................................................................................... 3

20   **Treatises**

21   § 1233 Statement of Particular Matters—Conspiracy, 5 Fed. Prac. & Proc. Civ. §

22       1233 (4th ed.) ............................................................................................. 23

23   § 1234 Statement of Particular Matters—Constitutional Rights, 5 Fed. Prac. &

24       Proc. Civ. § 1234 (4th ed.) ......................................................................... 10

25   § 1241 Statement of Particular Matters—Fraud, Mistake, and Conditions of

26       Mind, 5 Fed. Prac. & Proc. Civ. § 1241 (4th ed.) ........................................ 33

27   35B C.J.S. Federal Civil Procedure § 813. ........................................................ 5

28

35B C.J.S. Federal Civil Procedure § 825 ...................................................... 5

35B C.J.S. Federal Civil Procedure § 833. ................................................... 18

35B C.J.S. Federal Civil Procedure § 852. ..................................................... 4

35B C.J.S. Federal Civil Procedure § 853 ................................................... 36

47 Cal. Jur. 3d Nuisances § 89 .................................................................. 10

5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d
ed. 2004) ................................................................................................ 4

5 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1217 (3d
ed. 2010) ................................................................................................ 3

57 Am. Jur. Trials 395 (Originally published in 1995). ................................14

**Constitutions**

Cal. Const., art. I, § 28, subd. (b)(13)(A) ....................................................11

Cal. Const., art. I, § 28, subd. (b)(13)(B). ...................................................11

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S
## FIFTH MOTION TO DISMISS

1. Plaintiff, Ashley Gjovik, respectfully submits the following Opposition to Defendant's Motion to Dismiss portions of her Fifth Amended Complaint ("5AC"). Defendant's motion represents yet another attempt by the Defendant to erode the substance of Plaintiff's case through repeated procedural tactics. Defendant's motion to dismiss is part of an ongoing strategy designed to whittle away at Plaintiff's claims, and it continues a pattern of improper filings that has been allowed by the Court despite clear violations of the procedural rules. As demonstrated below, the Defendant's motion must be denied, and the Court must not allow the Defendant to continue to break the rules or dismiss claims for random reasons that fail to address the core merits of the case.[1]

2. Concurrently filed is an *Opposition* to Defendant's *Request for Judicial Notice* (also addressed here), Plaintiff's *Request for Judicial Notice,* Plaintiff's *Notice of Pendency,* and Plaintiff's *Motion to Amend* her Complaint.

3. This case represents a critical moment to address systemic abuses by Apple Inc., encompassing violations of whistleblower protection laws, labor statutes, environmental regulations, and fundamental principles of fairness and safety. The plaintiff, Ashley Gjovik, a former Senior Engineering Program Manager at Apple, brought to light unsafe work conditions, criminal conduct, environmental hazards, and unlawful labor practices. In response, Apple retaliated against Gjovik, exacerbating the harm she endured and demonstrating a troubling corporate culture that prioritizes secrecy and profit over compliance, safety, and integrity.

4. Central to this matter is Apple's operation of an unpermitted semiconductor fabrication plant adjacent to residential apartments, which emitted toxic gases and caused significant health issues for residents, including Gjovik. Compounding this environmental negligence was Apple's systematic retaliation when Gjovik raised legitimate concerns. These

---

[1] *See, e.g., Brauch v. Birmingham*, 49 F. Supp. 229 (N.D. Iowa 1943); *Northrop v. Hoffman of Simsbury, Inc.*, 134 F.3d 41, 39 Fed. R. Serv. 3d 492 (2d Cir. 1997); *Holmes v. New York City Housing Authority,* 398 F.2d 262 (2d Cir. 1968); *Calabrese v. Chiumento,* 3 F.R.D. 435 (D.N.J. 1944).; *Glus v. Brooklyn Eastern Dist. Terminal,* 359 U.S. 231, 79 S. Ct. 760, 3 L. Ed. 2d 770 (1959).

— 1 —

1   actions reflect broader patterns of misconduct by Apple, evidenced by multiple enforcement

2   actions taken by the Department of Justice over the past 15 years related to employment practices,

3   anti-competitive behavior, and unlawful labor policies. In this context, addressing Apple's

4   violations in this case is both a legal necessity and a moral imperative.

5       5.    *Disclaimer*: Plaintiff, representing herself pro se in three separate litigations /

6   adjudications against Defendant, is unable to keep up with the paperwork from Apple's army of

7   lawyers. Due to the court issuing a hard deadline for filings, Plaintiff regrets any and all typos,

8   omissions, errors – and also discloses the use of generative AI to assist her in drafting this response.

9   Previously Plaintiff had tried to prioritize quality over deadlines, but without a choice and unable

10  to compete with the defendant's endless resources, Plaintiff files this response in the best condition

11  she is able. Plaintiff concedes none of her claims, disagrees with all of Apple's arguments, and any

12  failure to address a point by Plaintiff should be assumed to be due to the deadline to file, not to any

13  concession to the merit. Plaintiff also did not have time to include legal citations before the deadline

14  and now files this revised version with legal citations and the addition of missing sections.

15      **A.   Summary of the Case**

16

17      6.    Apple failed to disclose the existence of the facility or its hazardous emissions,

18  violating multiple environmental regulations, including the Resource Conservation and Recovery

19  Act (RCRA). Regulatory investigations have since confirmed at least 19 RCRA violations and

20  additional breaches of air quality regulations. When Gjovik raised concerns related to these hazards

21  and broader workplace safety issues, she became the target of retaliation and harassment by Apple,

22  including her termination. Despite clear legal protections under federal and state whistleblower

23  statutes, Apple has repeatedly denied liability, opting instead to deflect and mischaracterize

24  Gjovik's efforts as breaches of confidentiality. The facts of this case demonstrate a troubling pattern

25  of corporate misconduct, disregard for safety, and retaliation against an employee who sought

26  accountability and transparency.

27      7.    The NLRB and California government both found that Apple's proposed

28  justification for terminating Gjovik's employment is false and pretextual. The NLRB has found

1   substantial evidence that Apple illegally suspended and fired Gjovik and made multiple illegal
2   threats and coercive statements to her. The NLRB filed suit last month and demanded Apple
3   apologize and reinstate Gjovik's employment. The trial is later this year. (See concurrently filed
4   *Notice of Pendency*).

5       8.      Additionally, the Bay Area Air Quality Management District (BAAQMD) identified
6   six serious violations, including operating without proper permits and venting toxic gases. These
7   regulatory findings provide incontrovertible evidence of Apple's environmental misconduct.
8   Medical records and expert testimony establish a clear link between Gjovik's exposure to hazardous
9   substances and the severe health issues she has endured. The concealment of these operations from
10  local residents and employees underscores Apple's alarming disregard for public safety.

11  **B.   Legal Standard**

12
13      9.      Plaintiffs in federal court are required to give only "*a short and plain statement of the*
14  *claim showing that the pleader is entitled to relief.*" Fed. R. Civ. P. 8(a). Furthermore, Rule 8(d)(1)
15  requires "*[e]ach allegation [to] be simple, concise, and direct.*" Fed. R. Civ. P. 8(d)(1). The purpose of
16  Rule 8 is to " '*give the defendant fair notice of what the ... claim is and the grounds upon which it rests.*'
17  " *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007)
18  (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S. Ct. 99, 103, 2 L. Ed. 2d 80 (1957)). The Federal
19  Rules require that all pleadings be "*construed so as to do justice.*" See Fed. R. Civ. P. 8(e). *Cafasso v.*
20  *Gen. Dynamics C4 Sys.,* 637 F.3d 1047, 1058 (9th Cir. 2011), 637 F.3d at 1059 (quoting 5 Charles A.
21  Wright & Arthur R. Miller, Federal Practice & Procedure § 1217 (3d ed. 2010)).

22      10.     The Federal Rules also allow a court to dismiss a cause of action for "failure to state
23  a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Ninth Circuit is particularly
24  hostile to motions to dismiss under Rule 12(b)(6). See, e.g., *Gilligan v. Jamco Dev. Corp.,* 108 F.3d
25  246, 248–49 (9th Cir. 1997) ("*The Rule 8 standard contains a powerful presumption against rejecting*
26  *pleadings for failure to state a claim.*"). However, in *Twombly,* the Supreme Court rejected the notion
27  that "*a wholly conclusory statement of a claim would survive a motion to dismiss whenever the pleadings*
28  *left open the possibility that a plaintiff might later establish some set of undisclosed facts to support*

1    recovery." *Twombly*, 550 U.S. at 561, 127 S. Ct. at 1968. Instead, the Court adopted a "*plausibility*

2    *standard,*" in which the complaint must "*raise a reasonable expectation that discovery will reveal*

3    *evidence of [the alleged infraction]." Id.* at 556, 127 S. Ct. at 1965. For a complaint to meet this

4    standard, the "*[f]actual allegations must be enough to raise a right to relief above the speculative level.*"

5    Id. at 555, 127 S. Ct. at 1965 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216,

6    pp. 235-36 (3d ed. 2004) ("*[T]he pleading must contain something more ... than ... a statement of facts*

7    *that merely creates a suspicion [of] a legally cognizable right of action*"); *Daniel v. Cnty. of Santa*

8    *Barbara,* 288 F.3d 375, 380 (9th Cir. 2002) (" '*All allegations of material fact are taken as true and*

9    *construed in the light most favorable to the nonmoving party.*' ") (quoting *Burgert v. Lokelani Bernice*

10   *Pauahi Bishop Tr.*, 200 F.3d 661, 663 (9th Cir. 2000)).

11       11.    When a Plaintiff appears pro se, the Court must construe the allegations of the

12   Complaint liberally and must afford the Plaintiff the benefit of any doubt. *See Karim-Panahi v. Los*

13   *Angeles Police Dep't,* 839 F.2d 621, 623 (9th Cir. 1988). Moreover, in determining whether a

14   complaint states a claim on which relief may be granted, allegations of material fact are taken as

15   true and construed in the light most favorable to the plaintiff. *Love v. United States,* 915 F.2d 1242,

16   1245 (9th Cir. 1989). A pro se litigant must be given leave to amend his or her complaint unless it

17   is absolutely clear that the deficiencies of the complaint cannot be cured by amendment. *Noll v.*

18   *Carlson,* 809 F.2d 1446, 1448 (9th Cir. 1987).

19       12.    As a general rule, doubtful issues will not be decided as a matter of law on a motion

20   to dismiss a complaint.[1] The Federal Rules of Civil Procedure do not sanction the disposition of

21   doubtful issues of fact or of law on motions to dismiss for insufficiency of the pleadings.[2] In ruling

22   on a motion to dismiss, doubt should ordinarily be resolved against the motion." 35B C.J.S. Federal

23   Civil Procedure § 852.

24       13.    "Where, in an action by an employee against the employer, the pleadings raise a

25   triable issue of fact, a motion to dismiss the complaint will be denied... it is an abuse of discretion

26   for the court to dismiss an employee's complaint against the employer for failure to comply with

27   the Rules merely because of the presence of superfluous matter so long as the complaint puts the

28   employer on notice of the employee's claim, provides more information than the Rules require, and

— 4 —

1   appears to state a claim." 35B C.J.S. Federal Civil Procedure § 825; *Wilderman v. Nelson*, 467 F.2d

2   1173 (8th Cir. 1972).

3       **C. THE COURT HAS ALREADY ALLOWED DEFENDANT TO FILE**

4       **MULTIPLE MOTIONS TO DISMISS, WHICH IS A VIOLATION OF THE**

5       **FEDERAL RULES OF PROCEDURE.**

6   14.    Under Rule 12(h), the Defendant is permitted only one motion to dismiss. However,

7   the Court has already allowed Defendant to file multiple motions, which they have used to re-

8   challenge claims and re-litigate issues that have already been addressed in previous motions. The

9   repeated filing of 12(b)(6) motions is not only an abuse of procedural rules but also an attempt by

10  the Defendant to drag out the litigation and place an unnecessary burden on the Plaintiff.

11  15.    The Defendant's filings have been allowed despite the clear limitations set forth in

12  Rule 12(g) and 12(h). These rules prevent parties from repeatedly challenging claims that have

13  already been addressed, and the Court's decision to allow Defendant to file multiple motions has

14  led to unnecessary delays and increased costs for Plaintiff. Furthermore, the Defendant is

15  attempting to use these motions as a way to avoid liability by focusing on technical arguments and

16  procedural errors, rather than addressing the substantive merit of the claims.[2]

17  16.    In considering a motion to dismiss for failure to state a claim, District Courts are

18  required to interpret a *pro se* complaint liberally. *Sause v. Bauer,* 138 S. Ct. 2561 (2018).; 35B C.J.S.

19  Federal Civil Procedure § 813.  The standard governing motions to dismiss for failure to state a

20  claim applies with even greater force where the plaintiff alleges civil rights violations1, and

21  especially where the complaint is submitted pro se.[3] *Hebbe v. Pliler,* 627 F.3d 338 (9th Cir. 2010).

22  17.    In order to survive a motion to dismiss for failure to state a claim on which relief can

23  be granted, a civil rights complaint must contain facts which state the claim as a matter of law and

24

25  _____

26  [2] *Martin v. Livingstone Securities Corp.*, 192 F. Supp. 862 (D. Mass. 1961); *Porter v. Karavas,* 157 F.2d 984
    (C.C.A. 10th Cir. 1946); *Berger v. McHugh*, 26 F. Supp. 107, 1 Fed. R. Serv. 9, 1 Fed. R. Serv. 72 (M.D. Pa.
    1939); *Robins v. Rarback*, 325 F.2d 929, 7 Fed. R. Serv. 2d 134 (2d Cir. 1963); *Brooks v. Pennsylvania R. Co.,*

27  91 F. Supp. 101 (S.D. N.Y. 1950).
    [3] *See, e.g., Leather v. Eyck,* 180 F.3d 420 (2d Cir. 1999); *Frey v. City of Herculaneum,* 44 F.3d 667 (8th Cir.

28  1995); *Hernandez v. Coughlin*, 18 F.3d 133 (2d Cir. 1994); 35B C.J.S. Federal Civil Procedure § 821.

— 5 —

1    must not be conclusory. The court must accept as true the allegations the plaintiff makes in the

2    complaint and must not adopt a portion of the defendant's claims as fact without acknowledging

3    any contradiction with the complaint. *Frey v. City of Herculaneum*, 44 F.3d 667 (8th Cir. 1995); *Baker*

4    *v. Putnal*, 75 F.3d 190, 34 Fed. R. Serv. 3d 1221 (5th Cir. 1996).

5          18.    Apple's attempt to have claims related to *environmentally unsafe working conditions*

6    dismissed, as if they are merely peripheral to the actual issues at hand, demonstrates an alarming

7    disregard for both the severity of the claims and the underlying facts. These claims are not

8    incidental or irrelevant—far from it. They are integral to understanding the context of the

9    retaliation and the very real harm that occurred. They are the protected activity and that is exactly

10   why Apple attempts to coerce the court to eliminate it from the lawsuit.

11         19.    Plaintiff's allegations are not an attempt to turn this case into a broad critique of

12   Apple's environmental practices. Rather, they directly reflect how unsafe working conditions,

13   including exposure to toxic substances, caused both physical harm and emotional distress. The

14   severity of these environmental issues goes beyond simple inconvenience or discomfort; they

15   directly contributed to Plaintiff's health problems and exacerbated the adverse actions taken

16   against her by Apple. Dismissing these claims would ignore the fundamental context of this

17   lawsuit—where toxic emissions and unsafe work conditions were not just tolerated but condoned

18   by the company.

19         20.    Apple's argument to exclude these allegations borders on absurdity. It suggests that

20   a company's failure to address hazardous working conditions, resulting in harm to its employees,

21   should be swept under the rug in a case about wrongful termination, as if a claim of retaliation

22   would transmogrify a lawsuit including any other topic to only be exclusively about employment

23   matters. To treat these critical environmental issues as tangential to the real claim—especially

24   when the failure to address them is central to the retaliatory conduct Plaintiff endured—is a gross

25   mischaracterization of the case's heart and purpose.

26         21.    The suggestion that these environmental claims should be excised from the lawsuit,

27   as though they are nothing more than a side note, is both an insult to the Plaintiff's experience and

28   a desperate attempt by Apple to erase inconvenient facts. These issues are not "*sprawling critiques*"

— 6 —

1    or minor complaints; they are serious, fact-based allegations that tie directly into the retaliatory

2    actions Plaintiff faced for speaking out against unsafe practices. The notion that Apple can simply

3    dismiss these claims as irrelevant or time-barred—despite their clear and direct impact on the

4    Plaintiff's health and career—highlights the company's complete lack of accountability.

5      22. In sum, the environmental claims in this case are not going anywhere. They

6    represent serious misconduct, deliberate negligence, and retaliation, and Apple's attempt to belittle

7    and discard them serves only to underscore the company's failure to take responsibility for its

8    actions. Rather than trying to pretend these issues don't exist, Apple would do well to address them

9    with the seriousness they deserve, instead of acting like an obstinate child refusing to acknowledge

10   the consequences of their own mess.

11    **D.** **Defendant's Repeated Motions to Strike Claims and**

12     **Specific Scenarios Are Improper and Impair Plaintiff's**

13     **Right to a Fair Trial**

14     23. The Defendant's repeated motions to dismiss and its targeted attacks on sub-claims

15   and specific factual allegations are not only improper, but they also fundamentally undermine the

16   integrity of this lawsuit. The Defendant's strategy is to act as if striking these individual claims or

17   scenarios means erasing entire categories of evidence, facts, and allegations from the case. This is

18   a grave distortion of the purpose of a lawsuit, which is to reflect the full reality of the unlawful

19   conduct and harm that the plaintiff has suffered. Federal lawsuits are not games of procedural

20   minutiae; they are designed to allow the plaintiff to fully present all relevant facts and evidence in

21   support of their claims.

22     24. If the Defendant is allowed to continue its pattern of striking specific facts and sub-

23   claims, this lawsuit will be severely limited in scope, leaving it devoid of the very evidence that is

24   essential to proving the underlying unlawful conduct. A lawsuit is not fiction; it is meant to

25   represent the full breadth of what occurred. If the Defendant succeeds in convincing the Court to

26   dismiss more claims based on technical arguments, the resulting case will not reflect reality. The

27   trial cannot fairly proceed if critical evidence and factual scenarios are eliminated, and Plaintiff is

28   left with a hollow case that is no longer a true representation of the facts.

<div align="center">— 7 —</div>

25. Moreover, this issue is not hypothetical—Defendant has already misled the Court in prior motions to dismiss, resulting in the dismissal of multiple claims and sub-claims that were supported by concrete, direct evidence. These claims were not speculative or based on insufficient allegations; they were backed by clear facts, including documentary evidence and witness testimony. By allowing Defendant to strip away these claims based on narrow procedural arguments, the Court has inadvertently allowed Defendant to reduce the scope of the case and limit the evidence that will be available at trial. If the Court continues to dismiss claims and factual allegations on these improper grounds, it risks creating a legal environment where a corporation can avoid accountability simply by erasing the evidence it does not like through procedural motions. This would create a dangerous precedent, suggesting that a corporation can escape the full application of the law merely by manipulating the litigation process.

### E. The Danger of Further Dismissals: The Court Must Recognize the Implications of Striking Evidence and Factual Allegations

26. Allowing Defendant to continue striking key evidence and factual allegations from this case would severely undermine the ability of this lawsuit to reflect reality. The Court must recognize that the purpose of these motions is not to protect the integrity of the law or the fairness of the proceedings, but to allow the Defendant to erase inconvenient facts from the lawsuit entirely. This is an abuse of the judicial process, and the Court must not allow it to continue. The claims that the Defendant seeks to strike are not insignificant; they represent core aspects of the Plaintiff's case, and their removal would irreparably harm Plaintiff's ability to prove the unlawful conduct at issue.

27. If Defendant is permitted to succeed in further whittling away Plaintiff's claims, the Court will face the troubling question of whether a U.S. Court can effectively render the law inapplicable to a corporation simply by dismissing claims that it finds undesirable. Such a decision would have profound consequences, not only for Plaintiff's case but for the principles of justice and fairness in federal litigation. The law must apply equally to all parties, regardless of their size, resources, or legal sophistication. If the Court continues to dismiss claims and evidence based on

— 8 —

1    narrow procedural arguments, it risks signaling to the Defendant that it can escape liability simply

2    by evading the substance of the case through procedural tactics.

**F.   THIS IS AN EMPLOYEE'S CIVIL RIGHTS AND PUBLIC SAFETY LAWSUIT, AND THE COURT MUST NOT ALLOW THE DEFENDANT TO ESCAPE ACCOUNTABILITY THROUGH PROCEDURAL GAMES**

6    28.    This lawsuit is an employee's civil rights and public safety case against a large

7    corporation with substantial resources. Defendant has at least four law firms and a full team of

8    attorneys working on this case, while Plaintiff is representing herself. The disparity in resources is

9    striking, and the Defendant's repeated use of procedural motions to dismiss represents an

10   unconscionable abuse of the judicial process. The Defendant is leveraging its vast legal resources

11   to attack Plaintiff's claims and sub-claims on technical grounds, hoping to wear her down and

12   prevent a fair hearing of the actual merits of the case.

13   29.    The Court should not allow this procedural abuse to continue. Allowing Defendant

14   to use these motions to strike facts and claims would not only undermine the integrity of the case

15   but would also perpetuate an injustice, where a large corporation can use its resources to

16   manipulate the litigation process and avoid facing the consequences of its actions. This is not

17   merely an academic exercise in legal theory; this is a real case with real consequences for the

18   Plaintiff, who has been subjected to physical injury, unlawful retaliation, and other harmful actions.

19   30.    While the Court may have allowed Defendant's motions in the past, that does not

20   mean it must continue to do so now. The Court has the authority to stop Defendant's abuse of the

21   legal process and to draw a line, ensuring that Plaintiff's case is allowed to move forward based on

22   the evidence, rather than on technical procedural arguments. The Court must ensure that the

23   Defendant is held accountable for its actions, and that Plaintiff is given a fair opportunity to present

24   her case in full, without the Defendant's efforts to eliminate key facts, claims, and evidence.

25   31.    Because "fundamental rights and important questions of public policy are at issue,

26   the district court should give the complaint special consideration and should not dismiss unless it

27

28

— 9 —

1  is clear that no legally cognizable claim can be stated."[4]

2  ### G.  PLAINTIFF REPRESENTS THE INTERESTS OF THOUSANDS OF
3  PEOPLE, & ALLOWING ABUSIVE LITIGATION TACTICS WOULD BE
4  AGAINST THE PUBLIC INTEREST

5  32.    In addition to her own claims, Plaintiff represents the interests of thousands of other

6  individuals who have been harmed by the conduct of the Defendant, and the Court must consider

7  the broader implications of dismissing claims on arbitrary and technical grounds. *"The federal courts*

8  *have long recognized that private citizens may serve as 'private attorneys general' in order to enforce*

9  *environmental laws that protect the public interest. This serves as an important safeguard against*

10  *environmental degradation and ensures that government agencies act to protect public health and welfare."*

11  C*itizens for Better Environment v. Gorsuch,* 718 F.2d 1117, 1127 (9th Cir. 1983).

12  33.    The factory at the heart of this lawsuit, which is subject to Plaintiff's nuisance,

13  IIED, and whistleblower claims, is currently facing enforcement actions from both federal and local

14  government agencies due to much of the same harmful conduct that Plaintiff is challenging here.

15  The government is investigating and acting against the factory's emissions, which are linked to

16  significant public health risks, and Plaintiff's claims represent the direct interests of thousands of

17  individuals who have been exposed to the factory's toxic exhaust.

18  34.    The state and federal EPA have already confirmed Apple was operating the

19  semiconductor fabrication factory illegally. The air board cited Apple specifically for failing to

20  request permission to operate – requiring a planning code review. (See request for *Judicial Notice*).

21  Violations of a planning code constitute a "*public nuisance.*" *Golden Gate Water Ski Club v. County*

22  *of Contra Costa* (App. 1 Dist. 2008) 80 Cal.Rptr.3d 876, 165 Cal.App.4th 249.  The Civil Code

23  expressly provides that no lapse of time can legalize a public nuisance, amounting to an actual

24  obstruction of public right.  Civ. Code, § 3490; 47 Cal. Jur. 3d Nuisances § 89.

25  35.    Allowing the Defendant's motions to strike or dismiss claims based on technicalities

26  could create serious legal conflicts, especially regarding issue preclusion and claim preclusion. If

27  ───────────────

28  [4] *Atherton v. District of Columbia Office of Mayor*, 567 F.3d 672 (D.C. Cir. 2009); § 1234 Statement of
Particular Matters—Constitutional Rights, 5 Fed. Prac. & Proc. Civ. § 1234 (4th ed.)

1  this Court were to dismiss claims with prejudice on discretionary and procedural grounds, such as

2  by accepting the Defendant's arguments regarding the statute of limitations for toxic torts—

3  arguments that rely on selective public documents—it could effectively rule on the statute of

4  limitations for thousands of potential plaintiffs. Such a ruling, if made against the Plaintiff, could

5  extinguish the civil legal rights of those individuals, many of whom have suffered significant harm

6  from the same toxic emissions, all based on a procedural decision that does not reflect the merits

7  of their claims. This would be a miscarriage of justice, as it could prevent entire classes of affected

8  individuals from seeking redress for the harms they have suffered.[5]

9      36.    Further, Plaintiff is the victim of crime and is entitled to restitution for the harm

10  caused by the Defendant. However, she is stuck waiting for the government to complete

11  enforcement actions while concurrently chasing a civil statute of limitations. "*It is the unequivocal

12  intention of the People of the State of California that all persons who suffer losses as a result of criminal

13  activity shall have the right to seek and secure restitution from the persons convicted of the crimes causing

14  the losses they suffer.*" Cal. Const., art. I, § 28, subd. (b)(13)(A). "*Restitution shall be ordered from the

15  convicted wrongdoer in every case, regardless of the sentence or disposition imposed, in which a crime victim

16  suffers a loss.*" Cal. Const., art. I, § 28, subd. (b)(13)(B).[6] Cal. Pen. Code, § 1202.4, subd. (a)(3)(B).

17  "*A victim's right to restitution is ... a constitutional one; it cannot be bargained away or limited, nor can

18  the prosecution waive the victim's right to receive restitution.*" *People v. Gross* (2015) 238 Cal.App.4th

19  1313, 1318, 190 Cal.Rptr.3d 472. "The Legislature left no discretion or authority with the trial court

20  or the prosecution to bargain away the victim's constitutional and statutory right to restitution."

21  *People v. Valdez* (1994) 24 Cal.App.4th 1194, 1203, 30 Cal.Rptr.2d 4.

22      37.    Furthermore, in the employment and labor claims, Plaintiff is also representing the

23  interests of over a hundred thousand employees. The NLRB has filed a complaint against

24  Defendant, highlighting illegal retaliation practices, including the use of overly broad NDAs, and

25

26  _____
   [5] ("Environmental crimes have far-reaching impacts on the community and can result in complex
   restitution determinations.") *People v. Plains All Am. Pipeline, L.P.*, 101 Cal. App. 5th 872, 879 (2024),

27  *review denied* (Aug. 14, 2024)

28  [6] See, e.g. *People v. Plains All Am. Pipeline, L.P.*, 101 Cal. App. 5th 872, 885 (2024), *review denied* (Aug. 14,
   2024).

requested national remedies for these violations. This is not a hypothetical situation; this is a real government investigation into practices that affect workers across the country. The NLRB's involvement and its request for national remedies underscores the importance of Plaintiff's claims and demonstrates that this lawsuit is not only about one individual's grievance but also about enforcing broader protections for workers. If this Court allows further arbitrary dismissals or grants Defendant undue procedural favors, the consequences would be far-reaching, directly impacting the lives of thousands of employees, and perpetuating unjust practices in the workforce. *Kasten v. Saint-Gobain Performance Plastics Corp.,* 570 F.3d 834, 844 (9th Cir. 2009).[7]

## H. STATUTE OF LIMITATIONS TOLLING AND THE REASONABLE PERSON STANDARD

38.    Defendant argues that Plaintiff's private nuisance claim is time-barred, contending that the statute of limitations began to run when Plaintiff knew of her injuries. Plaintiff disputes this argument, asserting that the statute of limitations did not begin to run until February 2024, when Plaintiff fully discovered the connection between her health issues and the facility's emissions. The delayed discovery rule applies here, as Plaintiff could not have reasonably known the full extent of the exposure earlier, particularly given the complex and secretive nature of Defendant's operations.

39.    California has adopted the delayed discovery rule and "because the federal standard under CERCLA is more generous than California law in tolling the statute of limitations when a plaintiff's discovery of her claims is delayed, the federal commencement date preempts California's discovery rule." *Mangini v. Aerojet–Gen. Corp.,* 230 Cal.App.3d 1125, 1150, 281 Cal.Rptr. 827 (1991).  Under the federal discovery rule, the "California limitations period [does] not commence until Plaintiff[ ] knew or should have known of [his or her] claim." *O'Connor,* 311 F.3d at 1146. "A plaintiff knows or reasonably should know of a claim when he or she knows both the existence and the cause of his injury." *Id.* at 1147; *see also Avila v. Willits Envtl. Remediation Trust,* 633 F.3d 828,

---

[7] ("*The public policy of protecting whistleblowers is to encourage employees to report unlawful activity and to protect them from retaliation. Public policy supports the enforcement of laws intended to protect employees from retaliatory actions that hinder the ability to report unlawful conduct.*")

— 12 —

1   841 (9th Cir.2011). *Coppola v. Smith*, 935 F. Supp. 2d 993, 1030 (E.D. Cal. 2013)

2       40.    The Defendant's argument regarding the statute of limitations for Plaintiff's

3   nuisance and IIED claims is flawed both factually and legally. First and foremost, the question

4   before the Court is not whether Plaintiff herself should have discovered the source of the emissions

5   but rather whether a reasonable person in Plaintiff's position would have been able to identify the

6   source. This is a factual question that must be determined by a jury. The legal standard for tolling

7   the statute of limitations, as established by both California law and federal precedent, is based on

8   what a reasonable person should have known or discovered, not the plaintiff's personal diligence

9   or awareness.

10       41.    Plaintiff's claims in this case are not simply based on subjective awareness; rather,

11   they are grounded in the objective standard of a reasonable person. As Plaintiff has detailed in her

12   complaints, she made several complaints to multiple government agencies—agencies whose

13   responsibility it is to investigate illegal emissions and dangerous environmental hazards. These

14   agencies, including the U.S. Environmental Protection Agency (EPA) and the California EPA,

15   undertook investigations into the potential sources of the chemical exposure but were unable to

16   identify the origin of the emissions. This fact is pivotal to the Court's analysis: if these agencies,

17   tasked with enforcing environmental laws and regulations, could not identify the source of the

18   emissions after thorough investigations, it is unreasonable to hold Plaintiff personally liable for

19   failing to identify the same source.

20       42.    In essence, the argument the Defendant presents—accusing Plaintiff of failing to

21   conduct a reasonable investigation into the emissions—is flawed when compared to the

22   investigations conducted by the very agencies responsible for enforcing environmental laws. If the

23   Court were to adopt Defendant's argument and determine that Plaintiff was negligent in her

24   investigation, it would be unfair holding her to a higher standard than the government agencies that

25   could not locate the source of the emissions. It would imply that a random tenant in an apartment

26   complex, with no specialized knowledge or resources, should have known more about the source

27   of the hazardous emissions than the very federal and state agencies tasked with this responsibility.

28       43.    This argument is further bolstered by the fact that the Plaintiff complained about

— 13 —

1    the chemical exposure to the appropriate authorities, the very agencies charged with investigating

2    and responding to environmental hazards. The Defendant's attempt to dismiss the nuisance and

3    IIED claims based on a purported failure to investigate by Plaintiff disregards these facts and

4    overlooks the reality that the standard for tolling the statute of limitations is based on what a

5    reasonable person would have known under the same circumstances. Given the inability of the EPA

6    and California EPA to pinpoint the source of the emissions, there is no reasonable basis to claim

7    that Plaintiff, in her role as a tenant, could have discovered the source sooner.

8        44.    This district has denied a motion to dismiss without leave to amend even when the

9    plaintiff received a letter from the U.S. EPA notifying them that drying cleaning activities caused

10   PCE contamination of drinking water and wells, noting that the letter did not explain the exact

11   source of the issue, did not confirm the plaintiff was definitely effected by the issue, and instead

12   implied an investigation was underway. *Coppola v. Smith*, 935 F. Supp. 2d 993, 1030–32 (E.D. Cal.

13   2013).

14       45.    Defendant asserts that the IIED claim is time-barred for the same reasons as the

15   private nuisance claim. However, even if that was true, which it is not, Plaintiff contends that the

16   statute of limitations did not begin to run until February 2024 when she discovered the true nature

17   of her exposure and its potential impact on her health. Prior to this discovery, Plaintiff could not

18   have reasonably feared the potential for cancer or other health issues. 57 Am. Jur. Trials 395

19   (Originally published in 1995).

20       46.    In addition, this Court should also consider the impact of Plaintiff's Ultrahazardous

21   Activities strict liability claim, which was dismissed at the Defendant's request on discretionary

22   grounds. This claim, as well as the claims for nuisance and IIED, are closely intertwined with issues

23   of public safety and environmental harm.

I.   **THE TAMNEY TERMINATION IN VIOLATION OF PUBLIC POLICY
     CLAIM IS INEXTRICABLY LINKED TO PLAINTIFF'S TOXIC TORT
     CLAIMS AND RESTS ON STRONG PUBLIC POLICY CONSIDERATIONS**

24
25
26
27       47.    Defendant's efforts to sever the connection between Plaintiff's Tamney termination

28   in violation of public policy claim and her toxic tort allegations—specifically those rooted in

— 14 —

1    Defendant's criminal environmental conduct at its factory—are fundamentally flawed and

2    unsupportable under the law. Plaintiff's termination claim is grounded in retaliation for her being

3    a victim of crime and for her involvement as a legislative witness, both of which arise directly from

4    the same toxic emissions that are central to Plaintiff's toxic tort claims. Defendant's attempt to treat

5    these claims as entirely distinct is not only legally untenable but also directly undermines the public

6    policy protections afforded to employees who expose criminal conduct and advocate for public

7    safety.

8           48.    First, it is crucial to note that Defendant has never moved to dismiss the Tamney

9    claim. This omission implicitly acknowledges that Plaintiff has sufficiently pled a violation of public

10    policy, particularly with regard to retaliation for being a victim of Defendant's criminal conduct.

11    The Defendant's factory, which is the focus of Plaintiff's toxic tort allegations, engaged in

12    hazardous operations that resulted in significant harm to Plaintiff's health. In retaliation for

13    Plaintiff's exposure to these dangers, and for her subsequent efforts to report and expose

14    Defendant's unlawful activities, Defendant took negative employment actions, including Plaintiff's

15    wrongful termination. Defendant's refusal to challenge this claim suggests recognition that

16    Plaintiff's termination was a direct consequence of her victimization by Defendant's criminal

17    actions.

18           49.    However, in a contradictory maneuver, Defendant simultaneously argues that its

19    criminal conduct at the factory is irrelevant to the employment claims. Defendant cannot credibly

20    maintain this position while acknowledging the harmful effects of its environmental violations,

21    which directly impacted Plaintiff's health and well-being. Defendant's attempt to disconnect its

22    unlawful operations from the retaliatory actions it took against Plaintiff is not only illogical but

23    demonstrates a fundamental misunderstanding of the law. If Defendant's activities at the factory

24    were indeed criminal, as Plaintiff alleges, and these activities caused harm to Plaintiff, it follows

25    that any adverse employment actions taken against Plaintiff due to her victimization by those very

26    criminal activities should be viewed as a violation of public policy.

27           50.    Additionally, Defendant's arguments concerning the statute of limitations further

28    implicate the severity of its actions and the knowledge it had of Plaintiff's suffering. By asserting

— 15 —

that Plaintiff should have immediately discovered the source of the emissions based on building permits, Defendant is, in effect, admitting that it knew its operations were hazardous and capable of causing severe harm. If Defendant is to argue that it knew its factory operations could have deadly consequences, it simultaneously must accept the corollary that Plaintiff's retaliatory termination was directly tied to her exposure to Defendant's criminal conduct. The fact that Defendant harassed, retaliated against, and ultimately terminated Plaintiff after the very actions it now acknowledges as potentially deadly occurred further solidifies the inextricable link between Plaintiff's toxic tort claims and her employment retaliation claims.

51.    Moreover, Defendant's attempt to isolate these claims fails to account for the broader legal framework that ties them together. Plaintiff's original Complaint included claims under the Bane Act, the Ralph Act, IIED, and RICO Act, all of which bridge the gap between the employment retaliation and toxic tort claims. These statutes explicitly recognize that unlawful employment actions, including retaliation for being a victim of a crime, are inherently connected to unlawful conduct that affects public safety and the well-being of employees. However, Plaintiff voluntarily refrained from repleading these claims in subsequent filings, based on the Court's May 20 decision, which suggested that doing so might obviate the need for Defendant to file yet another motion to dismiss. Despite this, Defendant filed an additional motion to dismiss, and now, once again, seeks dismissal of claims it has already previously argued. This abuse of the procedural process is not only a violation of the Court's rules but also a direct affront to the public policy considerations at stake, which include the protection of employees from retaliatory conduct and the broader societal interest in upholding environmental laws.

52.    Defendant's actions in this case are not simply an attempt to defend against Plaintiff's claims—they are an attempt to evade accountability for criminal conduct and to undermine a legitimate civil rights lawsuit. The public policy implications of this case are immense, as allowing Defendant to continue its pattern of procedural abuse would not only deprive Plaintiff of a fair opportunity to pursue justice but would also undermine the ability of future victims of corporate misconduct to seek legal remedies. The public has a vested interest in ensuring that employers cannot retaliate against employees who expose illegal or dangerous activities, especially

— 16 —

1    when those activities put public health and safety at risk. Allowing Defendant to continue to use

2    technical arguments to dismiss well-pled claims related to its own criminal conduct would set a

3    dangerous precedent, one that would embolden corporations to retaliate against victims of their

4    own unlawful actions without fear of legal consequences.

### J. TOLLING DUE TO FRAUD AND CONTINUING VIOLATIONS

7    53.    In addition to the discovery rule, Plaintiff also asserts that tolling is appropriate due

8    to fraudulent concealment and continuing violations, which Defendant's own conduct directly

9    supports. Defendant's acknowledgment of the unlawfulness, danger, and potential deadly

10   consequences of its factory operations, coupled with its deliberate concealment of this knowledge

11   from Plaintiff, forms the basis for Plaintiff's fraudulent misrepresentation claim. Defendant not

12   only failed to inform Plaintiff of its hazardous activities, but it also intentionally suppressed the

13   truth about the source of the toxic emissions that severely harmed Plaintiff. Defendant's actions in

14   this case amount to a fraudulent cover-up designed to prevent Plaintiff from learning that

15   Defendant was responsible for the very harm she suffered. Such fraudulent concealment tolls the

16   statute of limitations, as it would be patently unjust to allow Defendant to benefit from its own

17   egregious misconduct and subsequent attempts to hide the truth.

18   54.    Defendant's admissions make clear that it was aware of its own dangerous and

19   unlawful activities, yet it chose to remain silent when Plaintiff sought answers about the source of

20   the harmful exposure. Plaintiff made Defendant aware of her exposure and subsequent harm as

21   early as September 2020, but Defendant deliberately failed to disclose to Plaintiff that its own

22   operations were the cause. This concealment was not merely an omission; it was a strategic attempt

23   to mislead Plaintiff and prevent her from discovering the truth, a fraudulent misrepresentation that

24   directly impacted Plaintiff's ability to pursue her legal claims. It would be a miscarriage of justice

25   to allow Defendant to benefit from this fraudulent concealment by arguing that the statute of

26   limitations has expired.

27   55.    Moreover, as both parties agree that Plaintiff's Tamney claims are based on

28   Defendant's unlawful retaliation for Plaintiff's victimization by Defendant's criminal conduct, and

— 17 —

1    for Plaintiff's subsequent legislative actions in response to those harms, Plaintiff's claims also

2    satisfy the requirements for tolling due to continuing violations. Defendant's ongoing illegal

3    activities at its factory, and its continued retaliatory actions against Plaintiff, constitute a series of

4    continuing wrongs that extend beyond the expiration of the statute of limitations. Both the

5    retaliatory actions taken against Plaintiff and the environmental harm caused by Defendant's

6    factory emissions constitute a continuing pattern of misconduct, further justifying tolling of the

7    statute of limitations under the doctrine of continuing violations.

8        56.    It is paramount to note that allowing Defendant to avoid tolling through its

9    fraudulent conduct would not only result in an injustice to Plaintiff but would also violate public

10   policy considerations. Plaintiff's claims arise from the very type of corporate misconduct that the

11   law seeks to prevent, including criminal acts of witness intimidation and retaliation, wire fraud, and

12   mail fraud. To permit Defendant to escape liability for such behavior would not only undermine the

13   purpose of the statute of limitations but also embolden corporations to engage in similar cover-ups

14   with impunity. Allowing Defendant to avoid tolling by concealing its actions would encourage

15   corporate actors to exploit the procedural protections afforded by the statute of limitations as a

16   shield for their wrongful conduct.

17       57.    Moreover, public policy strongly favors the tolling of the statute of limitations in

18   cases where fraud or continuing violations are involved, particularly when such violations directly

19   affect public health, safety, and the rights of individuals. Plaintiff's claims are not isolated or

20   theoretical—they represent actual harm to Plaintiff, as well as to a broader group of affected

21   individuals. The Defendant's actions not only harmed Plaintiff but also violated the public trust by

22   subjecting thousands of individuals to dangerous emissions and retaliating against those who

23   sought to expose this harm. The interests of justice demand that Plaintiff's claims proceed, and

24   that Defendant be held accountable for its ongoing and fraudulent misconduct. "*Tort actions which*

25   *properly state a claim on the pleadings are sufficient as against motions to dismiss in actions alleging strict*

26   *liability, fraudulent misrepresentation, interference with the plaintiff's property rights, and damages*

27   *resulting from a trespass.*" 35B C.J.S. Federal Civil Procedure § 833.

28       58.    Plaintiff has continued to suffer from severe and debilitating health effects related

— 18 —

1   to the toxic exposures at the apartment complex adjacent to the Apple facility. After experiencing

2   a recurrence of hair loss—similar to what occurred in 2020-2021—Plaintiff has sought medical

3   attention and has begun to receive a diagnosis related to an unusual infection. The pathogen, which

4   thrives in nitrogen-rich environments like those found in toxic waste dumps, appears to be the cause

5   of Plaintiff's hair loss and other symptoms. During Plaintiff's time at the apartment complex, the

6   physical manifestation of this pathogen was evident, and Plaintiff brought concerns to the property

7   manager. At least one other tenant, a fellow Apple employee, also lodged complaints regarding the

8   same observation.

9       59.    Further investigation has revealed the presence of this pathogen on personal items

10  such as hairbrushes and hairbands, which were not used following the initial hair loss incident and

11  were preserved in storage. Despite Plaintiff's continued notifications to Apple about these findings,

12  and the invitation extended to the company to participate in testing and analysis of the pathogens,

13  Apple has failed to respond meaningfully and has instead made false allegations in relation to

14  discovery while concurrently refusing to allow Plaintiff to contact Judge Westmore. This ongoing

15  exposure to harmful chemicals and pathogens continues to cause significant physical harm, which

16  is exacerbated by Apple's refusal to acknowledge or address the severity of the situation.

17      60.    It would be contrary to public policy to allow the statute of limitations to bar

18  Plaintiff's claims while the full extent of the harm continues to be uncovered. Plaintiff has diligently

19  investigated the ongoing physical harm caused by the toxic exposure, despite facing significant

20  personal and financial challenges, including crippling debt and limited resources. It is telling that

21  Plaintiff continues this investigation in good faith, seeking medical attention and pursuing a

22  diagnosis, while Apple—despite being continuously notified—has not participated in any way

23  other than through harassment and deflection. Apple's refusal to engage with the ongoing discovery

24  of harmful pathogens and its continued neglect of Plaintiff's serious health concerns further

25  underscores the importance of allowing the statute of limitations to be tolled during this period of

26  investigation. Denying such tolling would effectively prevent the full extent of Plaintiff's claims

27  from being heard and would undermine the public interest in holding companies accountable for

28  environmental violations that cause harm to individuals and the community at large.

**K. THE STANDARD FOR IIED CLAIMS AGAINST CORPORATIONS, EMPLOYEES, AND EX-EMPLOYEES**

61.    Apple argues that it cannot be held liable for IIED based on the actions of its employees, specifically citing the Plaintiff's ex-employee status and the conduct of Appleseed, a former employee of Apple's Global Security division. However, California, New York, and Massachusetts law do not bar IIED claims against corporations, and there is no legal requirement that an ex-employee must have an ongoing employment relationship for such claims to proceed. *Roby v. McKesson Corp.*, 47 Cal. 4th 686 (2009);[8] *Murray v. Oceanside Unified School District,* 79 Cal. App. 4th 1338 (2000);[9] *Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal. 3d 148 (1987).[10]

62.    The plaintiff's allegations—including threats, harassment, exposure to harmful substances, and the orchestrated misconduct involving multiple employees acting under Apple's direction—go far beyond what is considered ordinary or even tolerable within the workplace. To dismiss this claim on the grounds that it is uncommon for such claims to survive a motion to dismiss would effectively establish a precedent that leaves individuals who are subjected to this level of corporate retaliation without recourse. It would suggest that only the most extreme cases of misconduct—where corporate involvement is irrefutable—are allowed to proceed, while the vast majority of employees subjected to less extreme, but nonetheless damaging behavior, would be left without remedy.

63.    It is not uncommon for corporate misconduct, especially when coupled with

---

[8] The California Supreme Court held that a claim for IIED could proceed based on the allegation that an employer subjected an employee to retaliatory and extreme conduct after the employee reported unlawful activities (in this case, the company's failure to follow regulations and concerns about corporate practices). While the Court ultimately focused on retaliation claims, it recognized that emotional distress claims could stem from the employer's extreme and outrageous conduct in retaliation.

[9] The court ruled that the plaintiff's IIED claim could proceed based on allegations that her employer had retaliated against her for whistleblowing on misconduct related to violations of the law and unsafe working conditions. The court found that the plaintiff's allegations of extreme behavior by the employer were sufficient to overcome a motion to dismiss. The plaintiff alleged that after she reported the misconduct, she faced severe emotional distress, which could potentially form the basis for an IIED claim.

[10] The California Supreme Court allowed the IIED claim to proceed, holding that the employer's alleged retaliation against a whistleblower could be extreme enough to support an IIED claim. The plaintiff alleged that after reporting the misconduct, she was subjected to threats, harassment, and other extreme behavior by her employer.

— 20 —

1    extreme retaliation, to cause employees to abandon their claims, either out of fear of further harm,

2    loss of employment, or financial distress. This is exactly the objective of corporations who engage

3    in these scorched earth tactics.

4        64.    This creates a dangerous precedent where the conduct at issue—actions that are

5    criminal in nature when perpetrated by individual actors outside of a corporate context—is allowed

6    to be overlooked when committed by a corporation's agents and employees, especially when the

7    corporation's management is complicit, if not actively directing, such behavior. It would effectively

8    shield corporations from accountability for grave misconduct simply because it is rare for

9    employees to persist in litigation against their former employers who have subjected them to such

10   harmful actions.

11       65.    There is an established legal precedent that allows individuals to bring IIED claims

12   against their former employers when those claims arise from the employer's conduct or the

13   conduct of its agents, even if those agents are former employees. *See, e.g.*, *McGinn v. Exec. Office of*

14   *Energy & Envtl. Affairs*, Civil Action No. 19-cv-11551-IT (D. Mass. Sep. 30, 2020);[11]  *Jenkins v.*

15   *Yellowstone Props., Inc.*, 17-CV-7764 (VEC) (S.D.N.Y. Sep. 12, 2019);[12] *Vaughn v. American Multi-*

16   *Cinema, Inc.*, 09 Civ. 8911 (BSJ) (S.D.N.Y. Sep. 14, 2010).[13]

17       66.    Apple's motion to dismiss the Plaintiff's claim for intentional infliction of emotional

18

19

20

21

---

22   [11] The court allowed the IIED claim to proceed. The plaintiff's claim related to retaliation for whistleblowing
     and environmental issues, which was not dismissed at the motion-to-dismiss stage. The court acknowledged
23   the serious nature of the allegations and permitted the IIED claim to survive initial scrutiny.

24   [12] The plaintiff brought IIED claims alongside allegations of discrimination, hostile work environment, and
     whistleblower retaliation. The court allowed the IIED claim to proceed, finding that the allegations of
25   harassment and retaliation, particularly in the context of whistleblowing, were sufficiently serious to warrant
     further legal examination.

26   [13] This case involved a claim of retaliatory termination under New York's Whistleblower Law, with the
     plaintiff also alleging IIED. The court allowed the IIED claim to proceed, rejecting the employer's motion
27   to dismiss. The case involved retaliation after the plaintiff reported unsafe working conditions and other
     concerns. The court found that the plaintiff's allegations of extreme and outrageous conduct were enough
28   to survive a motion to dismiss.

distress (IIED) misrepresents both the nature of the allegations and the applicable legal standards.[14] A fact issue will preclude the granting of a motion to dismiss the complaint when it has legal probative force as to a controlling genuine issue of material fact, with examples including: whether the defendant is an *"employer"* within the meaning of a particular statute; a question of respondeat superior; whether knowledge of the plaintiff's agent should be imputed to the plaintiff; reasonable reliance; or whether some act has been coerced.[15]

67. As established in the Complaint, the conduct at issue goes far beyond the downplayed version Apple provides in its motion. The Plaintiff has outlined severe, reprehensible actions directly tied to retaliation for whistleblowing activities, misconduct that was committed by Apple's employees and agents within the scope of their employment and as part of a business-related scheme to stifle protected activities.

68. Apple's argument relies on an unduly narrow and misleading interpretation of the law. If taken to its logical extreme, Apple's position would effectively prevent former employees from ever bringing claims for IIED—particularly in cases where, as here, the actions of the employer's agents were conducted at the behest of the employer and directly tied to business interests. If the law were to adopt Apple's view, it would nullify the ability of workers, including ex-employees, to seek recourse for harm caused by their former employers' misconduct, even when the actions in question are intentionally harmful and undertaken with malice.

69. Further, Apple's argument presupposes that IIED claims should only be actionable in the most extreme scenarios—namely when a CEO or high-level officer personally orders the intentional infliction of emotional distress. This is a flawed and overly restrictive standard that disregards both the legal principles underlying IIED claims and the realities of corporate

---

[14] *Nanouk v. United States*, 974 F.3d 941 (9th Cir. 2020).—("Issue of whether policy considerations underlying government's delay in discovering and remediating hot spot of contaminated soil on Air Force radio relay station site were grounded in social, economic, and political policy involved fact questions that could not be resolved on motion to dismiss neighboring property owner's nuisance and trespassing claims against United States pursuant to Federal Tort Claims Act's (FTCA) discretionary function exception."

[15] See e.g., *McNair v. Lend Lease Trucks, Inc.,* 95 F.3d 325 (4th Cir. 1996); *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.,* 181 F.3d 410 (3d Cir. 1999); *EP Medsystems, Inc. v. EchoCath, Inc.,* 235 F.3d 865, 48 Fed. R. Serv. 3d 540 (3d Cir. 2000); *Graehling v. Village of Lombard,* Ill., 58 F.3d 295, 11 A.D.D. 378 (7th Cir. 1995).

1    operations, where such conduct is often carried out by employees and agents of the corporation, at

2    the direction of corporate leaders or to further corporate goals. Labor-management disputes and

3    civil rights cases also utilize the conspiracy doctrine. § 1233 Statement of Particular Matters—

4    Conspiracy, 5 Fed. Prac. & Proc. Civ. § 1233 (4th ed.)[16]

### L. The "Intent" for IIED – Fear of Cancer is defined in Firestone.

70.    In addition to the distressing harassment and retaliation directed by Apple and its

agents, it is essential to understand that the plaintiff's claim of emotional distress arises from the

profound physical harm caused by Apple's illegal semiconductor fabrication facility. Contrary to

Apple's attempt to minimize the plaintiff's suffering to vague and inconsequential symptoms, the

plaintiff experienced severe, life-threatening medical issues as a result of exposure to the toxic

emissions from the factory. These issues are well-documented in medical records, including

laboratory tests, cardiology and dermatology visits, MRI scans, and physical evidence of tumors

and growths, which required surgical removal. The plaintiff's heart rate and blood pressure were

dangerously affected, arrythmia was detected, and numerous other serious health problems,

including burns and rashes, were caused by Apple's environmental misconduct.

71.    Apple's motion to dismiss attempts to downplay the plaintiff's extensive and

documented medical issues resulting from exposure to the toxic emissions at its illegal

semiconductor fabrication facility. The plaintiff did not simply experience vague symptoms of

dizziness, as Apple would like the court to believe; rather, the evidence overwhelmingly supports

that the plaintiff suffered severe, life-threatening health issues directly linked to the factory's

environmental violations. The plaintiff's medical records, spanning numerous specialists and

diagnostic tests, paint a clear picture of the physical devastation caused by Apple's reckless actions.

72.    The plaintiff's heart rate dramatically slowed, as captured on an Apple Watch, and

---

[16] See, e.g., Rodriguez *v. Bar-S Food Co.,* 539 F. Supp. 710 (D. Colo. 1982) -- A complaint filed by members of a union local alleging that the former employer, the former employer's parent corporation, and the successor employer conspired to deprive the members of their rights was sufficient to state a civil conspiracy claim.

arrythmia was confirmed by heart monitor logs, with blood pressure spikes and volatility documented through 24-hour blood pressure monitors and at-home readings. Dermatology records show severe burns and rashes, accompanied by photographic and video evidence of these conditions. Tumors and growths, which were discovered through ultrasound and MRI scans, required physical removal via surgery. These symptoms were not a result of mere dizziness but the direct and dangerous impact of toxic chemical exposure. Apple's attempt to minimize or dismiss the severity of these issues is not only a distortion of the facts, but an offensive attempt to downplay the catastrophic harm it has caused to the plaintiff. This disregard for the plaintiff's well-being further underscores the malicious intent behind Apple's actions, which are central to the plaintiff's claims of intentional infliction of emotional distress.

73.     Apple's argument that the plaintiff must plead that Apple specifically knew the plaintiff was in the apartment at the time the harmful chemicals were released, with the intent to harm the plaintiff, is a misreading of both the law and the allegations in this case. The applicable legal standard for an IIED claim involving fear of cancer, as articulated in *Firestone v. Southern California Gas Co.*, does not require the plaintiff to establish that the defendant had specific knowledge of the plaintiff's location or was actively targeting the plaintiff. Instead, the focus is on whether the defendant's conduct was so extreme and outrageous that it could reasonably be expected to cause emotional distress to someone in the plaintiff's position—someone who was exposed to a dangerous and toxic environment as a result of the defendant's actions.

74.     In *Firestone*, the California court clarified that the standard for IIED in such cases does not require a specific intent to harm the plaintiff, but rather the knowledge that a person like the plaintiff—someone living in close proximity to the release of toxic chemicals—would be exposed to the harmful substance. The law recognizes that if a defendant's actions are outrageous enough to expose individuals to toxic substances, and the defendant knew that such exposure would cause harm or fear, the defendant can be held liable for the emotional distress that results.

75.     Apple's argument also mischaracterizes the judge's prior ruling. While the Court's order may have been unclear, the law is clear that the plaintiff need not prove that Apple specifically targeted the plaintiff in order to satisfy the IIED standard. Instead, it is enough to plead that Apple

— 24 —

1    knew its actions—releasing toxic chemicals into the environment where the plaintiff lived—would

2    expose individuals like the plaintiff to harm and emotional distress. This is consistent with

3    California law, which does not impose a requirement for specific targeting of the plaintiff, but rather

4    focuses on the outrageousness of the conduct and the foreseeability of harm.

5    76.    To the extent that Apple now claims that the higher standard of specific intent

6    applies, this is a misinterpretation of both the facts and the legal standard. The plaintiff has alleged,

7    and will continue to prove, that Apple's conduct was outrageous, reckless, and directly linked to

8    the distress caused by the toxic exposure, which resulted in ongoing emotional harm, including the

9    well-founded fear of developing cancer. Apple's insistence on a higher standard of intent is

10   misplaced and does not align with the principles outlined in California law.

11   77.    The plaintiff's IIED claim cannot be viewed in isolation from the broader context

12   of Apple's conduct, which involves a sustained and escalating campaign of harm that began with

13   the company's actions leading to the plaintiff's near-death exposure to toxic emissions at its illegal

14   factory. Apple's actions in nearly killing the plaintiff through its reckless environmental violations

15   created a life-threatening situation, the effects of which are compounded by its subsequent

16   retaliation, harassment, and firing. What would have been egregious conduct on its own is

17   magnified exponentially by the knowledge that Apple had already inflicted catastrophic harm on

18   the plaintiff's physical and mental well-being.

19   78.    If a normal person were to realize that their actions had nearly caused someone's

20   death, a reasonable response would be to express genuine concern for the victim's well-being, offer

21   to make amends, and assure that such an event would never happen again. Instead, Apple's

22   response has been to escalate the harm. Rather than attempting to reconcile, provide restitution,

23   or even acknowledge the magnitude of its misconduct, Apple retaliated by firing the plaintiff,

24   ruining their reputation, and causing further emotional distress through the abusive actions of its

25   agents. In their motion to dismiss, Apple attempts to downplay these actions, trivializing the gravity

26   of the situation and dismissing the plaintiff's pain, which only serves to highlight the intentional

27   nature of their misconduct. Apple's actions reflect an awareness that they had already caused

28   irreparable harm, but instead of taking responsibility or showing remorse, they continued to act

1    with cruelty and indifference, compounding the distress caused by their previous actions.

2    79.    The intentionality of Apple's conduct is evident in the way it escalated its harmful

3    behavior, knowing full well the profound physical, emotional, and professional damage it had

4    already inflicted. This pattern of abuse demonstrates that the harm was not accidental, nor was it

5    simply a response to an isolated event. Instead, it is clear that Apple has actively sought to

6    perpetuate and deepen the distress caused to the plaintiff, which strengthens the basis for the IIED

7    claim.

8    80.    In conclusion, the plaintiff has sufficiently pleaded that Apple knew or should have

9    known that its conduct would expose the plaintiff to harm and emotional distress. To require a

10    pleading standard higher than that set forth in *Firestone* is not only unnecessary but also contrary

11    to established law governing IIED claims in the context of toxic exposure.

## M.    THE PLAINTIFF'S ALLEGATIONS OF IIED ARE NOT ONLY PLAUSIBLE, BUT DEMONSTRABLY SEVERE

14    81.    Apple continues to argue that the Plaintiff's allegations fail to meet the threshold

15    for IIED, asserting that the actions described do not constitute "outrageous" conduct under the

16    applicable legal standard. However, as previously detailed, the conduct at issue is precisely the type

17    of outrageous conduct that courts have held actionable in IIED claims.

18    82.    Moreover, Apple's failure to take any corrective action after being made aware of

19    the conduct suggests an intentional disregard for the Plaintiff's rights and well-being. The failure

20    to intervene or act in response to such extreme misconduct reinforces the Plaintiff's claim that

21    Apple's conduct was not merely negligent but intentional and intended to cause harm in

22    furtherance of Apple's broader strategy to silence the Plaintiff. Apple's argument that these acts

23    were isolated or unintentional is unpersuasive and ignores the broader context in which these

24    actions occurred, specifically the coordinated campaign of retaliation orchestrated by Apple against

25    a whistleblower.

26    83.    Further, Apple's attempt to dismiss Plaintiff's legitimate concern for her eight-

27    pound dog's health due to the environmental hazards caused by its operations is not only a

28    misguided interpretation of the law but also an attempt to censor Plaintiff's real-life anxieties

— 26 —

1   caused by Defendant's conduct. The notion that Plaintiff should not be allowed to express worry

2   over the potential harm to her beloved pet is an affront to the fundamental principles of justice and

3   the ability of a litigant to fully articulate the emotional, psychological, and real-life consequences of

4   a defendant's wrongful actions.

5        84.   Plaintiff's concern about the potential harm to her dog, including the fear that her

6   pet may develop cancer due to the toxic environment caused by Apple's operations, is not merely

7   a trivial complaint. It is a direct response to the pervasive environmental hazards Apple has

8   knowingly inflicted on Plaintiff's surroundings. Apple's attempt to dismiss this concern by framing

9   it as "*irrelevant*" or "*unreasonable*" is a transparent effort to downplay the serious impact of their

10   environmental violations on both Plaintiff and her pet. The anxiety caused by exposure to toxic

11   substances is valid and real, and it is precisely the kind of harm that Plaintiff is entitled to bring

12   before the court.

13        85.   California law and policy acknowledge that the legal rights of pet owners extend

14   beyond the mere ownership of an animal as property. Under California law, pets are regarded as

15   more than just property. While animals may still be classified as property in certain contexts,

16   California courts have recognized the emotional value pets provide to their owners, and the harm

17   that comes from seeing them injured or threatened by negligence. In cases involving harm to pets,

18   courts have allowed pet owners to seek compensation not only for the cost of veterinary care but

19   also for the emotional distress caused by the harm to their animals.

20        86.   In *Crosby v. L.A. County*, 124 Cal.App.4th 1151 (2004), for example, the court

21   acknowledged that the "*emotional distress suffered by the owner of an animal is compensable when the*

22   *animal is harmed or killed due to negligence or other wrongful acts.*" Furthermore, California's Civil

23   Code Section 3340 allows pet owners to seek damages for the wrongful killing of their animals,

24   reflecting the recognition of pets as beings of emotional importance to their owners. While this

25   statute does not specifically address the worry or anxiety caused by the fear of future harm to a pet,

26   it sets a broader precedent for the legal recognition of emotional distress claims related to pets.

27        87.   Therefore, Plaintiff's concern for her dog is not an extraneous or irrelevant matter

28   to be discarded. It is rooted in legitimate anxiety over the potential health consequences resulting

1   from Defendant's conduct. Plaintiff's claim is not a vague or speculative complaint—it is a direct

2   consequence of the toxic emissions and the emotional toll caused by Apple's hazardous actions.

3   Dismissing these claims would effectively silence Plaintiff's real-life concerns and the emotional

4   harm she suffers as a result of Defendant's environmental misconduct.

5       88.    Furthermore, Apple's motion under Rule 12(b)(6) or 12(f) is inappropriate for

6   striking such claims. Rule 12(b)(6) motions are designed to address the legal sufficiency of claims,

7   not to determine the emotional or psychological impacts of a defendant's conduct on the plaintiff's

8   personal life. Rule 12(f) motions, which seek to strike certain allegations from a pleading, are

9   equally inappropriate here, as Plaintiff's concern for her dog is not "*immaterial*," "*impertinent*," or

10  "*scandalous*." It reflects the real-life consequences of the Defendant's actions. Plaintiff's emotional

11  distress, including worry about her pet's health, is a relevant and legitimate claim of harm that

12  should not be dismissed or struck from the record.

13      89.    Apple's motion to dismiss Plaintiff's concerns about her dog's potential harm

14  should be denied. Plaintiff has every right to bring forward the emotional and psychological impact

15  of Defendant's actions, including the distress caused by fear for her pet's health. Apple's effort to

16  downplay or censor these concerns is both legally unsound and a violation of Plaintiff's right to

17  fully present the scope of the harm caused by Defendant's conduct.

18      90.    Apple also seeks to minimize the role of Appleseed in the harassment campaign and

19  underlying events, disregarding the fact that Appleseed's actions were carried out within the scope

20  of her employment, under Apple's direction, and with Apple's full knowledge. Appleseed, as a

21  member of Apple's Global Security team, had a professional mandate to prevent "leaking" and

22  protect corporate interests, which included retaliating against individuals who engaged in

23  whistleblowing activities that might harm Apple's business interests. This crucial context—now

24  bolstered by the Plaintiff's new evidence of coordinated misconduct—further supports the

25  Plaintiff's IIED claim against Apple.

26      91.    Apple's attempt to dismiss the IIED claim without addressing the pattern of

27  retaliatory actions that have now been thoroughly documented—conduct that includes the

28  wrongful and intentional use of explicit images as an alleged justification for the Plaintiff's firing—

1   reveals the corporate malfeasance at the core of this case. It is apparent that Appleseed's actions
2   were carried out with the knowledge and support of Apple and were designed to achieve the
3   corporate aim of retaliating against and punishing the Plaintiff for engaging in protected
4   whistleblowing activities. (See *Motion to Amend*).

### N.   TOLLING & SCOPE OF CAL. LABOR CODE CLAIMS:

92.   Defendant claims that Plaintiff's § 1102.5 retaliation claim is time-barred because
Plaintiff did not allege equitable tolling. However, Plaintiff filed a complaint with the California
Department of Industrial Relations (DIR) in August 2021, which tolled the statute of limitations
for this claim. The DIR complaint sufficiently put Defendant on notice of Plaintiff's retaliation
claims, which involved reporting workplace safety violations and environmental hazards.
Defendant also argues that the DIR complaint did not provide sufficient notice to Defendant
regarding the specific legal violations now alleged in this lawsuit. This argument is without merit,
as Plaintiff's DIR complaint referenced workplace safety and environmental concerns that directly
relate to the statutory protections under § 1102.5.

93.   Apple's argument that the plaintiff's § 1102.5 claim is barred by the statute of
limitations due to the DIR complaint allegedly not providing notice of the specific legal violations
now referenced in the current lawsuit is not only factually incorrect but also legally unsupported.
The law clearly provides that the filing of a complaint with the California Department of Industrial
Relations (DIR) tolls the statute of limitations for claims related to retaliation, including claims
under § 1102.5, as long as the claim is related to the general subject matter of the DIR complaint.

94.   This tolling provision is designed to allow an employee to seek redress through the
proper administrative channels without the risk of losing their rights due to technicalities. The
plaintiff filed a timely complaint with DIR in August 2021, and the failure of the agency to
investigate within a reasonable time frame is not the plaintiff's fault, nor does it negate the tolling
effect. In this case, when the plaintiff was forced to remove the complaint to federal court due to
the substantial delays at DIR, the tolling effect continued to apply to the claims filed in the current
lawsuit.

95.     Apple's contention that the tolling only applies to workplace safety claims is unfounded. The law does not limit tolling to a narrow interpretation of the complaint's subject matter. The filing of the DIR complaint placed Apple on notice of the general allegations of retaliation for raising concerns about workplace safety and other related matters, including anti-retaliation provisions, privacy violations, and other forms of discrimination. The plaintiff's claims in the current lawsuit are simply a more detailed and formal articulation of the same core facts and concerns raised directly to Apple in 2021, and to multiple agencies over the last three years.

96.     The fact that the plaintiff's complaint now includes specific references to additional laws, such as the NLRA, the Civil Rights Act, and other relevant statutes, does not change the fact that Apple was already put on notice of the retaliation allegations when the DIR complaint was filed. Apple cannot claim surprise over these specific allegations, as the core of the claims has been consistently communicated, both before and after the removal of the case to federal court.

97.     Regarding Apple's repeated claims of lack of notice, it is important to emphasize that a 12(b)(6) motion must be evaluated based on the current complaint in the current lawsuit, not on any previous filings or complaints the plaintiff may have made in the past. The defendant's challenge to the claims should be directed at the allegations in the operative complaint, not at any perceived deficiencies in prior complaints or investigations. Apple's continued attempts to dismiss claims based on a misunderstanding of the statute of limitations, as well as their argument that the plaintiff's current allegations are "new," ignore the fundamental principle that the current lawsuit is based on the facts and claims that have already been brought to their attention through detailed memos, emails, and formal filings—most notably, the issue confirmation sent to Apple's legal and employee relations departments in August 2021.

98.     Moreover, Apple's claims that the NLRA and Department of Labor cases are "*new*" to them are similarly disingenuous. These actions were filed simultaneously with the DIR complaint in August 2021, and Apple's legal team filed a notice of appearance in the NLRA case just days after the complaint was filed. Apple's argument that these claims were somehow not included in their notice process is without merit. If Apple's legal theory were correct, the test for notice would not be whether the defendant has been properly informed of the claims in the current

— 30 —

1  lawsuit, but rather whether every single attorney and law firm representing the defendant has been

2  personally notified of every single previous complaint and case ever filed by the plaintiff. This is an

3  absurd standard and would effectively nullify the legal process as we know it. Instead, the proper

4  test is whether the defendant was on notice of the claims in the current lawsuit, which is plainly the

5  case here.

6       99.    Plaintiff's claim under § 98.6 is similarly not time barred. Plaintiff filed the DIR

7  complaint, which tolled the statute of limitations for this claim. Defendant's argument that Plaintiff

8  failed to establish causation is also without merit. Plaintiff's claims are based on retaliation for her

9  protected activities, including raising concerns about environmental hazards and workplace safety.

10  Plaintiff has sufficiently alleged retaliation related to her protected wage disclosures under these

11  provisions. Defendant's failure to intervene and address this retaliation does not absolve Defendant

12  from liability under these statutes.

13       100.    Apple's attempt to dismiss Plaintiff's Labor Code Section 98.6 claim for penalties,

14  and the associated claims under Sections 232 and 232.5, reflects a fundamental misunderstanding

15  of the factual basis of Plaintiff's claims and a deliberate effort to sidestep the core issues in this

16  case. Apple suggests that the Section 98.6 claim is time-barred, despite clear evidence of ongoing

17  retaliation that ties directly into Plaintiff's protected activities, including her interactions with

18  social media, press involvement, and internal communications that Apple admits to monitoring.

19       101.    First, Plaintiff's claim under Section 98.6 is not premised solely on the filing of a

20  DIR complaint in 2021. Rather, it is rooted in a broader pattern of retaliation—both formal and

21  informal—that occurred well after the August 2021 complaint. This includes the Defendant's

22  surveillance of Plaintiff's social media, internal discussions about workplace safety, and the

23  company's retaliation following those activities. Apple is well aware of these activities. They

24  monitored Plaintiff's social media, interrogated her about her online posts, and later admitted to

25  doing so in internal communications. Apple cannot now claim ignorance about these retaliatory

26  actions, especially considering that the Defendant was actively engaged in the investigation of

27  Plaintiff's actions outside the workplace.

28       102.    Apple also attempts to downplay the significance of the NLRB charge about pay

filed just seven days before Plaintiff was fired. This charge, which was reported in the press, and the subject of a Shareholder Proposal regarding unlawful confidential rules at the company, filed in Aug. 2021, directly pertains to the retaliatory conduct that Plaintiff faced for engaging in protected activities. Apple's suggestion that these events did not alert the company to the need for investigation is not only disingenuous but ignores the clear public record. Apple's own involvement with the press and its subsequent actions against Plaintiff only serve to underline the ongoing retaliation and the company's knowledge of Plaintiff's protected activities. The public nature of these events, including the press reports and the NLRB charge, demonstrates that Apple knew or should have known that its actions were retaliatory.

103.    Apple further argues that the 2021 DIR Complaint could not have alerted them to investigate the facts underlying the Section 98.6 claim, but this is a mischaracterization of the timeline and the facts. The retaliation did not stop after the August 2021 DIR Complaint; instead, it escalated, with Plaintiff being subjected to further harassment, surveillance, and ultimately, termination. Apple's claim that the earlier complaint does not establish a nexus between the retaliatory actions and the Section 98.6 claims is unconvincing. Equitable tolling applies because Plaintiff's allegations involve a continuous pattern of retaliatory actions, not isolated events that ended with the filing of the 2021 complaint.

104.    Moreover, Apple's argument that Plaintiff has not properly pled knowledge of her wage disclosures under Sections 232 and 232.5 is disingenuous. Plaintiff has clearly stated that she openly discussed her wages on social media, which was actively monitored by Apple. In fact, Apple's interrogation of Plaintiff about these conversations, and its knowledge of Plaintiff's social media activity, directly links the retaliation to these disclosures. Plaintiff does not need to demonstrate that Apple's executives specifically reviewed every social media post in real-time. The key issue is that Apple knew, or had reason to know, about these disclosures and acted in direct retaliation, as evidenced by the company's increased surveillance, and questioning of Plaintiff about her online activities.

105.    It is also critical to recognize that Apple's claim that Plaintiff failed to establish a causal link between the disclosures and retaliatory actions is based on a selective reading of the

1  facts. The timeline is clear: Plaintiff posted about her wages, Apple surveilled her social media and

2  Slack activity, Plaintiff was questioned about it, and then she faced retaliation, culminating in her

3  termination. This sequence of events provides the causal link needed to support her claims under

4  Sections 232 and 232.5. To claim that these disclosures and the resulting retaliation are

5  disconnected is to ignore the plain facts that Apple itself created by actively monitoring Plaintiff's

6  activities and engaging in retaliatory actions. Further, according to the second sentence of Rule

7  9(b), malice, intent, knowledge, and other conditions of mind may be alleged generally.[17]

8       106.    Finally, Apple's argument that Plaintiff's claims are time-barred under Section 98.6

9  is misplaced. The claim is not about the DIR complaint alone—it is about ongoing retaliation and

10  retaliatory conduct that continues up to and beyond Plaintiff's termination. The one-year statute

11  of limitations does not bar these claims because the actions Plaintiff complains of are part of an

12  ongoing pattern of unlawful retaliation. The timeline of Plaintiff's retaliation claims, including the

13  press reports, social media posts, and NLRB charge, make clear that these events occurred within

14  the applicable time frame and that the retaliatory actions were not isolated to one single event or

15  complaint.

16       107.    Apple's attempt to dismiss these claims on the grounds of timeliness and failure to

17  plead knowledge is not only legally flawed but also an attempt to evade responsibility for its

18  retaliatory conduct. The evidence is clear: Apple knew of Plaintiff's protected activities, monitored

19  her social media, and acted in direct retaliation. The claims under Labor Code Sections 98.6, 232,

20  and 232.5 are well-founded, timely, and supported by clear facts. Apple's motion to dismiss these

21  claims should be denied.

22       108.    In response to Apple's baseless assertion that it lacked knowledge of Plaintiff's wage

23  disclosures, Plaintiff is filing a request for judicial notice of news articles published at the time,

24  which reported on the pay complaints and allegations. These articles are highly relevant, as they

25  were widely circulated and explicitly discussed Apple's compensation practices, making it clear

26

27      [17] § 1241 Statement of Particular Matters—Fraud, Mistake, and Conditions of Mind, 5 Fed. Prac. & Proc.
Civ. § 1241 (4th ed.); *Pleading Conditions of the Mind under Rule 9(b): Repairing the Damage Wrought by*

28  *Iqbal,* 41 Cardozo L. Rev. 1015 (2020).

that Defendant was aware of the issues raised publicly. Furthermore, Plaintiff could also submit additional evidence to establish Apple's knowledge of her wage disclosures, including screenshots of relevant Slack conversations, Twitter posts, and other communications where Plaintiff openly discussed her wage and defendant admitted to monitoring her social media. However, such evidence is not necessary to survive this motion—Apple's attempt to force a full evidentiary hearing at the motion to dismiss stage is nothing more than a tactic to complicate and delay the proceedings. This is precisely the type of issue that should be addressed during discovery, not prematurely in a Rule 12(b)(6) motion.

## O. Allegations of "New" Allegations

109.    Apple claims that Plaintiff's nuisance claim now contains new allegations unrelated to the statute-of-limitations problem, particularly regarding Apple's conduct (e.g., the EH&S legal matters and testing inspections, as well as Plaintiff's personal injury, including hives and yellowing of clothing). These are not new allegations. They were in prior filings and are further elaborations of facts previously presented in the case. If Apple attempts to exclude these as *"new,"* they are disregarding the fact that these allegations were always part of the factual basis supporting Plaintiff's claims and directly discussed on prior filings. For instance, Plaintiff previously included actual photographs of the yellowed clothes.

110.    Defendant claims that Plaintiff has introduced new allegations in the amended complaint that were not allowed by the Court's prior orders. Specifically, Defendant argues that Plaintiff expanded the factual bases for her claims (e.g., new allegations of harm in the private nuisance claim and expanded facts in the IIED claims). These amendments, however, were made to clarify and address Defendant's prior motions and the Court's instructions. Plaintiff's amendments do not introduce new legal theories or impermissible claims, and the allegations are consistent with the original complaint. Therefore, the motion to dismiss based on unauthorized amendments should be denied.

111.    Apple claims Plaintiff added new statutory violations (environmental laws) that were not part of Plaintiff's prior filings and that the Court only allowed you to amend to plead

1  tolling. The inclusion of environmental violations isn't a new claim. Rather, Plaintiff's complaints

2  about workplace safety and toxic emissions that were made well before the specific statutory

3  references were clarified. These violations are not newly alleged legal grounds but are part of the

4  broader set of complaints that have consistently been the foundation of Plaintiff's retaliation claim.

5  Plaintiff's previous complaints, whether expressed in general terms or with more specificity, always

6  referenced environmental concerns.

7       112.    Apple's claim that Plaintiff has added new allegations in Plaintiff's post-termination

8  IIED claim (such as impersonation on social media and additional attacks) should also be addressed.

9  These are not new facts. They are details supporting Plaintiff's IIED claim based on Apple's

10  continued harassment, which Plaintiff has consistently alleged. The fact that these attacks

11  continued post-termination is crucial to understanding the ongoing harm Plaintiff has faced. If

12  these instances were not detailed in the prior filings does not make them "new" but rather an

13  important part of illustrating the continuation of the retaliatory conduct, which is relevant to

14  Plaintiff's IIED claim. Further, most of these were noted in prior filings – but Plaintiff literally does

15  not have the time to go back and find all of these references document them and report them to the

16  court. If this litigation is a competition of who can dedicate the most resources to working on legal

17  filings – the defendant will win, but that is not the point of lawsuits.

18       113.    Apple claims the Plaintiff introduced entirely new examples of complaints Plaintiff

19  raised (e.g., disparate impact of chemical exposure, safety concerns in 2021), as well as additional

20  adverse actions (e.g., failure to provide performance reviews, lack of safety responses, etc.). These

21  are not "new" allegations as they were in multiple prior complaints. Plaintiff cannot rebut all of these

22  false allegations against her without exceeding page limits and filing deadlines, which is certainly

23  one of the aims of Defendant making these accusations.

24       **P.  CONCLUSION**

25       114.    Defendant's motion to dismiss should be denied in its entirety. Plaintiff's claims are

26  timely, legally sufficient, and supported by factual allegations that meet the required legal

27  standards. Defendant's arguments are based on incorrect interpretations of the law and facts, and

28

they improperly seek to resolve issues of fact at this early stage of the litigation. The claims should be allowed to proceed to discovery. For these reasons, Plaintiff respectfully requests that the Court deny Defendant's motion to dismiss and allow this case to move forward.

115.    "Generally, questions of fact cannot be resolved or determined on a motion to dismiss a complaint for failure to state a claim on which relief can be granted. It is not for the court to weigh the evidence as fact-finding has no part in resolving a motion to dismiss for failure to state a claim. Accordingly, an action may not be summarily disposed of on a motion to dismiss where it involves a question of fact which should be heard and determined at the trial. The plaintiff is not taken to have consented to the determination of controverted questions of fact averred in the complaint in a summary manner or otherwise than by a formal trial." 35B C.J.S. Federal Civil Procedure § 853

116.    Plaintiff respectfully asserts that she does not concede any argument made by the Defendant. While the Court may have noted that some of Plaintiff's points appear to merit further discussion, Plaintiff maintains that all of her claims are valid and deserving of full consideration. Plaintiff is a single individual, currently grappling with serious physical health issues, who has been given only two weeks to respond to yet another motion filed by a team of attorneys representing a well-resourced Defendant.

117.    Furthermore, this case is already burdened by a docket of 149 entries, and the Defendant has not even filed a formal answer yet. It is critical that Plaintiff's case is heard in its entirety, and she requests that the Court permit her to amend her complaint to address any points on which the Court may find merit in the Defendant's arguments. This includes the concurrent motion to re-add the RICO, Ultrahazardous Activities, Bane, and Ralph claims, which are central to Plaintiff's allegations and to ensuring the full scope of her claims is presented. Plaintiff does not consent to the conversion of any pending motion into a Rule 56 motion and instead demands a full evidentiary hearing as provided to her by law.

118.    *"The importance of citizen enforcement in environmental matters cannot be overstated. Private parties can help fill the gap when government agencies lack the resources to pursue enforcement of environmental laws, and ensure that violators of environmental regulations are held accountable."* Natural

1  *Resources Defense Council v. Southwest Marine, Inc.,* 236 F.3d 985, 993 (9th Cir. 2000).

2

3

4  Dated: January 22, 2025.

5

6  Signature:

7

8

9

10

11  _____

12  **/s/ Ashley M. Gjovik**

13  *Pro Se Plaintiff*

14
   **Email**: legal@ashleygjovik.com
15  **Physical Address**: Boston, Massachusetts
   **Mailing Address:** 2108 N St. Ste. 4553 Sacramento, CA, 95816
16  **Phone**: (408) 883-4428

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit E: U.S. EPA Notice of Violations

(89 of 261) Page 89 of 261 Case: 25-2028, 05/09/2025, DktEntry: 17.3, Page 89 of 261
1/22/25, 4:47 PM    Case 3:23-cv-04597-EMC    Document 108-1 Filed 01/22/25    Page 61 of 84
Violation Report | ECHO | US EPA

An official website of the United States government

MENU

Search EPA.gov

Search Options    Analyze Trends    Find EPA Cases    Data Services    Help

**ECHO**
Enforcement and
Compliance History Online
<https://echo.epa.gov/>

Login    Contact Us <https://epa.gov/resources/general-info/contact-us>

# Violation Report

Help <https://epa.gov/help/reports/hazardous-waste-violation-help>

## Facility Summary

**APPLE INC**

**3250 SCOTT BLVD, SANTA CLARA, CA 95054** ⓘ

**RCRA (Resource Conservation and Recovery Act) ID:** CAR000278176

**FRS (Facility Registry Service) ID:** 110001168254

**Industry:** 541715 - Research and Development in the Physical, Engineering, and Life Sciences (except Nanotechnology and Biotechnology)

### Related Reports

■ Detailed Facility Report

View Envirofacts Reports

## Hazardous Waste Violation Information

**Violation Type:** 262.A - Standards Applicable to Generators of HW: General    **Determined Date:** 01/16/2024
**Determined By:** EPA    **Return to Compliance Date:** --
**Responsible Agency:** EPA    **Return to Compliance Qualifier:** --
**Violation Activity Location:** CA

### Citations

| Citation ⇕ | Description ⇕ |
|---|---|
| 262.17(a)(5)(ii)(B) | Mark or label its tanks with an indication of the hazards of the contents (examples include, but are not limited to, the applicable hazardous waste characteristic(s) (i.e., ignitable, corrosive, react |
| 262.11 | Generators must determine if their solid waste is a hazardous waste |
| 262.17(a)(5)(i)(C) | date each period of accumulation begins is marked and visible on each LQG container |

### Linked Compliance Monitoring

| Compliance Monitoring Type ⇕ | Agency ⇕ | Date ⇕ |
|---|---|---|
| Focused Compliance Inspection | EPA | 01/16/2024 |

### Linked Enforcement Actions

| Type of Action ⇕ | Agency ⇕ | Date | Penalty Assessed ⇕ |
|---|---|---|---|
| INSPECTION REPORT WRITTEN | EPA | 04/30/2024 | -- |

∧ Top of Page

🇺🇸 An official website of the United States government

MENU

Search EPA.gov

**ECHO**
Enforcement and
Compliance History Online

Search Options  Analyze Trends  Find EPA Cases  Data Services  Help

Login  Contact Us <https://epa.gov/resources/general-info/contact-us>

<https://echo.epa.gov/>

# Violation Report

Help <https://epa.gov/help/reports/hazardous-waste-violation-help>



## Facility Summary

**APPLE INC**

**3250 SCOTT BLVD, SANTA CLARA, CA 95054** ⓘ

RCRA (Resource Conservation and Recovery Act) ID: CAR000278176
FRS (Facility Registry Service) ID: 110001168254
Industry: 541715 - Research and Development in the Physical, Engineering, and Life Sciences (except Nanotechnology and Biotechnology)

**Related Reports**

☐ Detailed Facility Report

View Envirofacts Reports

## Hazardous Waste Violation Information

Violation Type: 262.A - Standards Applicable to Generators of HW: General
Determined By: EPA
Responsible Agency: EPA

Determined Date: 08/17/2023
Return to Compliance Date: 09/08/2024
Return to Compliance Qualifier: D - Documented
Violation Activity Location: CA

### Citations

| Citation | Description |
|---|---|
| 262.11 | Generators must determine if their solid waste is a hazardous waste |

### Linked Compliance Monitoring

| Compliance Monitoring Type | Agency | Date |
|---|---|---|
| Compliance Evaluation Inspection | EPA | 08/17/2023 |

### Linked Enforcement Actions

| Type of Action | Agency | Date | Penalty Assessed |
|---|---|---|---|
| INSPECTION REPORT WRITTEN | EPA | 04/30/2024 | -- |

︿ Top of Page



## Discover.

**Accessibility**
<https://www.epa.gov/accessibility>

**Budget & Performance**
<https://www.epa.gov/planandbudget>

**Contracting**
<https://www.epa.gov/contracts>

**EPA www Web Snapshots**
<https://www.epa.gov/home/wwwepagov-snapshots>

## Connect.

**Data.gov** ☑ <https://www.data.gov/>

**Inspector General**
<https://www.epa.gov/office-inspector-general/about-epas-office-inspector-general>

**Jobs** <https://www.epa.gov/careers>

**Newsroom**
<https://www.epa.gov/newsroom>

## Ask.

**Contact EPA**
<https://www.epa.gov/aboutepa/forms/contact-epa>

**EPA Disclaimers**
<https://www.epa.gov/web-policies-and-procedures/epa-disclaimers>

**Hotlines**
<https://www.epa.gov/aboutepa/epa-hotlines>

An official website of the United States government

MENU

Search EPA.gov

# ECHO
## Enforcement and Compliance History Online
<https://echo.epa.gov/>

Search Options   Analyze Trends   Find EPA Cases   Data Services   Help

Login   Contact Us <https://epa.gov/resources/general-info/contact-us>

# Violation Report

Help <https://epa.gov/help/reports/hazardous-waste-violation-help>

## Facility Summary

**APPLE INC**

**3250 SCOTT BLVD, SANTA CLARA, CA 95054** ⓘ

RCRA (Resource Conservation and Recovery Act) ID: CAR000278176
FRS (Facility Registry Service) ID: 110001168254
Industry: 541715 - Research and Development in the Physical, Engineering, and Life Sciences (except Nanotechnology and Biotechnology)

### Related Reports

☐ Detailed Facility Report

View Envirofacts Reports

## Hazardous Waste Violation Information

Violation Type: 262.A - Standards Applicable to Generators of HW: General
Determined By: EPA
Responsible Agency: EPA

Determined Date: 08/17/2023
Return to Compliance Date: 09/08/2024
Return to Compliance Qualifier: D - Documented
Violation Activity Location: CA

### Citations

| Citation ↕ | Description ↕ |
|---|---|
| 262.17(a)(1)(iv) | Closed container during storage in LGQ CAA, with limited exceptions. |

### Linked Compliance Monitoring

| Compliance Monitoring Type ↕ | Agency ↕ | Date ↕ |
|---|---|---|
| Compliance Evaluation Inspection | EPA | 08/17/2023 |

### Linked Enforcement Actions

| Type of Action ↕ | Agency ↕ | Date ↕ | Penalty Assessed ↕ |
|---|---|---|---|
| INSPECTION REPORT WRITTEN | EPA | 04/30/2024 | -- |

⌃ Top of Page



## Discover.

**Accessibility**
<https://www.epa.gov/accessibility>

**Budget & Performance**
<https://www.epa.gov/planandbudget>

**Contracting**
<https://www.epa.gov/contracts>

**EPA www Web Snapshots**
<https://www.epa.gov/home/wwwepagov-snapshots>

## Connect.

**Data.gov** ↗ <https://www.data.gov/>

**Inspector General**
<https://www.epa.gov/office-inspector-general/about-epas-office-inspector-general>

**Jobs** <https://www.epa.gov/careers>

**Newsroom**
<https://www.epa.gov/newsroom>

## Ask.

**Contact EPA**
<https://www.epa.gov/aboutepa/forms/contact-epa>

**EPA Disclaimers**
<https://www.epa.gov/web-policies-and-procedures/epa-disclaimers>

**Hotlines**
<https://www.epa.gov/aboutepa/epa-hotlines>



An official website of the United States government

MENU

Search EPA.gov

| | |
|---|---|
| Search Options | Analyze Trends | Find EPA Cases | Data Services | Help |

Login     Contact Us <https://epa.gov/resources/general-info/contact-us>

<https://echo.epa.gov/>

# Violation Report

🛈 Help <https://epa.gov/help/reports/hazardous-waste-violation-help>

## Facility Summary

### APPLE INC

### 3250 SCOTT BLVD, SANTA CLARA, CA 95054 ⓘ

**RCRA (Resource Conservation and Recovery Act) ID:** CAR000278176

**FRS (Facility Registry Service) ID:** 110001168254

**Industry:** 541715 - Research and Development in the Physical, Engineering, and Life Sciences (except Nanotechnology and Biotechnology)

### Related Reports

⬛ Detailed Facility Report

View Envirofacts Reports

## Hazardous Waste Violation Information

**Violation Type:** 262.A - Standards Applicable to Generators of HW: General

**Determined By:** EPA

**Responsible Agency:** EPA

**Determined Date:** 08/17/2023

**Return to Compliance Date:** 09/08/2024

**Return to Compliance Qualifier:** D - Documented

**Violation Activity Location:** CA

### Citations

| Citation ⇅ | Description ⇅ |
|---|---|
| 262.17(a)(5)(ii)(B) | Mark or label its tanks with an indication of the hazards of the contents (examples include, but are not limited to, the applicable hazardous waste characteristic(s) (i.e., ignitable, corrosive, react |
| 262.17(a)(5)(i)(C) | date each period of accumulation begins is marked and visible on each LQG container |

### Linked Compliance Monitoring

| Compliance Monitoring Type ⇅ | Agency ⇅ | Date ⇅ |
|---|---|---|
| Compliance Evaluation Inspection | EPA | 08/17/2023 |

### Linked Enforcement Actions

| Type of Action ⇅ | Agency ⇅ | Date | Penalty Assessed ⇅ |
|---|---|---|---|
| INSPECTION REPORT WRITTEN | EPA | 04/30/2024 | -- |

⌃ Top of Page

🇺🇸 An official website of the United States government

MENU

Search EPA.gov

# ECHO
Enforcement and
Compliance History Online

Search Options   Analyze Trends   Find EPA Cases   Data Services   Help

Login   Contact Us <https://epa.gov/resources/general-info/contact-us>

<https://echo.epa.gov/>

# Violation Report

🔗 Help <https://epa.gov/help/reports/hazardous-waste-violation-help>

## Facility Summary

**APPLE INC**

**3250 SCOTT BLVD, SANTA CLARA, CA 95054** ⓘ

RCRA (Resource Conservation and Recovery Act) ID: CAR000278176

FRS (Facility Registry Service) ID: 110001168254

Industry: 541715 - Research and Development in the Physical, Engineering, and Life Sciences (except Nanotechnology and Biotechnology)

**Related Reports**

☐ Detailed Facility Report

View Envirofacts Reports

## Hazardous Waste Violation Information

Violation Type: 262.A - Standards Applicable to Generators of HW: General

Determined By: EPA

Responsible Agency: EPA

Determined Date: 08/17/2023

Return to Compliance Date: 09/08/2024

Return to Compliance Qualifier: D - Documented

Violation Activity Location: CA

## Citations

| Citation ↕ | Description ↕ |
|---|---|
| 262.17(b) | If LQG accumulates for longer than 90 days, it is a storage facility, unless granted an extension |

## Linked Compliance Monitoring

| Compliance Monitoring Type ↕ | Agency ↕ | Date ↕ |
|---|---|---|
| Compliance Evaluation Inspection | EPA | 08/17/2023 |

## Linked Enforcement Actions

| Type of Action ↕ | Agency ↕ | Date ↕ | Penalty Assessed ↕ |
|---|---|---|---|
| INSPECTION REPORT WRITTEN | EPA | 04/30/2024 | -- |

⌃ Top of Page



## Discover.

**Accessibility**
<https://www.epa.gov/accessibility>

**Budget & Performance**
<https://www.epa.gov/planandbudget>

**Contracting**
<https://www.epa.gov/contracts>

**EPA www Web Snapshots**
<https://www.epa.gov/home/wwwepagov-snapshots>

## Connect.

**Data.gov** ☑ <https://www.data.gov/>

**Inspector General**
<https://www.epa.gov/office-inspector-general/about-epas-office-inspector-general>

**Jobs** <https://www.epa.gov/careers>

**Newsroom**
<https://www.epa.gov/newsroom>

## Ask.

**Contact EPA**
<https://www.epa.gov/aboutepa/forms/contact-epa>

**EPA Disclaimers**
<https://www.epa.gov/web-policies-and-procedures/epa-disclaimers>

**Hotlines**
<https://www.epa.gov/aboutepa/epa-hotlines>

🇺🇸 An official website of the United States government

MENU

Search EPA.gov

**Search Options**  **Analyze Trends**  **Find EPA Cases**  **Data Services**  **Help**

Login  Contact Us <https://epa.gov/resources/general-info/contact-us>

# ECHO
Enforcement and
Compliance History Online

<https://echo.epa.gov/>

# Violation Report

Help <https://epa.gov/help/reports/hazardous-waste-violation-help>

## Facility Summary

**APPLE INC**

**3250 SCOTT BLVD, SANTA CLARA, CA 95054** ⓘ

**RCRA (Resource Conservation and Recovery Act) ID:** CAR000278176

**FRS (Facility Registry Service) ID:** 110001168254

**Industry:** 541715 - Research and Development in the Physical, Engineering, and Life Sciences (except Nanotechnology and Biotechnology)

### Related Reports

☐ Detailed Facility Report

View Envirofacts Reports

## Hazardous Waste Violation Information

**Violation Type:** 270.A - EPA Administered Permit Programs: the HW Permit Program General Information

**Determined By:** EPA

**Responsible Agency:** EPA

**Determined Date:** 08/17/2023

**Return to Compliance Date:** --

**Return to Compliance Qualifier:** --

**Violation Activity Location:** CA

### Citations

| Citation ⇅ | Description ⇅ |
|---|---|
| 270.1(c) | O/O PERMIT AND POST-CLOSURE PERMIT REQUIREMENTS |

### Linked Compliance Monitoring

| Compliance Monitoring Type ⇅ | Agency ⇅ | Date ⇅ |
|---|---|---|
| Compliance Evaluation Inspection | EPA | 08/17/2023 |

### Linked Enforcement Actions

| Type of Action ⇅ | Agency ⇅ | Date ⇅ | Penalty Assessed ⇅ |
|---|---|---|---|
| INSPECTION REPORT WRITTEN | EPA | 04/30/2024 | -- |

⌃ Top of Page



## Discover.

**Accessibility**
<https://www.epa.gov/accessibility>

**Budget & Performance**
<https://www.epa.gov/planandbudget>

**Contracting**
<https://www.epa.gov/contracts>

**EPA www Web Snapshots**
<https://www.epa.gov/home/wwwepagov-snapshots>

## Connect.

**Data.gov** ☑ <https://www.data.gov/>

**Inspector General**
<https://www.epa.gov/office-inspector-general/about-epas-office-inspector-general/>

**Jobs** <https://www.epa.gov/careers>

**Newsroom**
<https://www.epa.gov/newsroom>

## Ask.

**Contact EPA**
<https://www.epa.gov/aboutepa/forms/contact-epa>

**EPA Disclaimers**
<https://www.epa.gov/web-policies-and-procedures/epa-disclaimers>

**Hotlines**
<https://www.epa.gov/aboutepa/epa-hotlines>

(95 of 261), Page 95 of 261 Case: 25-2028, 05/09/2025, DktEntry: 17.3, Page 95 of 261
1/22/25, 4:49 PM Case 3:23-cv-04597-EMC Document 158 Filed 01/22/25 Page 67 of 84
Violation Report | ECHO | US EPA

🇺🇸 An official website of the United States government

MENU

Search EPA.gov



Search Options    Analyze Trends    Find EPA Cases    Data Services    Help

Login    Contact Us <https://epa.gov/resources/general-info/contact-us>

Enforcement and
Compliance History Online

<https://echo.epa.gov/>

# Violation Report

Help <https://epa.gov/help/reports/hazardous-waste-violation-help>

## Facility Summary

**APPLE INC**

**3250 SCOTT BLVD, SANTA CLARA, CA 95054** ⓘ

**RCRA (Resource Conservation and Recovery Act) ID:** CAR000278176

**FRS (Facility Registry Service) ID:** 110001168254

**Industry:** 541715 - Research and Development in the Physical, Engineering, and Life Sciences (except Nanotechnology and Biotechnology)

### Related Reports

⬛ Detailed Facility Report

View Envirofacts Reports

## Hazardous Waste Violation Information

**Violation Type:** 262.B - Standards Applicable to Generators of HW: Manifest Requirements Applicable to Small and Large Quantity Generators

**Determined By:** EPA

**Responsible Agency:** EPA

**Determined Date:** 01/16/2024

**Return to Compliance Date:** --

**Return to Compliance Qualifier:** --

**Violation Activity Location:** CA

### Citations

| Citation ⇅ | Description ⇅ |
|---|---|
| 262.20(a)(1) | A generator who transports, or offers for transport a hazardous waste for offsite treatment, storage, or disposal (TSD), or a TSD facility who offers for transport a rejected hazardous waste load |

### Linked Compliance Monitoring

| Compliance Monitoring Type ⇅ | Agency ⇅ | Date ⇅ |
|---|---|---|
| Focused Compliance Inspection | EPA | 01/16/2024 |

### Linked Enforcement Actions

| Type of Action ⇅ | Agency ⇅ | Date ⇅ | Penalty Assessed ⇅ |
|---|---|---|---|
| INSPECTION REPORT WRITTEN | EPA | 04/30/2024 | -- |

⌃ Top of Page

🇺🇸 An official website of the United States government

MENU

Search EPA.gov

Search Options    Analyze Trends    Find EPA Cases    Data Services    Help

Login    Contact Us <https://epa.gov/resources/general-info/contact-us>

**ECHO**
Enforcement and
Compliance History Online

<https://echo.epa.gov/>

# Violation Report

⚙ Help <https://epa.gov/help/reports/hazardous-waste-violation-help>

## Facility Summary

**APPLE INC**

**3250 SCOTT BLVD, SANTA CLARA, CA 95054** ⓘ

RCRA (Resource Conservation and Recovery Act) ID: CAR000278176

FRS (Facility Registry Service) ID: 110001168254

Industry: 541715 - Research and Development in the Physical, Engineering, and Life Sciences (except Nanotechnology and Biotechnology)

**Related Reports**

☐ Detailed Facility Report

View Envirofacts Reports

## Hazardous Waste Violation Information

**Violation Type:** 265.J - Interim Status Standards for Owners and Operators of HW TSDs: Tank Systems

**Determined By:** EPA

**Responsible Agency:** EPA

**Determined Date:** 01/16/2024

**Return to Compliance Date:** --

**Return to Compliance Qualifier:** --

**Violation Activity Location:** CA

### Citations

| Citation ⇅ | Description ⇅ |
|---|---|
| 265.195(a) | DAILY INSPECTION REQUIREMENTS |

### Linked Compliance Monitoring

| Compliance Monitoring Type ⇅ | Agency ⇅ | Date ⇅ |
|---|---|---|
| Focused Compliance Inspection | EPA | 01/16/2024 |

### Linked Enforcement Actions

| Type of Action ⇅ | Agency ⇅ | Date ⇅ | Penalty Assessed ⇅ |
|---|---|---|---|
| INSPECTION REPORT WRITTEN | EPA | 04/30/2024 | -- |

⌃ Top of Page



## Discover.

**Accessibility**
<https://www.epa.gov/accessibility>

**Budget & Performance**
<https://www.epa.gov/planandbudget>

**Contracting**
<https://www.epa.gov/contracts>

**EPA www Web Snapshots**
<https://www.epa.gov/home/wwwepagov-snapshots>

## Connect.

**Data.gov** ↗ <https://www.data.gov/>

**Inspector General**
<https://www.epa.gov/office-inspector-general/about-epas-office-inspector-general>

**Jobs** <https://www.epa.gov/careers>

**Newsroom**
<https://www.epa.gov/newsroom>

## Ask.

**Contact EPA**
<https://www.epa.gov/aboutepa/forms/contact-epa>

**EPA Disclaimers**
<https://www.epa.gov/web-policies-and-procedures/epa-disclaimers>

**Hotlines**
<https://www.epa.gov/aboutepa/epa-hotlines>

🇺🇸 An official website of the United States government

MENU

Search EPA.gov

**ECHO**
Enforcement and
Compliance History Online

Search Options   Analyze Trends   Find EPA Cases   Data Services   Help

Login   Contact Us <https://epa.gov/resources/general-info/contact-us>

<https://echo.epa.gov/>

# Violation Report

Help <https://epa.gov/help/reports/hazardous-waste-violation-help>

| Facility Summary |
|---|

**APPLE INC**

**3250 SCOTT BLVD, SANTA CLARA, CA 95054** ⓘ

**Related Reports**

◼ Detailed Facility Report

View Envirofacts Reports

RCRA (Resource Conservation and Recovery Act) ID: CAR000278176
FRS (Facility Registry Service) ID: 110001168254
Industry: 541715 - Research and Development in the Physical, Engineering, and Life Sciences (except Nanotechnology and Biotechnology)

| Hazardous Waste Violation Information |
|---|

**Violation Type:** 270.A - EPA Administered Permit Programs: the HW Permit Program General Information

**Determined By:** EPA

**Responsible Agency:** EPA

**Determined Date:** 01/16/2024

**Return to Compliance Date:** --

**Return to Compliance Qualifier:** --

**Violation Activity Location:** CA

## Citations

| Citation ↕ | Description ↕ |
|---|---|
| 270.1(c) | O/O PERMIT AND POST-CLOSURE PERMIT REQUIREMENTS |

## Linked Compliance Monitoring

| Compliance Monitoring Type ↕ | Agency ↕ | Date ↕ |
|---|---|---|
| Focused Compliance Inspection | EPA | 01/16/2024 |

## Linked Enforcement Actions

| Type of Action ↕ | Agency ↕ | Date ↕ | Penalty Assessed ↕ |
|---|---|---|---|
| INSPECTION REPORT WRITTEN | EPA | 04/30/2024 | -- |

∧ Top of Page



## Discover.

**Accessibility**
<https://www.epa.gov/accessibility>

**Budget & Performance**
<https://www.epa.gov/planandbudget>

**Contracting**
<https://www.epa.gov/contracts>

**EPA www Web Snapshots**
<https://www.epa.gov/home/wwwepagov-snapshots>

## Connect.

**Data.gov** ↗ <https://www.data.gov>

**Inspector General**
<https://www.epa.gov/office-inspector-general/about-epas-office-inspector-general>

**Jobs** <https://www.epa.gov/careers>

**Newsroom**
<https://www.epa.gov/newsroom>

## Ask.

**Contact EPA**
<https://www.epa.gov/aboutepa/forms/contact-epa>

**EPA Disclaimers**
<https://www.epa.gov/web-policies-and-procedures/epa-disclaimers>

**Hotlines**
<https://www.epa.gov/aboutepa/epa-hotlines>

🇺🇸 An official website of the United States government

MENU

Search EPA.gov

Search Options    Analyze Trends    Find EPA Cases    Data Services    Help

ECHO
Enforcement and
Compliance History Online

Login    Contact Us <https://epa.gov/resources/general-info/contact-us>

<https://echo.epa.gov/>

# Violation Report

🛈 Help <https://epa.gov/help/reports/hazardous-waste-violation-help>

## Facility Summary

**APPLE INC**

**3250 SCOTT BLVD, SANTA CLARA, CA 95054** 🛈

RCRA (Resource Conservation and Recovery Act) ID: CAR000278176
FRS (Facility Registry Service) ID: 110001168254
Industry: 541715 - Research and Development in the Physical, Engineering, and Life Sciences (except Nanotechnology and Biotechnology)

**Related Reports**

◼ Detailed Facility Report

View Envirofacts Reports

## Hazardous Waste Violation Information

Violation Type: 265.BB - Interim Status Standards for Owners and Operators of HW TSDs: Air Emission Standards for Equipment Leaks
Determined By: EPA
Responsible Agency: EPA

Determined Date: 01/16/2024
Return to Compliance Date: --
Return to Compliance Qualifier: --
Violation Activity Location: CA

## Citations

| Citation ↕ | Description ↕ |
|---|---|
| 265.1063(b)(3) | CALIBRATION OF INSTRUMENT BY PROCEDURES SPECIFIED IN REFERENCE METHOD 21 |

## Linked Compliance Monitoring

| Compliance Monitoring Type ↕ | Agency ↕ | Date ↕ |
|---|---|---|
| Focused Compliance Inspection | EPA | 01/16/2024 |

## Linked Enforcement Actions

| Type of Action ↕ | Agency ↕ | Date ↕ | Penalty Assessed ↕ |
|---|---|---|---|
| INSPECTION REPORT WRITTEN | EPA | 04/30/2024 | -- |

⌃ Top of Page



# Discover.

**Accessibility**
<https://www.epa.gov/accessibility>

**Budget & Performance**
<https://www.epa.gov/planandbudget>

**Contracting**
<https://www.epa.gov/contracts>

**EPA www Web Snapshots**
<https://www.epa.gov/home/wwwepagov-snapshots>

# Connect.

**Data.gov** ↗ <https://www.data.gov/>

**Inspector General**
<https://www.epa.gov/office-inspector-general/about-epas-office-inspector-general/>

**Jobs** <https://www.epa.gov/careers>

**Newsroom**
<https://www.epa.gov/newsroom>

# Ask.

**Contact EPA**
<https://www.epa.gov/aboutepa/forms/contact-epa>

**EPA Disclaimers**
<https://www.epa.gov/web-policies-and-procedures/epa-disclaimers>

**Hotlines**
<https://www.epa.gov/aboutepa/epa-hotlines>



An official website of the United States government

MENU

Search EPA.gov

Search Options    Analyze Trends    Find EPA Cases    Data Services    Help

Enforcement and
Compliance History Online

Login    Contact Us <https://epa.gov/resources/general-info/contact-us>

<https://echo.epa.gov/>

# Violation Report

Help <https://epa.gov/help/reports/hazardous-waste-violation-help>



## Facility Summary

**APPLE INC**

**3250 SCOTT BLVD, SANTA CLARA, CA 95054** ⓘ

**RCRA (Resource Conservation and Recovery Act) ID:** CAR000278176

**FRS (Facility Registry Service) ID:** 110001168254

**Industry:** 541715 - Research and Development in the Physical, Engineering, and Life Sciences (except Nanotechnology and Biotechnology)

### Related Reports

■ Detailed Facility Report

View Envirofacts Reports

## Hazardous Waste Violation Information

**Violation Type:** 265.CC - Interim Status Standards for Owners and Operators of HW TSDs: Air Emission Standards for Tanks, Surface Impoundments and Containers

**Determined By:** EPA

**Responsible Agency:** EPA

**Determined Date:** 01/16/2024

**Return to Compliance Date:** --

**Return to Compliance Qualifier:** --

**Violation Activity Location:** CA

### Citations

| Citation ↕ | Description ↕ |
|---|---|
| 265.1083(c)(1) | TANK, SURFACE IMPOUNDMENT, OR CONTAINER FOR WHICH ENTERING HAZARDOUS WASTE HAS AVERAGE VO CONCENTRATION AT POINT OF ORIGINATION < 500 PPMW; HOW VO CONCENTRATION SHALL BE DETERMINED; FREQUENCY OF REVIE |

### Linked Compliance Monitoring

| Compliance Monitoring Type ↕ | Agency ↕ | Date ↕ |
|---|---|---|
| Focused Compliance Inspection | EPA | 01/16/2024 |

### Linked Enforcement Actions

| Type of Action ↕ | Agency ↕ | Date ↕ | Penalty Assessed ↕ |
|---|---|---|---|
| INSPECTION REPORT WRITTEN | EPA | 04/30/2024 | -- |

˄ Top of Page

**Exhibit F: BAAQMD Notice of Violations**

# NOTICE OF VIOLATION

**BAY AREA AIR QUALITY MANAGEMENT DISTRICT**
375 Beale Street, Suite 600, San Francisco, CA 94105
(415) 749-5000

No. **A 64215**

ISSUED TO: **Apple, Inc.**     ☑P ☐G ☐N# **E2839**

ADDRESS: **3250 Scott Blvd.**

CITY: **Santa Clara**     STATE: **CA**     ZIP: **95054**

PHONE: ( )

☐ N# Mailing Address on F61

## OCCURRENCE

NAME:

ADDRESS:     ☑ Same As Above

CITY:     ZIP:

SOURCE: S# **3**   NAME: **Solvent Waste Tank**

EMISSION PT: P#_____ NAME:

DATE: **7/15/2017**   TIME: **0:00**   HRS

| | | | |
|---|---|---|---|
| ☑ | **REG 2 RULE 1 SEC 301**<br>No Authority to Construct | ☑ | **REG 2 RULE 1 SEC 302**<br>No Permit to Operate |
| ☐ | **REG 1 SEC 301**<br>H & S CODE - 41700<br>Public Nuisance | ☐ | **REG 2 RULE ___ SEC 307**<br>Failure to Meet Permit Condition |
| ☐ | **REG 5 SEC 301**<br>Prohibited Open Burning | ☐ | **REG 6 RULE 1 SEC 301**<br>Excessive Visible Emissions |
| ☐ | REG ____ RULE ____ SECTION ____ CODE | | |
| ☐ | REG ____ RULE ____ SECTION ____ CODE | | |

Details: **Installation and Operation of Solvent Waste Tank without AC/PO.**

RECIPIENT NAME: **KEVIN SUNG**

TITLE: **EHS LEAD**

SIGNING THIS NOTICE IS NOT
AN ADMISSION OF GUILT     X _____

➤ WITHIN 10 DAYS, RETURN A COPY OF THIS NOTICE WITH A WRITTEN DESCRIPTION OF THE IMMEDIATE CORRECTIVE ACTION YOU HAVE TAKEN TO PREVENT CONTINUED OR RECURRENT VIOLATION. **THIS VIOLATION IS SUBJECT TO SUBSTANTIAL PENALTY.** YOUR RESPONSE DOES NOT PRECLUDE FURTHER LEGAL ACTION.

ISSUED BY: **Leif Halvorson**     INSP # **894**

DATE: **8/29/2024**     TIME: **13:05**     HRS ☐ MAILED

## PLEASE PRESS HARD

Continued On Reverse

BAY AREA AIR QUALITY MANAGEMENT DISTRICT
375 Beale Street Suite 600, San Francisco CA 94105
(415) 749-5000

# NOTICE OF VIOLATION    No. A 64218

ISSUED TO: Apple, Inc.    ☑ P ☐ G ☐ N° E2834
ADDRESS: 3250 Scott Blvd.
CITY: Santa Clara    STATE: CA    ZIP: 95054
PHONE: (408) 908-0167
☐ N# Mailing Address on F61

**OCCURRENCE**
NAME:
ADDRESS:    ☑ Same As Above
CITY:
SOURCE S#: ____ NAME: Boiler #2    ZIP: - 3MMBtu/hr
EMISSION PT P#: ____ NAME:
DATE: 11/17/2023    TIME: ____ HRS

| | |
|---|---|
| ☐ REG 2 RULE 1 SEC 301<br>No Authority to Construct | ☐ REG 2 RULE 1 SEC 302<br>No Permit to Operate |
| ☐ REG 1 SEC 301<br>H & S CODE - 41700<br>Public Nuisance | ☐ REG 2 RULE ___ SEC 307<br>Failure to Meet Permit Condition |
| ☐ REG 5 SEC 301<br>Prohibited Open Burning | ☐ REG 6 RULE 1 SEC 301<br>Excessive Visible Emissions |

☑ REG 9 RULE 7 SECTION 307.1 CODE ____
☐ REG ___ RULE ___ SECTION ___ CODE ____

Details: Exceeding 30ppm $NO_x$ @ 3% $O_2$ on Boiler #2

RECIPIENT NAME: KEVIN SUNG
TITLE: EHS LEAD
SIGNING THIS NOTICE IS NOT
AN ADMISSION OF GUILT    X ____

➤ WITHIN 10 DAYS, RETURN A COPY OF THIS NOTICE WITH A WRITTEN
DESCRIPTION OF THE IMMEDIATE CORRECTIVE ACTION YOU HAVE
TAKEN TO PREVENT CONTINUED OR RECURRENT VIOLATION. **THIS
VIOLATION IS SUBJECT TO SUBSTANTIAL PENALTY.** YOUR RESPONSE
DOES NOT PRECLUDE FURTHER LEGAL ACTION.

ISSUED BY: LeF Halvoisr    INSP #: 894
DATE: 9/2/2024    TIME: 14:00 HRS    ☐ MAILED

**PLEASE PRESS HARD**

ER VIII 102
Continued On Reverse

Air Quality
Management
District

375 Beale Street, Suite 600, San Francisco, CA 94105
(415) 749-5000

# NOTICE OF VIOLATION

No. A 64219

ISSUED TO **Apple, Inc** ☐P ☐G ☐N# **E2839**

ADDRESS **3250 Scott Blvd.**

CITY **Santa Clara** STATE **CA** ZIP **95054**

PHONE (**408**) **908-0167**

☐ N# Mailing Address on F61

| OCCURRENCE | |
|---|---|
| NAME | |
| ADDRESS | ☑ Same As Above |
| CITY | |
| SOURCE S# ___ NAME **Boiler #3 - 3 MMBt-hr** | |
| EMISSION PT. P# ___ NAME | |
| DATE **7/1/2024** TIME: ___ HRS | |

☐ REG 2 RULE 1 SEC 301
No Authority to Construct

☐ REG 2 RULE 1 SEC 302
No Permit to Operate

☐ REG 1 SEC 301
H & S CODE - 41700
Public Nuisance

☐ REG 2 RULE ___ SEC 307
Failure to Meet Permit Condition

☐ REG 5 SEC 301
Prohibited Open Burning

☐ REG 6 RULE 1 SEC 301
Excessive Visible Emissions

☑ REG **9** RULE **7** SECTION **307.1** CODE

☐ REG ___ RULE ___ SECTION ___ CODE

Details: **Exceeding 30 ppm NOx @ 3% O2 on Boiler #3**

RECIPIENT NAME: **KEVIN SUNG**

TITLE: **EHS LEAD**

SIGNING THIS NOTICE IS NOT
AN ADMISSION OF GUILT          X _____

➤ WITHIN 10 DAYS, RETURN A COPY OF THIS NOTICE WITH A WRITTEN
DESCRIPTION OF THE IMMEDIATE CORRECTIVE ACTION YOU HAVE
TAKEN TO PREVENT CONTINUED OR RECURRENT VIOLATION. **THIS
VIOLATION IS SUBJECT TO SUBSTANTIAL PENALTY**, YOUR RESPONSE
DOES NOT PRECLUDE FURTHER LEGAL ACTION.

ISSUED BY **L. F. Halvorson** INSP # **894**

DATE **9/2/2024** TIME **14:00** HRS ☐ MAILED

## PLEASE PRESS HARD

ER VIII 103

Continued On Reverse

375 Beale Street, Suite 600, San Francisco, CA 94105
Air Quality
Management
District
(415) 749-5000

# NOTICE OF VIOLATION          No. A 64219

ISSUED TO **Apple, Inc** ☐P ☐G ☐N# **E2839**
ADDRESS **3250 Scott Blvd.**
CITY **Santa Clara**    STATE **CA**    ZIP **95054**
PHONE (**408**) **908-0167**
☐ N# Mailing Address on F61

| OCCURRENCE | |
|---|---|
| NAME | |
| ADDRESS | ☑ Same As Above |
| CITY | |

SOURCE: S# ____ NAME **Boiler #3** - **3MMBt/hr**
EMISSION PT: P# ____ NAME: ____
DATE **7/1/2024** ____ TIME: ____ HRS

☐ REG 2 RULE 1 SEC 301
No Authority to Construct

☐ REG 2 RULE 1 SEC 302
No Permit to Operate

☐ REG 1 SEC 301
H & S CODE - 41700
Public Nuisance

☐ REG 2 RULE __ SEC 307
Failure to Meet Permit Condition

☐ REG 5 SEC 301
Prohibited Open Burning

☐ REG 6 RULE 1 SEC 301
Excessive Visible Emissions

☑ REG **9** RULE **7** SECTION **307.1** CODE ____

☐ REG ____ RULE ____ SECTION ____ CODE ____

Details: **Exceeding 30ppm NOx @ 3% O2 on Boiler #3**

RECIPIENT NAME: **KEVIN SUNG**
TITLE: **EHS LEAD**

SIGNING THIS NOTICE IS NOT
AN ADMISSION OF GUILT          X ____

→ WITHIN 10 DAYS, RETURN A COPY OF THIS NOTICE WITH A WRITTEN
DESCRIPTION OF THE IMMEDIATE CORRECTIVE ACTION YOU HAVE
TAKEN TO PREVENT CONTINUED OR RECURRENT VIOLATION. **THIS
VIOLATION IS SUBJECT TO SUBSTANTIAL PENALTY,** YOUR RESPONSE
DOES NOT PRECLUDE FURTHER LEGAL ACTION.

ISSUED BY **L. of Halvorson**    INSP # **894**
DATE **9/12/2024**    TIME **14:00**    HRS ☐ MAILED

**PLEASE PRESS HARD**

ER VIII 104

Continued On Reverse



(/en/)

**A HEALTHY BREATHING ENVIRONMENT FOR EVERY BAY AREA RESIDENT**

District (/en/)   /   Rules & Compliance (/en/rules-and-compliance)   /   Compliance Assistance (/en/rules-and-compliance/compliance-assistance)

Notices of Violations (/en/rules-and-compliance/compliance-assistance/notices-of-violations)

Notices of Violation Issued (/en/rules-and-compliance/compliance-assistance/notices-of-violations/novs-issued)

# Notices of Violation Issued

View Notices of Violation issued to facilities as part of the Air District's compliance and enforcement activities.

## Announcement: Notices of Violation Web Tool

The Air District is committed to vigorously and transparently enforcing all air quality regulations to protect the health of Bay Area residents. To better inform the public of our enforcement activities, the Air District is providing this web tool so that members of the public can access information about Notices of Violation that have been issued for facilities in their communities.

Press Release (/~/media/files/communications-and-outreach/publications/news-releases/2023/novtable_230907_2023_025-pdf.pdf?rev=4bd7407dfddb4109ad178640935cee24&sc_lang=en) 🗎 (196 Kb PDF, 1 pg, posted 9/14/2023) 🌐 ( Tagalog (/~/media/files/communications-and-outreach/publications/news-releases/2023/novtable_230907_2023_025-pdf.pdf?rev=f40332af62334ade9da559be30064f02&sc_lang=fil-ph) | tiếng Việt (/~/media/files/communications-and-outreach/publications/news-releases/2023/novtable_230907_2023_025-pdf.pdf?rev=630b86cf8f3e4a15bc958bfd52042ca3&sc_lang=vi-vn) | Español (/~/media/files/communications-and-outreach/publications/news-releases/2023/novtable_230907_2023_025-pdf.pdf?rev=3bc8bda66ce848088756ba964fb35897&sc_lang=es-mx) | 中文 (/~/media/files/communications-and-outreach/publications/news-releases/2023/novtable_230907_2023_025-pdf.pdf?rev=cb3e679047174b8f91730dc5318bc14a&sc_lang=zh-tw) )

LEARN MORE ➡ (/en/news-and-events/page-resources/2023-news/090723-nov-table)

The Air District conducts inspections to determine compliance with its Rules and Regulations (/en/rules-and-compliance/current-rules), applicable state and federal laws, and permit requirements.

When the Air District discovers an air quality violation, it issues a Notice of Violation (/en/rules-and-compliance/compliance-assistance/notices-of-violations), or NOV. Facilities that are issued an NOV are required to take corrective action. In addition, the Air District will assess a monetary penalty as provided for under California Health & Safety Code sections 42402 through 42403.

For significant penalties, the Air District notifies the public through press releases (/en/news-and-events/press-releases) and email notifications (https://www.baaqmd.gov/contact-us/sign-up-for-information#settlement_signup), and by posting penalty agreements on its Penalties and Settlements (/en/news-and-events/penalties-and-settlements) web page.

(107 of 261), Page 107 of 261
Case: 25-2028, 05/09/2025, DktEntry: 17.3, Page 107 of 261
Case 3:23-cv-04597-EMC    Document 151    Filed 01/22/25    Page 79 of 84

The table on this page provides information on all NOVs issued by the Air District over the past five years. It can be used to find NOVs by facility name or location, and it specifies the regulation violated for each NOV. The current enforcement status of each NOV is also listed and will be updated as the enforcement process progresses.

The various statuses are:

**Pending:** The NOV has been issued, but the Air District has not yet collected a penalty or otherwise fully resolved the NOV. Note that "pending" does not necessarily mean that the violation is ongoing. If a violation has ceased, the status will still be "pending" until a penalty has been collected or the NOV has otherwise been resolved.
**Resolved:** The NOV has been resolved through assessment of a penalty, referral to the district attorney or the US Environmental Protection Agency for prosecution, or other final resolution.
**Cancelled:** Further investigation showed no violations occurred.
**No Further Action (NFA):** No basis for penalty action (e.g., company has gone out of business).
In cases where multiple NOVs are issued to the same facility, the Air District will sometimes resolve them together. Please note, the table does not indicate whether an NOV was resolved individually or as part of a multi-NOV resolution.

## Notices of Violation

**SEARCH & FILTERS**    Collapse to hide search or filter options

(/ADMIN/TABLEUTILS/CSVEXPORT?PAGEID=C94DDB3B-ACD9-4F91-8190-C8B92050EDA1&DATASOURCEID=AHR0CHM6LY9IYWFXBWRWC3BYB2QUYMXVYI5JB3JLLNDPBMRVD3MUBMV0L2V4DGVYBMFSL0

Search ⓘ

apple

Date Range ⓘ

From                To

City

    Your search for    apple ✕    returned the following results:

Items per Page: 10

**166** items in **1** page

| Issuance Date | Violation | Name | City |
|---|---|---|---|
| 9/12/2024 | A64216A | Apple , Inc | Santa Clara |

**Status**
Pending
9/12/2024
**Penalty Amount** ⓘ

**Facility**
22839
**Site**
E2839
**Address**
3250 Scott Boulevard
Santa Clara, CA 95054-5054

**Applicable Regulation**
2-1-301
Regulation Details (/en/rules-and-compliance/current-rules?event=963eaab9-9f56-4328-8671-d9600bfa823f)

**Rule Language**
Regulation 2, Rule 1: Permits – General Requirements (Amendments Adopted 12/15/2021) - Effective 7/1/2022 (/~/media/dotgov/files/rules/reg-2-permits/2021-amendments/documents/20211215_rg0201-pdf.pdf?rev=103cc60e706947d3ad1e4f5a090483c1&sc

📄 (407 Kb PDF, 47 pgs, posted 5/26/2022)

| 9/12/2024 | A64216B | Apple , Inc | Santa Clara |
|---|---|---|---|

**Status**
Pending
9/12/2024
**Penalty Amount** ⓘ

**Facility**
22839
**Site**
E2839
**Address**
3250 Scott Boulevard
Santa Clara, CA 95054-5054

**Applicable Regulation**
2-1-302
Regulation Details (/en/rules-and-compliance/current-rules?event=963eaab9-9f56-4328-8671-d9600bfa823f)

**Rule Language**
Regulation 2, Rule 1: Permits – General Requirements (Amendments Adopted 12/15/2021) - Effective 7/1/2022 (/~/media/dotgov/files/rules/reg-2-

permits/2021-amendments/documents/20211215_rg0201-pdf.pdf?rev=103cc60e706947d3ad1e4f5a090483c1&sc_

(407 Kb PDF, 47 pgs, posted 5/26/2022)

| 9/12/2024 | A64218A | Apple , Inc | Santa Clara |

### Status
Pending
9/12/2024

### Penalty Amount ⓘ

### Facility
22839

### Site
E2839

### Address
3250 Scott Boulevard
Santa Clara, CA 95054-5054

### Applicable Regulation
9-7-307.1

Regulation Details (/en/rules-and-compliance/current-rules?event=024ec7d1-f6b9-4604-addf-18fc09504118)

### Rule Language

Nitrogen Oxides and Carbon Monoxide from Industrial, Institutional, and Commercial Boilers, Steam Generators, and Process Heaters (/~/media/dotgov/files/rules/reg-9-rule-7-nitrogen-oxides-and-carbon-monoxide-from-industrial-institutional-and-commercial-boiler/documents/rg0907.pdf?rev=ab95f36c2dd146528f1cf3c10596bce3&sc_

(107 Kb PDF, 11 pgs, revised 4/24/2018)

| 9/12/2024 | A64219A | Apple , Inc | Santa Clara |

### Status
Pending
9/12/2024

### Penalty Amount ⓘ

### Facility
22839

### Site
E2839

### Address
3250 Scott Boulevard
Santa Clara, CA 95054-5054

### Applicable Regulation
9-7-307.1

Regulation Details (/en/rules-and-compliance/current-rules?event=024ec7d1-f6b9-4604-addf-18fc09504118)

### Rule Language

Santa Clara, CA 95054-5054

### Rule Language

Nitrogen Oxides and Carbon Monoxide from Industrial, Institutional, and Commercial Boilers, Steam Generators, and Process Heaters (/~/media/dotgov/files/rules/reg-9-rule-7-nitrogen-oxides-and-carbon-monoxide-from-industrial-institutional-and-commercial-boiler/documents/rg0907.pdf?rev=ab95f36c2dd146528f1cf3c10596bce3&sc_l

(107 Kb PDF, 11 pgs, revised 4/24/2018)

| 8/29/2024 | A64215A | Apple , Inc | Santa Clara |

### Status
Pending
8/29/2024
### Penalty Amount ⑦

### Facility
22839
### Site
E2839
### Address
3250 Scott Boulevard
Santa Clara, CA 95054-5054

### Applicable Regulation
2-1-301
Regulation Details (/en/rules-and-compliance/current-rules?event=963eaab9-9f56-4328-8671-d9600bfa823f)

### Rule Language
Regulation 2, Rule 1: Permits – General Requirements (Amendments Adopted 12/15/2021) - Effective 7/1/2022 (/~/media/dotgov/files/rules/reg-2-permits/2021-amendments/documents/20211215_rg0201-pdf.pdf?rev=103cc60e706947d3ad1e4f5a090483c1&sc_

(407 Kb PDF, 47 pgs, posted 5/26/2022)

| 8/29/2024 | A64215B | Apple , Inc | Santa Clara |

### Status
Pending
8/29/2024

### Facility
22839
### Site

### Applicable Regulation
2-1-302
Regulation Details (/en/ru...

8/29/2024

## Penalty Amount ⓘ

**Site**

E2839

## Address

3250 Scott Boulevard

Santa Clara, CA 95054-5054

Regulation Details (/en/rules-and-compliance/current-rules?event=963eaab9-9f56-4328-8671-d9600bfa823f)

## Rule Language

Regulation 2, Rule 1: Permits – General Requirements (Amendments Adopted 12/15/2021) - Effective 7/1/2022 (/~/media/dotgov/files/rules/reg-2-permits/2021-amendments/documents/20211215_rg0201-pdf.pdf?rev=103cc60e706947d3ad1e4f5a090483c1&sc_

📄 (407 Kb PDF, 47 pgs, posted 5/26/2022)

Items per Page: 10 ▾

**1 6 6** items in **1** page

## Related Links

Hearing Board Meetings (/en/about-the-air-district/hearing-board/agendas-reports-orders)

Notices of Violation (/en/rules-and-compliance/compliance-assistance/notices-of-violations)

Public Records (/en/contact-us/request-public-records)

*Last Updated: 7/19/2024*

375 Beale Street, Suite 600
San Francisco, CA 94105
415.749.5000 | 1.800.HELP AIR

**Ashley M. Gjovik, JD**
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| | CAND No. 3:23-CV-04597-EMC |
| | 9th Cir No.: 24-6058 |
| **ASHLEY M. GJOVIK**, *an individual*, | **PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE** |
| Plaintiff, | |
| vs. | *In Support of Plaintiff's Opposition to Defendant's Motions to Dismiss* |
| **APPLE INC.**, a corporation, | **Motion Hearing:** |
| Defendant. | **Dept: Courtroom 5 (& Zoom)** |
| | **Judge: Honorable Edward M. Chen** |
| | **Date: February 21, 2025** |
| | **Time: 9AM PT** |

## PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF HER
## CALIFORNIA LABOR CODE § 232 CLAIM

1.      Plaintiff Ashley Gjovik, appearing pro se, respectfully requests that this Court take judicial notice of publicly available evidence demonstrating that Defendant Apple Inc. ("Apple") was aware of and engaged in retaliatory actions against Plaintiff for her legally protected discussions about employee pay, compensation disparities, and workplace organizing, in violation of California Labor Code § 232. Judicial notice is warranted under Federal Rule of Evidence 201(b), as the facts contained in these publicly available sources are not subject to reasonable dispute and are capable of accurate and ready determination from sources whose accuracy cannot reasonably be questioned.

2.      Plaintiff engaged in protected activity under California Labor Code § 232 by discussing pay equity and compensation issues on Apple's internal Slack channels, publicly on Twitter, and in public news articles. At the same time, Apple was under intense public scrutiny regarding pay transparency and equity issues. Yet, despite overwhelming evidence that Apple was aware of these discussions, Apple's attorneys at Orrick, Herrington & Sutcliffe LLP ("Orrick") have repeatedly argued that Apple had no knowledge of Plaintiff's engagement in pay discussions and that Plaintiff cannot prove Apple was aware of such discussions. However, multiple publicly available sources contradict this assertion, including:

## I.  TWITTER POSTS

3.      Plaintiff posted extensively about Apple's pay transparency issues and organizing efforts. [see Exhibit A]. Defendant has admitted that it investigated Plaintiff's Twitter account as part of a purported "leak" investigation but now contradictorily claims it never reviewed Plaintiff's Twitter. Both of these claims cannot simultaneously be true.

4.      Courts have recognized that information from social media platforms like Twitter can be subject to judicial notice, particularly when the content's authenticity is not disputed and it is publicly accessible.

— 1 —

5.     The Ninth Circuit took judicial notice of information on publicly available websites, noting that such information could be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. See, *Daniels-Hall v. National Education Association,* 629 F.3d 992, 998–99 (9th Cir. 2010). The court took judicial notice of publicly available social media posts, recognizing that they could be accurately and readily determined from sources whose accuracy could not reasonably be questioned. See, *United States v. Brown,* 2019 WL 6463491, at *2 (C.D. Cal. Dec. 2, 2019).

## II.   NEWS ARTICLES REPORTING ON PAY TRANSPARENCY AND EMPLOYEE ORGANIZING AT APPLE

6.     Multiple reputable news organizations covered the issue of Apple's pay transparency and workplace organizing at the same time Plaintiff was engaging in protected activity. Many of these articles explicitly state that Apple was asked for comment regarding its employees' discussions about pay equity. [See Exhibit B].

7.     Courts may take judicial notice of news articles to indicate what was in the public realm at the time, though not necessarily for the truth of the matters asserted within them. The Ninth Circuit held that courts "may take judicial notice of publications introduced to indicate what was in the public realm at the time, not whether the contents of those articles were in fact true." See, *Von Saher v. Norton Simon Museum of Art at Pasadena,* 592 F.3d 954, 960 (9th Cir. 2010). The court took judicial notice of newspaper articles as evidence of the information available to the public. See, *Rothman v. Gregor,* 220 F.3d 81, 92 (2d Cir. 2000).

## III.   SIMULTANEOUS LITIGATION

8.     At the exact time of Plaintiff's protected activities, Apple's counsel at Orrick was also representing Apple in a high-profile pay equity lawsuit (*Schultz v. Apple Inc.*) in state court. The existence of this litigation further undercuts Apple's assertion that it had no knowledge of pay-related discussions among its employees. [Exhibit C]. The same counsel are also currently representing Apple in another pay equity lawsuit, *Jong v. Apple Inc.* [Exhibit D].

9. Courts commonly take judicial notice of proceedings and filings in other courts, both within and outside the federal judicial system, if those proceedings have a direct relation to matters at issue. United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992): The Ninth Circuit stated that courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." Rosales-Martinez v. Palmer, 753 F.3d 890, 894 (9th Cir. 2014): The court took judicial notice of state court proceedings that were directly related to the federal case at hand.

## IV. REQUEST FOR JUDICIAL NOTICE

10. Under Federal Rule of Evidence 201(b), a court may take judicial notice of facts that are "not subject to reasonable dispute because they... can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Courts routinely take judicial notice of publicly available news articles, court records, social media posts, and public company statements when they are relevant to matters at issue. See *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010) (taking judicial notice of information published on publicly accessible websites); *Von Saher v. Norton Simon Museum of Art*, 592 F.3d 954, 960 (9th Cir. 2010) (judicial notice of news articles).

Plaintiff respectfully requests that this Court take judicial notice of the following:

1. Publicly available news articles that confirm widespread media coverage of pay transparency and employee organizing at Apple.

2. Plaintiff's public Twitter posts discussing pay equity issues at Apple.

3. Public records and filings from *Schultz v. Apple Inc.*, demonstrating that Apple and its legal counsel at Orrick were actively litigating a pay equity dispute at the same time Plaintiff was discussing the same issues internally and publicly.

11. These sources are reliable, publicly available, and not subject to reasonable dispute, warranting judicial notice under Federal Rule of Evidence 201(b). Given that Apple's legal position directly contradicts readily available public records and news sources, judicial notice is necessary to prevent Apple from benefiting from selective omissions and misrepresentations regarding its awareness of Plaintiff's protected activities.

— 3 —

# V.  Conclusion

10. For the foregoing reasons, Plaintiff respectfully requests that the Court grant this Request for Judicial Notice and consider the publicly available evidence in support of Plaintiff's California Labor Code § 232 claim.

Dated: Jan. 31, 2024.

Signature:

**/s/ Ashley M. Gjovik**

*Pro Se Plaintiff*

**Email**: legal@ashleygjovik.com

**Physical Address**:
Boston, Massachusetts

**Mailing Address**:
2108 N St. Ste. 4553 Sacramento, CA, 95816

**Phone**: (408) 883-4428

**Ashley M. Gjovik, JD**
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# United States District Court

## Northern District of California

|  |  |
|---|---|
|  | CAND No. 3:23-CV-04597-EMC |
|  | 9th Cir No.: 24-6058 |
| **Ashley M. Gjovik**, *an individual*, | **Plaintiff's Request for Judicial Notice** |
| Plaintiff, |  |
| vs. | *In Support of Plaintiff's Opposition to Defendant's Motions to Dismiss* |
| **Apple Inc.**, a corporation, | **Motion Hearing:**<br>**Dept: Courtroom 5 (& Zoom)**<br>**Judge: Honorable Edward M. Chen**<br>**Date: February 21, 2025**<br>**Time: 9 AM PT** |
| Defendant. |  |

(121 of 261), Page 121 of 261
Case: 25-2028, 05/09/2025, DktEntry: 17.3, Page 121 of 261
Case 3:23-cv-04597-EMC    Document 154-1    Filed 01/31/25    Page 2 of 44

**PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF STATUTE OF LIMITATIONS TOLLING FOR CALIFORNIA LABOR CODE §§ 1102.5 AND 98.6/98.7 PENALTY CLAIMS**

## I.  INTRODUCTION

1.      Plaintiff Ashley Gjovik, appearing pro se, respectfully requests that this Court take judicial notice of publicly available and government records demonstrating that Defendant Apple Inc. ("Apple") was placed on notice of Plaintiff's claims under California Labor Code §§ 1102.5 and 98.6/98.7, and that Apple's current argument regarding statute of limitations expiration is unsupported. Judicial notice is warranted under Federal Rule of Evidence 201(b), as the facts contained in these official records and publicly available sources are not subject to reasonable dispute and can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

## II.  FACTS SUBJECT TO JUDICIAL NOTICE

2.      Apple now argues that Plaintiff's complaints to the California Labor Commissioner and related agencies did not place Apple on sufficient notice of her claims, and therefore, Apple asserts that the statute of limitations for her Labor Code §§ 1102.5 and 98.6/98.7 penalty requests has expired. However, Apple's assertion is contradicted by extensive evidence, including Plaintiff's multiple official complaints, internal communications with Apple, online public statements, and the California Labor Department's determination that Plaintiff properly followed procedural requirements.

Plaintiff requests judicial notice of the following:

i.     **Plaintiff's complaints and communications with the California Department of Labor** – These records demonstrate that Plaintiff timely and sufficiently detailed her claims, including those under Labor Code §§ 1102.5 and 98.6/98.7, directly contradicting Apple's assertion that it was unaware of the nature of Plaintiff's claims.

— 1 —

ii.  **Plaintiff's online public statements about her claims** – Plaintiff publicly discussed her protected activity, including the specific legal violations she was reporting, and these discussions were widely covered, further putting Apple on notice.

iii.  **California Labor Department's statements confirming Plaintiff followed the proper procedures** – The agency's findings confirm that Plaintiff's complaints were procedurally sound and sufficient to toll the statute of limitations.

## III.  LEGAL STANDARD

3.  Under Federal Rule of Evidence 201(b), a court may take judicial notice of facts that are "not subject to reasonable dispute because they... can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Courts routinely take judicial notice of administrative agency records, prior complaints, official government findings, and publicly available statements that are relevant to issues in litigation. See *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (holding that courts may take judicial notice of filings and decisions in administrative proceedings); *Drevaleva v. U.S. Dep't of Veterans Affairs*, 835 F. App'x 221, 223 (9th Cir. 2020) (taking judicial notice of communications with a state labor department).

## IV.  REQUEST FOR JUDICIAL NOTICE

Plaintiff respectfully requests that this Court take judicial notice of:

- Plaintiff's official complaints and communications with the California Department of Labor demonstrating that Apple was on notice of her claims.

- Plaintiff's public statements regarding her complaints and related media coverage.

- The California Labor Department's procedural determinations confirming Plaintiff followed proper channels.

— 2 —

1        - Apple's contradictory litigation positions regarding notice of claims, demonstrating that

2        Apple selectively acknowledges or denies notice depending on what benefits its legal

3        strategy.

4        4.     These sources are reliable, official records and public statements that cannot

5 reasonably be disputed, warranting judicial notice under Federal Rule of Evidence 201(b). Given

6 that Apple's argument regarding statute of limitations is based on a selective and misleading

7 characterization of the notice it received, judicial notice is necessary to prevent Apple from

8 benefiting from inconsistent arguments and bad-faith litigation tactics.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# V.   CONCLUSION

5.      For the foregoing reasons, Plaintiff respectfully requests that the Court grant this Request for Judicial Notice and consider the publicly available and administrative records demonstrating that Apple had sufficient notice of Plaintiff's claims, and therefore, its statute of limitations            argument            is            without            merit.

Dated: Jan. 31, 2024.

Signature:

/s/ Ashley M. Gjovik

*Pro Se Plaintiff*

**Email**: legal@ashleygjovik.com

**Physical Address**:
Boston, Massachusetts

**Mailing Address**:
2108 N St. Ste. 4553 Sacramento, CA, 95816

**Phone**: (408) 883-4428

— 4 —

**Ashley M. Gjovik, JD**
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# United States District Court

## Northern District of California

|  |  |
|---|---|
|  | CAND No. 3:23-CV-04597-EMC |
|  | 9th Cir No.: 24-6058 |
| **Ashley M. Gjovik**, *an individual*, | **Plaintiff's Request for Judicial Notice & Opposition to Defendants' Request for Judicial Notice** |
| Plaintiff, |  |
| vs. |  |
| **Apple Inc.**, a corporation, | *In Support of Plaintiff's Opposition to Defendant's Motions to Dismiss* |
| Defendant. | **Motion Hearing:** Dept: Courtroom 5 (& Zoom) Judge: Honorable Edward M. Chen Date: February 21, 2025 Time: 1:30 PM PT |

# I. Notice & Judicial Notice

1.    Plaintiff respectfully submits this response to Defendant's Request for Judicial Notice of the City of Santa Clara's building permit portal. Defendant argues that because the building permits related to semiconductor fabrication tools were publicly available through the city's website, the Plaintiff should have known about the toxic emissions from the facility, and therefore, there is no basis for tolling the statute of limitations for the toxic tort claims. Plaintiff objects to the request for the following reasons.

2.    "In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP,* 476 F.3d 756, 763 (9th Cir. 2007) *(per curiam)* (citing *Jacobson v. Schwarzenegger*, 357 F. Supp. 2d 1198, 1204 (C.D. Cal. 2004)). A court "may judicially notice a fact that is not subject to reasonable dispute because it" either (1) "is generally known within the trial court's territorial jurisdiction," or (2) "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Civ. P. 201(b). Because Plaintiff does not object to the request for judicial notice and the documents are appropriate subjects of judicial notice, the Court grants Defendants' RJN.[1] *Wells v. Lakeview Loan Servicing, LLC*, No. CV 23-4796 PA (JPRX), 2023 WL 8254485, at *2 (C.D. Cal. Sept. 26, 2023).

---

[1] See, e.g., *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (court records); *Harticon v. U.S. Bank Trust, N.A.*, No. 2:18-CV-00277 KJM (DBx), 2019 WL 1041330, at *3 (E.D. Cal. Mar. 5, 2019) (documents filed in county recorder's office).

## II.  THE IIED CLAIM ACCRUES WHEN PLAINTIFF LEARNED OF THE EXPOSURE

3.    First, the Defendant's argument regarding public access to building permit information is irrelevant to the accrual date for Plaintiff's IIED claim. Under California law, the statute of limitations for an IIED claim begins to run when the Plaintiff learns of the harm or injury. In this case, the IIED claim is based on the emotional distress caused by the discovery of the toxic exposure, which Plaintiff only became aware of in February 2024. The Plaintiff cannot have a claim for emotional distress related to chemical exposure when the Plaintiff was unaware of the exposure itself. Thus, the IIED claim did not accrue until February 2024, when Plaintiff was made aware of the extent of the harm caused by the toxic emissions. This is the point at which the claim for IIED arises, and any suggestion otherwise is without merit.

## III.  DEFENDANT'S ARGUMENT REGARDING PUBLIC ACCESS TO BUILDING PERMITS IS WITHOUT MERIT

4.    Defendant's argument about the public availability of building permit information is also flawed. First, Defendant's submission of documents obtained from the City of Santa Clara's website does not establish that the information was readily available in the form necessary for Plaintiff to understand the significance of the semiconductor fabrication tools. The documents submitted by Defendant were only retrieved today, and Defendant has not provided any evidence of what was available on the City's website in prior years—when Plaintiff was unaware of the toxic emissions from 3250 Scott. [See Exhibit A].

5.    In order to properly respond to Defendant's argument, Plaintiff would be required to introduce its own public records and evidence to demonstrate what information was available at relevant times. However, as a result of

1  Defendant's bad faith litigation tactics, Plaintiff's requests for such evidence were
2  repeatedly denied by the court. The request for judicial notice should not be
3  granted simply because Defendant claims that documents are publicly available.

4       6.    The documents offered by Defendant do not resolve any legal
5  question in this case. A request for judicial notice is appropriate only when a
6  document can affirmatively answer a specific legal question. Here, the building
7  permits do not answer the legal question of whether the Plaintiff was aware of the
8  toxic emissions in time to meet the statutory deadlines for filing a toxic tort claim.
9  However, in case Defendant's request is accepted, Plaintiff also includes the
10  instructions from the city website for requesting records, which says nothing about
11  the portal the Defendant points to, and in fact, directs people to the Public
12  Records Request portal instead. [Exhibit B].
13

14 **IV.   THE REASONABLE PERSON STANDARD IS A FACTUAL**
15 **DETERMINATION, NOT A MATTER OF LAW FOR A**
16 **12(B)(6) MOTION**

17       7.    Furthermore, the issue of whether Plaintiff, as a reasonable person,
18  should have been aware of the toxic emissions from the facility is a question of
19  fact, not an issue that can be resolved on a motion to dismiss. The reasonable
20  person standard depends on the circumstances, which include the unique nature
21  of semiconductor fabrication and the historical offshore outsourcing of such
22  operations in the U.S. These facts must be explored through discovery, expert
23  witness testimony, and other factual evidence, making it inappropriate to resolve
24  this matter at the 12(b)(6) stage.

25       8.    Defendant's argument effectively asks the Court to rule on a factual
26  issue that requires a deeper investigation into what information was available to
27  the Plaintiff and how a reasonable person in Plaintiff's position would have
28

— 3 —

1    responded. The Court cannot make these factual determinations at this early

2    stage, and judicial notice should not be granted on this basis.

3

## V. PUBLIC ACCESS TO BUILDING PERMITS DOES NOT RESOLVE THE QUESTION OF TOLLING FOR TOXIC TORT CLAIMS

6    9.    As discussed in Plaintiff's Opposition to Defendant's Motion to

7    Dismiss, Defendant is attempting to use the availability of building permits to bar

8    tolling of the statute of limitations for toxic tort claims. However, if the Court

9    were to accept Defendant's argument and deny tolling based on the public

10   availability of building permits, it would have far-reaching consequences for

11   thousands of other victims who may have been harmed by similar toxic exposures.

12   If a building permit search alone is enough to trigger the statute of limitations, it

13   would unfairly bar individuals from filing their claims, as they may not have known

14   the full extent of the harm or its cause until much later. Such a ruling would set

15   an unfair precedent and would prevent many potential victims from seeking

16   justice. The Court must consider the unique circumstances of this case and deny

17   Defendant's motion to dismiss and request for judicial notice.

18

## VI. CONCLUSION

21   10.    For the reasons outlined above, Plaintiff respectfully requests that

22   the Court deny Defendant's Request for Judicial Notice and reject Defendant's

23   argument that public access to building permits bars tolling of the statute of

24   limitations for the toxic tort claims. Defendant's attempt to manipulate the facts

25   and impose a standard that would have serious consequences for thousands of

26   victims should not be allowed to succeed at this stage of the litigation.

27   I verified the authenticity of each of these documents as described. A true

28   and correct version of each document is attached. I declare under penalty of

— 4 —

perjury this is true and correct.

Dated: Jan. 31, 2024.

Signature:

_____

**/s/ Ashley M. Gjovik**

*Pro Se Plaintiff*

**Email**: legal@ashleygjovik.com

**Physical Address**:
Boston, Massachusetts

**Mailing Address:**
2108 N St. Ste. 4553 Sacramento, CA, 95816

**Phone**: (408) 883-4428

1
2
3
4
5
6
7
8
9
10

# EXHIBITS

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit A

### *Wayback Archive of Santa Clara City Building Permit Page*



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit B

## *Records search on the city webpage*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16



17
18
19
20
21
22
23
24    https://www.santaclaraca.gov/i-want-to
25
26
27
28



https://www.santaclaraca.gov/our-city/departments-a-f/city-clerk-s-office/request-public-records



https://santaclara.nextrequest.com/

**Ashley M. Gjovik, JD**
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# United States District Court

## Northern District of California

| | |
|---|---|
| **Ashley M. Gjovik**, *an individual*, | Case No. 3:23-CV-04597-EMC |
| Plaintiff, | |
| | **Plaintiff's Opposition to Defendant's Emergency Motion to Dismiss** |
| vs. | |
| | Fed. R. Civ. P. 41(B) |
| **Apple Inc.**, a corporation, | |
| Defendant. | |

# I. TABLE OF CONTENTS

I.   TABLE OF CONTENTS ........................................................ II

II.  ISSUES TO BE DECIDED ..................................................... 1

III.   ARGUMENTS ............................................................. 1

   A.   *The cases Apple cites are not comparable.* ............................ 2

   B.   *FRCP Rule 41(b) dismissal requires a party to fail to comply with a court order and a display of willful or contumacious conduct.* ................................ 3

   C.   *Apple's counsel have also used similar fonts and formatting but also with single-spaced line abuse.* .......................................................... 9

   D.   *The delay caused by Plaintiff's late filing was minimal.* .................. 9

   E.   *This court has issued orders to Plaintiff with requirements that exceed the Federal Rules of Civil Procedure requirements.* ...................................... 10

   F.   *A dismissal with prejudice would be too harsh.* .......................... 11

IV.   CONCLUSION ............................................................. 13

1

2

## Points & Authorities

3        1.    Plaintiff, Ashley Gjovik, respectfully submits the following

4    Memorandum of Points and Authorities in Opposition to Defendant's Motion to

5    Dismiss and Motion for Shortened Time, at Docket No. 131 & 132. Defendant's

6    Motions should be denied as they are improper and without merit.

7

## II.  Issues to be Decided

8

9        2.    This court has to decide whether to grant Apple's motion for an

10   emergency decision on their Motion to Dismiss with prejudice due to Plaintiff's

11   failure to follow a court order. If this Court denies Defendant's motions, then the

12   court must decide whether to give Apple an extension on filing their next response

13   to the latest complaint.

14       Plaintiff responds to both motions here, despite only being provided two

15   days, in order to allow this court to quickly deny Defendant's motions and order

16   them to respond to her complaint. Their request for an extension should also be

17   denied due to unclean hands – though a two day extension from the original

18   deadline, due to Plaintiff's delay, is fine.

19   ## III.  Arguments

20       3.    Here, Defendant has filed two frivolous and harassing motions,

21   accusing Plaintiff of misconduct and "malfeasance" for filing her complaint with

22   a two day delay due to time needed to deal with manifestations of severe emotional

23   distress intentionally caused by the Defendant, for changing the font she used in

24   her filings back in July 2024, for adjusting the spacing of lines in her filing, and

25   for not including line numbers in her latest complaint.

26

27

28

— 1 —

Pl's Opposition to Def's Emerg. Motion to Dismiss | 3:23-CV-04597-EMC

ER VIII 141

1

2

3

4

5

6

7

8

9

10

11

12

13



*Plaintiff's Fifth Amended Complaint in question.*

14

15

**A.   The cases Apple cites are not comparable.**

16

17     4.     The handful of cases Apple cites for its motions are not relevant here.

18  Apple cited *Powerteq, LLC v. Moton,* No. C-15-2626 MMC, 2016 WL 80558, at *1

19  (N.D. Cal. Jan. 7, 2016) related to numbered lines, but the cite is to errata in a

20  footnote of an unpublished case. Apple cited *Monegas v. City & Cnty. of San*

21  *Francisco Dep't of Pub. Health*, No. 22-CV-04633-JSW, 2023 WL 5671933, at *2

22  (N.D. Cal. Sept. 1, 2023), related to filing past a deadline, but in that case the

23  court found there was no merit in the claims, the person failed to file the case

24  within the time limit set for EEOC right to sue letters, and the person failed to

25  plead a statute of limitations tolling theory.

26     5.     Apple cited *Mostowfi v. I2 Telecom Int'l Inc.,* No. C-03-5784 VRW,

27  2006 WL 8443121, at *9 (N.D. Cal. Mar. 27, 2006), aff'd, 269 F. App'x 621 (9th

28  Cir. 2008) related to a change in pleading formatting implying bad faith, but in

    that case the dismissal was primarily based on the plaintiff's failure to provide

— 2 —

1   citations, despite being ordered to prior, and counsel admitted expressly to

2   attempting to evade page limits.

3        6.    Apple cited *Mandell v. Am. Exp. Travel Related Servs. Co., 933 F.2d*

4   *1014 (9th Cir. 1991)* related to a pro se plaintiff missing a deadline, but in that

5   case the Plaintiff's "*claims [were] wholly without merit.*" Apple cited *Gutierrez v.*

6   *City of Colton,* No. CV 07-4934 ODW (SSX), 2008 WL 11410020, at *4 (C.D. Cal.

7   June 9, 2008) related to the court granting an extension, but that case is

8   referencing failure to prosecute where the statute of limitations had expired for

9   most claims. None of these cases are relevant here – and they are the only cases

10   that Apple cites as a legal basis for its request.

11       **B.   FRCP Rule 41(b) dismissal requires a party to fail to comply with**

12           **a court order <u>and</u> a display of willful or contumacious conduct.**

13

14        7.    Plaintiff did note engage in willful or contumacious conduct, and

15   therefore 41(B) is not applicable here. "[T]rial courts possess only a narrow

16   inherent authority to dismiss claims based on limited circumstances (e.g., cases

17   involving a failure to prosecute, frivolous claims, or egregious misconduct)."

18   *Estrada v. Royalty Carpet Mills, Inc.,* 15 Cal. 5th 582, 317 Cal. Rptr. 3d 219, 541

19   P.3d 466 (Cal. 2024). Mere failure to comply with an order of court does not of

20   itself establish the propriety of invoking Fed. R. Civ. P. 41(b). *Gordon v. Federal*

21   *Deposit Ins. Corp.,* 427 F.2d 578, 13 Fed. R. Serv. 2d 811 (D.C. Cir. 1970)

22        8.    Intent of the plaintiff is an important, indeed crucial, factor

23   considered by the courts, dismissals being limited to intentional, willful, or

24   flagrant noncompliance, or repeated failures to comply from which willfulness or

25   extreme dilatoriness may be inferred. *Jones v. Thompson,* 996 F.2d 261, 26 Fed. R.

26   Serv. 3d 239 (10th Cir. 1993); *Tatum v. Liberty Housing Co.,* 726 F.2d 410 (8th Cir.

27   1984) If counsel presents a substantial question and is not outrightly defiant, a

28   lesser sanction may be appropriate, under the court's authority to make such order

— 3 —

1   as is just. *Gordon v. Fed. Deposit Ins. Corp.*, 427 F.2d 578, 581 (D.C. Cir. 1970)
2   *Syracuse Broadcasting Corp. v. Newhouse,* 271 F.2d 910, 914 (2d Cir. 1959); cf.
3   *Campbell v. Eastland,* 307 F.2d 478 (5th Cir. 1962), cert. denied, 371 U.S. 955, 83
4   S.Ct. 502, 9 L.Ed.2d 502 (1963).

5   9.    "The necessity justification for the contempt authority is at its
6   pinnacle, of course, where contumacious conduct threatens a court's immediate
7   ability to conduct its proceedings, such as where a witness refuses to testify, or a
8   party disrupts the court." *Int'l Union v. Bagwell*, 512 U.S. 821, 832 (1994). An
9   example of a pro se plaintiff engaging in "highly contemptuous" conduct that was
10  appropriate for a trial court to dismiss the case due to the conduct was when where
11  a self-represented attorney plaintiff threatened to use pepper spray and taser
12  against opposing counsel. *Crawford v. JPMorgan Chase Bank, N.A.* (2015) 242
13  CA4th 1265, 1271, 195 CR3d 868, 873. That is nothing like what happened here.

14  10.    There are three reasons why Apple's argument that Plaintiff engaged
15  in bad faith evidenced by her changed formatting in her complaint – is completely
16  without merit. First, she changed her formatting months ago. Second, the type of
17  formatting misconduct that this district sanctions if far from what she did. And
18  Third, even Apple has used the same formatting she did.

19  11.    There is no evidence that Plaintiff acted in bad faith or attempted to
20  defy the court.

21   **1. Defendant claims Plaintiff changed the formatting and layout of**
22   **her legal filings starting with her Fifth Amended Complaint.**
23   **This is not true.**
24

25  12.    Apple claimed the Plaintiff changed her formatting, font, line
26  spacing, etc. just for this Fifth Amended Complaint, and did not change it prior.
27  That's is demonstrably false. Plaintiff changed her formatting and fonts in July of
28  2024, following the Typography for Lawyers guidebook and typeface. (See Exhibit

— 4 —

1  A). Nothing Plaintiff did was malfeasance or contempt.

2



**Plaintiff's filing to this case in August & September 2024.**



*Plaintiff's filing to this case in July 2024 – with new format.*

*Plaintiff's filing to this case in May-June 2024. This was the last time she used her prior formatting, roughly five months ago.*

— 6 —

Pl's Opposition to Def's Emerg. Motion to Dismiss | 3:23-CV-04597-EMC

ER VIII 146

1   **Defendant claims that Plaintiff's formatting and layout are facial**
2   **violations of court rules, but Defendant has been warned for**
3   **intentional and defiant formatting far worse then anything**
     **Plaintiff did here.**

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27   **All of these are Apple's filings in other cases, where they got warnings from**
      **the court about single spaced lines.**
28

— 7 —

Pl's Opposition to Def's Emerg. Motion to Dismiss | 3:23-cv-04597-EMC

ER VIII 147

13.    In addition, not specific to Apple, this District has warned parties in other cases about line spacing when the spacing is closer to one-line.



*Example Northern District cases with warnings about spacing. Most involved single-spaced lines.*

— 8 —

**C.  Apple's counsel have also used similar fonts and formatting but also with single-spaced line abuse.**

14.  Counsel representing Apple have even recently used nearly the exact same formatting that Apple complains about here, but when Apple did it, Apple <u>also</u> used extensive single-spaced footnotes.

<table>
<tr>
<td>

Case 2:24-cv-04055-JXN-LDW    Document 86-1    Filed 08/01/24    Page 40 of 49 PageID: 682

Courts reject complaints, like this one, that merely *presume* that the purported conduct causes anticompetitive effects in the smartphone market. *See, e.g.*, ¶ 129. In *Blix Inc. v. Apple, Inc.*, for example, the plaintiff challenged Apple's requirement that developers on its platform offer users Apple's "single-sign-on" option as an alternative to other single-sign-on options. 2021 WL 2895654, at *4 (D. Del. July 9, 2021). The plaintiff perfunctorily alleged that "a 'most'" made it "difficult and expensive for Apple iOS users to leave" Apple's ecosystem, but failed to "explain how Apple's [challenged] requirement" with respect to single-sign-on features "restricts competition in the [at issue] mobile operating system market." *Id.* The court dismissed the claim. *Id.* at *6. For the same reasons, the complaint here does not allege the facts needed to plausibly claim that Apple's conduct in a handful of scattered domains has had a significant anticompetitive effect on smartphone competition.  Absent allegations supporting any factual link, the Government fails to state a claim.[*]

---
[*]  For this reason, the Plaintiff States also lack standing to pursue their claims, including in their sovereign capacities or under a *parens patriae* theory.  *See Harrison v. Jefferson Par. Sch. Bd.*, 78 F.4th 765, 769–74 (5th Cir. 2023) (requiring a "tangible interference" with a state's "authority to regulate or to enforce its laws" not present here); *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 607 (1982) (requiring a state, unlike here, to have a "quasi-sovereign interest" that is "apart from the interests of particular private parties" for *parens patriae* standing).  The Plaintiff States have not alleged that Apple's conduct has impaired their ability to enforce their laws and the harms they cursorily plead—higher prices, a worse iPhone experience—are harms for which private parties could seek their own remedies and, indeed, already have.

32
</td>
<td>

Case 2:24-cv-04055-JXN-LDW    Document 86-1    Filed 08/01/24    Page 9 of 49 PageID: 651

**INTRODUCTION**

The Government asks this Court to endorse a theory of antitrust liability that no court has ever recognized and to sanction a judicial redesign of one of the most innovative and consumer-friendly products ever made: iPhone.  Apple has invested billions of dollars to create a revolutionary, cutting-edge product and to distinguish iPhone in a fiercely competitive smartphone market through consumer-oriented features.  This lawsuit is based on the false premise that iPhone's success has come not through building a superior product that consumers trust and love, but through Apple's intentional degradation of iPhone to block purported competitive threats.  That outlandish claim bears no relation to reality.  And the Government's theory that Apple has somehow violated the antitrust laws by not giving third parties broader access to iPhone runs headlong into blackletter antitrust law protecting a firm's right to design and control its own product.

The truth, of course, is that Apple has granted third parties exceptionally broad access to iPhone, its features, and the App Store, while also enforcing reasonable limitations to protect consumers and ensure the safe, secure, and seamless iPhone experience for which Apple is justifiably known.  But even setting that aside, it is simply not a viable theory of antitrust law for the Government to contend that Apple must open its own platform and its own technologies to third parties on the terms and conditions that those parties prefer.  The third parties at issue here are well-
</td>
</tr>
</table>

*U.S. v. Apple, 2:24-cv-04055 (D.N.J.), Dkt. No. 86-1, filed by Apple Inc on 8/1/24*

**D.  The delay caused by Plaintiff's late filing was minimal.**

15.  The delay of only a couple days was a very minimal delay – and Plaintiff filed the complaint as soon as there was a presentable draft to file. Plaintiff has no objection if Defendant is given two extra days beyond their original

— 9 —

Pl's Opposition to Def's Emerg. Motion to Dismiss | 3:23-cv-04597-EMC

ER VIII 149

1   deadline, to make up for here delay. However, here the Defendant is intentionally

2   causing even more delays – and asking for court approval of additional delays, all

3   which is prejudicial.

4       16.   The court order did provide a deadline and Plaintiff regrets not

5   meeting that deadline, however, an example of a dismissal of action for failure to

6   obey court's order that plaintiff replead after failing to satisfy requirement of Rule

7   8 was proper where two and one half months passed beyond 20 days allowed by

8   court's order with no effort on plaintiff's part to comply. *Agnew v. Moody*, C.A.9

9   (Cal.) 1964, 330 F.2d 868, certiorari denied 85 S.Ct. 137, 379 U.S. 867, 13 L.Ed.2d

10   70.   Two days and two months are very different durations.

11       17.   Here, Plaintiff also already apologized for the delay, explained the

12   delay, and complained to Defendant that the delay was caused by them – as her

13   PTSD symptoms were severely disabling due to Apple's continued harassment of

14   Plaintiff within and outside this lawsuit – including Apple Global Security calling

15   her directly to harass her about this lawsuit just last month. (See Def's

16   Declaration Exhibit).

17      **E.   This court has issued orders to Plaintiff with requirements that**

18          **exceed the Federal Rules of Civil Procedure requirements.**

19

20       18.   This court has issued a number of custom orders to Plaintiff that have

21   requirements well beyond the FRCP. District should not dismiss plaintiff's action

22   for failure to comply with order to supply complaint that substantially exceeded

23   requirements of rules of civil procedure. *Wynder v. McMahon*, C.A.2 (N.Y.) 2004,

24   360 F.3d 73,. _*Wynder v. McMahon*, 360 F.3d 73, 77 (2d Cir. 2004) Rule 8 would

25   become a dead letter if district courts were permitted to supplement the Rule's

26   requirements through court orders demanding greater specificity or elaboration of

27   legal theories, and then to dismiss the complaint for failure to comply with those

    orders. Plaintiff respects the orders she is given and attempts to comply with

28

1   them, but sometimes cannot comply with them, and apologizes and is regretful
2   about it.

3       **F.   A dismissal with prejudice would be too harsh.**
4

5       19.    Dismissal of a case for disobedience of a court order is an exceedingly
6   harsh sanction which should be imposed only in extreme cases, and then only after
7   exploration of lesser sanctions. *Pond v. Braniff Airways, Inc.*, 453 F.2d 347 (5th
8   Cir. 1972); *Flaksa v. Little River Marine Construction Co.*, 389 F.2d 885 (5th Cir.),
9   cert. denied, 392 U.S. 928, 88 S.Ct. 2287, 20 L.Ed. 1387 (1968). Failure to amend
10  a complaint after it has been dismissed with leave to amend is not such an extreme
11  case of disobedience, if it is disobedience at all. *Mann v. Merrill Lynch, Pierce,*
12  *Fenner & Smith, Inc.*, 488 F.2d 75, 76 (5th Cir. 1973)

13      20.    Here, if the court feels the Plaintiff should be punished, there are
14  many other options available to the court other than a dismissal with prejudice.

15      21.    Such a dismissal is a severe sanction, and should be used only in
16  extreme circumstances and as a last resort, where there is a clear record of delay
17  or contumacious conduct8 or intentional disobedience of the court's order, and
18  where lesser sanctions would not be appropriate. Lesser sanctions will normally
19  suffice in all but the most flagrant of circumstances. Thus, where the court does
20  not even consider lesser sanctions, the appellate court may find an abuse of
21  discretion. *Oliva v. Sullivan*, 958 F.2d 272, 22 Fed. R. Serv. 3d 554 (9th Cir. 1992)
22  *Jackson v. City of New York,* 22 F.3d 71, 28 Fed. R. Serv. 3d 1392 (2d Cir. 1994)

23      22.    Dismissal is an extraordinary remedy, which should not be invoked
24  where failure to comply is inadvertent or excusable, or when the effect would be
25  to punish an innocent litigant for the transgressions of his lawyer. *Dyotherm Corp.*
26  *v. Turbo Machine Co.*, 392 F.2d 146 (3d Cir. 1968); *Council of Federated*
27  *Organizations v. Mize*, 339 F.2d 898 (5th Cir. 1964); *Woodham v. American*
28  *Cystoscope Co.*, 335 F.2d 551 (5th Cir. 1964); *Meeker v. Rizley,* 324 F.2d 269 (10th

— 11 —

1   Cir. 1963); 5 J.Moore, Federal Practice P41.12 at 1139.

2       23.    Even when the plaintiff has caused delay or engaged in contumacious

3   conduct before the district court dismisses for failure to comply with the court

4   order it must consider whether the ends of justice would be served better by a

5   lesser sanction. *Guyer v. Beard,* 907 F.2d 1424 (3d Cir. 1990). 10 Wright and Miller

6   et al., Federal Practice and Procedure, Civil § 2369 (4th ed.).

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PL'S OPPOSITION TO DEF'S EMERG. MOTION TO DISMISS | 3:23-CV-04597-EMC

## IV.  CONCLUSION

24.    In conclusion, Apple's arguments about the delay and formatting are without basis, are a delay tactic, is an attempt to harass the Plaintiff, and should be denied.

25.    Plaintiff has replied to both Apple's motions to dismiss and for a shorter deadline in order to empower the court to quickly deny these motions and to order Apple to file a response to the Complaint. Apple fired Plaintiff over there years ago, and this Docket is up to 152 entries, but Apple still has not filed an Answer. Apple needs to file an answer.

Dated: Nov. 15 2024

Signature:

_____

**/s/ Ashley M. Gjovik**

*Pro Se Plaintiff*

**Email:** legal@ashleygjovik.com

**Physical Address:**
Boston, Massachusetts

**Mailing Address:**
2108 N St. Ste. 4553 Sacramento, CA, 95816

**Phone:** (408) 883-4428

(154 of 261), Page 154 of 261
Case: 25-2028, 05/09/2025, DktEntry: 17.3, Page 154 of 261
Case 3:23-cv-04597-EMC    Document 134    Filed 11/15/24    Page 16 of 18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Pl's Opposition to Def's Emerg. Motion to Dismiss | 3:23-cv-04597-EMC

# V.  Exhibit A: Typography for Lawyers





Figure 1: https://typographyforlawyers.com/equity.html



Figure 3: https://typographyforlawyers.com/line-numbers.html

Figure 4:
https://typographyforlawyers.com/



Figure 2 https://typographyforlawyers.com/line-spacing.html

— 15 —

Pl's Opposition to Def's Emerg. Motion to Dismiss | 3:23-CV-04597-EMC

ER VIII 155

1

2   *How to interpret court rules*

3   Among legal documents, court filings must conform to the
    narrowest typographic restrictions—court rules. But except
4   for a few jurisdictions, court rules still give lawyers plenty of
    typographic latitude.
5

6   So why do 99.99% of the court filings in any jurisdiction look alike?

7   One reason is the bandwagon effect. Lawyers usually assume that all
    the other lawyers are following the rules, so if everyone uses 12-point
8   Times New Roman or puts two vertical lines in the left margin, it
    must be that the court demands it. Possible, but unlikely. Read your
9   court rules carefully—you'll probably be surprised at how much is
    left to your discretion.

10  Another reason is fear. "The judge will sanction me because my fil-
    ings aren't as ugly and hard to read as everyone else's." Again—pos-
11  sible, but unlikely. If your typography conforms to the court rules in
    good faith, you should be on solid ground. No judge or clerk ever
12  complained about the typography in my filings. Nor has any reader of
    this book reported any similar consequences.

13  A third reason is force of habit. To create today's filing, lawyers will
    often just start with last week's filing, which was based on the filing
14  from the week before that, and so on back to 1979. Formatting
    choices get entrenched even if they don't relate to the rules.

15  A fourth reason is lack of typographic skill. How do you depart from
16  the usual dreck while still adhering to the rules? Armed with the in-
    formation in this book, you should have no problem understanding
17  where court rules are strict and where they're flexible.

18  ③  LINE SPACING rules should be interpreted arithmetically, not
       as word-processor lingo. If a rule calls for double-spaced lines,
19     set your line spacing to exactly twice the point size of the body
       text. Don't rely on the "Double" line-spacing option in your
20     word processor, which may not be equivalent. For instance, in
       Word, "Double" line spacing is about 15% larger than true dou-
21     ble spacing. This reduces the number of lines per page.

22  ④  Avoid putting rules and borders within or around the page that
       aren't explicitly required. It clutters the page. For example, in
23     Los Angeles courts, almost every litigator puts two vertical
       lines on the left edge of the page and one vertical line on the
24     right. But this practice is not required by any rule. In state
       court, the line on the left is optional—you can use a solid sin-
25     gle or double line, but you can also use a "vertical column of
       space at least ½ inch wide". (Calif. Rule of Court 2.108(4).)
26     Nothing is required on the right side. Meanwhile, our federal
       court requires no vertical lines on either side. Follow the rules,
27     not the crowd.

28  From: https://typographyforlawyers.com/how-to-interpret-court-rules.html

WHY DO COURT RULES ABOUT TYPOGRAPHY EXIST?

Consistency of typography in court filings helps ensure fairness to
the parties. For instance, in jurisdictions that use page limits, if law-
yer A sets his briefs at 12 point and lawyer B sets hers at 10 point,
then lawyer B will get more words per page. Court rules about typog-
raphy prevent abuse of these limits.

Court rules about typography also exist as a convenience to the judge
and the court staff. Judges don't want to read sheaves of 9-point text.
Rules that set minimum page margins or point size ensure a mini-
mum standard of legibility.

As you put your typographic discretion to work, keep these two goals
in mind. Don't expect your judge to be happy if you exploit typo-
graphic loopholes in the rules that defeat these goals.

FOR INSTANCE, THE U.S. DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFOR-
NIA CALLS FOR A PROPORTIONALLY SPACED FONT THAT'S 14 POINT OR LARGER.
(C.D. CAL. L.R. 11-3.1.1.) HOW ABOUT THIS ONE? IT'S PROPORTIONALLY
SPACED. IT'S SET LARGER THAN 14 POINT. TECHNICALLY SPEAKING, I'VE COMPLIED
WITH THE RULE. BUT WILL A FEDERAL JUDGE BE IMPRESSED WITH HOW I'VE INTER-
PRETED THE RULE? NO WAY.

Conversely, you shouldn't worry about typographic improvements
that result in fewer words per page, like larger page margins. Unless
you need every word or every page allocated to you—and good legal
writers never do—why not use the extra white space to improve the
typography? (See MOTIONS for an example.)

Keep in mind that court rules about typography are not designed to
produce good typography. That's your job. Court rules set mini-
mums and maximums. They're usually phrased in terms of "at least"
and "no more than". Very rarely do they completely eliminate
discretion.

I'm not suggesting you should use this discretion to be different for
the sake of being different. Rather, you should use this discretion to
fill in what the court rules deliberately leave incomplete.

*Figure 5: https://typographyforlawyers.com/how-to-
interpret-court-rules.html*

— 16 —

**Ashley M. Gjovik, JD**
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ASHLEY M. GJOVIK**, *an individual*, | Case No. 3:23-CV-04597-EMC |
| Plaintiff, | **PLAINTIFF'S MOTION TO STRIKE IMPROPER AMICUS DECLARATION** |
| vs. | |
| | **MOTION TO STRIKE** |
| **APPLE INC.**, a corporation, | Fed. R. Civ. P. 12(f) |
| Defendant. | **Motion Hearing & Case Management Conference:** |
| | Dept: Courtroom 5 |
| | Judge Edward M. Chen |
| | Date: August 28, 2024 |
| | Time: 9:30 AM PT |

1

2                        ## MOTION TO STRIKE

3

4        PLEASE TAKE NOTICE that on AUGUST 28 2024 at 9:30AM, in Judge

5   Chen's virtual courtroom, before the Honorable Judge Edward Chen, I will, and

6   hereby do, move for an order granting a Motion to Strike the improper amicus

7   document filed to Docket No. 99.

8        The motion if concurrently filed with a Memorandum of Points and

9   Authorities, Proposed Order, and a Declaration in Support.

10

11  Dated: August 27 2024

12

13  Signature:

14

15

16

17

18  _____

19  **/s/ Ashley M. Gjovik**

20  *Pro Se Plaintiff*

21

22  **Email:** legal@ashleygjovik.com

23  **Physical Address:**

24  Boston, Massachusetts

25  **Mailing Address:**

26  2108 N St. Ste. 4553 Sacramento, CA, 95816

    **Phone:** (408) 883-4428

27

28

— 1 —

# Exhibit W

**Excerpts of Court Filings from:**

***Gjovik v. State*, 2:22-cv-00807-RAJ-BAT
(W.D. Wash. Jun. 28, 2022).**

# Request for Judicial Notice

**Ashley M. Gjovik**
Juris Doctor Candidate & Public International Law Certificate Candidate
Santa Clara University, Class of 2022

<u>For Submission To:</u>
- **U.S. NLRB:** Region 32 & Office of General Counsel
- **U.S. Department of Labor:** Whistleblower Protection Program
- **U.S. Attorney's Office:** Northern District of California
- **California DOJ:** Office of the Attorney General
- **California Department of Labor:** DIR Labor Commissioners

MS. ASHLEY GJOVIK

      Complainant,

    v.

APPLE INC., *et al.,*

      Respondent.

**Case No.:**
U,S. Dept of Labor: 9-3290-22-051
U.S. NLRB: 32-CA- 282142, 283161,
284428 & 284441, & 288816
U.S. EEOC 556-2021-00608
U.S. SEC: 16304-612-987-465 & 16353-
506-600-213
CA Dept of Labor: RCI-CM-842830

**LEGAL MEMO**
**Date Action filed**: February 7, 2022

**Charges**:
National Labor Relations Act §8(a)(1)
National Labor Relations Act §8(a)(4)
CERCLA, 42 U.S.C. §9610
SOX 18 U.S.C.A. §1514A
OSHA §11(c) 29 U.S.C. §660
18 U.S.C. §1512(a),(b),(c),(d)
18 U.S.C. §1505
18 U.S.C. 1513
18 U.S.C. §371
18 U.S.C. §876
Dodd-Frank 15 U.S.C. §78u-6(h)(1)(A)(iii)
Racketeer Influenced & Corrupt
Organizations Act
Civil Rights Act Title VII, 42 U.S.C. §2000e
CA Labor Code §232.5, §6310, §1102.5,
§6399, & §132(a)

**Ashley M. Gjovik**
Juris Doctor Candidate & Public International Law Certificate Candidate
Santa Clara University, Class of 2022

**For Submission To:**
- **U.S. NLRB:** Region 32 & Office of General Counsel
- **U.S. Department of Labor:** Whistleblower Protection Program
- **U.S. Attorney's Office:** Northern District of California
- **California DOJ:** Office of the Attorney General
- **California Department of Labor:** DIR Labor Commissioners

|  |  |
|---|---|
| MS. ASHLEY GJOVIK<br><br>        **Complainant,**<br><br>    v.<br><br><br>APPLE INC., *et al.,*<br><br>        **Respondent.** | **Case No.:**<br>U,S. Dept of Labor: 9-3290-22-051<br>U.S. NLRB: 32-CA- 282142, 283161,<br>284428 & 284441, & 288816<br>U.S. EEOC 556-2021-00608<br>U.S. SEC: 16304-612-987-465 & 16353-<br>506-600-213<br>CA Dept of Labor: RCI-CM-842830<br><br>**LEGAL MEMO**<br>**Date Action filed**: February 7, 2022<br><br>**Charges**:<br>National Labor Relations Act §8(a)(1)<br>National Labor Relations Act §8(a)(4)<br>CERCLA, 42 U.S.C. §9610<br>SOX 18 U.S.C.A. §1514A<br>OSHA §11(c) 29 U.S.C. §660<br>18 U.S.C. §1512(a),(b),(c),(d)<br>18 U.S.C. §1505<br>18 U.S.C. 1513<br>18 U.S.C. §371<br>18 U.S.C. §876<br>Dodd-Frank 15 U.S.C. §78u-6(h)(1)(A)(iii)<br>Racketeer Influenced & Corrupt<br>Organizations Act<br>Civil Rights Act Title VII, 42 U.S.C. §2000e<br>CA Labor Code §232.5, §6310, §1102.5,<br>§6399, & §132(a) |

**ASHLEY GJOVIK V APPLE INC**
**INTIMIDATION, THREATS, & OBSTRUCTION | EVIDENCE REPORT**

# INTIMIDATION, RETALIATION, & PROPAGANDA CAMPAIGN

Evidence Report

*DRAFT v9*

**ASHLEY M. GJØVIK**
Juris Doctor Candidate & Public International Law Certificate Candidate, Santa Clara University
Ex-Apple Sr. Engineering Program Manager from February 2015 to September 2021

# ASHLEY GJOVIK V APPLE INC
## INTIMIDATION, THREATS, & OBSTRUCTION | EVIDENCE REPORT

## TABLE OF CONTENTS

HARASSMENT CAMPAIGN EVIDENCE REPORT ........................................................................1

CHARGES ...........................................................................................................................5
    ASSOCIATED CHARGES & CASES: .............................................................................5

SUMMARY .........................................................................................................................5

REVIEW METHODOLOGY ....................................................................................................9

UNLAWFUL THREATS MADE BY APPLE INC ...........................................................................10
    THREATS OF VIOLENCE ........................................................................................10
    THREATS OF TERMINATION & RETALIATION ...........................................................12
    THREATS OF BLACKLISTING; RUINING LEGAL CAREER .............................................14
    THREATS AGAINST FRIENDS & COLLOGUES ............................................................17

APPLE INC'S RETALIATORY ANIMUS .....................................................................................18
    FORBIDDEN ANIMUS ..........................................................................................18

APPLE INC'S LAWFARE ......................................................................................................20
    LAWFARE: THREATS OF LITIGATION; PROSECUTION; BANKRUPTCY; "RUIN" ...............20
    LAWFARE: COERCION TO WITHDRAW
    CHARGES & COMPLAINTS .....................................................................................23
    LAWFARE: DOUBT; DISINFORMATION; FALSE ACCUSATIONS .....................................27

ANTI-UNION & ANTI-LABOR THREATS & COERCION ................................................................32

DISCRIMINATION DUE TO SEX &/OR DISABILITY ....................................................................33

EVIDENCE OF PROPAGANDA BY TYPE ....................................................................................37
    THE BIG LIE (*GROßE LÜGE*) + AD NAUSEAM & RATIONALIZATION .............................37
    DIVIDE & RULE; BLACK/WHITE FALLACY; FACTIONS ................................................42
    VIRTUE WORDS; APPEAL TO PREJUDICE; TRANSFER; MORAL PANIC; FEAR-MONGERING ...44
    CULT OF PERSONALITY; DEMAGOGUE; APPEAL TO AUTHORITY .....................................47
    BANDWAGON & INEVITABLE VICTORY ....................................................................48
    SPIN; AGENDA SETTING; BURY BAD NEWS ..............................................................49
    FALSE FLAG OPERATION & REVERSE FALSE-FLAG .....................................................52
    AD HOMINEM ATTACKS; SMEARS; CHARACTER ASSASSINATION; FALSE ACCUSATIONS ....55
    RED HERRING; WHATABOUTISM; STRAWMAN; MINIMIZATION; CHERRY-PICKING .........59
    DEMORALIZATION; GASLIGHTING; PROPAGANDA OF DESPAIR .....................................62

EVIDENCE (CHRONOLOGICAL) ............................................................................................63
    LEGEND ............................................................................................................63
    AUGUST 2021 ....................................................................................................64

**ASHLEY M. GJØVIK**
Juris Doctor Candidate & Public International Law Certificate Candidate, Santa Clara University
Ex-Apple Sr. Engineering Program Manager from February 2015 to September 2021
**Page 3 of 327**

# ASHLEY GJOVIK V APPLE INC
## INTIMIDATION, THREATS, & OBSTRUCTION | EVIDENCE REPORT

SEPTEMBER 2021 ........................................................................................................98
OCTOBER 2021 ...........................................................................................................174
NOVEMBER 2021 ........................................................................................................196
DECEMBER 2021 .........................................................................................................208
JANUARY 2021 ...........................................................................................................235
FEBRUARY 2021 .........................................................................................................271

**APPENDIX I: CAST OF CHARACTERS (PARTIES)** ...........................................................**298**
EMPLOYER (MANAGERS/SUPERVISORS) ..........................................................................298
EMPLOYEES ACTING AT DIRECTION OF APPLE INC ...........................................................300
AGENTS ACTING AT DIRECTION OF APPLE INC ................................................................306
APPLE INC: AGENTS FOR PROPAGANDA .........................................................................307

**APPENDIX II: RETALIATORY MEMES** .........................................................................**323**

**APPENDIX III: BABY HUMMINGBIRD** ........................................................................**326**

**ASHLEY M. GJØVIK**
Juris Doctor Candidate & Public International Law Certificate Candidate, Santa Clara University
Ex-Apple Sr. Engineering Program Manager from February 2015 to September 2021
**Page 4 of 327**

# ASHLEY GJOVIK V APPLE INC
## INTIMIDATION, THREATS, & OBSTRUCTION | EVIDENCE REPORT

# CHARGES

## ASSOCIATED CHARGES & CASES:

- **U.S. NLRB** 32-CA-282142, 32-CA-283161, 32-CA-284428, & 32-CA-284441
- **U.S Department of Labor**: *Ashley Gjovik v Apple Inc.,* (Apple Inc/Gjovik/9-3290-22-051: CERCLA, SOX, & OSHA whistleblower retaliation).
- **U.S. EEOC**: *Ashley Gjovik v Apple Inc.,* (556-2021-00608)
- **U.S. DOJ:** *pending*
- **California Department of Labor:** *Ashley Gjovik v. Apple Inc., (*RCI-CM-842830)
- **California Civil Lawsuit:** *pending*

*See: Legal Memo for details on legal analysis*

# SUMMARY

Under information & belief, Apple Inc, (via their managers, employees, & agents), have been orchestrating an extensive propaganda & harassment campaign against Gjovik since August 2021. Under this campaign, Apple Inc has made frequent, damaging false accusations about Gjovik's actions and statements, her motives and character, and her mental health. Apple Inc has also made numerous threats against her related to retaliation, termination, litigation, blacklisting, and violence.

The campaign started while she was still an Apple employee & has been waged by Apple managers under their name & Apple position (*i.e. Ricky Mondello, Faye Garfinkle, Eric Vitiello, DJ Capelis, Bryan Bartow, & others*) as well as current and ex-Apple employees (*Cher Scarlett, Shantini Vyas, Amanda Harrison, Kev Kitchens, Steven McGrath , Brian Ganninger  Ankit Aggarwal & others*), again, under their own names & positions at Apple. There also appears to be a large online presence assumably contracted by Apple Global Security which appears to have access to much of her private &/or personal information, and repeats, ad nauseum, specific talking points assumably selected by Apple Inc for this campaign.

This campaign is believed to be being waged in retaliation for Gjovik's protected activity starting in March 2021, and also in retaliation for her reporting Apple Inc's unlawful conduct to the government and law

**ASHLEY M. GJØVIK**
Juris Doctor Candidate & Public International Law Certificate Candidate, Santa Clara University
Ex-Apple Sr. Engineering Program Manager from February 2015 to September 2021
**Page 5 of 327**

ER VIII 167

# ASHLEY GJOVIK V APPLE INC
## INTIMIDATION, THREATS, & OBSTRUCTION | EVIDENCE REPORT

enforcement in the summer of 2021, and continuing to participate in the government investigations. This campaign is believed to be being waged in an effort to chill organizing & unionization efforts at Apple Inc, intimidate witnesses from testifying to what Apple Inc did to Gjovik, coerce Gjovik to withdraw her complaints, and to generally intimidate current Apple Inc employees from speaking out or reporting unlawful activity.

This campaign began shortly after Gjovik started talking to the press and the government about her safety, labor, and discrimination concerns but quickly amplified once she filed formal complaints against Apple Inc with the NLRB, EEOC, U.S. Department of Labor, California Department of Labor, U.S. SEC, U.S. FBI, and other regulatory & law enforcement agencies. Within days of her reports, the frequency and intensity of the abuse dramatically increased, including threats of termination & other retaliation, threats of violence, threats of litigation, threats of bankruptcy, threats against her friends and supporters, and much coercion to drop her government complaints & to not file a lawsuit.

Assumed agents of Apple Inc referred to Gjovik's protected activities as "worthy of death," and made references to Gjovik dying from "double tap" gunshot wounds, that in Russia Apple whistleblowers would die from a "car accident," suggested Apple employee organizing around discrimination concerns be "relocated to Afghanistan" to see how the "Taliban" would "deal" with Apple's employee organizers, and noted Gjovik was deserving of "death and rape threats." One Twitter account posted the day after Gjovik was fired that the world was "reaming" her and that Gjovik deserved it (violent anal sex).

After Gjovik was fired, Apple Inc mailed her possessions from her office in a box full of broken glass shards and them commented to her on her Twitter about the box before she opened it, alluding to it containing a severed head of one of her loved ones. Agents of Apple Inc wrote Gjovik was "deserving of misery," that they looked forward to seeing Apple "swallow her & spit her out," and that she is lucky Apple has not "crushed her like a bug." Even as of this week, an Apple Global Security employee communicated to Gjovik she did not want Gjovik "to exist in her world."

Apple employees & assumed agents of Apple Inc suggested Apple Inc should / will sue Gjovik for corporate espionage, disinformation, reputational bias, defamation, blackmail, and federal crimes, among other things. Employees & agents suggested appropriate consequences for Gjovik's protected activity included jail, the death penalty, "suing her into oblivion," "ending her," "destroying her," "ruining her," and bankrupting her. Apple managers & agents of  Apple Inc referred publicly to the retaliation she faced from Apple Inc, including

**ASHLEY M. GJØVIK**
Juris Doctor Candidate & Public International Law Certificate Candidate, Santa Clara University
Ex-Apple Sr. Engineering Program Manager from February 2015 to September 2021
**Page 6 of 327**

ER VIII 168

# ASHLEY GJOVIK V APPLE INC
## INTIMIDATION, THREATS, & OBSTRUCTION | EVIDENCE REPORT

termination of her employment, as "invited upon herself" like "walking down a dark alley," "finding out" for "fucking around," a "self-fulfilling prophecy," and the "consequence" of "airing Apple's dirty laundry."

Apple Inc agents also threatened to blacklist Gjovik from the technology, engineering, and legal employment fields: including "never working in the tech industry again, never working for a large corporation again, never getting a job as a lawyer, failing the California bar association's Moral Character investigation, and never getting a job anywhere again other than working in fast food." Apple Inc*, (through at least the actions of Cher Scarlett and Shantini Vyas)*, effectively blacklisted Gjovik from access to the press, from access to & support from leading activists, and certain access to social media platforms.

Apple manager Ricky Mondello and ex-Apple employees Cher Scarlett and Shantini Vyas and other Apple agents have referred to the journalists and publications who write about Gjovik's protected activities as "lacking credibility," "anti-business," not deserving of respect, creating "manufactured narratives," "unethical," and causing "irreparable harm." Cher Scarlett, speaking on her "AppleToo" employee organizing platform has stated she "ejected Gjovik from amplification," "stopped amplifying Gjovik," and called journalists who write about Gjovik not "good news outlets." Scarlett's threatened she could "use her platform" to "destroy Gjovik."

Scarlett also recently began to claim Gjovik is "harassing," "defaming," and "extorting" her and went so far as to report Gjovik to the U.S. FBI, though later said it was a mistake and blamed her actions on a narcotics relapse. Gjovik has requested Scarlett stop contacting her numerous times, including requesting Scarlett stop harassing her & her friends, and stop making defamatory statements about her. In December 2021, Gjovik resorted to threatening she'd request a restraining order if Scarlett did not cease & desist. Scarlett did not stop. As of the last week, Scarlett sent Gjovik a 3,000 word email making wild accusations, confirming she reported Gjovik to the FBI, and demanding Gjovik remove certain evidence and accusations about Scarlett & her associates from Gjovik's federal administrative and criminal filings. When Gjovik refused to rescind her allegations of Scarlett's unlawful activity and refused to omit incriminating evidence, Scarlett then announced she is pursuing frivolous, retaliatory litigation against Gjovik.

Apple managers, employees, and agents have referred to Gjovik's complaints to the federal and state government about Apple Inc as "unsubstantiated," "meritless," "baseless," "dead in the water," and that there's "no case." Apple's agents referred to Gjovik as an "ambulance chaser" and her cases as "shakedown lawsuits." Apple manager Ricky Mondello and ex-Apple employees Cher Scarlett and Shantini Vyas have publicly called Gjovik a "liar," "predator," "racist," "inconsequential," "not a real whistleblower," "not a real activist." These

**ASHLEY M. GJØVIK**
Juris Doctor Candidate & Public International Law Certificate Candidate, Santa Clara University
Ex-Apple Sr. Engineering Program Manager from February 2015 to September 2021
**Page 7 of 327**

ER VIII 169

# ASHLEY GJOVIK V APPLE INC
## INTIMIDATION, THREATS, & OBSTRUCTION | EVIDENCE REPORT

parties have described Gjovik's protected activities as a "vendetta," "warpath," "perjury," "fabricated nonsense," "misleading rhetoric," & "misinformation." Among other things, Apple Inc & their agents have publicly called me a "liar, toxic, attention-seeking, obnoxious, vindictive, entitled, cancer, lacking credibility, dishonest, malicious, a sociopath, a provocateur, unhinged, insane, overweight, a narcissist, 'universally hated', a psychopath, paranoid, Bipolar, psychotic, schizophrenic, a grifter, a Karen, a Super Karen, Karenx100, a 'typical feminist,' and a 'classic cow'.

**ASHLEY M. GJØVIK**
Juris Doctor Candidate & Public International Law Certificate Candidate, Santa Clara University
Ex-Apple Sr. Engineering Program Manager from February 2015 to September 2021

# ASHLEY GJOVIK V APPLE INC
## INTIMIDATION, THREATS, & OBSTRUCTION | EVIDENCE REPORT

# REVIEW METHODOLOGY

Through this unfortunate experience with Apple, I have attempted to document events and communications that appeared odd, harmful, or which might be otherwise useful to reference later on. The primary document collection was of screenshots and PDFs. I started writing this report based on those records, and then gathered additional materials based on them, and for all evidence, attempted to cite a live, public version of the communication that the reader can access themselves via the footnotes. Where possible, I attempted to preserve digital evidence via 1) flat-file screenshot, 2) PDF, & 3) Internet Archive Wayback Archive file.

In effort to identify posts by Apple agents (not just random people online) I filtered & analyzed comments looking for factors such as: overly specific to my situation & my personal information, including my private personal information and/or information only Apple would know, lies and misrepresentations that only benefited Apple &/or were frequently repeated, legalese, and rhetoric which fit common union-busting techniques. I reviewed accounts looking for factors like: few/no followers, few posts and of those they are specific to Apple, posts that are always very positive about Apple & defend Apple, lack of biographical information provided, "liking" and "replying" to other suspicious accounts, age of account, & common language patterns amongst accounts with similar attacks.

The accounts and comments noted in this report are a best guess and should not be seen as exclusive. Additional evidence should also be gathered such as IP & other account data to confirm accounts (such as linked Apple Inc locations, employees, contractors, etc) & named employees/managers should be deposed and asked to identify additional parties who participated. Apple Inc should be asked to confirm which accounts are or are not acting on their behalf, directly or indirectly.

**ASHLEY M. GJØVIK**
Juris Doctor Candidate & Public International Law Certificate Candidate, Santa Clara University
Ex-Apple Sr. Engineering Program Manager from February 2015 to September 2021

1

**Ashley M. Gjovik, JD**
*Pro Se Plaintiff*

2

3

2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

4

5

6

# UNITED STATES DISTRICT COURT

7

## NORTHERN DISTRICT OF CALIFORNIA

8

9

10

11

**Case No. 3:23-CV-04597-EMC**

12

13

**ASHLEY GJOVIK**, *an individual*,

14

Plaintiff,

15

v.

16

17

**APPLE INC**, *a corporation*,

18

Defendant.

19

20

21

22

23

**RE:**
**PLAINTIFF'S MOTION TO STRIKE**
**IMPROPER NON-PARTY AMICUS**
**DECLARATION**
(DOCKET NO. 62 and NO. 66)

**OBJECTIONS TO NON-PARTY'S**
**APRIL 30 2024**
**SUPPLEMENTAL DECLARATION**

HEARING:

Dept: Courtroom 5, 17th Floor (Virtual)

Date: May 16, 2024

Time: 1:30 p.m.

24

25

26

27

28

i

## RESPONSE TO DOCKET NO. 66

1. Plaintiff, Ashley Gjovik, submits these Objections to the "*Supplemental Declaration*" filed by a non-party to Docket No. 66, and in support of Plaintiff's Motion to Strike at Docket No. 64. The Motion to Strike should now be extended to cover Docket No. 62 and 66. Plaintiff's objections are as follows:

| NON-PARTY EVIDENCE | PLAINTIFF'S OBJECTION | COURT RULING |
|---|---|---|
| 1<br><br>IMPROPER FORM AND PROCEDURE | Improper non-party filing (claims filing is not an amicus ¶ 3 and also swears she has "*no stake in the outcome of the case*" ¶ 3, thus a request for Intervention would also be prohibited. Fed. R. Civ. Pro 24(a)(2). (Non-party also has no privacy interest as a pseudonym was intentionally used and she deliberately publicly announced her own involvement.)<br><br>A "*witness statement*" must be filed by a party to the lawsuit, and is not appropriate for a 12(b)(6) motion. *In re NVIDIA Corp. Sec. Litig.,* 768 F.3d 1046, 1051 (9th Cir. 2014).<br><br>Introduction of deposition or interrogatory statements requires Requests for Admission by a party to the lawsuit and in compliance with the Federal Rules of Evidence. | Sustained: _____<br><br>Overruled: _____ |
| 2<br><br>IMPROPER AMICUS BREIF / NON-PARTY DECLARATION | Improper Declaration filed from non-party without consent of parties and providing improper legal conclusions and arguments. Local Civil Rule 7-5(b); FRCP Rule 56(c)(4); Fed. R. Evid. §§ 403, 602, 701, 703; See, *Silver v. Executive Car Leasing Long-Term Disability Plan*, 466 F.3d 727, 731 n.2 (9th Cir. 2006).<br><br>("*I filed a non-party witness declaration," "not an amicus*" ¶ 3, "*I am not part of Apple,*" ¶ 3 "*validity of my testimony,*" ¶ 4 "*its entirely irrelevant,*" ¶ 5 "*the appellate court decided…*" ¶ 5 "*the appellate court… proffered a motivation,*" ¶ 5 "*Apple was not involved.*" ¶ 5 "*decided I am a Public Figure…*" ¶ 5). | Sustained: _____<br><br>Overruled: _____ |

1

| 3 FALSE | Plaintiff's Docket No. 63 (re: *Banko v Apple*) is <u>not</u> in response to or related to the non-party.<br><br>"*Plaintiff filed two responses to my declaration … Dockets No. 63 & 64.*" ¶ 2<br><br>Docket No. 64 Declaration and Exhibits is 98 pages long and includes all formal petitions, court minutes, and Orders from the related litigation.<br><br>"*Plaintiff added a partial record… in the matter…It is entirely irrelevant and hundreds of pages long.*" ¶ 5 | Sustained: _____<br><br>Overruled: _____ |
| --- | --- | --- |
| 4 HEARSAY | Proffering Hearsay evidence from non-parties. (Fed. R. Evid. §§ 106, 801).<br><br>("*the appellate court decided…*" "*the appellate court… proffered a motivation*" ¶ 5). | Sustained: _____<br><br>Overruled: _____ |
| 5 NON-PARTY REQUESTS TO THE COURT | Improper request to the Court to consider unsolicited non-party evidence at all, but especially for a 12(b)(6) motion. Improper requests by non-party with no standing or "*stake in the outcome of the case*" requesting to "*introduce exhibit[s].*" (Fed. R. Pro. §§ 12(b)(6), Rule 24(b)(3).<br><br>"(*I ask the court so show the utmost care in considering the validity of my testimony,*" "*I am introducing Exhibit A*") ¶ 4, 5. | Sustained: _____<br><br>Overruled: _____ |
| 6 INCONSISTENT STATEMENTS | Inconsistent statements made between Declarations in Docket No. 62 and 66. (Fed. R. Evid. §§ 801(d)(1)(A)).<br><br>Docket 62: "*I met the Plaintiff in June 2021 while we were both employed by Apple…*" ¶ 4<br><br>Docket 66: "*The plaintiff and I did not work together and never met each other in the course of our work.*" ¶ 3 …. "*A person I have never even met.*" ¶ 4<br><br>Docket 62: "*The only counsel I could afford to seek that was helpful advised that I may speak to the facts about myself in support of striking…*" ¶ 2 | Sustained: _____<br><br>Overruled: _____ |

2

| | | Docket 66: "*There is no one representing me… I have no legal education.*" ¶ 4 Etc. | |
|---|---|---|---|
| | 7 <br><br> NO FOUNDATION | Exhibit A is not part of the court record, has not been referenced by either party's arguments, and contains prejudicial, out of context hearsay. (Fed. R. Evid § 106, 403, 801). Provides no basis for the contents other then the documents themselves. (Fed. R. Evid. §§ 602, 701, 703). <br><br> "*I am introducing Exhibit A*" ¶ 5. | Sustained: _____ <br><br> Overruled: _____ |

**Dated: MAY 1 2024**

Signature:

_____

**s/ Ashley M. Gjovik**
**Pro Se Plaintiff**
**Email**: legal@ashleygjovik.com
**Physical Address**: Boston, Massachusetts
**Mailing Address:** 2108 N St. Ste. 4553 Sacramento, CA, 95816
**Phone**: (408) 883-4428

3

**Ashley M. Gjovik, JD**
*Pro Se Plaintiff*

2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| | **Case No. 3:23-CV-04597-EMC** |
| **ASHLEY GJOVIK**, *an individual*, | **PLAINTIFF'S MOTION TO STRIKE IMPROPER NON-PARTY AMICUS BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO STRIKE** |
| Plaintiff, | (DOCKET NO. 62) |
| v. | |
| **APPLE INC**, *a corporation*, | **NOTICE OF MOTION** |
| Defendant. | **MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION** |
| | HEARING: |
| | Dept: Courtroom 5, 17th Floor (Virtual) |
| | Date: May 16, 2024 |
| | Time: 1:30 p.m. |

i

# TABLE OF CONTENTS

I.  NOTICE ....................................................................................................................1

II.  PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE..1

A.  STATEMENTS OF FACTS ............................................................................1

B.  ISSUES TO BE DECIDED ..............................................................................3

C.  THE DOCUMENT IS AN IMPROPER DECLARATION. ..................................3

D.  THE DOCUMENT IS AN IMPROPER AMICUS BRIEF. ...................................4

E.  APPLE DID NOT FILE APPLESEED'S DECLARATION AND APPLESEED WAS NOT APPROVED TO FILE AN AMICUS BRIEF. ...............................................................................6

F.  AN AMICUS BRIEF OR DECLARATION IS NOT APPROPRIATE FOR A MOTION TO STRIKE. .......6

G.  AN AMICUS BRIEF OR DECLARATION IS NOT APPROPRIATE FOR A MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM. ...........................................................................7

H.  THE AMICUS DECLARATION VIOLATES THE RULES OF EVIDENCE ...........................9

I.  PREJUDICE ....................................................................................................15

III.  CONCLUSION ..............................................................................................16

C<small>ASES</small>

*ASARCO, LLC v. Union Pacific R. Co.,* 765 F.3d 999, 89 Fed. R. Serv. 3d 554 (9th Cir. 2014). - 8

*Banerjee v. Bd. of Trustees of Smith College*, 648 F.2d 61, 65 n. 9 (1st Cir. 1981). --------------- 5

*Boro Hall Corporation v. General Motors Corporation,* 124 F.2d 822 (C.C.A. 2d Cir. 1942).--- 7

*Data Disc, Inc. v. Systems Technology Associates, Inc.,* 557 F.2d 1280 (9th Cir. 1977). ---------- 4

*El-Shaddai v. Zamora*, 833 F.3d 1036 (9th Cir. 2016). ---------------------------------------------- 8

*Faiveley Transport USA, Inc. v. Wabtec Corp.*, 758 F. Supp. 2d 211, 216 (S.D.N.Y. 2010). ----- 7

*Grid Systems Corp. v. Texas Instruments Inc.,* 771 F. Supp. 1033, 1036, 20 U.S.P.Q.2d (BNA) 1207 (N.D. Cal. 1991). --------------------------------------------------------------------------------- 7

*Hayes v. Whitman,* 264 F.3d 1017 (10th Cir. 2001). ------------------------------------------------- 8

*Hoy v. Progress Pattern Co.*, 217 F.2d 701 (6th Cir. 1954). ----------------------------------------- 7

*In re Enron Creditors Recovery Corp.,* Case No. 01-16034 (AJG), Adv. No. 03-92677, Adv. No. 03-92682, 2 (Bankr. S.D.N.Y. May. 20, 2008). ------------------------------------------------------ 5

*In re Marriage of Heggie*, 99 Cal. App. 4th 28, 30, n.3 (2002). ------------------------------------- 4

*Leigh v. Engle*, 535 F. Supp. 418, 420 (N.D. Ill. 1982). ---------------------------------------------- 5

*Lewis v. ACB Business Services, Inc*., 135 F.3d 389, 39 Fed. R. Serv. 3d 1376 (6th Cir. 1998). - 8

*Liberty Lincoln Mercury, Inc. v. Ford Marketing* Corp., 149 F.R.D. 65, 82 (D.N.J. 1993). ------- 5

*Long Island Soundkeeper Fund, Inc. v. New York Athletic Club*, No. 94 Civ. 0436, 1995 WL 358777, at *1 (S.D.N.Y. June 14, 1995).------------------------------------------------------------ 5

*McKay v. Sazerac Co*., 23-cv-00522-EMC, 4 (N.D. Cal. May. 17, 2023). --------------------------- 9

*Medevac MidAtlantic, LLC v. Keystone Mercy Health Plan,* 817 F. Supp. 2d 515, 520 (E.D. Pa. 2011). ------------------------------------------------------------------------------------------------------ 6

*NGV Gaming, Ltd. v. Upstream Point Molate, LLC,* 355 F. Supp. 2d 1061, 1068 (N.D. Cal. 2005). ------------------------------------------------------------------------------------------------------ 5

*Oneida Indian Nation of New York v. New York,* 194 F. Supp. 2d 104 (N.D. N.Y. 2002). -------- 7

*Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996). --------------------------------------------- 15

*Reynolds v. United States Gov't*, 7:22-CV-00178-FL, 8 (E.D.N.C. Jul. 21, 2023). ---------------- 6

*Rosenberg-Wohl v. State Farm Fire & Cas. Co*., 20-cv-09316-DMR, 6 (N.D. Cal. Mar. 28, 2022). ------------------------------------------------------------------------------------------------------ 5

*Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago and Northwest Indiana*, 786 F.3d 510 (7th Cir. 2015). ----------------------------------------------------------------------------------------- 9

*Ryan v. Commodity Futures Trading Com'n*, 125 F.3d 1062, 1063 (7th Cir. 1997).---------------- 5

iii

*Schy v. Susquehanna Corp.*, 419 F.2d 1112 (7th Cir. 1970). ------------------------------------------- 8

*Silver v. Executive Car Leasing Long-Term Disability Plan*, 466 F.3d 727, 731 n.2 (9th Cir. 2006). ------------------------------------------------------------------------------------------------------- 3

*Slagle v. U.S.,* 228 F.2d 673 (5th Cir. 1956). --------------------------------------------------------------- 7

*Strasser v. Doorley,* 432 F.2d 567 (5th Cir. 1970) --------------------------------------------------------- 6

*Sweigert v. Cable News Network, Inc*., 20-cv-12933, 19-20 (E.D. Mich. Mar. 21, 2022). --------- 6

*Sweigert v. Cable News Network, Inc*., 20-cv-12933, 20-21 (E.D. Mich. Mar. 21, 2022). --------- 6

*Titan America, LLC v. Darrell,* NO. 7:11-CV-52-FL, 9 (E.D.N.C. Sep. 2, 2011). ------------------ 7

*United States v. Michigan,* 940 F.2d 143, 163-64 (6th Cir. 1991) ------------------------------------- 4

*Wilderman v. Nelson,* 467 F.2d 1173 (8th Cir. 1972). ----------------------------------------------------- 8

*Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007). ------------------------------------------------ 14

## Rules

Fed. R. App. P. 25(b). ---------------------------------------------------------------------------------------- 6

Fed. R. App. P. 29(a)(3) -------------------------------------------------------------------------------------- 6

Fed.Rules Civ.Proc.Rule 12(b)(6), --------------------------------------------------------------------------- 9

Federal Rules of Civil Procedure Rule 12(b)(6)------------------------------------------------------------ 7

Federal Rules of Civil Procedure Rule 47 and Rule 56 ------------------------------------------------ 4

## Treatises

§ 37:39. Opposition papers—Evidence, 4 Bus. & Com. Litig. Fed. Cts. § 37:39 (5th ed.) -------- 4

16AA C. Wright & A. Miller, Federal Practice and Procedure § 3975, pg. 383 (2021). ----------- 6

C. Rembar, The Law of The Land 330 (1980).------------------------------------------------------------- 5

iv

## I.   NOTICE

1.     PLEASE TAKE NOTICE that on MAY 16 2024 at 1:30PM, in Judge Chen's virtual courtroom, before the Honorable Judge Edward Chen, I will, and hereby do, move for an order granting a Motion to Strike the improper amicus document filed to Docket No. 62. The motion is based on this Memorandum, and Plaintiff's concurrently filed Declaration with attached Exhibits at Docket No. 64-1.

## II.   PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE

2.     Plaintiff, Ashley Gjovik, respectfully submits the following Memorandum of Points and Authorities in support of Plaintiff's Motion to Strike the documents at Docket No. 62.

## A.   STATEMENTS OF FACTS

3.     On April 19 2024, under Docket No. 62, a non-party filed a Declaration of "In Support of Defendant's Moton to Strike" at (motion located at Docket No. 49). The document was dated April 16 2024 and mailed to this Court, arriving on April 19 2024 and entered to the docket on April 23 2024, per the docket notes.

4.     The non-party identified herself as the person described in Plaintiff's Complaint as "Joanna Appleseed." Non-Party Decl at ¶ 1. Appleseed explained she used to work for Apple's Global Security team. *Id* at ¶ 4. Appleseed also explained she sued Gjovik in 2022. *Id* at ¶ 5-6.

5.     Appleseed explained she filed the Amicus Declaration after this lawsuit was "*brought to [her] attention*" by someone but she does not say who. *Id* at ¶ 3. Appleseed also notes she "*emailed Apple's attorney*" about Gjovik's lawsuit asking for "*options*" to "*have [herself] removed from [the] case.*" *Id* at ¶ 3. Appleseed notes that Apple's counsel "*did not reply*" to her. *Id*. Appleseed requested in her Declaration that the Court force Plaintiff to remove claims from

1

Plaintiff's federal lawsuit alleging that Appleseed engaged in unlawful activity which harmed Plaintiff. *Id* at at ¶ 2 and 9. Finally, Appleseed also noted that she did <u>not</u> contact Gjovik after learning of the litigation and prior to filing this Declaration. *Id* at ¶ 3. Plaintiff denies, disputes, and objects to all other facts alleged in the non-party's Declaration.

6.      Plaintiff's Third Amended Complaint references Appleseed as one of the multiple agents of Apple Inc under Plaintiff's claims for violations of the RICO Act (TAC at ¶ 112), Bane Act (TAC at ¶ 187), Ralph Act (TAC at ¶ 197), and IIED/NIED (TAC at ¶ 252-253).  Plaintiff notes the various vicarious liability theories she plans to argue at TAC ¶ 111 and which includes theories such as negligence, conspiracy, condonation, non-employment agency, ratification, and other theories (in addition to Respondeat superior). *Id*. Gjovik also argues association-in-fact Enterprise membership at TAC ¶ 118-120, applicable here to at least the 18 U.S. Code §§ 1512, 1513 Predicate Act claims.

7.      Apple's Motion to Dismiss at Docket No. 48 references Appleseed in several sections, including the Bane Act section, writing: "*Plaintiff previously pled that in 2022 'Joanna Appleseed'—while no longer employed at Apple …—filed an FBI report about Plaintiff ….and 'retaliatory litigation' against Plaintiff …. Even if such conduct were to violate the Bane Act, Apple would not be liable as a matter of law.*" Def's Mot. to Dismiss Plaintiff's TAC at pages 18-19. Apple also references Appleseed in the Ralph Act section, writing: "*Plaintiff alleges that 'Joanna Appleseed' filed false reports about Plaintiff …  Even if Appleseed's conduct amounted to a Ralph Act violation, Apple is not liable for Appleseed's conduct because, as discussed above, Plaintiff acknowledges that Appleseed was no longer employed at Apple when any such purportedly false report was filed.*" Def's Mot. to Dismiss Plaintiff's SAC at page 21. Gjovik and Apple Inc have not disputed that Appleseed did the things Gjovik alleged in her TAC, but Apple does dispute it should be held liable for Appleseed's conduct.

2

8. Plaintiff did not use Appleseed's true name in her Complaints out of fear; as noted in Plaintiff's Complaints: "*Joanna Appleseed… who worked in Apple's Worldwide Loyalty team"… "alias because this person tried to sue Gjovik in 2022 for naming her in charges and legal filings alleging witness intimidation, and Gjovik fears she might try to do it again.*" OC at ¶ 132; FAC at ¶ 630; SAC at ¶ 430. It is clear Apple knew who Plaintiff was referring to by Apple's responses.

**B.   ISSUES TO BE DECIDED**

9. First, this Court should decide whether the "Declaration" is a proper filing, and whether the non-party is allowed to file the document; and if not, the entry at Docket No. 62 should be stricken in its entirety. Next, if the entry is not stricken in entirety; then this Court should decide whether parts of the document at Docket No. 62 should be stricken.

10. Then, if the entire document is not stricken, this Court should decide whether to consider the remainder of the document as part of its consideration of Defendant Apple's Motion to Strike Plaintiff's TAC. The Court must also consider if this would convert Apple's Motion to Dismiss to into a Motion for Summary Judgement.

11. Finally, the Court may decide if the Amicus Declaration can be used as evidence by Plaintiff in support of her claims of violations of the RICO Act, Bane Act, and Ralph Act through interference and attempted interference with Plaintiff's federal litigation and testimony.

**C.   THE DOCUMENT IS AN IMPROPER DECLARATION.**

12. The Amicus Declaration contains numerous legal arguments and attempts to summarize and characterize legal matters. This is not what Declarations are for. "The purpose of a declaration is to submit evidence; it is improper to use a declaration to present legal argument." *Silver v. Executive Car Leasing Long-Term Disability Plan*, 466 F.3d 727, 731 n.2 (9th Cir. 2006).

---

3

PLAINTIFF'S MOTION TO STRIKE IMPROPER AMICUS BRIEF                    APRIL 23 2024
3:23-CV-04597-EMC

*In re Marriage of Heggie*, 99 Cal. App. 4th 28, 30, n.3 (2002). The Amicus Declaration offers very few facts and provides no supporting evidence such as exhibits.

13.     A declaration "*must be viewed just as counsel would view live testimony, and may be attacked for any admissibility deficiency.*" § 37:39. Opposition papers—Evidence, 4 Bus. & Com. Litig. Fed. Cts. § 37:39 (5th ed.)   Local Civil Rule 7-5(b) explains: "*An affidavit or declaration may contain only facts, must conform as much as possible to the requirements of Fed. R. Civ. P. 56(e), and must avoid conclusions and argument. Any statement made upon information or belief must specify the basis therefor. An affidavit or declaration not in compliance with this rule may be stricken in whole or in part.*" The Federal Rules of Civil Procedure Rule 47 and Rule 56 also explains a similar expectation.[1]

14.     Affidavits from the moving party may only be considered on a motion to dismiss where they raise no fact controversy but only a question of law. *Data Disc, Inc. v. Systems Technology Associates, Inc.,* 557 F.2d 1280 (9th Cir. 1977). This Amicus Declaration is in support of Apple's Motion to Dismiss so it's subject to this expectation.

## D.     THE DOCUMENT IS AN IMPROPER AMICUS BRIEF.

15.     An amicus curiae is not a party and has no control over the litigation and no right to institute any proceedings in it, nor can it file any pleadings or motions in the case. See, e.g., *United States v. Michigan,* 940 F.2d 143, 163-64 (6th Cir. 1991) (disapproving of the "*legal mutant characterized as `litigating amicus curiae'*" because it impinged on the inherent rights of the real parties in interest). *NGV Gaming, Ltd. v. Upstream Point Molate, LLC,* 355 F. Supp. 2d 1061, 1068 (N.D. Cal. 2005).

---

[1] See, Federal Rules of Civil Procedure, Rule 47, Notes of Advisory Committee on Rules—1944, point 3: "...authorize the use of affidavits when affidavits are appropriate to establish a fact." Rule 56(c)(4), "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

4

PLAINTIFF'S MOTION TO STRIKE IMPROPER AMICUS BRIEF                APRIL 23 2024
3:23-CV-04597-EMC

16.     The vast majority of amicus curiae briefs are filed by allies of litigants and duplicate the arguments made in the litigants' briefs, in effect merely extending the length of the litigant's brief. *United States v. Michigan*, 940 F.2d 143, 164-65 (6th Cir. 1991). *Ryan v. Commodity Futures Trading Com'n*, 125 F.3d 1062, 1063 (7th Cir. 1997). This Amicus Declaration did support Apple's arguments in their Oppositions and as such essentially provides them additional pages and allows them to evade the Rules of Evidence that would have prevented them from making these types of allegations in their Reply.

17.     The amicus curiae should present an "objective, dispassionate, neutral discussion of the issues." *In re Enron Creditors Recovery Corp.,* Case No. 01-16034 (AJG), Adv. No. 03-92677, Adv. No. 03-92682, 2 (Bankr. S.D.N.Y. May. 20, 2008). If the information offered conflates or confuses the issues before the court, the request for leave to file it should be denied. *Id. Long Island Soundkeeper Fund, Inc. v. New York Athletic Club*, No. 94 Civ 0436, 1995 WL 358777, at *1 (S.D.N.Y. June 14, 1995).

18.     If the proffer comes from an individual with a partisan, rather than impartial view, the motion for leave to file an amicus brief is to be denied, in keeping with the principle that an amicus must be a friend of the court and not a friend of a party to the cause. C. Rembar, The Law of The Land 330 (1980). *Leigh v. Engle,* 535 F. Supp. 418, 420 (N.D. Ill. 1982). Where a petitioner's attitude toward a litigation is patently partisan, they should not be allowed to appear as amicus curiae. *Liberty Lincoln Mercury, Inc. v. Ford Marketing* Corp., 149 F.R.D. 65, 82 (D.N.J. 1993).

19.     The purpose of an amicus curiae brief is "to assist the court on matters of law." *Banerjee v. Bd. of Trustees of Smith College*, 648 F.2d 61, 65 n. 9 (1st Cir. 1981). It is not, however, to be used to assist with respect to evidentiary claims; therefore, it should not offer factual information favoring a particular party. *Id.*; see also *Strasser v. Doorley,* 432 F.2d

5

567 (5th Cir. 1970). "An amicus who argues facts should rarely be welcomed." *Id*. at *15 (quoting *Strasser v. Doorley*, 432 F.2d 567, 569 (1st Cir. 1970)). See also, *Reynolds v. United States Gov't*, 7:22-CV-00178-FL, 8 (E.D.N.C. Jul. 21, 2023).

20.     Similar to *Sweigert v. Cable News Network, Inc*., this case also has a non-party submitting an amicus brief wanting to "share facts and evidence" without seeking concurrence from either party and the Plaintiff actively opposes the Amicus document. In that case the Court agreed to strike the amicus filing noting it contained "contain conclusory allegations of Plaintiff conspiring with a court employee to commit fraud on the court." *Sweigert v. Cable News Network, Inc*., 20-cv-12933, 20-21 (E.D. Mich. Mar. 21, 2022). Appleseed's Amicus Declaration is of the same character and should be stricken.

## E.   APPLE DID NOT FILE APPLESEED'S DECLARATION AND APPLESEED WAS NOT APPROVED TO FILE AN AMICUS BRIEF.

21.     There is no right of nonparties generally to submit an amicus brief." 16AA C. Wright & A. Miller, Federal Practice and Procedure § 3975, pg. 383 (2021). Instead, "the amicus must file a motion for leave to file the brief" when consent cannot be obtained. *Id*. The amicus brief itself must accompany the motion for leave, Fed. R. App. P. 29(a)(3), and the filings must be served on all parties. Fed. R. App. P. 25(b). *Sweigert v. Cable News Network, Inc*., 20-cv-12933, 19-20 (E.D. Mich. Mar. 21, 2022). Appleseed did not request leave to file the brief/declaration, nor did she obtain consent from the parties, thus it is improper.

## F.   AN AMICUS BRIEF OR DECLARATION IS NOT APPROPRIATE FOR A MOTION TO STRIKE.

22.     "Motions to strike are to be decided on the pleadings alone." *Medevac MidAtlantic, LLC v. Keystone Mercy Health Plan*, 817 F. Supp. 2d 515, 520 (E.D. Pa. 2011). If there is a disputed question of fact or law on a motion to strike, the court should defer action on the motion and leave the sufficiency of the allegations for a determination on the merits. *Oneida Indian Nation*

6

*of New York v. New York,* 194 F. Supp. 2d 104 (N.D. N.Y. 2002). Appleseed's request is not

appropriate for a 12(f) motion to strike or a 12(b)(6) motion to dismiss.

### G.   AN AMICUS BRIEF OR DECLARATION IS NOT APPROPRIATE FOR A MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM.

23.   The Court making a Motion to Dismiss for failure to state a claim determination

must assume that the plaintiff's allegations are true, construe the complaint in a light most

favorable to the plaintiff, and resolve every doubt in the plaintiff's favor. *Grid Systems Corp. v.*

*Texas Instruments Inc.,* 771 F. Supp. 1033, 1036, 20 U.S.P.Q.2d (BNA) 1207 (N.D. Cal. 1991).

Affidavits cannot be treated as proof contradictory to well-pleaded facts in the complaint. *Slagle*

*v. U.S.,* 228 F.2d 673 (5th Cir. 1956). The court may take cognizance of and consider facts

disclosed otherwise than in the complaint, such as in an affidavit, brief, or argument, only where

such facts are undisputed or the parties consent to their consideration. *Boro Hall Corporation v.*

*General Motors Corporation,* 124 F.2d 822 (C.C.A. 2d Cir. 1942).

24.   The Court "is normally required to look only to the allegations on the face of the

complaint" when adjudicating a motion to dismiss. *Roth v. Jennings,*489 F.3d 499, 509 (2d Cir.

2007). Accordingly, the Court generally cannot consider affidavits and exhibits on a motion to

dismiss. *Faiveley Transport USA, Inc. v. Wabtec Corp*., 758 F. Supp. 2d 211, 216 (S.D.N.Y. 2010).

For the purpose of testing whether the complaint states facts sufficient to constitute a cause of

action, the allegations of fact cannot be challenged by affidavits to the contrary. *Hoy v. Progress*

*Pattern Co.*, 217 F.2d 701 (6th Cir. 1954).

25.   Among other issues, this inquiry is not one that is appropriate for resolution at the

Federal Rules of Civil Procedure Rule 12(b)(6) stage, where the court is to determine only whether

a claim is stated, and is not to resolve factual contests or determine the applicability of

defenses. *Titan America, LLC v. Darrell,* NO. 7:11-CV-52-FL, 9 (E.D.N.C. Sep. 2, 2011).

---

7

26.    In considering a motion to dismiss for failure to state a claim, the court will not consider or pass on extraneous matters or questions or issues not proper for determination. *Schy v. Susquehanna Corp*., 419 F.2d 1112 (7th Cir. 1970). Further, where, in an action by an employee against the employer, the pleadings raise a triable issue of fact, a motion to dismiss the complaint will be denied. *Wilderman v. Nelson*, 467 F.2d 1173 (8th Cir. 1972).

27.    While it might be appropriate for the court to consider additional facts or legal theories asserted in a response brief to a motion to dismiss if they are consistent with the facts and theories advanced in the complaint, the court may not consider allegations or theories that are inconsistent with those pleaded in the complaint. *Hayes v. Whitman,* 264 F.3d 1017 (10th Cir. 2001). Nor may the court consider conclusions of law and unwarranted inferences of fact. *Lewis v. ACB Business Services, Inc*., 135 F.3d 389, 39 Fed. R. Serv. 3d 1376 (6th Cir. 1998).

28.    Substantive defenses on the merits of the complaint may not be raised in a motion to dismiss for failure to state a claim. *Skala v. Sataloff*, 301 F. Supp. 304 (E.D. Pa. 1969). For defenses such as statute of limitations to be raised on a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the complaint must clearly show on its face that the affirmative defense is applicable and bars the action. *El-Shaddai v. Zamora*, 833 F.3d 1036 (9th Cir. 2016). *ASARCO, LLC v. Union Pacific R. Co.,* 765 F.3d 999, 89 Fed. R. Serv. 3d 554 (9th Cir. 2014).

29.    Even though affidavits usually constitute "matters outside the pleading" within the meaning of Fed. R. Civ. P. 12(b), an affidavit filed by the plaintiff which merely reiterates the claim stated in the complaint in general and conclusory language does not convert a Fed. R. Civ. P. 12(b)(6) motion to one for summary judgment. *Aldahonda-Rivera v. Parke Davis & Co.,* 882 F.2d 590, 14 Fed. R. Serv. 3d 713 (1st Cir. 1989). Further, in opposition to a motion to dismiss for failure to state a claim, a plaintiff may submit materials outside the pleadings to illustrate the facts that the plaintiff expects to be able to prove, even if such materials were not attached as exhibits

8

to the complaint. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago and Northwest Indiana*, 786 F.3d 510 (7th Cir. 2015). Plaintiff attaches several exhibits to her concurrently filed Declaration to show some of the facts she expects to be able to prove and which are in direct contraction with the unsubstantiated allegations in the Amicus Declaration.

## H. THE AMICUS DECLARATION VIOLATES THE RULES OF EVIDENCE.

30. Plaintiff objects to numerous statements made in the Amicus Declaration. Many of the non-party's allegations are false, and most are unsubstantiated and misleading. Fed. R. Evid. § 403 requires a declarant to bear the burden of producing evidence as to the existence of a preliminary fact, including where the preliminary fact is "the personal knowledge of a witness concerning the subject matter of his testimony." Fed. R. Evid. § 403(a)(2). Neither Defendant nor the non-party have substantiated any of non-party's allegations. Plaintiff's objections are as follows:

| Objection No. | Material Objected To | Grounds for Objection | Ruling |
|---|---|---|---|
| 1 | Docket No. 62 ¶ 4<br><br>Location of non-party's previous residence. | Irrelevant (Fed. R. Evid. § 401)<br><br>Confusion (Fed. R. Evid. § 403) | Sustained: _____<br><br>Overruled: _____ |
| 2 | Docket No. 62 ¶ 4<br><br>Allegations about when or how non-party met Plaintiff. | Irrelevant (Fed. R. Evid. § 401)<br><br>Confusion (Fed. R. Evid. § 403) | Sustained: _____<br><br>Overruled: _____ |
| 3 | Docket No. 62 ¶ 4<br><br>Allegations and conclusions about non-party's financial interest in Defendant's business | Improper Opinion / Speculative (Fed. R. Evid. §§ 602, 701, 703)<br><br>Out of Context (Fed. R. Evid. § 106) | Sustained: _____<br><br>Overruled: _____ |

9

| | | | |
|---|---|---|---|
| | | Argumentative (Fed. R. Evid. § 403) | |
| 4 | Docket No. 62 ¶ 4<br><br>Legal arguments about Apple's vicarious liability for actions of non-party. | Opinion and legal arguments. Civil L.R. 7-5(b)<br><br>Improper Opinion / Speculative (Fed. R. Evid. §§ 602, 701, 703)<br><br>Argumentative (Fed. R. Evid. § 403) | Sustained: _____<br><br>Overruled: _____ |
| 5 | Docket No. 62 ¶ 4<br><br>Legal argument about propriety of naming non-party in this lawsuit. | Improper Opinion / Speculative (Fed. R. Evid. §§ 602, 701, 703)<br><br>Argumentative (Fed. R. Evid. § 403) | Sustained: _____<br><br>Overruled: _____ |
| 6 | Docket No. 62 ¶ 5<br><br>Allegations and characterization about Plaintiff's TAC as "false," "misleading," its "veracity," "improper." | Opinion and legal arguments. Civil L.R. 7-5(b)<br><br>Argumentative (Fed. R. Evid. § 403)<br><br>Improper Opinion / Speculative (Fed. R. Evid. §§ 602, 701, 703) | Sustained: _____<br><br>Overruled: _____ |
| 7 | Docket No. 62 ¶ 5<br><br>Unsubstantiated allegations about conduct and statements by Plaintiff – any of which would have been statements Plaintiff did not make to the non-party and thus are Hearsay. | Argumentative (Fed. R. Evid. § 403)<br><br>Improper Opinion / Speculative (Fed. R. Evid. §§ 602, 701, 703)<br><br>Out of Context (Fed. R. Evid. § 106)<br><br>Hearsay (Fed. R. Evid. 801) | Sustained: _____<br><br>Overruled: _____ |
| 8 | Docket No. 62 ¶ 5<br><br>Allegations about the nature, outcome, and merit | Argumentative (Fed. R. Evid. § 403) | Sustained: _____ |

10

| | | of the non-party's lawsuit against Plaintiff. | Improper Opinion / Speculative (Fed. R. Evid. §§ 602, 701, 703)

Out of Context (Fed. R. Evid. § 106)

False or Misleading (See Decl. of Ashley Gjovik ¶ 2-10) | Overruled: _____ |
|---|---|---|---|---|
| 9 | Docket No. 62 ¶ 5

Allegations against Plaintiff accusing Plaintiff of conduct that is "defamatory," "false light," "fabricated narrative," "threaten," "destructive," "harassed," "severely," "maliciously." | Opinion and legal arguments. Civil L.R. 7-5(b)

Argumentative (Fed. R. Evid. § 403)

Improper Opinion / Speculative (Fed. R. Evid. §§ 602, 701, 703) | Sustained: _____

Overruled: _____ | |
| 10 | Docket No. 62 ¶ 5

Allegations about Defendant's status as a "witness in defense" for Apple. | Argumentative (Fed. R. Evid. § 403)

Improper Opinion / Speculative (Fed. R. Evid. §§ 602, 701, 703)

Lacks Foundation | Sustained: _____

Overruled: _____ | |
| 11 | Docket No. 62 ¶ 6

More arguments about Apple's vicarious liability for non-party's actions. | Opinion and legal arguments. Civil L.R. 7-5(b)

Argumentative (Fed. R. Evid. § 403)

Improper Opinion / Speculative (Fed. R. Evid. §§ 602, 701, 703) | Sustained: _____

Overruled: _____ | |
| 12 | Docket No. 62 ¶ 6 | Irrelevant (Fed. R. Evid. 401) | Sustained: _____ | |

11

| | | | | |
|---|---|---|---|---|
| | | Unsubstantiated allegations of conduct and statements by Plaintiff. | Confusion (Fed. R. Evid. § 403)<br><br>Out of Context (Fed. R. Evid. § 106)<br><br>Hearsay (Fed. R. Evid. 801)<br><br>False or Misleading (See Decl. of Ashley Gjovik ¶ 2-10) | Overruled: _____ |
| 13 | | Docket No. 62 ¶ 6<br><br>Claim that Plaintiff has "clear knowledge" of something. | Argumentative (Fed. R. Evid. § 403)<br><br>Improper Opinion / Speculative (Fed. R. Evid. §§ 602, 701, 703)<br><br>Hearsay (Fed. R. Evid. 801) | Sustained: _____<br><br>Overruled: _____ |
| 14 | | Docket No. 62 ¶ 6<br><br>Allegations against Plaintiff accusing Plaintiff of conduct that "misleads," and is "harassing." | Opinion and legal arguments. Civil L.R. 7-5(b)<br><br>Argumentative (Fed. R. Evid. § 403)<br><br>Improper Opinion / Speculative (Fed. R. Evid. §§ 602, 701, 703)<br><br>Out of Context (Fed. R. Evid. § 106) | Sustained: _____<br><br>Overruled: _____ |
| 15 | | Docket No. 62 ¶ 5<br><br>Legal arguments and characterization of a lawsuit filed against Plaintiff. | Opinion and legal arguments. Civil L.R. 7-5(b)<br><br>Hearsay (Fed. R. Evid. § 801)<br><br>Improper Opinion / Speculative (Fed. R. Evid. §§ 602, 701, 703) | Sustained: _____<br><br>Overruled: _____ |

12

PLAINTIFF'S MOTION TO STRIKE IMPROPER AMICUS BRIEF
3:23-CV-04597-EMC

| | | | |
|---|---|---|---|
| | | Argumentative (Fed. R. Evid. § 403)<br><br>False or Misleading (See Decl. of Ashley Gjovik ¶ 2-10)<br><br>Out of Context (Fed. R. Evid. § 106) | |
| 16 | Docket No. 62 ¶ 6<br><br>Legal arguments and characterization of the appeal of a lawsuit filed against Plaintiff. | Opinion and legal arguments. Civil L.R. 7-5(b)<br><br>Hearsay (Fed. R. Evid. 801)<br><br>Improper Opinion / Speculative (Fed. R. Evid. §§ 602, 701, 703)<br><br>Argumentative (Fed. R. Evid. § 403)<br><br>False or Misleading (See Decl. of Ashley Gjovik ¶ 2-10)<br><br>Out of Context (Fed. R. Evid. § 106) | Sustained: _____<br><br>Overruled: _____ |
| 17 | Docket No. 62 ¶ 9<br><br>Allegations against Plaintiff accusing Plaintiff of conduct and statements characterized as "improperly," "improperly," "improper judicial record," "unconstitutionally," "not proper," "not rooted in any valid legal theory." | Opinion and legal arguments. Civil L.R. 7-5(b)<br><br>Improper Opinion / Speculative (Fed. R. Evid. §§ 602, 701, 703)<br><br>Argumentative (Fed. R. Evid. § 403) | Sustained: _____<br><br>Overruled: _____ |
| 18 | Docket No. 62 ¶ 9<br><br>Characterization of alleged comments by an "Assistant Attorney General." | Argumentative (Fed. R. Evid. § 403) | Sustained: _____<br><br>Overruled: _____ |

13

| | | Improper Opinion / Speculative (Fed. R. Evid. §§ 602, 701, 703)<br><br>Hearsay (Fed. R. Evid. § 801)<br><br>Out of Context (Fed. R. Evid. § 106) | |
|---|---|---|---|
| 19 | Docket No. 62 ¶ 2<br><br>Request to strike content in Plaintiff's TAC related to non-party. | Argumentative (Fed. R. Evid. § 403)<br><br>Improper request of non-party<br><br>Obstruction | Sustained: _____<br><br>Overruled: _____ |
| 20 | Docket No. 62 ¶ 9<br><br>Request: "The inclusion of [non-party]… should be stricken from the record in this proceeding" | Argumentative (Fed. R. Evid. § 403)<br><br>Improper request of non-party<br><br>Obstruction | Sustained: _____<br><br>Overruled: _____ |

31.     Further, the Amicus Declaration introduces new facts and arguments in support of a Reply, and as such the Court need not consider those allegations and arguments as they were not raised prior to the Reply. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007).

32.     Plaintiff intentionally resisted Defendant's attempt to force her to detail her vicarious liability theories in her Opposition, as her TAC and Opposition page limits did not support fully developing those theories, but her Complaint did include enough facts to show there can be a basis, and those theories can be argued after discovery. Plaintiff's Opposition to Defendant's Motion to Dismiss at ¶ 8, 15, 41, 42-43, 47-48, 50.

33.     New facts in a Reply cannot be used to "prove" the original Motion's allegations if it was not argued in the Opposition. *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996).

Thus, there is currently no basis for any allegations in this Amicus Declaration, even if they were legitimate, which they are not.

## I. PREJUDICE

34. The attempt to introduce this Amicus Declaration is yet another attempt to "poison the well," "stack the deck," and attack Plaintiff's character. This matter should be decided on the merits – not a legal street fight. Plaintiff should not have to immediately defend her integrity and character at the beginning of her own lawsuit.

35. Finally, in addition, the non-party expressed she wants to testify – and she will get that chance, as will others alleged to have acted as agents of Apple – but in the normal cadence and operations of civil litigation, not in whatever this is.

15

## III.   CONCLUSION

36.     Considering all of the above, Plaintiff respectfully asks the Court to strike Docket No. 62 in its entirety; and if not, then to strike the improper statements made within the Amicus Declaration. Plaintiff requests that this type of "evidence" not be considered for Apple's preliminary Motion to Dismiss or Motion to Strike. Plaintiff also asks for the Amicus Declaration to be used as evidence in support of Plaintiff's allegations of violations of the RICO Act, Bane Act, and Ralph Act later in this lawsuit. Plaintiff specifically requests consideration of:

a.  Appleseed's admission she directly contacted Apple's lawyers to try to discuss how to reduce Apple's liability in this lawsuit.
b.  Appleseed's allegation that Apple's lawyers never replied to her – which means Apple never warned her not to interfere, despite knowing her prior actions.
c.  Appleseed's admission that someone tipped her off about this lawsuit which incited her to file this Amicus Declaration.
d.  Appleseed's admission of being a "witness in defense" for Apple in the NLRB matter.
e.  Appleseed's requests to force Plaintiff to have to withdraw allegations and evidence against Apple in Plaintiff's federal lawsuit.
f.  Appleseed admitting all of the above in "support" of Apple's Motion to Strike Plaintiff's Third Amended Complaint.

Plaintiff also respectfully requests if the Motion to Dismiss is converted to a Motion for Summary Judgement, that Plaintiff have more time and an opportunity to present additional relevant evidence.

**Dated: April 23 2024**
Signature:

_____

**s/ Ashley M. Gjovik**
**Pro Se Plaintiff**
**Email**: legal@ashleygjovik.com
**Physical Address**: Boston, Massachusetts
**Mailing Address:** 2108 N St. Ste. 4553 Sacramento, CA, 95816
**Phone**: (408) 883-4428

16

**Ashley M. Gjovik, JD**
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# United States District Court

## Northern District of California

| | |
|---|---|
| **Ashley M. Gjovik**, *an individual*, | Case No. 3:23-CV-04597-EMC |
| Plaintiff, | **Plaintiff's Memorandum of Points & Authorities in Support of Motion to Strike Improper Amicus Declaration** |
| vs. | |
| **Apple Inc.**, a corporation, | **Motion to Strike** |
| Defendant. | Fed. R. Civ. P. 12(f) |
| | **Motion Hearing & Case Management Conference:** |
| | Dept: Courtroom 5 |
| | Judge Edward M. Chen |
| | Date: August 28, 2024 |
| | Time: 9:30 AM PT |

# I. TABLE OF CONTENTS

## Contents

I.  Table of Contents ........................................................................ ii

II.  Table of Authorities .................................................................. iii

III.  Statements Of Facts .................................................................. 1

IV.  Issues to be Decided ................................................................. 3

V.  Arguments .................................................................................. 4

    A.  The document is an improper declaration & improper amicus. .......... 4

    B.  An amicus brief or declaration is not appropriate for motions to dismiss or to strike. ........................................................................ 7

    C.  The sur-reply was denied, so there is nothing to respond to. ............. 9

    D.  Appleseed's non-party filings in this case are unlawful attempts to harass and intimidate the Plaintiff, in continuance of the multi-year campaign to get Plaintiff to drop claims and change her testimony. ............. 9

    E.  The amicus declaration violates the rules of evidence. ......................... 11

VI.  Conclusion ................................................................................. 17

— ii —

## II. TABLE OF AUTHORITIES

**Cases**

*Banerjee v. Bd. of Trustees of Smith College*, 648 F.2d 61, 65 n. 9 (1st Cir. 1981).   7

*Boro Hall Corporation v. General Motors Corporation,* 124 F.2d 822 (C.C.A. 2d
    Cir. 1942).   10

*Data Disc, Inc. v. Systems Technology Associates, Inc.,* 557 F.2d 1280 (9th Cir.
    1977).   5

*Faiveley Transport USA, Inc. v. Wabtec Corp*., 758 F. Supp. 2d 211, 216 (S.D.N.Y.
    2010).   9

*Grid Systems Corp. v. Texas Instruments Inc.,* 771 F. Supp. 1033, 1036, 20
    U.S.P.Q.2d (BNA) 1207 (N.D. Cal. 1991).   9

*Hoy v. Progress Pattern Co.*, 217 F.2d 701 (6th Cir. 1954).   9

*In re Enron Creditors Recovery Corp.,* Case No. 01-16034 (AJG), Adv. No. 03-
    92677, Adv. No. 03-92682, 2 (Bankr. S.D.N.Y. May. 20, 2008).   7

*In re Marriage of Heggie*, 99 Cal. App. 4th 28, 30, n.3 (2002).   4

*Leigh v. Engle,* 535 F. Supp. 418, 420 (N.D. Ill. 1982).   7

*Lewis v. ACB Business Services, Inc*., 135 F.3d 389, 39 Fed. R. Serv. 3d 1376 (6th
    Cir. 1998).   9

*Liberty Lincoln Mercury, Inc. v. Ford Marketing* Corp., 149 F.R.D. 65, 82 (D.N.J.
    1993).   7

*Long Island Soundkeeper Fund, Inc. v. New York Athletic Club*, No. 94 Civ. 0436,
    1995 WL 358777, at *1 (S.D.N.Y. June 14, 1995).   7

*McKay v. Sazerac Co*., 23-cv-00522-EMC, 4 (N.D. Cal. May. 17, 2023).   12

*Medevac MidAtlantic, LLC v. Keystone Mercy Health Plan,* 817 F. Supp. 2d 515,
    520 (E.D. Pa. 2011).   10

*NGV Gaming, Ltd. v. Upstream Point Molate, LLC,* 355 F. Supp. 2d 1061, 1068
    (N.D. Cal. 2005).   6

PLAINTIFF'S MOTION TO STRIKE | CASE NO. 3:23-CV-04597-EMC

1  *Oneida Indian Nation of New York v. New York,* 194 F. Supp. 2d 104 (N.D. N.Y.
2     2002).                                                                   10
3  *Reynolds v. United States Gov't*, 7:22-CV-00178-FL, 8 (E.D.N.C. Jul. 21, 2023).  8
4  *Rosenberg-Wohl v. State Farm Fire & Cas. Co*., 20-cv-09316-DMR, 6 (N.D. Cal.
5     Mar. 28, 2022).                                                          6
6  *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago and Northwest Indiana*,
7     786 F.3d 510 (7th Cir. 2015).                                            10
8  *Ryan v. Commodity Futures Trading Com'n*, 125 F.3d 1062, 1063 (7th Cir. 1997).  6
9  *Silver v. Executive Car Leasing Long-Term Disability Plan*, 466 F.3d 727, 731 n.2
10    (9th Cir. 2006).                                                         4
11 *Slagle v. U.S.,* 228 F.2d 673 (5th Cir. 1956).                             9
12 *Strasser v. Dooley,* 432 F.2d 567 (5th Cir. 1970)                          8
13 *Sweigert v. Cable News Network, Inc*., 20-cv-12933, 19-20 (E.D. Mich. Mar. 21,
14    2022).                                                                   5
15 *Sweigert v. Cable News Network, Inc*., 20-cv-12933, 20-21 (E.D. Mich. Mar. 21,
16    2022).                                                                   8
17 *United States v. Michigan,* 940 F.2d 143, 163-64 (6th Cir. 1991)          6
18 **Rules**
19 Fed. R. App. P. 25(b).                                                      5
20 Fed. R. App. P. 29(a)(3)                                                    5
21 Fed. R. Civ. P. 12(f)                                                       i
22 Fed.Rules Civ.Proc.Rule 12(b)(6),                                          10
23 Federal Rules of Civil Procedure Rule 47 and Rule 56                        4
24 Local Civil Rule 7-5(b)                                                     4
25 **Treatises**
26 § 37:39. Opposition papers—Evidence, 4 Bus. & Com. Litig. Fed. Cts. § 37:39
27    (5th ed.)                                                                4
28

16AA C. Wright & A. Miller, Federal Practice and Procedure § 3975, pg. 383
    (2021). ................................................................................................... 5

C. Rembar, The Law of The Land 330 (1980). ........................................... 7

— v —

<div align="center">

**POINTS & AUTHORITIES**

</div>

1.     PLEASE TAKE NOTICE that on AUGUST 28 2024 at 9:30AM, in Judge Chen's virtual courtroom, before the Honorable Judge Edward Chen, I will, and hereby do, move for an order granting a Motion to Strike the improper non-party document filed to Docket No. 99. The motion is based on this Memorandum, and Plaintiff's concurrently filed Declaration.

2.     Plaintiff, Ashley Gjovik, respectfully submits the following Memorandum of Points and Authorities in support of Plaintiff's Motion to Strike the documents at Docket No. 99. Plaintiff also requests the Court consider issuing an Order prohibiting non-parties from unilaterally filing declarations to the docket for this case; as otherwise, based on prior conduct, this kind of disruptive and prejudicial harassment of the Plaintiff is likely to continue throughout the entire lawsuit.

## III. STATEMENTS OF FACTS

3.     A non-party filed a Declaration "*In Objection to Plaintiff's Omnibus Motion Dkt #93 and Request for Judicial Notice Dkt #96*" at Docket No. 99. The document was dated August 20 2024, then submitted to this court and docketed on August 27 2024, the day before the motion hearing; which was the first time Plaintiff was made aware of the filing.

4.     On April 19 2024, under Docket No. 62, the same non-party filed a Declaration "*In Support of Defendant's Moton to Strike.*" The document was dated April 16 2024 and mailed to this Court, arriving on April 19 2024 and entered to the docket on April 23 2024, per the docket notes. The non-party identified herself as the person described in Plaintiff's Complaint as "Joanna Appleseed." 4/19 Non-Party Decl at ¶ 1. Appleseed explained she used to work for Apple's Global Security team. *Id* at ¶ 4. Appleseed also explained she sued Gjovik in 2022. *Id* at ¶ 5-6. Appleseed explained she filed the declarations after this lawsuit was

<div align="center">

— 1 —

</div>

1  "*brought to [her] attention*" by someone but she does not say who. *Id* at ¶ 3.

2  Appleseed also notes she "*emailed Apple's attorney*" about Gjovik's lawsuit asking

3  for "*options*" to "*have [herself] removed from [the] case.*" *Id* at ¶ 3. Appleseed notes

4  that Apple's counsel "*did not reply*" to her when she contacted them about this.

5  *Id*. Appleseed requested in her declaration that the Court force Plaintiff to remove

6  claims from Plaintiff's federal lawsuit alleging that Appleseed engaged in unlawful

7  activity, which benefited the Defendant, and which harmed Plaintiff. *Id* at ¶ 2 and

8  9. Appleseed filed a second Declaration on April 30 2024 at Docket No. 66. This

9  second declaration included additional allegations, contradictions, and unlawful

10 requests.

11     5.     Plaintiff filed a Motion to Strike both Declarations (Docket No. 64,

12 67) which was granted by the Court on May 20 2024 (Docket No. 73). Appleseed

13 has now filed her third declaration on August 20 2024 (Docket No. 99). Appleseed

14 is not a party to this lawsuit, nor is she expected to be a party in this lawsuit in

15 the future. Plaintiff denies, disputes, and objects to all other facts alleged in the

16 non-party's three declarations.

17     6.     Plaintiff's complaints allege Appleseed caused Plaintiff harm and did

18 so as an agent of Apple under various vicarious liability theories. Apple's Motion

19 to Dismiss at Docket No. 48 references Appleseed in several sections, including

20 the Bane Act section, writing: "*Plaintiff previously pled that in 2022 'Joanna*

21 *Appleseed'—while no longer employed at Apple … —filed an FBI report about Plaintiff*

22 *….and 'retaliatory litigation' against Plaintiff …. Even if such conduct were to violate*

23 *the Bane Act, Apple would not be liable as a matter of law.*" Def's Mot. to Dismiss

24 Plaintiff's TAC at pages 18-19. Gjovik and Apple Inc have not disputed that

25 Appleseed did the things Gjovik alleged in her complaints, but Apple does dispute

26 it should be held liable for Appleseed's conduct. Pl's MTS at Docket No. 64, 67.

27 There is no factual dispute between parties on this matter at this point in the

28 proceeding, and thus it is completely inappropriate for a non-party to attempt to

— 2 —

1   inject their own version of events into the court record.

2       7.    As noted in her April 24 and May 1 2024 Motions to Strike, Plaintiff

3   did not use Appleseed's name in her Complaints out of fear; as noted in Plaintiff's

4   Complaints: "*Joanna Appleseed… who worked in Apple's Worldwide Loyalty team*"…

5   "*alias because this person tried to sue Gjovik in 2022 for naming her in charges and*

6   *legal filings alleging witness intimidation, and Gjovik fears she might try to do it*

7   *again*." OC at ¶ 132; FAC at ¶ 630; SAC at ¶ 430. Further, for 8 months in 2022,

8   it was a crime punishable by incarceration for Plaintiff to say or write Appleseed's

9   "*names*" in any *medium* other than "*testifying in administrative or judicial*

10   *proceedings.*" Docket 64-1 Declaration, Exhibit I, Page 71.

11       8.    In Appleseed's August 20 2024 declaration, Appleseed complains

12   that Plaintiff is speaking about Appleseed. "*Plaintiff continues to reference me and*

13   *make allegations against me in this lawsuit.*"  Appleseed 8/27 Declr. at ¶ 3.

14   Appleseed complains about Plaintiff's request to file a sur-reply at Docket No. 93

15   and Plaintiff's Request for Judicial Notice at Docket No. 96, and asks again for

16   the Court to remove references to her, or discussion about her actions, from this

17   litigation.

18       9.    Appleseed frames her latest filing as an "*Objection*" and

19   "*Declaration*." *Id.* The Request for Judicial Notice referenced is a request to

20   consider recent 9th Circuit decision establishing new precedent and expanded

21   protection for workers from online harassment by their coworkers and managers.

22   Appleseed appears to take issue with Plaintiff's inclusion of excerpts from the

23   legal memorandum Plaintiff drafted in January 2022 and which Appleseed sued

24   her over in February 2022, demanding the document be removed from public view.

25   Docket 64-1 Declaration, Exhibit A, Page 6; Pl's Req. for Judicial Notice at

26   Docket 96, Exhibit W. Appleseed complains again of this document in her latest

27   declaration at issue.

28   **IV. ISSUES TO BE DECIDED**

— 3 —

10.     First, this Court is to decide whether the "Declaration" is a proper filing, and whether the non-party is allowed to file the document; and if not, the entry at Docket No. 99 should be stricken in its entirety.

11.     Next, if the entry is not stricken in entirety; then this Court should decide whether parts of the document at Docket No. 99 should be stricken, and if any content remains, this Court should decide whether to include the document as part of its consideration of Defendant Apple's pending Motions to Strike and Dismiss, and/or Plaintiff's Request for Judicial Notice.

12.     The Court must also consider if doing so would convert Apple's Motion to Dismiss to into a Motion for Summary Judgement, and if so, would please allow Plaintiff to adequately prepare for such a motion.

13.     Finally, the Court may decide if Appleseed's Declarations can be used as evidence by Plaintiff in support of her claims against Apple.

## V. ARGUMENTS

### A.   The document is an improper declaration & improper amicus.

14.     Appleseed's August 20 2024 declaration contains numerous legal arguments and attempts to summarize and characterize legal matters. This is not what Declarations are for. "The purpose of a declaration is to submit evidence; it is improper to use a declaration to present legal argument." *Silver v. Executive Car Leasing Long-Term Disability Plan*, 466 F.3d 727, 731 n.2 (9th Cir. 2006). *In re Marriage of Heggie*, 99 Cal. App. 4th 28, 30, n.3 (2002). Further, the Amicus Declaration offers very few facts and provides no supporting evidence such as exhibits.

15.     A declaration "*must be viewed just as counsel would view live testimony, and may be attacked for any admissibility deficiency.*" § 37:39. Opposition papers— Evidence, 4 Bus. & Com. Litig. Fed. Cts. § 37:39 (5th ed.)  Local Civil Rule 7-5(b) explains: "*An affidavit or declaration may contain only facts, must conform as much*

— 4 —

1  *as possible to the requirements of Fed. R. Civ. P. 56(e), and must avoid conclusions and*

2  *argument. Any statement made upon information or belief must specify the basis*

3  *therefor. An affidavit or declaration not in compliance with this rule may be stricken*

4  *in whole or in part."* The Federal Rules of Civil Procedure Rule 47 and Rule 56 also

5  explains a similar expectation. Affidavits from the moving party may only be

6  considered on a motion to dismiss where they raise no fact controversy but only a

7  question of law. *Data Disc, Inc. v. Systems Technology Associates, Inc.,* 557 F.2d 1280

8  (9th Cir. 1977). This Amicus Declaration is in opposition to Plaintiff's filings and

9  thus in support of Apple's Motion to Dismiss so it's subject to this expectation.

10  16.   There is no right of nonparties generally to submit an amicus brief.

11  16AA C. Wright & A. Miller, Federal Practice and Procedure § 3975, pg. 383

12  (2021). Instead, "the amicus must file a motion for leave to file the brief" when

13  consent cannot be obtained. *Id.* The amicus brief itself must accompany the

14  motion for leave, Fed. R. App. P. 29(a)(3), and the filings must be served on all

15  parties. Fed. R. App. P. 25(b). *Sweigert v. Cable News Network, Inc.*, 20-cv-12933,

16  19-20 (E.D. Mich. Mar. 21, 2022). Appleseed did not request leave to file the

17  brief/declaration, nor did she obtain consent from the parties, thus it is improper.

18  She also did not serve the parties, and it was only brought to the Plaintiff's

19  attention one day before the hearing.

20  17.   An amicus curiae is not a party and has no control over the litigation

21  and no right to institute any proceedings in it, nor can it file any pleadings or

22  motions in the case. See, e.g., *United States v. Michigan,* 940 F.2d 143, 163-64 (6th

23  Cir. 1991) (disapproving of the *"legal mutant characterized as `litigating amicus*

24  *curiae'"* because it impinged on the inherent rights of the real parties in interest).

25  *NGV Gaming, Ltd. v. Upstream Point Molate, LLC,* 355 F. Supp. 2d 1061, 1068

26  (N.D. Cal. 2005).

27  18.   The vast majority of amicus curiae briefs are filed by allies of litigants

28  and duplicate the arguments made in the litigants' briefs, in effect merely

1    extending the length of the litigant's brief. *United States v. Michigan,* 940 F.2d 143,

2    164-65 (6th Cir. 1991). *Ryan v. Commodity Futures Trading Com'n*, 125 F.3d 1062,

3    1063 (7th Cir. 1997). This Amicus Declaration did support Apple's arguments in

4    their Oppositions and as such essentially provides Apple additional pages and

5    allows them to evade the Rules of Evidence that would have prevented them from

6    making these types of allegations in their Reply.

7        19.    The amicus curiae should present an "objective, dispassionate,

8    neutral discussion of the issues." *In re Enron Creditors Recovery Corp.,* Case No.

9    01-16034 (AJG), Adv. No. 03-92677, Adv. No. 03-92682, 2 (Bankr. S.D.N.Y. May.

10   20, 2008). If the information offered conflates or confuses the issues before the

11   court, like it does here, the request for leave to file it should be denied. *Id. Long*

12   *Island Soundkeeper Fund, Inc. v. New York Athletic Club*, No. 94 Civ. 0436, 1995 WL

13   358777, at *1 (S.D.N.Y. June 14, 1995).

14       20.    If the proffer comes from an individual with a partisan, rather than

15   impartial view, like here, the motion for leave to file an amicus brief is to be

16   denied, in keeping with the principle that an amicus must be a friend of the court

17   and not a friend of a party to the cause. C. Rembar, The Law of The Land 330

18   (1980). *Leigh v. Engle,* 535 F. Supp. 418, 420 (N.D. Ill. 1982). Where a petitioner's

19   attitude toward a litigation is patently partisan, they should not be allowed to

20   appear as amicus curiae. *Liberty Lincoln Mercury, Inc. v. Ford Marketing* Corp., 149

21   F.R.D. 65, 82 (D.N.J. 1993).

22       21.    The purpose of an amicus curiae brief is "to assist the court on

23   matters of law." *Banerjee v. Bd. of Trustees of Smith College*, 648 F.2d 61, 65 n. 9

24   (1st Cir. 1981). It is not, however, to be used to assist with respect to evidentiary

25   claims; therefore, it should not offer factual information favoring a particular

26   party. *Id.*; see also *Strasser v. Doorley,* 432 F.2d 567 (5th Cir. 1970). "An amicus

27   who argues facts should rarely be welcomed." *Id.* at *15 (quoting *Strasser v.*

28   *Doorley*, 432 F.2d 567, 569 (1st Cir. 1970)). See also, *Reynolds v. United States*

1   *Gov't*, 7:22-CV-00178-FL, 8 (E.D.N.C. Jul. 21, 2023).

2       22.     Similar to *Sweigert v. Cable News Network, Inc.*, this case also has a

3   non-party submitting an amicus brief wanting to "share facts and evidence"

4   without seeking concurrence from either party and the Plaintiff actively opposes

5   the Amicus document. In that case the Court agreed to strike the amicus filing

6   noting it contained "*conclusory allegations of Plaintiff conspiring with a court*

7   *employee to commit fraud on the court.*" *Sweigert v. Cable News Network, Inc.*, 20-cv-

8   12933, 20-21 (E.D. Mich. Mar. 21, 2022). Appleseed's Amicus Declaration is of

9   the same character and should be stricken, as her prior two were.

10       **B.   An amicus brief or declaration is not appropriate for motions to**

11            **dismiss or to strike.**

12       23.     When making a Motion to Dismiss for failure to state a claim

13   determination, the Court must assume that the plaintiff's allegations are true,

14   construe the complaint in a light most favorable to the plaintiff, and resolve every

15   doubt in the plaintiff's favor. *Grid Systems Corp. v. Texas Instruments Inc.*, 771 F.

16   Supp. 1033, 1036, 20 U.S.P.Q.2d (BNA) 1207 (N.D. Cal. 1991). Affidavits cannot

17   be treated as proof contradictory to well-pleaded facts in the complaint. *Slagle v.*

18   *U.S.*, 228 F.2d 673 (5th Cir. 1956). The court may take cognizance of and consider

19   facts disclosed otherwise than in the complaint, such as in an affidavit, brief, or

20   argument, only where such facts are undisputed or the parties consent to their

21   consideration. *Boro Hall Corporation v. General Motors Corporation*, 124 F.2d 822

22   (C.C.A. 2d Cir. 1942).

23       24.     The Court "is normally required to look only to the allegations on the

24   face of the complaint" when adjudicating a motion to dismiss. *Roth v. Jennings*,489

25   F.3d 499, 509 (2d Cir. 2007). Accordingly, the Court generally cannot consider

26   affidavits and exhibits on a motion to dismiss. *Faiveley Transport USA, Inc. v.*

27   *Wabtec Corp.*, 758 F. Supp. 2d 211, 216 (S.D.N.Y. 2010). For the purpose of testing

28   whether the complaint states facts sufficient to constitute a cause of action, the

— 7 —

1    allegations of fact cannot be challenged by affidavits to the contrary. *Hoy v.*
2    *Progress Pattern Co.*, 217 F.2d 701 (6th Cir. 1954). Nor may the court consider
3    conclusions of law and unwarranted inferences of fact. *Lewis v. ACB Business*
4    *Services, Inc.*, 135 F.3d 389, 39 Fed. R. Serv. 3d 1376 (6th Cir. 1998).

5         25.   "Motions to strike are to be decided on the pleadings alone." *Medevac*
6    *MidAtlantic, LLC v. Keystone Mercy Health Plan,* 817 F. Supp. 2d 515, 520 (E.D.
7    Pa. 2011). If there is a disputed question of fact or law on a motion to strike, the
8    court should defer action on the motion and leave the sufficiency of the allegations
9    for a determination on the merits. *Oneida Indian Nation of New York v. New York,*
10   194 F. Supp. 2d 104 (N.D. N.Y. 2002). Appleseed's request is not appropriate for
11   a 12(f) motion to strike or a 12(b)(6) motion to dismiss.

12        26.   Even though affidavits usually constitute "matters outside the
13   pleading" within the meaning of Fed. R. Civ. P. 12(b), an affidavit filed by the
14   plaintiff which merely reiterates the claim stated in the complaint in general and
15   conclusory language does not convert a Fed. R. Civ. P. 12(b)(6) motion to one for
16   summary judgment. *Aldahonda-Rivera v. Parke Davis & Co.,* 882 F.2d 590, 14 Fed.
17   R. Serv. 3d 713 (1st Cir. 1989). Further, in opposition to a motion to dismiss for
18   failure to state a claim, a plaintiff may submit materials outside the pleadings to
19   illustrate the facts that the plaintiff expects to be able to prove, even if such
20   materials were not attached as exhibits to the complaint. Fed.Rules Civ.Proc.Rule
21   12(b)(6), 28 U.S.C.A. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago and*
22   *Northwest Indiana*, 786 F.3d 510 (7th Cir. 2015). Plaintiff attached several exhibits
23   to her prior Motion to Strike in order to show some of the facts she expects to be
24   able to prove and which are in direct contraction with the unsubstantiated
25   allegations against her in these Amicus Declarations.

26        27.   This latest attempt by Appleseed to introduce another Amicus
27   Declaration is yet another attempt to "poison the well," "stack the deck," and
28   attack Plaintiff's character. This matter should be decided on the merits – not a

1  legal street fight. Plaintiff should not have to immediately defend her integrity and

2  character at the beginning of her own lawsuit.

3   **C.  The sur-reply was denied, so there is nothing to respond to.**

4

5   28.   The Court denied Plaintiff's request for leave to file a sur-reply on

6   August 22 2024 (Docket No. 98). Therefore, the non-party "response" to

7   Plaintiff's proposed sur-reply is moot and should be denied.

8   **D.  Appleseed's non-party filings in this case are unlawful attempts
       to harass and intimidate the Plaintiff, in continuance of the multi-
       year campaign to get Plaintiff to drop claims and change her
       testimony.**

9

10

11   29.   Appleseed is one of the actors who has undertaken a multi-year effort

12  to silence the Plaintiff, to get Plaintiff to drop/reduce legal claims against Apple,

13  and to change her testimony against Apple. Appleseed has been transparent about

14  these aims – citing the reason behind her incessant stalking and harassment of

15  Plaintiff as including: Plaintiff's NLRB charge against Apple, Plaintiff's

16  whistleblower disclosures to the US SEC about Apple, a legal memo Plaintiff

17  drafted for federal law enforcement alleging criminal conduct by Apple, and

18  Plaintiff's claim that Apple's termination of her employment was retaliation – and

19  refusal by Plaintiff to say, as Appleseed has repeatedly demanded, that Plaintiff

20  was fired "because [Plaintiff] leaked IP.". (See prior Motion to Strike and exhibits,

    see also dozens of allegations in the Plaintiff's 2nd Amended Complaint).

21   30.   Appleseed alleges in her uninvited and unwelcome unilateral filings

22  to this lawsuit, for which she is not party, that this lawsuit is intended to harass

23  her. She's also claimed that Plaintiff's prior legal activities were also about

24  Appleseed. First, none of this is about Appleseed as she's not a party, and she

25  would no longer be relevant in the matter if she had just left the Plaintiff alone,

26  as the Plaintiff repeatedly requested. Second, Appleseed tried to sue Plaintiff

27  directly, filling the filings and testimony with Plaintiff's protected activity and

28  claims against Apple, and losing that lawsuit. Now, Appleseed has invited herself

1   to this lawsuit, which she is not a party, and is attempting to make herself a party
2   by filing three separate declarations over the last five months.

3        31.    If Appleseed thought Plaintiff's actions were actually targeting her,
4   one would think she would have attempted to take additional legal action directly
5   against the Plaintiff, and would not have publicly announced her involvement in
6   this litigation, defending Apple Inc and opposing the Plaintiff, and filing
7   identifying statements to the permanent, public court record.

8        32.    All of Appleseed's justifications for harassing the Plaintiff are based
9   on Plaintiff's protected activity directly related to Apple Inc. Despite Appleseed's
10  incessant reference to the now-overruled and vacated March 1 2022 unwritten,
11  oral Decision of a Limited Court of Jurisdiction in the state of Washington, that
12  did not include an evidentiary proceeding, and was primarily based on less than
13  an hour of Appleseed's oral testimony –even that proceeding revolved around
14  Apple Inc, not Appleseed. Furthering this conduct, today Appleseed now alleges
15  that Plaintiff's Complaint in this lawsuit against Apple Inc is "unlawful." Docket
    No. 99, ¶ 12.

16       33.    In this matter, from the start, Plaintiff attempted to avoid using
17  Appleseed's name in hope that Appleseed would not try to interfere with her
18  lawsuit, or retaliate against her due to her lawsuit, as Appleseed has tried to do,
19  or threatened to do, with her prior charges. Despite not using Appleseed's name,
20  Appleseed has now repeatedly, unilaterally, publicly declared her involvement in
21  this matter. Plaintiff does not need to talk about Appleseed specifically because
22  Appleseed is not a party, and the actions complained of by Plaintiff are all directly
23  related to and for the benefit of Apple Inc. The only person insisting that
    Plaintiff's lawsuit is about Appleseed, is Appleseed.

24       34.    This is a continuation of a pattern of harassment against Plaintiff by
25  Appleseed. (Docket 64-1 Declaration). Two witness statements were submitted in
26  support of Plaintiff, against Appleseed, during that 2022 proceeding. Both
27  statements attested to a pattern of trying to silence Plaintiff about her complaints
28  about Apple, and both attested that they witnessed Appleseed's harassment of

— 10 —

Plaintiff, which centered around Plaintiff's government charges against Apple. *Id.* Further, it appears Apple still has not told Appleseed to stop interfering with this lawsuit. The ratification standard for vicarious liability is relevant even in these improper filings.

35.     Appleseed has also attended at least one of the prior hearings on for this lawsuit, naming herself on the Zoom and clearly attempting to intimidate the Plaintiff. Plaintiff was intimidated, did feel harassed, and did report Appleseed's interference in this lawsuit and continued stalking to law enforcement. Over the last three years, Plaintiff has reported Appleseed's conduct to multiple government bodies and law enforcement agencies, including all of these latest acts of intimidation and harassment, as they continue to occur. That is all that can be said in this forum.

**E.    The amicus declaration violates the rules of evidence.**

36.     Plaintiff objects to many statements made in the Amicus Declaration. Many of the non-party's allegations are false, and most are unsubstantiated and misleading. Fed. R. Evid. § 403 requires a declarant to bear the burden of producing evidence as to the existence of a preliminary fact, including where the preliminary fact is "the personal knowledge of a witness concerning the subject matter of his testimony." Fed. R. Evid. § 403(a)(2). Neither Defendant nor the non-party have substantiated any of non-party's allegations.

37.     Plaintiff's objections are as follows:[1]

| Objection No. | Material Objected To | Grounds for Objection | Ruling |
|---|---|---|---|
| 1 | Docket No. 99 ¶ 4 | Irrelevant (Fed. R. Evid. § 401). | Sustained: _____ |

[1] Note: Plaintiff will not comment on Appleseed's allegations about her own protected activities as that is irrelevant here and does not concern the Plaintiff.

— 11 —

| | | | |
|---|---|---|---|
| | Details of Appleseed's alleged interests, hobbies, and achievements. | Confusion (Fed. R. Evid. § 403). | Overruled: ________ |
| 2 | Docket No. 99 ¶ 4<br><br>Allegations about when or how Appleseed met Plaintiff, or communicated with Plaintiff, more than three years ago. | Irrelevant (Fed. R. Evid. § 401).<br><br>Confusion (Fed. R. Evid. § 403). | Sustained: ________<br><br>Overruled: ________ |
| 3 | Docket No. 99 ¶ 3, 5, 11<br><br>Legal arguments about Apple's vicarious liability for actions of Appleseed. Legal argument about the propriety of Plaintiff making any reference to Appleseed in this lawsuit.<br><br>Statements assessing Apple's legal liability: "*Nor have I any legal connection with Apple Inc,*" "*Apple… has no stake in the way Plaintiff characterizes me,*" etc. | Improper Opinion / Speculative (Fed. R. Evid. §§ 602, 701, 703).<br><br>Opinion and legal arguments. Civil L.R. 7-5(b).<br><br>Argumentative (Fed. R. Evid. § 403. | Sustained: ________<br><br>Overruled: ________ |
| 4 | Docket No. 99 ¶ 5-6<br><br>Complaints that Plaintiff allegedly talks about Appleseed too much; and concurrently, complaints that Plaintiff also allegedly does not talk about Appleseed enough. | Argumentative (Fed. R. Evid. § 403).<br><br>Improper Opinion / Speculative (Fed. R. Evid. §§ 602, 701, 703).<br><br>Opinion and legal arguments. Civil L.R. 7-5(b). | Sustained: ________<br><br>Overruled: ________ |
| 5 | Docket No. 99 ¶ 5<br><br>Allegations of misconduct, dishonesty, corruption, wrongdoing, and criminal | Argumentative (Fed. R. Evid. § 403) | Sustained: ________<br><br>Overruled: ________ |

| | | | |
|---|---|---|---|
| | | conduct by Plaintiff – without basis. | Improper Opinion / Speculative (Fed. R. Evid. §§ 602, 701, 703).<br><br>Opinion and legal arguments. Civil L.R. 7-5(b).<br><br>Harassment; Defamation. | |
| 6 | Docket No. 99 ¶ 5, 6, 7, 8<br><br>Allegations against Plaintiff, re: "*conceals,*" "*cherry picks,*" "*bad faith,*" "*maliciously,*" "*false light,*" "*lies,*" "*omissions,*" "*categorically false,*" etc. | Argumentative (Fed. R. Evid. § 403)<br><br>Improper Opinion / Speculative (Fed. R. Evid. §§ 602, 701, 703).<br><br>Opinion and legal arguments. Civil L.R. 7-5(b).<br><br>Harassment; Defamation. | Sustained: _____<br><br>Overruled: _____ |
| 7 | Docket No. 99 ¶ 6<br><br>Opinions on the content in Plaintiff's "legal memo" and Plaintiff's intent in drafting said memo. Opinions about Plaintiff's behavior related to the memo, including comparing the publication of a legal memo on a website like a law firm does as unlawfully "*publicizing*" something. | Out of Context (Fed. R. Evid. § 106).<br><br>Argumentative (Fed. R. Evid. § 403).<br><br>Improper Opinion / Speculative (Fed. R. Evid. §§ 602, 701, 703).<br><br>Opinion and legal arguments. Civil L.R. 7-5(b). | Sustained: _____<br><br>Overruled: _____ |
| 8 | Docket No. 99 ¶ 5, 6, 8, 9, 10, 11, 12<br><br>Commentary about things Plaintiff may have said or things people may have said to Plaintiff occurring during the prior 34 months – during which time Plaintiff has not | Out of Context (Fed. R. Evid. § 106).<br><br>Argumentative (Fed. R. Evid. § 403).<br><br>Opinion and legal arguments. Civil L.R. 7-5(b). | Sustained: _____<br><br>Overruled: _____ |

— 13 —

Plaintiff's Motion to Strike - Memorandum | Case No. 3:23-CV-04597-EMC

| | | | | |
|---|---|---|---|---|
| | | initiated contact with Appleseed, has refused to respond to Appleseed trying to contact Plaintiff,  and any comments by Appleseed about Plaintiff are based on information gathered during Appleseed's stalking of the Plaintiff activity. | Hearsay (Fed. R. Evid. 801). Implication of stalking / surveillance Irrelevant (Fed. R. Evid. § 401). | |
| | 9 | Docket No. 99 ¶ 5 Opinion on complex vicarious liability and agency legal theories, presented as a "*false narrative*" and alleging Plaintiff supposedly alleged Appleseed is "*a secret agent of Apple…*" | Improper Opinion / Speculative (Fed. R. Evid. §§ 602, 701, 703). Opinion and legal arguments. Civil L.R. 7-5(b). Hearsay (Fed. R. Evid. 801). | Sustained: _____ Overruled: _____ |
| | 10 | Docket No. 99 ¶ 7, 8 9, 10 Denial of Appleseed's own transcribed testimony from January 31 2022. Unilateral claims that "*people*" have told Plaintiff certain things "*numerous times.*" Disputing facts alleged in the Plaintiff's complaints and filings. Claims of knowledge of conversations occurring between Plaintiff and a lawyer, protected under Attorney Client Privilege. False statements made about the webform incident. | Obstruction; Harassment. Improper Opinion / Speculative (Fed. R. Evid. §§ 602, 701, 703). Opinion and legal arguments. Civil L.R. 7-5(b). Argumentative (Fed. R. Evid. § 403). Hearsay (Fed. R. Evid. 801). | Sustained: _____ Overruled: _____ |
| | 12 | Docket No. 99 ¶ 9 Details of alleged charges Appleseed claims to have filed with the government about Apple Inc or her other employers. Opinions on whether Plaintiff is allowed to | Obstruction; Intimidation Improper Opinion / Speculative (Fed. R. Evid. §§ 602, 701, 703). | Sustained: _____ Overruled: _____ |

— 14 —

| | | | |
|---|---|---|---|
| | talk about events in her own life, and if so how she may talk about them, if they relate to those claims. | Opinion and legal arguments. Civil L.R. 7-5(b). Hearsay (Fed. R. Evid. 801). | |
| 13 | Docket No. 99 ¶ 10 Presenting a defense as to why Appleseed says she did not intend to file a complaint about Plaintiff's legal filing claiming it was a specific felony, but instead intended to report the protected federal legal filing as a different crime, and presenting opinion that she claims she proved it was not intentional to report the memo as that specific felony (despite all evidence to the contrary). | Obstruction; Harassment. Improper Opinion / Speculative (Fed. R. Evid. §§ 602, 701, 703). Opinion and legal arguments. Civil L.R. 7-5(b). Hearsay (Fed. R. Evid. 801). Out of Context (Fed. R. Evid. § 106). | Sustained: _____ Overruled: _____ |
| 14 | Docket No. 99 ¶ 10 Assertions of insider knowledge of law enforcement activities including investigations or lack of investigations into the Plaintiff on certain topics. | Obstruction; Intimidation Improper Opinion / Speculative (Fed. R. Evid. §§ 602, 701, 703). Opinion and legal arguments. Civil L.R. 7-5(b). | Sustained: _____ Overruled: _____ |
| 14 | Docket No. 99 ¶ 12 Allegations that Plaintiff's Complaint and filings in this lawsuit are "*unlawful*." | Obstruction; Intimidation; Coercion; Harassment. Improper Opinion / Speculative (Fed. R. Evid. §§ 602, 701, 703). Opinion and legal arguments. Civil L.R. 7-5(b). | Sustained: _____ Overruled: _____ |
| 15 | Docket No. 99 | Improper request of non-party | |

— 15 —

| | | Requests to censor, strike, or otherwise restrict Plaintiff's claims and allegations in this lawsuit. | Obstruction; Intimidation; Harassment. | Sustained: _____<br><br>Overruled: _____ |
|---|---|---|---|---|

Plaintiff's Motion to Strike - Memorandum | Case No. 3:23-CV-04597-EMC

## VI. Conclusion

38. This court commented to Plaintiff in January that "Plaintiff is not expected to try the entirety of her case in the complaint." *Gjovik v. Apple Inc.*, 23-cv-04597-EMC, 3 (N.D. Cal. Jan. 30, 2024). The court should have more insight now, based on the motions and declarations from Apple's counsel and Appleseed, as to why Plaintiff felt it necessary to try to argue her entire case in her complaint.

39. Considering all of the above, Plaintiff respectfully asks the Court to strike Docket No. 99 in its entirety; and if not, then to strike the improper statements made within the Amicus Declaration as outlined in the objections above.

40. Plaintiff requests that this type of "evidence" cannot be considered for Apple's preliminary Motion to Dismiss or Motion to Strike. Plaintiff also asks that the Amicus Declaration can be used as evidence in support of Plaintiff's allegations of violations of IIED and other claims later in this lawsuit.

41. Plaintiff specifically requests consideration of:

    a. Appleseed's admission she directly contacted Apple's lawyers to try to discuss how to reduce Apple's liability in this lawsuit. (Docket No.'s 62, 66, 99).

    b. Appleseed's allegation that Apple's lawyers never replied to her – which means Apple never warned her not to interfere, despite knowing her prior actions. (Docket No.'s 62, 66).

    c. Appleseed's admission that someone tipped her off about this lawsuit which incited her to file the first Amicus Declaration. (Docket No.'s 62, 66).

    d. Appleseed's claim of being a "witness in defense" for Apple in the NLRB matter. (Docket No.'s 62, 66).

1        e.  Appleseed's requests to force Plaintiff to have to withdraw

2           allegations and evidence against Apple in Plaintiff's federal

3           lawsuit. (Docket No.'s 62, 66, 99).

4        f.  Appleseed admitting all of the above in "support" of Apple's

5           Motions to Strike and Dismiss Plaintiff's Complaint (Docket

6           No.'s 62, 66, 99).

7      42.  Plaintiff requests consideration of 'closing' the docket for non-party

8  filers who are not pre-approved amicus curiae. Plaintiff also respectfully requests

9  if the Motion to Dismiss is converted to a Motion for Summary Judgement, that

10  Plaintiff have more time and an opportunity to present additional relevant

11  evidence.

12

13  Dated: August 27 2024

14

15  Signature:

16

17

18

19

20  _____

21  **/s/ Ashley M. Gjovik**

22  *Pro Se Plaintiff*

23  **Email:** legal@ashleygjovik.com

24  **Physical Address:**

25  Boston, Massachusetts

26  **Mailing Address:**

27  2108 N St. Ste. 4553 Sacramento, CA, 95816

28  **Phone:** (408) 883-4428

**Ashley M. Gjovik, JD**
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# United States District Court

## Northern District of California

| | |
|---|---|
| **Ashley M. Gjovik**, *an individual*, | Case No. 3:23-CV-04597-EMC |
| Plaintiff, | **Declaration of Ashley Gjovik in support of Plaintiff's Motion to Strike** |
| vs. | |
| **Apple Inc.**, a corporation, | **Motion Hearing & Case Management Conference:** |
| Defendant. | Dept: Courtroom 5 Judge Edward M. Chen Date: August 28, 2024 Time: 9:30 AM PT |

1 **DECLARATION OF ASHLEY GJOVIK**

2 Pursuant to 28 U.S.C. § 1746, I, Ashley M. Gjovik, hereby declare as follows:

3

4     My name is Ashley Marie Gjovik. I am a self-represented Plaintiff in this

5 above captioned matter. I make this Declaration based upon my personal

6 knowledge and in support of my concurrently filed Motion to Strike. I have

7 personal knowledge of all facts stated in this Declaration, and if called to testify,

8 I could and would testify competently thereto.

9

10     On August 27 2024 I filed a Motion to Strike a docket entry from a non-

11 party at Docket No. 99. I filed this motion in good faith, I believe all of the

12 statements I made are true, and I have not made any allegations in this proceeding

13 for an improper purpose or in bad faith.

14

15     I have reported the lawfare-style harassment by Apple and Appleseed to law

16 enforcement multiple times prior to this, and I do believe their actions are

17 unlawful. I have been intimidated and demoralized by the frequent accusations of

18 dishonesty, incompetence, and misconduct made by Apple, and also in

19 Appleseed's three declarations filed to this court docket. I have repeatedly asked

20 all actors engaging in this type of conduct towards me to stop, but they have not

21 ceased the conduct.

22

23

24

25

26

27

28

— 1 —

1    I spent hours today preparing this response instead of spending those hours
2    preparing for the hearing tomorrow, as I had initially planned. Similarly, instead
3    of focusing on discovery in this case, a great amount of time had to be spent
4    responding to Apple's pending motions. I am behind schedule on my initial
5    discovery activities due to Apple's actions and inactions including having to draft
6    and file an appellate brief to US Dept. of Labor last week. (See Notice of Pendency
7    at Docket No. 100). The request for appellate review was accepted today, August
8    27 2024, and the appeal is now docketed at ARB-2024-0060.
9
10    I declare under penalty of perjury under the laws of the United States that
11    the foregoing is true and correct, and that this declaration was executed on August
12    27 2024.
13
14    Executed on: August 27 2024 in Boston.
15    Signature:
16
17
18
19
20    _____
21    **/s/ Ashley M. Gjovik**
22    *Pro Se Plaintiff*
23    **Email**: legal@ashleygjovik.com
24    **Physical Address**:
25    Boston, Massachusetts
26    **Mailing Address:**
      2108 N St. Ste. 4553 Sacramento, CA, 95816
27    **Phone**: (408) 883-4428
28

— 2 —

ER VIII 226

1    **Ashley M. Gjovik, JD**
     *Pro Se Plaintiff*

2    2108 N St. Ste. 4553
     Sacramento, CA, 95816
3    (408) 883-4428
     legal@ashleygjovik.com
4

5

6                      UNITED STATES DISTRICT COURT
7

8                     NORTHERN DISTRICT OF CALIFORNIA
9

10

11                                              Case No. 3:23-CV-04597-EMC
12

13

14   ASHLEY GJOVIK, *an individual*,           DECLARATION OF ASHLEY GJOVIK

15              Plaintiff,                      IN SUPPORT OF PLAINTIFF'S

16              v.                              MOTION TO STRIKE

17   APPLE INC, *a corporation*,               AN IMPROPER AMICUS DECLARATION

18              Defendant.                      Dept: Courtroom 5, 17th Floor (Virtual)

19                                              Date: May 16, 2024

20                                              Time: 1:30 p.m.

21

22

23

24

25

26

27

28

I.     **DECLARATION OF ASHLEY GJOVIK IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE AN IMPROPER AMICUS BRIEF**

**Pursuant to 28 U.S.C.§ 1746, I, Ashley M. Gjovik, hereby declare as follows:**

1.     My name is Ashley Marie Gjovik. I am the self-represented Plaintiff in this above captioned matter. I make this Declaration based upon my personal knowledge and in support of Plaintiff's Motion to Strike. I have personal knowledge of all facts stated in this declaration, and if called to testify, I could and would testify competently thereto.

2.     On January 31 2022, the non-party declarant who filed the Amicus Declaration at Docket No. 62 requested a restraining order against me in the state of Washington. Attached as **EXHIBIT A** is a true and correct copy of the document.

3.     On February 1 2022, a Judge in a Court of Limited Jurisdiction denied the non-party declarant's ex part request for a temporary restraining order against me. Attached as **EXHIBIT B** is a true and correct copy of the document.

4.     On February 14 2022, I filed my Reply brief in the lawsuit. Attached as **EXHIBIT C** is a true and correct copy of the document

5.     On February 25 2022, I filed a copy of a second witness statement in the lawsuit. Attached as **EXHIBIT D** is a true and correct copy of the document.

6.     On February 28 2022, I filed a copy of a witness statement in the lawsuit. Attached as **EXHIBIT D** is a true and correct copy of the document.

7.     On March 1 2022, the non-party declarant testified during the hearing. Attached as **EXHIBIT E** is a true and correct copy of excerpts from the transcript.

8.     On March 4 2022 and April 6 2022, law firms requested copies of the court records of non-party declarant's lawsuit against me. One of the law firms is the same firm Apple hired to defend it from my NLRB charges starting back in August of 2021. Attached as **EXHIBIT F** is a true and correct copy of the document

2

9.      On June 31 2022, the US District Court of the Western District of Washington dismissed a Constitutional challenge lawsuit I had filed over the statute underlying non-party's lawsuit against me. Attached as **EXHIBIT G** and **EXHIBIT H** are a true and correct copy of the documents.

10.     On September 26 2023 a state Superior Court Judge granted my appeal and reversed the decision against me, finding it to be without merit. It was transmitted to the District Court on November 17 2022. Attached as **EXHIBIT I** is a true and correct copy of the document.

11.     On December 2 2022, I filed a notice of intent to file motions if the case was remanded. Attached as **EXHIBIT J** is a true and correct copy of the document

12.     On December 12 2022, a state District Court Judge agreed with the appellate decision, dismissed the case against me, and vacated the order. Attached as **EXHIBIT K** is a true and correct copy of the document.

13.     On December 7 2022, Plaintiff's successful appeal was discussed in three pages of an amicus curiae brief for the SCOTUS Petition for Writ of Certiorari for *Barton v State of Texas*.[1] Attached as **EXHIBIT L** is a true and correct copy of pages 1-2 and 10-12 of the document.

14.     I have reviewed each document and confirmed it is the true and correct copy of each document mentioned herewithin this Declaration and the Motion to Strike. No documents were altered or manipulated other than minor redactions.

---

[1] *Barton v State of Texas*, Amicus Curiae Brief of Electronic Frontier Foundation in Support of Petitioners, https://www.supremecourt.gov/DocketPDF/22/22-430/249364/20221207141747388_22-430%20Amicus%20Electronic%20Frontier%20Foundation.pdf

3

DECLARATION OF ASHLEY GJOVIK IN SUPPORT OF PLAINTIFF'S
MOTION TO STRIKE 3:23-CV-04597-EMC

15.     I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on APRIL 24 2024.

**Executed on**: APRIL 24 2024

Signature:

_____

**s/ Ashley M. Gjovik**

**Pro Se Plaintiff**

**Email**: legal@ashleygjovik.com
**Physical Address**: Boston, Massachusetts
**Mailing Address:** 2108 N St. Ste. 4553 Sacramento, CA, 95816
**Phone**: (408) 883-4428

**Ashley M. Gjovik, JD**
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# United States District Court

## Northern District of California

| | |
|---|---|
| **ASHLEY GJOVIK**, *an individual*, | Case No. 3:23-CV-04597-EMC |
| Plaintiff, | |
| | **Declaration** |
| vs. | **of Ashley Gjovik** |
| | Civil L.R. 7-3, 7-5 |
| **APPLE INC**, a corporation, | |
| Defendant. | **Motion Hearing & Case Management Conference:** |
| | Dept: Courtroom 5 (Zoom) |
| | Judge Edward M. Chen |
| | Date: August 28, 2024 |
| | Time: 9:30 AM PT |

# Declaration of Ashley Gjovik

Pursuant to 28 U.S.C. § 1746, I, Ashley M. Gjovik, hereby declare as follows:

My name is Ashley Marie Gjovik. I am a self-represented Plaintiff in this above captioned matter. I have personal knowledge of all facts stated in this Declaration, and if called to testify, I could and would testify competently thereto.

I make this Declaration based upon my personal knowledge and in support of Plaintiff's Opposition (Docket No. 84 and 85) to Defendant's Motion to Dismiss (Docket No. 78) and Motion to Strike (Docket No. 79), and in Support of Plaintiff's Motion for Leave to file a sur-reply.

The prior July 31 2024 Declaration is integrated here, including statements and Exhibits A-F.

Attached as Exhibit G is a true and correct copy of the email I sent US EPA when I started looking into the Superfund site next to 3250 Scott Blvd in January 2023, and when I discovered the fab at 3250 Scott in February 2023.

Attached as Exhibit H are true and correct captures of the Public Records Act request I filed to city of Santa Clara that led to the discovery of 3250 Scott Blvd, and the two requests filed by AEI Consulting prior.

Attached as Exhibit I are true and correct images captured of Gobbler still trying to access my personal iCloud account for years after I was fired.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on August 18 2024 in Boston, Massachusetts.

Executed on: August 18 2024

Signature:

_____

**/s/ Ashley M. Gjovik**

*Pro Se Plaintiff*

**Email**: legal@ashleygjovik.com
**Physical Address**: Boston, Massachusetts
**Mailing Address:** 2108 N St. Ste. 4553 Sacramento, CA, 95816
**Phone**: (408) 883-4428

**Appendix: Table of Exhibits**

## RECORD DESCRIPTION

*First Declaration (July 31 2024)*

**EXHIBIT A**    Gjovik v Apple, claim & 12(b)(6) history

**EXHIBIT B**    Table of Contents copied from all filed complaints

**EXHIBIT C**    Indexes created (after the fact) for all complaints

**EXHIBIT D**    Emails: attempt to meet/confer

**EXHIBIT E**    Emails: NLRB & prior hearing

**EXHIBIT F**    Wikipedia vandalism about this case

*Second Declaration (August 18 2024)*

**EXHIBIT G**    3250 SOL Discovery: US EPA Emails

**EXHIBIT H**    3250 Scott Public Records Request

**EXHIBIT I**    com.apple.vetap.gobbler

Case 3:23-cv-04597-EMC   Document 94   Filed 08/18/24   Page 5 of 18

# G. Declaration Exhibit G: Discovering 3250 Scott: US EPA Emails

## Re: Santa Clara Square Apts. VOC concerns (Synertek Superfund)

**From:** Ashley M. Gjovik <ashleymgjovik@protonmail.com>
**To:** RQ Info <RQ.Info@epa.gov> Ty <no address> Palma <Ty.Palma@epa.gov> Poalinelli <no address> Edwin <POALINELLI.EDWIN@EPA.GOV> Diemer <no address> Katherina <Diemer.Katherina@epa.gov> <Madjid.Deksan@Waterboards.ca.gov>
**Cc:** <matthew.t.werle@usace.army.mil>
**Bcc:** Lenny Siegel <L.Siegel@cdeo.org>

Wed., Feb 22, 2023 at 12:00 AM EST (GMT-05:00)

Hello,

I never received a response to this email & its now been 40 days.

A new, additional question for you all - Its how long have you known that Apple was doing illegal actual silicon fab in that 3250 Scott Building since ~2016 through current?

Like back in the 1970s-1980s Silicon Valley silicon fab, and only .2 miles (.3 km) from RESIDENTIAL BUILDINGS.

Apple's buildings permits (attached) note solvent/chemical evaporation on the yards near the 'gas bunkers' & a large number of solvent exhaust ducts to the roof from the variety of clean rooms & lab stations.

The building is registered in CERS but is not a DTSC, Water Board, or US EPA site.

A literal silicon fab factory that is spewing toxic chemicals into at least the alr is only overseen by the city fire department & which only inspected a couple times - finding open violations but apparently never even following up on them.

Mashville:
https://abbyjvaw.com/2021/03/nhdogah-was-dying-my-apartment-was-built-on-toxic-waste/

-Ashley

--
Ashley M. Gjovik, J.D., B.S., PMP
Founder, The D&G Center, megacorpwatch.org
Whistleblower & Activist, ashleygjovik.com

Sent with Proton Mail secure email.

------- Original Message -------
On Wednesday, January 11th, 2023 at 4:55 PM, Ashley M. Gjovik <ashleymgjovik@protonmail.com> wrote:

Hello I hope you're all doing well.

I wanted to check in again on the vapor intrusion risk assessment for Santa Clara Square Apartments in Santa Clara (on the Synertek Superfund plume & 23rd NPL site).

You may remember it never had groundwater well 33-A, 33-90 Caravan Ct-? The apartment lived in had no vapor intrusion mitigation. nor even a vapor barrier, and the groundwater was as shallow as 5ft in some areas. I moved into the Apartments in Feb 2020 & immediately suffered severe, prolonged central nervous system depression, tumor, & rashes, arrhythmia, palpitations, & decreasing function totals. I also see it was availability for six months, but to these levels as well. All of these things resolved after I moved out of the apartment. October 2020, I even then got tumors she's dramatically in six months. Two chemical exposure specialist doctors confirmed the best explanation was industrial VOC exposure at the apartment. Additional residents also came forward who also experienced unexplained health issues after moving in. one in my building who was also proud of the EPA risks so severe. Some reported this to DTSC & the mayor, but from what I've heard, nothing was done.

I have a few questions for you about the site if you wouldn't mind, please & thanks.

**1. INCREASING TCE IN WELL 33-A PER GAMA**

I see via GAMA that you do test well 33-A last year (right next to where I lived, thank you!) but it now shows TCE positive in two tests. I also see increasing & decreasing levels of TCE in the wells up-hill from the apartment. Following the topography & apparent plume morphology, it appears the TCE may have began flowing downhill under the apartment complex at some point after 2015.

2ND DECLARATION & EXHIBITS | 3:23-CV-04597-EMC



**Request 1:** I would like to request, again, if groundwater in well 25A can be tested please. Ideally 26A too

**2. 2022 FYR NOTES REMEDIATION INJECTIONS IN 2019 & 2020, WITH "REBOUND EFFECT"**

I also see the 2022 (5th) FYR was posted on the EPA site, dated Sept 2022. I see a note that in Feb 2020, bioremediation injections were completed at several wells, which started Dec 2019. The FYR notes there was a "rebound effect" with an "increase of approximately 5-10ug/L" of TCE in "nearby wells." FYR notes Honeywell "conducted perf monitoring" through April 2021 (pg 9, pg 11). I also see a note that as the TCE was broken down as part of the bioremediation that there was an "increase in vinyl chloride" at several wells. I do not see any 2020-2021 testing in wells 3A, 25A, or 26A.

This timeline matches my illness.

| Revised Focused Feasibility Study Approved | 2018 |
|---|---|
| Installation of enhanced in situ bioremediation injection wells | Dec. 2019 — Jan 2020 |

Case 3:23-cv-04597-EMC   Document 94   Filed 08/18/24   Page 7 of 18

# VINYL CHLORIDE



**Request 2:** I don't remember if anyone ever disclosing this bioremediation effort to me when I raised concerns about the site in 2020 & early 2021. Is it possible the "rebound effect" may have also occurred at the apartments? Could that be related to why TCE is increasing in well 33A?
Was there any testing in 2021 (and results haven't been posted yet)?

As I complained about in 2020 & 2021, when there is so little testing done on the site of these apartments, its impossible to know what is or is not happening there.

## 3. SANTA CLARA SQUARE APARTMENTS IN FYR

I also see notes in the FYR about the apartments.

"Construction of nearby residential buildings had occurred in the past five years. Residential buildings are now closer to the Site than was the case at the time of the Record of Decision. However, vapor mitigation systems were installed at the four closest newly constructed mixed use/residential buildings. There is no potential for vapor intrusion to be an issue based on the chemical concentrations near the new development." (pg 14)

"Based on the Site inspection and a review of the Final Response Plan for the Santa Clara Square Apartments from 2016, vapor mitigation systems were installed below the four closest newly constructed mixed use/residential buildings downgradient on Scott Boulevard." (pg16)

Was US Army Corps of Engineers, who prepared the FYR, informed about the issues reported at the apartments? I don't see anything mentioned at all. Was the Army informed several buildings did not have any vapor intrusion mitigation at all? Including my building? The diagrams on pages 15-20 are not accurate to the new buildings addressed for the apartment complex either. I'm citing the notes/inspector as if in someone's life may not have been provided adequate information about what happened there in 2020.

Plan:
https://dtsc-ssfl.com/2013-05/dtsc-final-response-plan-santa-clara-square-apartments-san-ca/document-download
https://www.indiaonewishworship.org-CCA1.72.sqps-published-relia-physicality-mentality-portfolio/
http://www.youtube.com.org.corps.com/sign/chem-UPLOAD_bill.com

(Note I see a notice was posted in a local paper for comments & I would have provided some if I was made aware, but I like many others, do not often read local papers. It could be better if you had sign-up lists for parties interested in certain sites to be notified via email when its time for notice/comment. Due to what happened in 2020, I still have to fight about this site - for this rest of my life).

**Request 2:** FYR & 33A plumes

Can you please explain why Well 33A was noted to no longer be part of the plume, when the TCE in that well has been increasing? (now up to 2.4 as of Oct 2021). Does that mean you think another site is increasing the TCE there, not Synertek? If so, has this been reported to the Cal EPA reps for nearby buildings?

## 4. 3250 SCOTT BLVD

My development has an office directly uphill from the apartments, next to Synertek, registered with CERS as a Haz waste generator & storing haz waste since 2015. Apple gathered tax haz waste violations in 2020, including 1,700 gallons of missing diesel"
See: https://response.ceaqa.ca.gov/fields-haz-results.detail/30310.complaince

Apple & I talked about that site back in 2020 when I realized I was sick from toxic waste around the apartments. When I told Apple I was next to 3250, they encouraged me to take "Extreme Caution Leave" (special paid leave for natural disasters) to move out, which I did.

The 2022 FYR notes "there is no potential for vapor intrusion" it notes Honeywell did VI inspections on 2014-2015 for buildings 3095-3075 & 3111 on Conrad Drive. The report does not say any testing was done at 3250 Scott Blvd.



2ND DECLARATION & EXHIBITS | 3:23-CV-04597-EMC

Case 3:23-cv-04597-EMC   Document 94   Filed 08/18/24   Page 9 of 18

**Apple, Inc. (Scott 1)**
3250 SCOTT BLVD
SANTA CLARA CA 95054

PROFILE     MAP     REGULATORY PROGRAMS     COMPLIANCE     **CHEMICALS**

SUBMITTED ON
11/21/2022

< SHOW LESS INFORMATION

## Chemical Storage

REPORTING PERIOD
2022

## Chemicals

| Name | Max Daily Amount / Unit | Avg Daily Amount / Unit | Days Onsite | Physical State(S) |
|------|------|------|------|------|
| Xiameter AFE- 1530 anti foam Emulsion | 12-59 Gallons | 12-59 Gallons | 365 | Liquid, Mix |
| UN3287, Waste Toxic liquid, inorganic, n.o.s. (Arsenic), 6.1, PGII | 12000-59999 Gallons | 12000-59999 Gallons | 365 | Liquid |
| UN3266, Waste Corrosive Liquid, Basic, Inorganic, N.O.S. (Ammonium hydroxide), 8, PGII | 0-11 Gallons | 0-11 Gallons | 365 | Liquid |
| UN3264, Waste Corrosive liquid, acidic, inorganic, n.o.s. (Sulfuric Acid), 8, PGII | 0-11 Gallons | 0-11 Gallons | 365 | Liquid |
| UN3264, Waste Corrosive liquid, acidic, inorganic, n.o.s. (sulfuric acid, hydrochloric acid), 8, PGII | 1200-2999 Gallons | 1200-2999 Gallons | 365 | Liquid |
| UN3264, Waste Corrosive liquid, acidic, inorganic, n.o.s. (Ferric Chloride, Hydrochloric Acid), 8, PGII | 12-59 Gallons | 12-59 Gallons | 365 | Liquid |
| UN3200, Waste Pyrophoric solid, inorganic, n.o.s. (PHOSPHOROUS, ARSINE OXIDE), 4.2 , PGI | 100-499 Pounds | 100-499 Pounds | 365 | Solid |
| UN2817, WASTE AMMONIUM HYDROGENDIFLUORIDE, SOLUTION, 8, (6.1), PG II | 0-11 Gallons | 0-11 Gallons | 365 | Liquid |
| UN2817, Waste Ammonium hydrogendifluoride, solution, 8 (6.1), PGII | 12-59 Gallons | 12-59 Gallons | 365 | Liquid |
| UN2031, Waste Nitric acid , 8, PGII | 0-11 Gallons | 0-11 Gallons | 365 | Liquid |
| UN1993, WASTE FLAMMABLE LIQUIDS, N.O.S., (ISOPROPANOL, ACETONE), 3, PG III | 1200-2999 Gallons | 1200-2999 Gallons | 365 | Liquid |
| UN1950, Waste Aerosols, flammable, (each not exceeding 1 L capacity), 2.1, PGII | 0-99 Pounds | 0-99 Pounds | 365 | Solid |
| UN1133, Adhesives, containing a flammable liquid, 3, PGII | 0-11 Gallons | 0-11 Gallons | 365 | Liquid |

| + | Ultra Etch Np 6:1 | 100-499 Pounds | 100-499 Pounds | Liquid, Mix | 365 |
| + | Sulfuric Acid 96% Cleanroom | 0-99 Pounds | 0-99 Pounds | Liquid, Pure | 365 |
| + | Sulfur Hexafluoride | 0-2599 Cubic Feet | 0-2599 Cubic Feet | Gas, Pure | 365 |
| + | Sodium Hydroxide | 120-599 Gallons | 120-599 Gallons | Liquid, Pure | 365 |
| + | Refrigerated Liquid (100% Nitrogen) | 60-119 Gallons | 60-119 Gallons | Liquid, Pure | 365 |
| + | Oxygen (cryogenic, liquefied) | 0-2599 Cubic Feet | 0-2599 Cubic Feet | Liquid, Pure | 365 |

more https://depot.sanjoseca.gov/rmp/issue/search/50016-chemicals

Thanks!

-Ashley

--
Ashley M. Gjovik, J.D., B.S., PMP
Director, A. M. Gjovik Consulting, L.L.C.
Phone: +1 415-964-0272
Personal: ashleygjovik.com | Consulting: gjovik.co

Sent with Proton Mail secure email.

------- Original Message -------
On Wednesday, October 21st, 2020 at 12:07 PM, Ashley Gjovik <ashleygjovik@icloud.com> wrote:

Hello! Hope you're all doing well.

The DTSC has declined to investigate and is standing behind their initial assessment from 2015.

Irvine Company appears to have refused to do any testing on my unit (other than sending PG&E out to check for a "gas leak") — and appears to have already rented it out to someone else.

I now live up in San Francisco and all of my health issues stopped within days of moving out. I've talked to a couple doctors so far and they say all my medical issues since moving into that unit match an acute response to solvent exposure.

Did we learn anything about the groundwater? Any other info I can provide to help?

Thanks!

— Ashley Gjovik

On Sep 22, 2020, at 12:18 PM, Ashley Gjovik <ashleygjovik@icloud.com> wrote:

Thank you, Katherine! Appreciate it.

I also gave DTSC (Cheryl) a heads up in case they are managing one or more of those sites as well.

— Ashley Gjovik

On Sep 22, 2020, at 7:24 AM, Diemer, Katherina <Diemer.Katherina@epa.gov> wrote:

Good morning Ms. Gjovik,

I am the new Project Manager for this site. Thank you for your inquiry and the information you have provided. I am new to this site and will need a little time to gather the requested information below. I have a few meetings in the next week to discuss this site with other managers. I will reply to you as soon as I have more information and answers to your questions. In the meantime please let me know if you have other questions and concerns and I will do my best to help.

Thank you and have a great day,

Katherina Diemer

From: Ashley Gjovik <ashleygjovik@icloud.com>
Sent: Monday, September 21, 2020 4:27 PM
To: Tu, Katrina <Tu.Katrina@epa.gov>; Diemer, Katherina <Diemer.Katherina@epa.gov>
Cc: R9 Info <R9.Info@epa.gov>
Subject: Re: Santa Clara Square Apts. VOC concerns

Oh – and if someone sampled the groundwater near the corner of the property near the asphalt patch, please. MW-33A is a bit west of my unit and might not catch the same flow as what's under me. I haven't actually seen a groundwater well near my specific unit – despite that weird depressed spot & patch in the asphalt near 3393 Corralup. MW-33A might be the closest to what's going my direction.

Also, Relix, I've found notes of multiple sources of groundwater contamination (ugh)different from my unit — not just Synertek.

Irvine's currently doing a bunch of construction on top of that 3236 site (more apartments I think) - so it'd be especially curious about that one.

Are those other GW contamination sites (Intel, 3236) managed by the state waterboard or DTSC instead of EPA?

Thanks again!

<image001.png>
<image002.png>

<image003.png>

<image004.png>

<image005.png>

— Ashley Gjovik

On Sep 21, 2020, at 3:28 PM, Ashley Gjovik <ashleygjovik@icloud.com> wrote:

Hi Fatima. Thanks for the update!

What testing did the EPA/RWQCB do to determine the current state/location of the plume?

Does the EPA have any additional action items or follow up on this overall concern/issue?

Does RWQCB have any additional action items or follow up?

— Ashley Gjovik

On Sep 21, 2020, at 3:05 PM, Ty, Fatima <Ty.Fatima@deca.gov> wrote:

Hello Ms. Gjovik – I'm glad to hear that DTSC reached out to you. I hope they can answer your questions regarding their sites.

I shared your updates with the Synertek site project managers from EPA and the Regional Water Quality Control Board. Based on their reviews of the data, the groundwater contaminant plume has not migrated from Synertek to the Santa Clara Apartments, and as such, the site is unlikely impacting the Apartments.

Should you have questions, I've cc'd EPA1 project manager, Katherina Diemer.

Warm regards,
Fatima

Fatima Ty
(415) XXX-XXXX

From: Ashley Gjovik <ashleygjovik@icloud.com>
Sent: Sunday, September 20, 2020 8:58 PM
To: Ty, Fatima <Ty.Fatima@deca.gov>
Cc: R8 Info <R8.Info@deca.gov>
Subject: Re: Santa Clara Square Apts. VOC concerns

Hi! Quick update.

I talked to Cheryl at the DTSC on the phone Friday and sent her several emails with photos and notes of my concerns, and potential failings by Irvine.

One thing I shared with DTSC but then I also think you should be aware of, are these giant cracks I found in the lowest level of the parking garage in my building yesterday. This is the top of the "containment cell" for like 4,400 cubic hards of hazardous waste. I believe Irvine Co. is supposed to report conditions like this to the DTSC. I'm also terribly worried about what is leaking out of those cracks (the moisture, but also any vapor). And whether anything is actually "contained" now. There's giant cracks that all over the floor, even intersecting with each other.

Also, Irvine Co. hired a PR person to deal with me, but after I send her my emails with Irvine inspecting the VOCs and the documentation I sent DTSC, even she now admits it seems something is going on. I guess she used to work for the DTSC, so she knows what's up.

Let me know if you want to see the other concerning photos I sent DTSC (exposed geo-textile markers around the trees, broken utility lines, exposed wires in the TFZ, floods next to the containment cells, pics of my home HVOC monitor results, etc).

<image001.png>
<image002.png>

<image003.png>

<image004.png>

Not to mention this maybe unmarked hazard.. EV charger, in standing water from unknown source, with submerged box of pesticides. But that moisture seems to be mixing with some of the moisture in these cement cracks too.

<image005.png>
<image006.png>

— Ashley Gjovik

2ND DECLARATION & EXHIBITS | 3:23-CV-04597-EMC

On Sep 17, 2020, at 6:52 PM, Ashley Gjovik <ashleygjovik@icloud.com> wrote:

Hello! Thank you. I appreciate it. Looking forward to talking to Jayanta.

I think it got back to Irvine Co. that I was reporting them to so many agencies and talking to law firms, because they reached out on 9/11 (completely unsolicited) and offered to let me break my lease without penalty (otherwise I'd have to pay ~$8k). I gave notice and am moving up to SF on 9/25, and will drop off the keys by 10/10.

I'm worried Irvine might just try to rent my unit out again after I leave without any investigation — despite my complaints about VOCs, chemical smells (inside my unit, in the stair well), and the soil outside the stair well), and my symptoms at the time of the VOCs & smells. They seem very disinterested.

Btw, I'm having an industrial hygienist come out next week to do indoor air samples in my unit and to sample the top soil outside my unit. If you'd also like to run some labs on my unit's air (I'd highly recommend it — the VOCs are still blasting daily), I'm happy to let you in while I'm still here. I'll offer the same to DTSC and CRWQCB if/when they reach out.

And I also grabbed a list of the most commonly mentioned chemicals from the soil & groundwater samples near my unit and have blood & urine tests underway to see if any of them are the VOCs blasting my unit, and if so how much of them are inside me. If any come back positive while I'm still in the unit, I'm also going to check out my dog. I've been worried about him too.

Please let me know if there's anything else I can do to help — or if anyone else I should notify.

Would also appreciate any tips if you know any env/occupational health doctors who can advise me about exposure. I have a referral out to a specialist at UCSF who's dealt with this waste exposure/OSHA etc, but waiting to hear back. I guess the books out 3-4 months. Hoping there might be someone else who can help advise me sooner. My PCP has no experience with this.

Thanks!

— Ashley Gjovik
(406) 204-9876

---

On Sep 17, 2020, at 5:56 PM, Ty, Fatima <Ty.Fatima@epa.gov> wrote:

Dear Ms. Gjovik,

I'm sorry to hear about your ongoing health issues and concerns.

California's Department of Toxic Substance Control (DTSC) manages cleanup projects near your home. I contacted the project manager, Jayanta Borden, who should be in contact with you soon. If she hasn't yet reached out, about their cleanup effort.

Also, as you pointed out, there is a Superfund site nearby. Synertek. California's Regional Water Quality Control Board in Oakland oversees cleanup activities at this site. We are working with their staff to review your concerns and will be in touch soon.

Warm regards,
Fatima

Fatima Ty
Superfund and Emergency Management Division
U.S. EPA, Region 9
Tel (415) 972-3530

-----Original Message-----
From: R9 Info <R9.Info@epa.gov>
Sent: Monday, September 14, 2020 3:16 PM
To: Ty, Fatima <Ty.Fatima@epa.gov>
Cc: Martin-Bishop, Ruby <Martin-Bishop.Ruby@epa.gov>; R9 Info <R9.Info@epa.gov>
Subject: Santa Clara Square Apts. VOC concerns

Hi Fatima,

Can you assist us with this inquiry from Ms. Gjovik?
Please keep R9.Info@epa.gov in the loop.

Thanks!
Deborra

Deborra Cohen
Director, Environmental Information Center/Library U.S. EPA Pacific Southwest, Region 9 cohen.deborra@epa.gov / 415.972.3655

-----Original Message-----
From: Gjovik_admin@epa.gov (Gjovik_admin@epa.gov) On Behalf Of Ashley Gjovik Via EPA
Sent: Thursday, September 10, 2020 2:44 PM
To: R9 Info <R9.Info@epa.gov>
Subject: Inquiry from Region 9 Contact Us form

Question or comment submitted on 09/10/2020 5:44PM

Your Name: Ashley Gjovik
Organization:
Email: ashleygjovik@icloud.com
Phone number: 4062049876

Your request or comment:
I have reason to believe the my apartment complex and the property it is on is exposing me to harmful levels of volatile organic chemicals. I live at the Santa Clara Square Apartments, which apparently has enormous amounts of hazardous waste on site. I believe there is a vapor intrusion coming into my unit.

I've been struggling with massive health issues this year. They were mostly mild before I moved in, but they got extremely worse days after I got here.

This is a brand new building. I'm the first tenant in my unit, and I was one of the earlier folks to move in. (Canary in the coal mine?) I moved in 2/8/20, ended up in the ER 2/16, and they finished construction of my building in May 2020 (per county records). I ended up seeing 50+ specialist trying to figure out what was making me so sick (severe chin pains, arrhythmia, angina, rash, MS-like neurological symptoms, visible blood pressure symptoms, breathing problems, exhaustion, etc).

I started becoming suspicious of toxins/poisoning only a couple weeks ago. My health issues were returning after a "treatment" of three weeks of antibiotics for an infection. (However, Stanford Infectious Disease was fairly certain it wasn't the infection, and I was instead suffering from massive inflammation from some unidentified source, saying the antibiotics only provided an anti-inflammatory effect). I was also noticing what I thought was the building shaking during the night (and my dog noticed it too <– barking, etc). One of my friends suggested it might be a chemical issue (he brushed this off at first), but then I checked my Blue Air monitors I saw huge waves of tVOC spikes (smoking up my apartment at the time) I was hallucinating. Since I moved in, I also had several occurrences of waking up in the middle of the night feeling like I was choking/dying around 3am. (I've also now seen huge tVOC spikes at one of those times as well).

I've purchased three separate personal tVOC monitors and they're all showing unhealthy numbers, usually at the same time, often at least twice a day. The fumes seem to come in the worst around 7am-8am and 10pm-11pm. Sometimes it's quick, and sometimes they blast me for multiple hours.

When they the fumes are blazing, I can feel & smell it before I see it. My skin burns, my lungs burn, I feel exhausted, like I'm choking. The rash on my arms gets really itchy. My dog is also showing symptoms (lethargy, anxiety, loss of appetite, etc)

There's a chemical smell, sometimes kind of sweet, sometimes like gasoline, sometimes like burning plastic... there's several different ones that will come in. If I go outside & get fresh air (or even sit up close next to my window) I start feeling better. My symptoms seem to vary with the smells – some will make me dizzy and exhausted, some will make me lose coordination and focus, some will make me super nauseous, etc.

The hallucinations were happening almost every night after I weatherized my windows and tried to prevent any of the smokey air from coming in. The hallucinations have stopped since I've been keeping all my windows wide open. I was also getting nosebleeds when all my windows were closed, but now the bleeds stopped after keeping the windows open.

Even with windows open, I can still feel the fumes though. The symptoms are less bad, but they're still awful. And now with the smokey air – I cannot close my windows. The fumes are way worse than the particulates, and I even have asthma, it's all miserable.

So, then I started researching... and found the Env Impact Report, and then the DTSC records and was HORRIFIED to learn not just how much hazardous waste was on the property, but that most of it is still on the property!!!

My unit is a corner unit next to a stairwell (that also houses the fire sprinkler riser drainage system). My unit looks out on a "park" that apparently had no solid physical barrier put in to protect from the known hazardous groundwater though to be flowing from the Symbric Superfund site a block from us (upgradient from the unit). My unit also looks out on two big redwoods that apparently did not have any of the hazardous soil removed out to 1.5x the canopy of each. Instead a cloth matrix was supposed to be installed separating the explosive soil from the roots. Apparently instead of removing the hazardous and near-CAL Haz soil, they buried it in a containment cell under the garage of my building, which sits in the center of the building with units all around it. Near their roots, no vapor intrusion mitigation or monitoring was installed.

Also, from all the reports I read, it looks like the corner of the property my unit sits on had the very least amount of soil & groundwater sampling performed history and before/during construction, compared to the other areas of the property.

Since I moved in I've noticed numerous issues with the construction of the building. Frequent burst pipes, one of which kept pouring directly at one of the interior room, and happened 3x times (I have pics/emails), the fire pipes are almost always leaking outside (pipe/emails tool), my HVAC is a mess – there's air blowing out of one of my light switches and the only know why or where it's coming from, etc. The courtyard had the sprinklers fail and put out water for like two days straight, flooding the flower beds next to the building & foundation (maybe <2ft from the front/unit toxic garage). Also I remember when I moved in, I saw weird orange plastic near those redwoods – and now I suspect that was supposed to be the matrix, if I could see it, not sure they actually separated the soil like they were supposed to. I also saw them digging deep into the that park and by the tree when construction was finishing last spring. No red tape... just dirt everywhere.

I was also never notified that I'm living on/near so much hazardous waste.
There are no signs or warnings, even around areas where they know there's Cal Haz materials (the trees, etc).

Because I'm in a corner unit over looking the toxic redwoods and toxic groundwater park, and because I share a wall with a stairwell (vapor intrusion freeway) – I'm incredibly suspicious of some sort of hazardous waste vapor intrusion coming into my unit. It seems to be getting worse, especially with the recent weather/temp/pressure changes. It makes me feel incredibly sick.

I complained to my property manager (Irvine Company) of the fumes, tVOCs & HCHO levels, my symptoms – and asked for help. Numerous times, I explained I noticed these issues worsen after closing off my windows to block out the smoke.

This is the last response I got from them on 9/6:

"Thank you for your email. There are several wildfires throughout the state of California and the air quality is not ideal in most areas. I've included a screenshot of the current AQI for Santa Clara specifically below. You can see they set yesterday was considered "unhealthy" and today is moderate. Unfortunately, we don't have control over the air quality in Santa Clara or in surrounding areas.

At this point, we have exhausted all options in trying to assist you the best we can. We had PGE out on Friday and they tested the surrounding stairwell, the area of your apartment home on the exteriors wall building 4, and there are no gas leaks or chemical spills.

As of now, there is no evidence suggesting there is any hazardous waste or air quality in your apartment home is unsafe.
What are you wanting to do at this point? If you feel that your health and safety are in jeopardy you need to call 9-1-1 or emergency services, otherwise, we will further respond and communicate on Tuesday due to the Labor Day holiday."
–

Courtney Yoakley
Genesis Manager
Santa Clara Square Apartment Homes"
Date/Time of occurrence:
Location Address:

Location Description (if provided): My apartment #349

Responsible Party Name:
Responsible Party Company Name: Irvine Company Responsible Party Address:
, California

Your information:
Email: ashleyyoshizu@icloud.com
Home Phone:
Mobile Phone: (408) 204-8978
Your Address:
3350 Octavius Drive #349
Santa Clara, California 95054

2ND DECLARATION & EXHIBITS | 3:23-CV-04597-EMC

## H. Declaration Exhibit H: 3250 Scott Public Records Act Request



8/18/24, 10:01 PM
Skip to main content
Public Record Requests

Request 23-127 · NextRequest - Modern FOIA & Public Records Request Software

City of Santa Clara

**Request Visibility** ⊕ Published

# Request 23-127  ✓ Closed

### Dates

**Received**
February 9, 2023 via web

### Requester

👤 Ashley M. Gjovik
✉ ashleymgjovik@protonmail.com
👁
🔗
🏛 n/a

### Invoices

No invoices due

### Staff assigned

**Departments**
*No departments assigned*

**Point of contact**
Stephanie Davis

### Request

Hello! I would like to please request any records in Santa Clara city possession about the following properties. Records includes but is not limited to letters, reports, complaints, emails, violations, warnings, permits, photos, inspections, and other documents. Date range: Jan 1 2010 through Jan 31 2023

Locations:

- 3250 SCOTT BLVD (EPA ID CAR000278176)
- 3260 SCOTT BLVD
- 3170 CORONADO DR (EPA ID CAL000450535)
- 2630 WALSH AVE (EPA ID CAT000603704)

All buildings appear to be currently leased by Apple Inc.

Digital records are preferred. If there are too many records, let me know, and I can try to refine the search parameters. If it will take some time, I would appreciate if docs could be released in batches as they're ready. Please let me know if you have any questions. Thank you!

**Show less**

**Timeline**    Documents

✉ **Message from requester**  ‹
I had no idea this request would return so many documents. This must have been a huge amount of work for your team to process. Sorry about that. I just want to say, this information provided is VERY VERY HELPFUL to me and I'm analyzing every single document. Thank you thank you.

*April 19, 2023, 3:03pm by the requester*

Requester • Staff

https://santaclara.nextrequest.com/requests/23-127

1/32

2ᴺᴰ Declaration & Exhibits | 3:23-CV-04597-EMC

8/18/24, 10:01 PM

Request 23-127 - NextRequest - Modern FOIA & Public Records Request Software

Public

**Request closed** ‹

The City of Santa Clara has released responsive document(s) pursuant to the California Public Records Act and are available for download through the https://santaclara.nextrequest.com/ portal.

The City has redacted from these records information that is exempt from disclosure under Government Code Section 6254(c) because it is personal information, the disclosure of which would constitute an unwarranted invasion of personal privacy.

Partial responsive records for this request have also previously been released by the City. You may refer to the following below:

**3170 Coronado Dr**

- Request #22-920 https://santaclara.nextrequest.com/requests/22-920
- Request #22-925 https://santaclara.nextrequest.com/requests/22-925

**3250 & 3260 Scott Blvd**

- Request #22-1148 https://santaclara.nextrequest.com/requests/22-1148
- Request #22-1149 https://santaclara.nextrequest.com/requests/22-1149

April 19, 2023, 2:55pm by Staff

Public

**Document(s) released** ‹

- 2630 Walsh Ave. BLD2019-54208_Issue Docs_R.pdf-redacted.pdf
- 2630 Walsh Ave. BLD2019-56141_Issue Docs_R.pdf-redacted.pdf
- 2630 Walsh Ave. BLD2020-57703_APP_R.pdf-redacted.pdf
- 2630 Walsh Ave. BLD2020-57777_Issue Docs_R.pdf-redacted.pdf
- 2630 Walsh Ave. BLD2020-57620_Issue Docs_R.pdf-redacted.pdf
- 2630 Walsh Ave. BLD2019-56054_Issue Docs_R.pdf-redacted.pdf
- 2630 Walsh Ave. BLD2020-58091_Special Inspection Form_R.pdf-redacted.pdf
- 2630 Walsh Ave. BLD2020-59918_C10 (2)_R.pdf-redacted.pdf
- 2630 Walsh Ave. BLD2020-59918_C10_R.pdf-redacted.pdf
- 2630 Walsh Ave. BLD2012-28535_APP_R.pdf-redacted.pdf
- 2630 Walsh Ave. BLD2021-61717-TCO1_Hre Permit Clearance_R.pdf-redacted.pdf
- 2630 Walsh Ave. BLD2012-29818_APP_R.pdf-redacted.pdf
- 2630 Walsh Ave. BLD2021-61717-TCO1_TCO Request Letter_R.pdf-redacted.pdf
- 2630 Walsh Ave. BLD2014-34635_Permit Extension_R.pdf-redacted.pdf
- 2630 Walsh Ave. BLD2014-34395_CNCL Permit_R.pdf-redacted.pdf
- 2630 Walsh Ave. BLD2014-34395_Permit Extension Email_R.pdf-redacted.pdf
- 2630 Walsh Ave. BLD2014-34726_Extension Email_R.pdf-redacted.pdf
- 2630 Walsh Ave. BLD2014-34931_MISC_R.pdf-redacted.pdf
- 2630 Walsh Ave. BLD2017-48922_Issue Docs_R.pdf-redacted.pdf
- 2630 Walsh Ave. BLD2017-49307_Issue Docs_R.pdf-redacted.pdf

2/02

2ⁿᵈ Declaration & Exhibits | 3:23-CV-04597-EMC

(246 of 261), Page 246 of 261
Case: 25-2028, 05/09/2025, DktEntry: 17.3, Page 246 of 261
Case 3:23-cv-04597-EMC   Document 94   Filed 08/18/24   Page 16 of 18

8/18/24, 9:22 PM                                    Request 22-1148 - NextRequest - Modern FOIA & Public Records Request Software

Skip to main content

Public Record Requests

City of Santa Clara                                                                                              ☰

# Request 22-1148  Closed

## Dates                                              | ## Request

**Received**
October 11, 2022 via web

Hello:

My name is Steve Peck and I work at AEI Consultants and I am working on property condition assessment reports for two properties site located in Santa Clara. I have some building code compliance questions regarding these property sites.

## Staff assigned

**Departments**
*No departments assigned*

**Point of contact**
Stephanie Davis

Property Information:

Site Address 1: 3250 Scott Blvd, Santa Clara, CA 95054

Site Address 2: 3260 Scott Blvd, Santa Clara, CA 95054

**Building Code Compliance Questions**

1.   Are there outstanding **building code** violations associated with the Property? If "Yes", please provide relevant documentation via email.

2.   Are there pending **building code** requirements associated with the Property? If "Yes", briefly explain below.

3.   Are there any recent **building code** administrative actions associated with the Property? If "Yes", briefly explain below.

https://santaclara.nextrequest.com/requests/22-1148                                                                    1/2

---

8/18/24, 9:22 PM                                    Request 22-1148 - NextRequest - Modern FOIA & Public Records Request Software



Show less

**Timeline**    Documents

👁 **Request published**                                          Public
October 19, 2022, 9:34am by Staff

☑ **Request closed** ⌃                                           Public
The City of Santa Clara has released responsive document(s) pursuant to the California Public Records Act and are available for download

8/18/24, 9:22 PM                          Request 22-1149 - NextRequest - Modern FOIA & Public Records Request Software

Skip to main content

Public Record Requests

City of Santa Clara

# Request 22-1149  ☑ Closed

| Dates | | Request |
|---|---|---|
| | | Hello: |

**Dates**

**Received**
October 11, 2022 via web

**Staff assigned**

Departments
*No departments assigned*

Point of contact
Stephanie Davis

**Request**

Hello:

My name is Steve Peck and I work at AEI Consultants and I am working on property condition assessment reports for two properties site located in Santa Clara. I have some fire code compliance questions regarding these property sites.

Property Information:

Site Address 1: 3250 Scott Blvd, Santa Clara, CA 95054

Site Address 2: 3260 Scott Blvd, Santa Clara, CA 95054

**Fire Code Compliance Questions**

1. Are there outstanding **fire code** violations associated with the Property? If "Yes", please provide relevant documentation via email.

2. Are there pending **fire code** requirements associated with the Property? If "Yes", briefly explain.

https://santaclara.nextrequest.com/requests/22-1149                                                    1/2

---

8/18/24, 9:22 PM                          Request 22-1149 - NextRequest - Modern FOIA & Public Records Request Software

3. Are there any recent **fire code** administrative actions associated with the Property? If "Yes", briefly explain.

Show less



| Timeline | Documents |
|---|---|

👁 **Request published**                                                                              Public
October 14, 2022, 8:25am by Staff

☑ **Request closed** ⌃                                                                              Public

# I. Declaration Exhibit I: Gobbler still trying to Access Plaintiff's Account



**EXHIBIT B: Transcript Excerpts from March 1 Hearing**

35

```
 1      communications with Kate as -- in your witness statements.
 2      I actually have those conversations that are being
 3      referenced.  I'm wondering if you would like to hear them?
 4        MR. BLAIR:  Is there a question, Your Honor?
 5        THE COURT:  Yeah, basically right now we're supposed to be
 6      asking your questions that you have specifically for
 7      Ms. Gjovik.
 8  Q.  (By Ms. Scarlett)  Okay.  I guess I'd like to know what
 9      conversations did I have with Kate that you viewed were
10      abusive?  Do you have any particular comments?
11  A.  I don't believe I ever made that allegation.
12  Q.  Okay.  I'm curious then what her testimony has to do with
13      your harassment of me?
14        MR. BLAIR:  Is there a question, Your Honor?
15        THE COURT:  Yes, she asked a -- you can repeat your
16      question.
17  Q.  (By Ms. Scarlett)  My question is:  I'm wondering what Kate
18      Rotondo's testimony has to do with your harassment of me?
19  A.  Kate's testimony -- and I don't want to speak on Kate's
20      behalf, she wrote a very thoughtful witness statement that
21      she should take at her face value.  But she was trying to
22      point out a pattern and practice of not just you harassing
23      us, but as soon as we tried to stand up for ourselves, you
24      began attacking us and saying we were harassing you and
25      trying to cut off communications so we could no longer even
```

*March 1 2022 Transcript: Page 35*

EMR. MOTION FOR. INJ,
CASE NO. 2:22-CV-00807-RAJ-BAT

PO BOX 119 SANTA CLARA, CA 95050
(408) 883-4428

- 9 -

36

1   defend ourselves against your harassment, I believe was the

2   point. And that seems very relevant to this.

3    Your Honor, as my filings included, the judge directions

4   for domestic violence retaliatory litigation, which is what

5   this very much feels like. If not retaliation for the

6   federal charges, it seems like this is the retaliation for

7   me, asking, pleading for Ms. Scarlett to stop harassing me,

8   which she had been since September and instead she switched

9   the offender and victim.

10  Q.  So I wrote you one single email in which I apologized for

11   the two things that I said in one single post. How does

12   that -- you haven't presented anything that I have actually

13   said to be harassment. And when I've asked you -- which

14   again, you just said that I harassed Kate, I have our

15   messages here. She was reTweeting things that you were

16   posting that was defamatory, and I said to her that I

17   blocked her because she was lying about me.

18   MR. BLAIR: Is this a question or is it testimony or

19   argument?

20   MS. SCARLETT: I'm just -- I'm trying to understand how

21   she's both saying that I harassed these other two women,

22   which there is no evidence that I have harassed them, and I

23   have evidence that I was not harassing either of them, and

24   what that has to do with Ms. Gjovik's harassment of me.

25   THE COURT: So what's the --

*March 1 2022 Transcript: Page 36*

EMR. MOTION FOR. INJ,          PO BOX 119 SANTA CLARA, CA 95050
CASE NO. 2:22-CV-00807-RAJ-BAT          (408) 883-4428
- 10 -
ER VIII 252

```
 1              MR. BLAIR:  That sounds like an argument, Your Honor.
 2              THE COURT:  Just tell us the question.
 3     Q.  (By Ms. Scarlett)  Why do you think -- why have you made
 4         statements like that that I am stalking anybody who --
 5         stalking you, coercing you, harassing you, intimidating you,
 6         threatening you, and telling people that bad things will
 7         happen to them if they support you?
 8           Why were you saying that I was harassing, defaming,
 9         swatting, threatening, illegally coercing you to modify
10         federal charges.  Why we were saying -- it should be
11         mentioned that I am currently under investigation by
12         numerous federal agencies and law enforcement for federal
13         witness intimidation and obstruction of justice.
14           Why have you said that I'm in active communication with
15         Apple helping Apple in their campaign of harassment, threats
16         and horror against the safety whistle blower.  Why did you
17         say I'll report you to Apple if I leak Apple's crimes?  Why
18         did you say --
19              MR. BLAIR:  Your Honor, can we have some help here?  I
20         don't know what she's asking.
21              THE COURT:  I just need a question, basically.
22     Q.  (By Ms. Scarlett)  Why do you -- why do you believe that
23         saying these things about me and posting this personal
24         information about me is for a lawful purpose?
25              THE WITNESS:  Your Honor, I'd like to object to this
```

*March 1 2022 Transcript: Page 37*

38

1   question.  She's trying to compel me to testify on my

2   federal charges.

3       THE COURT:  Ma'am, you've got an attorney.  He'll make

4   whatever objections are necessary.

5       MR. BLAIR:  I'm going to object for my client, Your Honor.

6   At this point I don't see a question.  What I hear is an

7   argument.

8       THE COURT:  She asked a question.

9       MR. BLAIR:  That's what I think --

10      THE COURT:  She asked a question and it is -- she wants to

11  know how Ms. Gjovik thinks this serves a lawful purpose.

12      MR. BLAIR:  What serves a lawful purpose?

13      THE COURT:  Her posting the things that she's listed.

14      THE WITNESS:  I'll answer --

15      MR. BLAIR:  Ms. Gjovik, go ahead.

16  A.  Yeah.  These are part of my federal and state charges, which

17      have already met prima facie for subsequent harassment after

18      termination of my time at Apple.

19       I'm hesitant to testify to anything specific because it is

20      part of the ongoing investigation.

21       And I will say, I am single handedly representing myself

22      fighting the biggest company in the entire world with a long

23      history of horrible labor abuses and intimidation of anyone

24      challenging it.  I'm terrified every single day since I

25      started reporting Apple to the government.  I'm terrified

1   for my safety.

8        And rebuttal, Ms. Scarlett.

9        MS. SCARLETT: You know, you said that, you know, your

10       client has the right to post this information because of the

11       First Amendment. But in her testimony, she said that the

12       reason that she did so was because of something that I said

13       publicly that she believed to be a lie, and that was that I

14       said that her retaliatory discharge one is going to be tough

15       to prove because she leaked IP. She actually posted the

16       conversation that I had with her about that leaked IP.

17       And it's hard for me to hear her attorney now argue that

18       she has the right to free speech when she did not give me

19       that right myself.

20       That's it.

21       THE COURT: Okay. Thank you. So give me a minute here.

22       All right. So I've certainly heard the testimony, I've

23       reviewed the documents. Both parties have produced a number

24       of documents and a number of written statements, all of

25       those are incorporated in by this reference, including the

*March 1 2022 Transcript: Page 44*

22       And she told mutuals that because -- I had reached out to a

23       mutual friend at the time -- who is no longer a friend of

24       mine, who has actually provided written testimony in this --

25       that I was concerned because something that Ashley told her

*March 1 2022 Transcript: Page 12-13*

EMR. MOTION FOR. INJ,                                    PO BOX 119 SANTA CLARA, CA 95050
CASE NO. 2:22-CV-00807-RAJ-BAT                                    (408) 883-4428

1    was not what Ashley had communicated to me multiple times,

2    and all I suggested was to protect herself, she reach out

3    and at least ask so that she could say that she did before

4    she published possibly defamatory information about a

5    company that was trying to harm all of us.

6       And after that, I came into this courtroom because it had

7    continued to escalate.  Saying things that I was trying to

8    destroy her, that I was trying to have her swatted, and

9    that's calling emergency services that are armed in order

10   to -- in the hopes of having them physically harmed.  I've

11   never done that.  I would never do that.  Coercing her.

12   Telling her to remove federal charges.  Bullying her.

13   Saying that I'm under investigation by numerous federal

14   agencies and law enforcement.

15      So I wrote her an email after I came to court because

16   ultimately, again, I did not want any of this to harm her

17   career, to harm her, to do further harm to me.  And I wrote

18   this email and I was like, look, here's all these

19   misconceptions that you've heard, here's the reality of

20   them.  And I even apologized for the things that I said that

21   are nothing, you know, just that one comment that I made.

22      And she decided to escalate further instead.  I said that

23   at that point I had no choice but to hire a process server

24   for this proceeding.  And the way that she represented that

25   was that I -- a member of Apple's global security hired

*March 1 2022 Transcript: Page 14*

1   someone to track down and find her at her home and hand her

2   something physically.  So, again, making these statements

3   that are -- not necessarily full on lies, but complete

4   misrepresentations that do nothing but to try to maliciously

5   frame that I have done something that I haven't done.

6      With the NLRB charge -- I'm not bringing up the charge

7   specifically.  I'm talking specifically about Ashley --

8   excuse me, Ms. Gjovik, posting -- publishing these things on

9   a platform called Scribd, which actually removed it for

10  account abuse.  A platform of her website.  These are not

11  government websites that are hosting these, these are things

12  that Ashley -- that Ms. Gjovik is writing herself and

13  publishing herself that she is claiming are related to these

14  federal charges.  But they're really just her, and that's

15  who is publishing this information.  She's just doing it

16  under the guise that it is federally protected.

*March 1 2022 Transcript: Page 15*

9      On January 11th:  "I recommend you send this document

10  retention notice and some sort of cease and desist missive

11  to them now."

*March 1 2022 Transcript: Page 17*

SEE EXHIBIT E

**Exhibit G: Web Host Complaint**

**[8] Web.com Customer Support [OEML-136079]**

From → 🔒 noreply@web.com ☆ 🟩 📎 March 2nd, 2022

To    Ashley Gjovik <ashleygjovik@icloud.com>

Wednesday, March 2nd, 2022 at 6:56 AM

🔴 This email has failed its domain's authentication requirements. It may be spoofed or improperly forwarded! Learn more

# web.com.

Dear Ashley,

Thank you for contacting Web.com. We are committed to assisting people in taking action against fraudulent activity.

Web.com has received the complaint below regarding website activities associated with your domain name ashleygjovik.com. Please take a moment to review the complaint and respond directly to the Complainant to address any issues to resolve the complaint.

From: me@cher.dev

Subject: Inappropriate Content - Child pornography complaint
Domain: ashleygjovik.com
Description: I have a protection order (attached) against the person who owns this domain and posted this document. This disallows her from continuing to post about me and my family, which is the majority of this document.

The file is located here: https://www.ashleygjovik.com/uploads/1/3/7/0/137008339/ashley_gjovik_v_apple_inc_-_intimidation_and_threats_evidence_report.pdf
Attachments: C3E65AB7-5A8C-4865-BA13-349BDF2A9492.jpg,F7A18629-3BA3-485A-B68B-5FE0F7591243.jpg

I hope this information has been helpful. We appreciate your business!

How did the respondent make these statements? ☐ in person ☐ mail/written notes
☐ e-mail ☐ text ☐ phone ☒ social media (such as Facebook and Twitter)
☐ other (describe): _____

**B.** Describe other incidents of harassment or stalking. For <u>each</u> incident, include the date, time (on or about), location, what was said, how statements were made, and what was done to a victim.

because of the monetary value associated with her demands in exchange to stop harassing me. Another friend, Janneke Parrish, also tried to get her to stop, she said she made similar possibly extorting requests to stop.

I also reported her behavior to her University, and to Twitter. Neither of these seems to have deterred her from continuing to engage in the harassment.

On January 11, 2022, she filed an NLRB charge against Apple, Inc, claiming that I was harassing her on Apple's behalf. I have not harassed her. On January 31, 2022, she published a "memo" for that charge containing defamatory and private information about me (and others) on a platform called Scribd. Ordinarily, this information would be redacted and confidential by the NLRB. She has shopped this information around to the press in an attempt to make it public record, for malicious purposes. Much of the information she has reposted is my personal medical information, which I have not given her consent to share.

https://www.scribd.com/document/555822358/US-NLRB-Ashley-Gjovik-Apple-Inc-Jan-10-2022-Charge-Draft-1

https://twitter.com/ashleygjovik/with_replies (there's a lot more here)

https://twitter.com/ashleygjovik/status/1479956961705795585

https://twitter.com/ashleygjovik/status/1480295321284472835

https://twitter.com/ashleygjovik/status/1480326596376477696

https://twitter.com/ashleygjovik/status/1481027837163311104

**6.** How did the incidents you describe above make you, the minor, or the vulnerable adult feel?

I am looking for another place to move to immediately for our safety. I am scared of what she will do if no one stops her. I am afraid of what will happen if her charges are not meritous. I am afraid of this woman and her followers.

**Pt for an Or for Protection – Harassment/Stalking (PTORAH, PTORSTK) – Page 4 of 7**
WPF UHST-02.0200 (07/2019) – RCW 10.14.040, .800, RCW 7.92.030
KCDC July 2019

12. Is there any other litigation between the victim/s and the respondent? This includes all matters - pending or past - such as parenting plans, landlord-tenant disputes, employment disputes, or property disputes. If yes, provide case number/s if known, type of case, and name of court:

> NLRB Charge CA-288816 - charge against Apple, Inc, which contains false/misleading information about me made in bad faith by Ashley Gjovik

## ➤ Requests

**13.** I ask the Court for an order approving the following requests for protection:

I Request an **Order for Protection** following a hearing that will:

| | |
|---|---|
| ☒ **No-Contact**: Restrain the respondent from making any attempts or having any contact, including nonphysical contact, with the person/s to be protected, directly, indirectly, or through third parties regardless of whether those third parties know of the order, except for mailing of court documents. | |
| ☒ **Surveillance**: Prohibit or restrain the respondent from making any attempt to keep or from keeping the person/s to be protected under surveillance, including electronic surveillance. | |
| ☐ **Exclude from places**: Exclude the respondent from the ☐ residence ☐ workplace ☐ school ☐ day care of the person/s to be protected. | |
| ☐ **Stay Away**: Prohibit or restrain the respondent from entering or being within, or from knowingly coming within, or knowingly remaining within _____ (distance) of the ☐ residence ☐ workplace ☐ school ☐ day care of the person/s to be protected. ☐ other locations: _____ | |
| ☐ **Other**: Stop harassment on Twitter and other social media platforms | |
| ☐ **Evaluation**: Order the respondent to have a ☐ mental health ☐ chemical dependency evaluation. ☐ other: _____ | |
| ☒ **Pay Fees and Costs**: Require the respondent to pay fees and costs of this action, which may include administrative court costs and service fees and petitioner's costs including attorneys' fees. | |
| ☐ **Surrender Firearms**: Require the respondent to immediately surrender all firearms, other dangerous weapons, and any concealed pistol licenses, and prohibit the respondent from accessing, obtaining or possessing firearms, or other dangerous weapons, or concealed pistol licenses. | |
| ☒ **Duration**: Remain effective longer than one year because respondent is likely to resume acts of unlawful harassment or stalking conduct against the persons to be protected if the order expires in a year. | |

Pt for an Or for Protection – Harassment/Stalking (PTORAH, PTORSTK) – Page 6 of 7
WPF UHST-02.0200 (07/2019) – RCW 10.14.040, .800, RCW 7.92.030
KCDC July 2019