Case No. 25-2028

In the United States Court of Appeals
For the Ninth Circuit

Ashley M. Gjøvik, *an individual*,

*Plaintiff-Appellant*

v.

Apple Inc., *a corporation*,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Northern District of California
No. 3:23-CV-04597
The Honorable Judge Edward M. Chen

Appellant's Reply in Support of her
Motion for Injunctive Relief
& to Stay Lower Court Proceedings;
& Request for Permission to file Replacement Brief.

**Ashley M. Gjøvik, JD**
*In Propria Persona*
2108 N. St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

i

TABLE OF CONTENTS

**BASIS FOR APPELLATE REVIEW** ......................................... 2

**MERIT & SERIOUS QUESTIONS** ......................................... 3

**IRREPARABLE HARM** ......................................................... 5

**BALANCE & PUBLIC INTEREST** ......................................... 7

**REQUESTED RELIEF** ........................................................... 9

**REQUEST FOR REPLACEMENT BRIEF** ............................. 10

**CONCLUSION** ..................................................................... 10

# REPLY IN SUPPORT OF EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL

This appeal arises from a litigation environment engineered to force dismissal through procedural exhaustion, retaliatory motion practice, and discovery abuse. Apple exposed Gjovik to toxic semiconductor emissions, and toxic waste dump vapor intrusion, then fired her for reporting it—conduct now under investigation by the EPA, NLRB, and other authorities. Since then, Apple has used Rule 12 motions, compelled amendments, contempt threats, gag orders and expansive privilege claims, and an advocate-witness conflict to suppress evidence, silence protected speech and obstruct access to relief.

The district court has enabled this strategy—terminating motions before review, restricting filings to 1.5 pages after coerced "meet-and-confers" with accused counsel, and denying disqualification based on a record Apple's own privilege log now disproves. Apple's own documents—drafted before its sworn termination date—confirms retaliatory intent. This litigation is not operating under the rule of law. It is functioning as a system of attrition, exclusion, and procedural coercion.

Plaintiff-Appellant Ashley Gjovik seeks targeted interim relief to halt that machinery and preserve a path to adjudication. She requests that this Court: (1) stay all further discovery pending appeal unless Apple first obtains leave showing proportionality and necessity; (2) bar Apple and its counsel from enforcing or threatening contempt under any protective-order provisions; (3) direct the district court to proceed immediately to the merits of the existing retaliation claims—summary judgment in 90 days or trial-ready in 120 with a scheduled trial (there current is no schedule). These measures are necessary to protect ongoing whistleblower participation, preserve agency investigations, and ensure this litigation

1

proceeds on a fair, transparent record. Apple cannot be allowed to manufacture complexity, weaponize procedure, and then cite that chaos as a reason to avoid accountability. The Court must intervene now.

## BASIS FOR APPELLATE REVIEW

The Ninth Circuit has jurisdiction to review this appeal under several independently sufficient grounds. First, the district court's orders denying injunctive relief—such as the Oct. 2024 order dismissing the Section 17200 claim, the 2024 denials of CVRA and *Marsy's Law* protections, the February 24 denial of disqualification, the March 11 gag order decision, and the May 14 refusal to stay proceedings—are immediately appealable under *Carson v. American Brands*, 450 U.S. 79 (1981), as practical refusals of injunctions meant to protect Appellant's constitutional rights, safety, and capacity to litigate. Even if interlocutory, review is proper under the All Writs Act (28 U.S.C. § 1651) to preserve this Court's jurisdiction and prevent irreparable harm during appeal.

Second, jurisdiction also lies under the collateral order doctrine. The challenged rulings are conclusive, separate from the merits, and effectively unreviewable post-judgment—especially where rights under Marsy's Law, the CVRA, and civil RICO are at stake. These rulings implicate retaliation, discovery abuse, and obstruction of litigation and agency inquiries. This qualifies for immediate review under *Mohawk Indus. v. Carpenter*, 558 U.S. 100 (2009), and *Padgett v. Wright*, 587 F.3d 983 (9th Cir. 2009).

