CASE NO. 25-2028

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

ASHLEY M. GJØVIK, *an individual*,

*Plaintiff-Appellant*

v.

APPLE INC., *a corporation*,

*Defendant-Appellee.*

On Appeal from the United States District Court

for the Northern District of California

No. 3:23-CV-04597

The Honorable Judge Edward M. Chen

---

## APPELLANT'S REQUEST FOR JUDICIAL NOTICE

---

**Ashley M. Gjøvik, JD**
*In Propria Persona*
2108 N. St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

TABLE OF CONTENTS

**REQUEST FOR JUDICIAL NOTICE** .................................... 3

**LEGAL STANDARD** ..................................................... 4

**BASIS FOR REQUEST** .................................................. 4

   I.      VOLUME I – VIOLENCE, RETALIATION & SURVEILLANCE .........5

   II.     VOLUME II – PRESS RECOGNITION & PUBLIC INTEREST ........ 6

   III.    VOLUME III – FORMAL COMPLAINTS & GOVERNMENT

   PROCEEDINGS ...........................................................7

   IV.    VOLUME IV– CASE MANAGEMENT & JUDICIAL RECORD ......7

**REBUTTAL TO APPLE'S OPPOSITION (DKT. 25-1)** .............. 9

**CONCLUSION** ........................................................... 11

**ATTACHED EXHIBITS** ................................................. 12

## REQUEST FOR JUDICIAL NOTICE

Pursuant to Federal Rules of Evidence 201(b)(2) and (d), Appellant Ashley Gjovik, respectfully requests that the Court take judicial notice of public documents, government agency findings, administrative filings, third-party press coverage, and institutional publications included in the accompanying appendix (Exhibits I–IV). These materials rebut false factual claims made by Apple in its May 17, 2025 opposition brief and are essential to ensure that the record before this Court reflects the true scope of Gjovik's disclosures, agency actions, and ongoing harm.

The documents are all either official records, publicly accessible filings, or published reports whose authenticity cannot reasonably be questioned. Each supports the core issues raised in Appellant's motion for emergency relief, including irreparable harm, whistleblower retaliation, prior restraint, procedural coercion, and the need for a protective injunction.

As an overwhelmed and disabled *pro se* litigant, Gjovik acknowledges the risk that her filings may be imperfect in form and does not presume to fully understand appellate procedure at the level of experienced counsel. That said, in preparing this reply and supporting materials, my priority has been to ensure that the Court has sufficient access to the facts, evidence, and context necessary to reach an informed and just decision.

I understand that the Court is not obligated to review every document I've

submitted, but my intent has been to make the record as complete and accessible as possible—particularly if the Court wishes to grant relief and needs a legally sufficient basis to do so. The volume of exhibits reflects the complexity of the issues and Apple's extensive factual denials, not a desire to burden the docket. I respectfully ask the Court to consider what is helpful and disregard what is not, and I will comply with any further instruction the Court may give.

## LEGAL STANDARD

Under Federal Rule of Evidence 201(b)(2), a court may take judicial notice of a fact that "*can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.*" Public agency records, government reports, administrative filings, and mainstream press publications fall squarely within this rule. Judicial notice is also appropriate under Rule 201(d) at any stage of the proceeding, including in reply, particularly where the opposing party has introduced factual misrepresentations that risk distorting the record. See, e.g., *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001); *U.S. ex rel. Dingle v. BioPort Corp.*, 270 F. Supp. 2d 968, 972 (W.D. Mich. 2003) (noticing SEC and agency disclosures); *Fed. Trade Comm'n v. Qualcomm Inc.*, 969 F.3d 974, 980 n.2 (9th Cir. 2020).

## BASIS FOR REQUEST

Gjovik respectfully submits this Request for Judicial Notice under *Federal Rules of Evidence 201(b)(2)* and *201(d)*, in support of her concurrently filed reply brief.

This request addresses factual misstatements made in Apple's May 2025 opposition (Dkt. 25-1), including its denial that Plaintiff has suffered retaliation, intimidation, or coercion in connection with this litigation or her protected disclosures, and that Gjovik's complaints about unlawful intimidation and other misconduct are too vague.

