# Gjovik v. Apple

## Exhibit: I
### Appleseed
Pages 146-307

675.    On December 7 2022, Gjovik's appellate win against Appleseed was cited in a SCOTUS brief filed by EFF in *Barton v Texas*.[268] On December 12 2022, the Washington state court ordered the prior decision and order against Gjovik to be vacated and the case against Gjovik dismissed. Even with the legal wins, it was still mortifying the press coverage and Appleseed's comments continued to give basis to Gjovik being some sort of bad actor. Appleseed also harassed Gjovik even more.

676.    On December 30 2022, US FTC confirmed they received Gjovik's complaint about Apple's Face Gobbler and Ear Scans and provided Gjovik a report tracking number.

677.    On January 11 2023, Gjovik reviewed the most recent Five-Year Report for the Synertek Superfund site next to 3250 Scott Blvd and emailed some questions and concerns to the US EPA contacts for the site (Edwin Poalinelli and Fatmina Ty). Gjovik asked why 3250 Scott Blvd was skipped when EPA ordered vapor intrusion testing in all other buildings on the plume. US EPA never responded. Gjovik started investigating 3250 Scott Blvd through public records requests. Gjovik also discovered that US EPA, Honeywell, and Irvine Company had "lost" a Superfund groundwater monitoring well somewhere under the apartment complex when it was built around 2018.

678.    On January 20 2023, US EPA told Northrop Grumman to plan to do vapor intrusion testing at Gjovik's office in March 2023. Apple still had not done it for over 7 years.

679.    On January 23 2023, US DOL suddenly wanted to meet with Gjovik to discuss her case. Gjovik asked to record the call due to her concerns about their prior misconduct. US DOL agreed. On January 26 2023, Gjovik met with US DOL and Captain Parra, was a surprise participant again. The call lasted around three hours and Parra tried to intimidate Gjovik again

---

[268] *Barton v State of Texas*, On Petition for Writ of Certiorari to the Supreme Court of the United States, Brief of Amicus Curiae Electronic Frontier Foundation, Eugene Volokh as Counsel of Record, pg10-12 "*Criticism of Political Activists*" (Dec 7 2022). https://www.supremecourt.gov/DocketPDF/22/22-430/249364/20221207141747388_22-430%20Amicus%20Electronic%20Frontier%20Foundation.pdf

SECOND AMENDED COMPLAINT | 3:23-CV-04597-EMC                    DECEMBER 21 2023

1   and refused to allow her to 'object' to inaccurate statements. Parra claimed the call was

2   completely off the record. Parra eventually acknowledged that US DOL did not actually

3   investigate Gjovik's claims or evidence, and agreed to go back and do it now

4       680.    On January 23 2023, after the retaliatory lawsuit against Gjovik was already

5   dismissed and vacated, Appleseed then filed another document in which she accused Gjovik of a

6   variety of torts (defamation, harassment) and criminal acts (criminal wiretapping, perjury),

7   threatened to report Gjovik to the Bar Association, and threatened to sue Gjovik again.[269] The

8   next day Appleseed posted on Twitter about Gjovik, with some of the language as her legal

9   filing: *"If you lack the moral fortitude to admit that you misrepresented, omitted, misquoted, or*

10  *otherwise altered facts to exaggerate and fit a narrative… sincerely, don't bother engaging in*

11

12  *the public space. You will eventually be hit with a boomerang of your own making."*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[269]

SECOND AMENDED COMPLAINT | 3:23-CV-04597-EMC                    DECEMBER 21 2023

If you lack the moral fortitude to admit that you misrepresented, omitted, misquoted, or otherwise altered facts to exaggerate and fit a narrative... sincerely, don't bother engaging in the public space.

You will eventually be hit with a boomerang of your own making.



2:44 AM · Jan 24, 2023 · **2,356** Views

*Exhibit: Boomerang Post*

681.    On January 24 2023, Appleseed replied to the post above and added "*A YEAR OF THIS [EXPLETIVE] A YEARRRRRRRRRR*". (sic) Appleseed filed the lawsuit against Gjovik on January 31 2022 (a year prior) and was clearly referring to Gjovik and threatening her with being "*hit*" if she did not leave "*the public space.*"

682.    On Thursday January 26 2023, NLRB held a video conference with Gjovik to inform her they found merit in her charges against Apple about Apple's NDAs and Tim Cook's email. NLRB asked Gjovik not to tell anyone until they could also inform Apple and then send a formal email. Gjovik did not post anything about it but assumably Apple was also informed on January 26, or else on Friday January 27 2023.

SECOND AMENDED COMPLAINT | 3:23-CV-04597-EMC                    DECEMBER 21 2023

683.    On January 27 2023, Appleseed posted on Twitter about Gjovik's government cases and complaints again saying her posts were initiated due to "*just [finding] out [Gjovik's] OSHA case tries to use [her] as the Apple scapegoat with a mountain of deceit and good god [she is] sick of this [expletive]."* She claimed Gjovik was "*try[ing] to use other victims as leverage*" and "*center[ing her] conspiracy theory around them.*" She said it was "*indefensible*" and "*unconscionable,*" and said she has "*never been so disappointed in another human in [her] entire life.*" A blogger commented on her thread about Gjovik asking her if she watched a recent interview a YouTuber did with Gjovik, and Appleseed said no, that it was "*nothing substantive*", and "*hopefully Apple doesn't go after the host for whatever [Gjovik] said.*"

684.    In January 29 2023, the NLRB sent Gjovik an email stating they found merit in two of Gjovik's charges against Apple's employment policies, including their NDAs and surveillance practices.[270]   NLRB that "*various work rules, handbook rules, and confidentiality rules at Apple*" are unlawful because they "*reasonably tend to interfere with, restrain, or coerce employees*" [271] In addition, the agency "*found merit to a charge alleging statements and conduct by Apple — including high-level executives — also violated the National Labor Relations Act.*"[272] The press covered the decision of merit.

685.    On January 31 2023 until February 10 2023, Appleseed edited the Wikipedia article about Gjovik and other articles referencing Gjovik, including adding Gjovik to the "TRW Microwave" company page in a new Superfund site section. Wikipedia caught her and banned her again on February 11 2023. Prior to the latest ban, Appleseed made edits about Gjovik's Superfund office and workplace safety concerns, removed mention of Gjovik fainting at her

---

[270] *Apple Executives Violated Worker Rights, Labor Officials Say*, Bloomberg, Jan 30 2023, https://www.bloomberg.com/news/articles/2023-01-30/apple-executives-violated-worker-rights-us-labor-officials-say
[271] CNN, *Apple has infringed on worker rights, NLRB investigators say,* Jan 31 2023, https://www.cnn.com/2023/01/31/tech/apple-worker-rights-nlrb/index.html
[272] Bloomberg, supra.

SECOND AMENDED COMPLAINT | 3:23-CV-04597-EMC                    DECEMBER 21 2023

office, changed the grammar of a line about Gjovik's NLRB case to infer the NLRB will decide against Gjovik, and added that Gjovik "*was fired for leaking confidential information.*"

```
infringed on workers' rights |work=TechCrunch
|url=https://techcrunch.com/2023/01/30/labor-officials-found-that-
apple-execs-infringed-on-workers-rights/ |access-date=31 January 2023
|quote=Gjøvik was fired by Apple in September 2021 for leaking
confidential information; she told TechCrunch that she thinks she was
fired in retaliation after reporting to the EPA that her office was
built on the triple site of toxic waste in Silicon Valley, where
cracks in the floor exposed employees to carcinogenic fumes.}}</ref>
```

*Exhibit: You Make Me Fade Post about Leak*

686.    On February 7 2023, Macworld published an article about Gjovik's NLRB win. The article 'translated' Cook's email to Cook's actual meaning including Cook complaining about workers talking to reporters about work conditions, "*How can we put the screws to you if it's in the news? Duh. C'mon, people. Think*!" and "*Tattooed on Tim Cook's right bicep: "Loose lips…" And on his left: "…pink slips.*" The article suggests after an "*old-fashioned intervention*" the public would learn that Apple acts the way it did to Gjovik and her coworkers in 2021 because "*Steve Jobs was… never hugged or whatever.*"[273]

687.    On February 11 2023, Appleseed was caught editing Gjovik's Wikipedia article again, as discussed, and was banned again.



## User contributions for You Make Me Fade    ❓ Help

For You Make Me Fade (talk l block log l uploads l logs l filter log)

This account is currently blocked. *(Show block details)* The latest block log entry is provided below for reference:

- 03:47, 11 February 2023 GeneralNotability (talk l contribs) blocked You Make Me Fade (talk l contribs) with an expiration time of indefinite (account creation blocked) *(Sock puppetry User:CodeHitchhiker)* (Tag: Twinkle)

---

[273] Macworld, *Apple's war against leakers is really a battle against the people that matter most,* Feb 7 2023, https://www.macworld.com/article/1504665/macalope-apple-tim-cook-leakers-nlrb.html

*Exhibit: CH /YMMF 1*

**Search for contributions**

(newest | oldest) View (newer 50 | older 50) (20 | 50 | 100 | 250 | 500)

- 07:44, 11 February 2023 (diff | hist) . . (+227) . . User talk:You Make Me Fade *(→February 2023: Reply)* **(current)** *(Tag: Reply)*
- 07:34, 11 February 2023 (diff | hist) . . (+169) . . User talk:You Make Me Fade *(→February 2023: Reply)* *(Tag: Reply)*
- 21:26, 10 February 2023 (diff | hist) . . **(+1,186)** . . List of whistleblowers *(→2010s: Added Tesla 2)* **(current)**
- 21:11, 10 February 2023 (diff | hist) . . (+11) . . **m** TRW Inc. *(→Superfund site: Fixed typo)*
- 19:51, 10 February 2023 (diff | hist) . . (+15) . . List of Superfund sites in California *(→Superfund sites: Changed wikilink)* **(current)**
- 19:50, 10 February 2023 (diff | hist) . . (+25) . . Ashley Gjøvik *(→Environmental health and safety concerns: Added wikilink)* *(Tag: Visual edit: Switched)*
- 19:49, 10 February 2023 (diff | hist) . . (+37) . . **N** TRW Microwave Superfund *(←Redirected page to TRW Inc.#Superfund site)* **(current)** *(Tag: New redirect)*
- 19:48, 10 February 2023 (diff | hist) . . (+22) . . **N** TRW Microwave *(←Redirected page to TRW Inc.)* **(current)** *(Tag: New redirect)*
- 19:45, 10 February 2023 (diff | hist) . . **(+33,359)** . . TRW Inc. *(→Superfund site: New section)* *(Tag: nowiki added)*
- 16:57, 10 February 2023 (diff | hist) . . (+52) . . List of whistleblowers *(→2020s: Added picture)* *(Tag: Visual edit)*

*Exhibit: YMMF 2*

# User talk:CodeHitchhiker

User page Talk Read Edit Add topic View history

From Wikipedia, the free encyclopedia

## Blocked as a sockpuppet [ edit ]

You have been **blocked indefinitely** from editing for abusing multiple accounts as a sockpuppet of User:SquareInARoundHole per the evidence presented at Wikipedia:Sockpuppet investigations/SquareInARoundHole. Note that multiple accounts are allowed, but **not for *illegitimate* reasons**, and any contributions made while evading blocks or bans may be reverted or deleted.
If you think there are good reasons for being unblocked, please read the guide to appealing blocks, then add the following text below the block notice on your talk page: `{{unblock|reason=Your reason here ~~~~}}`. -- Tamzin[cetacean needed] (she|they|xe) 13:26, 21 November 2022 (UTC)
[ reply ]

*Exhibit: CH / SIARH 1*

688.     In February 2023, Appleseed began publishing a five-part manifesto about *"her spiritual cultivation at Apple"*, including writing about "*the Church of Apple and the living word of Steve Jobs."* She wrote about Gjovik in several of the posts, directly naming Gjovik, and Gjovik was notified via news alerts linked to her name. Appleseed also directly embedded several of Gjovik's Twitter posts. (All of this was creepy, invasive, and harassing.)

689.     In Appleseed's manifesto she talked about one of Gjovik's complaints and shared what appeared to be an outcome of Okpo's supposed investigation into Gjovik's concerns. Okpo never shared any type of outcome or findings with Gjovik from his supposed investigation into her concerns and that investigation was supposedly still open when Gjovik was fired. It's unclear when, how, or why Apple Employee Relations and/or Workplace Violence met with Apple Global Security employee Joanna Appleseed to discuss Apple's personnel decisions about Gjovik.



SECOND AMENDED COMPLAINT | 3:23-CV-04597-EMC                    DECEMBER 21 2023

*Exhibit: Radar Investigation*

690.    Appleseed also admitted in the manifesto, that Apple employees *"told [her] that Ashley planned to hand over all of her messages to management."* Gjovik had no plans to hand over her text messages to Apple, and would not have told anyone that, so it was a lie from Apple. Further, Gjovik and Appleseed had and have no mutual friends and only knew each other briefly at work, so these 'mutual friends' are Apple employees – possibly Global Security, but also possibly Gjovik's ex-coworkers including Marini and Garfinkle, and that "Neoform" from Gjovik's last team. Appleseed reported facts establishing that someone, assumably Apple, threatened her in order to coerce her to file a bogus report against Gjovik, and even admitted the report *"served no legal purpose."* She admitted she filed a Business Conduct complaint about Gjovik, and Apple's lawyers later cited Appleseed's complaint, claiming it was filed September 15 2021, the same day Apple's OM&M lawyers sent Gjovik a harassing email about Gjovik's Twitter posts about work conditions. Apple coerced or directed Appleseed to assist them in fabricating a paper trail, only hours prior to Apple sending an email to Gjovik about the same topic as Appleseed's complaint.

> When the article came out, I removed my iCloud from my work device and deleted the aforementioned conversation. A week after Ashley was terminated mutual friends told me that Ashley planned to hand over all of her messages to management. They had already investigated me and found nothing, this would give them a reason to fire me. I panicked and filed a report. Apple made that post-termination report a part of their justification against Ashley's retaliatory firing claims, despite that it serves no legal purpose.

*Exhibit: False Complaint – Appleseed Quote*

691.    Under information and belief, Apple has been coercing and inciting Appleseed, directly or indirectly, to help them cover-up what they did to Gjovik. Under information and

belief, Apple then used Appleseed's actions to further coerce her into furthering their scheme because otherwise, if Gjovik were to win her cases against Apple, it would be revealed what Appleseed did in partnership with Apple to harm Gjovik. Thus, Gjovik must not win her lawsuits.

692.     (At some point in late 2023, Appleseed deleted her entire Medium account that hosted the manifesto posts. This was around the time she changed her Twitter account name to a new phrase and then deleted her prior account name, attempting to obstruct URLs to her prior posts from attaching to her account.)

693.     In February 19 2023, Joanna Appleseed contacted Gjovik with an email saying she knows Gjovik does not "*wish to hear from [her]"* and then proceeded to make more accusations against Gjovik. Appleseed added, *"I realize I'm not likely ever going to convince you …. that I'm not working for or with Apple."*[274] She then compared Apple to "Area X" from "Annihilation." Gjovik did not respond. Gjovik still had not, and has not, initiated any contact with Appleseed since September 2021.

**xx.     Gjovik Discovers the Secret Silicon Fabrication Plant; Apple Commits More Felonies (February 2023)**

694.     On February 21 2023, Gjovik discovered the semiconductor fabrication activities at 3250 Scott Blvd in Santa Clara, next to the apartment where she got sick. Gjovik posted on Twitter in real time as she learned about it. Gjovik added that day, "*I've been making muffled screaming noises for about twenty-five minutes now. WTAF IS WRONG WITH THEM. THEY MUST HAVE KNOWN THEY DID THAT SHIT TO ME!!!  No wonder they gave me that "extreme condition leave" to move out. Apple is the extreme condition.*"

---

[274] Joanna Appleseed to Ashley Gjovik (business email at ashley@gjovik.co), February 19 2023 10:45am

311

695.    Under information and belief, Apple saw these posts and discussed what their

response should be to Gjovik now having this knowledge.



Ashley M. Gjøvik
@ashleygjovik

APPLE IS DOING LITERAL ACTUAL GODDAMN SILICON FAB 0.2 MILES (0.3 KM) FROM THE APARTMENT WHERE I GOT SO SICK I THOUGHT I WAS DYING & APPLE VENTED THAT SHIT INTO THE AIR FROM THEIR ROOF & THE YARD NEXT TO THEIR "GAS BUNKERS" RIGHT INTO MY 3RD FLOOR APARTMENT

11:29 PM · Feb 21, 2023 · **7,123** Views

[275]

*Exhibit: The Discovery of the Secret Silicon Fabrication*

[275] Twitter, Ashley Gjovik, https://twitter.com/ashleygjovik/status/1628250591779516416

312

SECOND AMENDED COMPLAINT | 3:23-CV-04597-EMC                    DECEMBER 21 2023

696. On February 21 2023, US DOL suddenly demanded Gjovik provide a copy of the audio recording from the prior meeting. Under information and belief, it was Orrick on behalf of Apple, and/or Morgan Lewis on behalf of Apple, requesting this audio transcript to use for their defense in Gjovik's cases.

697. On February 27 2023, five Morgan Lewis attorneys filed a notice of appearance on Gjovik's NLRB charges, along with the three MWE lawyers. One of the Morgan Lewis attorneys was an ex-NLRB Board Member (Harry Johnson).

698. On February 27 2023, US DOL suddenly demanded Gjovik index all of the documents and emails she previously sent US DOL Under information and belief, this was on request of Orrick and/or Morgan Lewis.

699. On March 1 2023, Gjovik asked if any chemists followed her Twitter account and could weigh in on if NMP could cause the reaction she saw on her jeans. On March 2 2023 and for several days following, a Twitter account created specifically to interact with Gjovik about her claims about N-Methyl-2-pyrrolidone (NMP), "Sybil", replied repeatedly to her posts. Sybil repeatedly claimed NMP is completely safe, not banned, and that Gjovik was lying about the yellow clothes and rusty jeans and it was occurring simply because Gjovik did not know how to do laundry properly.



*Exhibit: Example Sybil Post*

700.    Even after blocking the NMP account, it continued to stalk Gjovik's posts and continue posting, next calling for Gjovik's account to be suspended due to supposedly spreading misinformation about NMP. Under information and belief, Sybil was Apple.

701.    On March 11 2023, a fake account ("Comrade Jones", sorry@butno.com) sent Gjovik an email claiming to be an ex-EPA compliance/enforcement employee. The account attempted to get Gjovik to stop talking about the vapor intrusion documentation for 825 Stewart Drive and tried to get Gjovik to stop talking about the NMP. The account made threats to intimidate Gjovik. The IP came from a location known for spam accounts.

> The reason I suggest you talk to an expert in the law here is because you have several misconceptions that are leaving you open to severe ridicule on a public stage. I don't know much about corporate law, but I can't imagine they won't attack your credibility and integrity.

*Threats from "Comrade Jones"*

702.    Under information and belief, "Comrade Jones" was Apple.[276]

703.    On March 22 2023, US DOL said they may dismiss Gjovik's entire case now if Gjovik does not send the audio file. Gjovik explained to them why that was unlawful and told them she would only send it if they agreed to 'seal' it so Apple could not get a copy. US DOL refused, essentially acknowledging they wanted to send Apple a copy due to something that occurred after the meeting.

704.    Around March 2023 a new anonymous Twitter account ("Praveen") began harassing Gjovik. The account knew way too much about Gjovik and her claims against Apple, and the account almost exclusively trolled whistleblowers and unions. Gjovik and others researched the account and found it was affiliated with the MWE law firm, and was predominantly harassing plaintiff's in cases where MWE represented the defendant. Gjovik

---

[276] Twitter, Ashley Gjovik, https://twitter.com/ashleygjovik/status/1634647629421223936

SECOND AMENDED COMPLAINT | 3:23-CV-04597-EMC                    DECEMBER 21 2023

called the account out and it not deny the affiliation, but still proceeded to harass Gjovik more including attacking her mental health, physical appearance and moral character .

705.     Gjovik continued to protest US DOL's corrupt behavior to US DOL, on Twitter, to US DOL OIG, and in a petition she created on Change.org asking US DOL to stop doing corruption to whistleblowers.

706.     On March 28 2023, US EPA FOIA manager Andrew Helmlinger (married to a partner at Orrick) claimed there were no documents related to Apple's TRI filing about NMP waste and emissions in 2020. (EPA functional teams would later tell Gjovik that was not a true statement). Gjovik complained to US EPA OIG about the matter.

707.     On April 3 2023, CalSTRS closed Gjovik's PRA request about her Apple Superfund office owned by CalSTRS. CalSTRS suddenly claimed there are no PRA documents other than a press release.

708.     Gjovik found note in a note in an US EPA document that CalSTRS conducted a 2016 Environmental Site Assessment for 825 Stewart Drive. Gjovik asked CalSTRS for a copy. CalSTRS denied any knowledge of it. US EPA and CalSTRS denied any records for the Site Assessment.

709.     On April 10 2023, Gjovik was notified that Apple's Morgan Lewis attorneys had requested a 'reconsideration' of merit of Gjovik's NLRB charge that Tim Cook's email violated federal labor laws. The NLRB refused to answer Gjovik's questions as to how such a thing was arranged or to respond to her complaints that it was not allowed. Gjovik complained she suspected Apple was engaged in unlawful ex parte communications.

710.     On April 27 2023, Gjovik submitted two filings to NLRB. One objecting to the reconsideration process as a violation of the NLRA, APA, and US Constitution. The second arguing the charge should still be found to have merit.

SECOND AMENDED COMPLAINT | 3:23-CV-04597-EMC                    DECEMBER 21 2023

711.    On May 5 2023, CalSTRS put 825 Stewart Drive up for sale. All public listings failed to disclose its a Superfund site.

712.    On May 13 – 15 2023, Appleseed suddenly published around or over forty posts on Twitter that made negative remarks and allegations against Gjovik. Appleseed included Gjovik's name and other personally identifiable information in several of the posts and tagged Gjovik's acquaintances, and even included images of the documents in Appleseed's lawsuit against Gjovik – so it was clear Appleseed was posting about Gjovik. Appleseed uploaded a video attached to one of these posts that showed an open web browser window on the computer she was using and the browser had multiple open tabs for Gjovik's whistleblower website (3x windows), Gjovik's air quality website, a US EPA page about air quality, and the SCOTUS brief in question. Appleseed was cyberstalking Gjovik as she posted these things about Gjovik.



*Exhibit: Image posted by Appleseed during May 13-14 2023 Posts about Gjovik*

713.    Appleseed also posted claims that Gjovik violated the Constitution and claimed Gjovik wanted to "*deny civil liberty to an entire state*," claimed Gjovik was trying to "*egregiously violate other people's constitutional rights and indiscriminately verbally and psychologically abuse those people for exercising them and then use [Gjovik's] rights as a [Gjovik's] own friend from accountability*," claimed Gjovik filed a "*frivolous*" lawsuit which was "*self-serving nonsense that would catastrophically deny civil liberties*,", claimed Gjovik had a "*wanton disregard for the truth in pursuit of [Gjovik's] own goals*," and claimed Gjovik was "*admonished by the Assistant Attorney General of Washington for [Gjovik's] behavior toward*

1   *[Appleseed].*" Appleseed tagged the Washington state AG's office's Twitter account in her post

2   (which would notify that office of her post).

3       714.    Appleseed also make public posts about the state lower court and appellate judges

4   assigned to Appleseed's retaliatory lawsuit against Gjovik. Appleseed claimed the appellate

5   judge who found against her and in favor of Gjovik made an "*error*" and the lower court judge

6   wrote an "*unsophisticated order*." Appleseed also posted she "*already ordered the frame for*" a

7   quote from the legal filing from Washington state arguing Gjovik's Constitutional challenge

8   lawsuit should be dismissed under the state's 11th amendment rights. Appleseed implied she

9   planned to hang a portion of that federal legal filing (for a lawsuit caused by her meritless

10  retaliatory lawsuit against Gjovik) in her home. Appleseed then replied to her prior post

11  ridiculing Gjovik with a new post that said "*I'm a lawyer*" with an image of a boy sticking a

12  flute up his nose, implying that is Gjovik.

13
14



*Exhibit: Appleseed's 5/14/23 Flute Post*

---

SECOND AMENDED COMPLAINT | 3:23-CV-04597-EMC                    DECEMBER 21 2023

715.    Appleseed admitted in her flurry of posts that she knew when she lost Gjovik's appeal in November of 2022 that it was "*best for [Appleseed] and all to let it go*" but that she decided to start attacking Gjovik again due to Gjovik's appellate win of Appleseed's meritless retaliatory lawsuit against Gjovik being cited in an amicus brief for a SCOTUS case written by a well-known human rights and civil liberties non-profit organization, and because, Appleseed said, members of "*Operational Intelligence*" groups contacted her and convinced her that Gjovik "*misled*" and "*deceived*" her in some way (assumably she was referring to Apple Global Security again).

716.    Appleseed once again claimed Gjovik's pleas for Appleseed to stop harassing her was some sort of criminal act by Gjovik. Appleseed complained that Gjovik "*cr[ied stalker [and] harassment*" about Appleseed, that Gjovik "*rationalized [Gjovik's] behavior with free speech,*" and Gjovik's actions "*justify more abuse*" by Appleseed. She then wrote "*ableism, racism, privacy invasion, fraud, it's the wild wild west so long as they've been criticized.*"

> Really sick of people who dox based off non-information (can't dignify with "conjecture") who defame, and are verbally and psychologically abusive.
>
> They rationalize their behavior with free speech and disinformation. They cry stalker, harassment, and justify more abuse.
>
> 11:44 PM · May 16, 2023 · 2,176 Views

> Weird how their values depend entirely on whether or not you agree with their abusive and nonsensical bullshit.
>
> Ableism, racism, privacy invasion, fraud, it's the wild wild west so long as they've been criticized, no matter how mildly and if they've done serious wrongs!

*Exhibits: Appleseed May 16 2023 Posts*

717.    Throughout the posts, Appleseed repeatedly referred to Gjovik as a "*harasser*", called Gjovik a "*liar*," she accused Gjovik of defamation and harassment, she accused Gjovik of

318

doxing and called Gjovik a hypocrite. Appleseed posted that Gjovik *was "DESTROYING [HER] LIFE"* (sic). Appleseed posted that Gjovik lied to "*a friend*", lied "*on social media*," lied *"to a biased tabloid,"* lied "*to a respected news outlet*," and lied "*to the government under oath*." Appleseed added that now "*the lie is in case law, Academica, and books*."



*Exhibit: Appleseed's "Case Law" Post*

718.     Appleseed confessed again to proactively contacting people quietly and without Gjovik's knowledge, to claim Gjovik was lying and to allege Apple's version of facts about Gjovik's allegations against Apple. Appleseed referred to Gjovik's allegations against Apple as "*disinformation*" and "*fraud*," quoted the book 1984, and then said that Gjovik wanted "*power*" and to "*deny liberty by corruption reality and agency of reason*." Appleseed then implied Gjovik is at the "*root of all evil*" and compared Gjovik's lawsuit against Apple to Nazis and genocide.

719.     Appleseed claimed in this frenzy of Twitter posts that she reported Gjovik to EFF and the ACLU and invited any "*civil liberties group or attorneys*" to contact her to review her "*thorough accounting documenting the issues in the orders, the events, and all the documentation of events that spurred it*."

720.     On May 15 2023, Appleseed (an agent of Apple), then posted that she reported Gjovik to "the proper authorities" (assumably another FBI and/or local law enforcement report).

319

Appleseed wrote she reported Gjovik to law enforcement alleging Gjovik committed perjury, fabricated evidence, made false statements to federal agencies, committed fraud, and engaged in harassment, doxing, and stalking.

> I reported this to the proper authorities.
>
> The perjury of everyone involved. The fabricated evidence. Using agencies and people in the government.
>
> The false statements to federal agencies.
>
> The fraud. The harassment. The doxing. The stalking.
>
> ALL of it. I'm done.
>
> 1:49 PM · May 15, 2023 · **2,570** Views

*Exhibit: May 2023 False Reports*

721.    Appleseed, in this same eruption of posts over a few days, then also accused one of Gjovik's acquaintances of perjury, lying, lying under oath, harassment, being a sociopath, falsifying and fabricating evidence, and amplifying disinformation – all connected to Gjovik. Appleseed posted that she is "*hopeful*" that Gjovik's acquaintance was "*genuinely misled*" by Gjovik. She tagged the Twitter account for the President of the United States and claimed Gjovik won the appeal with "*fabricated evidence.*" She also made a vague statement about "*untrue hearsay from an authoritative source*" about Gjovik.

722.    In several posts Appleseed even directly addressed Gjovik saying: *"To be very [expletive] clear: No amount of intimidation, threat, or coercion can stop it. That ship has sailed. You can discredit me into oblivion at this point, it won't make a difference. Whatever lies you want to tell, it won't change the outcome. The fraud is undone."* Appleseed added *"[she] believe['s] in civil disobedience"* and referred to Gjovik as "*white wealthy people co-opting that with fraud.*"

723.     Gjovik still had not, and has not, initiated any contact with Appleseed since September 2021. Even after the gag-order was removed in January 2023, Gjovik still refused to speak about Appleseed publicly, out of fear of another lawsuit or more false reports or worse.

724.     On May 21 2023, Appleseed began posting about Gjovik again. Appleseed complained that Gjovik was "*psychologically torturing*" her and Gjovik was being "*maliciously abusive*" and Appleseed wanted to "*talk about it*" with Gjovik or else wanted Gjovik to "*move on in peace*" (which implied her desire for Gjovik to withdraw Gjovik's charges and lawsuits against Apple). Appleseed posted about how Gjovik lied, and someone unnamed misunderstood, and she criticized Gjovik with a "*quote tweet*", and Gjovik was a "*vindictive [expletive]"* and Gjovik would destroy her, and "*ruin other lives*," and that Gjovik "*love[s] it*." She claimed Gjovik is "*evil*," and has a "*vendetta*" and "*disregard for life."*

725.     On May 26 2023, Appleseed attempted to contact Gjovik through a third-party (a current Apple employee domiciled in another country) and conspired with him and attempted to get Gjovik on the phone with her without Gjovik knowing it would be Appleseed on the other line. When Gjovik saw through the plan and complained to the third-party, that person explained Appleseed wanted to talk to Gjovik about Gjovik's evidence against Apple in her federal charges that implicated Appleseed and encourage Gjovik to withdraw that evidence.

> **Apple employee, 5/26/23, 12:01am:** "*I want to ask if you wanted to talk sometime soon. Someone reached out to me with concern that some of the bot network and false identifies attacking you might be more dangerous than you have already uncovered, and perhaps much more widespread than you have initial found. They reached out to me because they worked at Apple and I'm a [employee] at Apple. They asked if I would mind facilitating a conversation, because they are genuinely afraid and they will only talk about this to you and I over voice. I spoke with them already and they showed me some of what they have uncovered and it seems very credible to me. I can talk to you first if you would like, and then I can invite the other party in if you agree to it. This is a conversation that needs to be kept in confidence of course, as we are dealing with a huge disinformation campaign, that may have multiple origins, targeting Apple opposition (public worker organizations and whistleblower)."*

SECOND AMENDED COMPLAINT | 3:23-CV-04597-EMC                    DECEMBER 21 2023

**Gjovik, 5/26, 12:44pm:** Responds mentioning she already has federal charges about Apple's digital harassment and surveillance. Mentions she created a 400-page filing with evidence of the accounts and she complains Appleseed sued her over it and reported the legal filing as 'child porn.' Gjovik commented her NLRB case seemed to be progressing and she is expecting a finding in her favor about the digital harassment and Appleseed's lawsuit against her. Gjovik then sent him a copy of the federal filing titled *"Gjovik v Apple – Intimidation and Threats Evidence Report"*. Gjovik also commented she is concerned who ever reached out to him could be "*sent by Apple to get [her] to comment on things which they'd record and some[how] try to use against [her]"* in the federal cases.

**Apple employee, 5/26, 10:38pm:** *"The person believes they have been manipulated, and they just figured it out a week ago… They are terrified because they are being stalked. Someone named "[name]" physically came to an old address. I have offered to be on a group call with them and you as a witness and to try to facilitate trust. It seems too important for the conversation to not happen."*

**Gjovik, 5/26/23, 10:39pm:** Gjovik complains about Apple's spies again, and complains about Apple breaking into her attic and installing "surveillance crap" in her home. Gjovik says she will not consider talking to the person unless their identity is disclosed prior.

**Apple employee: 5/26/23, 11:43pm** "*I think they reached out to me first because they described the exact same scenario, with people sending them repeated messaging that they didn't recognize was just baiting them until now. They also 100% do not trust anyone at this point except very specific people that are actually confirmed to be real and not a part of the government or big business, especially tech. I'm not home at the moment … Would you have time to talk tomorrow? I'm guessing it is late for you now."*

**Gjovik, 5/26/23, 11:55pm:** Gjovik complains his request "*feels like an op*" and "*worried it's an op to mess with [her federal] testimony."* Gjovik complains it is suspicious and "*odd*" that "*someone urgently must talk to [her], but only without any paper trail, about a topic that is a matter of [her] federal charges and will be discussed in federal courts in the near future*."

**Apple employee: 5/27/23, 1:10am:** [not directly related comments] … *"I definitely don't want anything to hinder your case. That's why I wanted to get this person as well."*

**Gjovik,** 5/27/23, 1:15am: *"The case about Tim Cook's email means Tim Cook has to be in the court room & has to testify in my case… because he sent that email. They're for sure going to murder me, but it will be worth it. Maybe they'll stop sending shitty emails!!!"*

**Apple employee, 5/27/23, 2:57am:** "*Hopefully they realize that losing money isn't worth physically silencing someone…. The reason that the person that reached out to me couldn't approach you alone is because they are afraid of the orchestrators being told, and it's important that the orchestrators think it's business as usual while the puzzle is fully assembled. The purpose is to have all the facts and undo successful false divisions and false associations… it's about safety and ensuring it is not disclosed to the wrong people."*

SECOND AMENDED COMPLAINT | 3:23-CV-04597-EMC                    DECEMBER 21 2023

**Gjovik, 5/27/23, 2:12pm:** "…. *The repeated requests for confidentiality are also concerning. I'm very public with everything that's done, it's one of the ways I try to stay alive. … and what I said about court means that I can't hide anything in court, regardless of whatever it is they're talking about 'undoing.' I don't want to be part of anything directly related to my own lawsuits that someone is demanding I keep quiet for their own benefit. That sounds crazy…. This whole matter is seriously stressing me out a lot, so I'd prefer not to talk about it anymore…*"

**Apple employee, 5/27/23, pm:** "…. This person contacted me through established channels… and I talked to them in depth as well so I am as certain as I can be that I don't think there is any trickery. If you would like we can chat briefly over voice and I can tell you who it is and explain the baseline of why they want to talk….the fact that they were recently being stalked stoked the urgency… so it is up to you, either we leave it here as you asked, or I can have a voice/video (me only on video and you voice even) chat to explain the who and why and you can decide after that. …I have had to worry about the local… mafia coming after me … so I understand the stress you are into some degree… Let me know."

