CASE NO. 25-2028

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

**ASHLEY M. GJØVIK**, *an individual*,

*Plaintiff-Appellant*

v.

**APPLE INC.**, *a corporation*,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Northern District of California
No. 3:23-CV-04597
The Honorable Judge Edward M. Chen

---

## APPELLANT'S REQUEST FOR JUDICIAL NOTICE:
## EXHIBITS IV: CASE MGMT STATEMENTS

---

**Ashley M. Gjøvik, JD**
*In Propria Persona*
2108 N. St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# Gjovik v. Apple

## Exhibit: Dkt 77

Plaintiff Ashley Gjovik ("Plaintiff") and Defendant Apple Inc. ("Defendant" or "Apple," and collectively with Plaintiff, the "Parties") hereby jointly submit this Joint Case Management Statement in advance of the July 16, 2024 Case Management Conference.

## I.    <u>JURISDICTION AND SERVICE</u>

This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and the Parties are diverse. Defendant has been served.

## II.    <u>FACTS</u>

<u>Plaintiff's Position</u>: Apple Inc. intentionally engaged in a course of unlawful conduct and unfair business practices that resulted in direct, severe, and ongoing harm to Ashley Gjovik as a neighbor and community member, as an employee, and as a consumer. This lawsuit arises from Apple's reckless disregard of environmental regulations and safety requirements around two Santa Clara County properties starting in 2015. Apple's acts and omissions resulted in severe and nearly fatal physical injuries to Gjovik in 2020, creating continued and present suffering.

Gjovik's complaints and inquiries to Apple about toxic waste in 2021 were swiftly met with retaliation and intimidation, including the adverse employment actions of unfavorable reassignment, interrogations, surveillance, five weeks of mandatory administrative leave, sabotage, denial of benefits and opportunities, suspension, wrongful termination, disparagement, defamation by reason of termination, denylisting, and more harassment. In the years that followed, Defendant engaged in extensive surveillance of Plaintiff and trespass of her property, including repeated burglaries and stalking. Defendant continues to terrorize Plaintiff ongoing, destroyed her reputation and employability, erased her life savings, and has generally made her life utterly miserable.

<u>Defendant's Position</u>: Plaintiff worked for Defendant from February 2015 until Defendant terminated her employment in September 2021 because she disclosed confidential product-related information in breach of her confidentiality obligations and then refused to meaningfully participate in the internal investigation regarding that disclosure. In January 2015, Plaintiff signed a confidentiality agreement "prohibit[ing] [Plaintiff], during or after employment, from using or disclosing, or permitting any other person or entity to use or disclose, any Proprietary Information without the written consent of Apple[.]" Further, in July 2018, Plaintiff voluntarily agreed to

participate in a confidential user study of an internal and proprietary application (the "Application") and agreed, as a condition of participating, to maintain strict confidentiality. The consent form permitted Plaintiff to withdraw from the study at any time. On August 28, 2021, Plaintiff publicly disclosed on Twitter (now known as X) details about a proprietary study Defendant was conducting about a confidential Apple product (the "Product") that Plaintiff had agreed to keep confidential. Despite this, Plaintiff's tweet both identified the name and purpose of the study regarding the Product. On August 30, 2021, Plaintiff tweeted photographs and a video of herself created by the Application, thus disclosing Apple confidential information. She also linked to a story published in The Verge, a technology blog, in which she disclosed her participation in the study regarding the Application. Upon learning of her unauthorized disclosures, Defendant began an investigation. On September 9, 2021, an Apple investigator requested to speak with Plaintiff as part of that investigation. Plaintiff refused to be interviewed. Defendant completed its investigation, concluded that Plaintiff had violated her confidentiality agreements and Apple policy, and terminated her employment. Apple had likewise terminated the employment of other employees found to have violated their confidentiality obligations. In addition to her employment claims, Plaintiff asserts various torts against Defendant. Defendant denies any wrongdoing.

## III.  <u>LEGAL ISSUES</u>

<u>Plaintiff's Position</u>: Legal issues include causation, nexus, intent, negligence, pretext, fraud, protected activities, fairness, and risk. There will be multiple "*Reasonable Person*" exercises including foreseeability, expectation, severity, outrage, consent, offensiveness, endurance, and interference. The "Right to Know" will be a recurring theme. This case also involves several novel legal issues requiring policy arguments and creative advocacy from both parties related to privacy, surveillance, ears, expression, hazards, consent in the employment context, and personal data collection for commercial research and development.

<u>Defendant's Position</u>: It is too early to determine the legal issues until after the pleadings have been determined but they likely include: Whether Plaintiff engaged in protected activity under Cal. Labor Code §§ 98.6, 232, 232.5, and/or 6310 and/or *Tameny*, and, if so, whether the protected activity was a substantial motivating reason for Defendant's decision to terminate Plaintiff's

employment; Whether Defendant is liable to Plaintiff for a private nuisance or breach of contract; Whether Plaintiff is entitled to any relief and if so, the type and/or amount; Whether Plaintiff has adequately mitigated any damages she claims to have incurred.

**IV.    MOTIONS**

Plaintiff's Position: At this time Plaintiff has no definite plans to file additional motions but is planning to potentially file a Motion for Summary Judgement on certain Questions of Law after discovery. Plaintiff may also need to file Motions to Compel and other discovery related motions, based on Defendant's discovery conduct in this case and the U.S. Dept. of Labor case thus far.

Defendant's Position: Defendant intends to file a motion to dismiss on July 15, 2024 regarding certain claims in the now-operative Fourth Amended Complaint. Defendant may file a motion for summary judgment under Rule 56 for resolution of any outstanding issues.

**V.    AMENDMENT OF PLEADINGS**

Plaintiff's Position: As this is complex litigation covering multiple legal subject areas, Plaintiff expects she will need to amend her complaint again prior to trial to conform with evidence identified during discovery and/or as the issues narrow and crystalize. Plaintiff will also respectfully request leave to amend if any of Defendant's upcoming 12(b)(6) requests are granted.

Defendant's Position: Plaintiff filed a Fourth Amended Complaint on June 17, 2024; Defendant intends to file a motion to dismiss. Defendant contends that no further amendments should be permitted.

**VI.    EVIDENCE PRESERVATION**

The Parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information and have met and conferred pursuant to Federal Rule of Civil Procedure 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action

**VII.    DISCLOSURES**

Plaintiff's Position: Plaintiff will provide initial disclosures to Defendant on July 9 2024, as required by Rule 26(a)(1) following their meet/confer, and expects Defendant to do the same.

Defendant's Position: Defendant timely and fully complied with the initial disclosure

requirements of General Order 71 ("GO 71"). Plaintiff has not fully complied with GO 71's requirements.

## VIII.   DISCOVERY

- **Discovery taken to date:**

Plaintiff's Position: Discovery began in the U.S. Dept. of Labor case in March 2024. However, Plaintiff had to file a Motion to Compel two weeks ago. It is Plaintiff's understanding that discovery did not start in this civil case until the completion of the 26(f) conference in June 25 2024. Plaintiff believes discovery has now started and she may send Defendant her first Request for Production.

Defendant's Position: None.

- **Scope of anticipated discovery:**

Plaintiff's Position: Plaintiff believes the scope should be nonprivileged matters that are relevant to any party's claim or defense.

Defendant's Position: Discovery should be stayed until the pleadings are settled because, until then, the appropriate scope of discovery is unknown (*i.e.*, neither the Parties nor the Court can fully determine what matters are "relevant to any party's claim or defense and proportional to the needs of the case" within the meaning of FRCP 26(b)(1)). Alternatively, discovery prior to Defendant's answer should be limited to written discovery related to the claims not at issue in Defendant's forthcoming motion to dismiss.

- **Proposed limitations or modifications of the discovery rules:**

Plaintiff's Position: There will be some overlapping discovery in this case and the U.S. Dept of Labor OALJ case (with active discovery underway). Because of the potential for conflicts - especially decisions related to privilege, confidentiality, and exclusion of evidence - coordination between cases will be urgent and critical to ensuring consistency and progress.

Defendant's Position: Discovery should be limited at this time as outlined above. With this exception, Defendant contends there should be no modifications of the discovery rules.

- **A brief report on whether the parties have considered entering into a stipulated e-discovery order:**

Plaintiff's Position: Plaintiff is receptive to the idea.

Defendant's Position: Defendant does not believe that a stipulated e-discovery order is

necessary or appropriate in this action.

- **Proposed discovery plan pursuant to Fed. R. Civ. P. 26(f):**
  - o **(A) what changes should be made in the timing, form, or requirement for disclosures under Rule 26(a), including a statement of when initial disclosures were made or will be made;**

Plaintiff's Position: Initial Disclosures are to be made on Tuesday July 9 2024 in compliance with Rule 26(a)(1), following the party's June 25 2024 meet and confer. Defendant has not completed its disclosures for any of the claims, but especially for the Toxic Torts, IIED, and antitrust claims – which have no relation to General Order 71, and their applicability in this case is exactly why General Order 71 does not and should not apply. Defendant needs to provide full disclosures.

Defendant's Position: Defendant does not propose any changes to the timing, form, or requirement for disclosures under GO 71. Defendant made its initial GO 71 disclosures on December 18, 2023 and supplemented them on April 5, 2024 and May 15, 2024. Plaintiff has not fully complied with GO 71's initial disclosure requirements.

  - o **(B) the subjects on which discovery may be needed, when discovery should be completed, and whether discovery should be conducted in phases or be limited to or focused on particular issues;**

Plaintiff's Position: Discovery should commence. Plaintiff recommends phases, starting with targeted questions that will help narrow the focus of subsequent phases. Plaintiff has also already offered numerous compromises and accommodations to Defendant, including redactions and physically viewing sensitive documents at an office for a more focused selection of which documents are needed prior to taking possession. Plaintiff requests guidance of the procedure for quantity of interrogatories for a lawsuit such as this that is essentially a proactive Rule 18 Joinder of separate claims. Plaintiff has limited resources and will be unable to afford many depositions, but would like to supplement with interrogatories and would benefit from her interrogatory quantity being allotted for at least the whistleblower/labor and toxic tort causes separately (so double).

Defendant's Position: Discovery should be stayed until the pleadings are settled. Alternatively, discovery should be limited to written discovery related to the claims not at issue in Defendant's forthcoming motion to dismiss. At this time, it is premature to set a date for the completion of discovery.

o **(C) any issues about disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced;**

<u>Plaintiff's Position</u>: There are already multiple issues related to discovery, including refusal to provide FRCP Initial Disclosures, reliance on boilerplate objections, refusal to provide privilege logs, claims of ACP in conversations where no attorney was present, and insistence on use of blanket protective orders to claim confidentiality of matters that are not confidential (and even on matters that are clearly of the public interest and/or matters of public safety).

<u>Defendant's Position</u>: None at this time, other than whether Plaintiff is required to comply with GO 71, and whether discovery should be stayed until after the pleadings are settled.

o **(D) any issues about claims of privilege or of protection as trial-preparation materials, including—if the parties agree on a procedure to assert these claims after production—whether to ask the court to include their agreement in an order under Federal Rule of Evidence 502;**

<u>Plaintiff's Position</u>: Concerns about Defendant's willingness to provide privilege logs.