Third, although the district court denied Rule 54(b) certification, the dismissed claims—especially under the UCL, IIED, toxic torts, and RICO—are legally and factually distinct. Their dismissal functionally ends litigation on separable claims, making them final under 28 U.S.C. § 1291 and reviewable under

2

*Curtiss-Wright Corp. v. General Electric*, 446 U.S. 1 (1980). Alternatively, this Court may exercise pendent appellate jurisdiction where related non-final rulings are *"inextricably intertwined"* with properly appealable orders or necessary to ensure meaningful review. Finally, equitable tolling of appeal deadlines is warranted here. Appellant acted in good faith, sought clarification, and filed timely motions following contested rulings. Under *Thompson v. INS*, 375 U.S. 384 (1964), and related authorities, procedural deadlines should not bar this Court's jurisdiction where serious constitutional questions and irreparable harms are present.

## Merit & Serious Questions

The record presents multiple, independently sufficient grounds for finding serious legal questions and a strong likelihood of success. The agency findings and investigations, Gjovik's research through FOIA and PRA, Apple's production, and newly produced privilege logs all contradict Apple's litigation claims and suggest material misrepresentations to agencies and the court. These facts raise compelling questions under *Reeves*, *Burdine*, and *Carson*, satisfying the first *Winter* prong. See, *Reeves v. Sanderson*, 530 U.S. 133 (2000).

On December 18, 2024, the NLRB's General Counsel issued a Consolidated Complaint (Apple, Gjovik, CPT 32-CA-282142 et al.) charging Apple with: (1) unlawful suspension (Aug 4, 2021), (2) unlawful discharge (Sept 9, 2021), (3) threats for discussing workplace hazards and wages, and (4) maintaining overbroad confidentiality policies. This complaint reflects a formal "*reasonable cause*" finding under 29 U.S.C. § 160. The Ninth Circuit gives "*great weight*" to such agency findings when evaluating preliminary relief. (RJN Vol. II, III).

Apple's own privilege log confirms it circulated "*Urgent Employee Situation*" emails (July 2021), drafted "*witness talking points*" (Aug. 2021), and prepared an

*"Exit Outcomes"* deck (Aug 26 2021)—all before its sworn statement to the DOL that no termination decision was made until Aug 28. That contradiction alone raises serious questions of pretext. Apple told the U.S. Department of Labor it began investigating Plaintiff on August 28, yet internal documents (Dkt 19, Priv. Log.) show coordinated "*exit*" planning began months prior.

Apple repeated the Aug 28 timeline in March 2022 filings, now directly undermined by its own log entries—meeting *Reeves'* standard for inferring pretext. Perry's authorship of termination documents and edits to the investigation summary submitted to OSHA make her a necessary witness under *Optyl Eyewear* and Cal. Rule 3.7. The district court denied disqualification based on an incomplete record; the new evidence confirms the conflict and supports Gjovik's broader likelihood-of-success showing, so now Apple is threatening Gjovik with harm if she refiles.

In 2023-2024, Gjovik filed complaints with the EPA and Bay Area Air Quality Management District. Both agencies substantiated her claims. EPA enforcement reports document nineteen unique violations of the Resource Conservation and Recovery Act (RCRA) at Apple's 3250 Scott Blvd site, including illegal waste treatment, storage, emissions, and transport. This includes hundreds of potential violations of criminal RCRA provisions. Inspection memos from August 2023 and January 2024 confirm Apple concealed health risks and bypassed required monitoring. BAAQMD issued at least six formal violation notices in 2024 for unpermitted systems and emission violations. These findings corroborate Gjovik's protected disclosures and reinforce her claims. (RJN Vol. III).

Gjovik also contacted the DOJ's Victim Services Division in 2023-2024 and was advised that her rights under the Crime Victims' Rights Act (18 U.S.C. § 3771) and Marsy's Law apply, even absent formal charges. She registered with the California Victim Compensation Board in November 2024, affirming her victim

4

status and preparing an application for compensation. (RJN Vol. III).