Apple's Opposition repeatedly claims that Appellant failed to provide evidence of her protected activity, regulatory complaints, or victim status. It simultaneously argues that Appellant′s attached exhibits are too voluminous, too detailed, or too late—despite being a necessary rebuttal to Apple's own factual distortions. Appellant is left with no choice but to seek judicial notice of key agency records, legal pleadings, and government filings that:

1. Pre-date her termination and rebut Apple's procedural defenses,
2. Confirm regulatory action or formal recognition of her complaints,
3. Validate Appellant's standing under whistleblower and crime victim statutes, and
4. Demonstrate that the district court's refusal to consider this material, but concurrently consider Apple's requests to dismiss based on discretionary arguments, prejudiced Appellant's rights.

Appellant will file this request concurrently with her reply brief.

## I. VOLUME I – VIOLENCE, RETALIATION & SURVEILLANCE

This set includes law enforcement reports, communications with the Santa

5

Clara DA, FOIA-confirmed FBI interest, and internal Apple surveillance data. These documents corroborate Plaintiff's allegations of stalking, harassment, surveillance, and threats—all dismissed by Apple in its opposition as "*speculative*" or "*exaggerated*." The exhibits show a credible pattern of conduct requiring injunctive relief. It's not a question of if they are doing it, but instead if anyone will stop them.

## II.  VOLUME II – PRESS RECOGNITION & PUBLIC INTEREST

Apple's opposition claims that there is "*no authority*" recognizing Appellant as a crime victim or whistleblower, and that her allegations are unsupported by agency findings or public record. These statements are demonstrably false and appear to be advanced to undermine Appellant's credibility and obstruct appellate review. Accordingly, Appellant requests that this Court take judicial notice of the following categories of materials. Appellant's disclosures and Apple's retaliation have been covered extensively by:

- The Financial Times, including front-page coverage,
- Oxford University Press, as a business ethics case study in a textbook,
- Magazines including Der Spiegel, Télérama, and Index on Censorship,
- LegalTemplates.com, which analyzes her case as an example of lawful NDA breach because she was reporting Apple's criminal conduct.

Gjovik is a globally recognized whistleblower. Over the last couple of years, Gjovik also served as the Whistleblowing Officer for the International Bar Association's Anti-Corruption Compliance subcommittee, demonstrating she is also recognized

6

for her deep understanding of the processes of whistleblowing and retaliation, in addition to recognition of her own personal experience and disclosures.

## III.  VOLUME III – FORMAL COMPLAINTS & GOVERNMENT PROCEEDINGS

This volume compiles federal, state, and international filings documenting that Plaintiff's disclosures were not only received but formally acted upon by multiple government entities. Included are:

- The NLRB General Counsel's reasonable-cause complaint finding unlawful suspension and discharge,
- Plaintiff's 2024 registration as a crime victim with the California Victim Compensation Board (CalVCB),
- Her successful unemployment insurance appeal affirming that she was not discharged for cause,
- Filed complaints and acknowledgments from the DOJ, FTC, SEC, and DOL,
- Verified environmental violations substantiating Plaintiff's EPA and BAAQMD complaints,
- Acknowledgments of GDPR-related investigations by CNIL (France) and BfDI (Germany).

These exhibits collectively demonstrate that Plaintiff's whistleblower disclosures were credible, actionable, and materially supported by administrative findings and regulatory activity. Apple's assertion that no authority deems Plaintiff a whistleblower or crime victim is flatly contradicted by these records.

## IV.  VOLUME IV– CASE MANAGEMENT & JUDICIAL RECORD

7

This volume contains official, jointly submitted Case Management Statements (Dkts. 77, 97, 166) and the July 16, 2024 hearing transcript (Dkt. 88), all part of the existing district court docket. These materials are essential because they directly refute Apple's claim in its opposition brief that Gjovik failed to preserve or raise arguments regarding disqualification, procedural coercion, discovery abuse, and the need for injunctive relief.