**Gjovik, 5/27/23, pm: "***I don't want to talk about this anymore & I have a feeling I may know who the person is now and if its the person I think it is, they're involving you in their own illegal and sociopathic conduct. If it is that person, I have no desire to talk to them whatsoever for the rest of my life, as I made clear to them nearly two years ago. There is no situation imaginable that could ever change my position on that after everything the person has to me over the last two years. And that's all I have to say about any of this.*"

**Apple employee, 5/27/23, pm:** *"…. The only advice I will give is that you might want to reach out to [newspaper editor] via Email or DM and ask for his Signal. Then ask if he told you that [reporter] said that to him and if he even spoke to you on Signal at all, let alone from that account on September 16 2021. It looks like that account might have been an impersonation. Take care."*

[Note: This is a reference to some of Gjovik's evidence of Appleseed's stalking and harassment against Gjovik and was submitted as part of Gjovik's federal charges and was included in the document Appleseed sued Gjovik over. The editor contacted Gjovik in September 2021 and asked Gjovik because Appleseed was reaching out to a reporter at their publication and advising him not to talk to Gjovik. The account Gjovik communicated with was authentic as the editor used it to coordinate the publication of articles with Gjovik, including Gjovik publishing an op-ed with that publisher.]

**Gjovik: 5/27/23, pm:** "*omfg…. She is doing this because she's afraid its about to come out she assisted Apple in violating federal law. Please do not ever contact me on her behalf ever again…. I'm blocking you here because of what you've done for her. Its offensive and dangerous.*"

**Apple employee, 5/27/23, pm: "***I don't think that is her intention but I understand.*"

**Gjovik, 5/27/23, pm:** "*She's a sociopath and you helped her mislead me, deceive me, and basically lie to me to compromise me and get me on the phone with someone who*

SECOND AMENDED COMPLAINT | 3:23-CV-04597-EMC                    DECEMBER 21 2023

has tried repeatedly to tamper with my federal testimony about her actions. You are blocked now & I wish it did not have to be that way."
[Note: Account was blocked].

726.     On May 31 2023 at 4:35pm, Appleseed contacted one of Gjovik's friends via LinkedIn, identifying herself as "*Apple Global Security*," and trying to learn about Gjovik's "*friends or family*," claiming she wants to "*help*" Gjovik, and admitting she has been extensively cyberstalking Gjovik.

> I am so sorry to bother you, but you are the only person I can find who might have known Ashley before she worked at Apple. I worked in Global Security and have fraud and information security research expertise and found Ashley's old website was cloned, which is an indication someone has been hacked.
>
> Something happened at the end of 2021 that was quite odd, and since then, seems to have gotten worse. During my investigation, I found her old twitter handle on her original website, which led me to a tweet in which you asked her if she was hacked.

*Exhibit: 5/31/23 Messages 1*

> I know this sounds super weird, believe me, but Ashley has never had any friends or family she's ever spoken about since I've known her, and others before her. Her entire online life was scrubbed from the internet between 2012-2015, and while I have no idea what any of this means, the situation around your 2012 message to her might help me help her.
>
> Thank you!

*Exhibit: 5/31/23 Messages 2*

SECOND AMENDED COMPLAINT | 3:23-CV-04597-EMC                    DECEMBER 21 2023

xxi.    **After Learning about the Factory and its Leaks/Spills, Gjovik is Certain Apple Made her Sick in 2020; Gjovik Goes After Apple (June-August 2023).**

727.    On May 30 2023, Gjovik complained to US EPA OIG and General Counsel's office about Helmlinger's conflict of interest with Apple's counsel at Orrick, and his misconduct with her US EPA FOIA requests.

728.    On June 23 2023, Gjovik filed complaints about Apple's facility at 3250 Scott Blvd to US EPA, CalEPA, city of Santa Clara, and Santa Clara County. Gjovik drafted a 28-page memo with three exhibits attachments: the factory operations, the apartment next door, and the history of the site. Gjovik also posted on Twitter that she did so and provided a link to a Google Drive folder with what she submitted – which is still accessible today.[277]

729.    On July 9 2023, NLRB affirmed the prior decision of merit on Gjovik's charge about Tim Cook's 2021 email.

730.    On August 7 2023, "*Praveen*", posted on Twitter harassing Gjovik again. One of the only income opportunities Gjovik had in 2023 was writing an article in a magazine for which she was compensated for that article. Gjovik wrote an article about adult women with autism and her experience realizing she was autistic. Gjovik hoped the publication of her work could lead to more opportunities for contracted work or employment. On August 7 2023, the magazine posted from their official account, an account with 78,200 other accounts 'following' it, a link to Gjovik's article and tagged Gjovik's Twitter account in the post.  The same day, Praveen replied to the magazine's post commenting publicly: "*Ahh autism is why Ashley lies to creates*

---

[277] GoogleDrive, Ashley Gjovik – 3250 Scott Blvd Complaint,
https://drive.google.com/drive/folders/1ND6hcHW8iCnX-zCm3511JDLzfQ-IizHK

SECOND AMENDED COMPLAINT | 3:23-CV-04597-EMC                    DECEMBER 21 2023

*spectacles for social credit.*"[278] Now if anyone searched Twitter for Gjovik's article, they would find that comment accusing Gjovik of being a liar.

731.   On August 17 2023, US EPA inspected Apple's factory at 3250 Scott Blvd due to Gjovik's complaints.[279]



*Exhibit: US EPA ECHO for 3250 Scott Blvd*

732.   In mid to late 2023, ex-Apple Global Security employee, Joanna Appleseed, began deleting evidence of her unlawful conduct towards Gjovik, including deleting her prior Twitter account which account name mapped to Appleseed's Twitter posts that Gjovik cited in her legal filings. Appleseed also deleted her Medium blog account where Appleseed had posted blog posts where she made allegations against Gjovik and provided admissions about her collusion with Apple about Gjovik.

---

[278] Twitter, Index on Censorship, August 7 2023,
https://twitter.com/IndexCensorship/status/1688495940590583808
[279] US EPA, ECHO, 3250 SCOTT BOULEVARD, SANTA CLARA, CA 95054,
https://echo.epa.gov/detailed-facility-report?fid=110001168254

733.    On August 25 2023, Apple Head of Global Security, Tom Moyer, was recharged with criminal bribery following the District Attorney's successful appeal on the prior inexplicable dismissal.[280]

734.    In August 2023, CalSTRS suddenly sold 825 Stewart Drive to BentallGreenOak at $6.5M above the prior sale price, despite all of the new issues introduced by Apple's botched renovations, increased CERCLA obligations, and increasing contamination from the upgradient plume.[281] Under information and belief, the sale price was inflated to pay off CalSTRS for the harm Apple caused because CalSTRS is one of the largest Apple shareholders ($4B).

735.    On August 31, 2023, the US EPA published a brief letter responding to Apple's May 2023 vapor intrusion testing results at Gjovik's Apple office, the first testing since December of 2015, calling Apple's testing report and strategy "*fundamentally incorrect*," having "*no fundamental basis*," "*not accurate*," "*confusing*," and "*misleading*." Among other issues the EPA complained that Apple still had not found the missing sub-slab vent port, something Gjovik also complained about in 2021.[282]

736.    On September 2023 a Reddit thread was started about this lawsuit and where harassing and defamatory comments were posted about Gjovik in an attempt to further intimidate and smear her. Gjovik reported many of the comments but the moderators refused to take down the comments other than one that was explicitly sexual. Gjovik discovered that at least one of the moderator's was an active Apple Security employee and someone who had harassed her while she was still an employee (Dakota). Gjovik complained to the moderators that Apple was protecting Apple harassing her, but they never responded.

---

[280] *People v Thomas Moyer*, Case No. H049408, In the Court of Appeal of The State of California, Sixth Appellate District, Filed 8/25/23, https://www.courts.ca.gov/opinions/documents/H049408.PDF
[281] Mercury News, *Apple-leased Silicon Valley office building is bought as value jumps*, Aug 29 2023, https://www.mercurynews.com/2023/08/29/apple-office-real-estate-sunnyvale-buy-build-tech-economy-covid-iphone/
[282] US EPA, TRW Microwave Site, Re: Northrop Grumman Vapor Intrusion Evaluation Report, Aug 31 2023, https://semspub.epa.gov/work/09/100034523.pdf

SECOND AMENDED COMPLAINT | 3:23-CV-04597-EMC                    DECEMBER 21 2023

No. 22-430

# In the Supreme Court of the United States

———————

CHARLES BARTON and NATHAN SANDERS,

*Petitioners*,

v.

STATE OF TEXAS,

*Respondent.*

———————

*On Petition for Writ of Certiorari to the*
*Court of Criminal Appeals of Texas*

———————

**Brief of *Amicus Curiae* Electronic Frontier**
**Foundation in Support of Petitioners**

———————

EUGENE VOLOKH
*Counsel of Record*
UCLA SCHOOL OF LAW
385 Charles E Young Dr. E
Los Angeles, CA 90095
(310) 206-3926
*volokh@law.ucla.edu*

*Counsel for Amicus Curiae*

i

# TABLE OF CONTENTS

Table of Contents..........................................................i

Table of Authorities....................................................ii

Interest of *Amicus Curiae* ..........................................1

Summary of Argument ...............................................1

Argument ...................................................................4

I.   Texas's Harassment Law, and Similar
     State Laws, Wrongly Cover a Broad Range
     of Fully Protected Speech....................................4

     A.  Criticism of Politicians ..................................4

     B.  Criticism of Police Officers ...........................7

     C.  Criticism of Religious Figures .......................9

     D.  Criticism of Political Activists......................10

     E.  Criticism of Professionals or Businesses ......12

     F.  Criticism of Exes ..........................................13

II.  An Overbroad Harassment Statute Like
     Texas's Is Not Saved Simply Because It
     Requires an "Intent to Harass".........................15

III. Unwanted Speech Said *About* a Person to
     Willing Listeners Is Generally Protected...........17

Conclusion................................................................19

10

Alice Zeoli, a leading American Tibetan Buddhist religious figure. *United States v. Cassidy*, 814 F. Supp. 2d 574, 578-579 (D. Md. 2011). The prosecutors in that case argued that the tweets violated a federal statute prohibiting "a course of conduct [using the mail or interactive computer services] that caused substantial emotional distress to a person . . . with the intent to harass and cause substantial emotional distress." *Id.* at 580.

Yet the court concluded that the statute was "invalid as applied" to Cassidy's speech. *Id.* at 587. The court noted that the messages were sent to a broad audience rather than being "e-mails or phone calls directed to a victim." *Id.* at 585-86. It further explained that the statute "sweeps in the type of expression that the Supreme Court has consistently tried to protect." *Id.* at 586. "[T]he Supreme Court has consistently classified emotionally distressing or outrageous speech as protected, especially where that speech touches on matters of political, religious or public concern." *Id.* at 582 (citing, among other cases, *Hustler v. Falwell* and *Snyder v. Phelps*).

The *Cassidy* court therefore held, correctly, that the First Amendment protected Cassidy's speech. But again, the Texas Court of Criminal Appeals' reasoning would authorize punishing such speech under the Texas statute, simply by labeling it "conduct."

### D. Criticism of Political Activists

Harassment laws have likewise been used to restrict speech criticizing political activists. Thus, for instance, a Washington state district court recently concluded that a political activist's criticism of a former fellow activist could be harassment that would justify

11

a broad restriction on speech. *See Scarlett v. Gjovik*, No. 22-2-03849-7 SEA, 2022 WL 4541046, at \*4 (Wash. Super. Ct. Sep. 26, 2022). Cher Scarlett and Ashley Gjovik had co-founded a whistleblower campaign against Apple, *id.* at \*2, but had a falling out, and Scarlett sought an anti-harassment order based on Gjovik's public online speech about her. *Id.*

The district court concluded that Gjovik's speech was "clearly designed to upset Ms. Scarlett," that "[f]ree speech can be curtailed in many ways," and that a "course of conduct" can be restricted when it is "designed to alarm, annoy, or harass." *Id.* at \*4. Because of this, the court granted an injunction barring Gjovik from "mak[ing] any statements or posts or other publications" about Scarlett on "any social media or internet or other medium." *Id.* And the court did not rely on any finding that the speech was libelous: Rather, it reasoned that, "[w]hether it's true or not doesn't matter in an antiharassment order." *Id.*

But on appeal, the Superior Court vacated the order:

> The lower court in this matter seemed to require a "lawful purpose" behind the Respondent's postings of public records. But our state constitution does not allow for that consideration or restriction on free speech . . . . There is no categorical "harassment exception to the First Amendment's free speech clause."

*Id.* at \*6 (citations omitted). Under the Texas decision below, such First Amendment protections would be unavailable, again because such speech would be labeled unprotected "conduct." *See also McCauley v. Phillips*, No. 2016-70000487 (Cal. Super. Ct. Sacra-

Electronically Filed
12/2/2022 8:30:00 AM
22CIV01704KCX
King County District Court

1     **Ashley M. Gjovik (pro se)**

2

3

4         **IN THE KING COUNTY DISTRICT COURT**
        **IN AND FOR THE STATE OF WASHINGTON**

5

6          **East Division, Redmond Courthouse**

7

8

9

10     CHER SCARLETT, et al

11     Petitioner/Appellee,

12

13

14       v.

15

16     ASHLEY GJOVIK

17     Respondent/Appellant.

18

19

20

21

22

23

24

25

26

27

28

**KC DC No.:** 22CIV01704KCX
**Court of Limited Jurisdiction**
**Honorable Judge Lisa O'Toole**

**APPEALS & CHALLENGES:**
**KC SUPERIOR COURT NO:** 22-2-03849 SEA
**US DC AT SEATTLE NO:** 2:22-CV-00807-RAJ-BAT

**Re: Reverse & Remand of
Anti-Harassment Order**

**Notice of Intention to File Motions upon Remand:**

**Motion for Dismissal with Prejudice**
- RCW 4.105.* - Unif. Public Expression Prot. Act
- RCW 4.24.510 – Comm to Gov Agency
- CRLJ12(h)(3) - Lack of Subject Matter Jurisdiction
- CRLJ13(a) - Inability to Join Indispensable Party
- CRLJ12(h)(2) - Failure to State a Claim
- RCW 49.32.050 – Jurisdiction of Labor Disputes

**Motions for Sanctions**
- Rule 11 Sanctions – Abusive Litigation
- RCW 4.84.185 – Fines for Frivolous Claims

**Motion for Relief from Judgement/Proceeding**
- CRLJ60(b)(1)&(4) – Surprise, Irregularity, Fraud, Misrepresentation, Misconduct
- CRLJ60(b)(5) – Judgement is Void
- CRLJ60(b)(11) – Equity (Unclean Hands)

**King County District Court, Court of Limited Jurisdiction**
Re: Reverse & Remand of Anti-Harassment Order Against Ashley Gjovik

# Notice of Intent Upon Remand

## 1.      Summary & Case History

The King County Superior Court reversed the prior judgement against Gjovik on September 26 2022 & send a mandate to the Court of Limited Jurisdiction for reverse and remand on November 17 2022.

This unfortunate matter was injected into the King County court system by Petitioner, Cher Scarlett, by her own admittance & under oath, <u>because of</u> an US NLRB charge Ashley Gjovik filed against Apple in January 2021 (2/1 Transcript), and further, Scarlett claimed Gjovik's supposed "harassment" of Scarlett started in early December 2021 when Gjovik had complained that "[Scarlett] was bullying [Gjovik]." (3/1 Transcript, pg 11). The crux of this lawsuit is Scarlett complaining that Gjovik's complaints of Scarlett's harassment & defamation of Gjovik, are somehow harassment of Scarlett.

Gjovik began reporting Apple Inc to the federal government in April of 2021 and filed her first formal charges against Apple in August of 2021. Scarlett began attacking Gjovik in June of 2021, escalating to public attacks in August of 2021, and then filed her own charges against Apple in September of 2021 which she later withdrew and accepted a settlement & payment from Apple around November 2021. Gjovik began to block Scarlett from communicating with her in August 2021 and completely blocked Scarlett in September 2021. Gjovik filed additional California and federal charges against Apple in January 2022 alleging witness intimidation and retaliation by a number of past and current Apple employees and managers, including but not at all limited to, Scarlett. Scarlett continued to attack Gjovik and Gjovik's cases against Apple for over a year, including this meritless and retaliatory litigation at hand.[1]

Much new evidence has come to light following the initial decision against Gjovik in this court, evidence which appears to begin to explain Scarlett's otherwise inexplicable and obsessive conduct towards Gjovik and further supports Gjovik's accusations of Apple Inc's culpability and liability for Scarlett's actions, including this lawsuit. Perhaps most important was the discovery in mid-March 2022, disclosed by Apple Inc & after Gjovik's gag-order, that Scarlett had filed a

---

[1] See docket & court filings for this matter, for the Superior Court appeal, and in Gjovik's attempted Constitutional Challenge in US District court – including Scarlett's own statements, briefs, & evidence

**King County District Court, Court of Limited Jurisdiction**
RE: REVERSE & REMAND OF ANTI-HARASSMENT ORDER AGAINST ASHLEY GJOVIK

1  "Business Conduct" complaint against Gjovik to Apple on September 15 2021, while Scarlett

2  still worked for Apple Global Security & Legal, alleging Gjovik had violated some Apple policy

3  & included personal communications between Scarlett and Gjovik resulting from Scarlett

4  requesting private information from Gjovik about Gjovik's dispute with Apple. (See Superior

5  Court Exhibits). None of the information provided by Scarlett was actually material to Gjovik's

6  cases, as admitted by Scarlett. However, under information & belief, Scarlett submitted this

7  complaint & provided this information to Apple as part of her settlement agreement. At the same

8  time Scarlett had been speaking to the press & making public statements requesting additional

9  whistleblowers contact her and provide her with private information about their own disputes

   with Apple.

10       Regardless of Scarlett's intentions with the second point, it is clear she became obsessed

11  with covering up what she did to Gjovik as it would cause much controversy with her now being

12  held out as a "labor leader" among Apple employees.[2] As such, Scarlett set out to discredit both

13  Gjovik and Gjovik's charges against Apple, no doubt in hope that Gjovik's case would never be

14  decided on the merits where it may come to light what Scarlett did in September of 2021. This

15  lawsuit is clearly part of Scarlett's cover-up and is an extension of her self-admitted long-running

16  history of fraud. (see Scarlett's own court filings noting check fraud, student loan fraud, business

17  fraud, etc). Scarlett made much of Gjovik's comments about Scarlett's husbands criminal record,

18  but failed to disclose the crux of Gjovik's concerns about Scarlett's husband –his criminal record

19  included making false statements & obstruction of law enforcement, & this was directly relevant

    to Gjovik's allegations of fraud by Scarlett.

20       Under information & belief, Apple orchestrated the situation to manipulate Scarlett into

21  attacking Gjovik in ways that benefited Apple but which Scarlett may have believed were for her

22  own self-preservation due to Apple's coercion. As such, and discussed later, Apple is an

23  indispensable party in this matter – and the primary and exclusive jurisdiction for this matter is

24  the California and federal agencies where this matter was under review long before Scarlett

25  injected this dispute into the Washington court system – wasting much time & resources within

26  the Washington court system, as well as implicating the state of Washington in Apple &

27  Scarlett's witness intimidation efforts against Gjovik.

28

---

[2] The Washington Post, *"She pulled herself from addiction by learning to code. Now she's leading a worker uprising at Apple."* Oct 14 2021

## King County District Court, Court of Limited Jurisdiction
### RE: REVERSE & REMAND OF ANTI-HARASSMENT ORDER AGAINST ASHLEY GJOVIK

1   Without this information, and after hours of manipulative, fraudulent, and highly
2   inflammatory testimony by Scarlett - this Court of Limited Jurisdiction decided against Ashley
3   Gjovik on March 1 2022. Gjovik appealed the decision to the King County Superior Court,
4   raising 16 issues and errors from this trial court. Gjovik also brought the matter to a U.S. District
5   Court arguing preemption & challenging the state of Washington's anti-harassment statutes as
6   violating the U.S. Constitution facially & applied, however Gjovik's case was dismissed under
7   the *Rooker-Feldman Doctrine* as a state appeal was underway. [3]

8   On September 26 2022, after reviewing the briefs and trial record and only deciding on a
9   subset of the raised issues, a Superior Court judge issued an order reversing the decision of the
10  Court of Limited Jurisdiction and finding Gjovik's conduct to be "protected per case law and
    constitutional protections." (KCSC Order pg 15). [4]  Even without reviewing Gjovik's allegations
11  or evidence of Scarlett's fraud, unclean hands, or the court's lack of subject matter jurisdiction -
12  Superior Court Judge Robertson found the Court of Limited Jurisdiction's ruling still "amounted
13  to an unconstitutional prior restraint on [Gjovik]" and the decision was "entered in error." (Id).[5]
14  The Superior Court found no evidence to justify a five-year order, nor any evidence of directed
15  conduct to justify any order restricting distance and other prohibitions of direct contact. (KCSC
16  Order pg 9).[6] The Superior Court found "no evidence of actual malice" by Gjovik and instead
17  said the evidence about Gjovik's "expression of opinion… was not proved to be motivated by
    malice, but rather by activism." (Id).[7]

18  Scarlett did not file Motion for Reconsideration or Notice of Appeal.[8] The Superior Court
19  transmitted their mandate to the Court of Limited Jurisdiction on Nov 17 2022.[9]

## 2. Remand Leading to Additional Proceedings

---

[3] Gjovik v state of Washington, etc all, 2:22-CV-00807-RAJ-BAT, US DISTRICT COURT IN THE WESTERN DISTRICT OF WASHINGTON
[4] *Scarlett v Gjovik*, KCSC, No 22-2-03849-7 SEA, Order, September 26 2022
[5] *Scarlett v Gjovik*, KCSC, No 22-2-03849-7 SEA, Order, September 26 2022
[6] *Scarlett v Gjovik*, KCSC, No 22-2-03849-7 SEA, Order, September 26 2022, *"Despite the lack of "direct" communication to Petitioner, as conceded under oath, the court imposed distance restrictions, prohibitions against surveillance, and prohibitions against direct/third person communications to Petitioner. The court made no specific findings to support the extra length of the order (five years)."* Pg9
[7] *Scarlett v Gjovik*, KCSC, No 22-2-03849-7 SEA, Order, September 26 2022
[8] LRALJ 9.2 Entry of Decision; LCR 59
[9] LRALJ 12.1 Mandate; *Scarlett v Gjovik*, KCSC, No 22-2-03849-7 SEA, Mandate of Superior Court on RALJ Appeal

## King County District Court, Court of Limited Jurisdiction
### Re: Reverse & Remand of Anti-Harassment Order Against Ashley Gjovik

The Superior Court's Mandate is unclear if it calls for a new trial in the Court of Limited Jurisdiction. RALJ 9.1 states that the Superior Court may "reverse, affirm, or modify" OR "remand the case." The use of "or" instead of "and" implies a reverse of the decision does not call for further proceedings.[10] However, the Mandate itself states the lower court decision is reversed AND "this Matter is remanded to the Court of Limited Jurisdiction."[11]

Gjovik files this Notice in anticipation of the potential for further proceedings. However, if the Court of Limited Jurisdiction agrees with the Superior Court decision, & simply reverses the prior decisions, this Notice will be moot.

### 3. Notice of Intent to Re-Up Prior Filed Motions to Dismiss with Prejudice

If the remand of the case by the Superior Court leads to additional proceedings in the Court of Limited Jurisdiction, Gjovik submits notice of her intent to preserve a number of previously filed motions & to file additional motions on the matter. Gjovik intends to preserve her previously filed motions, which were never ruled on by the Court of Limited Jurisdiction, including under RCW 4.105.010-903[12] & RCW 4.24.510.[13] Gjovik also plans to request payment from Scarlett for Gjovik's legal costs, attorney's fees, & other expenses from dealing with this ordeal following the meritless & retaliatory petition & smear campaign by Scarlett. (RCW 4.24.510[14]; RCW 4.105.090[15]).

Gjovik plans to modify her motion for RCW 4.24.510, a witness protection statute, and request the full statutory fine of $10,000.00 from Scarlett instead of Gjovik's previous good faith waiver of the fine last February[16] as Scarlett has continued to harass, defame, and intimidate

---

[10] RALJ 9.1(e)

[11] *Scarlett v Gjovik*, KCSC, No 22-2-03849-7 SEA, Mandate of Superior Court on RALJ Appeal

[12] RCW 4.105 UNIFORM PUBLIC EXPRESSION PROTECTION ACT

[13] RCW 4.24.510 Communication to government agency or self-regulatory organization—Immunity from civil liability. *"A person who communicates a complaint or information to any branch or agency of federal, state, or local government, or to any self-regulatory organization that regulates persons involved in the securities or futures business and that has been delegated authority by a federal, state, or local government agency and is subject to oversight by the delegating agency, is immune from civil liability for claims based upon the communication to the agency or organization regarding any matter reasonably of concern to that agency or organization."*

[14] RCW 4.24.510 *"A person prevailing upon the defense provided for in this section is entitled to recover expenses and reasonable attorney's fees incurred in establishing the defense"*

[15] RCW 4.105.090 Costs, attorneys' fees, and expenses. *"the court shall award court costs, reasonable attorneys' fees, and reasonable litigation expenses related to the motion"*

[16] RCW 4.24.510: *"A person prevailing upon the defense provided for in this section is entitled to recover expenses and reasonable attorney's fees incurred in establishing the defense and in addition shall receive statutory damages*

---

## King County District Court, Court of Limited Jurisdiction
### RE: REVERSE & REMAND OF ANTI-HARASSMENT ORDER AGAINST ASHLEY GJOVIK

Gjovik following the order against Gjovik, including reporting one of Gjovik's federal legal filings to a webservice as "child porn."

Notes on the intent of RCW 4.24.510 explains: *"SLAPP suits are designed to intimidate the exercise of First Amendment rights and rights under Article I, section 5 of the Washington state Constitution."* The Superior Court found that not only were Scarlett's allegations not supported by evidence to prove unlawful conduct, but the outcome of Scarlett's petition, (which Gjovik additionally argues was obtained by fraud, surprise, & other misconduct by Scarlett) did in fact chill Gjovik's *"exercise of First Amendment rights and rights under Article I, section 5 of the Washington state Constitution"*.

Gjovik's initial RCW 4.105 Anti-SLAPP motion rightful explained (now affirmed in part by the Superior Court judge):

> "Scarlett failed to establish a prima facie case as to each essential element of harassment, thus … the case should be dismissed with prejudice & noting … that Gjovik prevailed under the motion. Scarlett's request for a harassment order against Gjovik is not grounded in fact or law. The request also serves an improper purpose as it attempts to further intimidate and retaliate against a federal and California state witness, victim, and informant. Scarlett's request is an extension of her concerted effort to coerce Gjovik to withdraw, alter, and omit statements to government bodies, statements on issues under consideration by government bodies, and to chill, if not restrict, Gjovik's First Amendment free speech on matters of public concern…. UPEPA (RCW 4.105.010) applies to no-contact orders (9) if the requested order against Respondent arises from any act of Respondent, related to the gathering, receiving, posting, or processing of information for communication to the public, for the creation, dissemination, exhibition, or promotion of a literary, political, or journalistic work regardless of the means of distribution, no matter the method or extent of distribution."
> (*Feb 14 2022 Motion for Continuance & Notice of Intent to File Motion for Anti-SLAPP, pg 2-3*).

Gjovik's initial 4.24.510 motion also rightfully captured Scarlett's intent with this litigation:

> "Scarlett threatened, harassed, and coerced Gjovik to withdraw allegations about her from Gjovik's government charges to at least the U.S. NLRB. Scarlett is using this this petition to further intimidate Gjovik and is using a civil action to deter Gjovik who simply wishes to report information to federal agencies. RCW 4.24.510 was enacted to protect whistleblowers exactly like Gjovik from actors exactly like Scarlett."
> (*Feb 14 2022, Motion to Dismiss due to Public Policy, pg 3*)

---

*of ten thousand dollars. Statutory damages may be denied if the court finds that the complaint or information was communicated in bad faith."*

**King County District Court, Court of Limited Jurisdiction**
RE: REVERSE & REMAND OF ANTI-HARASSMENT ORDER AGAINST ASHLEY GJOVIK

1  Indeed, Gjovik objected in this court room on March 1 2022 that Scarlett was "trying to compel

2  [Gjovik] to testify on [Gjovik's] federal charges" which named Scarlett as an agent of Apple in

3  Apple's retaliation against Gjovik for Gjovik's protected activity.

4  During trial, Gjovik introduced numerous witness statements and evidence of posts and

5  communications from third parties concurring Gjovik's view on this matter & that Scarlett was

6  indeed the one attacking Gjovik, not the other way around. (2/14-3/1/2022 Witness Statements;

7  Gjovik Evidence; DARVO addendum). Scarlett's response was generally the same to all parties

8  – Scarlett would then claim her conduct towards Gjovik was justified because, she claimed,

9  Gjovik's lawsuits & charges against Apple were "meritless," "perjury," and "lies." Scarlett has

10  not been able to find a single 3rd party willing to make a statement under oath in support of

11  Scarlett's allegations against Gjovik. In fact, before Gjovik was served for this matter, one of

12  Scarlett's own named witnesses suggested Gjovik request a restraining order against Scarlett, not

    the other way around.

13

14  ## 4. Intention to File New Motions to Dismiss & Vacate

15

16  A significant amount of additional evidence has come to light following the March 1

17  2022 decision. Gjovik intends to file a motion for the court to relieve Gjovik from a final

18  judgment, order, and/or proceeding: due to mistake, surprise, & irregularity in Scarlett obtaining

19  the judgement/order (CRLJ60-b-1); due to fraud, fraud on the court, and other misconduct by

20  Scarlett (CRLJ60-b-4); the judgement as void due to lack of subject matter jurisdiction, inability

21  to join indispensable party (Apple Inc), and due to decision by Superior Court reversing prior

22  judgement (CRLJ60-b-5); & other reasons justifying relief from the judgement/proceedings

23  (CRLJ60-b-11). [17] This includes misconduct by Gjovik's attorney related to the March 1 2022

24  hearing, including but not limited to, Gjovik's attorney failing to even notify Gjovik that Scarlett

25  offered to settle the matter outside court before the hearing. Gjovik's attorney, Mr. Blair,

    received a warning from the Washington Bar Association for that misconduct.[18]

26  Gjovik also plans to motion for dismissal due to Scarlett's failure to state a claim upon

27  which relief can be granted & failure to join a party indispensable to the matter at hand (e.g.

28
_____
[17] CRLJ 60 RELIEF FROM JUDGMENT OR ORDER
[18] Washington State Bar Association, ODC File No. 22-00809

**King County District Court, Court of Limited Jurisdiction**
RE: REVERSE & REMAND OF ANTI-HARASSMENT ORDER AGAINST ASHLEY GJOVIK

1   Apple Inc). CRLJ12(h)(2). Scarlett's own filings and testimony, and the District & Superior

2   court records revealed all of the supposedly "private" information Scarlett protested was actually

3   public information and/or shared broadly by Scarlett herself including names, criminal histories,

4   and quotes made by Scarlett to large publishers and the press. In fact, in Superior Court, Scarlett

5   would also admit her allegations of extortion and blackmail by Gjovik were based on a

6   conversation Scarlett was not part of, nor had she viewed, and upon viewing she realized "that it

7   was not Ms. Gjovik's idea to extort." (Scarlett's Brief)[19] Further, Scarlett's allegations about

8   Gjovik related to Wikipedia, were not only baseless but actually more fraud, as it was Scarlett

9   who had made harassing and disparaging edits to Gjovik's biography article for nearly a year

    before finally getting caught & banned by Wikipedia on November 21 2022. [20] [21]

10      Gjovik also intends to motion for dismissal with prejudice due to lack of subject matter

11  jurisdiction, something she objected to frequently in all hearings she was present at & has her

12  arguments have been further strengthened by evidence acquired after the March 1 2022 hearing.

13  CRLJ12(h)(3). There is clearly federal preemption of this matter under 18 U.S. Code § 1514 &

14  the All Writs Act (as well as RCW 5.105.010(2)(b-c) & RCW 4.24.500).

15      There is additionally no subject matter for this court under RCW 49.32.050 & the

16  Garmon & Machinist doctrines of NLRA preemption. (see Superior Court Appellant Brief).

17  These arguments are further strengthened by the discovery that Apple's defense lawyers (the

18  firm MWE) requested copies of the recordings from the hearings in this matter, no doubt to make

19  their own transcripts & use them in Apple's defense of Gjovik's allegations of harassment by

20  Scarlett on behalf of Apple. If there was no overlap of Gjovik's pending NLRB (and other

    agency) charges which named Scarlett, Apple's lawyers would have no interest in going to the

21

22

23  ---

24  [19] Scarlett v Gjovik, KCSC, No 22-2-03849-7 SEA, Brief of the Appellee (Scarlett), September 26 2022
    [20] Wikipedia editors/administrators: "*We'll start with the obvious connection here: CodeHitchhiker is Cher Scarlett
    (voluntarily acknowledged, verified by GorillaWarfare)... The fact is clear here that they are the same person.... I'd*
25  *call this  Likely from a technical perspective....I am blocking CodeHitchhiker indefinitely as a suspected sockpuppet.
    Due to the BLP implications here, I will blank and categorize her userpage in lieu of tagging. @CodeHitchhiker:*
26  *This is a shame.*"
    https://en.wikipedia.org/w/index.php?title=Wikipedia:Sockpuppet_investigations/SquareInARoundHole&oldid=112
27  3071985
    [21] Wikipedia editors/administrators: "It seems Bobrossghost was also used for months for socking at Ashley Gjøvik.
28  We can say that Gjøvik was herself not wrong by accusing SquareInARoundHole of harassment.[17] This whole
    chapter looks like a clear case of WP:NOTHERE."
    https://en.wikipedia.org/wiki/Wikipedia:Sockpuppet_investigations/SquareInARoundHole/Archive

## King County District Court, Court of Limited Jurisdiction
### RE: REVERSE & REMAND OF ANTI-HARASSMENT ORDER AGAINST ASHLEY GJOVIK

1  trouble of requesting, listening to, and transcribing hours of hearings on this matter. (see CLJ

2  Docket "Request for Copy" on 4/6/22 & 3/4/22).

3

### 7. Conclusion

4

5  Finally, Gjovik also requests for Judge O'Toole's consideration of referring this matter to

the local District Attorney's office for review of possible witness intimidation and perjury

6  charges against Scarlett under RCW 9A.72,[22] RCW 9.62.010,[23]  or similar due to Scarlett's

7  egregious misconduct in this matter and her history of self-admitted fraud and financial crimes

8  again governments and institutions. Perhaps most disturbing in this matter was Scarlett's ex parte

9  testimony on February 1 2022 where she claimed the US NLRB suggested she seek legal or law

10  enforcement intervention against Gjovik – an allegation that the US NLRB Asst. General

11  Counsel denied in writing, saying they never told Scarlett anything about the merits of my cases

12  or gave her any advice on taking any sort of legal action against me. (see Superior Court

13  Exhibits).

14  In conclusion, I submit this notice of intention to file additional motions if further

15  proceedings are called for. If Scarlett would prefer to request dismissal of her petition & this

case, Gjovik would agree to have the matter dismissed.[24]

16

17

18  I declare under penalty of perjury under the laws of the state of Washington that the foregoing is
true and correct.

19

20  Respectfully submitted,

21

22  **Ashley M. Gjovik (pro se)**
Dated: December 1 2022

23

24

25  [22] RCW 9A.72 PERJURY AND INTERFERENCE WITH OFFICIAL PROCEEDINGS
[23] RCW 9.62.010 Malicious prosecution.