<u>Defendant's Position</u>: None at this time.

o **(E) what changes should be made in the limitations on discovery imposed under these rules or by local rule, and what other limitations should be imposed;**

<u>Plaintiff's Position</u>: Plaintiff requests scrutiny of any requests from Defendant for approval of easily abused tools and tactics, such as a blanket protective orders, or frequent vague requests to stay discovery. Plaintiff also requests Defendant be required to 'show their work' for any of these types of requests, and provide a full, proper justification for each issue and request. Plaintiff requests high scrutiny of any requests from Defendant to this Court that appear to be an attempt to censor and silence her – especially about topics like public safety. Plaintiff accepts all responsibility for her conduct and any sanctions if she does actually act improperly.

<u>Defendant's Position</u>: Discovery should be limited at this time as outlined above.

o **(F) any other orders that the court should issue under Rule 26(c) or under Rule 16(b) and (c).**

<u>Plaintiff's Position</u>: Structure would be helpful around depositions, interrogatories, document production, privilege, expert witnesses, discovery disputes, and ADR.

<u>Defendant's Position</u>: Defendant proposes no such orders at this time.

- **Identified discovery disputes:**

Plaintiff's Position: There are multiple disputes related to scope, process, confidentiality, and willingness to participate in discovery. Further, Plaintiff continues to allege, (and her NLRB claim is still pending a decision), that Defendant's actions in December 2023 under the premise of General Order 71 and a Protective Order (where Defendant claimed Plaintiff's performance reviews, health benefits, and EHS complaints were secret and confidential) violated federal law.

Defendant's Position: Plaintiff has not fully complied with the initial disclosure requirements of GO 71 and should promptly complete her initial disclosures.

## IX. **RELATED CASES**

Plaintiff's Position: There are no other pending actions in federal or state Courts. There is one pending agency adjudication within the U.S. Dept of Labor Office of Administrative Law Judges in Boston, MA (*Ashley Gjovik v Apple Inc,* Case No. 2024-CER-00001). Coordination of cases is required as there are overlapping claims and damages, and Defendant has already taken several actions to initiate conflicts between and within the two cases. Plaintiff would appreciate guidance if a Notice of Pendency is appropriate for this type of adjudication, and/or how to request assistance with or guidance on the preferred way to coordinate cases with this Court and the OALJ ALJ. Plaintiff also has multiple charges filed against Defendant with the US NLRB, and the US NLRB has already found merit that there is substantial evidence the Defendant may have violated the NLRA under two of her claims, however any litigation would not include Plaintiff as a party.

Defendant's Position: On August 26, 2021, Plaintiff filed a charge against Defendant before the National Labor Relations Board alleging that Defendant retaliated against her because she engaged in protected concerted activity. No decision has been issued. On December 29, 2023, Plaintiff filed another NLRB charge against Defendant alleging that Defendant is forbidding her from talking about this case by requesting that she enter into a protective order regarding discovery (modeled on the N.D. Cal. template). No decision has been issued.

On August 29, 2021 and November 2, 2021, Plaintiff filed whistleblower retaliation complaints with the U.S. Department of Labor (DOL) alleging that her suspension and termination amounted to retaliation in violation of the Sarbanes-Oxley Act (SOX), the Occupational Safety and

Health Act (OSHA 11(c)), and the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA). With respect to her SOX claim, this Court dismissed it with prejudice on May 20, 2024. With respect to her CERCLA and OSHA 11(c) claims, DOL found no reasonable cause on December 8, 2023. On January 7, 2024, Plaintiff requested a hearing before the Office of Administrative Law Judges regarding her CERCLA claim. The hearing is set for the week of March 3, 2025. On April 29, 2024, the Secretary of Labor concluded on administrative review that there was insufficient evidence to establish any violation of OSHA 11(c); this is a final DOL decision.

## X.    <u>RELIEF</u>

<u>Plaintiff's Position</u>: Plaintiff requests damages (compensatory, expectancy, consequential, punitive, nominal, restitution, tax offsets, interest, pro se attorney's fees, and legal costs), as well as injunctive and declaratory relief. Estimates for non-pecuniary, punitive, toxic, and other complex matters will be determined later in the lawsuit or by a jury. In 2020, Plaintiff's total annual pay without benefits was $386,382. Employment-related damages are estimated at around $10M for combined back pay, front pay, loss of future earnings, costs, personal injury, and loss of benefits. A non-pecuniary injury multiplier of 4 x pecuniary is suggested, raising the total to $31M. An additional $2M is estimated for interest, tax offset, and attorney's fees. Post-employment IIED damages would be separate. Toxic Tort compensatory damages will be based on physical and mental injury, diminished value and lost use of chattel and real property interests, and expenses. A non-pecuniary injury multiplier of x5 is suggested (risk of disease, fear of cancer, emotional distress, diminution of quality of life, pain and suffering, and loss of enjoyment of life). The total amount is expected to be similar or more than the whistleblower and labor damages. Plaintiff will need to develop a plan to avoid damages conflicts and mange preclusion in this concurrent multi-jurisdiction litigation. CACI 3924 "Damages on Multiple Legal Theories" will likely be applicable.

<u>Defendant's Position</u>: Defendant denies that Plaintiff is entitled to any recovery in this case.

## XI.   <u>SETTLEMENT AND ADR</u>

<u>Plaintiff's Position</u>: Parties stipulated to an ADR Settlement Conference. However, Plaintiff is concerned that Defendant will not engage in good faith. Plaintiff asked for confirmation that the Conference scope would be a global settlement of all of Plaintiff's claims against Defendant seeking

- 8 -

damages (civil, U.S. Dept. of Labor, US NLRB) – as an earnest Settlement Conference requires representation of all cases and law firms (i.e., Morgan Lewis). The Defendant has not responded to this inquiry for over eight months. Plaintiff requests Defendant's candor, and consideration of Early Neutral Evaluation instead if Defendant is not interested in settling at this time or at all.

Defendant's Position: In accordance with ADR Local Rule 3-5, the Parties met and conferred regarding ADR options. The Parties intend to stipulate to an ADR process.

## XII.  OTHER REFERENCES

Plaintiff's Position: Plaintiff does not want arbitration and MDL is not applicable. Plaintiff is interested in the possibility of a special master for discovery disputes.

Defendant's Position: Defendant does not believe that the case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

## XIII.  NARROWING OF ISSUES

Plaintiff's Position: Plaintiff believes that further narrowing of issues should occur through mechanisms such as discovery, stipulated facts, and summary adjudication. Plaintiff believes another 12(b)(6) motion is unnecessary and will waste the Plaintiff and Court's time and resources. Plaintiff also regrets dropping her RICO 1962(c), 1962(d), Bane, and Ralph claims as she expected that in voluntarily dropping the claims that Defendant would not file another Motion to Dismiss.

Defendant's Position: On July 15, 2024, Defendant intends to file a motion to dismiss certain claims in the Fourth Amended Complaint. Defendant believes it is premature to expedite the presentation of evidence at trial or to request to bifurcate issues, claims, or defenses.

## XIV.  SCHEDULING

Plaintiff's Position: Plaintiff suggests scheduling the trial around one year out with the Court's standard scheduling of dependent events prior. As an expert project manager, she feels strongly there should always be a project schedule, even if it might need to be adjusted later.

Defendant's Position: Defendant believes that it is premature to set a case schedule prior to a ruling on Defendant's forthcoming motion to dismiss.

## XV.  TRIAL

Plaintiff's Position: Plaintiff requests a Jury trial for issues of fact and certain issues of law.

- 9 -

1  Duration of the Jury trial is unknown due to the complexity of claims, but Plaintiff expects at least

2  one week will be needed. Additional time will also be needed for the expected partial Bench trial

3  with Summary Judgement motions on certain Questions of Law.

4      **Defendant's Position**: Plaintiff had made a demand for a jury trial. Defendant anticipates

5  the parties would need five days for trial.

6  ## XVI.   DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

7      **Plaintiff's Position**: Plaintiff has no disclosable non-parties who are interested entities or

8  persons in the outcome of her side of this litigation.

9      **Defendant's Position**: Plaintiff filed a Disclosure of Conflicts and Interested Entities or

10  Persons. Dkt. 2. Defendant filed a Certification of Conflicts and Interested Entities informing the

11  Court that there is no conflict of interest (other than the named parties) to report. Dkt. 11.

12  ## XVII.  PROFESSIONAL CONDUCT

13      **Defendant's Position**: The attorneys of record for Defendant have reviewed the Guidelines

14  for Professional Conduct for the Northern District of California.

15  ## XVIII. OTHER MATTERS

16      **Plaintiff's Position**: Due to the complexity of the case and the current dynamic between

17  parties, Plaintiff sees benefit in regular reoccurring Status Conferences and Updates with the Court.

18  Plaintiff has already utilized the Court's Pro Se clinic for procedural guidance and plans to continue

19  utilizing the helpful resources available there.

20      **Defendant's Position**: Defendant is not presently aware at this time of any other matters that

21  may facilitate the just, speedy, and inexpensive resolution of this matter.

22

23  Dated: July 9, 2024                    By:  _____/s/ Ashley M. Gjovik_____

24                                              ASHLEY M. GJOVIK
                                                Plaintiff
25

26  Dated: July 9, 2024                    By:  _____/s/ Jessica R. Perry_____

27                                              JESSICA R. PERRY
                                                Attorneys for Defendant Apple Inc.
28

# Gjovik v. Apple

# Exhibit: Dkt 97

Plaintiff Ashley Gjovik ("Plaintiff") and Defendant Apple Inc. ("Defendant" or "Apple," and collectively with Plaintiff, the "Parties") hereby jointly submit this Joint Case Management Statement in advance of the August 28, 2024 Case Management Conference.

## I.     JURISDICTION AND SERVICE

This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and the Parties are diverse. Defendant has been served.

## II.    FACTS

Plaintiff's Position: Apple Inc. intentionally engaged in a course of unlawful conduct and unfair business practices that resulted in direct, severe, and ongoing harm to Ashley Gjovik as a neighbor and community member, as an employee, and as a consumer. This lawsuit arises from Apple's reckless disregard of environmental regulations and safety requirements around two Santa Clara County properties starting in 2015. Apple's acts and omissions resulted in severe and nearly fatal physical injuries to Gjovik in 2020, creating continued and present suffering.

Gjovik's complaints and inquiries to Apple about toxic waste in 2021 were swiftly met with retaliation and intimidation, including the adverse employment actions of unfavorable reassignment, interrogations, surveillance, five weeks of mandatory administrative leave, sabotage, denial of benefits and opportunities, suspension, wrongful termination, disparagement, defamation by reason of termination, denylisting, and more harassment. In the years that followed, Defendant engaged in extensive surveillance of Plaintiff and trespass of her property, including repeated burglaries and stalking. Defendant continues to terrorize Plaintiff ongoing, destroyed her reputation and employability, erased her life savings, and has generally made her life utterly miserable.