Further, FBI FOIA records confirm Gjovik's complaints were actively discussed through 2022 (the FOIA response was limited to 50 pages). While redacted, the volume and timing of these records support the conclusion that her disclosures were treated as credible and serious. (RJN Vol. I, III).

International regulators have also opened formal investigations. The French CNIL acknowledged her complaint ( June 21, 2022; No. 22006530) and referred the matter to Ireland under GDPR jurisdiction rules. (RJN Vol. III). The German BfDI confirmed on June 23, 2022 that it escalated her complaint to the Bavarian State Data Authority. (RJN. Vol. III). Apple had stated on a "FAQ" page that its biometric "Gobbler" data collection program violates French and German laws. The credibility and escalation of these international proceedings reinforce the "serious questions" standard and confirm coordinated global scrutiny of Apple's conduct. (RJN Vol. III).

## IRREPARABLE HARM

Apple's litigation strategy inflicts ongoing, irreparable harm by conditioning discovery on speech restrictions, threatening contempt for lawful filings, and shielding critical evidence behind privilege. On May 2, 2025, Apple's counsel warned that further motions "*could result in contempt.*"Courts treat such threats as *per se* irreparable harm. See, *Seattle Times Co. v. Rhinehart*, 467 U.S. 20; *Bernstein v. U.S. Dep't of State*, 922 F.3d 346, 379.

The magistrate's February 19 order compounds this, capping discovery filings at 1.5 pages—enforceable only after Gjovik confers with the very counsel she accuses. These structural conditions silence protected speech, chill whistleblower participation, and block access to judicial review. The Magistrate Judge did allow Gjovik to record Apple during the calls, but who is Gjovik supposed to report

Apple's misconduct to if she can only file 1.5 page joint letters, with Apple? These transcripts were attached at Dkt. 19 as the Ninth Circuit is Gjovik's last hope.

Corroborating this pattern is Dkt 19's Exhibit K (pg276): a declaration from another Apple whistleblower Thomas le Bonniec (a friend of Gjovik), who describes Apple's systemic use of NDAs, secrecy, and legal intimidation to suppress disclosures. He reported similar conduct to regulators, press, and human rights bodies. His testimony confirms this is not some accidental retaliation; it is institutional practice. The conclusion is unavoidable: a protective order now would not just chill speech—it would force Gjovik out of litigation entirely.

The threat of constructive dismissal is not hypothetical. After five end-to-end motions to dismiss, four compelled amendments, sprawling privilege claims, invasive and disproportional discovery requests, abusive discretionary rulings, denials of due process rights. The litigation environment has become intolerable. Further, Apple noticed a deposition for Gjovik on May 30. Gjovik told Apple she wants a protective pause pending the appeal and if Apple wants the deposition as scheduled, they need to file a Motion. Apple has not done this yet, but may be waiting to falsely accuse Gjovik of more manufactured misconduct.

The record further shows that RICO is not a peripheral claim—it is the statute Congress designed to contain enterprise misconduct where traditional remedies fail. As the Supreme Court held in *H.J. Inc. v. Northwestern Bell*, 492 U.S. 229, 243–44 (1989), § 1962(c) addresses coordinated schemes "carried out behind a corporate façade." Apple's retaliation campaign—including coordinated actions by legal, HR, PR, and security teams—is precisely the type of misconduct RICO was meant to reach. Reinstatement of that claim is critical: it allows for aggregate analysis of witness tampering (§ 1512), retaliation (§ 1513), and wire fraud (§ 1343), along with

6

injunctive relief.

Apple argues that Gjovik "*abandoned*" RICO, but the transcript tells a different story. In the May 20, 2024 Order, Judge Chen dismissed Gjovik's RICO claim without prejudice and with leave to amend, but concurrently discouraged Gjovik from repleading RICO. Gjovik complied, and the court later denied leave based on discretionary reasons. This was not abandonment but procedural coercion. Reinstating RICO is essential to present the coordinated misconduct as a single adjudicable theory. *Foman v. Davis*, *Lopez v. Smith*, and *Eminence Capital*.