The statements show that Gjovik repeatedly and clearly raised each of these issues, months before the current appeal was filed, and did so through formal docketed filings Apple itself signed. For example, the August 2024 joint statement notes Plaintiff's plan to move to Magistrate Judge Westmore over improper privilege redactions and withheld witnesses. The February 2025 statement confirms Plaintiff had filed formal discovery intervention requests (Dkts. 162–165) and described the conflict of interest posed by defense counsel's authorship of exit planning documents.

The July 2024 hearing transcript (Dkt. 88) further confirms these disputes were active and unresolved. The plaintiff directly raised her concerns about discovery coercion and protective order misuse, which the district court responded to by considering restrictions and assigning a discovery magistrate. These proceedings—initiated well before the notice of appeal—establish that Plaintiff properly preserved the issues now before the Court, and that Apple's contrary

8

assertions are not just mistaken but contradicted by Apple's own signed court statements. Judicial notice is therefore appropriate to confirm the historical record and prevent factual misrepresentations from shaping the Court's understanding of the issues under review.

### REBUTTAL TO APPLE'S OPPOSITION (DKT. 25-1)

Apple asserts, without basis, that no evidence supports Gjovik's accusations of harassment or intimidation, that *nothing indicates Apple retaliated*, and that the record contains only "*routine discovery disputes*." (Dkt. 25-1 at 6, 12–13).

These statements are false and refuted by the contemporaneous records contained in Exhibit A, submitted with this request. The attached document contains verified, dated communications authored by Appellant, contemporaneously describing escalating fear, surveillance, interference with federal filings, and contact with law enforcement authorities — including emails to the District Attorney and multiple public safety officials regarding safety threats, stalking, and fears of coercive retaliation. These records were written in real time and preserved as part of her documented whistleblower timeline. Apple asserts that:

- Plaintiff has no agency support (note: this is actually part of her RICO claim).
- She is "*not a crime victim,*"
- Her disclosures are not credible,
- She is "*self-declared*" as a whistleblower,
- Her evidence is "*voluminous and irrelevant.*"

9

Each of these assertions is factually false and contradicted by judicially noticeable records in Exhibits I–IV. Apple cannot deny agency actions, media recognition, and third-party investigations while simultaneously complaining that evidence of those same facts is "*too voluminous.*" Plaintiff is not expanding the record out of excess— she is correcting Apple's deliberate omissions.

This evidence also directly supports Appellant's arguments concerning standing under the Crime Victims' Rights Act (CVRA) and *Marsy's Law,* the pattern of retaliation subject to RICO analysis, the credibility of Appellant's disclosures, and the public interest in injunctive relief. Moreover, Apple's strategic claim that such materials "*do not exist,*" followed by its objection to their inclusion on grounds of volume or length, creates a factual vacuum that only judicial notice can correct. The court may not want to read all of these records, but Gjovik wants to ensure the court knows the record exist.

Further, the documents submitted across all four volumes of this Request for Judicial Notice do more than correct Apple's misstatements — they prove the very misconduct at the heart of this appeal. Apple claims that Plaintiff's whistleblower status is unsupported, that her agency complaints are fabricated, that her procedural objections are new, and that her retaliation claims lack foundation.

Yet the filings in Volumes I through IV—ranging from government enforcement records, international regulatory correspondence, agency complaints,

10

hearing transcripts, and Apple's own signed court filings—contradict each of these claims with precision. And in exposing Apple's factual misrepresentations to this Court, Plaintiff simultaneously proves the pattern of retaliatory litigation, procedural distortion, and evidentiary concealment she has alleged from the beginning. Apple's denials are not simply wrong, they are evidence. Each misstatement in its Opposition brief reinforces Plaintiff's showing of ongoing misconduct, the need for judicial intervention, and the urgency of preserving constitutional rights during appeal.

## CONCLUSION

For the foregoing reasons, Appellant respectfully requests that the Court take judicial notice of the documents to be submitted concurrently with this filing, consistent with Fed. R. Evid. 201(b)–(d) and applicable Ninth Circuit precedent. The Court is entitled to a clear and complete record. These exhibits are admissible, accurate, and essential to understanding the legal, procedural, and public context of this appeal. Appellant respectfully requests that the Court take judicial notice.