26  [24] CRLJ 41 DISMISSAL OF ACTIONS: *(1) Mandatory. Any action shall be dismissed by the court: (i) By
stipulation. When all parties who have appeared so stipulate in writing; or (ii) By plaintiff before resting. Upon*

27  *motion of the plaintiff at any time before plaintiff rests at the conclusion of plaintiff's opening case. (2) Permissive.
After plaintiff rests after plaintiff's opening case, plaintiff may move for a voluntary dismissal without prejudice*

28  *upon good cause shown and upon such terms and conditions as the court deems proper.*
https://www.courts.wa.gov/forms/?fa=forms.contribute&formID=60
https://www.courts.wa.gov/forms/documents/FL%20All%20Family%20163%20Motion%20for%20Dismissal.doc

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17



18
*Exhibit: FirstnameBunchofnumbers & California Moral Character*

19
20
21
22
23
24
25
26
27



28
*Exhibit: FirstnameBunchofnumbers Account Dedicated to Suing Gjovik*

SECOND AMENDED COMPLAINT | 3:23-CV-04597-EMC                    DECEMBER 21 2023

Electronically Filed
Honorable Judge Lisa O'Toole
12/27/2023 8:00:00 AM
East Division, Redmond Courthouse
22CIV01704KCX
King County District Court

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## IN THE KING COUNTY DISTRICT COURT
## IN AND FOR THE STATE OF WASHINGTON

| | |
|---|---|
| Cher Swan Scarlett<br><br>            Petitioner,<br><br>vs.<br>Ashley M. Gjovik<br><br>            Respondent. | No.   22CIV01704KCX<br><br>RE: Notice of Intention to File Motions<br>upon Remand |

COMES NOW, Petitioner (Cher Scarlett) and submits this response to Ms. Gjovik's

Notice of intention to file motions:

**(i) Relief Requested.** The court should STRIKE this filing and Ms. Gjovik's "Notice of

Intention" from the court's record as they serve no legal purpose other than to further malign my

character.

**(ii) Statement of Facts.** Ms. Gjovik was factually found to have engaged in Unlawful

Harassment by the Honorable Lisa O'Toole on 3/1/2022. There was a full hearing in which Ms.

Gjovik received due process. Ms. Gjovik's attorney, Mr. Blair was present. I appeared *pro se*.

Ms. Gjovik's behavior continued, creatively, after the order was granted. She fabricated

information about Apple, Inc and then led people to the order between her and I. The tabloid

ORIGINAL

Honorable Judge Lisa O'Toole
East Division, Redmond Courthouse

New York Post contacted me asking for "my side of the story" on March 15th, 2022. Apple, Inc,

who I am in ongoing litigation against, then requested the records of the proceeding after the

publication of the story (despite my protest,) likely to use it against me in court. Ms. Gjovik then

sued the state of Washington as an opportunity to publish legally-protected libel about my

husband and I.

Ms. Gjovik's attorney withdrew from representing Ms. Gjovik on 5/23/2022. Ms. Gjovik

continued with her appeal *pro se*. I also proceeded *pro se*. However, Ms. Gjovik still held an

unfair advantage as a Juris Doctor, which was not considered by the appellate court.

On 9/26/2022, the Honorable Andrea Robertson reversed and remanded back to the

court. The appellate court determined that I met the legal standard to be considered a Limited-

Purpose Public Figure at the time of the trial. The appellate court also determined I did not

present a compelling case that Ms. Gjovik's behavior was intentionally malicious. The court

opined that the content-based restriction was not "narrowly tailored" and thus infringed on Ms.

Gjovik's first amendment rights. The court determined the content Ms. Gjovik posted was

protected by the first amendment because they posts of public information, republishing of my

own words, and Ms. Gjovik's opinions.

The appellate court erred in that judgement. As can be found in the court record, Ms.

Gjovik published on Twitter, Scribd, and her website private communications between myself

and her or others. The law does not differentiate between oral and written communications.

Washington requires the consent of all parties prior to divulging private communications. As

such, Ms. Gjovik's decision to publish these private communications without my consent was

not protected by the first amendment, but instead a gross misdemeanor under Wash. Rev. Code

ORIGINAL

Honorable Judge Lisa O'Toole
East Division, Redmond Courthouse

Ann. § 9.73.030. The court erred in not considering I lacked the background in law to argue the
legal basis for the lower court's order.

Ms. Gjovik's publications, as noted in the court record, also included republishing of
others' posts. These postings were defamatory and clearly malicious. The court did err in not
considering Ms. Gjovik's republication of libel written by others. (*Theiss v. Scherer, 396 F. 2d
646 - Court of Appeals, 6th Circuit 1968*).

Ms. Gjovik's publications included some opinions protected by the first amendment.
Other posts which the appellate court deemed opinions were not. For example, Ms. Gjovik's
"opinions" that I was going to testify against her on behalf of Apple, Inc, that I have a criminal
record, that I was under federal investigation by numerous agencies, and that I had her
blacklisted from the press. Because there was a factual basis for the opinions that can be
proven false (*Gertz v. Robert Welch, Inc., 418 US 323 - Supreme Court 1974*) and were
accompanied by derogatory implications (*Dixson v. Newsweek, Inc., 562 F. 2d 626 - Court of
Appeals, 10th Circuit 1977*) these are not protected by the first amendment and are factually
found to be libel. Re-publishing to Scribd and her website are not protected (*Yeager v. Bowlin,
693 F. 3d 1076 - Court of Appeals, 9th Circuit 2012*) and republications containing defamatory
content on the same platform that it was posted originally (*PENROSE HILL, LIMITED v. Mabray,
Dist. Court, ND California 2020*) constitute libel and are exempt from first amendment
protections.

Ms. Gjovik's postings were not about activism. Her purpose in publishing these things
was meant to paint me in a false light. Some of Ms. Gjovik's publications, as is in the court
record, misappropriated my name by publishing others' publications and claiming they were
written by me. Ms. Gjovik did this with the purpose of maligning my character to pursue a

ORIGINAL

Honorable Judge Lisa O'Toole
East Division, Redmond Courthouse

personal vendetta which is not protected. (*Felsher v. Univ. of Evansville, 755 N.E.2d 589, 600 (Ind. 2001)*), (*Time, Inc. v. Hill, 385 U.S. 374 (1967)*), and (*Cantrell v. Forest City Publishing Co., 419 U.S. 245 (1974)*).

Ms. Gjovik's posts also contained defamation that could not be reasonably considered by the court to have been for any other purpose but malicious. For example, in the court record I asked about a number of posts in which Ms. Gjovik made statements that she knew to be fabricated and damaging to encourage others to harass me. An example was a post in which Ms. Gjovik wrote that I had her "SWATed". The court is quite clear on what constitutes actual malice: "with knowledge that it was false or with reckless disregard of whether it was false or not." (*New York Times Co. v. Sullivan, 376 U.S. 254 (1964)*). Ms. Gjovik has never been SWATed, so it's unreasonable to opine that post was about "activism". The purpose was to make people believe I had put Ms. Gjovik's life in danger by making a hoax call to emergency services or law enforcement to have armed authorities dispatched to her home which never happened. The court did err in opining that these postings were protected by the first amendment.

Ms. Gjovik's posts also contained posts from my mother's Facebook account which revealed her name. My husband and my mother are not public figures and their names were only found by Ms. Gjovik's research of me. Ms. Gjovik argued that posting my mother's name—which led to people harassing her—was an accident and that she only re-published others' posting my husband's name. The law does not exempt recklessness in cases of doxxing, especially when the purpose of the post was malicious to begin with.

I did not exercise my right to appeal the appellate court's determination. Ms. Gjovik's attorney, Mr. Blair, did not inform his client of an email I sent him when I received his notice of

ORIGINAL

appearance in which I said that I would be willing to drop the complaint if she stopped harassing me and my family. I agree it was unlawful for both of us not to have the opportunity to settle the matter out of court and in not doing so, Mr. Blair caused Ms. Gjovik and I damage.

As Ms. Gjovik is aware, my only wish is for her to leave me and my family alone, including to cease publishing information about us and to stop defaming me. Ms. Gjovik has stopped using my name, but has continued this behavior, generally, like the lower court expected she would without an order. I have been harassed by Ms. Gjovik for over a year and simply cannot continue fighting with her. I have a family and a job which cannot continue to be damaged by the emotional damage Ms. Gjovik has caused me.

This does not mean I will not exercise my right to file for a new order with a better understanding of the law, and reporting such conduct to the Bar Association.

**(iii) Response**. In her filing, Ms. Gjovik shows no remorse in continuing to introduce libelous content about me into the public record. Ms. Gjovik has an absolute wanton disregard for the truth. Some of her statements constitute perjury.

1) On page 2, Ms. Gjovik claims I testified that my purpose in seeking this anti-harassment order because she filed a US NLRB charge against Apple, Inc. Ms. Gjovik's chief complaint against her attorney, Mr. Blair, did not notify Ms. Gjovik of my offer to settle the matter out of court, for which he received a warning from the Washington Bar Association. Ms. Gjovik admits then, she has factual knowledge that the basis of seeking the order was her publications about me and my family. Ms. Gjovik also refers to a conversation with a third party and an email from me to her which request Ms. Gjovik stop posting about my family and making defamatory statements about me.

ORIGINAL

Honorable Judge Lisa O'Toole
East Division, Redmond Courthouse

2) On page 3, Ms. Gjovik perjures herself again by claiming I "self-admitted" to student loan fraud and business fraud. Ms. Gjovik is referring to my disclosure that I enrolled in college to get student loans to help care my infant as a single mother in poverty. These loans were obtained under my own identity, I attended class at the institutions the loans were drawn on, and the loans are in good-standing. I was approved for $20,000 of student loan debt relief by the Department of Education in November. The "business fraud" Ms. Gjovik is referring to is my own disclosure that I had to pretend I was a designer or project manager so that I didn't experience homelessness with my infant due to sexism in the technology industry. It's ironic that Ms. Gjovik wishes to be a human rights attorney and claims her harassment was in the name of activism when she uses my being discriminated as a woman software engineer and living in poverty. The "check fraud" Ms. Gjovik is referring to is me overdrawing my own bank accounts. These accounts have all since paid off. The banks never took any action against me and I've never been charged with any crimes. My husband's criminal record is not material and decades old.

3) On page 3, Ms. Gjovik alleges Apple, Inc manipulated me into attacking Ms. Gjovik or out of self-preservation due to Apple, Inc's coercion. Apple, Inc has not had any communication with me since I received a letter from them for breach of contract for violating the NDA portion of my severance agreement. While I did report Ms. Gjovik's conduct to the business after she was terminated for self-preservation, it was due to Ms. Gjovik's argument that she had not engaged in the conduct and the knowledge that this conversation would come out during her legal processes. It is a violation of company policy not to report Business Conduct violations and I did not want to get fired. Ms. Gjovik and I agree that it is immaterial as it relates to her. In fact, Ms. Gjovik has disclosed she knows I was upset that it was included in Apple's defense.

ORIGINAL

Honorable Judge Lisa O'Toole
East Division, Redmond Courthouse

4) On page 6, Ms. Gjovik brings up first a claim that I harassed, defamed, and intimidated her post-order, using a claim that I reported her to her web host for "child porn" to bolster this statement. Ms. Gjovik provides no evidence that I have harassed or defamed her. The only example she gives is to perjure herself. Ms. Gjovik is aware that the type of complaint I selected in the web form was not "child porn", but rather the form had a technical issue which defaulted to the first choice in alphabetical order. She received a description and subject line very clearly stated I was reporting that the publication was in violation of the anti-harassment order. Her attorney, Mr. Blair and I discussed this matter and Ms. Gjovik has these records.

5) On page 6, Ms. Gjovik presents the appellate court's determination in a way that is malicious and false. Ms. Gjovik claims her Anti-SLAPP motion was affirmed in part by the appellate court. The court made no affirmations of any of Ms. Gjovik's filings. The appellate court judge "elected to simply not review or consider those items which were inappropriately provided." Instead, Ms. Gjovik quotes her own dismissed filing which is not based in fact as though it was affirmed by the appellate court when it was not.

6) On page 7, Scarlett references witness testimony she provided as proof she wasn't harassing me. These statements provided no defense for Ms. Gjovik's behavior and contained hearsay and perjured statements. These were dismissed by both the lower court and the appellate court. Ms. Gjovik's statement that I couldn't find any witnesses is nonsense. Ms. Gjovik is aware that there are witnesses who would speak to her misconduct. Personally, I opt not to invite Ms. Gjovik's harassment onto anyone else than those she has already maligned. Ms. Gjovik against quotes me as saying things I did not say.

7) On page 8, Ms. Gjovik brings up my dismissal of my allegation of extortion by Ms. Gjovik against me as a negative. Ms. Gjovik tweeted about it and made demands of a material,

ORIGINAL

Honorable Judge Lisa O'Toole
East Division, Redmond Courthouse

financial benefit to her in exchange for ceasing publishing defamatory and disparaging content about me and my family. No more clear example of maligning of my character for her vendetta exists than this. As a Juris Doctor, Ms. Gjovik is certainly aware that "not my idea" is not a valid defense for extortion.

8) On page 8, Ms. Gjovik claims that I made harassing and disparaging edits regarding Ms. Gjovik on Wikipedia, citing Wikipedians who were erring on the side of caution due to some overlap that meant that we could *possibly* be the same person. The admin in this case expressed doubt publicly and privately and the matter is being reviewed by the arbitration committee. There are facts from prior cases which exclude me from such findings and another anomalies that can only be explained by the existence of another party unconnected to me. Additionally, Ms. Gjovik's allegations that harassing or disparaging edits were made to her Wikipedia article do not seem to be rooted in fact. Ms. Gjovik presents no evidence of actual harassment or disparaging edits. If Ms. Gjovik were to bring a case against the party or parties that have edited her page, it would be dismissed. Ms. Gjovik also knows that these cases are arbitrary and conclusions can be wrong or misleading. Further, Ms. Gjovik knew of my being blocked before I was notified—

9) On page 9, Ms. Gjovik misrepresents my conversations with the NLRB. The chief security officer advised me that the NLRB did not have jurisdiction and instead advised me that harassment would be under the jurisdiction of local law enforcement and that extortion would be under the jurisdiction of the FBI. Local law enforcement advised me to seek an anti-harassment order. As Ms. Gjovik is aware, I have emails and a voicemail from the agency which corroborate this. In my conversations with the NLRB, it was determined that providing their statements in writing would constitute a conflict of interest. I went forward with the document they provided me instead, the FOIA guidelines which I used in court to successfully argue my point. I asked her to

ORIGINAL

Honorable Judge Lisa O'Toole
East Division, Redmond Courthouse

remove or redact personal and/or private information about me and family from her publicized memo. I asked her to remove entirely tweets about me that could not reasonably be connected to her. Ms. Gjovik has no reason to publicize such material and the NLRB would redact it if available via FOIA. Ms. Gjovik has no regard for the my rights or that of my family in order to pursue her vendetta.

**(iv) Conclusion**. This matter could have been settled out of court had her attorney shared my communication. My only wish is for Ms. Gjovik to leave me and my family alone. I hope that in dropping this matter Ms. Gjovik can exercise any modicum of common decency or restraint and move on. Ms. Gjovik's allegations of fraud and other misconduct are without any factual basis. The appellate court did err in its determination, but I have elected not to take further action at this time. I do not wish to harm Ms. Gjovik's law career. I hope this settles the matter and that Ms. Gjovik's conduct has reached its end.

I declare under penalty of perjury under the laws of the state of Washington that the facts I have provided on this form (and any attachments) are true.

Signed at (city and state):

Redmond, WA   date: Dec 23, 2022

    s/Cher Scarlett_____

ORIGINAL

Electronically Filed

1/17/2023 8:30:00 AM

22CIV01704KCX

King County District Court

1    **Ashley M. Gjovik (pro se)**                    **Judge E. Rania Rampersad**

2

3

4              # IN THE KING COUNTY DISTRICT COURT
5              # IN AND FOR THE STATE OF WASHINGTON

6                   ## East Division, Redmond Courthouse
7

8

9                                          **WA District Court No.:** 22CIV01704KCX

10                                         **Honorable Judge E. Rania Rampersad**

11   **CHER SCARLETT,** et al

12   Petitioner/Appellee,                   **REPLY TO PETITIONER'S**
                                            **MOTION TO STRIKE**
13

14          v.                              **& REQUEST FOR EQUITABLE**
15                                          **INTERVENTION**

16

17   **ASHLEY GJOVIK**                      **WITH EMBEDDED EXHIBITS**

18   Respondent/Appellant.

19                                          **JANUARY 16 2023**

20

21                                          <u>ASSOCIATED CASES</u>

22                                          **WA COURT OF LIMITED JURISDICTION**
                                            **Honorable Judge Lisa O'Toole**
23

24                                          **WA SUPERIOR COURT NO:** 22-2-03849 SEA
                                            **Honorable Judge Andrea Robertson**
25

26                                          **US DC NO:** 2:22-CV-00807-RAJ-BAT
                                            **Honorable Judge Richard A. Jones**
27

28

## King County District Court: Scarlett v Gjovik

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### Reply to Motion to Strike

This case was introduced by petition of Cher Scarlett to the King County Court of Limited Jurisdiction requesting a TRO & anti-harassment restraining order against Gjovik on January 31 2022.  In her petition and this case, Scarlett made allegations of misconduct by Gjovik, supposedly starting in December 2021 through February 2022 (after the petition was filed). She infers in her Motion to Strike that Gjovik is somehow still harassing her, despite Gjovik's compliance with the unlawful gag-order for over six months & Scarlett acknowledging even after the order was lifted, Gjovik still refuses to say Scarlett's name publicly (which is out of fear and due to acute PTSD).[1] In the motion, last month Scarlett wrote, "*I have been harassed by Ms. Gjovik for over a year and simply cannot continue fighting with her*" – despite Gjovik not initiating contact with Scarlett for almost **sixteen months** now – and it is Scarlett who instead continues to initiate contact with Gjovik – with Gjovik's friends about Gjovik – and with Gjovik's law school, the Bar association, in court, and with law enforcement about Gjovik.

Scarlett's allegations against Gjovik included an NLRB charge Gjovik filed against Apple Inc, Apple Inc's supposed justification for terminating Gjovik's employment, Twitter posts Gjovik made complaining of harassment and intimidation by Cher Scarlett in retaliation for reporting Apple Inc to the government, Twitter posts Gjovik made complaining of Scarlett's habit of making false statements, complaints of Scarlett harassing Gjovik's friends while claiming she was a "defense witness" for Apple despite nothing being at trial yet, and legal filings Gjovik made to the NLRB, US DOL, US DOL, and California government about the dispute with Apple Inc (which Gjovik also published & discussed publicly). Gjovik complained immediately that the lawsuit, this matter, was further witness intimidation & retaliation, & has continued to complain as such for almost a year now.

On September 26 2022, the Honorable Judge Andrea Roberson found there was no basis for a finding of unlawful harassment by Gjovik and ordered the decision against Gjovik to be reversed & remanded. On December 2 2022, Gjovik submitted a notice of intent to file/re-file motions if the case was to be remanded for further hearings in District Court.

On December 12 2022, the honorable Judge E. Rania Rampersad published a Judicial Review order on this matter, agreeing with Judge Roberson & deciding the Order against Gjovik

---

[1] "*Ms. Gjovik has stopped using my name,*" Scarlett's Motion to Strike, page 5

## King County District Court: Scarlett v Gjovik

1
2

is to be vacated and Cher Scarlett's case against Ashely Gjovik was dismissed. Judge Rampersad denied Gjovik's intent to file/re-file motions as the case was dismissed.

3
4
5

On December 27 2022, Cher Scarlett stated her intention to not appeal the matter, but instead filed a motion to strike Gjovik's entire December 2nd filing, & threatened to start new litigation on the same facts, & to report Gjovik to the Bar Association.

6
7

### Scarlett's Motion to Strike

8
9
10
11

A Motion to Strike is to be filed within 20 days following service of a pleading and may request to strike insufficient defenses, or matters that are redundant, immaterial, impertinent, or scandalous.[2] Scarlett files a Motion to Strike an entire document which the court already reviewed and ruled on. Scarlett also files the Motion past the 20-day deadline for a legitimate motion to strike, which this is not.

12
13
14
15
16
17
18
19
20

Scarlett attempted something similar in Superior Court, at one point motioning to strike Gjovik's entire appellant brief, brief exhibits, and the exhibit of the legal filing that Scarlett had alleged contained the supposed unlawful harassment but was never presented to a court as evidence.[3] Through this ordeal Scarlett has attempted to silence Gjovik, Scarlett has avoided presenting evidence of her claims (because there usually is none), and to attempt to strike or somehow seal Gjovik's defenses against Scarlett, including Gjovik's evidence. Scarlett wants the court and others to believe her at her word, as she makes horrific allegations against Gjovik without evidence, & while attempting to prevent Gjovik from defending herself or gather/preserve evidence of the harassment.

21
22
23
24
25
26

Scarlett also used this frivolous Motion to Strike to submit a nine-page document making new, additional allegations against Gjovik – and more threats against Gjovik, at least one of which Scarlett then proceeded to fulfill. Indeed, Gjovik was contacted by the Bar Association on December 23 2022 (the day Scarlett signed the Motion to Strike), with the Bar suddenly & formally asking Gjovik for information about any new litigation or complaints made about Gjovik. Under information and belief, Scarlett reported Gjovik to the Bar Association on December 23 2022 – likely alleging much of what she included in the Motion to Strike.

27
28

---

[2] Washington Courts, Superior Court Rules, https://www.courts.wa.gov/court_rules/pdf/CR/SUP_CR_12_00_00.pdf
[3] Scarlett v Gjovik, King County Superior Court, 22-2-03849-7 SEA, "Motion to Strike"

## King County District Court: Scarlett v Gjovik



11

12    This does not mean I will not exercise my right to file for a new order with a better

13    understanding of the law, and reporting such conduct to the Bar Association.

*Scarlett's Motion to Strike, signed Dec 23 and submitted Dec 27 2022.*

**[3] State Bar of California - Update to Application for Determination of Moral Character**

From  🔒 Moral Character <moral.character@calbar.ca.gov>                    ☆ 🖨 Dec 23, 2022
To     Ashley Gjovik

*Email Gjovik received from the California Bar Association on Dec 23 2022.*

## New Allegations & Threat of Further Litigation

Scarlett did not appeal this matter, but is instead threatening new litigation based on the same facts, and also wants to seal/strike as much of the prior court record as possible.

In Motioning to Strike and making new allegations – Scarlett is hoping to make it more difficult for the next Judge, in her **next** lawsuit against Gjovik in these courts, which Scarlett already threatened to file, to be able to figure out what is actually happening. Scarlett's inflammatory accusations & manipulative testimony are used to exploit the goodwill of Judges who want to error on the side of caution related to matters of safety. Scarlett's manipulation is not fair to Gjovik, to the Judges involved, or the legal system.

For example, while Scarlett's Motion to Strike now accuses Gjovik of **perjury** for complaining on Twitter about "SWATing"[4] – Scarlett not only admittedly reported Gjovik to the FBI and local law enforcement, alleging federal crimes including blackmail and extortion, but in her argument for a TRO in this court, Scarlett also argued that she & her family's physical safety were in danger due to Gjovik to the extent she was looking to relocate her home, said she was

---

[4] Motion to Strike: "*Ms. Gjovik's posts also contained defamation that could not be reasonably considered by the court to have been for any other purpose but malicious. For example, in the court record I asked about a number of posts in which Ms. Gjovik made statements that she knew to be fabricated and damaging to encourage others to harass me. **An example was a post in which Ms. Gjovik wrote that I had her "SWATed". The court is quite clear on what constitutes actual malice: "with knowledge that it was false or with reckless disregard of whether it was false or not. Ms. Gjovik has never been SWATed, so it's unreasonable to opine that post was about "activism". The purpose was to make people believe I had put Ms. Gjovik's life in danger by making a hoax call to emergency services or law enforcement to have armed authorities dispatched to her home which never happened. The court did err in opining that these postings were protected by the first amendment.*" (pg4)

## King County District Court: Scarlett v Gjovik

1   unsure if Gjovik owned a firearm & worried Gjovik was "unwell". These allegations and actions

2   could easily result in armed law enforcement to decide to investigate and make a surprise visit to

3   the alleged perpetrator's home.

4

5   **6.** How did the incidents you describe above make you, the minor, or the vulnerable adult feel?

6   I am looking for another place to move to immediately for our safety. I am scared of what
    she will do if no one stops her. I am afraid of what will happen if her charges are not

7   meritous. I am afraid of this woman and her followers.

8   Pt for an Or for Protection – Harassment/Stalking (PTORAH, PTORSTK) – Page 4 of 7
    WPF UHST-02.0200 (07/2019) – RCW 10.14.040, .800, RCW 7.92.030

9   KCDC July 2019

10

11       *Scarlett's Petitioner for a Restraining Order against me, Jan 31 2022, pg 4*

12   **9.** Does possession of a firearm or other dangerous weapon by the respondent present a serious and
         imminent threat to public health or safety, or to the health or safety of a victim? Please describe:

13   Unsure, behavior leads me to believe she is unwell

14

15   **10.** Do you have any evidence of the harassment or stalking conduct other than testimony?
         ☐ No

16       ☒ Yes.  I have attached the following evidence:
             ☐ Copy of mail or written notes

17           ☐ Copy of text messages
             ☐ Copy of email messages

18           ☒ Copy of social media messages
             ☒ Police report
             ☐ Declaration or Affidavit from the following witness: _____

19           ☐ Other (describe): _____

20       *Scarlett's Petitioner for a Restraining Order against me, Jan 31 2022, pg 5*

21       **Emergency temporary protection (up to 14 days) until the court hearing:**

22       ☒ An emergency exists as described below.  I request that a **Temporary Protection Order** granting
           the relief I requested above for a no-contact, surveillance, exclude from places, or stay away order
           be issued immediately, without prior notice to the respondent, be effective until the hearing.

23       ☐ I also request a temporary surrender of all firearms, other dangerous weapons, and concealed
           pistol licenses without notice to the other party because irreparable injury could result if an order
           is not issued until the hearing.

24       What irreparable harm would result if an order is not issued immediately without prior notice to the
         respondent?

25       I have already struggled to find employment because of her harassment, along with
         harassment from her followers that could lead to misuse of 911 dispatch resulting in

26       irreparable harm to myself or to my child.

27   I declare under penalty of perjury under the laws of the state of Washington that the foregoing is true and
     correct.

28   Dated: 1/31/2022 _____ at Kirkland _____ Washington.

## King County District Court: Scarlett v Gjovik

1

*Scarlett's Petitioner for a Restraining Order against me, Jan 31 2022, pg 7*

2

3

4



5

6

7

8

9

10

11

*Scarlett's E-Filed Evidence, February 15 2022, pg 40-43*

12

13

Scarlett also admitted in February of 2022 that the FBI complaint was a meritless report ("*I was*

14

*in a terrible place mentally, had relapsed…*") & also claimed "*another government agency*" told

15

her to file it. Once again, another claim that the government was somehow sponsoring her

16

harassment of Gjovik, without any evidence, and a claim Scarlett never brought up again after

this email.

17

18

19

8) Yes, I reported you to the FBI. I was in a terrible place mentally, had relapsed, and you were posting
private/personal information about me because you thought I was testifying against you and just to do

20

on my distress by finding a way to make a material gain via GFM and Twitter. It's abusive, Ashley. And
another government agency with insight into this suggested I report it to the FBI because they believe
what you did was a federal crime.

21

22

*Feb 5 2022 email; Scarlett's E-Filed Evidence, February 15 2022, pg 40-43*

23

24

Further, Gjovik's complaint about SWATing was posted in an effort to stop contact by Scarlett,

25

who had begun reaching out to people supporting Gjovik on Twitter about her Apple lawsuit,

and telling them not to support Gjovik, and making inflammatory allegations against Gjovik.

26

This was in February **after** Scarlett has filed the Petition for a restraining order & before Gjovik

27

was served. One person asked if Scarlett & Gjovik could "talk it out" & Gjovik's response was a

28

request to not encourage contact due to the severity of Scarlett's harassment, including a

## King County District Court: Scarlett v Gjovik

1    comment made by Scarlett: *"I literally don't want her to exist in my world lol,"* which Gjovik
2    read as Scarlett wishing Gjovik was dead.



*Scarlett's E-Filed Evidence Feb 15 2022- Gjovik's E-Filed Evidence Feb 14 2022*

11
12       Now, Scarlett also alleges Gjovik committed a gross misdemeanor (§ 9.73.030) with
13   Scarlett apparently claiming that Gjovik complaining about harassing messages sent to Gjovik by
14   Scarlett – and sent by Scarlett to Gjovik's friends about Gjovik which Gjovik's friends provided
15   to Gjovik so Gjovik could report it to the government – is somehow Gjovik "wiretapping"
16   Scarlett.[5]  Scarlett even claims she may sue Gjovik again now alleging this criminal wiretapping
17   statute. Gjovik providing evidence of directed harassment by Scarlett against Gjovik is not
18   wiretapping, nor is it criminal conduct by Gjovik – and the allegation of such is even more
19   federal witness intimidation and retaliation.

20       As for the new allegation that Gjovik was re-publishing defamatory content, indeed the
21   legal document Scarlett continues to reference but refuses to allow to be admitted into evidence,
22   was Gjovik complaining to the government about harassment, defamation, and intimidation by
23   Apple against Gjovik. Gjovik quoted hundreds of posts made by accounts alleged to be Apple
24   Inc, that made horrible defamatory posts about Gjovik & she complained it included unlawful
25   defamation in violation of labor and whistleblower laws. It cannot be unlawful to provide
26   evidence of defamation in a legal filing alleging defamation. Scarlett also attempts to make an
27   extensive legal filing about Apple Inc harassing Gjovik, now somehow about Scarlett.

---

[5] Page 2 of Scarlett's Motion to Strike *(As such, Ms. Gjovik's decision to publish these private communications without my consent was not protected by the first amendment, but instead a gross misdemeanor under Wash. Rev. Code Ann. § 9.73.030. The court erred in not considering I lacked the background in law to argue the legal basis for the lower court's order.)*

No. 22CIV01704KCX                                    ASHLEY M. GJOVIK (PRO SE)

# King County District Court: Scarlett v Gjovik

1    Scarlett also now claims she never said she has a history of fraud & alleges Gjovik's

2  reference to Scarlett's prior statements is now **perjury by Gjovik**.

> 2) On page 3, Ms. Gjovik perjures herself again by claiming I "self-admitted" to student
> loan fraud and business fraud. Ms. Gjovik is referring to my disclosure that I enrolled in college
> to get student loans to help care my infant as a single mother in poverty. These loans were
> obtained under my own identity, I attended class at the institutions the loans were drawn on, and
> the loans are in good-standing. I was approved for $20,000 of student loan debt relief by the
> Department of Education in November. The "business fraud" Ms. Gjovik is referring to is my own
> disclosure that I had to pretend I was a designer or project manager so that I didn't experience
> homelessness with my infant due to sexism in the technology industry. It's ironic that Ms. Gjovik
> wishes to be a human rights attorney and claims her harassment was in the name of activism
> when she uses my being discriminated as a woman software engineer and living in poverty. The
> "check fraud" Ms. Gjovik is referring to is me overdrawing my own bank accounts. These
> accounts have all since paid off. The banks never took any action against me and I've never
> been charged with any crimes. My husband's criminal record is not material and decades old.

*Motion to Strike page 6*

Scarlett's own Evidence includes quotes by Scarlett saying she "*invented whole companies*,"
"*enroll[ed] in college multiple times and withdrawing for the student loans*," and engaged in
"*check fraud*." Scarlett notes her involvement in "check fraud" was published by the Washington
Post. It does not appear Scarlett has alleged defamation by Washington Post.

> 2) I have lied about my education in the past, and my role, tried to hide my gender, and invented whole
> companies. I had an infant, was making poverty wages at multiple hourly jobs, and I was trying to
> survive. I did what I needed to do, including enrolling in college multiple times and withdrawing for the
> students loans.
>
> I've been very open about my past, going far beyond that. I WaPo did a very thorough background
> check on me and it would have taken more than the limit of 2,000 words to disclose everything. They
>
> chose to disclose the check fraud because it was the most extreme and fewest words.

*Email from Scarlett to Gjovik, Scarlett's E-Filed Evidence, CLJ, February 15 2022, pg 62-66*

Scarlett makes many statements in her Motion supposedly quoting allegations made by
Gjovik, but it is unclear what source she is referencing and many are simply untrue. Scarlett's
comments about being a defense witness for Apple were her own statements to a friend of
Gjovik's while trying to convince the friend not to support Gjovik, which Gjovik's friend

## King County District Court: Scarlett v Gjovik

1  complained about in a witness statement in support of Gjovik filed to this court, yet Scarlett now

2  apparently claims it is "wiretapping."



*Gjovik's Evidence & D.U. Witness Statement, CLJ, Feb 14 2022 & Feb 17 2022*

18      Scarlett also now claims she did not write some of the things in Gjovik's legal filing

19  which Gjovik cited were statements by Scarlett, but Scarlett does not point to anything specific,

20  and fails to mention that in that document, which she refuses to let a court review, included

21  links/URLs to her comments, made from Scarlett's own accounts on Twitter and other social

22  media, most of which are still available today from an account Scarlett is actively using.[6]

23      Scarlett accuses Gjovik of "**perjury**" for refencing witness statements admitted to the

24  trial record during the Court of Limited Jurisdiction hearings. However, per the court transcript

25  from the March 1st hearing, Judge O'Toole "*incorporated in by this reference*" including

26  "*statements of the witnesses that Ms. Gjovik has submitted.*" Neither the lower court or the

---

[6] Motion to Strike: "*Ms. Gjovik's postings were not about activism. Her purpose in publishing these things was meant to paint me in a false light. Some of Ms. Gjovik's publications, as is in the court record, misappropriated my name by publishing others' publications and claiming they were written by me. Ms. Gjovik did this with the purpose of maligning my character to pursue a personal vendetta which is not protected.*"

## King County District Court: Scarlett v Gjovik

1    appellate court "dismissed" the witness statements & they continue to be part of the court record.

2    (Note it appears Scarlett refers to Gjovik as Scarlett in her legal filing)

3

4
5    **Giovik?**
6    6) On page 7, Scarlett references witness testimony she provided as proof she wasn't
     harassing me. These statements provided no defense for Ms. Gjovik's behavior and contained
7    hearsay and perjured statements. These were dismissed by both the lower court and the
     appellate court. Ms. Gjovik's statement that I couldn't find any witnesses is nonsense. Ms.

8
9                           *Motion to Strike page 7*

10
11   ```
     21        THE COURT:  Okay.  Thank you.  So give me a minute here.
12   22        All right.  So I've certainly heard the testimony, I've
13   23     reviewed the documents.  Both parties have produced a number
     24     of documents and a number of written statements, all of
14   25     those are incorporated in by this reference, including the

15   1      statements of the witnesses that Ms. Gjovik has submitted,
16   2      and the filings that both Ms. Gjovik and Ms. Scarlett have
17   3      filed in our electronic court records, and I do incorporate
     4      all of those by this reference.  And I've certainly listened
18   5      to the testimony and argument of all parties.
     ```

19
20                 *Court Transcript, CLJ Hearing, March 1 2022*

21       Scarlett also complains about Gjovik commenting about Scarlett's criminal record.

22   Gjovik's comment appears to only have been revealed to Scarlett after Gjovik had to submit

23   evidence to this court in defense of Scarlett's allegations and provided the conversation with a 3rd

24   party that Scarlett alleged was **extortion**, despite Scarlett not being part of the conversation and

25   Scarlett being the person who instigated the conversation attempting to get Gjovik to voluntarily

26   agree to a gag-order preventing Gjovik from complaining of Scarlett's harassment– which

27   Gjovik did not agree to.

28

No. 22CIV01704KCX                                              ASHLEY M. GJOVIK (PRO SE)

                              **Page 10 of 17**

## King County District Court: Scarlett v Gjovik



*1:1 text messages, Gjovik's E-Filed Evidence, CLJ, Feb 14 2022, page 27*

Regardless, Gjovik made an off-hand comment about Scarlett having a criminal record in a private conversation that only had to become public after Scarlett sued Gjovik. Scarlett also publicly comments that she **has committed crimes** and that she has **been to jail** at least three times. Gjovik's comment about Scarlett's "criminal record" is not defamation.