Defendant's Position: Plaintiff worked for Defendant from February 2015 until Defendant terminated her employment in September 2021 because she disclosed confidential product-related information in breach of her confidentiality obligations and then refused to meaningfully participate in the internal investigation regarding that disclosure. In January 2015, Plaintiff signed a confidentiality agreement prohibiting Plaintiff from disclosing any confidential information without Apple's consent. In July 2018, Plaintiff voluntarily agreed to participate in a confidential user study of an internal and proprietary application (the "Application") and agreed to maintain

strict confidentiality. On August 28, 2021, Plaintiff publicly disclosed on Twitter (now known as X) details about a proprietary study Defendant was conducting about a confidential Apple product (the "Product") that Plaintiff had agreed to keep confidential. On August 30, 2021, Plaintiff tweeted photographs and a video of herself created by the Application, thus disclosing Apple confidential information, and linked to a story published in a technology blog, in which she disclosed her participation in the Application study. Upon learning of her unauthorized disclosures, Defendant began an investigation. On September 9, 2021, an Apple investigator requested to speak with Plaintiff. Plaintiff refused to be interviewed. Defendant completed its investigation, concluded that Plaintiff had violated her confidentiality agreements and Apple policy, and terminated her employment. Apple had likewise terminated the employment of other employees found to have violated their confidentiality obligations. In addition to her employment claims, Plaintiff asserts various torts against Defendant primarily related to a separate facility at 3250 Scott Blvd. Defendant denies any wrongdoing.

### III.   <u>LEGAL ISSUES</u>

<u>Plaintiff's Position</u>: Legal issues include causation, nexus, intent, negligence, pretext, fraud, protected activities, fairness, and risk. There will be multiple "*Reasonable Person*" exercises including foreseeability, expectation, severity, outrage, consent, offensiveness, endurance, and interference. The "*Right to Know*" will be a recurring theme. This case also involves several novel legal issues requiring policy arguments and creative advocacy from both parties related to privacy, surveillance, biometrics, expression, hazards, chemical exposure, consent in the employment context, and personal data collection for commercial research and development.

<u>Defendant's Position</u>: It is too early to determine the legal issues until after the pleadings have been determined, but they may include: whether Plaintiff engaged in protected activity under Cal. Labor Code §§ 98.6, 232.5, 1102.5, and/or 6310 and/or *Tameny*, and, if so, whether the protected activity was a substantial motivating reason for Defendant's decision to terminate Plaintiff's employment; whether Plaintiff is entitled to any relief and if so, the type and/or amount; and whether Plaintiff has adequately mitigated any damages she claims to have incurred.

4153-3216-6482

**IV.    MOTIONS**

Plaintiff's Position: Depending on the outcome of pending meet and confer, Plaintiff is preparing to file a motion to Magistrate Judge Westmore requesting assistance regarding privilege logs and redactions, failure to disclose key witnesses and information, and the very small production produced by Defendant for the employment and labor claims.

Defendant's Position: Defendant filed a motion to dismiss on July 15, 2024 regarding certain claims in the now-operative Fourth Amended Complaint. Defendant may file a motion for summary judgment under Rule 56 for resolution of any outstanding issues.

**V.    AMENDMENT OF PLEADINGS**

Plaintiff's Position: As this is complex litigation covering multiple legal subject areas, Plaintiff expects she will need to amend her complaint again prior to trial to conform with evidence identified during discovery and/or as the issues narrow and crystalize. Plaintiff will respectfully request leave to amend if any of Defendant's upcoming 12(b)(6) requests are granted, and proactively proposed possible supplements in Dock. 93 if pleadings are found to be incomplete.

Defendant's Position: Plaintiff filed a Fourth Amended Complaint on June 17, 2024; Defendant filed a motion to dismiss on July 15, 2024. No further amendments should be permitted.

**VI.    EVIDENCE PRESERVATION**

The Parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information and have met and conferred pursuant to Federal Rule of Civil Procedure 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action.

**VII.    DISCLOSURES**

Plaintiff's Position: Plaintiff provided Initial Disclosures to Defendant following their meet/confer, as required by Rule 26(a)(1). Plaintiff is currently drafting a supplemented version and plans to complete disclosures and initial discovery by September 16 2024. Plaintiff had to purchase discovery software and is currenting reviewing and tagging documents in the tool.

Defendant has not provided complete Initial Disclosures under GO71 or for other claims. Defendant still has not disclosed to Plaintiff who was involved in making the decision to terminate

1    her employment, the timing of that decision, or their investigations into her and her complaints.

2         <u>Defendant's Position</u>: Defendant timely complied with the initial disclosure requirements

3    of General Order 71 ("GO 71"). Plaintiff has not complied with GO 71's requirements. Pursuant to

4    the July 16, 2024 Initial Case Management Conference minutes (Dkt. 80), Defendant intends to

5    complete its Rule 26 disclosures and exchange of high-level documents by September 16, 2024, to

6    the extent that any non-employment claims remain following a ruling on Apple's pending motions.

7    **VIII.**   **<u>DISCOVERY</u>**

8    • **<u>Discovery taken to date</u>:**

9      <u>Plaintiff's Position</u>: Defendant produced a very small batch of documents under GO71 but most

10   of the records are not material (they are things Plaintiff already has) and reveals very little.

11   <u>Defendant's Position</u>: None.

12   • **<u>Scope of anticipated discovery</u>:**

13       <u>Plaintiff's Position</u>: Plaintiff believes the scope should be nonprivileged matters that are

14   relevant to any party's claim or defense, but Defendant has already refused to provide basic records.

15   Defendant has even refused to provide Plaintiff's Employee Relations file, her 2021 performance

16   review, anything related to the decision to fire her other than final approval, or any of the

17   agreements Plaintiff signed during her employment other than the offer letter and IPA. Plaintiff

18   expects to need Judge Westmore's assistance in negotiating scope and production with Apple.

19       <u>Defendant's Position</u>: Apple expects that the parties will comply with the Court's

20   instruction in the July 16, 2024 Initial Case Management Conference minutes (Dkt. 80) to complete

21   Rule 26 disclosures and exchange high-level documents on or before September 16, 2024. After

22   that point, Apple anticipates propounding and responding to discovery targeted to the claims and

23   defenses that remain part of the case once the Court has ruled on Apple's pending motion to dismiss

24   and the pleadings are settled, and will seek the assistance of Magistrate Judge Westmore as needed.

25   • **<u>Proposed limitations or modifications of the discovery rules</u>:**

26     <u>Plaintiff's Position</u>: There will be some overlapping discovery in this case and the U.S. Dept

27   of Labor OALJ case governed by 5 U.S. Code § 554. Because of the potential for conflicts -

28   especially decisions related to privilege, confidentiality, and exclusion of evidence - coordination

- 4 -

between cases will be urgent and critical to ensuring consistency and progress. Plaintiff is currently appealing an arbitrary initial dismissal that was based on Apple's unilateral assertion that Superfund laws do not apply to Apple and which was contrary to all environmental whistleblower precedent. The ALJ also made statements about 3250 Scott Blvd and noted it was a "Decision on the Merits." The U.S. Dept. of Labor ARB is supposed to respond to petitions within 30 days.

Defendant's Position: Discovery should be limited as outlined above. With this exception, Defendant contends there should be no modifications of the discovery rules.

- **A brief report on whether the parties have considered entering into a stipulated e-discovery order:**

Plaintiff's Position: Plaintiff is receptive to the idea.

Defendant's Position: Defendant does not believe that it is necessary or appropriate here.

- **Proposed discovery plan pursuant to Fed. R. Civ. P. 26(f):**
  - o **(A) what changes should be made in the timing, form, or requirement for disclosures under Rule 26(a), including a statement of when initial disclosures were made or will be made;**

Plaintiff's Position: Plaintiff provided 35 pages of Initial Disclosures for all claims in July 2024, in compliance with Rule 26(a)(1), following the June 2024 meet / confer. Plaintiff requested details from Defendant on what they think is missing. Defendant has not completed its Initial Disclosures for any claims. Defendant needs to provide full initial disclosures by Sept. 16 2024.

Defendant's Position: Defendant made its initial GO 71 disclosures on December 18, 2023 and supplemented them on April 5 and May 15, 2024. Plaintiff has not fully complied with GO 71's initial disclosure requirements with respect to her employment claims. Defendant will complete its Rule 26 disclosures and exchange of high-level documents by September 16, 2024, to the extent that any non-employment claims remain, and expects Plaintiff will do the same.

  - o **(B) the subjects on which discovery may be needed, when discovery should be completed, and whether discovery should be conducted in phases or be limited to or focused on particular issues;**

Plaintiff's Position: Plaintiff is unable to take depositions due to financial restrictions and would like to compensate with an increased quantity of interrogatories. Plaintiff suggests Defendant should also be restricted from taking Depositions as a matter of fairness, and due to the harassment.

- 5 -

**Defendant's Position**: Apple outlined above its understanding of the Court's order regarding initial discovery and the appropriate scope of discovery thereafter. At this time, and particularly given that the pleadings are not yet settled, it is premature to set a discovery completion deadline.

> o **(C) any issues about disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced;**

**Plaintiff's Position**: There are already multiple issues related to discovery, including refusal to provide FRCP Initial Disclosures, reliance on boilerplate objections, refusal to provide privilege logs, claims of ACP in conversations where no attorney was present, and insistence on use of blanket protective orders after Defendant already tried to claim confidentiality of matters that are protected topics and matters of public concern (work conditions, public safety, labor disputes…).

**Defendant's Position**: Plaintiff has refused to agree to the entry of the protective order proposed by Defendant, which was based on the Northern District Model Protective Order.

> o **(D) any issues about claims of privilege or of protection as trial-preparation materials, including—if the parties agree on a procedure to assert these claims after production—whether to ask the court to include their agreement in an order under Federal Rule of Evidence 502;**

**Plaintiff's Position**: Concerns about Defendant's willingness to provide privilege logs.

**Defendant's Position**: None at this time.

> o **(E) what changes should be made in the limitations on discovery imposed under these rules or by local rule, and what other limitations should be imposed;**

**Plaintiff's Position**: Plaintiff requests scrutiny of any requests from Defendant for approval of easily abused tools and tactics, such as a blanket protective orders, or frequent vague requests to stay discovery. Plaintiff also requests Defendant be required to 'show their work' for any of these types of requests, providing a full, proper justification for each issue and request. Plaintiff requests high scrutiny of any requests from Defendant to this Court that appear to be an attempt to censor and silence her – especially about labor issues and public safety. (Plaintiff accepts all responsibility for her conduct and any sanctions if she does actually act improperly).

**Defendant's Position**: Discovery should proceed as outlined above.

> o **(F) any other orders that the court should issue under Rule 26(c) or under Rule 16(b) and (c).**

**Plaintiff's Position**: Plaintiff will seek guidance from Magistrate Judge Westmore as needed

- 6 -

JOINT CASE MANAGEMENT STATEMENT
CASE No. 23-CV-4597-EMC

1    around depositions, interrogatories, document production, privilege, expert witnesses, and

2    discovery disputes.

3         Defendant's Position: Defendant proposes no such orders at this time.

4    • **Identified discovery disputes:**

5         Plaintiff's Position: There are multiple disputes related to scope, process, confidentiality,

6    and general willingness to participate in discovery.

7         Defendant's Position: None at this time.

8    IX.    RELATED CASES

9         Plaintiff's Position: There is one pending agency adjudication within the U.S. Dept of Labor

10   OALJ in Boston, MA (*Ashley Gjovik v Apple Inc,* Case No. 2024-CER-00001). Coordination of

11   cases is required as there are overlapping claims and damages, and Defendant has taken actions to

12   initiate conflicts between and within the two cases. The ALJ dismissed the entire 42 U.S. Code §

13   9610 case on August 7 2024 for lack of subject matter jurisdiction based on unilateral statements

14   from the Defendant and contrary to all environmental whistleblower precedent at U.S. Dept. of

15   Labor. Plaintiff is filing a petition for review to Administrative Review Board by August 21 2024.

16   ARB appeals go to the Secretary, and US District Courts have exclusive jurisdiction over CERCLA

17   civil proceedings (§ 9613) thus the Secretary's decision is reviewed by a US District Court in the

18   area where the incident occurred, which would be this Court. Plaintiff would appreciate guidance

19   if a Notice of Pendency is appropriate for this type of adjudication and appellate jurisdiction.