Apple attempts to dismiss this appeal as based solely on post-filing events, while also claiming those events are irrelevant. The appeal, however, addresses legal errors and discretionary abuses that predate the notice of appeal. What followed—contempt threats, threatened gag orders, and *sua sponte* denial—did not change the legal theory; they confirmed it. Apple's position only highlights the need for immediate intervention. The record establishes that Gjovik is not leaving her case—she is being forced out of it. Without immediate relief, the litigation environment will complete what Apple's retaliation began: the silencing of a whistleblower through exhaustion, obstruction, and compelled retreat. That is irreparable harm, and it is unfolding in real time.

## BALANCE & PUBLIC INTEREST

The balance of equities and public interest overwhelmingly support interim relief. Apple exposed Gjovik to toxic semiconductor emissions—resulting in heart failure, seizures, and lasting harm—then fired her for reporting it. Now, Apple seeks to use procedural tools to finish what retaliation began: silencing a whistleblower through contempt threats, sealed filings, and a proposed gag order.

Apple's objections—typographical errors or formatting in *pro se* filings—are

7

immaterial to the merits and legally irrelevant under *Fed. R. App. P. 2* and *Erickson v. Pardus*, 551 U.S. 89 (2007). Meanwhile, Apple's own tactics—nine Rule 12 motions, four compelled amendments, and an 18-month delay in answering—created the complexity it now invokes to oppose relief. This is not burden—it is self-inflicted obstruction. Under *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113 (9th Cir. 2005), such hardship carries no equitable weight.

 Despite Apple's excessive concerns about Gjovik's motions, Apple has not prevailed on a single one of its substantive motion in full, while Gjovik's early motions succeeded in full and even had a Motion to Strike Apple's Answer granted in part today. Gjovik also only filed motions in response to actions by Apple, until about four months ago. The "pattern" of misconduct that Apple attempts to project onto Gjovik is based on four months, mostly after the appeal was filed, and entirely based on Gjovik's complaints about conflicts of interest, Apple hiding critical evidence, Apple's untenable privilege claims, and Apple's storage and transmission of nude photos of Gjovik – all as supposedly part of Apple's *"ordinary litigation."* Interim relief will not impair Apple's ability to defend itself—it will merely prevent it from using litigation to silence a critic.

 Gjovik is concurrently filing a supplemental Request for Judicial Notice under *Fed. R. Evid. 201(b)(2)* and *201(d)* to address Apple's false assertions that no supporting government complaints or whistleblower recognition exist. Apple devotes significant energy to disputing Gjovik's status as a crime victim, yet simultaneously resists any form of oversight that might prevent unlawful acts. If Apple were not engaged in retaliatory or coercive behavior, the requested injunctive relief would pose no threat to its interests. Its objection only makes sense if it assumes an entitlement to continue the underlying conduct without judicial interference.

8

That posture is incompatible with constitutional protections, agency findings already of record, and the public interest in ensuring whistleblowers are not procedurally driven from the courts where they seek protection.

A supplemental timeline chart is included in the record to assist the Court in contextualizing the scope and chronology of key facts and adjudication/litigation history. The timeline directly rebuts Apple's claim that Plaintiff's motion practice or disclosures arose late or lack substance. This chart does not ask the Court to relitigate each milestone; it invites the Court to see them in context.

## REQUESTED RELIEF

Pending appeal, Appellant respectfully requests targeted interim relief to prevent irreparable harm and preserve the Court's jurisdiction. Specifically, Appellant asks this Court to: (1) stay all depositions, interrogatories, and discovery requests pending appeal; (2) prohibit Apple from seeking or enforcing contempt under any protective-order provision for protected speech or filings; and (3) require Apple to move for leave and demonstrate proportionality under *Fed. R. Civ. P. 26(b)* before initiating any further discovery. This relief is fully authorized by *Rule 26(c)(1)* and the *All Writs Act*, and mirrors precedent in *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988), *Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir. 1981), and *Crawford-El v. Britton*, 523 U.S. 574, 598–600 (1998). Apple's discovery strategy—delayed filings followed by overbroad RFPs and contempt threats—justifies judicial intervention to protect Appellant's constitutional and procedural rights.