Dated: May 20 2025

**Ashley M. Gjøvik**
/s/ Ashley M. Gjovik
Pro Se Appellant

11

## ATTACHED EXHIBITS

| Ex. | Title / Source | Relevance to Motion & Apple's Opposition |
|---|---|---|
| I-A | **Emails with Santa Clara DA** | Confirm that Plaintiff's reports of retaliation and stalking were formally conveyed to prosecutors. Rebuts Apple's claim that Plaintiff "fabricated" claims of criminal concern. |
| I-B | **Santa Clara Police Report** | Law enforcement documentation of targeted harassment, break-in attempts, and surveillance. Supports irreparable harm and physical safety risk claims. |
| I-C | **Second Amended Complaints excerpts.** | Pleads retaliatory surveillance, health consequences, and stalking; confirms claims were raised early and consistently. Apple says claims evolved late—this disproves that. |
| I-D | **3250 Scott Blvd public records** | EPA records confirm RCRA violations at Apple's site linked to Plaintiff's exposure. Supports retaliation motive and CERCLA relevance. |
| I-E | **Apple's U.S. DOL Position statement** | Apple falsely asserted no action occurred until August 28; document is contradicted by its own internal records. Goes to pretext under Reeves. |
| I-F | **825 Stewart Drive public records** | Documents hazardous operations at a second Apple site relevant to Plaintiff's job responsibilities. Apple's denial of safety risks is disproven. |
| I-G | **Public contemporaneous comments about break-ins, hacking, and stalking.** | Demonstrates real-time disclosures of hacking, tracking, and retaliation. Undercuts Apple's theory of post hoc fabrication. |
| I-H | **FBI FOIA documents** | While heavily redacted, confirms DOJ and FBI were discussing Plaintiff's disclosures and complaints internally. Supports CVRA and DOJ reporting elements. |
| I-I | | This exhibit contains documentary evidence related to Joanna Appleseed, a former Apple Legal & Global Security employee. Apple now claims that Appleseed's conduct is |

| Ex. | TITLE / SOURCE | RELEVANCE TO MOTION & APPLE'S OPPOSITION |
|---|---|---|
| | **Records related to Joanna Appleseed**<br><br>*(Note: I still don't say her name since it was literally illegal for me to write/say for over six months in 2022 and I have severe PTSD from the experience).* | "irrelevant" to this litigation—but Apple simultaneously admits that the alleged basis for Plaintiff's termination was a set of personal images of Gjovik's body, including of her bare chest, sent by Appleseed to Apple's lawyers while Appleseed still worked for Apple (reporting under General Counsel), and which Apple received after Plaintiff was fired and used as a "official" post-hoc justification for terminating Gjovik during the U.S. DOL proceeding. Appleseed was apparently the only witness to be interviewed by U.S. DOL in the entire *Gjovik v. Apple* whistleblower investigation.<br><br>Appleseed's communications show that she helped Apple manufacture the post hoc justification for termination while under Apple's authority. These actions—performed in active coordination with Apple Legal—are plainly within the scope of her employment or, at minimum, the scope of Apple's RICO enterprise.<br><br>After leaving Apple, Appleseed escalated retaliatory conduct: she threatened Plaintiff over protected disclosures, attempted to coerce Gjovik into withdrawing Gjovik's NLRB complaint and DOJ witness-tampering report, sued Gjovik in a state local court in a state where Gjovik does not live to get a five-year gag order against Gjovik (which was vacated upon appeal as a gross violation of the U.S. Constitution), and Appleseed filed civil proceedings in this Circuit designed to gag Plaintiff and criminalize future speech.<br><br>Apple now uses Appleseed's assistance in developing the pretextual excuse for firing Gjovik, as both a sword and shield: arguing that Gjovik may not speak of the retaliation (and asking for a second gag order), while invoking it as a |