*Twitter posts by Scarlett*

Finally, Scarlett's comments about the NLRB's involvement in this matter continue to contradict statements by the NLRB and Scarlett's own testimony. Scarlett previously asserted she was suing Gjovik because of Gjovik's NLRB charge against Apple, and associated filings. [9] (Gjovik did make allegations about Scarlett's conduct as an agent of Apple, or under a negligence theory, but not as a named party.) Scarlett also makes random references to the FOI Act, which is inapplicable to private individuals and NLRB said they did not provide legal advice on the matter. Scarlett also continues to infer the NLRB provided her some type of secret guidance about this matter, which the NLRB denied.

---

[7] https://twitter.com/cherthedev/status/1027234912288604161
[8] https://twitter.com/cherthedev/status/1279872398087663616
[9] Motion to Strike page 5-6

## King County District Court: Scarlett v Gjovik

9) On page 9, Ms. Gjovik misrepresents my conversations with the NLRB. The chief security officer advised me that the NLRB did not have jurisdiction and instead advised me that harassment would be under the jurisdiction of local law enforcement and that extortion would be under the jurisdiction of the FBI. Local law enforcement advised me to seek an anti-harassment order. As Ms. Gjovik is aware, I have emails and a voicemail from the agency which corroborate this. In my conversations with the NLRB, it was determined that providing their statements in writing would constitute a conflict of interest. I went forward with the document they provided me instead, the FOIA guidelines which I used in court to successfully argue my point. I asked her to

*Motion to Strike page 7-8, Dec 23 2022*

How did the respondent make these statements? ☐ in person ☐ mail/written notes ☐ e-mail ☐ text ☐ phone ☒ social media (such as Facebook and Twitter) ☐ other (describe): _____

B. Describe other incidents of harassment or stalking. For each incident, include the date, time (on or about), location, what was said, how statements were made, and what was done to a victim.

because of the monetary value associated with her demands in exchange to stop harassing me. Another friend, Janneke Parrish, also tried to get her to stop, she said she made similar possibly extorting requests to stop.

I also reported her behavior to her University, and to Twitter. Neither of these seems to have deterred her from continuing to engage in the harassment.

On January 11, 2022, she filed an NLRB charge against Apple, Inc, claiming that I was harassing her on Apple's behalf. I have not harassed her. On January 31, 2022, she published a "memo" for that charge containing defamatory and private information about me (and others) on a platform called Scribd. Ordinarily, this information would be redacted and confidential by the NLRB. She has shopped this information around to the press in an attempt to make it public record, for malicious purposes. Much of the information she has reposted is my personal medical information, which I have not given her consent to share.

https://www.scribd.com/document/555822358/US-NLRB-Ashley-Gjovik-Apple-Inc-Jan-10-2022-Charge-Draft-1

https://twitter.com/ashleygjovik/with_replies (there's a lot more here)

*Scarlett's Petition for a Restraining Order, Jan 31 2022, pg 4*

## King County District Court: Scarlett v Gjovik

12. Is there any other litigation between the victim/s and the respondent? This includes all matters - pending or past - such as parenting plans, landlord-tenant disputes, employment disputes, or property disputes. If yes, provide case number/s if known, type of case, and name of court:

NLRB Charge CA-288816 - charge against Apple, Inc, which contains false/misleading information about me made in bad faith by Ashley Gjovik

➤ **Requests**

*Scarlett's Petition for a Restraining Order, Jan 31 2022, pg 6*

```
13              MS. SCARLETT:  Okay.  So they have to --
14              THE COURT:  -- click on outside links.
15              MS. SCARLETT:  -- print outs?  One of the
16   documents that she -- and this is what caused me to do this,
17   is because the director of security at the National Labor
18   Relations Board believes that she filed a charge with the
19   intent to harass me on January 11th.  It is 191 pages long and
20   mentions me 288 times.
21              THE COURT:  All right.  And -- and how do you
22   know that someone from the National Labor Relations Board
23   believes this was solely to harass --
24              MS. SCARLETT:  They contacted me.  I have a
25   voicemail from them.
```
Anderson Transcription Solutions LLC

*Scarlett's ex parte Testimony, Petition for a TRO, Feb 1 2022*

## King County District Court: Scarlett v Gjovik

///

We started a movement called #AppleToo together, but after she made other members of the group uncomfortable with her punching down on collective action, defensive aggression after constructive feedback about a racist Twitter post she made, and her wishes to use the movement as private leverage for her own cases against Apple, she voluntarily parted ways

///

In late August of 2021, Ms. Gjovik shared with me that she had leaked information protected by our non-disclosure agreements to Zoe Schiffer of the Verge, and she was terminated a week later for those policy violations. Ms. Gjovik was later denied unemployment benefits by the state of California after they determined she was terminated for just cause, per her sharing the letter from unemployment on Twitter. I shared an opinion on the application Blind that it would be difficult to prove her retaliatory discharge claims to the NLRB and the Department of Labor because she had, in fact, leaked those documents. In December of 2021, she initiated a

////

Ms. Gjovik stated she was cyberharassing me because I was testifying against her on behalf of Apple in her cases against them, and further because I reported her conduct to the FBI. This is untrue, as Alexander Hajduk, an investigating officer of the NLRB, and I both told her. I was cited in their defense with a text message conversation she posted on Twitter, not testifying against her.

////

The Director of Security of the NLRB, Raymond Hankins, and the supervisory Field Attorney for Region 32, Catherine Ventola, which is handling Ms. Gjovik's NLRB charge which names me, both recommended over the phone that I report Ms. Gjovik's conduct to federal and local authorities, on or around January 25, 2022, and on or around February 4, 2022, respectively. They further advised that they had had numerous operations meetings to discuss how to handle Ms. Gjovik's conduct and my personal and private information being published without my or my family's consent. They advised they would redact information per Exemption 6 of FOIA, and linked me to the relevant guide from the DOJ, but said they did not have jurisdiction over her

Ms. Gjovik's cyberharassment of me appears to be in part for exercising my own first amendment rights in expressing my opinion that her retaliatory discharge case would be hard to prove because of the bonafide fact that she had leaked private documents about unreleased intellectual property owned by Apple to the press, and additionally because I was cited in Apple's defense case in her charges against the company. I took the time to apologize for exercising those first amendment rights, because it clearly hurt her feelings, despite my right to say such things, and her public assertions that she supported such rights.

*Scarlett's written Testimony, CLJ Petition for a Restraining Order, Feb 15 2022*

**King County District Court: Scarlett v Gjovik**

Cher Scarlett
@cherthedev

In my conversation with the federal agency about what occurred, and to avoid disparagement and defamation, I told them matter-of-factly what happened and they recommended I report this person to the FBI for extortion.

Being a witness does not give you a license to abuse.

11:57 AM · Feb 5, 2022 · Twitter Web App

*Gjovik's E-Filed Evidence, Feb 14 2022*

MR. BLAIR: That sounds like an argument, Your Honor.

THE COURT: Just tell us the question.

Q. (By Ms. Scarlett) Why do you think -- why have you made statements like that that I am stalking anybody who -- stalking you, coercing you, harassing you, intimidating you, threatening you, and telling people that bad things will happen to them if they support you?

Why were you saying that I was harassing, defaming, swatting, threatening, illegally coercing you to modify federal charges. Why we were saying -- it should be mentioned that I am currently under investigation by numerous federal agencies and law enforcement for federal witness intimidation and obstruction of justice.

Why have you said that I'm in active communication with Apple helping Apple in their campaign of harassment, threats and horror against the safety whistle blower. Why did you say I'll report you to Apple if I leak Apple's crimes? Why did you say --

MR. BLAIR: Your Honor, can we have some help here? I

*Scarlett's oral Testimony, CLJ, Hearing for a Restraining Order, March 1 2022*

## King County District Court: Scarlett v Gjovik



*Email from NLRB; Gjovik's Superior Court Appellant Brief Exhibit A (page 3)*

This case has been buttressed by falsehoods & inflammatory allegations. Even before Gjovik was served, after Scarlett filed the petition and testified at a TRO hearing, Scarlett then proceeded to send Gjovik a long & intimidating email on February 5 2022 which repeatedly said she did not believe Gjovik's cases/charges against Apple have merit, & Scarlett demanded Gjovik modify Gjovik's federal legal filings to remove (not redact) evidence and allegations about Scarlett.

In this email, Scarlett positioned that she was not adversarial to Gjovik, and even said would she never voluntarily testify against Gjovik, after she had already testified against Gjovik *ex parte* on February 1 2022 for this matter but would not serve Gjovik until mid-day February 14 2022, the day before the actual hearing. [10]

---

[10] See Gjovik's Reply Brief & Evidence, King County CLJ, Feb 14 2022

# King County District Court: Scarlett v Gjovik

1) I am not testifying against you, nor on Apple's behalf. I wouldn't do that unless I was subpoenaed, and I don't believe they would have me do that, because cross-examination would allow me to answer questions that would discuss their culture of surveillance.

I am named in their defense, which I was only informed of as a courtesy. I am upset by it, given what I've been through, which is why I mentioned it.

*Feb 5 2022 Email; Scarlett's E-Filed CLJ Evidence, February 15 2022, pg 62-66*

## Conclusion

Cher Scarlett makes it clear in her Motion to Strike that she still believes there should be a finding of unlawful harassment against Gjovik, & Scarlett condemns the decisions to reverse and vacate made by the Honorable Andrea Robertson & Honorable Rania Rampersad. However, Scarlett says she will not appeal the decision and has allowed the window for appeal to expire, yet Scarlett also threatens to sue Gjovik again (assumably in this same court) for the same facts that were already found to not be harassment, while also removing documents from the record.

I understand and appreciate this courts hesitancy to dismiss with prejudice or issue sanctions (as it would create Full Faith & Credit issues, as well is implicate jurisdictional concerns), however Scarlett actively threatens to continue this nightmare in your courts. If the court would feel comfortable doing so, I would like to request consideration of the addition of Cher Scarlett to the local and/or state vexatious petitioner's list or another remedy in the court's wisdom on matters such as this.

In conclusion, Scarlett's Motion to Strike should be denied, this matter should be closed, & something should be done to prevent Cher Scarlett from continuing this meritless persecution that is not only terrorizing me, but also wasting the court's critical time & resources.

I declare under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct. Respectfully submitted,

**Ashley M. Gjovik (pro se)**
Dated: January 16 2023

Electronically Filed
Honorable Judge Lisa O'Toole
12/24/2023 8:30:00 AM
East Division, Redmond Courthouse
22CIV01704KCX
King County District Court

IN THE KING COUNTY DISTRICT COURT
IN AND FOR THE STATE OF WASHINGTON

Cher Swan Scarlett

                  Petitioner,

vs.

Ashley M. Gjovik

                  Respondent.

No. 22CIV01704KCX

RE: REPLY TO PETITIONER'S MOTION TO STRIKE & REQUEST FOR EQUITABLE INTERVENTION

---

COMES NOW, Petitioner (Cher Scarlett) and submits this response to Ms. Gjovik's Reply & Request:

**(i) Relief Requested.** The court should STRIKE this filing and Ms. Gjovik's "REPLY TO PETITIONER'S MOTION TO STRIKE & REQUEST FOR EQUITABLE INTERVENTION" from the court's record as they serve no legal purpose other than to further malign my character.

**(ii) Statement of Facts.** On 12/02/2022, Ms. Gjovik filed a "Note for Motion Notice of Intention to File Motions Upon Remand", prior to judicial review following the reversal. On 12/23/2022, I filed a reply, asking for the relief of striking these frivolous documents from the record in which Ms. Gjovik continues to make false claims. Ms. Gjovik has filed a reply to a "Motion to Strike", which is not a motion I have filed.

ORIGINAL

**(iii) Response**. In this new filing, Ms. Gjovik continues leveling unsubstantiated claims, like that I reported her to the Bar Association. Ms. Gjovik has no proof of this, and will never receive any proof of this, because it is not true. There is nothing new here, the behavior from Ms. Gjovik will likely continue in ad infinitum, just as Judge O'Toole feared during the trial.

Ms. Gjovik uses the reversal, again, to make it appear that her actions did not constitute harassment. Ms. Gjovik made no such argument in court that my factual reporting of her conduct to the FBI as extortion as SWATing. Ms. Gjovik is aware of the definition of SWATing to be making false calls to emergency services or law enforcement to have armed authorities dispatched to the victim's location. None of this occurred.

Ms. Gjovik makes the same or similar claims in her new filing that she has made in the past. Ms. Gjovik claims, for example, that her comment about my having a "criminal record" only became public because of her post after my initial filing. This is not the case. She had posted other private communications with other parties in which she also claimed to have obtained my "criminal record" or "criminal history", which again, does not exist, as I've never been charged with or convicted of any crime. Ms. Gjovik, a Juris Doctor, is likely aware that synthesizing facts from out of context statements and hearsay is not a defense for libel.

Ms. Gjovik has a penchant for taking statements, altering them, and presenting them as quotations, or, changing the meaning to represent something more inflammatory. She does the latter also by removing important context or failing to discover important context. An example is where she claims she only referred to my overdrawing my checking account as "check fraud" as

ORIGINAL

Honorable Judge Lisa O'Toole
East Division, Redmond Courthouse

Washington Post did. However, the Washington Post did not allege I had been charged or convicted of a crime. They simply did not go into detail, other than to contextualize that I was living in poverty and struggling to survive, something Ms. Gjovik did not do. Ms. Gjovik further alleged I had defrauded banking institutions, which is easily falsifiable (to whit—she was corrected on numerous occasions and opted to continue to push this libel). A victim of the crime of "check fraud" may be a bank, a person, and/or a company. In my case, I was the victim. I repaid myself. I consider the matter settled.

**(iv) Conclusion**. My only wish remains that Ms. Gjovik cease her harassing conduct, including abusing judicial processes to malign my character. I pray the court close this case and not allow Ms. Gjovik to file any further frivolous motions designed to further her vendetta.

I declare under penalty of perjury under the laws of the state of Washington that the facts I have provided on this form (and any attachments) are true.

Signed at (city and state):

Redmond, WA   date: Jan 23, 2022

s/Cher Scarlett

ORIGINAL





APR 0 6 2022

KCDC - East Division
Redmond

## KING COUNTY DISTRICT COURT
## REQUEST FOR COURT RECORD

**Requestor's Information**

| | |
|---|---|
| Name: Scott Bride | |
| Agency/Company: McDermott Will & Emery LLP | |
| Address: 500 N. Capitol St. NW | |
| State, City, Zip Code: Washington, DC 20001 | |
| Phone: (202) 756-8467 | |
| Email: sbride@mwe.com | |

Case Number: 22 CIV 01704 KCX

**Full names of Parties.**
Plaintiff: Cher Swan Scarlett
Defendant: Ashlie Marie Gjovik

**Fees**

| Certified Copies | $5.00 to certify the first page of the document. |
| | $1.00 per each additional page. |
| Regular Copies | $0.25 per page if it is an electronic document. |
| | $0.50 per page if it is not an electronic document. |
| Copy of Hearing | $10 per CD or Thumb Drive |

**Recording of Hearing**

| Date | Time | Courtroom | Certified Copies? |
|---|---|---|---|
| 3/1/2022 | | East Division, Redmond | ☐Yes ■No |
| 2/15/2022 | | East Division, Redmond | ☐Yes ■ No |
| 2/1/2022 | | East Division, Redmond | No |

**Request for Document(s)**

| Name of Document: | Certified Copies? |
|---|---|
| 1. | ☐Yes ☐No |
| 2. | ☐Yes ☐No |
| 3. | ☐Yes ☐No |
| 4. | ☐Yes ☐No |
| 5. | ☐Yes ☐No |

*Add an additional sheet for more documents.

Dated: April 5, 2022

Scott Bride

Requester's Signature

You may submit your request in person via fax, or email. kcdc.webmaster@kingcounty.gov.
For additional information contact: 206-205-9200.

**Internal Use Only:**
Amount Due: $ 10.00   Payment Received: ☒Yes ☐ No        Clerk initials ETC.

Request for Court Records
KCDC – September 2017



FILED

MAR 0 4 2022

KCDC - East Division
Redmond



**KING COUNTY DISTRICT COURT**
**REQUEST FOR COURT RECORD**

### Requestor's Information

Name: RICHARD KAHNENBERGER
Agency/Company: WASH LEGAL
Address: 2225 4TH AVE
State, City, Zip Code: SEATTLE 98121
Phone: 206 374 - 0100
Email:

---

**Case Number:**
**Full names of Parties.**
Plaintiff:
Defendant:

---

### Fees

| | |
|---|---|
| Certified Copies | $5.00 to certify the first page of the document. $1.00 per each additional page. |
| Regular Copies | $0.25 per page if it is an electronic document. $0.50 per page if it is not an electronic document. |
| Copy of Hearing | $10 per CD or Thumb Drive |

### Recording of Hearing

| Date | Time | Courtroom | Certified Copies? |
|---|---|---|---|
| | | | ☐Yes ☐No |
| | | | ☐Yes ☐No |

### Request for Document(s)

| Name of Document: | Certified Copies? |
|---|---|
| 1. Court ordered. Protection order | ☐Yes ☒No |
| 2. | ☐Yes ☐No |
| 3. | ☐Yes ☐No |
| 4. | ☐Yes ☐No |
| 5. | ☐Yes ☐No |

*Add an additional sheet for more documents.

Dated: 03/04/2022

Requester's Signature

You may submit your request in person via fax (206-205-0450), or email.
kcdc.webmaster@kingcounty.gov.
For additional information contact: 206-205-9200.

**Internal Use Only:**
Amount Due: $ 1.00  Payment Received: ☒Yes ☐ No     Clerk initials ETC

Request for Court Records
KCDC – September 2017



An official website of the United States government    **Here's how you know** ˅

Español | Other Languages 🌐



**NLRB**
National Labor
Relations Board

☰ **MENU**

# Case Search
# Results

## Apple, Inc.

[ E-File ]  [ Unfollow ]

**Case Number:** 32-CA-282142
**Date Filed:** 08/26/2021
**Status:** Open

**Location:** Sunnyvale, CA
**Region Assigned:** Region 21, Los Angeles, California

### Docket Activity

Items per page

| Date ⬍ | Document | Issued/Filed By |
|---|---|---|
| 04/04/2022 | Amended Charge Letter* | NLRB - GC |
| 04/04/2022 | Amended Charge Letter* | NLRB - GC |
| 04/01/2022 | Signed Amended Charge Against Employer* | Charging Party |
| 08/30/2021 | Initial Letter to Charged Party* | NLRB - GC |
| 08/30/2021 | Initial Letter to Charging Party* | NLRB - GC |
| 08/26/2021 | Signed Charge Against Employer* | Charging Party |

The Docket Activity list does not reflect all actions in this case.

\* This document may require redactions before it can be viewed. To obtain a copy, please file a request through our FOIA Branch.

### FOIA Records

*This information is temporarily unavailable as the NLRB transitions to a new FOIA processing system, after which, this information will be updated.*

### Related Documents

Related Documents data is not available.

### Allegations

- 8(a)(1) Concerted Activities (Retaliation, Discharge, Discipline)
- 8(a)(1) Coercive Statements (Threats, Promises of Benefits, etc.)

### Participants

| Participant | Address | Phone |
|---|---|---|
| Legal Representative | 415 Mission Street, Suite 5600 San Francisco, CA 94105 | (628)218-3826 |

| Participant | Address | Phone |
|---|---|---|
| Foster, Christopher<br>McDermott Will & Emery LLP | | |
| Legal Representative<br>Carey, Crystal<br>MORGAN, LEWIS & BOCKIUS, LLP | 101 Park Avenue, 37th FL<br>New York, NY<br>10178-0060 | (212)309-6694 |
| Legal Representative<br>McConnell, Julie<br>McDermott Will & Emery LLP | 500 North Capitol Street, NW<br>Washington, DC<br>20001 | (202)756-8317 |
| Legal Representative<br>Holland, Ronald<br>McDermott Will & Emery LLP | 415 Mission Street, Suite 5600<br>San Francisco, CA<br>94105-2533 | (415)655-1300 |
| **Individual**<br>Individual | | |
| **Employer**<br>Employer<br>Apple, Inc. | Cupertino, CA<br>95014 | |

## Related Cases

Related Cases data is not available.

## Most Popular Pages

Who We Are
National Labor Relations Act
Cases & Decisions
Recent Charges & Petitions Filings
The Law
The Right to Strike
Case Search
Contact Us
Frequently Asked Questions

## Other Language Publications

| | | | |
|---|---|---|---|
| Español - Spanish | 中文 (简体中文) - Chinese (Simplified) | Hmong - Hmong | Русский - Russian |
| العربية - Arabic | | 한국어 - Korean | Somali - Somali |
| 中文 (繁體中文) - Chinese (Traditional) | Français - French | Polski - Polish | Tagalog - Tagalog |
| | Kreyòl ayisyen - Haitian Creole | Português - Portuguese | اردو - Urdu |
| | हिंदी - Hindi | ਪੰਜਾਬੀ - Punjabi | Tiếng Việt - Vietnamese |

## Connect With NLRB



An official website of the United States government   **Here's how you know** ˅

Español  |  Other Languages ⊕



### NLRB
**National Labor Relations Board**

☰ MENU

## Case Search Results

# Apple, Inc.

[ E-File ]  [ Unfollow ]

**Case Number:** 32-CA-284441
**Date Filed:** 10/12/2021
**Status:** Open

**Location:** Cupertino, CA
**Region Assigned:** Region 32, Oakland, California

### Docket Activity

**Items per page**

| Date ⇵ | Document | Issued/Filed By |
| --- | --- | --- |
| 04/17/2023 | Pre-Hearing Brief* | Charging Party |
| 10/13/2021 | Initial Letter to Charged Party* | NLRB - GC |
| 10/12/2021 | Signed Charge Against Employer* | Charging Party |

The Docket Activity list does not reflect all actions in this case.

* This document may require redactions before it can be viewed. To obtain a copy, please file a request through our FOIA Branch.

### FOIA Records

*This information is temporarily unavailable as the NLRB transitions to a new FOIA processing system, after which, this information will be updated.*

### Related Documents

Related Documents data is not available.

### Allegations

- 8(a)(1) Coercive Rules

### Participants

| Participant | Address | Phone |
| --- | --- | --- |
| Legal Representative Mahoney, Brian Morgan Lewis & Bockius LLP | 1701 Market Street Philadelphia,, PA 19103 2921 | (215)963-5293 |
| Legal Representative | 101 Park Avenue New York, NY | (212)309-6694 |

| Participant | Address | Phone |
|---|---|---|
| Carey, Crystal<br>MORGAN, LEWIS & BOCKIUS, LLP | 10178 | |
| Legal Representative<br>Johnson III, Harry<br>Morgan, Lewis & Bockius LLP | 2049 Century Park East Ste 700<br>Los Angeles, CA<br>90067-3109 | (310)255-9005 |
| Legal Representative<br>Phillips, Kelcey<br>Morgan, Lewis & Bockius , LLP | 1111 Pennsylvania Ave., NW<br>Washington, DC<br>20004 | (202)739-5455 |
| Legal Representative<br>STOLZENBURG, MARK<br>MORGAN, LEWIS & BOCKIUS, LLP | 110 NORTH WACKER DRIVE<br>STE 2800<br>CHICAGO, IL<br>60606 | (312)324-1733 |
| **Employer**<br>Employer<br>Apple, Inc. | Cupertino, CA<br>95014 | |
| **Individual**<br>Individual | | |

## Related Cases

Related Cases data is not available.

## Most Popular Pages

Who We Are

National Labor Relations Act

Cases & Decisions

Recent Charges & Petitions Filings

The Law

The Right to Strike

Case Search

Contact Us

Frequently Asked Questions

## Other Language Publications

| | | | |
|---|---|---|---|
| Español - Spanish | 中文 (简体中文) - Chinese | Hmong - Hmong | Русский - Russian |
| العربية - Arabic | (Simplified) | 한국어 Korean | Somali Somali |
| 中文 (繁體中文) - Chinese | Français - French | Polski - Polish | Tagalog - Tagalog |
| (Traditional) | Kreyòl ayisyen - Haitian Creole | Português - Portuguese | اردو - Urdu |
| | हिंदी - Hindi | ਪੰਜਾਬੀ - Punjabi | Tiếng Việt - Vietnamese |

## Connect With NLRB

(76 of 162), Page 76 of 162 Case: 25-2028, 05/20/2025, DktEntry: 27.4, Page 76 of 162
Case 3:23-cv-04597-EMC    Document 89    Filed 02/01/24    Page 20 of 25

1/2/24, 4:40 PM

Español  |  Other Languages 🌐



**NLRB**
National Labor
Relations Board

☰ MENU

# Case Search Results

## Apple, Inc.

[ E-File ]  [ Unfollow ]

**Case Number:** 32-CA-283161
**Date Filed:** 09/16/2021
**Status:** Open

**Location:** Sunnyvale, CA
**Region Assigned:** Region 21, Los Angeles, California

### Docket Activity

Items per page

| Date ↓= | Document | Issued/Filed By |
|---|---|---|
| 09/20/2021 | Initial Letter to Charged Party* | NLRB - GC |
| 09/16/2021 | Signed Charge Against Employer* | Charging Party |

The Docket Activity list does not reflect all actions in this case.

* This document may require redactions before it can be viewed. To obtain a copy, please file a request through our FOIA Branch.

### FOIA Records

*This information is temporarily unavailable as the NLRB transitions to a new FOIA processing system, after which, this information will be updated.*

### Related Documents

Related Documents data is not available.

### Allegations

- 8(a)(3) Discharge (Including Layoff and Refusal to Hire (not salting))
- 8(a)(1) Coercive Statements (Threats, Promises of Benefits, etc.)

### Participants

| Participant | Address | Phone |
|---|---|---|
| Legal Representative Foster, Christopher McDermott Will & Emery LLP | 415 Mission Street, Suite 5600 San Francisco, CA 94105 | (628)218-3826 |
| Legal Representative | 101 Park Avenue 37th Floor | (212)309-6694 |

| Participant | Address | Phone |
|---|---|---|
| Carey, Crystal<br>Morgan, Lewis & Bockius, LLP | New York, NY<br>10178 | |
| Legal Representative<br>McConnell, Julie<br>McDermott Will & Emery LLP | 500 North Capitol Street, NW<br>Washington, DC<br>20001 | (202)756-8317 |
| Legal Representative<br>Holland, Ronald<br>McDermott Will & Emery LLP | 415 Mission Street, Suite 5600<br>San Francisco, CA<br>94105-2533 | (415)655-1300 |
| **Individual**<br>Individual | | |
| **Employer**<br>Employer<br>Apple, Inc. | Cupertino, CA<br>95014 | |

## Related Cases

Related Cases data is not available.

## Most Popular Pages

Who We Are

National Labor Relations Act

Cases & Decisions

Recent Charges & Petitions Filings

The Law

The Right to Strike

Case Search

Contact Us

Frequently Asked Questions

## Other Language Publications

Español - Spanish        中文 (简体中文) - Chinese        Hmong - Hmong              Русский  - Russian
العربية - Arabic          (Simplified)                    한국어 - Korean             Somali - Somali

中文 (繁體中文)  Chinese   Français  French              Polski - Polish             Tagalog  Tagalog
(Traditional)            Kreyòl ayisyen - Haitian Creole   Português - Portuguese      اردو - Urdu
                        हिंदी - Hindi                      ਪੰਜਾਬੀ - Punjabi             Tiếng Việt - Vietnamese

## Connect With NLRB

**NLRB Subscription Updates**          **Download NLRB Mobile App**

🇺🇸 An official website of the United States government   Here's how you know ⌄

Español  |  Other Languages 



**NLRB**
National Labor
Relations Board

☰ MENU

---

# Case Search Results

## Apple, Inc.

[ E-File ]   [ Unfollow ]

---

**Case Number:** 32-CA-284428
**Date Filed:** 10/12/2021
**Status:** Open

**Location:** Cupertino, CA
**Region Assigned:** Region 32, Oakland, California

---

### Docket Activity

**Items per page**

| Date ⬍ | Document | Issued/Filed By |
|---|---|---|
| 10/12/2021 | Signed Charge Against Employer* | Charging Party |

The Docket Activity list does not reflect all actions in this case.

\* This document may require redactions before it can be viewed. To obtain a copy, please file a request through our FOIA Branch.

### FOIA Records

---

*This information is temporarily unavailable as the NLRB transitions to a new FOIA processing system, after which, this information will be updated.*

### Related Documents

---

Related Documents data is not available.

### Allegations

---

- 8(a)(1) Coercive Rules

### Participants

---

| Participant | Address | Phone |
|---|---|---|
| | 415 Mission St Ste 5600 | (628)218-3826 |
| Legal Representative | San Francisco, CA | |
| Foster, Christopher | 94105 | |
| McDermott Will & Emory LLP | | |
| | 101 Park Avenue | (212)309-6694 |
| Legal Representative | New York, NY | |
| Carey, Crystal | 10178 | |
| Morgan, Lewis & Bockius, LLP | | |

| Participant | Address | Phone |
|---|---|---|
| | 415 Mission Street | (628)218-3804 |
| Legal Representative | Suite 5600 | |
| Mannan, Syed | San Francisco, CA | |
| McDermott Will & Emery LLP | 94105 | |
| | | |
| **Individual** | | |
| Individual | | |
| | | |
| **Employer** | Cupertino, CA | |
| Employer | 95014 | |
| Apple, Inc. | | |

## Related Cases

Related Cases data is not available.

## Most Popular Pages

Who We Are

National Labor Relations Act

Cases & Decisions

Recent Charges & Petitions Filings

The Law

The Right to Strike

Case Search

Contact Us

Frequently Asked Questions

## Other Language Publications

| | | | |
|---|---|---|---|
| Español - Spanish | 中文 (简体中文) - Chinese (Simplified) | Hmong - Hmong | Русский - Russian |
| العربية - Arabic | | 한국어 - Korean | Somali - Somali |
| 中文 (繁體中文) - Chinese (Traditional) | Français - French | Polski - Polish | Tagalog - Tagalog |
| | Kreyòl ayisyen - Haitian Creole | Português - Portuguese | اردو - Urdu |
| | हिंदी - Hindi | ਪੰਜਾਬੀ - Punjabi | Tiếng Việt - Vietnamese |

## Connect With NLRB

| NLRB Subscription Updates | Download NLRB Mobile App |
|---|---|

   



**National Labor Relations Board**

**About**

Rights We Protect

What We Do

Who We Are



## NLRB
### National Labor Relations Board

 **MENU**

# Case Search Results

## Apple, Inc.

<div align="right">

**E-File**    **Unfollow**

</div>

**Case Number:** 32-CA-288816          **Location:** Cupertino, CA
**Date Filed:** 01/10/2022            **Region Assigned:** Region 21, Los Angeles, California
**Status:** Open

### Docket Activity

|  |  |  | Items per page |
| --- | --- | --- | --- |
| **Date ↓=** | **Document** | | **Issued/Filed By** |
| 01/12/2022 | Initial Letter to Charging Party* | | NLRB - GC |
| 01/12/2022 | Initial Letter to Charged Party* | | NLRB - GC |
| 01/10/2022 | Signed Charge Against Employer* | | Charging Party |

The Docket Activity list does not reflect all actions in this case.

* This document may require redactions before it can be viewed. To obtain a copy, please file a request through our FOIA Branch.

### FOIA Records

*This information is temporarily unavailable as the NLRB transitions to a new FOIA processing system, after which, this information will be updated.*

### Related Documents

Related Documents data is not available.

### Allegations

- 8(a)(4)  Discipline
- 8(a)(1) Coercive Statements (Threats, Promises of Benefits, etc.)
- 8(a)(1) Coercive Actions (Surveillance, etc)

### Participants

| Participant | Address | Phone |
| --- | --- | --- |
| | 1701 Market Street | (215)963-5293 |
| Legal Representative | Philadelphia, PA | |
| Mahoney, Brian | 19103-2921 | |
| Morgan Lewis & Bockius LLP | | |

| Participant | Address | Phone |
|---|---|---|
| Legal Representative<br>Johnson, Harry<br>Morgan, Lewis & Bockius LLP | 2049 Century Park E Ste 700<br>Los Angeles, CA<br>90067-3101 | (310)255-9005 |
| Legal Representative<br>Phillips, Kelcey<br>MORGAN, LEWIS & BOCKIUS, LLP | 1111 Pennsylvania Ave NW<br>Washington, DC<br>20004-2541 | (202)739-5455 |
| Legal Representative<br>STOLZENBURG, MARK<br>MORGAN, LEWIS & BOCKIUS, LLP | 110 NORTH WACKER DRIVE<br>STE 2800<br>CHICAGO, IL<br>60606 | (312)324 1733 |
| Legal Representative<br>Holland, Ronald<br>McDermott Will & Emory LLP | 415 Mission St<br>Ste 5600<br>San Francisco, CA<br>94105-2616 | (628)218-3829 |
| **Individual**<br>Individual | | |
| **Employer**<br>Employer<br>Apple, Inc. | Cupertino, CA<br>95014 | |

## Related Cases

Related Cases data is not available.

## Most Popular Pages

Who We Are
National Labor Relations Act
Cases & Decisions
Recent Charges & Petitions Filings
The Law
The Right to Strike
Case Search
Contact Us
Frequently Asked Questions

## Other Language Publications

| | | | |
|---|---|---|---|
| Español - Spanish | 中文 (简体中文) - Chinese (Simplified) | Hmong - Hmong | Русский  - Russian |
| العربية - Arabic | Français - French | 한국어 - Korean | Somali - Somali |
| 中文 (繁體中文) - Chinese (Traditional) | Kreyòl ayisyen - Haitian Creole | Polski - Polish | Tagalog - Tagalog |
| | हिंदी - Hindi | Português - Portuguese | اردو - Urdu |
| | ਪੰਜਾਬੀ - Punjabi | Tiếng Việt - Vietnamese | |

Honorable Judge Richard A. Jones

# UNITED STATES DISTRICT COURT

for the WESTERN DISTRICT of WASHINGTON at SEATTLE

CASE NO. 2:22-CV-00807-RAJ-BAT

*Ashley M. Gjovik* (*pro se*),

Plaintiff(s),

v.

*State of Washington, et al.*

Defendant(s).