20   Plaintiff also has multiple charges filed against Defendant with the US NLRB, and the US NLRB

21   has already found merit that there is substantial evidence the Defendant may have violated the

22   NLRA under two of her claims, however any litigation would not include Plaintiff as a party.

23        Defendant's Position: On August 26, 2021, Plaintiff filed a charge against Defendant before

24   the National Labor Relations Board alleging Defendant retaliated against her because she engaged

25   in protected concerted activity. No decision has been issued. On December 29, 2023, Plaintiff filed

26   another NLRB charge against Defendant alleging that Defendant, among other things, "threatened

27   [Plaintiff] in an attempt to coerce her into an lawful secrecy agreement," *i.e.,* a protective order

28   regarding discovery (modeled on the N.D. Cal. template). No decision has been issued.

On August 29, 2021 and November 2, 2021, Plaintiff filed whistleblower retaliation complaints with the U.S. Department of Labor (DOL) alleging that her suspension and termination amounted to retaliation in violation of the Sarbanes-Oxley Act (SOX), the Occupational Safety and Health Act (OSHA 11(c)), and the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA). With respect to her SOX claim, this Court dismissed it with prejudice on May 20, 2024. With respect to her CERCLA and OSHA 11(c) claims, DOL found no reasonable cause on December 8, 2023. On April 29, 2024, the Secretary of Labor concluded on administrative review that there was insufficient evidence to establish any violation of OSHA 11(c); this is a final DOL decision. On January 7, 2024, Plaintiff requested a hearing before the Office of Administrative Law Judges regarding her CERCLA claim; the ALJ dismissed that matter for failure to state a claim on August 7, 2024.

## X.     RELIEF

Plaintiff's Position: Plaintiff requests damages (compensatory, expectancy, consequential, punitive, nominal, restitution, tax offsets, interest, pro se attorney's fees, and legal costs), as well as injunctive and declaratory relief. Estimates for non-pecuniary, punitive, toxic, and other complex matters will be determined later in the lawsuit or by a jury. Employment-related damages are estimated at around $10M for combined back pay, front pay, loss of future earnings, costs, personal injury, and loss of benefits. A non-pecuniary injury multiplier of 4 x pecuniary is suggested, raising the total to $31M. An additional $2M is estimated for interest, tax offset, and attorney's fees. Toxic Tort compensatory damages are based on physical and mental injury, diminished value and lost use of chattel and real property interests, and expenses. A non-pecuniary injury multiplier of x5 is suggested (risk of disease, fear of cancer, emotional distress, diminution of quality of life, pain and suffering, and loss of enjoyment of life). A Jury will decide Punitive damages, and an estimate is truly unknown due to the severity and novelty of the harm Defendant caused to Plaintiff.

Defendant's Position: Defendant denies that Plaintiff is entitled to any recovery in this case.

## XI.     SETTLEMENT AND ADR

Plaintiff's Position: Based on Defendant's conduct thus far, Plaintiff is concerned that despite Defendant's statements, Defendant actually has no intention to settle. Plaintiff requests

Defendant's candor and consideration of ENE instead if Defendant is not interested in settling at this time or at all. Plaintiff is also currently evaluating her options to refuse to be subject to deposition by Apple's counsel under *Marsy's Law* or similar protections due to her severe PTSD, her role as a witness in open federal investigations, and defendant's ongoing abusive behavior towards the *pro se* Plaintiff.[1] Other common discovery methods should be tolerable. If Defendant continues to demand to depose Plaintiff prior to a Settlement Conf., Plaintiff will insist on ENE.

**Defendant's Position**: Defendant is willing to stipulate to a Settlement Conference with a Magistrate Judge concerning this action. Defendant's representative at that Settlement Conference will be informed regarding and able to discuss matters Plaintiff has pending against Defendant in other forums and under other statutes. To prepare for the Settlement Conference, Defendant will need to take Plaintiff's deposition and, depending on the substance of Plaintiff's forthcoming GO71 and FRCP 26 disclosures and the Court's ruling on Defendant's pending Motion to Dismiss, Defendant may need to serve an initial set of written discovery requests.

## XII.  OTHER REFERENCES

**Plaintiff's Position**: Plaintiff is grateful for the assignment of a Magistrate Judge.

**Defendant's Position**: Defendant does not believe that the case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

## XIII.  NARROWING OF ISSUES

**Plaintiff's Position**: Plaintiff believes that further narrowing of issues should occur through mechanisms such as discovery, stipulated facts, and summary adjudication. Plaintiff believes the pending 12(b)(6) motion is unnecessary and will waste the Plaintiff and Court's time and resources. However, due to the potential impact of the motion, Plaintiff filed a motion for leave to file a sur-reply and proposed sur-reply on August 18 2024 in order to ensure she can be heard.

**Defendant's Position**: On July 15, 2024, Defendant filed a motion to dismiss certain claims in the Fourth Amended Complaint. Defendant believes it is premature to expedite the presentation

---

[1] CALIFORNIA CONSTITUTION ART. I, § 28 (b) "*In order to preserve and protect a victim's rights to justice and due process, a victim shall be entitled to the following rights*: (4) *To prevent the disclosure of confidential information ...to the defendant...which could be used to... harass the victim,* (5) *To refuse an interview, deposition, or discovery request by the defendant, the defendant's attorney,..., and to set reasonable conditions on the conduct of any such interview to which the victim consents.*"

of evidence at trial or to request to bifurcate issues, claims, or defenses.

**XIV.   SCHEDULING**

Plaintiff's Position: Plaintiff suggests scheduling the trial around one year out with the Court's standard scheduling of dependent events prior. As an expert project manager, she feels strongly there should always be a project schedule, even if it might need to be adjusted later.

Defendant's Position: Defendant believes that it is premature to set a case schedule prior to a ruling on Defendant's pending motion to dismiss.

**XV.   TRIAL**

Plaintiff's Position: Plaintiff requests a Jury trial for issues of fact and certain issues of law. Duration of the Jury trial is unknown due to the complexity of claims, but Plaintiff expects at least one week will be needed. Additional time will also be needed for the expected partial Bench trial.

Defendant's Position: Defendant anticipates the parties would need five days for trial.

**XVI.   DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

Plaintiff's Position: Plaintiff has none, and encouraged Defendant to consult with the property owner of 3250 Scott Blvd and any relevant insurance companies.

Defendant's Position: Defendant filed the required certification. *See* Dkt. 11.

**XVII.   PROFESSIONAL CONDUCT**

Defendant's Position: Defendant's attorneys reviewed the Professional Conduct Guidelines.

**XVIII.   OTHER MATTERS**

Plaintiff's Position: Due to the complexity of the case and the current dynamic between parties, Plaintiff sees benefit in regular reoccurring Status Conferences and Updates with the Court.

Defendant's Position: None at this time.

Dated: August 20, 2024                         By: /s/ Ashley M. Gjovik

                                                              ASHLEY M. GJOVIK
                                                                     Plaintiff


Dated: August 20, 2024                         By: /s/ Jessica R. Perry

                                                              JESSICA R. PERRY
                                                    Attorneys for Defendant Apple Inc.

# Gjovik v. Apple

# Exhibit: Dkt 166

Plaintiff Ashley Gjovik ("Plaintiff") and Defendant Apple Inc. ("Defendant" or "Apple," and collectively with Plaintiff, the "Parties") hereby jointly submit this Joint Case Management Statement in advance of the February 11, 2025 Case Management Conference.

## I.    JURISDICTION AND SERVICE

This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and the Parties are diverse. Defendant has been served.

## II.    FACTS

Plaintiff's Position: The plaintiff, a former high-performing senior employee at Apple Inc., was subjected to severe and escalating retaliation after reporting serious legal violations within the company. These violations included unlawful employment practices, restrictions on employee rights through illegal confidentiality policies, and environmental violations, both at a secret semiconductor fabrication facility and within Apple's corporate offices. Rather than addressing these concerns, Apple engaged in a systematic campaign to discredit, intimidate, and ultimately terminate the plaintiff. The company leveraged its vast resources to isolate her, fabricate pretextual justifications for adverse actions, and deter her from pursuing legal remedies. The plaintiff's termination was not an isolated employment decision but the culmination of a deliberate and coordinated effort to suppress whistleblowing and protect the company's unlawful conduct from scrutiny.

Apple and its senior executives have already been the subject of multiple lawsuits and government enforcement actions for labor violations, corruption, and environmental misconduct. The company has faced legal scrutiny for concealing defects from consumers, engaging in anti-competitive practices, and retaliating against employees who report wrongdoing. In addition to the unlawful termination, the plaintiff was subjected to further retaliatory acts, including witness intimidation, denylisting, and efforts to interfere with regulatory investigations. The evidence will also show deeply troubling misconduct by Apple's leadership, including the use of coercion and invasive personal attacks to suppress dissent. The plaintiff's claims are not isolated allegations but part of a broader pattern of corporate behavior that has drawn the attention of courts and regulatory agencies alike. This case presents fundamental questions about corporate accountability and

1  whether a company of Apple's scale can continue to engage in such misconduct with impunity. A

2  jury's decision in this matter will determine whether Apple is held accountable for its actions or

3  allowed to continue a pattern of unlawful and retaliatory conduct without consequence.

4         **Defendant's Position**: Plaintiff worked for Defendant from February 2015 until Defendant

5  terminated her employment in September 2021 because she disclosed confidential product-related

6  information in breach of her confidentiality obligations and then refused to meaningfully participate

7  in the internal investigation regarding that disclosure. In January 2015, Plaintiff signed a

8  confidentiality agreement prohibiting Plaintiff from disclosing any confidential information

9  without Apple's consent. In July 2018, Plaintiff voluntarily agreed to participate in a confidential

10  user study of an internal and proprietary application (the "Application") and agreed to maintain

11  strict confidentiality. On August 28, 2021, Plaintiff publicly disclosed on Twitter (now known as

12  X) details about a proprietary study Defendant was conducting about a confidential Apple product

13  that Plaintiff had agreed to keep confidential. On August 30, 2021, Plaintiff tweeted photographs

14  and a video of herself created by the Application, thus disclosing Apple confidential information,

15  and linked to a story published in a technology blog, in which she disclosed her participation in the

16  Application study. Upon learning of her unauthorized disclosures, Defendant began an

17  investigation. On September 9, 2021, an Apple investigator requested to speak with Plaintiff.

18  Plaintiff refused to be interviewed. Defendant completed its investigation, concluded that Plaintiff

19  had violated her confidentiality agreements and Apple policy, and terminated her employment.

20  Apple had likewise terminated the employment of other employees found to have violated their

21  confidentiality obligations. In addition to her employment claims, Plaintiff asserts various torts

22  against Defendant primarily related to a separate facility at 3250 Scott Blvd., which are the subject

23  of Defendant's pending motion to dismiss. Defendant denies any wrongdoing.

24  **III.**    **LEGAL ISSUES**

25         **Plaintiff's Position**: Legal issues include causation, nexus, intent, negligence, pretext, fraud,

26  protected activities, fairness, and risk. There will be multiple "*Reasonable Person*" exercises

27  including foreseeability, expectation, severity, outrage, consent, offensiveness, endurance, and

28  interference. The "*Right to Know*" will be a recurring theme. This case also involves several novel

legal issues requiring policy arguments and creative advocacy from both parties related to privacy, surveillance, biometrics, expression, hazards, chemical exposure, consent in the employment context, and personal data collection for commercial research and development.