Further, Appellant requests that the district court be directed to (a) complete summary judgment briefing within 90 days, or (b) if material facts remain, file trial-ready pretrial submissions within 120 days and set a firm trial date. This process mirrors what the Ninth Circuit endorsed in *Rodriguez v. Robbins*, 715 F.3d 1127, 1145

9

(9th Cir. 2013), and is warranted where the essential facts are already in the record, and further discovery serves only to harass. This request does not waive any claim to broader relief: Appellant continues to seek full relief on appeal as set forth in her Opening Brief—including reinstatement of dismissed claims and disqualification rulings. Should any such claims be restored, Gjovik reserves the right to request full discovery under appropriate procedural guardrails. But the retaliation claims are trial-ready now, and this Court should allow them to proceed on the record Apple has already created. Plaintiff should be able to fundraise enough to cover these near-future expenses, including flying to San Francisco to be present at trial.

### REQUEST FOR REPLACEMENT BRIEF

Plaintiff respectfully notes that she filed her Opening Brief and excerpts on May 6, 2025, based on the briefing deadline set in the Court's March 27, 2025 order. At the time of filing, Plaintiff was unaware that the Court had administratively suspended briefing pursuant to Ninth Circuit Rule 27-11 due to Apple's combined motion to stay or dismiss. The docket did not reflect any updated order or notice staying briefing, and Plaintiff's brief was filed just before the stated deadline. Upon learning from the Clerk's Office on May 19 that briefing is now formally stayed, Plaintiff confirms her intent to file a motion requesting permission to submit a corrected brief—shortened to comply with word and formatting limits—if and when the Court lifts the stay or issues further instruction. Plaintiff appreciates the Court's understanding given the procedural ambiguity and will promptly conform to any guidance provided.

### CONCLUSION

When a litigant must choose between constitutional injury and the ability to

10

survive litigation, withdrawal is not voluntary—it is constructive dismissal. In Ms. Gjovik's case, the denial of injunctive relief, suppression of motions, fragmentation of claims, asymmetric discovery, and the empowerment of conflicted counsel have created a coercive litigation environment that endangers her rights, safety, and capacity to continue. This is not mere difficulty—it is attrition by design. The litigation itself has become an instrument of retaliation. To prevent irreversible harm and preserve the integrity of appellate review, Gjovik respectfully seeks a narrow injunction: a stay on all discovery, a bar on contempt threats under the protective order, resolution of the advocate-witness conflict through document production or withdrawal, and an expedited merits schedule for retaliation claims. These targeted measures preserve the status quo, protect constitutional rights, and ensure that the remaining issues can be resolved on a clean and untainted record.