13

| Ex. | Title / Source | Relevance to Motion & Apple's Opposition |
|---|---|---|
| | | "legitimate basis" for discharge. |
| | | Judicial notice is proper because this exhibit disproves Apple's denials, exposes a retaliatory chain of custody, and confirms why First Amendment and Due Process protections are urgently required. |
| II-A | Oxford University Press – Foundations of Business | Treats Gjovik as a case study in whistleblowing and retaliation. Cited in business ethics education, formal recognition of whistleblower status. Refutes Apple's "self-declared" whistleblower argument. |
| II-B | Financial Times (Sept 2021) | Documents NLRB and EPA action following Gjovik's disclosures. Cites toxic exposure and exit-plan retaliation. Confirms agency activity. |
| II-C | Financial Times (Dec 2021) | Front-page coverage of Apple employee surveillance. Establishes the Gobbler surveillance tool as public knowledge. Counters Apple's attempt to gag under protective order. |
| II-D | The Register (Apr 2025) | Covers NLRB settlement stemming from Plaintiff's complaints. Undermines Apple's claim that "no court or agency has found misconduct." |
| II-E | Index on Censorship (Journal) | Describes systemic efforts to silence Plaintiff and chill disclosures. Affirms public concern and legal interest. |
| II-F | Westlaw Legal Journal – WJEMP | Outlines legal changes prompted by the NLRB ruling. Shows her case as precedent-setting. |
| II-G | Der Spiegel (Germany) | Investigative piece highlighting Apple's biometric surveillance. Includes Gobbler references. Confirms transnational concern. |
| II-H | Télérama (France) | French regulatory and public scrutiny. Cites GDPR violate risk, invasions of privacy, whistleblower disclosures, and retaliation. |

14

| Ex. | Title / Source | Relevance to Motion & Apple's Opposition |
|---|---|---|
| II-I | **LegalTemplates.com (2023)** | Uses Gjovik's NDA dispute as a legal case study. Supports argument that Plaintiff had a good-faith belief in the legality of disclosures. |
| II-J | **LegalTemplates.com (2024)** | Analyzes how whistleblowers like Gjovik are protected from retaliatory NDAs; uses Gjovik as a case study. Useful to rebut Apple's claim she misused confidentiality. |
| II-K | **The Telegraph (April 2022)** | Discusses Apple's retaliatory acts and workplace exposure. Corroborates health and psychological harm claims. |
| II-L | **The Telegraph (May 2022)** | Continues reporting on retaliation and NDAs. Links Plaintiff's case to broader labor and tech industry retaliation issues. |
| II-M | **TechCrunch / Yahoo News** | National coverage of the federal investigations following disclosures. Undermines Apple's claim of "no consequences" or "self-created narrative." |
| II-N | **Biometrics Update** | Confirms Apple used biometric tools to surveil employees, including the Gobbler tool. Reinforces First Amendment, privacy, and due process concerns. |
| III-A | **NLRB General Counsel Complaint (Dec. 2024)** | Confirms reasonable cause finding that Apple unlawfully suspended and terminated Plaintiff. Rebuts Apple's denial of retaliation. |
| III-B | **CalVCB Acknowledgment & Registration** | Confirms Plaintiff's formal designation as a **crime victim**—directly contradicting Apple's claim she is "not a crime victim." |
| III-C | **California UIAB Decision (July 2022)** | The administrative law judge ruled Plaintiff was not fired for misconduct. Impeaches Apple's claims about lawful discharge. |
| III-D | **U.S. FTC Whistleblower Submission Receipt** | Proves federal protected disclosures. Refutes Apple's claim that Plaintiff lacks qualifying whistleblower activity. |

15

| Ex. | Title / Source | Relevance to Motion & Apple's Opposition |
|---|---|---|
| III-E | California DOJ Inquiry Acknowledgment | Demonstrates active government concern with retaliation and safety issues raised by Plaintiff. |
| III-F | Cease and Desist Letters from Plaintiff to Apple (Aug–Sept 2021) | Establishes contemporaneous notice of retaliation. Counters Apple's argument about lack of notice or protected activity. |
| III-G | OSHA Complaint Filed by Plaintiff | Shows protected safety complaints, directly tied to workplace conditions Apple now says were not raised. |
| III-F | U.S. SEC Whistleblower Submission | Reinforces federal protected activity and damages credibility of Apple's assertion that claims are speculative or unfounded. |
| III-G | Cal DOL Labor Commissioner Filing (Aug 29, 2021) | Submitted before Plaintiff's termination, proving protected activity. Apple falsely states no pre-firing complaints were filed. |
| III-H | Bay Area AQMD Violation Notices (2024) | Confirms Plaintiff's environmental disclosures were valid. Undermines Apple's effort to dismiss retaliation as baseless. |
| III-I | French CNIL Acknowledgment Letter (June 2022) | Confirms international inquiry and credibility of data/privacy violations, bolstering whistleblower claims. |
| III-J | German BfDI Escalation Email (June 2022) | Supports claim of widespread concern over Apple's conduct—Apple says claims are meritless; this shows otherwise. |
| III-K | U.S. DOJ NCDF Submission Receipt | Demonstrates Plaintiff is recognized as reporting possible federal crimes—key to CVRA and retaliation claims. |
| III-L | EPA RCRA Violation Report for 3250 Scott Blvd (2023–24) | Supports claims about chemical exposure. Contradicts Apple's assertion that Plaintiff's health concerns were not valid. |