**MOTION FOR PRELIMINARY INJUNCTIVE RELIEF**

NOTE ON MOTION CALENDAR: JULY 15 (4TH FRIDAY)

## I.    INTRODUCTION

1. Gjovik introduces a motion for preliminary injunction against the state of Washington's facially unconstitutional long-arm personal jurisdiction statute, the overbroad and

1   vague provisions of the anti-harassment statutes, and the attempted retirement of the clearly

2   much needed Constitutional savings section. Preliminary injunctions may grant intermediate

3   relief "of the same character as that which may be granted finally." Gjovik requests expedited

4   judicial intervention to several of the matters in her pleading, as well as the court's discretionary

5   injunctive power under All Writs Act to prevent disastrous, irreparable harm within the state

6   courts. (See Emergency Motion for Relief, Dkt #11). If part of the Emergency Motion is denied,

7   Gjovik incorporates her outstanding requests here.

8

9   **II.   MOTION FOR NON-EMERGENCY PRELIMINARY INJUNCTIVE RELIEF**

10      2. Gjovik, pursuant to Rule 65 of the Federal Rules of Civil Procedure, and Local Rule

11   65, moves this Court for entry of a Preliminary Injunction enjoining the Defendant state of

12   Washington from enforcing the provision enumerated in the Proposed Order. This motion is

13   based on the following grounds:

14      -   Violations of the U.S. Constitution 1st & 14th Amendment
         -   Violation of the U.S. Constitution Ex Post Facto & Bill of Attainder Clauses

15      -   U.S. Constitutional Preemption

16   Gjovik files this motion for Emergency Injunctive Relief to enjoin:

17      -   The vague and overbroad provisions of the anti-harassment statutes, RCW
           7.105.010(35(a), 10.14.020, 7.105.010(5)(b), & 10.14.030

18      -   The indirect and attenuated provisions of the jurisdiction long-arm statute, (RCW
           7.105.080 & 10.14.155

19      -   The new post-RO prior-restraint "motions" cause of action, RCW 7.105.310(1)(0)

20      -   The planned retirement of the much needed Constitutional savings provision, RCW
           10.14.190

21

22      3. This Motion is based on the Complaint and Appendix, Notice of Pendency and Appendix,

23   Emergency Motion for Injunction, and any such other evidence that the Court should hear in this

24

MOTION FOR PRELIM. INJ.                    PO BOX 119 SANTA CLARA, CA 95050
CASE NO. 2:22-CV-00807-RAJ-BAT                  (408) 883-4428

case. The Complaint and summons were properly served via FRCP Rule 4 and RCW 4.92.020,[1] per the Attorney General's published instructions. This motion has been scheduled for 4th Friday pursuant to Local Civil Rule 7(d).

### III.  LEGAL STANDARD

4. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc*., 555 U.S. 7 (2008). A challenge to statutes with "directed narrowly and specifically at expression or conduct commonly associated with expression" receive a "relaxed standing inquiry." *City of Lakewood v. Plain Dealer Pub. Co.,* 486 U.S. 750, 760 (1988), *Canatella v. California*, 304 F.3d 843, 853 n.12 (9th Cir. 2002).

5. The Courts are more willing to hear facial challenges on 1st Amendment cases because, "those who desire to engage in legally protected expression [] may refrain from doing so rather than risk prosecution or undertake to have the law declared partially invalid []. When we allow such challenges, we mostly say we're protecting the free speech interests of 'parties not before the Court." *Canatella v. California*, 304 F.3d 843, 853 n.13 (9th Cir. 2002)

6.  The Courts intend to give a platform to the few who are brave enough to step forward on behalf of the many others too fearful to fight back. *Canatella v. California*, 304 F.3d 843, 853 n.12 (9th Cir. 2002). In fighting to get relief from the extraordinary unusual harm the state of Washington has subjected Gjovik to, she also intends to fight to reform the state of Washington's

---

[1] RCW 4.92.020: Service of summons and complaint in such actions shall be served in the manner prescribed by law upon the attorney general, or by leaving the summons and complaint in the office of the attorney general with an assistant attorney general.

MOTION FOR PRELIM. INJ.                                      PO BOX 119 SANTA CLARA, CA 95050
CASE NO. 2:22-CV-00807-RAJ-BAT                                            (408) 883-4428

1    statutes to ensure no one else is subject to these crushing and tyrannical laws due to simply

2    exercising their constitutionally protected rights.

3        7. Because Washington subjects Gjovik to the untenable choice between self-censorship

4    and risking criminal and civil liability, the laws impose irreparable harm, threaten the public

5    interest, and tip the balance of equities heavily in favor of granting a preliminary injunction

6    Gjovik has a strong likelihood of success on the merits because the challenged laws are

7    unconstitutional as content-based regulations of protected speech that are not narrowly tailored to

8    a compelling government interest. In addition, even assuming that a narrow band of speech

9    covered by the challenged laws is unprotected, these laws are fatally overbroad and

10    impermissibly vague. Thus, all four factors favor the grant of a preliminary injunction. See,

11    *Ranchers Cattleman Action Legal Fund United Stockgrowers of Am. v. United States Dept. of*

12    *Ag.*, 415 F.3d 1078, 1092 (9th Cir. 2005) (citing *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d

13    1113, 1120 (9th Cir. 2005).

14

15             **IV.  GJOVIK'S IRREPARABLE HARM ABSENT RELIEF**

16        8. The Ninth Circuit makes clear that a showing of immediate irreparable harm is

17    essential for preliminary injunctive relief. *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d

18    668, 674 (9th Cir. 1988), *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir.

19    2011).  It is "well established that the deprivation of constitutional rights unquestionably

20    constitutes irreparable injury," *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012).

21        9. Here, Gjovik was subject to content-based prior restraint, no-contact, no-surveillance

22    order and added to a criminal register but for her federal whistleblowing. The Petitioner

23    submitted in written and oral testimony that she was reporting Gjovik due to Gjovik's own

24    complaints against Petitioner. Petitioner wrote in her written statement to the state court, which

the Judge said she read before she granted the Order against Gjovik, that Petitioner thought

Gjovik's "harassment' of Petitioner "appears to be in part for exercising [Petitioner's] own first

amendment rights in expressing [Petitioner's] opinion that [Gjovik's] retaliatory discharge case

would be hard to prove because of the bonafide fact that [Gjovik] had leaked private documents

about unreleased intellectual property owned by Apple to the press." (e.g., Docket 11, #2

Exhibits, pg7). She added, "I took the time to apologize for exercising those first amendment

rights, because it clearly hurt [Gjovik's] feelings, despite my right to say such things." *Id.*

*(referencing her threatening email to Gjovik on Feb 5 2022).* (e.g., Dkt #1, Exhibit I).

10. Gjovik's harm is described in depth within the Complaint (e.g., Docket #1,

generally), Emergency Motion for Injunction (e.g., Docket # 11, generally), and her Reply brief

from state court (Exhibit B). Even the state of Washington agrees with the irreparable harm

Gjovik faces due to statute so sweeping, she could easily be convicted based on fully protected

conduct and speech protected by the U.S. Constitution. "The legislature recognizes that persons

convicted and imprisoned for crimes they did not commit have been uniquely victimized." Those

wrongly convicted suffer "tremendous injustice by being stripped of their lives and liberty."

RCW 4.100.010

## V. LIKELIHOOD OF SUCCESS ON THE MERITS

### i. Standing

11. Gjovik is injured with an injury-in-fact: a concrete, particularized, actual, likely, and

imminent injuries. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 558–59, (1992). Gjovik has a

'concrete plan' to violate the laws in question (continuing to pursue her whistleblower cases

against Apple Inc), while the Petitioner has communicated specific warnings and threats to

initiate further proceedings against her, and there is a history of past enforcement by Washington

1  under the challenged statute.[2] *Many Cultures, One Message v. Clements*, 520 F. App'x 517, 519

2  (9th Cir. 2013). Based on the vexatious Petitioner's prior history of reporting Gjovik to law

3  enforcement, there's no reason to think she will not or has not already reported Gjovik for

4  somehow violating the Order. The injury is redressable by the Court through injunctive and

5  declaratory relief.

6        12. A controversy exists because the officials represent the state whose statute is being

7  challenged as the source of the injury." *Kentucky v. Graham*, 473 U.S. 159 (1985). Suits against

8  governmental actors in their official capacity are treated as a suit against the governmental entity

9  itself. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). The injury is fairly traceable to the state of

10  Washington. State of Washington has codified its liability for personal harm, saying "The state

11  of Washington, whether acting in its governmental or proprietary capacity, shall be liable for

12  damages arising out of its tortious conduct to the same extent as if it were a private person or

13  corporation." RCW 4.92.090. In actions and claims against the state of Washington, the state has

14  designated that the "attorney general or an assistant attorney general shall appear and act as

15  counsel for the state. The action shall proceed in all respects as other actions." RCW 4.92.030

16        13. An injury in fact is "an invasion of a legally protected interest which is (a) concrete and

17  particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lopez v. Candaele*,

18  630 F.3d 775, 785 (9th Cir. 2010). Because "[c]onstitutional challenges based on the First

19  Amendment present unique standing considerations," plaintiffs may establish an injury in fact

20  without first suffering a direct injury from the challenged restriction. *Lopez v. Candaele*, 630

21  F.3d 775, 785 (9th Cir. 2010). In an effort to avoid the chilling effect of sweeping restrictions,

22

23  ---
[2] "Crime in Washington: 2020 Annual Report," notes 18,002 reports of violations of restraining orders with 8,526
24  arrests in just 2020, Washington Association of Sheriffs and Police Chiefs, Crime in Washington: 2020 Annual
Report, https://www.waspc.org/assets/CJIS/Crime%20In%20Washington%202020-small.pdf

the Supreme Court has endorsed what might be called a 'hold your tongue and challenge now' approach rather than requiring litigants to speak first and take their chances with the consequences. *Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010); *Arizona Right to Life Pol. Action Comm. v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003). Here, the laws and actions by the state of Washington against Gjovik have actively chilled Gjovik as well as her friends and supporters, in addition to Gjovik's concrete injuries. One witness statement Gjovik submitted in the state hearing noted that Petitioner also harassed her and tried to silence her about the abuse, "effectively yelling at me while holding her hand over my mouth." That witness has since set their social media accounts to private in order to avoid further abuse from Petitioner. (Exhibit A).

14. Gjovik intends to continue to pursue her Apple Inc cases, including her allegations against Petitioner. Gjovik intends to continue supporting the labor activities at Apple Inc, with Apple's first U.S. union established this weekend.[3] Gjovik intends to continue talking the press and publishing updates on her Apple cases. Gjovik intends to fight this Order and the Washington statutes that created it. Meanwhile, Petitioner appears to be just as vexatious as ever, and Gjovik still worries every moment that any of these activities could result in additional orders, lawsuits, and her incarceration. (e.g, Docket #11, Emergency Motion). Due to this fear, Gjovik's been chilled. She is grossly self-censoring until the Order can be removed. While Gjovik decided a month or two after the Order to start talking publicly about her Apple cases again, Gjovik still gives a large parameter to any topic that Petitioner might be able to argue is somehow connected to her, including certain labor organizing activities, such as "AppleToo" or even the NLRB-related details of the Order against Gjovik. This is the type of tyrannical censorship the 1st Amendment aims to prevent. *Babbitt v. Farm Workers*, 442 U.S. 289, 298

---

[3] *Apple workers at Maryland store vote to unionize, a first for the U.S.,* Reuters (June 19 2022), https://www.reuters.com/markets/us/apple-workers-maryland-store-vote-unionize-first-us-2022-06-19/

MOTION FOR PRELIM. INJ.                                          PO BOX 119 SANTA CLARA, CA 95050
CASE NO. 2:22-CV-00807-RAJ-BAT                                          (408) 883-4428
- 7 -

1    (1979), *Care Comm. v. Arneson*, 638 F.3d 621, 627 (8th Cir. 2011). "The rights of political

2    association are fragile enough without adding the additional threat of destruction by lawsuit."

3    *NAACP v. Claiborne Hardware Co.,* 458 U.S. 886 (1982).

4        15. Prudential considerations have weighed in favor of allowing litigants to bring First

5    Amendment challenges on behalf of those whose expression might be impermissibly chilled, so

6    long as the plaintiff also suffers an injury in fact. *Clark v. City of Lakewood*, 259 F.3d 996, 1010

7    (9th Cir. 2001), as amended (Aug. 15, 2001). "Even where a First Amendment challenge could

8    be brought by one actually engaged in protected activity, there is a possibility that, rather than

9    risk punishment for his conduct in challenging the statute, he will refrain from engaging further

10   in the protected activity. Society as a whole then would be the loser. Litigants, therefore, are

11   permitted to challenge a statute … because … the statute's very existence may cause others not

12   before the court to refrain from constitutionally protected speech or expression." *Sec'y of State v.*

13   *Joseph H. Munson Co*., 467 U.S. 947, 955 (1984); *Clark v. City of Lakewood,* 259 F.3d 996,

14   1010 (9th Cir. 2001), as amended (Aug. 15, 2001).

15       16. Abstention from the exercise of federal jurisdiction is the exception, not the rule, and

16   federal courts should not refuse to decide a case in deference to the States. *Hawaii Hous. Auth. v.*

17   *Midkiff,* 467 U.S. 229, 236 (1984); *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 588 (2013)

18   (citing *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368

19   (1989); *Ex Parte Young*, 209 U.S. 123, 157 (1908). The state of Washington tried to invoke (via

20   brute force) concurrent jurisdiction on the federal matters, thus the federal government was

21   already present and would not be "abstaining." *Exxon Mobil Corp. V. Saudi Basic Industries*

22   *Corp*. (03-1696) 544 U.S. 280 (2005). One *Younger* exception provides, "federal intervention is

23   appropriate under this exception if the state courts are biased and unable to be trusted on a

24   particular issue." *Gibson v. Berryhill*, 411 U.S. 564 (1973).

MOTION FOR PRELIM. INJ.                                          PO BOX 119 SANTA CLARA, CA 95050
CASE NO. 2:22-CV-00807-RAJ-BAT                                              (408) 883-4428
                                        - 8 -

17. Here, none of the abstention doctrines apply for legal and federalism policy reasons. The state of Washington intruded upon the powers of the federal court and agencies as well as the agencies of the state of California, through is highly unconstitutional personal jurisdiction statute. The state of Washington allowed a Court of Limited Jurisdiction to create res judicata and Full Faith & Credit issues for ongoing federal cases and investigations. The U.S District Court will not be intruding upon state matters, it will be restoring the proper jurisdiction of these matters and ensuring the state of Washington does not further impede upon federal proceedings.

18. The abstention doctrines do not, nor should not apply to this extraordinary matter. The proposition that no state may enact statutes in violation of the Federal Constitution is fundamental to our federal system. *Fletcher v. Peck*, 10 U.S. (6 Cranch) 87, 136 (1810). If states can insulate their unconstitutional enactments from federal judicial review, then states like Washington can effectively disregard the rights protected by the Federal Constitution, thus violating the Framers' dictate that *"[t]his Constitution ... shall be the supreme Law of the Land,"* U.S. Const. art. VI.

19. *Younger* is based on 28 U.S.C. § 2283 and prohibits injunctions to stay proceedings in a state court except as expressly authorized by Act of Congress. Here, the U.S. District court is implicitly and explicitly authorized to act by numerous acts of U.S. Congress. At least for the Order against Gjovik, *Younger* would not apply even if it could, as the Order is "flagrantly and patently unconstitutional." *Younger* also does not apply here, similarly to *Rynearson v Ferguson,* 903 F.3d 920 (9th Cir. 2018), as the conduct Gjovik was found liable for was not prescribed in the statute and the Order prohibited actions which are not harassment, per soon to be retired Constitutional savings clause.

20. *Younger* also does not apply because the petition was made in made faith and to harass, and under patently unconstitutional statutes. If the state prosecution was brought in bad faith and

1    used to harass the criminal defendant, the Court stated that injunctive relief would be available.

2    *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982).

3     21. Here, the *Pullman* abstention doctrine does not apply. *Railroad Commission v Pullman

4    Co*, 312 U.S. 496 (1941). There are no sensitive matters of state social policy here. The state of

5    Washington was afforded a reasonable opportunity to pass on their statutes, to apply their law in

6    Gjovik's case, and in doing so they stripped Gjovik of many of her core federal Constitutional

7    rights and severely interfered with her ongoing federal litigation. Gjovik and her prior counsel

8    made numerous objections to the state court with concerns violations of the U.S. Constitution

9    and interference with federal statutes, but the court insisted on proceeding despite. Further, even

10   if the Superior Court removes the Order, the statutes at issue here are still ripe for Petitioner to

11   weaponize in her continued fervent attacks against Gjovik.

12    22. The *Rooker–Feldman doctrine* is a doctrine of civil procedure enunciated by the

13   United States Supreme Court in two cases, *Rooker v. Fidelity Trust Co*., 263 U.S. 413 (1923) and

14   *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The doctrine holds that

15   lower United States federal courts—i.e., federal courts other than the Supreme Court—should

16   not sit in direct review of state court decisions unless Congress has specifically authorized such

17   relief. *Lance v. Dennis*, 546 U.S. 459 (2006). Rooker-Feldman does not apply because Gjovik

18   does not only allege a harm by the state of Washington, she also alleges a harm by the adverse

19   party (Petitioner) in federal matters. *Noel Hall, Kougasian v. TMSL*, 359 F.3d 1136 (9th Cir.

20   2004).

21    23. Well before the state matters were initiated, Gjovik's cases already invoked federal

22   jurisdiction. The federal court's determination of its own jurisdiction would preclude the state

23   court from finding such jurisdiction lacking. *Montana v. United States*, 440 U.S. 147, 99 S.Ct.

24   970, 59 L.Ed.2d 210 (1979). These federal statutes (NLRA, SOX, CERCLA, etc) provided the

1    express Congressional authority required for standing and injunction, as described. (e.g., Dkt

2    #11).

3        24. Sovereign immunity is not a jurisdictional bar as to the Attorney General. *Planned*

4    *Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 920 (9th Cir. 2004) (holding that the Idaho

5    Attorney General was properly named under *Ex Parte Young* because, unless the county

6    prosecutor objected, the Attorney General had power to perform every act the county attorney

7    could perform); *Bolbol v. Brown,* 120 F. Supp. 3d 1010, 1018–19 (N.D. Cal. 2015) (holding that

8    the California Attorney General was not entitled to Eleventh Amendment immunity because

9    under the state constitution the Attorney General not only has "direct supervision over every

10   district attorney" but also has the duty to "prosecute any violations of the law ... [and] shall have

11   all the powers of a district attorney).

12

13       **ii.     Statutes allow Orders based on Constitutionally Protected Expression**

14       25. Laws (like this Order & these provisions) are "properly subject to facial attack" because

15   they impose direct restrictions on protected First Amendment activity with imprecise means

16   which lead to an unnecessary risk of chilling free speech. *Sec'y of State of Md. v. Joseph H.*

17   *Munson Co.*, 467 U.S. 947, 968 (1984). The laws at issue here are clearly facially overbroad and

18   vague.

19       26. Even speech that is harassing is not exempt from constitutional protections. *Catlett v.*

20   *Teel,* 15 Wn. App. 2d 689, 704, 477 P.3d 50 (2020). *Hedine v. Guerrero*, 17 Wash. App. 2d 1050

21   (2021). The First Amendment dictates that "Congress shall make no law . . . abridging the

22   freedom of speech." "[A] law imposing criminal penalties on protected speech is a stark example

23   of speech suppression." *Ashcroft v. Free Speech Coal*., 535 U.S. 234, 244 (2002) *U.S. v. Evelyn*

24   *Sineneng-Smith*, 910 F.3d 461 (9th Cir. 2018).

27. The Order against Gjovik was mostly based on one of Gjovik's legal memos for her federal cases. The Judge's decision explained, *"[Petitioner] may have posted information... on her own Twitter feed, [but Gjvovik's] reposting of them and the method that was used .... copying it, putting it in a PDF, and then reposting it in another medium in [Gjovik's] own website."* (e.g., Dkt #1, at pg. 35, lines 18-20; 3/15 Hearing transcript pg 46). Gjovik's legal memo to the federal government providing evidence of witness intimidation by Petitioner was used by a state court to justify a content-based prior restraint gag order and to put Gjovik on a criminal registry.

28. When Gjovik posted a cease and desist to Apple Inc in January 2022, she noted Petitioners name among others as parties she requested Apple to stop attacking her. Petitioner raised that as harassment. (e.g., Dkt #11, #2 Appendix, Exhibit E, pg 25) The state Judge at the hearing pointed to Gjovik's "Cease and Desist" notice to Apple Inc, and found "*posting this kind of information about somebody's....name change, none of that serves any lawful purpose.*" (e.g., Dkt #1, page 48, lines 8-19, 3/15 hearing transcript). It's unclear if the Judge would have still ruled this way if she required evidence to be provided for the numerous allegations against Gjovik, but Washington does not require rules of evidence, or evidence at all, apparently.

29. Washington's harassment statutes are not tailored to only be triggered by direct contact from a Respondent to Petitioner, they apply to any communication and speech made by Respondent via any platform that a Judge could construe as "at." Therefore, the statutes implicate some of the most protected speech, including internet communications, news reporting, and publishing public records. *Packingham v. North Carolina*, 137 S. Ct. 1730, 1735 (2017); *Reno v. ACLU,* 521 U.S. 844 (1997).

---

MOTION FOR PRELIM. INJ.
CASE NO. 2:22-CV-00807-RAJ-BAT

PO BOX 119 SANTA CLARA, CA 95050
(408) 883-4428

- 12 -

**RCW 7.105.010 (35)(a), RCW 10.14.020 (2):**

"A knowing and willful course of conduct directed [*Unlawful* at] a specific person which seriously [*Unlawful*: alarms, annoys,] harasses, [*Unlawful*: or is detrimental] to such person, and which serves no [*Unlawful*: legitimate or] lawful purpose."

30. The U.S. Constitution and Washington Supreme Court protect content which "annoys" or "alarms," thus no doubt also protects speech that is "detrimental." In 1989, The Washington Supreme Court wrote: "proscriptions of conduct or speech which 'annoy' or 'alarm' others have been found to be unconstitutionally vague." *Coates v. Cincinnati*, 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971); *Everett v. Moore*, 37 Wash.App. 862, 683 P.2d 617 (1984); *State v. Blair*, 287 Or. 519, 601 P.2d 766 (1979). *City of Seattle v. Huff*, 111 Wash. 2d 923, 929–30, 767 P.2d 572, 576 (1989). Indeed, in 1971, the U.S Supreme Court found an ordinance prohibiting "annoying" unconstitutionally vague. *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971). The court wrote, "conduct that annoys some people does not annoy others." *Id*. In Gjovik's home state, the Supreme Court of Oregon also struck down provisions in their own harassment law, finding conduct "likely to cause annoyance or alarm" was unconstitutionally vague. *State v. Blair*, 287 Or. 519, 601 P.2d 766 (1979).

**RCW 7.105.010 (5)(b), RCW 10.14.030**

(5)(b) In determining whether the course of conduct serves any [*Unlawful*: legitimate or] lawful purpose, a court should consider whether:
(iii) The respondent's course of conduct appears designed to [*Unlawful*: alarm, annoy, or] harass the petitioner;
(v) The respondent's course of conduct has the purpose [*Unlawful*: or effect] of unreasonably interfering with the petitioner's privacy or the purpose [*Unlawful*: or effect] of creating an intimidating, hostile, or offensive living environment for the petitioner;

31. Speech which is designed to alarm, annoy, or harass is protected speech and a restraint of that speech is content (and even viewpoint) based prior restraint, is unconstitutionally

MOTION FOR PRELIM. INJ.                                    PO BOX 119 SANTA CLARA, CA 95050
CASE NO. 2:22-CV-00807-RAJ-BAT                                          (408) 883-4428
- 13 -

1   overbroad, and cannot survive strict scrutiny analysis. *State v. Bishop*, 787 S.E.2d 814 (N.C.

2   2016); *People v. Marquan M*., 19 N.E.3d 480 (N.Y. 2014); *KKK v. City of Erie*, 99 F. Supp. 2d

3   583, 591-92 (W.D. Pa. 2000); *Reno v. ACLU*, 521 U.S. 844, 874 (1997); *Boos v. Barry*, 485 U.S.

4   312, 322 (1988). Even worse is speech which simply could have the "effect" of causing a certain

5   outcome. *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 55 (1988). As, the state of Washington

6   currently endorses.

7       32. Speech which lacks "a legitimate purpose" has also already been found to be

8   unconstitutionally vague, as that is a highly subjective standard. *City of Bellevue v. Lorang*, 140

9   Wn.2d 19, 992 P.2d 496 (2000) (En Banc), decision about vagueness based on *Grayned v. City*

10  *of Rockford*, 408 U.S. 104, 108–09 (1972).

11      33. A new statute, effective July 1 2021, that will allow for new prior-restraint "motions"

12  is also terribly unconstitutional for a number of reasons. Instead of initiating a formal complaint

13  for these causes of action after the conduct occurs, the state of Washington courts will now allow

14  Petitioners to submit a "motion" requesting a respondent/defendant to be deprived of their rights

15  to access courts and deprive them of their constitutional right to free speech.

16      RCW 7.105.310(1) In issuing any type of protection order, other than an extreme
        risk protection order, the court shall have broad discretion to grant such relief as the
17      court deems proper, including an order that provides relief as follows:

18      (o) Enter an order restricting the respondent from engaging in abusive litigation as
        set forth in chapter 26.51 RCW [Abusive Litigation – Domestic Violence]
19      [*Unlawful*: or in frivolous filings against the petitioner, making harassing or libelous
        communications about the petitioner to third parties, or making false reports to
20      investigative agencies.] A petitioner may request this relief in the petition or by
        separate motion. [*Unlawful*: A petitioner may request this relief by separate motion
21      at any time within five years of the date the protection order is entered even if the
        order has since expired.]

22

23

24

34. The state of Washington is about to allow any petitioner who obtained an Order in the last five years, even if it was based on protected activity and jurisdiction was asserted through indirect and attenuated contacts, to now simply file a motion asking for further punishment against the Respondent. There is no published civil procedure for these motions, or what the showing must be for a motion to be granted. The state of Washington is soon to codify that: "*the rules of evidence need not be applied*." RCW 7.105.200(8). Further, terms like "frivolous filings" or "libelous communications" are not defined either. These new "motions" are ripe for abuse and must be nipped in the bud quickly. The state of Washington is about to create a new cause of action that codifies prior restraint, lack of due process, and rampant violations of the right to Freedom of Expression.

### iii.   Long Arm Statute is Clearly Unconstitutional

35. Washington's long-arm statute is also facially unconstitutional. A court may only exercise specific personal jurisdiction over individuals with enough contacts within the state where the court is located so that the lawsuit does not offend the due process standard of "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. state of Washington*, 326 U.S. 310, 316 (1945). Simply, "minimum contacts" require purposeful contacts by the defendant with the forum state itself, not the defendant's contacts with persons who reside there. *Walden v. Fiore, 571* U.S. 277, 285 (2014); *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780 (2011).

36. Due process prohibits jurisdiction based on "random, fortuitous, or attenuated" contacts. *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985); *Walden v. Fiore,* 571 U.S. 277, 286 (2014).  Without a purposeful affiliation with the state, no specific jurisdiction can exist. *Bristol-Myers Squibb Co. v. Superior Court of Cal*., 137 S. Ct. 1773, 1781 (2017). Just as the Supreme

Court had to strike down the state of California's "loose and spurious" view of personal

jurisdiction in 2017, now it is time for the state of Washington to face review and reform.

37. Here, the following provisions of RCW 10.14.155 (effective until July 1 2022), and

RCW 7.105.080 (effective July 1 2022) are facial violations of the constitutional requirements

for due process:

- (1)(c) The act or acts of the individual or the individual's agent giving rise to the petition or enforcement of a protection order occurred within this state;
- (1)(d)(i) The act or acts of the individual or the individual's agent giving rise to the petition or enforcement of a protection order occurred outside this state and are part of an ongoing pattern that has an adverse effect on the petitioner or a member of the petitioner's family or household and the petitioner resides in this state;
- (2) For jurisdiction to be exercised under subsection (1)(d) of this section, the individual must have communicated with the petitioner or a member of the petitioner's family, directly [*Unlawful*: or indirectly], or made known a threat to the safety of the petitioner or member of the petitioner's family, while the petitioner or member of the petitioner's family resides in this state.
- (3) For the purposes of this section:(a) "Communicated" or "made known" includes the following means: In person, [*Unlawful*: through publication], by mail, telephonically, through an electronic communication site or medium, by text, or through other social media. [*Unlawful*: Communication on any electronic medium that is generally available to any individual residing in the state is sufficient to exercise jurisdiction under subsection (1)(d) of this section. (3)(b) An act or acts that "occurred within this state" include an oral or written statement made or published by a person outside of this state to any person in this state by means included in (a) of this subsection, or by means of interstate commerce or foreign commerce.]

38. Perhaps the opposite of "purposeful contacts directed to a forum state" is **"indirect publications on any electronic medium that is generally available to any individual residing in the state."** If these "loose and spurious" provisions with "random, fortuitous, and attenuated" contacts are enjoined, Gjovik should no longer have fear having to fight the jurisdiction of additional arbitrary Petitions against her and instead can move to dismiss due to lack of personal jurisdiction. With apparently over ten thousand of these restraining orders issues each year, the

1   current statute is a threat to the entire United States and beyond. [4] Indeed, with the apparent

2   global reach of the state of Washington's harassment statutes, substantively and procedurally,

3   this matter may even implicate foreign affairs concerns.

4

5                            **VI.   BALANCE OF HARDSHIPS**

6          39. While Washington may have legitimate state interests in allowing for restraining

7   orders against harassment, the interest is not compelling as the cause of action overlaps with

8   numerous existing actions and where it does not, it is likely unconstitutional. That is because

9   these laws are not narrowly tailored. Instead, they are sprawling. The output of the Orders is just

10  as unlawful as the statutes that provide the hearing for that Order. By granting a free-form text

11  box for Judges to fill out (Bill of Attainder) in addition to the legislatively defined check-boxes,

12  the state Judges are welcomed to injunct expression, not contact (which is covered already in the

13  form).  Proposals for reform from Andrew H. Caplan in a 2013 law review article include

14  ensuring the statutes and process aim injunctions at contact not content, impose reasonable

15  limiting and clarifying construction, consider Anti-SLAPP, and look for "red flag" fact patterns

16  for protected speech.  Free Speech and Civil Harassment Orders, 64 Hastings L.J. 781 (April

17  2013)

18         40. A restraining order that prohibits content-based speech, like the one against Gjovik

19  and which have previously been granted in the state of Washington,[5] are "injunctions [that]

20  violate the First Amendment, which generally protects the right to criticize people, including

21

22  ───────────
    [4] "Crime in Washington: 2020 Annual Report," notes 18,002 reports of violations of restraining orders with 8,526

23  arrests in just 2020, Washington Association of Sheriffs and Police Chiefs, Crime in Washington: 2020 Annual
    Report, https://www.waspc.org/assets/CJIS/Crime%20In%20Washington%202020-small.pdf

24  [5] See, *In re Marriage of Suggs*, 93 P.3d 161 (Wash. 2004*); In re Marriage of Meredith,* 201 P.3d 1056, 1062 (Wash.
    Ct. App. 2009); *Catlett v. Teel*, 477 P.3d 50 (Wash. Ct. App. 2020), etc.

MOTION FOR PRELIM. INJ.                                           PO BOX 119 SANTA CLARA, CA 95050
CASE NO. 2:22-CV-00807-RAJ-BAT                                                   (408) 883-4428

private figures. False, defamatory statements of fact about people can lead to liability, and might

even be enjoinable. But that can't justify bans (broad or narrow) on future speech about a person

that would cover protected opinion and protected factually accurate allegations, and not just false

factual assertions." Eugene Volokh, *Overbroad Injunctions Against Speech (Especially In Libel*

*And Harassment Cases)*, Harvard Journal of Law & Public Policy, Vol. 45, Issue 1, pg 170-171

(Winter 2022). In his article, Volokh examines hundreds of facially unconstitutionally restraining

orders issues across the country. *Id* at 226-256. The issue is endemic and Washington has some

of the most broad laws.

## VII.  NO ADEQUATE REMEDY AT LAW

41. As for the Order against Gjovik and the hearing, see the Emergency Motion for Relief

from the "Kafkaesque nightmare" the state of Washington's unlawful statutes has forced her

into. (e.g., Docket # 11).

42. Gjovik requires the intervention of the federal courts and equitable remedies to re-

establish status quo by enjoining unconstitutional actions by state officers, a remedy which is

"deeply rooted in American jurisprudence." *Armstrong v Exceptional Child Ctr. Inc,* 575 U.S.

320, 327 (2015).  Due to the vexatious Petitioner who sued Gjovik in state court, who Gjovik has

already formally complained to the federal government of witness intimidation about, Gjovik

expects to face further retaliatory and threatening litigation from the Petitioner as long as the

state laws invite and enable it. The state courts clearly cannot be trusted to uphold the U.S.

Constitution as a discretionary matter, and the state Attorney General & legislature cannot be

trusted to instruct the courts to uphold the U.S. Constitution as they're even retiring their

Constitutional savings provision.

MOTION FOR PRELIM. INJ.                                                PO BOX 119 SANTA CLARA, CA 95050
CASE NO. 2:22-CV-00807-RAJ-BAT                                                          (408) 883-4428

43. Washington might complain about having some of their statutory provisions found unlawful. However, Washington works to pass better laws, they still have their criminal harassment statutes, their domestic violence statutes, and plenty of others.

## VIII. PUBLIC INTEREST

44. It is always in the public's interest to prevent the violation of the U.S. Constitution and of individuals' constitutional rights. *Melendres v. Arpaio*, 695 F3d 990, 1002 (9th Cir. 2012). "It would not be equitable or in the public's interest to allow the state to continue to violate the requirements of federal law." *Valle Del Sol Inc. v. Whiting,* 732 F.3d 1006, 1029 (9th Cir. 2013). Here, in addition to all of the unconstitutional laws, facially and applied, the state of Washington also has the audacity to retire its Constitutional Savings Provision, RCW 10.14.190:

> **Constitutional rights. (Effective until July 1, 2022.)**
> Nothing in this chapter shall be construed to infringe upon any constitutionally protected rights including, but not limited to, freedom of speech and freedom of assembly.

45. In a motion for a preliminary injunction, a court may consider its interest in "efficient administration and judicial economy." Here, if the Order and state hearing are not enjoined, if these facially bad laws stay active, it is entirely possible the state will make Gjovik's situation far worse and thus create even more issues for the federal courts and agencies to have to address. If these overbroad, vague statutes are not restrained, it's likely more people will, and are being, harmed. While preliminary injunctions are rare and for extraordinary situations, the use here would be in support of judicial economy.

46. The public interest favors an injunction, as reflected in the principles of the First Amendment, is served by free expression on issues of public concern. *New York Times v.*

1  *Sullivan*, 376 U.S. 254, 270 (1964) (emphasizing the importance of "uninhibited, robust, and

2  wide-open" debate on public issues); *Texas v. Johnson*, 491 U.S. 397, 408-09 (1989) (noting that

3  the First Amendment best "serve[s] its high purpose when it induces a condition of unrest,

4  creates dissatisfaction with conditions as they are, or even stirs people to anger []").

5

## IX.   PRAYER FOR RELIEF

7  47. For these reasons, and for reasons set forth more fully in the Complaint, Gjovik feels

8  she is deserving of preliminary injunctive relief pending final, lawful action from the Court.

9  WHEREFORE, Plaintiffs respectfully request that the Court:

10  A. Grant the proposed orders or similar orders, as the court deems appropriate.

11  B. Issue these orders without any hearing, or schedule an expedited hearing.

12  C. Grant any other relief as the Court deems just and necessary.

13

14  Gjovik respectfully submits that these requests are related to arguments she plans make

15  before Your Honor.

16

## X.    CERTIFICATE OF SERVICE & DECLARATION OF MEET/CONFER

18  I hereby certify that on June 21, 2022, I did serve the above Motion for Preliminary

19  Injunction through the Court's ECF filing system pursuant to Fed. R. Civ. Proc. 5(b)(2)(E) to the

20  following counsel for all Defendants: the State of Washington, Governor Inslee, and Attorney

21  General Ferguson as represented by Asst. Attorney General William McGinty.

22  I hereby declare and certify that per Honorable Richard A. Jones "General Motions

23  Practice" that upon initial contact with the state of Washington on June 9, I informed them of my

24  intent to request emergency injunctive relief on June 16, the state of Washington, per Mr.