**Defendant's Position**: It is too early to determine the legal issues until after the pleadings have been determined, but they may include: whether Plaintiff engaged in protected activity under Cal. Labor Code §§ 98.6, 1102.5, and/or 6310 and/or *Tameny*, and, if so, whether the protected activity was a substantial motivating reason for Defendant's decision to terminate Plaintiff's employment; whether Plaintiff is entitled to any relief and if so, the type and/or amount;  and whether Plaintiff has adequately mitigated any damages she claims to have incurred.

## IV.   MOTIONS

**Plaintiff's Position**: Defendant has filed five Rule 12(b)(6) motions to dismiss, all of which Plaintiff has opposed. The latest motion to dismiss remains pending. Plaintiff also has a pending Motion to Disqualify Defendant's current defense counsel (Dkt No. 156) and Motion to Amend due to discovery of new evidence (Dkt. No. 155). Plaintiff filed three letters requesting judicial intervention into discovery disputes between the parties (Dkt. No. 162, 163, 164) and a request for a court conference to discuss and resolve the disputes, including compelling discovery and disclosures (Dkt. No. 165).

**Defendant's Position**: Defendant filed a motion to dismiss on January 7, 2025 regarding certain claims in the now-operative Fifth Amended Complaint. Defendant may file a motion for summary judgment under Rule 56 for resolution of any outstanding issues.

## V.   AMENDMENT OF PLEADINGS

**Plaintiff's Position**: Plaintiff's motion to amend is currently pending, which seeks to include claims related to sextortion, revenge porn, violations of the Hobbs Act, and the reintroduction of RICO and other critical, well-supported claims. (Dkt. No 155). This is complex litigation covering multiple legal subject areas, Plaintiff expects she will need to amend her complaint prior to trial when required to conform with evidence identified during discovery and/or as the issues continue to narrow and crystalize. The complaint should reflect the evidence.

**Defendant's Position**: Plaintiff filed a Fifth Amended Complaint on November 26, 2024;

- 3 -

Defendant filed a motion to dismiss on January 7, 2025. No further amendments should be allowed.

## VI.  EVIDENCE PRESERVATION

Plaintiff's Position: Plaintiff has concerns regarding Defendant's document retention practices and may need to seek a preservation order. Plaintiff is also very concerned Defendant has repeatedly stated that it has not engaged the property owner of the fab located at 3250 Scott Blvd regarding this litigation, and Plaintiff has similar concerns regarding Defendant's external counsel and contractors.

Defendant's Position: The Parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information and have met and conferred pursuant to Federal Rule of Civil Procedure 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action.

## VII.  DISCLOSURES

Plaintiff's Position: Plaintiff provided detailed Initial Disclosures to Defendant following their meet and confer, as required by Rule 26(a)(1). Plaintiff also provided a detailed personal injury-style settlement brochure during the settlement conference, with additional disclosures and exhibits. Plaintiff's concerns and additional updates are incorporated here from the motions filed to Judge Kandis A. Westmore at Dkt. No. 162, 163, 164, 165.

Defendant's Position: The Parties have fully and timely complied with the initial disclosure requirements of Fed. R. Civ. P. 26. Defendant has fully and timely complied with the initial disclosure requirements of General Order 71 ("GO 71"). Plaintiff has not fully complied with GO 71's requirements (specifically, she has not provided all documents under (a)-(e), (h), and (j)).

## VIII.  DISCOVERY

- **Discovery taken to date:**

Plaintiff's Position: *See* motions filed to Judge Kandis A. Westmore at Dkt. No. 162, 163, and 164, 165.

Defendant's Position: On December 3, 2024, Defendant served requests for production and interrogatories; responses were due January 2, 2025. Plaintiff has not served responses or produced documents in response.

- **Scope of anticipated discovery:**

  Plaintiff's Position: *See* motions filed to Judge Kandis A. Westmore at Dkt. No. 162, 163, and 164, 165.

  Defendant's Position: Defendant has produced 468 documents pursuant to GO 71 and the Court's October 1, 2024 order. It anticipates propounding and responding to discovery targeted to the claims and defenses that remain part of the case once the Court has ruled on Apple's pending motion to dismiss and the pleadings are settled, and will seek the assistance of Magistrate Judge Westmore as needed.

- **Proposed limitations or modifications of the discovery rules:**

  Plaintiff's Position: *See* motions filed to Judge Kandis A. Westmore at Dkt. No. 162, 163, and 164, 165.

  Defendant's Position: Discovery should be limited as outlined above. With this exception, Defendant contends there should be no modifications of the discovery rules.

- **A brief report on whether the parties have considered entering into a stipulated e-discovery order:**

  Plaintiff's Position: Plaintiff had repeatedly requested this but Defendant has refused.

  Defendant's Position: Defendant does not believe that it is necessary or appropriate here.

- **Proposed discovery plan pursuant to Fed. R. Civ. P. 26(f):**
  - **(A) what changes should be made in the timing, form, or requirement for disclosures under Rule 26(a), including a statement of when initial disclosures were made or will be made;**

  Plaintiff's Position: *See* motions filed to Judge Kandis A. Westmore at Dkt. No. 162, 163, and 164, 165.

  Defendant's Position: On September 16, 2024, the Parties fully and timely complied with the initial disclosure requirements of Fed. R. Civ. P. 26. Defendant made its initial GO 71 disclosures on December 18, 2023 and supplemented them on April 5, May 15, and September 16, 2024. Plaintiff has not fully complied with GO 71's initial disclosure requirements.
  - **(B) the subjects on which discovery may be needed, when discovery should be completed, and whether discovery should be conducted in phases or be limited to or focused on particular issues;**

1   **Plaintiff's Position:** *See* motions filed to Judge Kandis A. Westmore at Dkt. No. 162, 163,

2   and 164, 165.

3   Defendant's Position: Defendant outlined above its position as to the appropriate scope of

4   discovery. At this time, and particularly given that the pleadings are not yet settled, it is premature

5   to set a discovery completion deadline.

6   ○ **(C) any issues about disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be**

7   **produced;**

8   **Plaintiff's Position:** *See* motions filed to Judge Kandis A. Westmore at Dkt. No. 162, 163,

9   and 164, 165.

10   Defendant's Position: Plaintiff has refused to agree to the entry of the protective order

11   proposed by Defendant, which was based on the Northern District Model Protective Order.

12   ○ **(D) any issues about claims of privilege or of protection as trial-preparation materials, including—if the parties agree on a procedure to assert these claims**

13   **after production—whether to ask the court to include their agreement in an**

14   **order under Federal Rule of Evidence 502;**

15   **Plaintiff's Position:** *See* motions filed to Judge Kandis A. Westmore at Dkt. No. 162, 163,

16   and 164, 165.

17   Defendant's Position: None at this time.

18   ○ **(E) what changes should be made in the limitations on discovery imposed under these rules or by local rule, and what other limitations should be imposed;**

19   **Plaintiff's Position:** *See* motions filed to Judge Kandis A. Westmore at Dkt. No. 162, 163,

20   and 164, 165.

21   Defendant's Position: Discovery should proceed as outlined above.

22   ○ **(F) any other orders that the court should issue under Rule 26(c) or under Rule 16(b) and (c).**

23   **Plaintiff's Position:** *See* motions filed to Judge Kandis A. Westmore at Dkt. No. 162, 163,

24   and 164, 165.

25   Defendant's Position: Defendant proposes no such orders at this time.

26   • **Identified discovery disputes:**

27   **Plaintiff's Position:** *See* motions filed to Judge Kandis A. Westmore at Dkt. No. 162, 163,

28   and 164, 165.

- 6 -

1  **Defendant's Position**: Plaintiff has not fully complied with GO 71's initial disclosure

2  requirements. Plaintiff has not served responses to Apple's December 3, 2024 requests for

3  production and interrogatories, which were due on January 2, 2025, nor has Plaintiff produced any

4  documents in response to the requests for production.

5  **IX.    RELATED CASES**

6  **Plaintiff's Position:** Plaintiff has filed Notices of Pendency for related cases as they progress

7  (See Dkt. No. 100, 111, and 151). If Plaintiff's Motion to Amend is granted, she will also file

8  notices of pendency for the Levoff wire fraud and Moyer bribery of a public official cases. The

9  status of the current related cases is summarized below.[1]

| Agency/Court | Case Info. | Status | Dkt. No. |
|---|---|---|---|
| **Ninth Circuit Court of Appeals** | *Ashley Gjovik v. Apple Inc*, No. 24-6058, Ninth Circuit Court of Appeals. | Motion for Reconsideration under review since Oct. 25 2024 (Dkt. No. 125). | Dkt. 113, 114, 124, 125 |
| **U.S. NLRB** | *Apple Inc & Ashley Gjovik*, 32- CA-32-CA-282142 & 283161 (NLRA unfair labor practices) | Charge filed: Aug. 26 2021; Complaint filed Dec. 18 2024. ALJ Hearing: Aug. 4 2025. | Dkt. 111, 151 |
| **U.S. NLRB** | *Apple Inc & Ashley Gjovik*, 32-CA-284428 (NLRA unfair labor practices) | Charge filed: Oct. 12 2021. Complaint filed Sept. 27 2024. ALJ Hearing on Jan. 22 2025 cancelled due to settlement discussions. | Dkt. No. 151 |
| **U.S. NLRB** | *Apple Inc & Ashley Gjovik*, 32-CA-284441 (NLRA unfair labor practices) | Charge filed Oct. 12 2021; Decision of Merit in Jan. 2023; complaint to be issued: nlrb.gov/case/32-CA-284441 | Dkt. No. 151 |
| **U.S. Dept. of Labor** | *Ashley Gjovik v. Apple Inc*, OALJ Case No. 2024-CER00001 (The CERCLA: 42 U.S.C. § 9610) | Charged filed: Aug. 29 2021. Trial case docketed Dec. 19 2024 (de novo); Appeal filed to ARB on Aug. 21 2024. | Dkt. No. 100, 151 |
| **U.S. Dept. of Labor & U.S. EPA** | *Ashley Gjovik v. Apple Inc*, ARB Case No. 2024-0060 (The CERCLA; RCRA; CAA; & TSCA) | Appeal filed Aug. 21 2024; Briefing complete on Nov. 6 2024; Awaiting decision. U.S. EPA administration consulted because Apple's decision nullifies an EPA statute in the U.S.C. | Dkt. No. 100, 151 |
| **U.S. EPA, RCRA Enf. & Compliance Div.** | 3250 Scott Blvd., Satna Clara EPA ID CAR000278176. Insp. Dates: Aug. 17-18 2023, & Jan. 16 2024. | Enforcement actions underway for hundreds of combined violations of 40 CFR 262 §§ 262.A & 262.B (hazardous waste generation); 40 CFR Part 265 §§ 265.J, 265.BB, 265.CC (hazardous waste storage & air emission); and  40 CFR Part 270 § | Dot. No. 151 |

---

[1] Note: this table only reflects cases that could have possible res judicata and/or collateral estoppel concerns. The U.S. Dept. of Labor OSH Act investigation cited by Defendant was a discretionary matter, have no evidentiary hearing, and are not a formal or informal adjudication.

| | | 270.A (no permits). | |
|---|---|---|---|
| **Cal. Bay Area Air Dist., cal. Air Resources board, Enforcement.** | 3250 Scott Blvd., Santa Clara; CARB Facility ID: 22839. Complaint No. CPM448152. Insp. Dates: Aug. 29 2024 & Sept. 12 2024. | Enforcement actions underway for violations No. 64215: Reg. 2, Rule 1, §§ 301 & 302 (no permits) - No. 64216: Reg. 2, Rule 1, §§ 301 & 302 (no permits) - No. 64218 & 64219: Reg. 9, Rule 7, § 307.1 (exceeding nitrogen oxide exhaust limits). | Dkt. No. 151 |

<u>Defendant's Position</u>: On August 26, 2021, Plaintiff filed a charge against Defendant before the National Labor Relations Board alleging Defendant retaliated against her because she engaged in protected concerted activity. On December 18, 2024, the NLRB issued a complaint pertaining to the August 2021 charge, and it is scheduled for hearing starting on August 4, 2025.