Dated: May 20 2025

**Ashley M. Gjøvik**
/s/ Ashley M. Gjovik
Pro Se Appellant

11

# GJOVIK V. APPLE

# EXHIBIT

| Civil Litigation | U.S. Exec. Agency Actions | Key Facts/Events |
|---|---|---|
| **2024** | | |
| Jan. - **Apple** files *Motion to Dismiss* (Dkt 41; *Partial Grant*) | | Jan. – **Gjovik** files appeal of U.S. DOL OSHA dismissal finding no CERCLA coverage. |
| Jan. - **Apple** files *Motion to Strike* (Dkt 42; **Denied**) | | April – **Apple** files Motion to Dismiss in U.S. DOL case. |
| March - **Apple** files *Motion to Dismiss* (Dkt 48; *Partial Grant*) | | May – **Apple** files Motion to Stay Discovery in U.S. DOL case. |
| March - **Apple** files *Motion to Strike* (Dkt 49; **Denied**) | | |
| April - **Appleseed** files ex parte *Declaration* (Dkt 62,66; **Stricken**) | | June – **Gjovik** files Motion to Compel Discovery in U.S. DOL case. |
| July - **Apple** files *Motion to Dismiss* (Dkt 78; *Partial Grant*) | Aug. – Cal. BAAQMD inspection of 3250 Scott Blvd finds at least six air violations. | July - **Gjovik** files complaint with BAAQMD (Bay Area Air Board) about Apple's fab. |
| July - **Apple** files *Motion to Strike* (Dkt 79; **Denied**) | Sept. 27 – U.S. NLRB files Complaint against Apple in Case No. 32-CA-284428. | |
| Aug. – **Gjovik** Requests leave to *Supplement Complaint* (Dkt. 93, *Denied*). | | Aug – **Gjovik** files appeal of U.S. DOL OALJ dismissal finding no CERCLA coverage. |
| Aug - **Appleseed** files ex parte *Declaration* (Dkt 99; **Stricken**) | Dec. 18 – U.S. NLRB files Complaint against Apple in Case No. 32-CA-282142, 32-CA-283161 | |
| Oct. – **Gjovik** files *Request for Appeal* (*Denied* by USCA) | | Oct. 17 – **Apple** files "*Answer*" in NLRB Case No. 32-CA-284428 |
| Nov. - **Apple** files *Emergency* Motion to Dismiss Amended Complaint under 41B (Dkt 131; *Granted*) | Dec. 19 - U.S. DOL OSHA releases FOIA request no. documents from *Gjovik v. Apple*). | |
| **2025** | | |
| Jan. 7 - **Apple** files *Motion to Dismiss* (Dkt 145; *Partial Grant*) | | Jan. 2. – **Apple** files "*Answer*" in NLRB Case No. 32-CA-282142, 32-CA-283161 |
| Jan. 31 – **Gjovik** files *Motion to Amend* (Dkt 155); (*Denied*). | | |
| Jan. 31 – **Gjovik** files *Motion to Disqualify* (Dkt 156); (*Denied*). | | |
| Feb 11 – **Gjovik** files request for discovery intervention (162-165); (*Denied*). | | March – **Apple** agrees to settle NLRB Case No. 32-CA-284428 (doesn't tell Gjovik). |
| Feb 26 - **Appleseed** files ex parte *Declaration* (Dkt 176; **Stricken**) | April 2025 – signed trilateral (Gjovik, Apple, U.S. Gov.) national settlement on Gjovik's NLRB Case No. 32-CA-284428. | |
| March 25 – **Gjovik** files Req. for Appeal (Dkt. 190) of Feb. 27 Decision (Dkt. 179; pending). | | |
| March 13 – **Apple** files first "*Answer*" in civil litigation (Dkt 183); (*Partial Dismissal*). | | |
| March 27 – **Gjovik** files *Motion to Strike* Apple's *Answer* (Dkt. 192-193, *Partial Grant*) | | ← **Note: Apple is now complaining of Gjovik's motion practice starting around here-ish, following Apple's five consecutive Motions to Dismiss, which delayed the case roughly seventeen months.** |
| March 27 – **Apple** provides first version of a privilege log. (USCA Dkt. 19). | | |
| May 13 – **Gjovik** files Motion to *Quash* Gag Order (Dkt. 211, *Denied*) | | |
| WE ARE HERE. | | |