16

| Ex. | Title / Source | Relevance to Motion & Apple's Opposition |
|---|---|---|
| III-M | EPA CERCLA Inquiries at 825 Stewart Drive (2023–24) | Validates Plaintiff's Superfund complaints. Reinforces factual basis for retaliation. |
| III-N | California DTSC Settlement Referencing Apple Site | Supports pattern of environmental concern around Apple sites. Disproves Apple's portrayal of Plaintiff's allegations as extreme. |
| III-O | NLRB Complaints Filed by Plaintiff | Rebut Apple's claim that filings were "*afterthoughts*." Demonstrates a consistent chain of protected activity. |
| III-P | Apple's NLRB Answer Acknowledging Termination Date and Events | Apple confirms date and sequence of events—undermines its own procedural objections in Opposition brief. |
| III-Q | U.S. DOL Whistleblower Case Docket | Confirms the current scope of U.S. Dept. of Labor case, which included SOX whistleblower protection, a claim abruptly dismissed in this case under unusual procedure. |
| III-R | June 2023 Complaint to US EPA | Shows Gjovik was the whistleblower who's disclosures triggered formal U.S. EPA inspections and investigations at the semiconductor fab. |
| III-S | Fifth Amended Complaint (Operative Pleading, Nov 2024) | Explicitly pleads retaliation under U.S. Code and Cal. Labor Code (crime victim retaliation) Apple's opposition never challenges this. |
| IV-A | Joint Case Mgmt. Statement Dkt 77 (July 9 2024). | This document includes Plaintiff's detailed discussion of (1) retaliation and whistleblower status, (2) active complaints with multiple federal agencies including the EPA and DOJ, and (3) Apple's threatened contempt sanctions over protected filings. Plaintiff proposes tailored injunctive relief including a discovery stay and phased merits schedule — |

17

| Ex. | Title / Source | Relevance to Motion & Apple's Opposition |
|---|---|---|
| | | directly rebutting Apple's claim that Plaintiff never sought such relief below. |
| IV-B | **Hearing Transcripts (Dkt 88; July 16 2024).** | This transcript captures Plaintiff's objections to Apple's misconduct, her concerns about sealed gag litigation, and the Court's refusal to hear certain procedural disputes. Apple inaccurately claims the litigation was proceeding normally and that Plaintiff only recently raised retaliation and coercion. This hearing transcript shows those issues were already before the court and that Apple was actively resisting discovery and suppressing evidence. |
| IV-C | **Joint Case Mgmt. Statement Dkt 97 (Aug. 20 2024).** | This document confirms Apple's refusal to produce privilege logs, documents about Plaintiff's termination, and materials regarding other whistleblowers. Plaintiff raised RICO issues, retaliation under environmental law, and renewed concerns about protective orders and access to the court. These issues are central to the current appeal and directly contradict Apple's claim that these matters arose after the notice of appeal. |
| IV-D | **Joint Case Mgmt. Statement Dkt 166 (Feb. 11 2025).** | Filed just before the current appeal, this document shows Plaintiff again objecting to the use of contempt threats to force a protective order, reiterating claims of retaliation and prior restraint, and explaining ongoing agency coordination. Apple's argument that the issues on appeal are "new" is directly impeached by its own signature on this joint statement. |

18