MOTION FOR PRELIM. INJ.                                            PO BOX 119 SANTA CLARA, CA 95050
CASE NO. 2:22-CV-00807-RAJ-BAT                                              (408) 883-4428
- 20 -

(102 of 162), Page 102 of 162
Case: 25-2028, 05/20/2025, DktEntry: 27.4, Page 102 of 162
Case 2:22-cv-00807-RAJ-BAT Document 11-2 Filed 06/24/22 Page 21 of 23

McGinty, confirmed they understood. I sent an outline of the motion as soon as I completed legal research and drafting on June 19 2022 and asked McGinty to please discuss the matter during our conference on June 21 2022. Gjovik submits the motion, along with the Emergency Motion, following the conference with Mr. McGinty as he was not able to eliminate the need for this request. (e.g., Dkt # 11, #3 Meet & Confer).

Respectfully submitted,

DATED: June 21, 2022

*Ashley Gjovik*

_____

ASHLEY M. GJOVIK

*Pro Se*

## XI. PROPOSED ORDER GRANTING

## PLAINTIFF'S EMERGENCY PRELIMINARY INJUNCTION

After review, the Court hereby GRANTS Plaintiffs' Emergency Motion for Preliminary Injunction and ORDERS Defendants State of Washington to:

- Enjoin RCW 7.105.010(35(a) & 10.14.020: "to alarm" and "to annoy" and "or is detrimental" and "legitimate or"

- Enjoin RCW 7.105.010(5)(b) & 10.14.030 "legitimate or"

- Enjoin RCW 7.105.080 & 10.14.155 "or indirectly" and "through publication" and "Communication on any electronic medium that is generally available to any individual residing in the state is sufficient to exercise jurisdiction under subsection (1)(d) of this section. (3)(b) An act or acts that "occurred within this state" include an oral or written statement made or published by a person outside of this state to any person in this state by means included in (a) of this subsection, or by means of interstate commerce or foreign commerce."

- Enjoin RCW 7.105.310(1)(0): "or in frivolous filings against the petitioner, making harassing or libelous communications about the petitioner to third parties, or making false reports to investigative agencies" and "a petitioner may request this relief by separate motion at any time within five years of the date the protection order is entered even if the order has since expired."

- Mandate, RCW 10.14.190, the Constitutional Savings Provision continue in force

Ordered by,

1    Dated this ___ day of ___, 2022.

2

3    _____

4    UNITED STATES DISTRICT JUDGE

5

6

7  Presented by,

8    Dated this ___ day of June, 2022.

9

10   _____

11   Ashley M. Gjovik (*pro se*)

12

13

14

15

16

17

18

19

20

21

22

23

24

<div align="right">Honorable Judge Richard A. Jones</div>

# UNITED STATES DISTRICT COURT
### for the WESTERN DISTRICT of WASHINGTON at SEATTLE

| | |
|---|---|
| | CASE NO. 2:22-CV-00807-RAJ-BAT |
| | **EMERGENCY MOTION FOR INJUNCTIVE RELIEF** |
| *Ashley M. Gjovik (pro se),* | |
| Plaintiff(s), | NOTE ON MOTION CALENDAR: PROSPOSED FOR JUNE 24 (1ST FRIDAY) |
| v. | |
| *State of Washington, et al.* | |
| Defendant(s). | *Emergency Relief Required Before Direct Risk of Incarceration on June 30 2022* |

## I.    INTRODUCTION

1. Gjovik introduces an emergency motion for preliminary injunctive relief and/or emergency TRO, under 18 U.S.C. 1514, NLRA Preemption, All Writs Act, and Rule 65, to invalidate the state Order against her and stop the open appeal on the matter. This emergency relief is required to prevent pretrial irreparable injury and to preserve the U.S. District Court's ability to provide relief after a decision on the merits. *Univ. of Tex. v. Camenisch,* 451 U.S. 390,

1    395 (1981); *Lopez v. Brewer,* 680 F.3d 1068, 1072 (9th Cir. 2012). Outside of injunctive and

2    equitable relief, there are no other legal or practical remedies, and at this rate Gjovik's next

3    motion could easily be a writ of habeas corpus. *Sampson v. Murray*, 415 U.S. 61, 88 (1974);

4    *FTC v. Consumer Def., LLC*, 926 F.3d 1208, 1213 (9th Cir. 2019).

5        2. Gjovik, a California resident & federal whistleblower against Apple Inc (e.g., Dkt #

6    10), is currently subject to a content-based, prior-restraint "gag-order" issued against her, ordered

7    by the courts of the state of Washington, empowered by the overbroad and vague laws of the

8    state of Washington, and based on her activities as a federal witness and informant, including

9    with the U.S. NLRB, and based on her publication of already public records related to the

10   witness intimidation. (e.g., Dkt. # 1). The state of Washington Judge based this extraordinary

11   gag-order on the fact that Gjovik "repost[ed] [already public information] to other people" in a

12   federal legal memo and declared that "harassment." (e.g., Dkt. # 1 at pg. 36) The *ex parte*

13   Petitioner had testified she requested the Order against Gjovik because Gjovik filed an NLRB

14   charge in January 2022 against Apple Inc, alleging witness intimidation and retaliation, and

15   naming Petitioner as an agent of Apple Inc in the misconduct. (e.g., Dkt. # 1 #10) (Exhibit D, H).

16       3. The only information at issue that Gjovik shared unrelated to the witness intimidation,

17   was unintentionally posting on Twitter an already public photo of a cat. (3/1 Transcript, pg 16,

18   46-47). The Judge specifically noted in her decision, the Order was granted against Gjovik

19   partially on the basis of Gjovik re-posting "information about [a] pet." (3/1 Transcript, pg 16, 46-

20   47). Gjovik currently faces daily risk of incarceration due to complaining to the federal

21   government and the public about federal witness intimidation, and posting a photo of a cat on

22   Twitter. (Exhibit F).

23       4. The Petitioner for the order was an employee in Apple Inc's "Global Security" team.

24   ..(e.g., Dkt. # 1 at pg. 10). The Order prohibits Gjovik from having contact with the Petitioner

(despite the Petitioner admitting there had been none prior for months), and prohibits surveillance of the Petitioner (despite Gjovik's protests of obstruction to her gathering evidence of Petitioner's ongoing federal witness intimidation). The Order also prohibits Gjovik from making any statements on any medium about Petitioner for five-years. The only exception the Judge provided was that Gjovik could still "testify" to the courts and agencies about her allegations against the Petitioner, thus implying all other speech is forbidden. Punishment for breaking the Order is a gross misdemeanor and contempt of court, with thousands of dollars of fines and up to 364 days of incarceration per violation. RCW 7.21.

5. Under the Order, Gjovik cannot interact with Petitioner, including with the state appeal of the Order. Gjovik cannot talk to lawyers about Petitioner's actions, the appeal, or the Order without apparently violating the Order. Gjovik is unsure what she can tell the government & law enforcement about Petitioner's ongoing witness intimidation. Gjovik's lawyer for the Order unexpectedly withdrew last month and Gjovik has been unable to obtain new counsel despite much effort, forcing Gjovik to take responsibility for drafting and submitting an appellant brief by June 30 2022, which would violate the order in numerous ways and thus lead to risk of multiple years in jail.  In a matter of days Gjovik will be forced to submit and serve an appellant brief which breaks the very Order she must appeal, and delivers evidence of the violation of the very people who can report Gjovik's violation and seek enforcement. If Gjovik takes no actions, she will miss court deadlines and face dismissal with prejudice, sanctions, and fees. King County Superior Court Local Rule 4(g)-(i). There is no path to escape this issue within the state.

6. The state of Washington's interference with Gjovik's federal cases does not appear to be an anomaly, as the state is also codifying that starting July 1 2022. "*The petition may be made regardless of whether or not there is a pending lawsuit, complaint, petition, or other action between the parties.*" RCW 7.105.105(5).  However, state courts are forbidden from entertaining

1  jurisdiction over federally created causes of action if Congress has explicitly or implicitly made

2  federal court the exclusive jurisdiction. *Gulf Offshore Company v. Mobil Oil Corporation*, 453

3  U.S. 473, 477–78 (1981). The state of Washington cannot be trusted to handle this matter

4  properly, as they've already forced Gjovik into this Kafkaesque nightmare.[1]

5  ## II.  EMERGENCY MOTION FOR PRELIMINARY INJ. RELIEF / TRO ON RO

6  7. Gjovik, pursuant to Rule 65 of the Federal Rules of Civil Procedure, and Local Rule

7  65, as well as under the All Writs Act, moves this Court for entry of an Emergency Injunction

8  enjoining the Defendant state of Washington from enforcing the "Order" that was applied against

9  Gjovik. .(e.g., Dkt. # 1, Attch # 1, at pg. 13), to directly enjoin the Order and case, and to enjoin

10  the state court proceeding on the matter. (e.g., Dkt. # 10 at pg. 2-3). Gjovik files this motion for

11  Emergency Injunctive Relief to enjoin, vacate, and/or otherwise declare invalid the entire Order

12  against her. Gjovik also files this motion to enjoin, stay, void, or otherwise address the unlawful

13  state court hearing on the Order.

14  8. This Court may order injunctive relief through 28 U.S. Code § 1651, "All Writs Act"

15  powers, or via its other discretionary powers in equity. "[t]he Supreme Court and all courts

16  established by Act of Congress may issue all writs necessary or appropriate in aid of their

17  respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).

18  The general rule is a private party may seek federal declaratory and injunctive relief against the

19  enforcement of a state statutory scheme on the ground of federal preemption. *Bud Antle, Inc. v.*

20  *Barbosa*, 45 F.3d 1261, 1269 (9th Cir. 1994); See *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96

21  n. 14, 103 S.Ct. 2890, 2899, n. 14, 77 L.Ed.2d 490 (1983). While these cases were not against

22  governments, Gjovik is put in a situation where a party *ex parte* to Gjovik's Apple Inc cases,

23

24
---
[1] See: Franz Kafka, The Trial (1925).

EMRG. MOTION FOR. INJ.                                      PO BOX 119 SANTA CLARA, CA 95050
CASE NO. 2:22-CV-00807-RAJ-BAT                                          (408) 883-4428
- 4 -

sued Gjovik about Gjovik's federal Apple Inc cases. Apple Inc *is ex parte* to the Order. It would

break the Order to sue Petitioner. Gjovik sues the state of Washington out of desperation.

9. "Whereas traditional injunctions are predicated upon some cause of action, an All

Writs Act injunction is predicated upon some other matter upon which a district court has

jurisdiction. Thus, while a party must "state a claim" to obtain a "traditional" injunction, there is

no such requirement to obtain an All Writs Act injunction—it must simply point to some

ongoing proceeding, the integrity of which is being threatened by someone else's action or

behavior." *Rohe v. Wells Fargo Bank, N.A.,* 988 F.3d 1256, 1265 (11th Cir. 2021). It is widely

accepted that federal courts possess power under the All Writs Act to issue narrowly tailored

orders enjoining vexatious litigants from abusing the court system by harassing opponents, and

even to impose sanctions. *Newby v. Enron Corp*., 302 F.3d 295, 301 (5th Cir. 2002); *Harrelson

v. U.S.*, 613 F.2d 114, 116 (5th Cir.1980); *Chambers v. NASCO, Inc.,* 501 U.S. 32, 39 (1991).

10. This motion is based on the following grounds:

- The hearing and appeal are unnecessary because the matter is unwarranted & patently
  unconstitutional and preempted by federal law and powers. (NLRA, 18 U.S.C. 1514).
- The Order is a hopelessly vague, overbroad, and content-based prior restraint. (1st and
  14th Amendments).
- The Petitioner testified under oath she requested the Order against Gjovik, based on
  Gjovik's complaints to the federal government about federal witness intimidation by
  the Petitioner. (e.g., Dkt. # 1 at pg. 63, 81). (18 U.S.C. 1514).
- The Order was based on fully protected activities under the United States,
  Washington, and California constitutions: publishing public information and public
  records about public figures and matters of public concerns; reporting unlawful
  activities to the government including federal witness intimation and retaliation;
  publishing reports on legal matters of public concern. (47 U.S.C. § 230, *Kimzey v.
  Yelp! Inc.,* 836 F.3d 1263, 1270 (9th Cir. 2016), *Catlett v. Teel*, 15 Wash. App. 2d
  689, 704, 477 P.3d 50, 59 (2020); RCW 42.56.001, RCW 42.56.550(3), etc.)

1

2

-   Any further hearings, evidence, briefs, etc Gjovik must provide to defend herself
    from Petitioner, will further interfere with Gjovik's open federal cases and open

3

Gjovik up to more harm. (18 USC 1514).

4

11. It's impossible to salvage the Order against Gjovik in any way and thus it must be

5

enjoined in order to protect Gjovik from even more severe, irreparable harm. Pursuant to the All-

6

Writs Act, a federal court may enjoin actions in other jurisdictions that would undermine its

7

ability to reach and resolve the merits of the federal suit before it. 28 U.S.C.A. § 1651(a). Gjovik

8

still does not believe she can legally write Petitioner's name in these legal filings. Gjovik also

9

worries in even saying "Petitioner" she is breaking the Order as she is prohibited from making

10

statements about Petitioner's "names" (plural). "**Respondent shall not make any statements or**

11

**posts or other publications about Petitioner, including but not limited to, petitioner's**

12

**medical information, petitioner's family, petitioner's names, on any social media or**

13

**internet or other medium. Nothing about this Order prohibits Respondent from testifying**

14

**in administrative or judicial proceedings.**" *[REDACATED] v Gjovik*, Case No.

15

22CIV01704KCX, King County District Court (Mar. 2022). (e.g., Dkt #1, Att #1 at pg 13). This

16

federal proceeding is undermined by Gjovik's inability to provide basic information to the court.

17

12. Here, this Motion is based on the pleadings on file in the case, the attached

18

Memorandum, Appendix with Exhibits, Docket, and any such other evidence that the Court

19

should hear in this case. This Motion for Injunctive Relief is directly related to the larger matter

20

at issue here, as this Order and the appeal for the Order, are based on, caused by, enabled by, and

21

enforced by the state of Washington's incredibly unlawful statutes. Fortunately, Article III

22

Federal courts have inherent equitable power to grant injunctive relief. *Califano v. Yamasaki*,

23

442 U.S. 682, 705 (1979). *Rodriguez v. Hayes,* 591 F.3d 1105, 1120 (9th Cir. 2010).

24

13. In addition to NLRA Preemption and 18 U.S.C. § 1514 injunctive relief, statutes for additional pending actions (e.g., Docket # 10, Notice of Pendency), also possess injunctive powers including 29 U.S.C.A. § 662 (OSH Act, "*district court shall have jurisdiction to grant such injunctive relief or temporary restraining order*"); 18 U.S.C. § 1514A (SOX, see *Halliburton, Inc. v. Admin. Rev. Bd., 771 F.3d 254, 264 (5th Cir. 2014)*) finding that SOX provides "*all relief necessary to make the employee whole*" including injunctive relief), and 29 U.S.C.A. § 104 & 29 U.S.C.A. § 107 (federal policy greatly disfavoring labor-related restraining orders).

14. The Norris-LaGuardia Act is not an issue as the "act does not bar issuance of injunctions to prevent third parties from interfering with labor disputes of others." 29 U.S.C.A. § 101. Here, the labor dispute is between Gjovik and Apple Inc. While Petitioner may have been named in Gjovik's charges, Petitioner is not party to Gjovik's labor dispute with Apple Inc.

### III. LEGAL STANDARD

15. Complaint and summons were properly served via FRCP 4 and RCW 4.92.020,[2] per the Attorney General's published instructions. (e.g., Dkt #1). The court does not have to determine subject matter jurisdiction to order pre-trial injunctive relief. *United States v. United Mine Workers*, 330 U.S. 258, 290 (1947). Congress, by statute, may require that courts review an application for pretrial injunctive relief under a standard that differs from traditional equitable standards, may be far more lenient. See *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982). Additionally, in First Amendment challenges to state statutes, standing requirements are quite relaxed. *City of Lakewood v. Plain Dealer Pub. Co.,* 486 U.S. 750, 760 (1988). The Court

---

[2] RCW 4.92.020: Service of summons and complaint in such actions shall be served in the manner prescribed by law upon the attorney general, or by leaving the summons and complaint in the office of the attorney general with an assistant attorney general.

1    intends to give a platform to the few who are brave enough to step forward on behalf of the many

2    others too fearful to fight back. *Canatella v. California*, 304 F.3d 843, 853 n.12 (9th Cir. 2002).

3        16. The purpose of a preliminary injunction is to preserve the status quo if the balance of

4    equities so heavily favors the moving party that justice requires the court to intervene to secure

5    the positions until the merits of the action are ultimately determined. *University of Texas v.*

6    *Camenisch,* 451 U.S. 390, 395 (1981); *Winter v. Natural Resources Defense Council, Inc.*, 555

7    U.S. 7, 129 S. Ct. 365, 374 (2008) "[W]hen a Plaintiff has shown a likely violation of his or her

8    First Amendment rights, the other requirements for obtaining a preliminary injunction are

9    generally deemed to have been satisfied." *Phelps-Roper v. Troutman*, 662 F.3d 485, 488 (8th Cir.

10   2011).

11       17. It is a well-established rule that where Congress expressly provides for injunctive relief

12   to prevent violations of a statute, a plaintiff does not need to demonstrate irreparable harm to

13   secure an injunction. See *United States v. City of San Francisc*o, 310 U.S. 16, 31 (1940);

14   *Atchison, T. and S. F. Ry. Co. v. Lennen*, 640 F.2d, 259–260 (1981). In such situations, it is not

15   the role of the courts to balance the equities between the parties. The controlling issue is whether

16   Congress has already balanced the equities and has determined that, as a matter of public policy,

17   an injunction should issue where the defendant is engaged in, or is about to engage in, any

18   activity which the federal statute prohibits. *Burlington N. R. Co. v. Bair*, 957 F.2d 599, 601–02

19   (8th Cir. 1992).

20       18. Because Washington subjects Gjovik to the untenable choice between self-censorship

21   and forsaking her Access to Courts, risking criminal and civil liability, the laws impose

22   irreparable harm, threaten the public interest, and tip the balance of equities heavily in favor of

23   granting a preliminary injunction. Thus, all four *Winter* factors favor the grant of a preliminary

24   injunction.  Even the state of Washington agrees with the irreparable harm Gjovik faces. "The

EMRG. MOTION FOR. INJ.                                          PO BOX 119 SANTA CLARA, CA 95050
CASE NO. 2:22-CV-00807-RAJ-BAT                                              (408) 883-4428
                                    - 8 -

1    legislature recognizes that persons convicted and imprisoned for crimes they did not commit

2    have been uniquely victimized." Those wrongly convicted suffer "tremendous injustice by being

3    stripped of their lives and liberty." RCW 4.100.010

4        19. The All Writs Act, 28 U.S.C. § 1651(a), provides federal courts with the power to

5    "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to

6    the usages and principles of law." This grant of authority is limited by the Anti–Injunction Act,

7    28 U.S.C. § 2283, which bars a federal court from enjoining a proceeding in state court unless

8    that action is "expressly authorized by Act of Congress, or where necessary in aid of its

9    jurisdiction, or to protect or effectuate its judgments." *Ret. Sys. of Ala. v. J.P. Morgan Chase &*

10   *Co.*, 386 F.3d 419, 425 (2d Cir. 2004). Here, we have numerous express acts of Congress

11   empowering the court.

12       i.    **Jurisdiction and Authority for Intervention under 18 USC 1514**

13       20. Petitioner directed the state court to Gjovik's "legal memo" in the petition for a

14   restraining order and referenced the memo numerous times during the state hearing. The Judge

15   engaged on this, knowing it was a legal memo, and cited it as part of the basis for the finding of

16   harassment against Gjovik. This "memo" was a hybrid legal memo featuring embedded exhibits,

17   that was paired with a formal brief with lengthy legal analysis. (e.g. Dkt #1, Attch #1, at pg 15).

18   Gjovik had addressed the legal memo at issue to the U.S. NLRB, U.S. Department of Labor, U.S.

19   District Attorney's Office, California Dept. of Justice, and California Dept. of Labor noting her

20   open cases and charges with the above as well was the U.S. SEC & U.S. SEC and under

21   "Charges" included violations of the NLRA, CERCLA, SOX, OSHA, and 18 U.S.C. 1512 &

22   1513. (e.g., Docket #1, pg. 16-17, Attch. #1 pg. 15). The memo was titled "*Ashley Gjovik v*

23   *Apple Inc: Intimidation, Threats, & Obstruction | Evidence Report v9.*" (e.g., Docket #1, Attch.

24   #1 pg. 15). The U.S. NLRB, U.S. Dept of Labor, and California Dept of Labor confirmed

1    receipt of the memos and have been actively reviewing the. (e.g., Docket #10, Attch. #1 pg. 6, 7,

2    14-17).

3        22. Two of the U.S. statutes Gjovik referenced in the memo were 18 U.S. Code § 1512

4    which prohibits tampering with a witness, victim, or an informant and 18 U.S. Code § 1513

5    which prohibits retaliating against a witness, victim, or an informant. (Exhibit H). Gjovik alleged

6    in her complaint and legal memos that Apple Inc has likely violated these federal statutes in their

7    conduct towards her, including but not limited to Petitioner's conduct well before the lawsuit.

8    (Exhibit D & H). Prosecution under these statutes can occur in the district where the protected

9    activities occurred or where the alleged offenses occurred. 18 U.S. Code § 1513(g); 18 U.S.

10   Code § 1512(i). The 2002 Sarbanes-Oxley amendments to the Victim and Witness Protection

11   Act of 1982 expanded the VWPA to criminalize "any act of intentional retaliation" taken against

12   federal informants and witnesses. 18 U.S.C. § 1513(e).

13       23. 18 U.S.C. § 1514 enables federal courts to engage in civil actions to restrain

14   harassment of a victim or witness, including but not limited to offenses under § 1512 or under §

15   1513, and action can be initiated by the courts own motion.  18 U.S.C. § 1514(b)(1). *U.S. v.*

16   *Cofield*, 11 F.3d 413, 418, n.6 (4th Cir. 1993), cert. denied, 510 U.S. 1140 (1994); *U.S. v. Tison*,

17   780 F.2d 1569 (11th Cir. 1986). With witness intimidation or obstruction; intent or 'endeavor'

18   can be enough." *United States v. Vixie,* 532 F.2d 1277, 1278 (9th Cir.1976); *United States v.*

19   *Price*, 951 F.2d 1028, 1031 (9th Cir. 1991).

20       24. The VWPA commands a court to issue a protective order to prohibit harassment of a

21   witness in a federal criminal investigation. Moreover, "while the [Anti-Injunction Act] generally

22   prohibits federal courts from enjoining state court litigation, the VWPA acts as an exception to

23   the general rule, since it creates 'a specific and uniquely federal right or remedy ... that could be

24   frustrated' in the absence of an injunction." 28 U.S.C. § 2283. 18 U.S.C. § 1514(b)(1). *Mitchum*

1    *v. Foster,* 407 U.S. 225, 237–38, (1972); *In re Grand Jury Subpoena,* 267 F. Supp. 3d 741, 744–

2    45 (N.D. Tex. 2016), aff'd, 866 F.3d 231 (5th Cir. 2017); *United States v. Tison*, 780 F.2d 1569,

3    1573 (11th Cir. 1986); *United States v. Lewis*, 411 F.3d 838, 844 (7th Cir. 2005).

4         25. Actions filed without legitimate purpose may qualify as unlawful harassment and

5    hence constitute an attempt to intimidate or unlawfully influence a witness. See *U.S. v. Lewis*,

6    411 F.3d 838, 845-46 (7th Cir.2005) (upholding application of 18 U.S.C. § 1514 to enjoin a civil

7    lawsuit filed for illegitimate purposes as witness harassment); *United States v. Tison,* 780 F.2d

8    1569, 1571-73 (11th Cir. 1986) (same). *United States v. Kilbride*, 584 F.3d 1240 (9th Cir. 2009).

9    As recently as May 24 2022, Petitioner continues to intimidate and tamper with Gjovik, posting

10   publicly in response to an article Gjovik had published calling Gjovik's NLRB charges

11   "frivolous," noting she sent the NLRB "novels" about Gjovik, and arguing Gjovik should not be

12   allowed to have "settlements, supplemental affidavits, [or get] witness testimony." (Exhibit I,

13   Gjovik was made aware and captured this evidence at risk of incarceration)

14        26. Washington's own statutes also support the policy behind enjoining the state lawsuit

15   and Order here. The purpose of Wash. Rev. Code § 4.24.500-520 is "to protect individuals who

16   make good-faith reports to appropriate governmental bodies." The section provides civil

17   immunity in causes of action asserted in a civil action against a person based on the person's:

18   "(b) Communication on an issue under consideration or review in a legislative, executive,

19   judicial, administrative, or other governmental proceeding; (c) Exercise of the right of freedom

20   of speech or of the press, the right to assemble or petition, or the right of association, guaranteed

21   by the U.S. Constitution or Washington state Constitution, on a matter of public concern." RCW

22   4.105.010(2)(b)-(c). Gjovik had introduced a motion under this statute during the February 15

23   2021 hearing. (e.g., Docket #1, Attach. #1 pg. 35-39). The state judge did not rule on it.

24

EMRG. MOTION FOR. INJ.                                                    PO BOX 119 SANTA CLARA, CA 95050
CASE NO. 2:22-CV-00807-RAJ-BAT                                                        (408) 883-4428

27.  Upon giving notice to file the motion, the proceedings between the parties were to be stayed until entry of an order ruling on the motion. 4.105.030(1)-(3). The provisions of the statute were to be "*broadly construed and applied to protect the exercise of the right of freedom of speech and of the press, the right to assemble and petition, and the right of association, guaranteed by the U.S Constitution or the Washington state Constitution*." RCW 4.105.901. Enjoining is in line with the public policy of the state of Washington to enjoin and/or stay the state at issue here proceedings, along with enjoining the Order against Gjovik.

**ii.     Jurisdiction and Authority for Intervention under the NLRA**

28. Petitioner's testimony, evidence, and petition for the restraining order against Gjovik specifically pointed to Gjovik's NLRB charge against Apple Inc, and an associated legal brief, as somehow annoying, alarming or annoying her. (e.g. Dkt #1, Attch #1, Exhibit B).  In *Bill Johnson's Restaurants, Inc. v. NLRB*, the Supreme Court found state lawsuits without a reasonable basis (like this petition, simply based on public information and complaints to the government), and made with an unlawful objective (as this petition was an attempt to silence an informant), are not protected under Right to Petition. 461 U.S. 731 (1983). Indeed, retaliatory lawsuits have even been found to constitute retaliation and unfair labor practices. *Id; Power Systems, Inc*., 239 N.L.R.B. 445, 449-450 (1978).  The retaliatory lawsuit can still constitute an unfair labor practice even if the Plaintiff/Petitioner is not directly with the employer. *Ashford TRS Nickel,* NLRB Administrative Judge Opinions, No. 19-CA-032761. Indeed, Gjovik reported the matter. While the NLRB will likely come to similar findings here, the timeline for NLRB decisions and actions is too slow to address the issue at hand.

29. Under the "well established" *Garmon doctrine,* the NLRA preempts state law claims for relief that are based on conduct that is "arguably" protected or prohibited by the NLRA. *San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon*, 359 U.S. 236 (1959); *Bud*

1  *Antle, Inc. v. Barbosa*, 45 F.3d 1261, 1268 (9th Cir. 1994). In two exceptions to *Garmon*, the

2  NLRA will not preempt state action which regulates activity of "a merely peripheral concern" to

3  the Act or "where the regulated conduct touche[s] interests so deeply rooted in local feeling and

4  responsibility." *Bud Antle, Inc. v. Barbosa*, 45 F.3d 1261, 1268 (9th Cir. 1994);.*Farmer v. United*

5  *Brotherhood of Carpenters & Joiners, Local 25*, 430 U.S. 290 (1977). Here, the "order" against

6  Gjovik is judicial lawmaking, thus a state law. The underlying conduct that formed the basis for

7  the state action, was admittedly Gjovik's NLRB charge and legal brief against Apple Inc.

8  Restraining and prosecuting Gjovik for engaging in federal whistleblowing should not be

9  "deeply rooted in Washington's local feelings."

10       30. The basic concern underlying the *Garmon* doctrine is "the interest in preserving a

11  uniform national labor policy and protecting employees and employers from local regulation

12  which conflicts with the NLRA's centralized regulatory scheme." *Bud Antle, Inc. v. Barbosa,* 45

13  F.3d 1261, 1270 (9th Cir. 1994). The NLRB and 9th Circuit agreed, "private parties must be

14  empowered affirmatively to invoke the *Garmon* doctrine on their own behalf." *Id.* Further, under

15  the *Machinists doctrine*, states are prohibited from interfering with conduct in the labor-

16  management sphere that Congress intended to be unregulated by either state or federal law.

17  *Lodge 76, Int'l Ass'n of Machinists & Aerospace Workers v. Wisconsin Employment Relations*

18  *Comm'n,* 427 U.S. 132 (1976). The *Machinists doctrine* recognizes that there are areas of labor-

19  management relations not within the jurisdiction of the Board, and thus not subject *to Garmon*

20  *preemption,* but nonetheless outside the proper scope of state regulation. *Metropolitan Life Ins.*

21  *Co. v. Massachusetts,* 471 U.S. 724, 749 1985); *Garmon*, 359 U.S. 236 (1959). Even if some of

22  Gjovik's speech wasn't directly under NLRA/Garmon, Machinists covers the remainder.

23       31. Congress vested primary jurisdiction over the elaboration of labor policy and the

24  adjudication of labor disputes in the NLRB. See, e.g., N.*L.R.B. v. Truck Drivers Local Union No.*

*449*, 353 U.S. 87, 96 (1957) The *Garmon doctrine* stands for the principle that potential, rather than actual conflict between a state law claim and federal labor law is sufficient to require preemption of the state law claim. If a claim brought under state law alleges conduct that "arguably" is subject to section 7 or section 8 of the NLRA, "*the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted*." *Garmon* at 359 U.S. 236, 245 (1959). The state Order against Gjovik is in conflict with Gjovik's prior NLRB charge against Apple Inc, and is based on Gjovik's conduct which is "arguably" subject to section 7 of the NLRA (complaining of unfair labor practice and witness intimidation due to her NLRB charges).

32. Preemption under these doctrines does not require that a plaintiff have a remedy before the NLRB, or even that the NLRB will hear the claim in the first place. *Garmon* at 359 U.S. 236 (1959); *Bassette v. Stone Container Corp*., 25 F.3d 757, 759-60 (9th Cir. 1994). Instead, once a court determines that a plaintiff's claim alleges conduct that "arguably" or "potentially" subject to regulation or protection under the NLRA, federal labor law preempts state law and the NLRA has exclusive jurisdiction. *Id.* Retaliatory state lawsuits may also violate Section 8(a)(1) when preempted by the NLRA and violate Section 8(a)(1) of the NLRA when it interferes with NLRB processes. *Id, Motor Coach Employees v. Lockridg*e, 403 U.S. 274, 286-88 (1971*); Garner v. Teamsters Union,* 346 U.S. 485, 490-91 (1953).

33. The NLRA can and has preempted state issued restraining orders. *Carpenters Union Loc. No. 1109 v. N.L.R.B.,* 209 F. App'x 692, 694 (9th Cir. 2006), order amended, cause remanded, 219 F. App'x 654 (9th Cir. 2007), The state court only had "discretionary power to enjoin [an employee] from engaging in violent behavior," but not to enjoin communicating or organizing with other workers, picketing, etc. *Youngdahl v. Rainfair, Inc*., 355 U.S. 131, 139 (1957). A state restraining order based upon an NLRB charge and NLRB legal memo is no doubt

1   preempted by federal law, and a state order prohibiting discussion by a labor organizer against

2   another person involved in labor organizing is also no doubt void.

3       34. Here, Petitioner documented her retaliatory animus in the Petition for a Restraining

4   Order writing "On January 11 2022, [Gjovik] filed an NLRB charge against Apple Inc claiming

5   [Petitioner] was harassing [Gjovik] on Apple's behalf. I have not harassed her. On January 31

6   2022 she published a 'memo' for that charge containing defamatory and private information

7   about me (and others)." (Complaint Exhibit B) Petitioner included a link to the draft of the memo

8   with the URL showing the title as "*U.S. NLRB Ashley Gjovik Apple Inc Jan 10 2022 Charge*

9   *Draft* 1." (Orig. Complaint Appendix pg 8 of 67, screenshot of Petition, box B). Under "other

10  litigation" petitioner write "*NLRB Charge CA-288816 – charge against Apple Inc which*

11  *contains false/misleading information about me made in bad faith by Ashley Gjovik.*" (e.g.,

12  Docket #1, Att #1, pg 9, screenshot of petition, box 12).

13      35. Petitioner also testified under oath that the NLRB supposedly contacted her and told

14  her she needed to call the police or request a protection order against Gjovik, and also claims the

15  NLRB told her Gjovik's Petition was filed in bad faith. Petitioner testified "*This is what caused*

16  *me to do this, is because the director of security at the National Labor Relations Board believes*

17  *that [Gjovik] filed a charge with the intent to harass me on January 11th…. They contacted me. I*

18  *have a voicemail from them.*" (e.g., Docket #1, pg 81, line 14-20 quoting Feb 1 2021 ex parte

19  hearing transcript). The state Judge asked to hear the voicemail, but Petitioner never provided it

20  and dropped the argument after.

21      36. The U.S. NLRB has denied Petitioner's statements, with Asst. General Counseling

22  telling Gjovik no one gave Petitioner legal advice, directed her to take action against Gjovik, and

23  offered no opinion on the merits of Gjovik's charges. (e.g., Docket #1, Attch #1, pg 67, Exhibit

24  L: NRLB Denials). When the NLRB reviews Gjovik's pending claim against Apple Inc for post-

termination harassment, now including a retaliatory lawsuit, the Petitioner's sworn claims will no

doubt be reviewed as part of the charge.[3] Thus, under apparently false pretenses and false

statements, Petitioner attempted force Gjovik into an out of state courtroom, to informally

introduce cross-claim-like accusations against Gjovik. The questions as to whether Petitioner

harassed Gjovik (and if so, if as an agent of Apple) and/or if Gjovik harassed Petitioner, rest on

substantially the same facts.

37. It does not matter that Gjovik's NLRB "charges" were not yet docketed cases. As the

8th Circuit wrote, "In our view, it would be absurd to hold that Congress meant to proscribe

interference with the administrative process only after a Labor Board proceeding had reached a

certain formal stage and let go unpunished individuals who obstruct earlier preliminary

proceedings by frightening witnesses into withdrawing charges out of fear for their lives.

Congress clearly intended to punish any obstruction of the administrative process by impeding a

witness in any proceeding before a governmental agency— at any stage of the proceedings, be it

adjudicative or investigative." *Rice v. United States*, 356 F.2d 709, 712–13 (8th Cir. 1966).

Other appellate courts have agreed. *United States v. Sutton*, 732 F.2d 1483, 1490 (10th

Cir.1984); *United States v. Vixie,* 532 F.2d 1277, 1278 (9th Cir.1976). The 9th Circuit as recently

wrote that it is enough that proceedings were pending or about to be instituted, or that the

perpetrator thought they may be and had intent to obstruct. *United States v. Ermoian*, 752 F.3d

1165, 1172 (9th Cir. 2013), as amended (Aug. 28, 2013)

38. Finally, the state action has and continues to severely interfere with national labor

policy. Gjovik's charges against Apple Inc are strong and unique, it's been expected her charges

---

[3] RCW 9A.72.020 Perjury in the first degree. RCW 9A.72.030 Perjury in the second degree. RCW 9A.72.040 False swearing. RCW 9A.72.050 Perjury and false swearing—Inconsistent statements. RCW 9A.72.110 Intimidating a witness. RCW 9A.72.120 Tampering with a witness. RCW 9.62.010 Malicious prosecution.