On December 29, 2023, Plaintiff filed another NLRB charge against Defendant alleging that Defendant, among other things, "threatened [Plaintiff] in an attempt to coerce her into an unlawful secrecy agreement," *i.e.,* a protective order regarding discovery (modeled on the N.D. Cal. template). No decision has been issued.

On August 29, 2021 and November 2, 2021, Plaintiff filed whistleblower retaliation complaints with the U.S. Department of Labor (DOL) alleging that her suspension and termination amounted to retaliation in violation of the Sarbanes-Oxley Act (SOX), the Occupational Safety and Health Act (OSHA 11(c)), and the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA). With respect to her SOX claim, this Court dismissed it with prejudice on May 20, 2024. With respect to her CERCLA and OSHA 11(c) claims, DOL found no reasonable cause on December 8, 2023. On April 29, 2024, the Secretary of Labor concluded on administrative review that there was insufficient evidence to establish any violation of OSHA 11(c); this is a final DOL decision. On January 7, 2024, Plaintiff requested a hearing before the Office of Administrative Law Judges regarding her CERCLA claim; the ALJ dismissed that matter for failure to state a claim on August 7, 2024. On August 21, 2024, Plaintiff filed a petition for review with the Administrative Review Board; the petition remains pending.

## X.    RELIEF

<u>Plaintiff's Position</u>: Plaintiff requests damages (compensatory, expectancy, consequential, punitive, nominal, restitution, tax offsets, interest, pro se attorney's fees, and legal costs), as well as

injunctive and declaratory relief. Estimates for non-pecuniary, punitive, toxic, and other complex matters will be determined later in the lawsuit or by a jury. Employment-related damages are estimated at around $10M for combined back pay, front pay, loss of future earnings, costs, personal injury, and loss of benefits. A non-pecuniary injury multiplier of 4 x pecuniary is suggested, raising the total to $31M. An additional $2M is estimated for interest, tax offset, and attorney's fees. Toxic Tort compensatory damages are based on physical and mental injury, diminished value and lost use of chattel and real property interests, and expenses. A non-pecuniary injury multiplier of x5 is suggested (risk of disease, fear of cancer, emotional distress, diminution of quality of life, pain and suffering, and loss of enjoyment of life). A Jury will decide Punitive damages, and an estimate is truly unknown due to the severity and novelty of the harm Defendant caused to Plaintiff.

Defendant's Position: Defendant denies that Plaintiff is entitled to any recovery in this case.

## XI.    SETTLEMENT AND ADR

Plaintiff's Position: As the Plaintiff warned, a Settlement Conference was not productive and was used by Defendant as a stalling tactic. If there is further ADR, Plaintiff still requests ENE instead of a Settlement Conference. The defendant is trying to win this case through procedural misconduct and suppression of evidence. If Defendant is forced prove their defenses with actual evidence, then the Defendant would at least have to meaningfully participate in the process.

Defendant's Position: On January 13, 2025, the Parties participated in a settlement conference before Magistrate Judge Alex G. Tse. The case did not settle.

## XII.    OTHER REFERENCES

Plaintiff's Position: Plaintiff expects to require the court's assistance in coordinating the complex litigation once either party appeal agency adjudicatory decisions to the U.S. Courts, creating concurrent federal litigation with overlapping and related claims and issues. Defendant's counsel (at least four firms thus far) have refused to engage in creating a complex litigation plan.

Defendant's Position: Defendant does not seek any further references at this time.

## XIII.    NARROWING OF ISSUES

Plaintiff's Position: Plaintiff believes that further narrowing of issues should occur through mechanisms such as discovery, stipulated facts, and summary adjudication. Plaintiff believes the

pending 12(b)(6) motion is unnecessary and will waste the Plaintiff and Court's time and resources.

Defendant's Position: On January 7, 2025, Defendant filed a motion to dismiss certain claims in the Fifth Amended Complaint. Defendant believes it is premature to expedite the presentation of evidence at trial or to request to bifurcate issues, claims, or defenses.

## XIV.  SCHEDULING

Plaintiff's Position: Plaintiff suggests scheduling the trial around one year out with the Court's standard scheduling of dependent events prior. As an expert project manager, she feels strongly there should always be a project schedule, even if it might need to be adjusted later.

Defendant's Position: Defendant believes that it is premature to set a case schedule prior to a ruling on Defendant's pending motion to dismiss.

## XV.  TRIAL

Plaintiff's Position: Plaintiff requests a Jury trial for issues of fact and certain issues of law. Duration of the Jury trial is unknown due to the complexity of claim and Defendant's refusal to participate in discovery.

Defendant's Position: Defendant anticipates the parties would need five days for trial.

## XVI.  DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

Plaintiff's Position: Plaintiff has none and encouraged Defendant to consult with the property owner of 3250 Scott Blvd and any relevant insurance companies.

Defendant's Position: Defendant filed the required certification. *See* Dkt. 11.

## XVII.  PROFESSIONAL CONDUCT

Defendant's Position: Defendant's attorneys reviewed the Professional Conduct Guidelines.

## XVIII. OTHER MATTERS

Plaintiff's Position: Due to the complexity of the case and the current dynamic between parties, Plaintiff sees benefit in regular reoccurring Status Conferences and Updates with the Court.

Defendant's Position: None at this time.

///
///
///
///

- 10 -

JOINT CASE MANAGEMENT STATEMENT
CASE NO. 23-CV-4597-EMC

# Gjovik v. Apple

# Exhibit: Transcript
# Dkt. 88

Pages 1 - 22

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Edward M. Chen, Judge

```
ASHLEY GJOVIK,                )
                              )
            Plaintiff,        )
                              )
   VS.                        )      NO. 23-CV-04597-EMC
                              )
APPLE, INC.,                  )
                              )
            Defendant.        )
_____)
```

San Francisco, California
Tuesday, July 16, 2024

<u>TRANSCRIPT OF REMOTE ZOOM VIDEOCONFERENCE PROCEEDINGS</u>

<u>APPEARANCES:</u>

For Plaintiff:
                ASHLEY M. GJOVIK, PRO SE
                2108 N Street, Suite 4553
                Sacramento, CA 95816

For Defendant:
                ORRICK, HERRINGTON & SUTCLIFFE LLP
                405 Howard Street, 7th Floor
                San Francisco, CA 94105
        BY:  KATHRYN G. MANTOAN, ATTORNEY AT LAW

                ORRICK, HERRINGTON & SUTCLIFFE LLP
                1000 Marsh Road
                Menlo Park, CA 94025
        BY:  MELINDA S. RIECHERT, ATTORNEY AT LAW

REPORTED REMOTELY BY:  Kendra A. Steppler, RPR, CRR
                     Official United States Reporter

(37 of 57), Page 37 of 57    Case: 25-2028, 05/20/2025, DktEntry: 27.7, Page 37 of 57
Case 3:23-cv-04597-EMC    Document 88    Filed 08/05/24    Page 2 of 22

2

```
 1   Tuesday - July 16, 2024                          1:30 p.m.

 2                     P R O C E E D I N G S

 3                        ---o0o---

 4          THE COURTROOM DEPUTY:  These proceedings are being

 5   recorded by this court.  Any other recording of this

 6   proceeding, either by audio, video, including screenshots or

 7   any other copying of the hearing, is strictly prohibited.

 8       This Court is now in session, the Honorable Edward M. Chen

 9   presiding.

10       Court is calling the case Gjovik v. Apple, Inc., Case

11   Number 23-4597.

12       Please state your appearance for the record, beginning

13   with the plaintiff.

14          MS. GJOVIK:  Hi, I'm Ashley Gjovik.  I'm the

15   plaintiff.

16          THE COURT:  All right.  Good afternoon, Ms. Gjovik.

17          MS. GJOVIK:  Good afternoon.

18          MS. RIECHERT:  Melinda Riechert appearing for the

19   defendant, Apple.

20          THE COURT:  All right.  Good afternoon, Ms. Reichert.

21          MS. MANTOAN:  And Katie Mantoan, also from Orrick,

22   also appearing for Apple.

23          THE COURT:  All right.

24          MS. MANTOAN:  Thank you.

25          THE COURT:  Thank you, Ms. Mantoan.
```

```
 1          I understand that defendants have just filed, maybe

 2    yesterday, a motion to dismiss the most recent complaint; is

 3    that correct?

 4          MS. RIECHERT:  That's correct, Your Honor.

 5          THE COURT:  And does it seek dismissal -- I haven't

 6    had a chance to really look at it -- does it seek dismissal of

 7    some or all claims?

 8          MS. RIECHERT:  Some, Your Honor, not all.

 9          THE COURT:  Okay.

10          MS. RIECHERT:  It keeps the employment claims in,

11    essentially.

12          THE COURT:  Employment claims.  Okay.  So -- and

13    what's -- so far -- as I understand it, what's been produced so

14    far are things primarily along the lines of General Order 71 on

15    the employment side.  Is that what's -- maybe if someone can

16    bring me up to date just roughly --

17          MS. GJOVIK:  Yeah.

18          THE COURT:  -- what's been produced so far.

19          MS. GJOVIK:  I didn't believe that General Order 71

20    applied, because the website for the court says it would be

21    added to the docket.  And I found other cases where it was

22    specifically noted in the docket and said if it's not noted, it

23    doesn't apply.

24          I was also really worried that if we did the General

25    Order 71, it could interfere with the nonemployment claims.
```

```
 1    That we wouldn't have the normal procedure with the -- all the
 2    claims in the case.
 3         THE COURT:  Well, let me ask the defendants, then,
 4    what's your view -- we have sort of concurrent sets of claims.
 5    Some are employment related that might fall under, in a
 6    traditional situation, General Order 71.  But then there are
 7    environmental and other claims, as well.
 8         What's your vision of how 71 and the rest of discovery --
 9    putting aside the question about the stay -- but once
10    discovery -- if there are employment claims remaining and if
11    there are, for lack of a better word, environmental claims,
12    should -- should General Order 71 apply alongside of normal
13    discovery, or how do you -- how does the defendant see it?
14         MS. RIECHERT:  Yeah.  We believe that General Order 71
15    applies.  If there are employment claims, there are employment
16    claims, and, therefore, we believe General Order 71 applies.
17    We complied with General Order 71 with respect to the
18    employment claims.  The nonemployment claims are the ones that
19    are subject to the motion to dismiss.
20         THE COURT:  Okay.
21         MS. GJOVIK:  May -- may I --
22         THE COURT:  Yeah.
23         MS. GJOVIK:  Thank you, Your Honor.
24         I just want to say, if General Order 71 was to apply,
25    whether it actually did or we just decide to apply it, I would
```

(40 of 57), Page 40 of 57    Case: 25-2028, 05/20/2025, DktEntry: 27.7, Page 40 of 57
Case 3:23-cv-04597-EMC    Document 88    Filed 08/05/24    Page 5 of 22

5

```
 1  say that the defendant has not completed all the disclosures
 2  listed on that page.  There's a lot of stuff I haven't received
 3  yet.  So whether or not it applies, I think there's still more
 4  to do --
 5          THE COURT:  Okay.
 6          MS. GJOVIK:  -- even under that umbrella.
 7          THE COURT:  Okay.  Let me ask about the defendant's
 8  position with respect to the stay.  If -- the motion to dismiss
 9  is directed, you say, at the nonemployment-related claims; is
10  that correct, Ms. Riechert?
11          MS. RIECHERT:  That's correct, largely.
12          THE COURT:  Is there -- there's -- so there's no
13  reason to halt the GO 71 process, at least in these early
14  stages; is there?
15          MS. RIECHERT:  There is none.  And that's why we
16  complied with it.
17          THE COURT:  Okay.  And so the kind of discovery that
18  you think should be delayed because of the pendency -- what are
19  you anticipating that that would look like?  Or what kinds of
20  things that -- would be coming -- you anticipate coming your
21  way -- that you would like to defer until the ruling on the
22  pleadings?
23          MS. RIECHERT:  Anything that's not related to the
24  employment claims that are not the subject to the motion to
25  dismiss.  We don't see there's any benefit to doing discovery
```

 1    on a claim that we believe should be dismissed.