| | Civil Litigation | U.S. Exec. Agency Actions | Key Facts/Events |
|---|---|---|---|
| 2020 | | Oct.-Nov. - U.S. EPA & Cal. EPA investigate Gjovik's complaints of chemical hazards near Apple's secret fab. (RJN Vol. III). | Feb. – Oct. - Gjovik lived at Santa Clara Square Apts (across the street from Apple's fab) <br><br> Oct. - Apple provided Gjovik positive performance review with salary increase, bonus, and RSU grants. <br><br> Oct. – Dec. - Gjovik files complaints to the gov. about the chemical exposure (from Apple's fab) |
| 2021 | Summer/Fall. – dozens of "throw-away" social media accounts threaten Gjovik she will be harmed if she files a lawsuit against Apple. (Gjovik's USCA Declr. Dkt. No. 19; USDC Dkt. 155). | July 27 - U.S. EPA orders inspection of Gjovik's office. (USC Compl.; USCA RJN). <br> Late Aug. - U.S. NLRB opens proceeding into Apple. <br> Sept. - U.S. EEOC grants Right to Sue letter. <br> Dec. - U.S. DOL dockets Gjovik's whistleblower case. | March - Gjovik publishes article about fab chem. exposure <br> March – July - **Gjovik** complains about Superfund office <br> Aug. - **Apple** suspends Gjovik <br> Aug. - **Gjovik** files complaints to EEOC, DOL, etc. <br> Aug. - **Apple** retains Orrick to provide counsel on Gjovik. <br> Sept. - **Apple** fires Gjovik |
| 2022 | Jan. 31 – **Appleseed** files gag order lawsuit against Gjovik citing Gjovik's DOJ memo & NLRB charge. <br> March 1 – state court in Washington grants **Appleseed's** request for gag order against Gjovik. <br> June – Gjovik sues state of Washington <br> Sept. – Court of Appeals grants Gjovik's appeal and vacates **Appleseed's** gag order as unconstitutional. | July – Cal. ALJ decides in favor of Gjovik in unemployment insurance appeal against Apple. (USCA RJN Vol. III) | March – **Apple** files position statement to U.S. DOL. (RJN Vol. I, III). <br> June - Gjovik graduates law school. (USDC Compl.) <br> Aug. – **Apple** gets employer to end contract with Gjovik (USDC Compl.). |
| 2023 | Sept. – **Gjovik** files this lawsuit against Apple (Dkt. 1). <br> Nov. - **Apple** files Motion to Dismiss (Dkt. 30; mooted/dismissed) | Jan. - NLRB Issues *Decision of Merit* on Gjovik's claims against Apple (USCA RJN Vol. III) <br> Aug. – 3250 Scott Fab inspection; U.S. EPA finds hundreds of RCRA issues. (USC Dkt. 151; USCA RJN). <br> Dec U.S. DOL OSHA dismisses whistleblower case following inquiry from Sen. Warren about delays. (Compl.) | Feb. - Gjovik learns about Apple's secret semiconductor fab at 3250 Scott Blvd (Compl.) <br> June 22 - **Gjovik** files complaint about Apple's illegal semiconductor fab at 3250 Scott Blvd (Compl.; RJN Vol. III) |

| | Civil Litigation | U.S. Exec. Agency Actions | Key Facts/Events |
|---|---|---|---|
| 2015 | | | **Feb. 23 - Gjovik Started Employment at Apple**<br>Summer/Fall - Apple renovates and moves employees into 825 Stewart Dr., the TRW Microwave Superfund site.<br>Summer/Fall - Apple starts operations at 3250 Scott Blvd.. (USDC Compl.) |
| 2016 | | May – U.S. EPA sends notice of CERCLA obligations to owner/leaser for 825 Stewart Dr. (USDC Compl.)<br>Dec - Cal. DTSC Settlement & five-year Consent Agreement re: toxic waste violations at Apple facilities | Events underlaying Batterygate. Gjovik reports unlawful retaliation due to her protected activity and disclosures related to Batterygate (Gjovik's Declr. Dkt. No. 19). |
| 2017 | | | Gjovik transfers to Apple Hardware Engineering. (USDC Compl.)<br>Apple installs "Gobbler" on Gjovik's mobile devices. (USDC Complaint).<br>Apple provides Gjovik positive performance review with salary increase, bonus, and RSU grants. (USDC Compl.) |
| 2018 | Apple notifies Gjovik of litigation hold in Batterygate lawsuit / DOJ probe. (USCA Declr.) | DOJ Batterygate Probe (USDC Compl.; Motion to Amend Dkt. 155). | Apple provides Gjovik positive performance review with salary increase, bonus, and RSU grants. (USDC Compl.)<br>Apple promotes Gjovik to *Senior* position. (USDC Compl.)<br>Gjovik starts law school, part-time evening program. (USDC Compl.) |
| 2019 | Gjovik complaints to bosses about Batterygate-related intimidation by Apple counsel. (Compl.; Motion to Amend Dkt 155). | | Gjovik takes rotation in Apple Software Products Legal leading Apple's initiative to create an AI ethics policy. (USDC Compl.)<br>Apple provides Gjovik positive performance review with salary increase, bonus, and RSU grants. (USDC Compl.) |