EMRG. MOTION FOR. INJ.　　　　　　　　　　　PO BOX 119 SANTA CLARA, CA 95050
CASE NO. 2:22-CV-00807-RAJ-BAT　　　　　　　　　　　　　(408) 883-4428

1   may be used to overturn legal precedent for the new pro-labor administration. .*Farmer v. United*

2   *Brotherhood of Carpenters & Joiners, Local 25*, 430 U.S. 290 (1977).

3       "The rule described in Cook's memo and the policies cited in Gjovik's complaint
        might be deemed legitimate under the Trump-era Boeing standard, but "most if
4       not all" of them would probably be illegal under earlier, more pro-labor
        precedents, said University of Wyoming law professor and former NLRB
5       attorney Michael Duff. A case like Gjovik's offers the Biden appointees "an
        attractive vehicle" to establish a precedent more like the pre-Trump ones, which
6       prohibited rules that workers could "reasonably construe" as banning legally
        protected activism, Duff said in an email." -Bloomberg, October 12 2021[4]
7   Gjovik's SOX, CERCLA, & OSHA cases have also been noteworthy, even included on the front

8   page of the Financial Times on Dec 13 2021.

9       "The US Department of Labor is investigating Apple over claims that it retaliated
        against an employee who complained of workplace harassment and unsafe
10      working conditions. Ashley Gjovik, 35, had been a senior engineering program
        manager for six years at Apple when she was fired in September for allegedly
11      leaking confidential information. An employment lawyer and an expert in US
        whistleblowing law, said the burden of proof needed for the agency to open an
12      investigation was high, as the employee must have already established enough
        evidence that, unless rebutted, would prove the case. He said the case would be
13      closely watched because it was especially rare for a labour dispute with Big Tech
        "to break into the public" domain. The labour department rarely investigated such
14      cases, he added, because of the widespread use of non-disclosure agreements to
        "silence and intimidate whistleblowers".[5] -Financial Times, Dec 13 2021
15      39. The state of Washington knowingly intruded into a high-profile, high-stakes federal

16  investigation to make its own decision on questions of facts and law the federal government was

17  already considering. The state court did not have subject matter jurisdiction to hear the claim.

18  *Garner v. Teamsters,* 346 U.S. 485 (1953) (grievance within jurisdiction of National Labor

19  Relations Board to prevent unfair labor practice not subject to relief by injunction in state court).

20

21

22  ---
    [4] J. E., Apple CEO's Anti-Leak Edict Broke Law, Ex-Employee Alleges, Bloomberg, (October 12 2021),
    https://www.bloomberg.com/news/articles/2021-10-12/apple-ceo-s-anti-leak-edict-broke-the-law-ex-employee-
    alleges

23  [5] Apple faces probe over whether it retaliated against whistleblower, US labour department inquiry follows claims
    by ex-senior engineering program manager, Financial Times (Dec 13 2021), https://www.ft.com/content/973aae8d-
24  21d9-4e84-8912-ead071c7935d

EMRG. MOTION FOR. INJ.                              PO BOX 119 SANTA CLARA, CA 95050
CASE NO. 2:22-CV-00807-RAJ-BAT                                      (408) 883-4428

1   There is statutory injunctive relief within the NLRA, expressing Congress' wish that the NLRA

2   include injunctions and equitable relief. National Labor Relations Act 10(j).

3                           **IV. IRREPARABLE HARM ABSENT RELIEF**

4          40. The Ninth Circuit makes clear that a showing of immediate irreparable harm is

5   essential for preliminary injunctive relief. *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d

6   668, 674 (9th Cir. 1988), *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir.

7   2011). The irreparable harm here is clear and indisputable. However, it is "well established that

8   the deprivation of constitutional rights unquestionably constitutes irreparable injury," *Melendres*

9   v. *Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012). "Unchecked retaliation subverts" federal law and

10  "the resulting weakened enforcement of federal law can itself be irreparable harm in the context

11  of a preliminary injunction application." *Mullins v. City of New York*, 626 F.3d 47, 55 (2d Cir.

12  2010)

13         41. Here, Petitioner submitted her petition for an order against Gjovik because of

14  Gjovik's NLRB charge, and in the petition, Petitioner called Gjovik's federal charges "meritless"

15  and made "in bad faith." Petitioner directly challenged a legal brief Gjovik had submitted to the

16  federal government, that among many other things, accusing Petitioner of federal witness

17  intimidation. Petitioner went to state court to get a ruling that Gjovik's accusations of federal

18  witness intimidation to federal courts was "harassment" under state laws. (Exhibit). The 9th

19  Circuit has ruled that when a person named by a witness, files a "a lawsuit days before the

20  witness was scheduled to testify against [that person, it] constituted an attempt to threaten or

21  intimidate [the witness] into not testifying at his trial." *United States v. Kilbride,* 584 F. 3d 1240,

22  1241-42 (9th Cir. 2009); *United States v. Sandhu No.* 2:15-cr-00231-GEB-1 (E.D. Cal. May. 12,

23  2017).

24

EMRG. MOTION FOR. INJ.                          PO BOX 119 SANTA CLARA, CA 95050
CASE NO. 2:22-CV-00807-RAJ-BAT                              (408) 883-4428
                                    - 18 -

42. Gjovik's injury is fairly traceable to the state of Washington. State of Washington has even codified its liability for personal harm, saying "The state of Washington, whether acting in its governmental or proprietary capacity, shall be liable for damages arising out of its tortious conduct to the same extent as if it were a private person or corporation." RCW 4.92.090. In actions and claims against the state of Washington, the state has designated that the "attorney general or an assistant attorney general shall appear and act as counsel for the state. The action shall proceed in all respects as other actions." RCW 4.92.030

43. Gjovik's fear of arrest and incarceration due to conduct fully protected by the U.S. Constitution is direct, imminent, and understandable with the legacy and ongoing cases and controversies related to misconduct by Seattle' law enforcement, including the Seattle police being subject to the terms of a Federal Consent Decree since 2012.[6] *U.S. v Seattle*, Case 2:12-cv-01282-JLR, Western Washington District Court (2012).

## V.  LIKELIHOOD OF SUCCESS ON THE MERITS

44. The matter at hand is patently unconstitutional. Because all Twitter posts (despite simply containing public records, public information, and viewpoint) were deleted out of fear before the full hearing, and the only matter that was ripe & at issue was Gjovik's legal memo which, as the Petitioner admitted, contained public information (put forward as evidence).. (e.g., Dkt. # 1 at pg. 59). The basis of the Order was unlawful under Washington's own laws as, "Course of conduct [] does not include constitutionally protected free speech. Constitutionally protected activity is not included within the meaning of course of conduct." RCW

---

[6] U.S. DOJ, Investigation of the Seattle Police Department (2011), https://www.justice.gov/sites/default/files/crt/legacy/2011/12/16/spd_findletter_12-16-11.pdf; *Reform for a City with a Legacy of Police Corruption*, Seattle Magazine (2017), https://seattlemag.com/article/reform-city-legacy-police-corruption, Re: Request to Investigate Pattern or Practice of Misconduct by Seattle Police Department, ACLU (2010), https://www.aclu-wa.org/pages/re-request-investigate-pattern-or-practice-misconduct-seattle-police-department ; Timeline of Seattle Police Accountability, ACLU, (2020), https://www.aclu-wa.org/pages/timeline-seattle-police-accountability

EMRG. MOTION FOR. INJ.                                          PO BOX 119 SANTA CLARA, CA 95050
CASE NO. 2:22-CV-00807-RAJ-BAT                                              (408) 883-4428

1    7.105.010(5)(a); RCW 10.14.020(1). Further, starting in July 1 2022, Orders "shall not prohibit

2    the respondent from exercising constitutionally protected free speech." RCW 7.105.310(2).

3        45. The petition, hearing, and Petitioner's evidence consisted of further witness

4    intimidation, including several accusations that Gjovik's charges and cases were meritless and

5    made in bad faith, as well as and persistent demands for Gjovik to modify her federal charges

6    including removing specific evidence and dropping allegations against Petitioner as a named

7    agent of Apple. (Exhibit A) Despite Gjovik's numerous motions and objections, pleading for her

8    U.S. Constitutional rights, for protection as a witness and informant, and for the state court to

9    cease intervening in federal matters -- the state court did not. (e.g., Dkt. # 1 at pg. 73-74).

10   Ultimately under the supervision and oversight of Washington's Attorney General and Governor,

11   the state issued an Order based on their statutes, against Gjovik, prohibiting Gjovik from talking

12   about the witness intimidation, from gathering evidence of the continued intimidation.

13       46. Here, none of the abstention doctrines apply for legal and federalism policy reasons.

14   The state of Washington intruded upon the powers of the federal court and agencies as well as

15   the agencies of the state of California, through is highly Unconstitutional personal jurisdiction

16   statute. The state of Washington allowed a Court of Limited Jurisdiction to create res judicata

17   and Full Faith & Credit issues for ongoing federal cases and investigations. The U.S District

18   Court will not be intruding upon state matters, it will be restoring the proper jurisdiction of these

19   matters and ensuring the state of Washington does not further impede upon federal proceedings.

20       47. Well before the state matters were initiated, Gjovik cases already invoked federal

21   jurisdiction. The federal court's determination of its own jurisdiction would preclude the state

22   court from finding such jurisdiction lacking. *Montana v. United States*, 440 U.S. 147, 99 S.Ct.

23   970, 59 L.Ed.2d 210 (1979): If states can insulate their unconstitutional enactments from federal

24   judicial review, then states like Washington can effectively disregard the rights protected by the

1    Federal Constitution, thus violating the Framers' dictate that *"[t]his Constitution ... shall be the*

2    *supreme Law of the Land,"* U.S. Const. art. VI.  Further, here the U.S. District court is implicitly

3    and explicitly authorized to act by numerous acts of U.S. Congress.

4        48. There are no sensitive matters of state social policy here. The state of Washington was

5    afforded a reasonable opportunity to pass on their statutes, to apply their law in Gjovik's case,

6    and in doing so they stripped Gjovik of many of her core federal Constitutional rights and

7    severely interfered with her ongoing federal litigation. Gjovik and her prior counsel made

8    numerous objections to the state court with concerns violations of the U.S. Constitution and

9    interference with federal statutes, but the court insisted on proceeding despite. The vague and

10   overbroad statutes at issue here are still ripe for Petitioner to weaponize in her continued fervent

11   attacks against Gjovik. *Railroad Commission v Pullman Co*, 312 U.S. 496 (1941).

12            ## VI.   NO ADEQUATE REMEDY AT LAW

13       49. As of filing this Motion, Gjovik was been unable to obtain a new lawyer for her state

14   Superior Court appeal of the restraining order against her, following her prior counsel's sudden

15   withdrawal. Gjovik has contacted dozens of lawyers and firms, and even utilized the intake and

16   assistance of EFF, ACLU, and NLG to no avail. This matter is so unfortunately and inextricably

17   linked to Gjovik's ongoing, complex litigation against Apple Inc, the subject matter has become

18   prohibitory for obtaining legal assistance.

19       50. As of filing this Motion, Gjovik appears to be forced to draft her own brief for the

20   Superior Court appeal and provide service of it upon the Petitioner, in direct violation of the

21   restraining order against Gjovik. In order for Gjovik to appeal this case within the state court

22   system, Gjovik would be compelled to violate the Order against her and deliver proof of that

23   violation to the Petition who then could report her and trigger Gjovik's incarceration. Even for

24   Gjovik to withdraw the pending appeal, she would have to contact Petitioner, which would

violate the order. If Gjovik does nothing, she could face a default judgement or contempt of

court. The Order only allows for Gjovik to "*testify[] in administrative or judicial proceedings.*"

Both Black's definition and plain meaning of "testify" note *"to make a solemn declaration under*

*oath for the purpose of establishing a fact (as in a court).*"[7] This appears to exclude legal

complaints.

51. Even if Gjovik was able to obtain counsel in time, Gjovik would be forced to hire and

pay legal fees for an attorney get up to speed on Gjovik's numerous, complex cases against

Apple Inc. Gjovik would also violate the Order by talking to the lawyer about the matter.

Further, as part of any further participation in the state court process, Gjovik will be forced to

subject herself to more forced testimony about her federal matters, evaluation of her federal

charges and cases by a state judge without jurisdiction over the matters, and opening herself up

for more witness intimidation and tampering.  As long as these vague, overbroad, and

unconstitutional statutes are in place, Gjovik remains at direct risk of further retaliatory litigation

by the vexatious Petitioner.

52. Washington courts also requires a "preponderance of evidence" to prove harassment.

RCW 10.14.080(3), 7.105.225(1). The transcript shows the Judge did not note any specific

evidence reviewed or analyzed during the hearing. The Judge appeared to rely solely on hearsay.

(Exhibit C & E). This does not appear to be an anomaly as one of Washington's new statutes on

July 1 2022 codifies this approach saying "*the rules of evidence need not be applied.*" RCW

7.105.200(8). If Gjovik's burden upon appeal is to argue to the Superior Court Judge that there

was no clear and convincing evidence of harassment, but by August the state also codified that

the "rules of evidence need not be applied," Gjovik has not hope for a fair appeal.

---

[7] "Testify." Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/testify. Accessed 19 Jun. 2022.; "Testify" Black's Law Dictionary, 2nd Edition.

EMRG. MOTION FOR. INJ.                                                          PO BOX 119 SANTA CLARA, CA 95050
CASE NO. 2:22-CV-00807-RAJ-BAT                                                                        (408) 883-4428

53. Gjovik requires the intervention of the federal courts and equitable remedies to re-establish status quo by enjoining unconstitutional actions by state officers, a remedy which is "deeply rooted in American jurisprudence." *Armstrong v Exceptional Child Ctr. Inc,* 575 U.S. 320, 327 (2015). Modifications to Gjovik's Order and the hearing should be a positive for the state of Washington, as they are no longer assisting in alleged retaliation against a safety whistleblower.

## VII. PUBLIC INTEREST

54. It is always in the public's interest to prevent the violation of the Constitution and of individuals' constitutional rights. *Melendres v. Arpaio*, 695 F3d 990, 1002 (9th Cir. 2012). "It would not be equitable or in the public's interest to allow the state to continue to violate the requirements of federal law." *Valle Del Sol Inc. v. Whiting,* 732 F.3d 1006, 1029 (9th Cir. 2013).

55. In a motion for a preliminary injunction, a court may consider its interest in "efficient administration and judicial economy." Here, If the Order and state hearing are not enjoined, it is entirely possible the state will make the situation far worse and thus create even more issues for the federal courts and agencies to have to address. The public interest, as reflected in the principles of the First Amendment, is served by free expression on issues of public concern. *New York Times v. Sullivan*, 376 U.S. 254, 270 (1964) (emphasizing the importance of "uninhibited, robust, and wide-open" debate on public issues); *Texas v. Johnson*, 491 U.S. 397, 408-09 (1989)

56. This injunction would not bind or otherwise impact the ex parte Petitioner, other than Gjovik now being free to report Petitioner's unlawful activity to the government and collect evidence of Petitioner's witness intimidation, without fear of incarceration for doing so. Gjovik has no plan, intention, or desire to make any direct contact with Petitioner whatsoever. In fact, Petitioner has continued to be blocked from contacting Gjovik via any of Gjovik's accounts since September 2021, and Gjovik has no plans to alter that either. During the state hearing Gjovik

1  only requested nominal ($1.00) damages in her motions to dismiss, and similarly now asks for

2  nothing more than her freedom.

3  .

4  ## VIII. PRAYER FOR RELIEF

5      57. For these reasons, and for reasons set forth more fully in the Complaint, Gjovik feels

6  she is deserving of emergency injunctive relief either permanently or temporarily pending final

7  action from the Court.

8      WHEREFORE, Plaintiffs respectfully request that the Court:

9  - A. Grant the proposed order or similar order, as the court deems appropriate.

10 - B. Issue this order without any hearing, or in the alternative, schedule an expedited

11    hearing on the emergency motion so relief may be granted before June 30 2022.

12 - C. Grant the relief as a permanent injunction, but if not, then grant as temporary.

13 - D. Grant any other relief as the Court deems just and necessary.

14

15 ## IX.   CERTIFICATE OF SERVICE & & DECLARATION OF MEET/CONFER

16     I hereby certify that on June 21, 2022, I did serve the above Motion for Preliminary

17 Injunction through the Court's ECF filing system pursuant to Fed. R. Civ. Proc. 5(b)(2)(E) to the

18 following counsel for all Defendants: the State of Washington, Governor Inslee, and Attorney

19 General Ferguson (as represented by Asst. Attorney General William McGinty).

20     I hereby declare and certify that Per Honorable Richard A. Jones "General Motions

21 Practice" that upon initial contact with the state of Washington on June 8, I informed the state of

22 Washington of my intent to request emergency injunctive relief and on June 16, the state of

23 Washington, per Mr. McGinty, confirmed he understood.  I sent a notice of timing for the motion

24 on June 19 2022 and sent an outline and draft of the motion as soon as I completed legal research

and drafting on June 20 2022. I asked Mr. McGinty to please discuss the matter during our conference on June 21 2022 as I planned to submit shortly after. Gjovik submits the motion following the conference with Mr. McGinty as he was not able to eliminate the need for this request. (Attached: Meet and Confer)

This motion was attempted to be scheduled pursuant to Local Civil Rule 7(d), though while it may qualify as a hybrid-TRO, Gjovik noted for end of week as to give the Court time to review. Gjovik apologizes for any mistake or inconvenience.

Gjovik's NLRB affidavits can be submitted to the court under seal and per request.

Respectfully submitted,
DATED: June 21, 2022

*Ashley Gjovik*

_____
ASHLEY M. GJOVIK
*Pro Se*

## X.    PROPOSED ORDER GRANTING

## PLAINTIFF'S EMERGENCY PRELIMINARY INJUNCTION

After review, the Court hereby GRANTS Plaintiffs' Emergency Motion for Preliminary

Injunction and ORDERS Defendants

State of Washington to:

- Enjoin the state court proceedings (22-2-03849-7)

- Enjoin the order against Gjovik (22CIV01704KCX)

- Enjoin the state of Washington from censoring, limiting, or hindering Gjovik as a federal

    witness and informant against Apple Inc, by assistance to Petitioner or otherwise.


Ordered by,

    Dated this ___ day of ___, 2022.


_____

UNITED STATES DISTRICT JUDGE


Presented by,

    Dated this ___ day of June, 2022.


_____

Ashley M. Gjovik (*pro se*)

EMRG. MOTION FOR. INJ.                                PO BOX 119 SANTA CLARA, CA 95050
CASE NO. 2:22-CV-00807-RAJ-BAT                                                    (408) 883-4428

## Complaint Referral Form
## Internet Crime Complaint Center



## Victim Information

Name: Cher Swan Scarlett

Are you reporting on behalf of a business? No

Business Name:

Is the incident currently impacting business [None] operations?

Age: 30 - 39

Address:

Address (continued):

Suite/Apt./Mail Stop: ▨

City: Kirkland

County: WA

Country: United States of America

State: [None]

Zip Code/Route: 98034

Phone Number: ▨

Email Address: me@cher.dev

Business IT POC, if applicable:

Other Business POC, if applicable:

## Description of Incident

Provide a description of the incident and how you were victimized. Provide information not captured elsewhere in this complaint form.

Ashley Marie Gjovik has been slandering me using her Twitter account (https://twitter.com/ashleygjovik), which yesterday escalated into doxxing my family members and today me. She offered a contract to stop doxxing me and harassing me if agreed to promote her GoFundMe (https://www.gofundme.com/f/ashley-gjoviks-advocacy-fund - which may be fraudulent) and promote her Twitter account on my Twitter account, which has 53,000 followers (https://twitter.com/cherthedev) and distance myself from a worker organization called Apple Together I helped found.

Which of the following were used in this incident? (Check all that apply.)

☐ Spoofed Email

☐ Similar Domain

☐ Email Intrusion

☑ Other    Please specify:

*Law enforcement or regulatory agencies may desire copies of pertinent documents or other evidence regarding your complaint.*

*Originals should be retained for use by law enforcement agencies.*

---

## Information About The Subject(s) Who Victimized You

Name: Ashley Marie Gjovik

Business Name:

Address: 1050 Benton St

Address (continued):

Suite/Apt./Mail Stop: #2310

City: Santa Clara

Country: United States of America

State: [None]

Zip Code/Route: 95050

Phone Number: 4159646272

Email Address:

Website: http://www.ashleygjovik.com

IP Address:

## Other Information

If an email was used in this incident, please provide a copy of the entire email including full email headers.

[No response provided]

Are there any other witnesses or victims to this incident?

[No response provided]

If you have reported this incident to other law enforcement or government agencies, please provide the name, phone number, email, date reported, report number, etc.

☐ Check here if this an update to a previously filed complaint:

## Who Filed the Complaint

Janneke Parrish - ▨▨▨▨

Melissa McEwen - ▨▨▨

Were you the victim in the incident described above? Yes

## Digital Signature

Case 3:23-cv-04597-EMC   Document 35-10   Filed 12/25/23   Page 143 of 190

By digitally signing this document, I affirm that the information I provided is true and accurate to the best of my knowledge. I understand that providing false information could make me subject to fine, imprisonment, or both. (Title 18, U.S. Code, Section 1001)

Digital Signature: Cher Swan Scarlett

Thank you for submitting your complaint to the IC3. Please save or print a copy for your records. *This is the only time you will have to make a copy of your complaint.*

From: no-reply@weebly.com
Subject: New Form Entry: Contact Form
Date: February 5, 2022 at 9:58 AM
To: ashleymgjovik@protonmail.com



You've just received a new submission to your Contact Form.

Mark as Spam

## Submitted Information:

**Name**
Cher Scarlett

**Email**
me@cher.dev

**Website**

**Business, Institution, or Coalition**

**Message**
This is a last resort, not a block evasion.

I am reaching out in good faith in the hopes that we can resolve this conflict between us for the good of others, and each other. I will address some of the things I've seen/heard first. I do not wish to escalate, which is why I haven't participated.

I apologize for how my actions have made you feel. That does not justify your behavior.

Please remove my tweets that cannot be reasonably justified to be connected to you from your January NLRB memo, including medical information and information about my family. Please also remove your tweets that contain my former legal name. You are aware that it was changed for safety reasons, and I spent a long time ensuring they weren't connected anywhere.

1) I am not testifying against you, nor on Apple's behalf. I wouldn't do that unless I was subpoenaed, and I don't believe they would have me do that, because cross-examination would allow me to answer questions that would discuss their culture of surveillance.

I am named in their defense, which I was only informed of as a courtesy. I am upset by it, given what I've been through, which is why I mentioned it.

2) I have lied about my education in the past, and my role, tried to hide my gender, and invented whole companies. I had an infant, was making poverty wages at multiple hourly jobs, and I was trying to survive. I did what I needed to do, including enrolling in college multiple times and withdrawing for the students loans.

This is something I've talked openly about for several years in my advocacy against gatekeeping and sexism in tech, and the realities that not everyone in tech is rich. I was also on food stamps until I was almost 30 years old because of my low income, and my kid's dad never paid child support.

I've been very open about my past, going far beyond that. I WaPo did a very thorough background check on me and it would have taken more than the limit of 2,000 words to disclose everything. They

chose to disclose the check fraud because it was the most extreme and fewest words.

3) Yes, I am a single parent. My marital status has been public -- I literally posted about when it happened. I've been separated since last July. I have never lived with my husband, and I don't live with him now. I am, however, supporting his household and my own while he works on his career, and makes very meager wages as a laborer. Our relationship is extremely unhealthy and I'm not ready to talk about any of it to the public, so I post occasional happy moments in trying to work on that relationship.

Do you think a parent who has a live-in partner and two incomes is a "single parent"? The point is the financial strain, not whether or not you are married. I don't get child support from my ex. My husband's kids' moms are strung out and can't help financially.

I qualify for food stamps. Does that tell you anything?

I am asking you to please remove his personal information from your Twitter, your NLRB charge, and anywhere else. His criminal history is literally no one's business. He's done his time. He also comes from an abusive home in poverty full of drugs and alcohol. The incident that happened when he was 12 years old was a manifest injustice in which he was also a VICTIM to an ADULT who got found "not guilty" in a trial and all of the information about what that adult did was stricken from my husband's case. We've been working with a program in our county to get it all fixed -- which is why we got married, because it's traumatic for him and legally, I can speak to his FREE attorney on his behalf to keep everything moving forward.

His life was destroyed by a new judge, and he was institutionalized as a child until he was 18. That same judge got us into the program. Words on a piece of paper with no context don't tell you what happened. It is deplorable for you to tell anyone's story based on what you "think" is public and fact.

4) I never called you "a racist". I said you tweeted something racist, "Pulling the race card", and spoke to you about it in a very diplomatic way. I also didn't care for the way you reacted to criticism over it, but still gave you advice on how to learn and grow from it as a friend.

5) Not all of my generalization tweets are about you. Most of them are not about you. While the GFM tweet happened at the same time as yours, there were multiple retail workers who came to me about yours the day you posted it extremely uncomfortable with the fact that you had posted very recently that you made almost $400,000 the year prior and spoke frankly about your financial comfort. The next day, another GFM popped up that was also asking for financial help without a clear use from someone from a place of financial privilege. I never told anyone not to donate to you. I wouldn't do that.

I stand by what I said -- and most of my followers and your followers do not cross over. GFM donations are not taxable. You made it very clear you had a lot of savings and had no financial motivations.

The Simpsons gif was not calling you a child. You are principal Skinner in that reference.

And "eject from amplification" means I blocked you. The tool I have for amplification is Twitter algorithms.

6) That brings me to my next point. I never told the press not to talk to you. You harassed a bunch of journalists using your Twitter account. Why on earth you thought it was somehow my doing, and not a consequence of your own actions is beyond me. My CNBC segment was live. There was no conversation before or after. I didn't even get to prepare, let alone have time to name drop you so they wouldn't talk to you. I didn't even know you were planning to speak with them. We weren't talking anymore at that point.

Even if I wanted to write you out, I don't have the power to do that. I only corrected misinformation, which honestly, I thought I was doing for your benefit. I am worried about what will happen to your mental health if any of your cases are dismissed due to any impropriety. I imagine you were told what I was told when I asked why they weren't covering the EPA stuff - there was absolutely no corroborating evidence and there were questions that couldn't be answered. The ones I spoke to about it were extremely disappointed that there wasn't anything they could write about yet.

You also convinced Chelsey I was trying to erase her from press coverage and the work. I literally talked about her every single time someone asked me about the WA bills, even though I had no idea what work she had done. The piece about Ifeoma was about her impact, not about the WA bill. Chelsey made it super clear she had been working with the senator on NDA law prior to Silenced No More Act. I invited her in to every single thing I was doing once I became aware of her. I talked about her on a podcast that she didn't even know about. I tried to get HER coverage for the EAP bill.

7) While I initially said you lied about being "suspended", though not publicly and to less than FIVE people, I never called you a liar. Those tweets were NOT about you. I was extremely bothered by the fact that you told me you discovered it was an adverse action, and started saying you were suspended.

instead of that you felt forced into requesting the leave. You were never suspended from access to systems, though I do believe you were discouraged from using Slack and communicating with coworkers. I was told not to, and punished for doing it anyway.

I also never argued it wasn't indefinite. They didn't give it an end-date, which is the definition of indefinite.

I also stopped feeling that you were being purposefully dishonest, and empathize with what you were going through because of the situation you were in.

7) I added you to the AppleToo piece as a peace offering. I did not believe you would be okay with being left out. That being said, I'm sorry I picked something you didn't like. I also don't follow you on Twitter... we've blocked each other. You seem to remember me saying I have a shadow account. I don't. I told you I looked at Twitter in private browsing mode to see what trolls/harassers were saying in the past who blocked me back, but that I stopped doing it because ultimately what they want is attention.

The ordering was random, and I had no idea you had a trigger with the article. I essentially know nothing about your past. I have a lot of suicide in my family and I take those things seriously. I made sure you weren't next to a person you didn't like, and didn't do much beyond that.

Also, it wasn't a "rank and file" rating. I only numbered them to show how many they were as a count. Because it's A LOT.

When I said we "connected over your legal expertise" I didn't say you "gave me law advice". Once again, it was a peace offering. Rather than sharing that I felt like you were dismissive of vulnerable people, I pointed to why I re-engaged with you after that, and yes, it was your knowledge about the law. I trusted you on it, and not because I was taking legal advise, but because you helped me navigate to important parts of law that I wouldn't have known about, and told me I could ask for things of a lawyer I didn't know I could ask for. It was a COMPLIMENT.

8) Yes, I reported you to the FBI. I was in a terrible place mentally, had relapsed, and you were posting private/personal information about me because you thought I was testifying against you and just to do me harm, and I was BEGGING you to stop via Melissa, and you took it upon yourself to try to capitalize on my distress by finding a way to make a material gain via GFM and Twitter. It's abusive, Ashley. And another government agency with insight into this suggested I report it to the FBI because they believe what you did was a federal crime.

My family is now being harassed because of you. You didn't block out my mother's name on your post about her, and her facebook is not locked down, and she has my daughter and the rest of my family members on display.

Please remove the images of my facebook, my mother's facebook, and any other of my family's social media accounts.

And btw, saying because in the ONE family photo we have from 1989 (which is absent a fucking FATHER, btw) my mom is wearing makeup is such an offensive, classist remark. Poor people can wear makeup. They can also purchase a used ottoman with tassels at 60 years old. Poor people don't need to be resigned to having nothing. They also tend to treat themselves when they get a bit of money because barely surviving is MISERABLE.

I happen to eat at TV trays because I can't afford a dining room table and chairs. My mom had those things.

Also, she was an administrative assistant at construction companies, she didn't "sling concrete". The people who did that made way more money than she did and they were in a union.

9) It is my opinion that your retaliatory discharge is hard to prove because the onus on Apple is only to prove that they would have fired you anyway. Given our text exchange, I don't believe it is. I do apologize for talking about it on Blind and sharing my opinion there, but that is not a crime and it wasn't due to Apple's culture or being some kind of controlled opposition. When I said to you, "oh so you're just in full-on fuck it mode," I was communicating this very thing to you. Did I report you for it at that time? No. Not because I didn't believe it was an IP leak (there were internal documents of unreleased tools), but because you believed it was invasive and an example of surveillance culture at the company.

When you started saying you did NOT leak IP and saying it was because of photos you took of yourself on your phone, I was confused, because you seemed to be pretty well aware of what you were doing when you sent all those documents to Zoe and stood by it.

When I said to Dawn I could get behind you saying you believed it was a PROTECTED leak, but not

When I said to Dawn I could get behind you saying you believed it was a PROTECTED leak, but not that it didn't happen, I wasn't talking about TO ME. I was talking about publicly. I was literally saying if you said the same thing to the press and on Twitter you had said to me I would have been supportive. I couldn't support what you were doing.

I also wanted to warn her that what you told me was different than what you told her. Because it was. You told me they declined both of your asks in July to be placed in a new position on another team and your paid exit. You told me that I should tell my lawyer I'm not willing to sign an NDA, and that was your plan. You also told me MORE THAN ONCE about the no lawyer would take you unless you got fired. Once was in the text you shared, the other was when you were SCREAMING at me on FaceTime because you were upset about the Signal group criticizing your behavior and motivations. I had said that we were in far more privileged places than others -- both because we're white and cisgender, and me for my career tenure; you for your savings. You were extremely upset and worried by the idea of tying our issues together, and being associated with unionizing and Corey Moll, even telling the Signal group that your moral character examination could be at risk.

10) My outing myself as the confidential source and SEC whistleblower was not "self-sabotage" in the way you think it was. There needed to be something on the public record so that shareholders had the ability to either vote, or sue over the no-action. SEC tips are not public. In order for journalists to write about this, they needed 5+ NDAs "anonymously on background". One journalist accomplished that, with my confidentiality in tact, and a story was written and scheduled. After editing, the story got canned because it was "no longer news". Do you know how AppleInsider piece on a whistleblower tip which contained absolutely no material information shareholders could use caused that? Yours. No one was willing to give their NDAs to yet another journalist who might publish. No one was willing to go on the record. I sacrificed my severance, COBRA, and attorney's fees so that the public would have actual evidence of the clauses.

11) I did not report any harassment to Twitter from you except yours to me. I did not say who I alerted, I just said "them". Implying that people are trying to have you assassinated or cause you to kill yourself, me included, is extremely harmful, and I alerted APPLE about the chain of tweets involved in doing so. I was criticizing both Apple and Twitter for applying the rules to the tweets about the men and current employees, but not the tweets about me and my family which fell under the SAME rules. I deleted the tweets because a dozen people who DID report them to Twitter got notice they were deleted. They didn't realize it didn't include the ones of me and my family, and I wrongly assumed they checked.

12) I blocked Kate and JeansSquirrel or whatever because both of them were amplifying harassment, including actual defamation, of me. I also told that to Kate, who I only unblocked to ask to stop punching down on the other hundreds of Apple employees involved in organizing because I'm helping them.

13) I have stood up for you repeatedly. Even IN some of the threads you claim are me harassing you. It's extremely frustrating to watch you try to make something true because you think it is, but I guess this is the kind of thing that will make you a good lawyer.

Even in one of the posts you claim is discrimination because you... don't have kids... I said I was WORRIED for you. I am. I was saying you'd be fine financially because YOU TOLD ME you had plenty of savings to weather the storm. You also told the entire internet that on Twitter when you patted yourself on the back for how smart you'd been about saving and investing. You cut out the context that made it clear I was saying you'd be fine financially, which sure, I shouldn't have shared my opinion on Blind, but frankly, I was sick of being attacked because of your behavior in spite of my own being very different.

I feel that you have been treated terribly by Apple, and in spite of my personal issues with you, I want you to have justice, not only for the common good, but because having a government body hold an abusive corporation accountable is validating and therapeutic. The DFEH lawsuit against Blizzard changed me in a very good way.

-----

I'm sure there's plenty more things that are mixed in there but the main take aways are:

1) I hope you get justice
2) I apologize for sharing my personal opinion about the difficulty in proving your case, and sharing that you leaked internal docs/IP
3) I apologize for sharing my personal opinion that you would be fine financially
4) You need to delete the posts about my family and those that contain my previous legal name
5) You need to delete my tweets from your memo that contain personal information about me and my family, including my previous legal name, my medical information, any and all things pertaining to my family
6) You need to remove all assertions that I am accounts trolling you

Sincerely,
Cher

**Are you looking for a response?**
No reply required

22IV01704K4

Scarlett v. Gjovik
King County Court
2/15/2022

FILED

FEB 1 5 2022

KCDC-East Division
Redmond Courthouse

### Statement by Cher Swan Scarlett

Your honor:

I am speaking for myself today as I do not have the financial means to afford an attorney.
Please understand I lack experience in legal proceedings, and I have struggled with advocating
for myself in the past, often being victimized by bullies and doing nothing. As Ms. Gjovik said
when she reached out to me, I have a lot of courage in speaking up for others. I have not done
well in standing up for myself in the past.

Ms. Gjovik has been cyberharassing me via defamation, cyberstalking, and maliciously posting
private information about me and my family members on Twitter, Scribd, and her personal
website for almost three months. She has tried to shop this story that her most recent NLRB
charge is against me, not Apple, to numerous members of the press, who all contacted me
alarmed about her conduct.

Ms. Gjovik and I became acquainted while working for Apple, Inc in June of 2021 during
employee advocacy for remote work flexible policies. I was supportive of her, and spoke with
her via WebEx, Slack, iMessage, Twitter, and FaceTime. I used my own platform to give her a
platform of her own, and advocated for justice for her in the ways that she alleged Apple had
mistreated her.