 2             THE COURT:  Well --

 3             MS. RIECHERT:  We'd like you to rule on the motion to

 4    dismiss, and then we can do the discovery.

 5             THE COURT:  All right.  Well, let me ask you -- I

 6    mean, it is -- I hear this from defendants often, that we'd

 7    like to defer discovery until the pleadings are settled.  And

 8    my usual response is, well, that's not the typical way it's

 9    done, unless there's something pretty extraordinary, like

10    there's an obvious statute of limitations problem or a standing

11    problem.

12         What I typically do is say, well, let's -- let's keep --

13    take into account that there is a pending motion.  But

14    perhaps -- that there can be the commencement of some

15    high-level discovery that's not cost-prohibitive but at least

16    sort of gets the balling rolling, whether it's some basic, you

17    know, fundamental document productions that are not extremely

18    voluminous or -- you know -- I don't know.  But, I mean, it

19    wouldn't be depositions and that kind of thing, at this point,

20    but kind of just to start that process.

21         And, you know, the discussions -- if this is one of those

22    cases where there's a lot of digital documents and searching --

23    you know -- the usual discussion about what the scope of the

24    search is going to be, what documents are retained, how many

25    custodians, et cetera -- I don't see why those kinds of

1    early -- the kinds of things you'd do in the first 60 days, or

2    so, to kind of, you know, lay the groundwork without getting

3    into deep, extensive discovery, which will come if those claims

4    survive.

5        So my inclination is -- I'll call it sort of a staging

6    process, not a complete halt.  On the other hand, the door's

7    not wide open.  But at least get some of the preliminaries

8    done, the groundwork, maybe some basic requests.  I mean, there

9    is the early disclosures.  I don't know if -- you know -- I

10   mean, the Rule 26 disclosures probably should proceed.

11           MS. RIECHERT:  We've done those, as well, Your Honor.

12           THE COURT:  Okay.

13           MS. GJOVIK:  Only for employment though.  They did not

14   do it for any of the other claims.

15           THE COURT:  All right.  Well --

16           MS. RIECHERT:  So -- so we think that the -- between

17   the GO 71 disclosures -- we also have the companion Department

18   of Labor case, and we're going through discovery on that case,

19   as well.  So we just -- we're fine with doing discovery on the

20   employment cases.  We believe that -- on the employment

21   claims -- we believe we're doing that -- have done that.  It's

22   the nonemployment claims that we think should be dismissed,

23   that we don't want to open discovery, because that would be a

24   whole additional area of discovery that we don't think is

25   necessary at this stage.

1      THE COURT:  All right.

2      MS. RIECHERT:  The motion will be ruled on I would

3  think in a month or so.

4      THE COURT:  Well --

5      MS. GJOVIK:  Your Honor, I was hoping to get your --

6  sorry, go ahead.

7      THE COURT:  Go ahead.  Go ahead.

8      MS. GJOVIK:  I was hoping to get your guidance today,

9  because I'm very confused by the motion Apple filed.  And I'm

10 new here.  This is my first lawsuit.  But it looks like they're

11 rechallenging some of the decisions you already made under

12 this --

13     THE COURT:  Oh, well, I haven't looked at it, so I

14 can't --

15     MS. GJOVIK:  Okay.

16     THE COURT:  I'm not in a position to give you

17 guidance.  I mean, if you feel that there's some parts of that

18 that are improper for some reason, you can -- that can be part

19 of your response.  But, frankly, I haven't -- I haven't looked

20 at it.  It just got filed yesterday.

21     MS. GJOVIK:  Understood.

22     THE COURT:  And normally --

23     MS. GJOVIK:  My thought, though, is they're

24 challenging ultrahazardous under the exact same theory that

25 they did last time that you already approved to go forward.

```
 1   And then they had waived nuisance, because they didn't
 2   challenge nuisance, but now they're challenging it.
 3        So I agree with your staging, and that's probably
 4   practically right too, but I also am kind of worried about
 5   halting everything else if it seems unlikely, procedurally,
 6   that they would even be considered.
 7             THE COURT:  Well, I'm not going to weigh in, because I
 8   haven't looked at it on the potential merits.  But my usual
 9   rule -- which I will apply here because I think there's a low
10   cost -- and that is I do want to start the wheels -- the
11   gears -- turning on the nonemployment stuff.  I'd like you to
12   meet and confer to talk about --
13             MS. RIECHERT:  On the employment stuff?
14             THE COURT:  On the nonemployment stuff.  The
15   employment stuff will be covered by General Order 71 --
16             MS. RIECHERT:  Okay.
17             THE COURT:  -- in the early disclosures.  I think
18   there should be the early disclosures on the nonemployment
19   stuff.  And I'd like you to meet and confer to talk about, you
20   know, sort of a -- what discovery -- high-level discovery --
21   might look like over the next, let's say, 60 days.  Then maybe
22   a handful of key documents that could be exchanged or that
23   could be sought.  Information about document retention, if
24   that's an issue -- what's available and what -- you know --
25   what the lay of the land is in terms of access to
```

1    documentation.

2        So I think a fair amount can be accomplished without

3    getting deep into discovery in the next 60 days while I have a

4    chance to look at the motion and then hopefully rule on it

5    quickly.  And then we can decide.  If I decide to dismiss all

6    those claims, then there wouldn't be a whole lot of time

7    invested in it.  A little bit.  But at least it opens the door

8    then.  If there's some claims that survive, we'd be set up to

9    go to the next stage.  So I'd like you to meet and confer

10   about -- I call it "Stage 1."

11          MS. RIECHERT:  Your Honor, if I might speak briefly on

12   that subject --

13          THE COURT:  Yeah.

14          MS. RIECHERT:  -- with respect to the meet-and-confer.

15   We did meet-and-confer with the plaintiff with respect to the

16   motion to dismiss.  The plaintiff wanted to record that call.

17   We said that we did not.  I declined to allow her to record the

18   call, and she recorded the call anyway.  And so I would like

19   for us not to have to meet-and-confer.  We believe that the

20   recording was not permitted by California law.  And I don't

21   think we should be required to meet-and-confer and have calls

22   recorded against my consent and in violation of California law.

23          THE COURT:  Okay.

24          MS. GJOVIK:  Your Honor, the defendant is

25   intentionally misrepresenting what that was.  That was me

1  gathering evidence for a pending NLRB proceeding where these

2  lawyers were named in December, and it was further evidence of

3  that to give strictly to NLRB as part of their investigation as

4  well as a new charge.  I explained this.

5      And the recent *Starbucks* NLRB decision last year made very

6  clear that the *Garmon* preemption applies to those two-way

7  consent laws if you're gathering evidence for NLRB.  So I'm

8  kind of distressed they continue to bring it up with this

9  framing, which sounds like I'm -- have misconduct, but I'm

10  actually trying to help the government investigate.

11      I'm also kind of concerned because, even before that

12  recording, Apple repeatedly refused -- they didn't want to meet

13  and confer.  The last time we talked about meet and conferring,

14  they demanded there be no witnesses or record.  But they've

15  already used that meeting we had -- the one without a court

16  reporter or anything -- and I feel like misrepresented our

17  conversation in my Department of Labor case.  And I filed a

18  complaint about that.

19      So I -- I would be happy to meet with Apple and talk.  I

20  do prefer to have a record based on, I mean, what's happening

21  in this lawsuit.  But that's also part of my lawsuit from three

22  years ago --

23          THE COURT:  All right.  Well, there's --

24          MS. GJOVIK:  -- is this kind of stuff.

25          THE COURT:  There are separate issues here.  Whatever

1    you do with respect to MLRBs is a separate question.  I'm

2    talking about meeting and conferring to see if you can come to

3    an agreement.  There's nothing binding coming out of that until

4    there's an agreement.  So there's no need to record that.

5        And I can't order and I won't order, at this juncture,

6    recording of an informal meet-and-confer just to see if you can

7    agree on a discovery plan for the next, let's say, 60 days or

8    90 days.  It's a very narrow scope.  It's not intended for

9    anybody to make admissions.  It's intended to say here's what

10    we can do, et cetera, et cetera.

11        Now, if it gets to a point where the parties continue to

12    have differing versions of, well, you agree to do X, and I

13    agree to do Y; no, you didn't agree to do X, et cetera, et

14    cetera, you know, then I will consider, you know, other --

15    other things.

16        Now, one of the things I am considering and I will do --

17    I'm also going to appoint a magistrate judge to assist with

18    discovery.  And if there's a problem with the meet-and-confer,

19    there's somebody you can go to very quickly if -- that can

20    manage this discovery.  So I'm going to assign that.  It will

21    go to a randomly assigned magistrate judge.  And you'll get

22    notice of that.

23        MS. GJOVIK:  Your Honor --

24        THE COURT:  But that magistrate judge will act under

25    my directive.  And that is for the parties to meet-and-confer,

1   figure out Phase 1 -- or Stage 1 -- of the nonemployment.  That

2   the GO 71 will apply concurrently to the employment so that

3   we're not at a total standstill.  But discovery's got to

4   proceed sort of phased.  Because if I end up dismissing all the

5   nonemployment cases, then there won't be any more discovery.

6   So we will address that.

7        So I will give some overall directive with respect to

8   staging.  But in terms of working out the details, if there's

9   dispute over what the scope should be for Phase 1, I want the

10  magistrate judge to help you all resolve that.  So --

11        MS. RIECHERT:  Can we have an agreement with -- from

12  Your Honor that she will not record any phone calls that we

13  have going forward?

14        MS. GJOVIK:  I gathered evidence for the federal

15  government for an ongoing --

16        THE COURT:  Okay.

17        MS. GJOVIK:  -- government investigation.

18        THE COURT:  What I'm going to order is that, with

19  respect to this case, any meet-and-confer, whether it's by

20  phone or live, will not be recorded unless I order or the

21  magistrate judge orders otherwise.