We started a movement called #AppleToo together, but after she made other members of the
group uncomfortable with her punching down on collective action, defensive aggression after
constructive feedback about a racist Twitter post she made, and her wishes to use the
movement as private leverage for her own cases against Apple, she voluntarily parted ways
with the group, and Janneke Parrish stepped up to help me seek justice and validation instead. I
have reported Apple to the NLRB for alleged violations of the NLRA, and to the SEC for
allegedly providing the agency, the public, and its shareholders with false and/or misleading
statements, and for retaliation. Apple has put me in financial peril.

Ms. Gjovik has repeatedly defamed my character stating as though it was factual that I am a
paid agent of Apple, working on their behalf, in spite of public and broadly covered information
that this company has repeatedly, and demonstratively caused me significant emotional and
financial harm.

In late August of 2021, Ms. Gjovik shared with me that she had leaked information protected by
our non-disclosure agreements to Zoe Schiffer of the Verge, and she was terminated a week
later for those policy violations. Ms. Gjovik was later denied unemployment benefits by the state
of California after they determined she was terminated for just cause, per her sharing the letter
from unemployment on Twitter. I shared an opinion on the application Blind that it would be
difficult to prove her retaliatory discharge claims to the NLRB and the Department of Labor
because she had, in fact, leaked those documents. In December of 2021, she initiated a

1

Scarlett v. Gjovik
King County Court
2/15/2022

### Statement by Cher Swan Scarlett

cyberharassment campaign against me that has escalated over the last two months, in spite of my own and others' pleas and reports for her to cease and desist, and including after I wrote an article sharing that I was so emotionally distraught by the cyberharassment that I had relapsed and accidentally overdosed on Fentanyl under the impression it was a percocet on December 20, 2021. I did not name her as the harasser in the post, but per her 400 page memo, in which she mentions me more than 400 times, she is aware that her actions caused me severe emotional distress.

On September 7, 2021, Ms. Gjovik and I blocked each other, when she falsely implied I was trying to out or otherwise dox a previous victim in a lawsuit with Apple on Twitter. I had asked what case she was posting, to give to my lawyer. I told her this privately and publicly, confused why she was tagging Apple and Tim Cook on the matter, if she was trying to keep this case private. She later posted the case details, including the plaintiff's name and the case number, in January of 2022, and claimed I had "screamed" at her, when the only person who was ever screamed at was me, twice–by Ms. Gjovik during FaceTime calls in August of 2021.

The only contact after that, was an email I sent her on February 5th, 2022, when I asked Ms. Gjovik to stop cyberharassing me, cyberstalking me and my family, and to delete and/or redact private or personal information about myself and my family (which included medical information about me, my minor daughter's my mother's and my husband's names, and my husband's old criminal history), defamatory assertions, and my social media posts and authored articles that could not be reasonably considered to be connected to her and her allegations against Apple. I informed her that her continued posts about my family were causing them to also be cyberharassed, and that CPS was receiving false reports about the safety and wellbeing of my child.

Ms. Gjovik not only misrepresented this email, but escalated in her defamation, claiming I was not only harassing and defaming her, but that I was making false calls to authorities or emergency services to have armed officers dispatched to her home (she referred to this as "SWATing"), stalking her, threatening her, suing her, coercing her, demanding that she destroy evidence, colluding with Apple to obstruct justice, and that I am under investigation by the federal government for obstruction of justice and witness intimidation. None of these things are true.

Ms. Gjovik also posted private and personal information about me and my family on Wikipedia, which was removed per Wikipedia's abuse guidelines. Ms. Gjovik further sent Wikipedia's arbitration committee allegations that I had harassed her, and which included a background check that she had done on me without my consent, and without cause. The arbitration committee found that Ashley's claims that I was harassing her were unfounded, and further that she had been the one harassing me, and banned her from their platform indefinitely. She alleged that I was a user who edited her Wikipedia page, when in fact, it was her that had

2

Scarlett v. Gjovik
King County Court
2/15/2022

### Statement by Cher Swan Scarlett

vandalized mine, which is exactly what the arbitration committee, with the assistance of their lawyer, also determined.

In January of 2022, I reported Ms. Gjovik to the FBI internet crimes division after a mutual friend, Melissa McEwen, attempted to mediate between Ms. Gjovik and I to get Ms. Gjovik to stop posting private and personal information about myself and my family, and to delete what she had posted. When I agreed to initial terms, which would mean Ms. Gjovik could continue to post about me and I wasn't allowed to even talk about her with anyone at all, let alone share my opinion about anything pertaining to her, as long as she wasn't posting private information about me and my family, Ms. Gjovik added additional terms that she would only stop if I promoted her GoFundMe, which has a goal of $100,000 US, and promoted her Twitter account with a public apology for things I did not do.

I reported the entirety of what Ms. Gjovik had done up to this point to that authority, and Ms. Gjovik tweeted about it, claiming it was done in retaliation and had no merit. She mocked me, bragging about her refusal to concede to removing private and personal information about myself and my family, and continued to post more, claiming I have a criminal history (I do not) and threatening to share it and "hundreds" of other private and personal pieces of information she claims she found during her cyberstalking.

Ms. Gjovik stated she was cyberharassing me because I was testifying against her on behalf of Apple in her cases against them, and further because I reported her conduct to the FBI. This is untrue, as Alexander Hajduk, an investigating officer of the NLRB, and I both told her. I was cited in their defense with a text message conversation she posted on Twitter, not testifying against her.

Ms. Gjovik further made false statements on her Twitter account that I had colluded with Ifeoma Ozoma and Nia Impact Capital to breach my NDA and report Apple to the SEC. This is false, and damaged me financially by contributing to Apple's claim in a December 20, 2021 settlement breach notice that I had colluded with Nia prior to signing my November 15, 2021 separation agreement. Ms. Gjovik and I had not been in contact, and Ms. Gjovik had no knowledge of my communications with Nia or Ms. Ozoma to make such public defamatory claims.

The Director of Security of the NLRB, Raymond Hankins, and the supervisory Field Attorney for Region 32, Catherine Ventola, which is handling Ms. Gjovik's NLRB charge which names me, both recommended over the phone that I report Ms. Gjovik's conduct to federal and local authorities, on or around January 25, 2022, and on or around February 4, 2022, respectively. They further advised that they had had numerous operations meetings to discuss how to handle Ms. Gjovik's conduct and my personal and private information being published without my or my family's consent. They advised they would redact information per Exemption 6 of FOIA, and linked me to the relevant guide from the DOJ, but said they did not have jurisdiction over her

3

Scarlett v. Gjovik
King County Court
2/15/2022

### Statement by Cher Swan Scarlett

posting that information elsewhere, and again advised that I seek remedy through those with the jurisdiction to take action, and that they could not get involved aside from redacting information in the charges.

Ms. Gjovik has taken it upon herself to publish information in documents related to her charges that would be redacted per the DOJ's guidelines. I reported this to Twitter, to Scribd, and to her web host, register.com. Scribd removed the posts for abuse, and Ms. Gjovik reuploaded it, and Scribd removed them again. Ms. Gjovik then uploaded it to her personal website, and the host is considering whether or not it breaks their rules against abuse of their services.

Ms. Gjovik deleted most of the private information from Twitter on February 5th, 2022, after I tweeted that I had testified for SB 5628, the anti-cyberharassment bill that passed through the Senate chambers unanimously, and would be moving forward with hiring a process server for this anti-harassment hearing because of Ashley's public response and misrepresentations of my plea for her to stop cyberharassing me. However, she did not redact any information in her memo, which is now hosted on her website and posted numerous times to her Twitter, and added additional private information and defamatory statements.

She further alleged that my husband is a sex offender, in spite my informing her that he was relieved of this on December 28, 2021, due to the fact that it was a manifest injustice in which he was a victim when he was 12 years old. The entire case was sealed in King County for the same reason, along with the fact that the other victim, also a minor, was named and never redacted. The judge in the original case, the Honorable Michael J. Trickey was apologetic for what occurred, and helped us into a program to right the injustice free of charge, and the Honorable Averil Rothrock said it was her honor to right this terrible wrong.

I understand, appreciate, and do not take for granted our first amendment rights. I do not wish to deprive Ms. Gjovik of hers.

Ms. Gjovik's cyberharassment of me appears to be in part for exercising my own first amendment rights in expressing my opinion that her retaliatory discharge case would be hard to prove because of the bonafide fact that she had leaked private documents about unreleased intellectual property owned by Apple to the press, and additionally because I was cited in Apple's defense case in her charges against the company. I took the time to apologize for exercising those first amendment rights, because it clearly hurt her feelings, despite my right to say such things, and her public assertions that she supported such rights.

What Ms. Gjovik is doing to me is not an important criticism of a public figure, corporation, or government entity imperative to public interest. It is not protected mockery or annoyance that simply bothers me. It is demonstratively repeated malicious defamation of character and violation of my human dignity and right to privacy over hundreds of posts using the internet. She

4

Scarlett v. Gjovik
King County Court
2/15/2022

## Statement by Cher Swan Scarlett

seeks to do me harm emotionally and to make the general public believe damaging lies with her actions, and it is escalating. She is attempting to abuse government processes to attempt to do me further harm.

If this is not criminal cyberharassment, blackmail and/or extortion, and retaliation for reporting such things, then I do not know what is. And if this type of speech is protected, who then becomes responsible for the damage that this woman, and others, cause, for their own selfish, malicious purposes?

Ms. Gjovik has one goal: to destroy me publicly. No one deserves this.

I have nowhere else to turn.

Please help me find relief from the fear of my well-being, and the safety of myself, my child, and the rest of my family.

Certification - State of Washington/County of King
The undersigned, duly authorized clerk of the King County
District Court, Washington, hereby certifies that the document
on which this stamp is imprinted is a true and correct copy of
the original filed in this court.
Signed this ___ day of _____ 202_

_____
Court Clerk

**State of Washington**
**King County District Court**

**EAST DIVISION, REDMOND COURTHOUSE**

No. 22CIV01704KCX

**Order Re Petition/Motion**
**Harassment**

Cher Swan Scarlett

Petitioner (Protected Person)
vs.

(Optional Use) (ORDMTP)
☐ Clerk's Action Required
Next Hearing Date/Time:

February 15, 2022        At: 1:30 PM

Ashley Marie Gjovik

Respondent (Restrained Person)

At:

Redmond Courtroom 2
8601 160th Avenue NE
Redmond  WA 98052

*This Matter* is before the court upon the request of (name) petitioner above _____, for a:

☒ Temporary Order           ☐ Full Order                ☐ Renewal Order
☐ Modification Order         ☐ Termination Order

and the *Court Finding:*

☐   Petitioner  ☒ Respondent     did not appear.
☐   Petitioner **requested dismissal** of petition.
☐   This **order materially changes** an existing order. A hearing after notice is necessary.
☐   No notice of this request has been made or attempted to the opposing party.
☐   The petitioner has failed to demonstrate that there is sufficient basis to enter a temporary
     order without notice to the opposing party.
☐   The harassment protection order **petition does not list specific incidents and**
     **approximate dates** of harassment.
☒   The **reasons for denial** of the order are:

Respondent lives in California.  There is no emergency/irreparable harm if emergency order not issued.  Many
of the complained-of actions serve a lawful purpose (filing with NLRB) and involve free speech.  However,
other allegations may have merit, thus this Court will set a full-order hearing.

☒   **A preponderance of the evidence has not established** that there has been harassment.
☐   Other:

*Renewal:*

☐ The respondent proved by a preponderance of the evidence that the respondent will not resume harassment of the petitioner when the protection order expires.

☐ Other:

*Modify or Terminate:*

☐ The court finds that the **Respondent has previously filed a motion** to modify or terminate during the current 12-month period following entry of the order and is not eligible for the relief requested.

☐ Other:

***The court orders that:***

☐ The request to waive the filing fee is denied.

☐ The request for a temporary order is denied and the case is dismissed.

☐ The request for a full order is denied, and the petition is dismissed. Any previously entered temporary order expires at _____ today.

☒ The request for a temporary order is denied and the clerk is directed to set a hearing on the petition.

☐ The request before the court is denied, provided that it may be renewed after notice has been provided to the opposing party according to the Civil Rules.

☐ The request to modify, terminate, or renew the order dated _____ is denied.

☐ The request for a temporary/final Order to Surrender Weapons is denied.

☐ If any firearms or dangerous weapons have been surrendered under this cause number, they shall be released to the respondent, absent some other legal reason that may exist prohibiting the respondent from possessing them.

☒ The parties are directed to appear for a hearing as shown on page one.

The requesting party shall make arrangements for service of the petition/motion and this order on (name) <u>Respondent</u> _____ by law enforcement, professional process server, a person who is 18 or older, competent to be a witness, and not a party to the case. A Return of Service shall be filed with the clerk at or before the hearing.

*Denial Order – Antiharassment (as modified by KCDC) (ORDYMT) - Page 2 of 3*
*UHST 09.0500 (07/2019) - RCW 10.14*
*KCDC July 2019*       22CIV01704KCX

*Failure to Appear at the Hearing May Result in the Court Granting All of the Relief Requested in the Petition or Motion.*

This order is dated and signed in open court.

Date: February 1, 2022 _____ Time 1:47 PM _____

Judge    Lisa N. O'Toole

I acknowledge receipt of a copy of this order:

➢ _____
Signature of Respondent/Lawyer  WSBA No.

➢ _____
Signature of Petitioner/Lawyer  WSBA No.

Print Name    Oliver Scarlett    Date 2/1/2022

Print Name    Date

**FILED**

JAN 3 1 2022

KCDC - East Division
Bellevue

---

**STATE OF WASHINGTON**
**King County District Court**
**East Division, Bellevue Courthouse**

No. 22CIV01164KCx

Cher Swan Scarlett

Petitioner,

vs.

Ashley Marie Gjovik

Respondent.

**Petition for an Order for Protection -**
☒ **Harassment (PTORAH) and/or**
☐ **Stalking (PTORSTK)**

---

➢ **This is a Petition for an Order for Protection against Harassment and/or Stalking as checked in the caption.**

I believe:

☒ I am a victim of stalking.
☐ _____ (name) is the victim of stalking and he/she is a minor or vulnerable adult.

The respondent has been

- stalking the victim either in person or cyber stalking, **and**
- repeatedly contacting the victim or attempting to contact or monitor the victim for no lawful purpose and his/her actions caused the victim to feel intimidated, frightened, or threatened.

☒ I am a victim of unlawful harassment.
☐ _____ (name) is a victim of unlawful harassment and he/she is a minor.

The respondent's actions toward the victim have seriously alarmed, annoyed, or harassed the victim, or are detrimental to the victim and serve no legitimate or lawful purpose. The respondent's actions have caused substantial emotional distress to the victim or caused me to fear for the well-being of my child.

How do the victim and respondent know each other?  Both worked at Apple, Inc

I have given a detailed explanation below.

1.  **Who is the petitioner?**

    My name is (please print) Cher Scarlett _____ . I am the petitioner.

    ☒ I am 18 or older and I am petitioning on my own behalf.

    ☐ I am 16 or 17 and I am petitioning on my own behalf.

    ☒ I am the parent or guardian of child/ren under age 18 and I am petitioning on their behalf:

    | Children's Name/s (First, Middle Initial, Last) | | Age |
    |---|---|---|
    | | | |
    | | | |
    | | | |

    ☐ I am not the parent or guardian, but the child/ren live/s with me and I am petitioning on their behalf and the respondent is not a parent.

    | Children's Name/s (First, Middle Initial, Last) | Age |
    |---|---|
    | | |
    | | |
    | | |
    | | |

    ☐ I am filing this petition on behalf of petitioner, (name) _____ , a vulnerable adult as defined in RCW 74.34.020, who is a victim of stalking. I am an interested person as defined in RCW 74.34.020(10). My relationship to this petitioner is _____ .

2.  **Is the respondent 18 years of age or older?**

    ☒ Yes ☐ No

    *(If no, use the Petition for Order for Protection Harassment/Stalking Respondent Under Age 18, instead of this petition.)*

3.  **Where do the parties live?**

    Petitioner lives in King _____ County.

    Did the petitioner leave their residence because of stalking conduct and that is the county of their new residence?

    ☐ Yes ☒ No

    Children named above live in King _____ County.

**Pt for an Or for Protection – Harassment/Stalking (PTORAH, PTORSTK) – Page 2 of 7**
WPF UHST-02.0200 (07/2019) – RCW 10.14.040, .800, RCW 7.92.030
KCDC July 2019

Respondent lives in Santa Clara (California) _____ County.

4. **Where did the Conduct take place?**

The conduct took place in King (online) _____ County.

## Statement describing the victim/s need for protection from the respondent

- Write clearly. If you need more space below, attach additional page/s. Do not write on the back.

5. **Describe what the Respondent did or said that you think is harassment or stalking.**
   - You must describe what the respondent actually said.
   - You must describe what the respondent actually did.

**The respondent has committed acts of harassment or stalking as follows:**

A. Describe the most recent incident of harassment or stalking.

Date and time (on or around): 1/31/2022 _____

Location: Twitter _____

What did the respondent do or say that you believe to be harassing or stalking behavior?

At the beginning of December 2021, Ashley Marie Gjovik began engaging in
targeted harassment against me by posting defamatory content and other false
statements about me on her Twitter account. She has said that every anonymous
account criticizing her is me, none of them are me. She has stated every single tweet
that doesn't name her that talks about a generalization she thinks is about her is me
harassing her. I'm not. She has said that because I am cited in Apple's defense
against her, she is not going to stop. She thinks I have somehow manipulated
members of the press from speaking to her, or writing about her in the way she
wants, after harassing and defaming reporters at WaPo, NYT, npr, NBC, and
Business Insider. She has quoted me as saying things I've not said to try to defame
me and get her followers to harass me. I blocked her many months ago. She blocked
me as well.

At the end of the month, this escalated into cyberstalking me and my family
members, and publishing personal and private information about myself and my
family members on her Twitter account with the malicious intention of stoking her
followers into harassing me as well. As a result, a number of her followers filed
false CPS reports against me, and began to harass my family.

Out of desperation, I connected with a mutual friend, Melissa McEwen, to try to get
her to stop. She told this mutual friend she was doing it because I am cited in Apple,
Inc's defense against her in one of her NLRB and DOL cases against the company.
She told the mutual friend she would only stop engaging in the behavior if I
promoted her Twitter account (~8,000 followers) on my own Twitter account
(~55,000), and promoted her GoFundMe (goal of $100,000 for misc purposes). I
refused to oblige, and sent a report to the FBI, suspecting that this was extortion

How did the respondent make these statements? ☐ in person ☐ mail/written notes ☐ e-mail ☐ text ☐ phone ☒ social media (such as Facebook and Twitter) ☐ other (describe): _____.

**B.** Describe other incidents of harassment or stalking. For <u>each</u> incident, include the date, time (on or about), location, what was said, how statements were made, and what was done to a victim.

> because of the monetary value associated with her demands in exchange to stop harassing me. Another friend, Janneke Parrish, also tried to get her to stop, she said she made similar possibly extorting requests to stop.
>
> I also reported her behavior to her University, and to Twitter. Neither of these seems to have deterred her from continuing to engage in the harassment.
>
> On January 11, 2022, she filed an NLRB charge against Apple, Inc, claiming that I was harassing her on Apple's behalf. I have not harassed her. On January 31, 2022, she published a "memo" for that charge containing defamatory and private information about me (and others) on a platform called Scribd. Ordinarily, this information would be redacted and confidential by the NLRB. She has shopped this information around to the press in an attempt to make it public record, for malicious purposes. Much of the information she has reposted is my personal medical information, which I have not given her consent to share.
>
> https://www.scribd.com/document/555822358/US-NLRB-Ashley-Gjovik-Apple-Inc-Jan-10-2022-Charge-Draft-1
>
> https://twitter.com/ashleygjovik/with_replies (there's a lot more here)
>
> https://twitter.com/ashleygjovik/status/1479956961705795585
>
> https://twitter.com/ashleygjovik/status/1480295321284472835
>
> https://twitter.com/ashleygjovik/status/1480326596376477696
>
> https://twitter.com/ashleygjovik/status/1481027837163311104

**6.** How did the incidents you describe above make you, the minor, or the vulnerable adult feel?

> I am looking for another place to move to immediately for our safety. I am scared of what she will do if no one stops her. I am afraid of what will happen if her charges are not meritous. I am afraid of this woman and her followers.

7. Has the respondent used, displayed, or threatened to use a firearm or other dangerous weapon in a felony? Please describe:

> No

8. Is the respondent ineligible to possess a firearm under the provisions of RCW 9.41.040? Please describe:

> No

9. Does possession of a firearm or other dangerous weapon by the respondent present a serious and imminent threat to public health or safety, or to the health or safety of a victim? Please describe:

> Unsure, behavior leads me to believe she is unwell

10. Do you have any evidence of the harassment or stalking conduct other than testimony?
    - [ ] No
    - [x] Yes.  I have attached the following evidence:
        - [ ] Copy of mail or written notes
        - [ ] Copy of text messages
        - [ ] Copy of email messages
        - [x] Copy of social media messages
        - [x] Police report
        - [ ] Declaration or Affidavit from the following witness: _____
        - [ ] Other (describe): _____

11. Has/have the victim/s or the respondent ever requested or obtained protection from the other person in a restraining order, civil protection order, or criminal no-contact order?
    If yes, list the type of order, the name of the court and the approximate date, and whether the request was granted:

> No

Pt for an Or for Protection – Harassment/Stalking (PTORAH, PTORSTK) – Page 5 of 7
WPF UHST-02.0200 (07/2019) – RCW 10.14.040, .800, RCW 7.92.030
KCDC July 2019

(153 of 162), Page 153 of 162
Case: 25-2028, 05/20/2025, DktEntry: 27.4, Page 153 of 162
Case 3:23-cv-04597-EMC   Document 35-10   Filed 12/25/23   Page 189 of 190

12. Is there any other litigation between the victim/s and the respondent?  This includes all matters - pending or past - such as parenting plans, landlord-tenant disputes, employment disputes, or property disputes.  If yes, provide case number/s if known, type of case, and name of court:

> NLRB Charge CA-288816 - charge against Apple, Inc, which contains false/misleading information about me made in bad faith by Ashley Gjovik

### ➢ Requests

### 13. I ask the Court for an order approving the following requests for protection:

I Request an **Order for Protection** following a hearing that will:

☒ **No-Contact**:  Restrain the respondent from making any attempts or having any contact, including nonphysical contact, with the person/s to be protected, directly, indirectly, or through third parties regardless of whether those third parties know of the order, except for mailing of court documents.

☒ **Surveillance**:  Prohibit or restrain the respondent from making any attempt to keep or from keeping the person/s to be protected under surveillance, including electronic surveillance.

☐ **Exclude from places**:  Exclude the respondent from the ☐ residence ☐ workplace ☐ school ☐ day care of the person/s to be protected.

☐ **Stay Away**:  Prohibit or restrain the respondent from entering or being within, or from knowingly coming within, or knowingly remaining within _____ (distance) of the ☐ residence ☐ workplace ☐ school ☐ day care of the person/s to be protected. ☐ other locations: _____.

☐ **Other**:
Stop harassment on Twitter and other social media platforms

☐ **Evaluation**:  Order the respondent to have a ☐ mental health ☐ chemical dependency evaluation. ☐ other: _____.

☒ **Pay Fees and Costs**:  Require the respondent to pay fees and costs of this action, which may include administrative court costs and service fees and petitioner's costs including attorneys' fees.

☐ **Surrender Firearms**:  Require the respondent to immediately surrender all firearms, other dangerous weapons, and any concealed pistol licenses, and prohibit the respondent from accessing, obtaining or possessing firearms, or other dangerous weapons, or concealed pistol licenses.

☒ **Duration**:  Remain effective longer than one year because respondent is likely to resume acts of unlawful harassment or stalking conduct against the persons to be protected if the order expires in a year.

---

**Emergency temporary protection (up to 14 days) until the court hearing:**

☒ An emergency exists as described below. I request that a **Temporary Protection Order** granting the relief I requested above for a no-contact, surveillance, exclude from places, or stay away order be issued immediately, without prior notice to the respondent, be effective until the hearing.

☐ I also request a temporary surrender of all firearms, other dangerous weapons, and concealed pistol licenses without notice to the other party because irreparable injury could result if an order is not issued until the hearing.

What irreparable harm would result if an order is not issued immediately without prior notice to the respondent?

I have already struggled to find employment because of her harassment, along with harassment from her followers that could lead to misuse of 911 dispatch resulting in irreparable harm to myself or to my child.

---

I declare under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct.

Dated: 1/31/2022 _____ at Kirkland _____ Washington.

_Cher_ (signature)

Petitioner

Cher Scarlett

Print or type name

---

**Pt for an Or for Protection – Harassment/Stalking (PTORAH, PTORSTK)** – Page 7 of 7
WPF UHST-02.0200 (07/2019) – RCW 10.14.040, .800, RCW 7.92.030
KCDC July 2019

# EXHIBIT B: Transcript Excerpts from March 1 Hearing

35

```
 1      communications with Kate as -- in your witness statements.
 2      I actually have those conversations that are being
 3      referenced.  I'm wondering if you would like to hear them?
 4        MR. BLAIR:  Is there a question, Your Honor?
 5        THE COURT:  Yeah, basically right now we're supposed to be
 6      asking your questions that you have specifically for
 7      Ms. Gjovik.
 8   Q.  (By Ms. Scarlett)  Okay.  I guess I'd like to know what
 9      conversations did I have with Kate that you viewed were
10      abusive?  Do you have any particular comments?
11   A.  I don't believe I ever made that allegation.
12   Q.  Okay.  I'm curious then what her testimony has to do with
13      your harassment of me?
14        MR. BLAIR:  Is there a question, Your Honor?
15        THE COURT:  Yes, she asked a -- you can repeat your
16      question.
17   Q.  (By Ms. Scarlett)  My question is:  I'm wondering what Kate
18      Rotondo's testimony has to do with your harassment of me?
19   A.  Kate's testimony -- and I don't want to speak on Kate's
20      behalf, she wrote a very thoughtful witness statement that
21      she should take at her face value.  But she was trying to
22      point out a pattern and practice of not just you harassing
23      us, but as soon as we tried to stand up for ourselves, you
24      began attacking us and saying we were harassing you and
25      trying to cut off communications so we could no longer even
```

*March 1 2022 Transcript: Page 35*

36

1    defend ourselves against your harassment, I believe was the
2    point.  And that seems very relevant to this.
3      Your Honor, as my filings included, the judge directions
4    for domestic violence retaliatory litigation, which is what
5    this very much feels like.  If not retaliation for the
6    federal charges, it seems like this is the retaliation for
7    me, asking, pleading for Ms. Scarlett to stop harassing me,
8    which she had been since September and instead she switched
9    the offender and victim.
10  Q.  So I wrote you one single email in which I apologized for
11    the two things that I said in one single post.  How does
12    that -- you haven't presented anything that I have actually
13    said to be harassment.  And when I've asked you -- which
14    again, you just said that I harassed Kate, I have our
15    messages here.  She was reTweeting things that you were
16    posting that was defamatory, and I said to her that I
17    blocked her because she was lying about me.
18      MR. BLAIR:  Is this a question or is it testimony or
19    argument?
20      MS. SCARLETT:  I'm just -- I'm trying to understand how
21    she's both saying that I harassed these other two women,
22    which there is no evidence that I have harassed them, and I
23    have evidence that I was not harassing either of them, and
24    what that has to do with Ms. Gjovik's harassment of me.
25      THE COURT:  So what's the --

*March 1 2022 Transcript: Page 36*

EMR. MOTION FOR. INJ,                          PO BOX 119 SANTA CLARA, CA 95050
CASE NO. 2:22-CV-00807-RAJ-BAT                              (408) 883-4428
                                  - 10 -

1      MR. BLAIR:  That sounds like an argument, Your Honor.

2      THE COURT:  Just tell us the question.

3  Q.  (By Ms. Scarlett)  Why do you think -- why have you made

4      statements like that that I am stalking anybody who --

5      stalking you, coercing you, harassing you, intimidating you,

6      threatening you, and telling people that bad things will

7      happen to them if they support you?

8      Why were you saying that I was harassing, defaming,

9      swatting, threatening, illegally coercing you to modify

10     federal charges.  Why we were saying -- it should be

11     mentioned that I am currently under investigation by

12     numerous federal agencies and law enforcement for federal

13     witness intimidation and obstruction of justice.

14     Why have you said that I'm in active communication with

15     Apple helping Apple in their campaign of harassment, threats

16     and horror against the safety whistle blower.  Why did you

17     say I'll report you to Apple if I leak Apple's crimes?  Why

18     did you say --

19      MR. BLAIR:  Your Honor, can we have some help here?  I

20     don't know what she's asking.

21      THE COURT:  I just need a question, basically.

22  Q.  (By Ms. Scarlett)  Why do you -- why do you believe that

23     saying these things about me and posting this personal

24     information about me is for a lawful purpose?

25      THE WITNESS:  Your Honor, I'd like to object to this

*March 1 2022 Transcript: Page 37*

38

1    question. She's trying to compel me to testify on my

2    federal charges.

3      THE COURT: Ma'am, you've got an attorney. He'll make

4    whatever objections are necessary.

5      MR. BLAIR: I'm going to object for my client, Your Honor.

6    At this point I don't see a question. What I hear is an

7    argument.

8      THE COURT: She asked a question.

9      MR. BLAIR: That's what I think --

10      THE COURT: She asked a question and it is -- she wants to

11    know how Ms. Gjovik thinks this serves a lawful purpose.

12      MR. BLAIR: What serves a lawful purpose?

13      THE COURT: Her posting the things that she's listed.

14      THE WITNESS: I'll answer --

15      MR. BLAIR: Ms. Gjovik, go ahead.

16  A.  Yeah. These are part of my federal and state charges, which

17    have already met prima facie for subsequent harassment after

18    termination of my time at Apple.

19      I'm hesitant to testify to anything specific because it is

20    part of the ongoing investigation.

21      And I will say, I am single handedly representing myself

22    fighting the biggest company in the entire world with a long

23    history of horrible labor abuses and intimidation of anyone

24    challenging it. I'm terrified every single day since I

25    started reporting Apple to the government. I'm terrified

1      for my safety.

8          And rebuttal, Ms. Scarlett.

9          MS. SCARLETT: You know, you said that, you know, your

10   client has the right to post this information because of the

11   First Amendment. But in her testimony, she said that the

12   reason that she did so was because of something that I said

13   publicly that she believed to be a lie, and that was that I

14   said that her retaliatory discharge one is going to be tough

15   to prove because she leaked IP. She actually posted the

16   conversation that I had with her about that leaked IP.

17       And it's hard for me to hear her attorney now argue that

18   she has the right to free speech when she did not give me

19   that right myself.

20       That's it.

21       THE COURT: Okay. Thank you. So give me a minute here.

22       All right. So I've certainly heard the testimony, I've

23   reviewed the documents. Both parties have produced a number

24   of documents and a number of written statements, all of

25   those are incorporated in by this reference, including the

*March 1 2022 Transcript: Page 44*

22          And she told mutuals that because -- I had reached out to a

23   mutual friend at the time -- who is no longer a friend of

24   mine, who has actually provided written testimony in this --

25   that I was concerned because something that Ashley told her

*March 1 2022 Transcript: Page 12-13*

EMR. MOTION FOR. INJ,                                    PO BOX 119 SANTA CLARA, CA 95050
CASE NO. 2:22-CV-00807-RAJ-BAT                                          (408) 883-4428

- 13 -

1    was not what Ashley had communicated to me multiple times,
2    and all I suggested was to protect herself, she reach out
3    and at least ask so that she could say that she did before
4    she published possibly defamatory information about a
5    company that was trying to harm all of us.
6        And after that, I came into this courtroom because it had
7    continued to escalate.  Saying things that I was trying to
8    destroy her, that I was trying to have her swatted, and
9    that's calling emergency services that are armed in order
10   to -- in the hopes of having them physically harmed.  I've
11   never done that.  I would never do that.  Coercing her.
12   Telling her to remove federal charges.  Bullying her.
13   Saying that I'm under investigation by numerous federal
14   agencies and law enforcement.
15       So I wrote her an email after I came to court because
16   ultimately, again, I did not want any of this to harm her
17   career, to harm her, to do further harm to me.  And I wrote
18   this email and I was like, look, here's all these
19   misconceptions that you've heard, here's the reality of
20   them.  And I even apologized for the things that I said that
21   are nothing, you know, just that one comment that I made.
22       And she decided to escalate further instead.  I said that
23   at that point I had no choice but to hire a process server
24   for this proceeding.  And the way that she represented that
25   was that I -- a member of Apple's global security hired

*March 1 2022 Transcript: Page 14*

EMR. MOTION FOR. INJ,                                    PO BOX 119 SANTA CLARA, CA 95050
CASE NO. 2:22-CV-00807-RAJ-BAT                                        (408) 883-4428

1     1     someone to track down and find her at her home and hand her

2     2     something physically.  So, again, making these statements

3     3     that are -- not necessarily full on lies, but complete

4     4     misrepresentations that do nothing but to try to maliciously

5     5     frame that I have done something that I haven't done.

6     6       With the NLRB charge -- I'm not bringing up the charge

7     7     specifically.  I'm talking specifically about Ashley --

8     8     excuse me, Ms. Gjovik, posting -- publishing these things on

9     9     a platform called Scribd, which actually removed it for

10     10    account abuse.  A platform of her website.  These are not

11     11    government websites that are hosting these, these are things

12     12    that Ashley -- that Ms. Gjovik is writing herself and

13     13    publishing herself that she is claiming are related to these

14     14    federal charges.  But they're really just her, and that's

15     15    who is publishing this information.  She's just doing it

16     16    under the guise that it is federally protected.

*March 1 2022 Transcript: Page 15*

  9     On January 11th:  "I recommend you send this document

10    retention notice and some sort of cease and desist missive

11    to them now."

*March 1 2022 Transcript: Page 17*

SEE EXHIBIT E

---

EMR. MOTION FOR. INJ,                     PO BOX 119 SANTA CLARA, CA 95050
CASE NO. 2:22-CV-00807-RAJ-BAT                    (408) 883-4428

# Exhibit G: Web Host Complaint

**[8]** ==Web.com== Customer Support [OEML-136079]



From → 🔒 noreply@web.com ☆ 🟩 ⊘ March 2nd, 2022
To    Ashley Gjovik <ashleygjovik@icloud.com>
Wednesday, March 2nd, 2022 at 6:56 AM

🔴 This email has failed its domain's authentication requirements. It may be spoofed or improperly forwarded! Learn more

# web.com

Dear Ashley,

Thank you for contacting Web.com. We are committed to assisting people in taking action against fraudulent activity.

Web.com has received the complaint below regarding website activities associated with your domain name ashleygjovik.com. Please take a moment to review the complaint and respond directly to the Complainant to address any issues to resolve the complaint.

From: me@cher.dev

Subject: Inappropriate Content - Child pornography complaint
Domain: ashleygjovik.com
Description: I have a protection order (attached) against the person who owns this domain and posted this document. This disallows her from continuing to post about me and my family, which is the majority of this document.

The file is located here: https://www.ashleygjovik.com/uploads/1/3/7/0/137008339/ashley_gjovik_v_apple_inc_-_intimidation_and_threats_evidence_report.pdf
Attachments: C3E65AB7-5A8C-4865-BA13-349BDF2A9492.jpg,F7A18629-3BA3-485A-B68B-5FE0F7591243.jpg

I hope this information has been helpful. We appreciate your business!