22        I don't have jurisdiction over whatever NLRBs.  If there's

23  a call with respect to some other proceeding, I don't have

24  jurisdiction over that, so I can't say "yes" or "no" on that

25  front.  So your conversations should be clear that if you're

 1   talking about this case before me, that won't get recorded.

 2   Now, if you want to have another conversation about NLRB

 3   evidence gathering, that's between you all and the NLRB, not --

 4   I'm not intervening there.

 5          MS. GJOVIK:  Understood, Your Honor.  I am concerned

 6   though -- I mean, this is four years running -- about

 7   misrepresentations of communications when they're not written.

 8   This has been an ongoing issue with the defendant.  And I even

 9   asked if I can bring a witness just to sit with me, so if

10   someone had to testify to what happened, there could be someone

11   that's not just me.  And they said "no," expressly.  If

12   recordings are completely forbidden, can I get approval to have

13   a witness with me?

14          THE COURT:  I'm going to allow the magistrate judge to

15   determine what is the best process for you all to

16   meet-and-confer, whether you meet and confer in a physical

17   place, maybe with a magistrate judge, or, you know, you can

18   talk to the magistrate judge about the disputes you've had and

19   whether it makes any sense or not, at this point, until further

20   developments.

21       So let me ask about ADR.  Defendant indicates that there's

22   been a meet-and-confer, but -- and I see that plaintiff's

23   preference -- what are your thoughts about mediation or some

24   form of ADR?

25          MS. RIECHERT:  We're willing to consider it at some

1    point, Your Honor; we just think it's premature right now.

2         THE COURT:  All right.  Would that "some point" likely

3    be, for instance, after the pleadings are set?

4         MS. RIECHERT:  Potentially.  And I -- maybe some

5    deposition -- the deposition of the plaintiff.  I'm not sure

6    yet.  Usually I like to take the deposition of the plaintiff to

7    be able to provide a full case assessment to my client.

8         THE COURT:  All right.

9         MS. RIECHERT:  And then we can talk about --

10        THE COURT:  And that's one of the things I also want

11   you to meet-and-confer about.  Because, normally, I also phase

12   discovery in terms of trying to -- with an eye towards ADR.

13   That is, there has to be a certain amount of exchange of

14   information to have the parties intelligently talk about their

15   settlement position.  And it may be sometimes that depositions

16   are required, sometimes not, if it's a document-heavy case.

17   But if it's one of those cases where a deposition is required,

18   sometimes I'll allow each side to take a deposition, maybe two.

19        But I'd like you to meet-and-confer to talk about,

20   number one, which form of ADR, whether you want mediation,

21   Court-sponsored, private mediation, settlement conference

22   before another magistrate -- a different magistrate judge than

23   the discovery judge -- and then what kind of discovery do you

24   need in order to prepare for that ADR process.  I'd like for

25   you to discuss that, also, so that when we come back together

1    next time, we have a plan.  So that will also be included in

2    the meet-and-confer.

3             MS. GJOVIK:  Your Honor, may I ask a question?

4             THE COURT:  Yeah.

5             MS. GJOVIK:  Yeah.  So the General Order 71 -- I

6    assume you're referring to that as kind of the general, like,

7    employment whistleblower case portfolio.  The scope is really

8    prescribed on it.  And there is stuff that I would want to

9    request beyond just what's on that paper and some stuff I don't

10   think would apply.  Are you saying more like start discovery

11   generally on the employee --

12            THE COURT:  Yeah.  I mean, the way -- the way General

13   Order 71 works, it's like an initial phase.  I mean, there's

14   some things that should be produced in every case, whether it's

15   the employment file, whether it's -- you know -- et cetera, et

16   cetera.  That's not to say that's the only discovery you get,

17   because -- but it's meant to get that early exchange out often

18   to facilitate, for instance, a mediation or to guide future

19   discovery.

20        So it does not -- I don't think -- and I've never used

21   General Order 71 to say, well, that's -- that's the lid.  You

22   still have rights under the Federal Rules of Civil Procedure.

23   There's a presumptive limit on the number of depositions, the

24   number of interrogatories, et cetera, et cetera.  But this is

25   intended to get the basic information out without having to go

1    through the formal process of formally requesting the

2    employment file or the wage records or that kind of thing.

3         MS. GJOVIK:  So, for now, do you want us to stop at

4    the scope of General Order 71?

5         THE COURT:  I think -- since we're only talking about

6    60 days, I think whatever is to be exchanged under General

7    Order 71 plus the early disclosures under Rule 26 -- that

8    should give you a pretty good start.  And then let's revisit it

9    once we hear the motion to dismiss, and we'll get a better idea

10   where this is at.

11        So you've noticed the date -- what date have you noticed,

12   Ms. Riechert, for the hearing --

13        MS. RIECHERT:  I think it's the 22nd of August.

14        THE COURT:  Okay.  Well, then I'll double that up as a

15   further status conference, as well, so we can talk about some

16   of these things, including ADR, further discovery, et cetera,

17   et cetera.  Hopefully, at that point, I can give you a pretty

18   good idea where I see that motion to dismiss.  If I don't rule

19   from the bench, you'll certainly get a flavor for where I think

20   it's going and what may be left.  So we'll double that up as a

21   hearing on the motion as well as a status conference.

22        Meanwhile, I will appoint a magistrate judge to assist you

23   with any meet-and-confer disputes, or discovery disputes, scope

24   questions.  And then we'll talk about ADR.  I'd like you to

25   think about whether you -- what form of ADR would be useful.

```
 1          Let me ask -- I do have a question about the relationship

 2   between the various administrative actions here that are going

 3   on.  There's --

 4          MS. GJOVIK:  Department of Labor and NLRB.

 5          THE COURT:  And NLRB.  What is -- what are the

 6   parties' views about the interrelationship and the effect of

 7   one versus -- on the other?  Is this Court -- will the NLRB

 8   proceeding, for instance, or Department of Labor -- will that

 9   affect --

10          MS. GJOVIK:  Yes.

11          THE COURT:   -- the scope of this case?

12          MS. GJOVIK:  And vice versa.  I'm expecting claim

13   preclusion issues, at least probably through NLRB, even though

14   I wouldn't be a party.  Department of Labor is going to be some

15   of the exact same questions we're asking in this case.  So my

16   plan was to figure out which one can go first and -- which one

17   I'd prefer -- but I wouldn't do both, because, of course, you

18   don't want to do it twice.

19          I was also -- I've mentioned in the memo -- hoping if

20   there's some way we can do some kind of coordination with the

21   ALJ on Department of Labor since that's a concurrent hearing.

22   But there's been a lot of confusion about how these cases

23   interact.  Like, defendant introduced one of my civil

24   complaints as -- to the Department of Labor judge and asked him

25   to read that in as part of their case.  It's just been weird.
```

1    So if there's a notice of pendency I'm supposed to file or some

2    kind of request that there can be some kind of coordination,

3    I'd like to do that.

4         THE COURT:  All right.

5      Ms. Riechert, your views about the interrelationship and

6    whether there's something we should do to take into account

7    these administrator proceedings?

8         MS. RIECHERT:  I believe we filed a notice of pendency

9    or we indicated in our case management conference statement

10   that there were with these related proceedings.  The Department

11   of Labor case is going to trial next March.  And it will

12   involve the same claims -- many of the same claims -- that we

13   have here.  We do have a motion to dismiss in that case.  But

14   if the motion to dismiss is not granted in full, then there is

15   a hearing set for next March.

16        THE COURT:  And that will result in some adjudication

17   after administrative hearing and evidentiary hearing?

18        MS. RIECHERT:  That's correct, Your Honor.

19        MS. GJOVIK:  Notice and hearing and opportunity to --

20   the formal Administrative Procedure Act hearing.

21        THE COURT:  And so --

22        MS. RIECHERT:  And so we believe that it would be a

23   determination of whether the plaintiff, for example, was fired

24   for the reasons Apple stated or for the reasons the plaintiff

25   stated.

1          MS. GJOVIK:  Which is --

2          MS. RIECHERT:  But, again, we do have a motion to

3    dismiss pending in that case too.

4          MS. GJOVIK:  Which is why I'm very concerned about the

5    lack of coordination.  Because these cases could impact each

6    other so much on some very specific issues.  And, so far, it's

7    mostly just been me trying to coordinate from, like, the

8    background.  And I don't think it's --

9          THE COURT:  Well, when you say "coordinate," what do

10   you have in mind?

11         MS. GJOVIK:  So I don't know how this works either.  I

12   was reading the Conflicts Litigation Guide, and it sounds like,

13   depending on -- when you have multi-jurisdiction cases, it's

14   kind of customized for each situation.  And sometimes there is

15   help from usually the federal court of kind of getting the

16   ALJ -- I don't know if you guys talk to each other -- but kind

17   of aligning decisions and making sure when it's a decision like

18   exclude evidence or something that could very much impact how

19   the trial would go in the other case -- that both judges talk

20   about it before they'd make that decision.

21      Because Apple's -- in their motion to dismiss in

22   opposition to my motion amend in the Department of Labor case

23   are trying to exclude things already that would also then be

24   excluded in this case.

25         THE COURT:  Well, I don't -- I'm not familiar with all

1    the rules there.  So I don't know.  Their rules of evidence may

2    be different.  Their rules of procedure may be different.

3         Ms. Riechert, do you have any comments on coordination, or

4    not, or what this Court should do in light of these other

5    pending administrative proceedings?

6         MS. RIECHERT:  No.  I don't -- I don't think that

7    there's any way to coordinate the two.  They should go forth in

8    parallel.

9         THE COURT:  Yeah.  I don't -- sometimes we coordinate

10   with state courts that have parallel claims.  Sometimes -- you

11   know -- or with another federal court.  But with respect to an

12   agency, I'm loath to sort of interfere with whatever an agency

13   is doing.  And I don't know what might happen in terms of any

14   claim preclusion or not.  I guess we'll just have to cross that

15   bridge when we get there.

16        MS. GJOVIK:  I didn't think of separation of powers.

17   You're right.  You probably can't go to the agency.

18        THE COURT:  Yeah.

19        MS. GJOVIK:  Okay.  That makes sense.

20        THE COURT:  All right.  So -- well, we'll keep those

21   in mind.  And we'll see what happens in that regard.  But I do

22   have those in mind.  And we will have to -- and I'm sure that

23   the administrative agencies know there's this pendency of this

24   case and -- but, other than that, I don't know what else I can

25   do.

1          So let's -- let's just move forward on this pending

2    motion.  Let's move forward on discovery, hopefully with a plan

3    that you can agree to with or without the help of the

4    magistrate judge, and talk about an ADR process also when we

5    get together next month.  So it looks like I'll see you in

6    August it sounds like.

7              MS. RIECHERT:  Thank you very much, Your Honor.

8              THE COURT:  Great.  Thanks, everyone.

9              MS. GJOVIK:  Thank you.

10             THE COURT:  Thank you, Your Honor.

11                   (Proceedings adjourned at 1:53 p.m.)

12                         ---oOo---

13

14                   CERTIFICATE OF REPORTER

15         I certify that the foregoing is a correct transcript

16    from the record of proceedings in the above-entitled matter.

17

18    DATE:   Thursday, August 1, 2024

19

20

21    _____

22             Kendra A. Steppler, RPR, CRR

23          Official Reporter, U.S. District Court

24

25